**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COLGATE-PALMOLIVE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-417-GMS |
| | ) | |
| RANIR, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF</u>**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*

*Of Counsel:*

Charles E. Burpee
James Moskal
Chad E. Kleinheksel
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503
(616) 752-2000
cburpee@wnj.com
jmoskal@wnj.com
ckleinheksel@wnj.com

Dated: May 8, 2007

## <u>TABLE OF CONTENTS</u>

Table of Citations ............................................................................................................. ii

Introduction ......................................................................................................................1

Principles of Utility Patent Claim Construction .......................................................... 1

Construction of Claim 27 of the '591 Patent ................................................................3

Principles of Design Patent Claim Construction ..........................................................6

Claim Construction for the Design Patents...................................................................8

Conclusion ......................................................................................................................17

<u>**TABLE OF CITATIONS**</u>

**<u>Cases:</u>**

*Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ..............................5

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371 (Fed. Cir. 2004) ...................9

*Durling v. Spectrum Furniture Co.,* 101 F.3d 100 (Fed. Cir. 1996) ............................10

*Hosley Int'l Trading Corp. v. Kmart Corp.,* 237 F. Supp. 2d 907 (N.D. Ill. 2002).................... 10

*In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988).................................................. 9

*Interactive Gift Express, Inc.  v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ...................5

*Lee v. Dayton-Hudson Corp.,* 833 F.2d 1186 (Fed. Cir. 1988) ................................11

*Liquid Dynamics Corp. v. Vaughn Corp.,* 355 F.3d 1361 (Fed. Cir. 2004) .................................4

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ........................................6

*Minka Lighting, Inc. v. Pan Air Electric Co.,* 93 Fed. Appx. 214; 2004 U.S. App. Lexis 770, (Fed. Cir. 2004) ...............................................................................10

*Oddzon Prods., Inc. v. Just Toys Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997) ..................9, 10, 11

*PHG Technologies, L.L.C. v. St. Johns Cos., Inc.,* 469 F.3d 1361 (Fed. Cir. 2006) ...................11

*Phillips v. AWH Corp.,* 415 F. 3d 1303 (Fed. Cir. 2005) .............................................5

*Precor Inc. v. Life Fitness,* 13 Fed. Appx. 913; 2001 U.S. App. Lexis 15497 (Fed. Cir. 2001) ..10

*Puritan-Bennett Corp. v. Penox Technologies, Inc.,* 297 F. Supp. 2d 1110 (S.D. Ind. 2003) ......10

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ........................5

*Spotless Enterprises, Inc. v. Spotless Plastics Pty. Ltd.,* 294 F. Supp. 2d 322 (E.D. N.Y. 2003) .......................................................................10, 11

*Stryker Corp. v. Davol Inc.,* 234 F.3d 1252 (Fed. Cir. 2000) ..........................................6

*Sun Race Roots Enter. Co. v. SRAM Corp.,* 336 F. 3d 1298 (Fed. Cir. 2003) ..............................6

*The Massachusetts Institute of Technology & Electronics for Imaging, Inc. v. Abacus*

*Software*, 462 F.3d 1344 (Fed. Cir. 2006) ....................................................................5

*Transmatic, Inc. v. Gulton Industries, Inc.*, 53 F.2d 1270 (Fed. Cir. 1995) ..................6

## **STATUTE:**

35 U.S.C. § 112 .........................................................................................................8

Defendant Ranir, L.L.C. ("Ranir") submits this opening brief to address issues of patent claim construction.

## INTRODUCTION

This is a patent case involving toothbrushes. Plaintiff Colgate-Palmolive Company ("Colgate") asserts against Ranir one utility patent, U.S. Patent 7,047,591 ("the '591 patent"), and seven design patents, U.S. Patent D513,882; U.S. Patent D514,812; U.S. Patent D516,818; U.S. Patent D516,819; U.S. Patent D517,812; U.S. Patent D517,813 and U.S. Patent D520,753 (collectively, the "design patents"). The asserted patents are on file as Exhibits A-H to Colgate's amended complaint.

The parties in their Joint Disputed Claim Terms Chart (D.I. 34, the "Chart") have identified disputed terms in the claims of the utility patent, and have set forth proposed constructions for the disputed terms, as well as proposed constructions for the claims of the design patents. After review of Colgate's proposed constructions for the '591 utility patent, Ranir agrees to accept Colgate's proffered constructions for all of the claim terms in the Chart, except for the terms in claim 27, which are discussed below. All of Colgate's proposed constructions for the design patents, however, are improper and should be rejected in favor of Ranir's constructions, also addressed below.

## PRINCIPLES OF UTILITY PATENT CLAIM CONSTRUCTION

The starting point for the claim construction of a utility patent is the language of the claims. *Liquid Dynamics Corp. v. Vaughn Corp.,* 355 F.3d 1361, 1367 (Fed. Cir. 2004). When construing claim terms, "the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as

1

his invention.'" *Interactive Gift Express, Inc.  v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).  "[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  "[T]he language of the claim frames and ultimately resolves all issues of claim interpretation."  *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997).

Claim terms "are generally given their ordinary and customary meaning."  *Phillips v. AWH Corp.,* 415 F. 3d 1303, 1312 (Fed. Cir. 2005) (en banc). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application."  *Id.* at 1313.  The terms should be interpreted "in the context of the entire patent, including the specification."  *Id.*  Where, however, the specification contains a number of embodiments, it is erroneous to "confin[e] the claims to those embodiments."  *Id.* at 1323.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  In addition, where particular terms are not defined explicitly or implicitly in the specification, "it is appropriate for us to look to dictionary definitions of the terms."  *The Massachusetts Institute of Technology & Electronics for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1351 (Fed. Cir. 2006) (citing *Phillips*).

In addition to the claim language itself, the Court may also look at other "intrinsic" evidence, consisting of the specification and prosecution history, if in evidence.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  "In construing a

claim, the claim terms are given their ordinary and accustomed meaning unless examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise." *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000) (citing *Transmatic, Inc. v. Gulton Industries, Inc.*, 53 F.2d 1270, 1278 (Fed. Cir. 1995)).  Extrinsic evidence should be considered only when an ambiguity cannot be resolved by consulting the intrinsic evidence.  *Sun Race Roots Enter. Co. v. SRAM Corp.,* 336 F. 3d 1298, 1307 (Fed. Cir. 2003).

<u>**CONSTRUCTION OF CLAIM 27 OF THE '591 PATENT**</u>

Although Ranir is willing to accept the claim interpretations set forth by Colgate in the Chart for the bulk of the disputed terms, Ranir does not accept Colgate's proposed definition of claim 27.  Claim 27 of the '591 patent states as follows (the underlined terms are those where the parties' proposed claim interpretations differ):

> 27.    An oral care brush comprising:
>
> a base with a gripping region and an oral engaging region, the gripping region including <u>a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion</u>; a resilient grip surface being disposed on the rear segment; and a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

The basic claim construction issues for claim 27 are (1) the portions of the brush that comprise the "front segment" and the "rear segment," and (2) the measurement of the angle between those two segments.  In particular, Colgate's proposed construction, Chart at 3, is empty and merely paraphrases the claim language. It does not even attempt to define what the "rear segment" and the "front segment" consist of, and it does not attempt to define how the angle of

3

incline between the two segments is calculated.  In contrast, Ranir's proposed construction, Chart at 3-4, does define the rear and front segments in light of the specification, and it sets forth the only logical way to define the angle, given the absence of any specification disclosure regarding angle calculation.  Accordingly, Ranir's proposed construction should be adopted.

Regarding the front and rear segments, the '591 patent states that "[a] rear segment 115 forms a portion that generally fits comfortably within the palm of the user.  A front segment 111 forms a portion that generally fits comfortably between the user's thumb and index finger."  Col. 2, lines 53-56.  Fig. 2 of the '591 patent (left) indicates the points of demarcation for each segment.  These points provide the only intrinsic evidence of the identification of the front and rear segments, so their locations are critical.  These points correspond to specific physical features of the brush.  In particular, the rear segment (115) is the portion of the brush from the tip of the base to the center of the top-most finger opening (415) in the grip surface.  The front segment (111) is the portion of the brush from the lower-most edge of the base material surrounding the grip body to the top-most portion of the grip surface.  Ranir's proposed constructions of "front segment" and "rear segment" – which are based on these physical features – are thus correct because there is simply no support in the '591 patent for any alternative construction.



FIG. 2

Regarding the angle of incline in claim 27, in the context of measuring an angle in degrees, an angle is defined as "a measure …of the amount of turning necessary to bring one line or plane into coincidence or parallel with another."  Merriam-Webster's Collegiate Dictionary, p. 44 (10th ed. 2001).  Therefore, in order to measure the angle

4

of a front segment relative to a rear segment, it is necessary to identify lines that extend through each of these segments.  In this case, however, the '591 specification is completely lacking of a written description of how to identify the necessary lines.  The specification merely states that "front segment 111 is inclined relative to rear segment 115 to define an inclined portion positioned for comfortable gripping and to facilitate a desired offset positioning of the head relative to the palm gripping region 115.  The angle θ of the incline is preferably 23 degrees, but may range approximately between 5-40 degrees."  Col. 2, lines 58-64.  This statement, of course, does not describe how the lines are identified or how the angle is calculated.  Making matters worse, the drawings also do not show the angle θ or provide any illustration of how it might be defined or measured.  Although the validity issue with respect to claim 27 is not yet before the Court, these deficiencies in the specification render claim 27 and its dependent claims invalid for lack of written description under 35 U.S.C. § 112.  And Colgate's proposed claim construction highlights the invalidity, since it simply repeats claim language and conspicuously ignores the real issue of angle calculation.

Ranir's proposed definition – albeit a "best guess" in view of the invalidity of claim 27 – should be adopted, because it is the only one that makes sense.  The surfaces of the front and rear segments are curved, so they cannot be used to reliably define lines extending through the front and rear segments.  Therefore, the angle of inclination of the front segment to the rear segment can only plausibly be defined by the angle of the intersection of the midpoints of the front and rear segments, with each midpoint being defined by the midpoints of the thickness of the brush at each end of the respective segments, as illustrated below.

5



This method for angle calculation is incorporated into Ranir's proposed claim construction Chart at 3-4. Any other method for choosing these lines for angle calculation requires arbitrarily picking a point on the curved surface of the handle within the front or rear segment, and using a line tangent to that point to measure the angle, which is nonsensical.

> For these reasons, the Court should adopt Ranir's proposed construction of claim 27 and reject Colgate's meaningless interpretation.

## PRINCIPLES OF DESIGN PATENT CLAIM CONSTRUCTION

> The protection afforded the holder of a design patent is very narrow, for two reasons. First, "[d]esign patents have almost no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). The claim of a design patent is strictly "limited to what is shown in the application drawings." *Id.* Second, a design patent only protects the ornamental, as opposed to the functional, features of the design shown in the patent. As a matter of claim construction for a design patent:

> > Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed. Cir. 2004) (*quoting Oddzon Prods., Inc. v. Just Toys Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)). This

6

construction requires the Court to set forth, in narrative form, the non-functional features of the design. The Court should "translate visual descriptions into words" that "evoke the visual image of the design." *Durling v. Spectrum Furniture Co.,* 101 F.3d 100, 103 & n. 2 (Fed. Cir. 1996).[1]

Importantly, it is improper for the Court in claim construction of a design patent simply to conclude that the patent covers the design as shown in the drawings, such that the factfinder later is asked merely to compare the accused product to the drawings. This is the approach that Colgate advocates in the Chart for each of the design patents, and it is wrong. In *Oddzon, supra*, the patentee, like Colgate here, argued that "a simple comparison of the accused products with the figures in the design patent is all that is required in an infringement inquiry." 122 F.3d at 1404. In other words, the patentee argued that "the scope of a design patent is effectively determined by deciding infringement, rather than by construing the claim." *Id*. The Federal Circuit squarely rejected this approach. *Id.* Accordingly, Colgate's proposed constructions of the design patents must be rejected.

In addition, "the process of distinguishing the ornamental features is merely a form of claim construction and is distinct from the functionality analysis of invalidity." *Spotless*, 297 F. Supp. 2d at 344. In other words, whereas the functionality test for invalidity of a design patent may be somewhat "stringent," the feature-by-feature analysis for claim construction is not.

---

[1] Although the Federal Circuit has not issued many published decisions having detailed examples of design patent claim construction, it has issued several unpublished decisions. *See, e.g., Minka Lighting, Inc. v. Pan Air Electric Co.,* 93 Fed. Appx. 214; 2004 U.S. App. Lexis 770, **5 (Fed. Cir. 2004) (noting that "an extensive verbal claim construction may be helpful particularly if the drawings contain features that are not part of the patented design, e.g., if the drawings contain functional features"); *Precor Inc. v. Life Fitness,* 13 Fed. Appx. 913; 2001 U.S. App. Lexis 15497 (Fed. Cir. 2001). There are also a number of district court cases showing the narrative separation of functional and non-functional features. *See, e.g., Puritan-Bennett Corp. v. Penox Technologies, Inc.,* 297 F. Supp. 2d 1110 (S.D. Ind. 2003); *Spotless Enterprises, Inc. v. Spotless Plastics Pty. Ltd.,* 294 F. Supp. 2d 322 (E.D.N.Y. 2003); *Hosley Int'l Trading Corp. v. Kmart*

"Accordingly, even elements that are not solely dictated by function are not included in the [infringement] comparison to the extent they are functional." *Spotless*, 297 F. Supp. 2d at 345 (*citing Oddzon, supra; Lee v. Dayton-Hudson Corp.,* 833 F.2d 1186 (Fed. Cir. 1988)).

Finally, in determining the functional features of a design, the Court should consider statements made by the patentee in corresponding utility patent documents.  *See, e.g., PHG Technologies, L.L.C. v. St. Johns Cos., Inc.,* 469 F.3d 1361 (Fed. Cir. 2006) (considering statements in utility patent file history, albeit for validity purposes); *Spotless,* 294 F. Supp. 2d at 346 (considering statements in utility patent specification).

## CLAIM CONSTRUCTION FOR THE DESIGN PATENTS

In this case, Colgate owns a utility patent, U.S. Patent 7,089,621 ("the '621 patent"), and a published U.S. patent application, Publication No. 2006/0026784 ("the '784 application"), directed to the subject toothbrush.  Copies of these references are reproduced at Exhibits A and B.  The '621 patent and the '784 application define functional features of the brush, and these functional features must therefore be excluded from the scope of the design patents. For ease of reference, a list identifying all of the features of the brush shown in the Colgate design patents is provided at Exhibit C.  Below, Ranir will demonstrate how the '621 patent and the '784 application necessarily eliminate certain all these overall features from possible protection in the design patents, leaving as the possible ornamental features those features set forth in Ranir's proposed constructions for each of the design patents.  Chart at 5-15.

Starting with the bristles, the '621 patent discusses the functional considerations that dictated each feature of the bristles.  Fig. 2 of the '621 patent, a top view of the bristle

*Corp.,* 237 F. Supp. 2d 907 (N.D. Ill. 2002).

pattern discussed in the patent (and clearly the same bristle pattern shown in the design patents), is shown at left:



FIG. 2

As stated by Colgate in the '621 patent, the Colgate toothbrush includes at least one loop configuration 214 "to better retain dentifrice among the tooth cleaning elements 200 and specifically between the contact of the cleaning elements and the teeth." Col. 2, lines 49-54. Although the loop configuration may be a variety of different shapes, "the loop configuration is preferably a circle," and "it is believed that the use of interior concave wall surfaces within the loop will best retain and move the dentifrice on the teeth." Col. 2, lines 54-59. "Each loop construction is defined by four elastomeric wall members 209a-d each defining an arc segment that is approximately a quarter circle." Col. 3, lines 10-12. "Adjacent arc segments are spaced apart to define gaps 212 that permit a limited outward flow of dentifrice and independent flexing of each wall member. The gaps also aid in the cleaning of cleaning elements 209 by permitting water to flush through the loops." Col. 3, lines 12-18. "The preferred embodiment includes three loops 214a-c that are each positioned front to back along longitudinal axis a—a. In this way, a large portion of the dentifrice applied to the tooth cleaning elements can be retained to clean the user's teeth." Col. 3, lines 28-32.

Based on these statements regarding the function of the loop configurations 214, Ranir submits that the use of loop configurations that have a circular shape formed from four arc-shaped elastomers, and the positioning of three loop configurations spaced longitudinally along

9

the head (elements (36) and (37) in the list of features provided in Exhibit C), were chosen for primarily functional reasons, and that the use of alternative designs would adversely impact the utility of these features. Thus, the design patents showing the loop configurations must therefore be construed so as not to include features (36) and (37) in the claimed design.

With regard to the central cleaning elements 207, Colgate states in its '621 patent that "in a preferred construction, a central cleaning element 207 is disposed within each loop 214," and that "[w]ith this arrangement, dentifrice stays near the tips of cleaning elements 207 during a brushing operation for efficient cleaning." Col. 3, lines 36-40. "The central cleaning elements 207 are each preferably formed as bristle tufts for effectively cleaning the teeth." Col. 3, lines 45-46. "In the preferred construction, central cleaning elements 207a and 207c are shorter than cleaning elements 209 forming loops 214a, 214c to facilitate enhanced brushing of the lingual and facial tooth surfaces with the dentifrice." Col. 4, lines 18-22.

Based on these statements regarding the function of the central cleaning elements 207, Ranir submits that the use of three central bristle tufts, each located in the center of one of the loop configurations (element (42) in the list of features provided in Exhibit C), was chosen for primarily functional reasons, and that the use of an alternative design would adversely impact the utility of the central bristle tufts. The design patents showing the central bristle tufts must therefore be construed so as not to include feature (42) in the claimed design.

Colgate further states in its '621 patent that the outer ring cleaning elements 211 "surround the loop cleaning elements 209a-b in the central region of head 105 to effectively use this space on the head." Col. 4, lines 3-6. The cleaning elements 211 are positioned so that "the dentifrice flowing through the gaps 212 in the sides of the loop 214b will be used by outer cleaning elements 211." Further, the peripheral cleaning elements 205a-c and 215a-c are

10

"generally configured to enable the user to clean along the gum line and in the crevices between the teeth."  Col. 5, lines 7-8.  As stated at col. 5, lines 14-28:

> The tips of the peripheral cleaning elements 205a-c and 215a-c protrude higher from base surface 109 than the tips of the interior cleaning elements 207, 209, 211.  In a preferred embodiment, two groups of peripheral cleaning elements 205, 215 are arranged along each side 108 of the head 105.  Each group of peripheral cleaning elements includes three generally aligned tufts of bristles, although other numbers of tufts could be used.  The center tuft of cleaning elements 205b, 215b in each group of peripheral cleaning elements protrudes outward farther from base surface 109 that the others [sic] tufts 205a, 205c, and 215a, 215c.  This arrangement allows for deeper engagement of the tooth surfaces along the gum line with cleaning elements 205b or 215b, while stimulating the gums with cleaning elements 205a, 205c and 215a, 215c.

Based on these statements regarding the function of the outer ring cleaning elements 211 and the peripheral cleaning elements 205, Ranir submits that the use of bristles in an outer ring arranged in two opposing arc-shaped tufts, and the arrangement of the peripheral tufts such that the middle tuft of each group of three peripheral tufts is taller than the outer two tufts (elements (41) and (46) in the list of features provided in Exhibit C), were chosen for primarily functional reasons, and that the use of alternative designs would adversely impact the utility of the outer ring cleaning elements and the peripheral tufts.  The patents showing the outer ring cleaning elements and the peripheral tufts must therefore be construed so as not to include features (41) and (46) in the claimed design.

Turning to the handle, Colgate describes the functional nature of features of the handle of the toothbrush in the '784 application, Exhibit B.  The '784 application discloses a variety of Colgate toothbrushes, including essentially the exact toothbrush handle claimed in its design patents (see Figs. 81 and 82 below).



With respect to the features of the handle, Colgate states in the '784 application that:

> Handle 8103 is provided for the user to reliably grip and manipulate the toothbrush. Handle 8103 includes ergonomic features which provide a high degree of control for the user while maintaining comfort. In a preferred construction (Figs. 81-89), handle 8103 includes a base 8300, a grip body 8403, and a gripping member 8407. These components cooperatively form a grip portion 8400 by which the user holds and manipulates the toothbrush. For optimum comfort and control, grip portion 8400 includes three segments 8111, 8113, 8115. A rear segment 8115 forms a portion that generally fits comfortably within the palm of the user. A front segment 8111 forms a portion that generally fits comfortably between the user's thumb and index finger. A narrow transition segment connects the front and rear segments. Page 19, paragraph 0264.

Specifically, Colgate states that the "front segment 8111 is inclined relative to the rear segment 8115 to define an inclined portion for comfortable gripping and to facilitate a desired offset positioning of the head relative to the palm gripping region 8115." Exhibit B, Page 19, paragraph 0265. "This feature allows improved control of the handle during brushing

12

in which the head 8105 can be more desirably positioned within the mouth to engage the tooth cleaning elements 8200 against the teeth." *Id.* "In a preferred embodiment, front and rear segments 8111, 8115 are widened sections that are joined by a narrowed portion 8113 to form an undulating structure which is more reliably and comfortably held within the user's hand. Further, this wide construction of the palm and finger gripping regions 8111, 8115 requires less fine motor control by the user and is, hence, easier to hold and manipulate." Page 19, paragraph 0266.

Based on these statements regarding the function of the shape of the handle, Ranir submits that the front handle segment that is inclined relative to the neck and has a bulbous shape that is wider than the neck, the transition handle segment that is narrower than the front segment and the rear segment, and the rear handle segment that is wider than the transition segment, (elements (3), (5) and (7) in the list of features provided in Exhibit C), were chosen for primarily functional reasons, and that the use of alternative designs would adversely impact the utility of the handle. The design patents showing the handle must therefore be construed so as not to include features (3), (5) and (7) in the claimed design.

Colgate also addresses the thumb and finger grips in its utility application. The thumb and finger grips, referred to collectively as "grip body 8403 having opposing sides 8405, 8404," are "preferably for engaging the thumb and index finger during use." Page 19, paragraph 0267. The thumb and finger grips are made from a soft, resilient elastomer "to provide optimum comfort as well as control benefits." Page 20, paragraph 0268. The bulbous shape of the thumb and finger grips "enables the user to reliably roll and control the handle 8103 between the thumb and index fingers during use." Page 20, paragraph 0270. The thumb and finger grips include

13

"finger grip protrusions 8411" that are "preferably provided in a desired conical or frusto-conical shape for improved grip performance."  Page 20, paragraph 0273.

Based on these statements regarding the function of the thumb and finger grips 8404 and 8405, Ranir submits that the use of a thumb grip on the upper surface of the front handle segment, a finger grip on the lower surface of the front handle segment, the formation of the thumb and finger grips from a different material than the handle and the grip material, the convex, bulbous shape of the thumb grip, the convex, bulbous shape of the finger grip, and the use of a plurality of round nubs extending outwardly from the surfaces of the thumb and finger grips, (elements (16)-(19), (21) and (23) in the list of features provided in Exhibit C), were chosen for primarily functional reasons, and that the use of alternative designs would adversely impact the utility of the thumb and finger grips.  The design patents showing the finger grips must therefore be construed so as not to include features (16)-(19), (21) and (23) in the claimed design.

The utility patent application further describes the grip material.  The grip material, or "gripping member 8407," is "fixed to base 8300 to provide several gripping features to improve performance.  In one aspect, gripping member 8407 has a grip surface 8410 with at least one and preferably a plurality of spaced openings, preferably in the form of elongate transverse slots 8415, which expose portions of the base 8300."  Page 21, paragraph 0277. "These transverse slots 8415 prevent slippage of the handle 8103 by enabling portions of the user's fingers to slightly protrude into the depth of the slot 8415.  Additionally, slots 8415 channel water away from the fingers [sic] tips during wet operational conditions.  Air is also able to enter the slots during brushing to provide some evaporative effect."  Page 21, paragraph 0278.

14

"The grip surface 8410 includes concave regions between each slot 8415 to further improve grip performance of the handle 8103." Page 21, paragraph 0279.

Based on these statements regarding the function of the gripping member 8407, Ranir submits that the grip material overlying the lower surface of the front, transition and rear portions of the handle, the series of nine transverse slots forming apertures in the grip material, and the concave regions in the grip material between each of the transverse slots (elements (10), (12) and (15) in the list of features provided in Exhibit C), were chosen for primarily functional reasons, and that the use of alternative designs would adversely impact the utility of the gripping member. The design patents showing the handle must therefore be construed so as not to include features (10), (12) and (15) in the claimed design.

The '784 application also describes the functional considerations that dictated the design of the tongue scraper. For instance, Colgate states that the tongue scraper, or "tissue engaging element 4800" is "designed to significantly reduce a major source of bad breath in people and improve hygiene." Page 14, paragraph 0218. The nubs on the tongue cleanser "enable removal of microflora and other debris from the tongue and other soft tissue surfaces within the mouth." Page 14, paragraph 0218. "In one preferred arrangement of tissue cleanser 4800, nubs 4803 are preferably conically shaped." Page 14, paragraph 0219. "The smaller width or diameter of the tip portion 4807 in conjunction with the length of the conically shaped nub 4803 enable the nubs to sweep into the recesses of the tongue and other surfaces to clean the microbial deposits and other debris from the soft tissue surfaces." Page 14, paragraph 0219. "Tip 4807 of the nubs is 0.127 mm and preferably within a range from about 0.10 mm to about 0.75 mm for optimal penetration between the recesses of papillae of a user's tongue." Page 14, paragraph 0219. The nubs are arranged on the tongue cleanser in a high density pattern, and

15

"preferably disposed in longitudinal rows in a direction generally parallel to the longitudinal axis a—a." Page 14, paragraph 0222. "The surface density features in conjunction with the height of the nubs 4803 enables the tissue cleanser to provide enhanced cleaning of the soft tissue surfaces with improved comfort." Page 14, paragraph 0221.

Based on these statements regarding the function of the tongue scraper 4800, Ranir submits that the positioning of a tongue cleanser on the lower surface of the head, and the inclusion of a plurality of nubs extending outwardly from the tongue cleanser (elements (27) and (30) in the list of features provided in Exhibit C), were chosen for primarily functional reasons, and that the use of alternative designs would adversely impact the utility of the tongue scraper. The design patents showing the tongue scraper must therefore be construed so as not to include features (27) and (30) in the claimed design.

In summary, because of Colgate's statements in the '621 patent and the '784 application regarding the functionality of various features of the toothbrush shown in the design patents, the only proper construction of the design patents is to remove the functional features from the scope of the claimed designs. A list of the functional features, described above, that must be removed from the features shown in the design patents to properly construe the design patents is provided in Exhibit D. Ranir's proposed constructions for each of the design patents properly include only the features listed in Exhibit C that are shown in the patent (and not disclaimed by being illustrated in broken lines), except for the functional features noted above and listed in Exhibit D. In contrast to Colgate's proposed constructions, Ranir's constructions identify the elements shown in the Colgate design patents, while removing the functional features. Ranir's constructions are correct and should be adopted.

16

## CONCLUSION

With respect to the '591 utility patent, Ranir accepts Colgate's proposed constructions, except for claim 27. For claim 27, the Court should adopt Ranir's proposed construction over Colgate's meaningless proffered construction. With respect to the design patents, Colgate makes no attempt to construe the claims properly. Ranir, in contrast, removes the functional features of the designs and thus properly limits the claim scope to non-functional features. The Court should adopt Ranir's constructions.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*                                                    *Attorneys for Defendant*

Charles E. Burpee
James Moskal
Chad E. Kleinheksel
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503
(616) 752-2000
cburpee@wnj.com
jmoskal@wnj.com
ckleinheksel@wnj.com

Dated:  May 8, 2007
180297.1

17

18

# EXHIBIT A

US007089621B2

## (12) United States Patent
Hohlbein

(10) Patent No.: **US 7,089,621 B2**
(45) Date of Patent: **Aug. 15, 2006**

(54) **TOOTHBRUSH**

(75) Inventor: **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/870,462**

(22) Filed: **Jun. 18, 2004**

(65) **Prior Publication Data**

US 2005/0000048 A1     Jan. 6, 2005

**Related U.S. Application Data**

(63) Continuation of application No. PCT/US03/30633, filed on Sep. 26, 2003, and a continuation-in-part of application No. 10/601,106, filed on Jun. 20, 2003, now abandoned, application No. 10/870,462, which is a continuation-in-part of application No. PCT/US03/29497, filed on Sep. 17, 2003, application No. 10/870,462, which is a continuation-in-part of application No. 29/189,729, filed on Sep. 10, 2003.

(60) Provisional application No. 60/419,425, filed on Oct. 18, 2002, provisional application No. 60/418,776, filed on Oct. 16, 2002, provisional application No. 60/414,117, filed on Sep. 27, 2002, provisional application No. 60/412,290, filed on Sep. 20, 2002.

(51) **Int. Cl.**
*A46B 9/04*          (2006.01)

(52) **U.S. Cl.** ........................ **15/110**; 15/22.1; 15/167.1; 601/142

(58) **Field of Classification Search** ................. 15/22.1, 15/22.2, 110, 167.1, 28, 170; 433/127, 186; 601/139, 141, 142
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

411,910 A     10/1889   Van Horne

| | | | |
|---|---|---|---|
| 1,188,823 A | 6/1916 | Plank | |
| 1,191,556 A | 7/1916 | Blake | |
| 1,268,544 A | 6/1918 | Cates | |
| 1,405,279 A | 7/1922 | Cassedy | |
| 1,588,785 A | 6/1926 | Van Sant | |
| 1,598,224 A | 8/1926 | Van Sant | |
| 1,910,414 A | 5/1933 | Varga | |
| 1,924,152 A | 8/1933 | Coney et al. | |
| 2,059,914 A | 11/1936 | Rosenberg | |
| 2,083,217 A | 6/1937 | Brother et al. | |
| 2,088,839 A | 8/1937 | Coney et al. | |
| 2,161,349 A | 6/1939 | Hadden | |
| 2,186,005 A | 1/1940 | Casto | |
| 2,305,461 A * | 12/1942 | Spyra | 15/167.1 |
| 2,312,828 A | 3/1943 | Adamsson | |
| 2,364,205 A * | 12/1944 | Fuller | 601/141 |
| 2,443,461 A | 6/1948 | Kempster | |
| 2,545,814 A | 3/1951 | Kempster | |

(Continued)

FOREIGN PATENT DOCUMENTS

EP        0449655 B1        5/1995

(Continued)

*Primary Examiner*—Gladys JP Corcoran
*Assistant Examiner*—Shay Balsis
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57)          **ABSTRACT**

A toothbrush includes a head and a plurality of tooth cleaning elements for enhanced cleaning of the teeth. The tooth cleaning elements include cleaning elements that define a loop arrangement for better retention of the dentifrice, a central cleaning element disposed within the loop, two opposing arcuate cleaning elements disposed on opposite sides of the loop, peripheral cleaning element with a stepped and tapered construction, elongate distal cleaning elements, and proximal cleaning elements.

**33 Claims, 5 Drawing Sheets**



**US 7,089,621 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,637,870 A | 5/1953 | Cohen | |
| 3,153,800 A | 10/1964 | Trotin | |
| 3,195,537 A | 7/1965 | Blasl | |
| 3,261,354 A | 7/1966 | Shpuntoff | |
| 3,638,270 A | 2/1972 | Schlegel, Jr. et al. | |
| 4,249,521 A | 2/1981 | Gueret | |
| 4,277,862 A | 7/1981 | Weideman | |
| 4,292,705 A | 10/1981 | Stouffer | |
| D272,683 S | 2/1984 | Stocchi | |
| D272,687 S | 2/1984 | Stocchi | |
| D272,689 S | 2/1984 | Stocchi | |
| D272,690 S | 2/1984 | Stocchi | |
| D273,635 S | 5/1984 | Stocchi | |
| 4,455,704 A | 6/1984 | Williams | |
| 4,461,285 A | 7/1984 | Courtin | |
| 4,493,125 A | 1/1985 | Collis | |
| 4,592,108 A | 6/1986 | Svendsen | |
| 4,607,411 A | 8/1986 | Lewis, Jr. | |
| 4,827,557 A | 5/1989 | Siler, Jr. et al. | |
| 5,120,225 A | 6/1992 | Amit | |
| 5,242,235 A | 9/1993 | Li | |
| 5,305,489 A | 4/1994 | Lage | |
| 5,373,600 A | 12/1994 | Stojanovski et al. | |
| 5,392,483 A | 2/1995 | Heinzelman et al. | |
| 5,396,678 A | 3/1995 | Bredall et al. | |
| 5,446,940 A | 9/1995 | Curtis et al. | |
| 5,570,487 A | 11/1996 | Schneider | |
| 5,584,690 A | 12/1996 | Maassarani | |
| 5,604,951 A | 2/1997 | Shipp | |
| 5,628,082 A | 5/1997 | Moskovich | |
| D386,905 S | 12/1997 | Brady et al. | |
| 5,729,858 A | 3/1998 | Riffel | |
| 5,735,011 A | 4/1998 | Asher | |
| 5,735,864 A | 4/1998 | Heisinger, Jr. | |
| 5,778,475 A | 7/1998 | Garcia | |
| 5,809,608 A | 9/1998 | Zadro | |
| D402,116 S | 12/1998 | Magloff et al. | |
| D403,510 S | 1/1999 | Menke et al. | |
| 5,875,510 A | 3/1999 | Lamond et al. | |
| 5,896,614 A | 4/1999 | Flewitt | |
| 5,930,860 A | 8/1999 | Shipp | |
| 5,930,861 A | 8/1999 | White | |
| 5,970,564 A | 10/1999 | Inns et al. | |
| 5,974,614 A | 11/1999 | Ross | |
| 6,041,467 A | 3/2000 | Roberts et al. | |
| 6,041,468 A | 3/2000 | Chen et al. | |
| D422,143 S | 4/2000 | Beals et al. | |
| D424,808 S | 5/2000 | Beals et al. | |
| D425,306 S | 5/2000 | Beals et al. | |
| 6,098,233 A | 8/2000 | Chen | |
| 6,105,191 A | 8/2000 | Chen et al. | |
| 6,108,851 A | 8/2000 | Bredall et al. | |
| 6,119,296 A | 9/2000 | Noe et al. | |
| D440,767 S | 4/2001 | Moskovich et al. | |
| 6,260,227 B1 * | 7/2001 | Fulop et al. ............... 15/167.1 | |
| 6,276,021 B1 | 8/2001 | Holhbien | |
| D450,929 S | 11/2001 | Angelini et al. | |
| 6,311,358 B1 | 11/2001 | Soetewey et al. | |
| 6,319,332 B1 | 11/2001 | Gavney, Jr. et al. | |
| 6,374,448 B1 | 4/2002 | Seifert | |
| 6,389,634 B1 | 5/2002 | Devlin et al. | |
| D461,959 S | 8/2002 | Chan et al. | |
| 6,446,295 B1 | 9/2002 | Calabrese | |
| 6,463,618 B1 | 10/2002 | Zimmer | |
| 6,463,619 B1 | 10/2002 | Gavney, Jr. | |
| 6,496,999 B1 | 12/2002 | Gleason et al. | |
| 6,513,182 B1 | 2/2003 | Calabrese et al. | |
| 6,546,586 B1 | 4/2003 | Cho | |
| D483,568 S | 12/2003 | Jamson | |
| 6,658,688 B1 | 12/2003 | Gavney, Jr. | |
| 6,859,969 B1 * | 3/2005 | Gavney et al. ............... 15/117 | |
| 2001/0042280 A1 | 11/2001 | Moskovich et al. | |
| 2002/0124333 A1 | 9/2002 | Hafliger et al. | |
| 2002/0138928 A1 | 10/2002 | Calabrese et al. | |
| 2003/0196283 A1 | 10/2003 | Gatzemeyer et al. | |
| 2003/0208865 A1 | 11/2003 | Davies | |
| 2003/0229959 A1 | 12/2003 | Kim et al. | |
| 2004/0025275 A1 | 2/2004 | Moskovich et al. | |
| 2004/0068810 A1 | 4/2004 | Lee | |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1308108 | 5/2003 |
| GB | 2371217 | 7/2002 |
| JP | 51 35303 | 8/1976 |
| JP | 9-182626 | 7/1997 |
| JP | 10-42957 | 2/1998 |
| WO | WO 97/03587 | 2/1997 |
| WO | WO 1998/05241 A | 2/1998 |
| WO | WO 99/01054 | 1/1999 |
| WO | WO 99/07251 | 2/1999 |
| WO | WO 2003/030680 A | 4/2003 |
| WO | WO 2004/019801 A | 3/2004 |

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



# FIG. 7

US 7,089,621 B2

1

# TOOTHBRUSH

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation in part of U.S. patent application Ser. No. 10/601,106 filed Jun. 20, 2003, abandoned, entitled "Toothbrush with Tongue Cleaning Member", and is a continuation in part of U.S. PCT application Ser. No. PCT/US2003/030633 (designating the U.S.) filed Sep. 26, 2003, entitled "Toothbrush", which claims priority to U.S. Patent Application No. 60/414,117, filed Sep. 27, 2002 (now abandoned), U.S. Patent Application No. 60/418, 776, filed Oct. 16, 2002 (now abandoned) and U.S. patent application Ser. No. 60/419,425, filed Oct. 18, 2002 (now abandoned), and is, a continuation in part of PCT patent application No. PCT/US2003/029497 (designating the U.S.), filed Sep. 17, 2003, entitled "Toothbrush With Gripping Area", which claims priority to U.S. Provisional Patent Application No. 60/412,290, filed Sep. 20, 2002 (now abandoned), and is a continuation in part of U.S. Patent Application Ser. No. 29/189,729, filed Sep. 10, 2003. This application is also related to U.S. Patent Application Ser. No. 10/869,922 entitled "Oral Care Implement" filed on the same date herewith. The contents of the above-noted applications are each expressly incorporated herein by reference.

## FIELD OF THE INVENTION

The present invention pertains to a toothbrush with an enhanced cleaning head.

## BACKGROUND OF THE INVENTION

A toothbrush is used to clean the teeth by removing plaque and debris from the tooth surfaces. Conventional toothbrushes provided with a flat bristle trim are limited in their ability to conform to the curvature of the teeth, to penetrate into the interproximal areas between the teeth, to sweep away the plaque and debris, and to clean along the gum line. Additionally, such toothbrushes have a limited ability to retain dentifrice for cleaning the teeth. During the brushing process, the dentifrice typically slips through the tufts of bristles and away from the contact between the bristles and the teeth. As a result, the dentifrice often is spread around the mouth, rather than being concentrated on the contact of the bristles with the teeth. Therefore, the efficiency of the cleaning process is reduced.

## SUMMARY OF THE INVENTION

The invention pertains to a toothbrush with a novel arrangement of cleaning elements to provide superior cleaning of the teeth.

In one aspect of the invention, a toothbrush includes a head having a plurality of tooth cleaning elements extending from a base surface. The tooth cleaning elements generally define a loop arrangement to better retain the dentifrice proximate to the contact between the bristles and the teeth for more effective cleaning. In one preferred construction, each loop is formed by a plurality of independently flexible cleaning elements so as to maintain user comfort and provide improved cleaning of the teeth.

In another aspect of the invention, other cleaning elements are disposed within the cleaning elements forming the loop. In this construction, these central cleaning elements are strategically located to maximize the cleaning effect of the retained dentifrice.

2

In another aspect of the invention, tooth cleaning elements are positioned along the periphery of the head. In one preferred construction, these peripheral cleaning elements are stepped and tapered to clean along the gum line and reach the interproximal areas between the teeth.

The present invention also pertains to combinations of different kinds of cleaning elements on a single head that cooperate to provide a pattern for overall improved cleaning of the teeth, including effective cleaning of the rear teeth, the interproximal areas between the teeth, along the gum line, and the lingual and facial side surfaces of the teeth.

## BRIEF DESCRIPTION OF THE DRAWINGS

A more complete understanding of the present invention and the advantages thereof may be acquired by referring to the following description in consideration of the accompanying drawings, in which like reference numbers indicate like features, and wherein:

FIG. 1 is a perspective view of a toothbrush according to one or more aspects of an illustrative embodiment;

FIG. 2 is an enlarged plan view of a head section of the toothbrush of FIG. 1;

FIG. 3 is an enlarged side view of a head section of the toothbrush of FIG. 1;

FIG. 4 is a section view of the head section taken along line 4—4 in FIG. 2;

FIG. 5 is a partial section view of the head section similar to FIG. 4 showing a tooth cleaning element arrangement in isolation for clarity;

FIG. 6 is a partial section view of the head section similar to FIG. 4 showing another tooth cleaning element arrangement in isolation for clarity; and

FIG. 7 is a distal end view of the head section of the toothbrush of FIG. 1.

## DETAILED DESCRIPTION OF THE INVENTION

FIGS. 1–7 illustrate a toothbrush 100 having a support 101 including a handle 103 and a head 105, and tooth cleaning elements 200 for cleaning the user's teeth. Handle 103 is provided for the user to readily grip and manipulate the toothbrush 100, and may be formed of many different shapes and with a variety of constructions. Head 105 is the end portion of the support provided with tooth cleaning elements 200. The tooth cleaning elements can be attached to a base surface 109 of head 105 by any known means.

In a preferred construction, base surface 109 is provided with at least one group of cleaning elements 209 that collectively define a loop configuration 214 to better retain dentifrice among the tooth cleaning elements 200 and specifically between the contact of the cleaning elements and the teeth. While the loop configuration is preferably a circle, it could be in the form of a myriad of different closed loops including without limitation ovals, squares and irregular shapes. It is believed that the use of interior concave wall surfaces within the loop will best retain and move the dentifrice on the teeth especially when the toothbrush is generally moved in the desired small circular motions to brush the teeth. Nevertheless, other shapes can be used. The loop should simply define a substantially closed configuration to retain the dentifrice.

To better retain the dentifrice, each loop configuration is preferably defined by cleaning elements composed of elastomeric wall members. Although the loop configurations could be formed by tightly packed, elongate bristle tufts,

US 7,089,621 B2

3

such arrangements will permit a greater escape of the dentifrice than the elastomeric wall members. Further, although the loop configurations could be completely closed structures, they are preferably only substantially closed and each formed by a plurality of independently flexible cleaning elements 209a–d. In this way, the cleaning elements are able to provide a limited and controlled flow of the dentifrice to the outer cleaning elements and maintain sufficient flexibility to provide greater user comfort and improved cleaning by elements 209. In the preferred construction, as seen in FIG. 2, each loop construction is defined by four elastomeric wall members 209a–d each defining an arc segment that is approximately a quarter of a circle. As noted above, adjacent arc segments are spaced apart to define gaps 212 that permit a limited outward flow of dentifrice and independent flexing of each wall member. The gaps also aid the cleaning of cleaning elements 209 by permitting water to flush through the loops. The gaps, however, are preferably kept small to limit the escape of the dentifrice. While four segments have been illustrated to define each loop, other numbers of segments could be used. The wall members can be formed of any elastomeric material known for use as tooth cleaning elements. Finally, although the arc segments are preferably independent cleaning members, the loop could also be formed as a single member provided with slits to define gaps 212 and independently flexible cleaning elements 209a–d.

As best seen in FIG. 2, the preferred embodiment includes three loops 214a–c that are each positioned front to back along longitudinal axis a—a. In this way, a large portion of the dentifrice applied to the tooth cleaning elements can be retained to clean the user's teeth. Nevertheless, one, two or more than three loops could be used. Moreover, the loops could be arranged in other patterns including non-aligned arrangements or positioned off of axis a—a.

In a preferred construction, a central cleaning element 207 is disposed within each loop 214; although more than one central cleaning element 207 could be provided within each loop when larger loops are used. With this arrangement, dentifrice stays near the tips of cleaning elements 207 during a brushing operation for efficient cleaning. In the preferred construction, the concave nature of the inside surfaces of cleaning elements 209a–d directs the dentifrice to cleaning elements 207a–c during the sweeping or oscillating motion of head 105.

Central cleaning elements 207 are each preferably formed as bristle tufts for effectively cleaning the teeth. Nevertheless, one or more elastomer members may be used to form the distal cleaning elements in lieu of or in addition to the use of bristles.

The bristles of cleaning elements 203 as well as the bristles of other tufts discussed below are preferably composed of a nylon made from a material such as, for example, a nylon material marketed by Dupont under the name BRILLIANCE. Nevertheless, other materials could be used. The bristles in toothbrush 100 also preferably have a circular cross-sectional shape, but could have other cross-sections as well. The round bristles in toothbrush 100 may be composed on a nylon marketed by Dupont under the name TYNEX. The diameter of the round bristles are preferably 0.007 inches–0.008 inches thick or have other thicknesses depending on the desired cleaning action of the bristles. The tooth cleaning elements are connected to the toothbrush using known manufacturing methods for oral care products.

With reference to FIGS. 1 and 2, an additional outer ring of cleaning elements 211a, 211b is disposed in a central region of head 105 in a generally arcuate arrangement about cleaning elements 209a–d of central loop 214b. These outer arcuate cleaning elements 211a–b are preferably defined by

4

two opposing arcuate cleaning elements which are arranged generally symmetrical on each side of the longitudinal axis a—a of head 105. As shown in FIG. 2, the outer cleaning elements 211a–b surround the loop cleaning elements 209a–d in the central region of head 105 to effectively use this space on the head. In a preferred arrangement, the loop cleaning elements 209a–d in the central region may be disposed generally concentrically within outer cleaning elements 211a–b. The dentifrice flowing through gaps 212 in the sides of loop 214b will be used by outer cleaning elements 211. While the outer arcuate cleaning elements 211a, b are preferably defined by elongate bristle tufts for effective brushing of the teeth, they could be formed of one or more elastomeric members in lieu of or in addition to bristles.

FIGS. 4–6 are sectional views of head 105 that reveal the preferred height characteristics of cleaning elements 207, 209 and 211. In the preferred construction, central cleaning elements 207a and 207c are shorter than cleaning elements 209 forming loops 214a, 214c to facilitate enhanced brushing of the lingual and facial tooth surfaces with the dentifrice retained by loops 214a, c. The difference between the first height H1 of cleaning elements 207a, c and the second height H2 of cleaning elements 209 is preferably about 0.20–2.0 mm, but there could be other variations. Central cleaning element 207b is taller than cleaning elements 209 forming central loop 214b to facilitate better interproximal cleaning as well as cleaning of the crowns of the molars. The difference between the third height H3 of cleaning element 207b and the second height H2 of cleaning elements 209 is preferably about 0.20–2.0 mm, but other variations could be used. While this construction is preferred to maximize the cleaning of various surfaces in the mouth, other variations in the heights of the cleaning elements could be used as desired. For example, central cleaning elements 207 could all have the same heights with each other and as loop cleaning elements 209, or have heights that are higher or lower than the loop cleaning elements in different ways. In another example, the central cleaning elements 209 may have heights that are higher than the loop cleaning elements 209 in a staple configuration of toothbrush 100.

Head 105 also includes distal cleaning elements 203a–b at the free end 107. In the preferred construction, a pair of adjacent distal cleaning elements 203a, 203b straddle longitudinal axis a—a, although they could be formed by one or more than two cleaning elements. Distal cleaning elements 203a–b protrude higher from base surface 109 than the tips of the other tooth cleaning elements. The tips of each bristle tuft 203a–b collectively define an outermost cleaning surface 204 that is angled with respect to base surface 109 of head 105. By way of example, cleaning surface 204 is preferably at an angle Ø of about 30 degrees to base surface 109, but may also range between 10–50 degrees. It should be recognized that other angular values are possible. The extension and angular orientation of cleaning surface 204 of distal cleaning elements 203a–b better enable the user to reach and better clean the teeth in the back of the mouth. Cleaning elements 203a, b also can be used to dig into the crevices between the teeth and into the crown portions of the molars. Finally, as can be seen in FIG. 7, the outermost cleaning surface 204 also preferably is sloped laterally downward (to form a crowned surface) to assist in the removal of debris from the teeth.

Peripheral cleaning elements 205a–c are positioned near free end 107 and along each side 108 of head 105. These peripheral cleaning elements 205a–c are preferably formed by a plurality of bristle tufts that are arranged generally symmetrical with respect to the longitudinal axis a—a. Cleaning elements 205a–c are positioned rearward and laterally of distal cleaning elements 203a–b. Similarly,

US 7,089,621 B2

5

peripheral cleaning elements 215a–c are also positioned symmetrically about axis a––a along each side 108 near proximal end 111 of head 105. These two groups of cleaning elements 205a–c, 215a–c are generally mirror images of each other, but could have other constructions. Both the distal and proximal peripheral cleaning elements 205a–c, 215a c are generally configured to enable the user to clean along the gum line and in the crevices between the teeth. In the illustrative embodiment, three bristle tufts form each group of peripheral cleaning elements 205a–c, 215a–c. Nevertheless, more or fewer bristle tufts in these groups may be used. Further, one or more elastomeric elements may be used to define the peripheral cleaning elements in place of or with the bristles.

As shown in FIG. 3, the tips of the peripheral cleaning elements 205a–c and 215a–c protrude higher from base surface 109 than the tips of the interior cleaning elements 207, 209, 211. In a preferred embodiment, two groups of peripheral cleaning elements 205, 215 are arranged along each side 108 of head 105. Each group of peripheral cleaning elements includes three generally aligned tufts of 20 bristles, although other numbers of tufts could be used. The center tuft of cleaning elements 205b, 215b in each group of peripheral cleaning elements protrudes outward farther from base surface 109 than the others tufts 205a, 205c, 215a, 215c. This arrangement allows deeper engagement of the 25 tooth surfaces along the gum line with cleaning elements 205b or 215b, while stimulating the gums with cleaning elements 205a, 205c and 215a, 215c. Moreover, each of the tufts has tapered ends 206, 216 to improve the cleaning of the interproximal areas and along the gum line.

Proximal cleaning elements 213a–b are positioned near the proximal end 111 of head 105. Preferably a pair of bristle tufts straddle longitudinal axis a––a, but one or more than two cleaning elements could be formed at the proximal end of the head. These proximal cleaning elements 213a,b are 35 preferably defined by bristle tufts, but could also include or be defined by one or more elastomeric members.

The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any combination, improves cleaning performance of toothbrushes. These advantages are also achieved by the cleaning elements and the synergistic effects. While the various features of the toothbrush 100 work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to 45 obtain some of the aforementioned advantages without the necessity to adopt all of these features. This unique combination of elements gives exceptional cleaning power in a compact head space.

While the invention has been described with respect to 50 specific examples including presently preferred modes of carrying out the invention, those skilled in the art will appreciate that there are numerous variations and permutations of the above described systems and techniques. Thus, the spirit and scope of the invention should be construed 55 broadly as set forth in the appended claims.

What is claimed is:

1. A toothbrush comprising:

a handle;

a head coupled to the handle and including a base surface, and a pair of opposite side edges; and

a plurality of tooth cleaning elements extending from the base surface of the head, the tooth cleaning elements including:

a first plurality of elastomeric walls that collectively define a first substantially closed loop, each elastomeric wall having a concave surface and separated

6

from an adjacent elastomeric wall in the first plurality of elastomeric walls by a gap, the first substantially closed loop having a first center generally equidistant from the concave surface of each of the elastomeric walls of the first plurality of elastomeric walls;

a first central cleaning element of bristles disposed within the first substantially closed loop;

a plurality of arcuate-shaped cleaning elements of bristles that collectively define a second substantially closed loop, each arcuate-shaped cleaning element having an inner concave surface defining at least an inner portion of the outer loop and an outer convex surface defining at least an outer portion of the outer loop, each arcuate-shaped cleaning element separated from an adjacent arcuate-shaped cleaning element by a gap, the outer loop having a second center generally equidistant from each of the concave surfaces of each of the arcuate-shaped cleaning elements, wherein the first center and the second center are generally concentric.

2. The toothbrush according to claim 1, wherein the head further includes a longitudinal axis, and the tooth cleaning elements further comprising:

a second plurality of elastomeric walls that collectively define a second substantially closed loop, each elastomeric wall in the second plurality of elastomeric walls having a concave surface and separated from an adjacent elastomeric wall in the second plurality of elastomeric walls by a gap, the second substantially closed loop having a third center generally equidistant from each of the elastomeric walls of the second plurality of elastomeric walls, wherein the third center is disposed adjacent to the first center and the second center, along the longitudinal axis; and

a second central cleaning element of bristles disposed within the second substantially closed loop.

3. The toothbrush according to claim 2, wherein the first central cleaning element has a first height defined from the base surface and the first plurality of elastomeric walls has a second height defined from the base surface, the first height and the second height being different.

4. The toothbrush according to claim 3, wherein the first height is above the second height.

5. The toothbrush according to claim 3, in which the plurality of arcuate-shaped cleaning elements have a third height defined from the head, the third height being above the second height.

6. The toothbrush according to claim 5, wherein the second plurality of elastomeric walls has a fourth height defined from the base surface and the second central cleaning element has a fifth height defined from the base surface, the fourth height and the fifth height being different.

7. The toothbrush according to claim 6 wherein the fifth height is below the fourth height.

8. The toothbrush according to claim 5 wherein the second plurality of elastomeric walls has a fourth height defined from the base surface and the second central cleaning element has a fifth height defined from the base surface, the fourth height being about the same as the fifth height.

9. The toothbrush according to claim 2, wherein the tooth cleaning elements further comprise at least one group of peripheral tooth cleaning elements of bristle tufts along each side edge of the head and disposed adjacent and lateral to the second substantially closed loop, each said peripheral tooth cleaning element extending farther from the base surface than the second plurality of elastomeric walls, and each said

US 7,089,621 B2

7          8

group of peripheral tooth cleaning elements including at least three adjacent peripheral cleaning elements, a central one of the adjacent peripheral tooth cleaning elements extending farther from the base surface than end ones of the adjacent peripheral tooth cleaning elements.

**10.** The toothbrush according to claim 9 wherein at least one of the peripheral tooth cleaning element has a tapered tip.

**11.** The toothbrush according to claim 1 wherein each of the arcuate-shaped cleaning elements of bristles of the plurality of arcuate-shaped cleaning elements of bristles is a continuous group of bristles.

**12.** The toothbrush according to claim 1, in which the tooth cleaning elements further include at least one distal cleaning element of bristles at a free end of the head, and the distal cleaning element extends farther from the base of the head than the elastomeric walls and the arcuate-shaped cleaning elements of bristles.

**13.** The toothbrush according to claim 12, in which the distal cleaning element defines an outer cleaning surface facing generally away from the head, wherein the outer cleaning surface is at an acute angle to the head and in which the outer cleaning surface slopes laterally away from a longitudinal axis of the head.

**14.** The toothbrush according to claim 12 in which the tooth cleaning elements further include at least one proximal cleaning element of a continuous tuft of bristles disposed near where the head couples to the handle.

**15.** A toothbrush comprising:

a handle;

a head coupled to the handle; and

a plurality of tooth cleaning elements extending from the head, the tooth cleaning elements including a first set of cleaning elements and a second set of cleaning elements, each of said sets including a plurality of arcuate cleaning elements arranged with generally opposing concave surfaces facing each other, said sets being generally concentric to each other and a central cleaning element disposed in about the center of the arcuate cleaning elements.

**16.** The toothbrush according to claim 15, in which the arcuate tooth cleaning elements are elastomeric wall members.

**17.** The toothbrush according to claim 16, in which the arcuate tooth cleaning elements define a substantially closed loop about the central cleaning element.

**18.** The toothbrush according to claim 15, in which the arcuate tooth cleaning elements are a continuous tuft of bristles.

**19.** The toothbrush according to claim 15 wherein the tooth cleaning elements further include at least one group of peripheral cleaning elements along each side of the head.

**20.** The toothbrush according to claim 19 wherein each said peripheral cleaning element is a tuft of bristles with a tapered tip.

**21.** The toothbrush according to claim 20 in which each group of said peripheral cleaning elements includes at least three adjacent peripheral cleaning elements, wherein a central one of the adjacent peripheral cleaning elements projects farther from the head than end ones of the adjacent peripheral cleaning elements.

**22.** A toothbrush comprising:

a handle;

a head coupled to the handle, the head including a base surface; and

a plurality of tooth cleaning elements extending from the base surface of the head, the tooth cleaning elements including:

an outer loop comprising a plurality of arcuate-shaped bristle tufts, each arcuate-shaped bristle tuft having a concave surface defining an internal side of the outer loop and a convex surface defining an external side of the outer loop, and separated from an adjacent arcuate-shaped bristle tuft of the plurality of arcuate-shaped bristle tufts by an outer loop gap;

a first substantially closed loop being disposed within the outer loop, the first substantially closed loop including a first plurality of elastomeric arc segments, each elastomeric arc segment having a convex surface and being separated from an adjacent elastomeric arc segment of the first plurality of elastomeric arc segments by a first loop gap, in which at least one first loop gap faces the concave surface of an arcuate-shaped bristle tuft of the outer loop; and

a fluid pathway being defined between the convex surface of the first substantially closed loop and the concave surface of the outer loop for allowing a fluid to flow therein.

**23.** The toothbrush according to claim 22 wherein the first substantially closed loop includes two sets of opposing first loop gaps, the tooth cleaning elements further including a bristle tuft disposed within the first substantially closed loop and between the opposing sets of the first loop gaps.

**24.** The toothbrush according to claim 22 wherein the at least one first loop gap is unaligned with an outer loop gap.

**25.** The toothbrush according to claim 22 wherein the first substantially closed loop defines an interior region, the interior region being in fluid communication with the fluid pathway via the at least one first loop gap.

**26.** The toothbrush according to claim 22 further comprising a first central bristle tuft disposed within the first substantially closed loop, wherein each elastomeric arc segment has a first height extending from the base surface and each arc segment has a top surface above the base surface, and each arcuate-shaped bristle tuft has a second height extending from the base surface, the first height being below the second height.

**27.** The toothbrush according to claim 26, wherein a generally cylindrical cavity is defined by the top surfaces of the elastomeric arc segments and the concave surfaces of each arcuate-shaped bristle tuft of the outer loop.

**28.** The toothbrush according to claim 22 further comprising:

a second substantially closed loop including a second plurality of elastomeric arc segments, each elastomeric arc segment of the second plurality of elastomeric arc segments having a concave surface, a convex surface and separated from an adjacent elastomeric arc segment of the second plurality of elastomeric arc segments by a second loop gap, wherein at least one second loop gap is generally aligned on an axis with at least one first loop gap of the first substantially closed loop.

**29.** The toothbrush according to claim 28 further comprising a first central bristle tuft disposed within the first substantially closed loop and generally disposed on the axis.

**30.** The toothbrush according to claim 29 further comprising a second central bristle tuft disposed within the second substantially closed loop, the second bristle tuft being generally disposed on the axis.

US 7,089,621 B2

9

10

**31**. The toothbrush according to claim **29** wherein head includes a pair of side edges, wherein the tooth cleaning elements further include at least one group of peripheral cleaning elements along each side of the head.

**32**. The toothbrush according to claim **31** in which each group of peripheral cleaning elements includes at least three adjacent peripheral cleaning elements, wherein a central one of the adjacent peripheral cleaning elements extends farther from the head than end ones of the adjacent peripheral cleaning elements.

**33**. The toothbrush according to claim **22** wherein each arcuate-shaped bristle tuft is a continuous group of bristles.

* * * * *

# EXHIBIT B

US 20060026784A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2006/0026784 A1**

Moskovich et al.                                      (43) **Pub. Date:           Feb. 9, 2006**

(54) **ORAL CARE IMPLEMENT**

(75) Inventors: **Robert Moskovich**, East Brunswick, NJ (US); **John J. Gatzemeyer**, Hillsborough, NJ (US); **Bruce Russell**, Howell, NJ (US); **Peter Andersen**, Zell am See (AT); **Luca Casini**, Milan (IT); **John Hancock**, Hertfordshire (IT); **Douglas Hohlbein**, Pennington, NJ (US); **Eduardo Jimenez**, Manalapan, NJ (US); **Thomas Kuchler**, Schliem (CH); **Tanja Langgner**, London (GB); **Michael Rooney**, Milburn, NJ (US); **Alan V. Sorrentino**, Cranbury, NJ (US); **Thomas Mintel**, Rahway, NJ (US); **Joachim Storz**, Zell am See (AT)

Correspondence Address:
**BANNER & WITCOFF, LTD., ATTORNEYS FOR RESERVE CLIENT NO. 3
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON, DC 20001-4597 (US)**

(73) Assignee: **Colgate-Palmolive Company**, New York, NY

(21) Appl. No.:        **11/122,258**

(22) Filed:               **May 5, 2005**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/768,363, filed on Jan. 30, 2004, which is a continuation-in-part of application No. 10/697,213, filed on Oct. 30, 2003. Continuation-in-part of application No. 11/019,671, filed on Dec. 23, 2004, which is a continuation-in-part of application No. 10/869,922, filed on Jun. 18, 2004, which is a continuation-in-part of application No. 10/601,106, filed on Jun. 20, 2003, now abandoned, and which is a continuation-in-part of application No. PCT/US03/30633, filed on Sep. 26, 2003.
Said application No. 10/869,922 is a continuation-in-

part of application No. PCT/US03/29497, filed on Sep. 17, 2003.
Continuation-in-part of application No. 10/989,267, filed on Nov. 17, 2004, which is a continuation-in-part of application No. 29/209,242, filed on Jul. 14, 2004, and which is a continuation-in-part of application No. 29/209,244, filed on Jul. 14, 2004.
Continuation-in-part of application No. 10/902,257, filed on Jul. 30, 2004, which is a continuation-in-part of application No. PCT/US03/29497, filed on Sep. 17, 2003.
Said application No. 10/902,257 is a continuation-in-part of application No. 29/189,729, filed on Sep. 10, 2003.
Continuation-in-part of application No. 11/053,583, filed on Feb. 8, 2005, which is a continuation of application No. PCT/US03/24878, filed on Aug. 8, 2003.

(Continued)

**Publication Classification**

(51) Int. Cl.
    *A46B  9/04*        (2006.01)
(52) U.S. Cl. .............................. 15/110; 15/167.1; 15/111;
                                                    606/161

(57)                    **ABSTRACT**

An oral care implement is provided having a handle and a head with a soft tissue cleanser and/or tooth cleaning elements. The tooth cleaning elements may be attached to a flexible support on the head and be outwardly movable from the head. The cleaning elements may include a column-shaped bristle at the central portion of the flexible support, and may further include a row of first cleaning elements traversing a central region of the flexible support. The soft tissue cleanser may include a plurality of projections for cleaning the soft tissue and may have an elongate ridge projecting from the head in generally the same direction as the projections. The handle may include a base with a gripping region and a projection protruding from the base in the gripping region. The handle may also have a grip surface with a plurality of spaced slot openings exposing portions of the base.



US 2006/0026784 A1
Page 2

**Related U.S. Application Data**

Continuation-in-part of application No. 11/053,589, filed on Feb. 8, 2005, which is a continuation of application No. PCT/US03/24879, filed on Aug. 8, 2003.

(60)   Provisional application No. 60/414,117, filed on Sep. 27, 2002. Provisional application No. 60/418,776, filed on Oct. 16, 2002. Provisional application No. 60/419,425, filed on Oct. 18, 2002. Provisional application No. 60/412,290, filed on Sep. 20, 2002. Provisional application No. 60/412,290, filed on Sep. 20, 2002. Provisional application No. 60/402,162, filed on Aug. 9, 2002. Provisional application No. 60/402,170, filed on Aug. 9, 2002. Provisional application No. 60/402,670, filed on Aug. 12, 2002. Provisional application No. 60/402,165, filed on Aug. 9, 2002.



FIG. 1



FIG. 2

Patent Application Publication    Feb. 9, 2006    Sheet 3 of 62    US 2006/0026784 A1





FIG. 3



**FIG. 4**



**FIG. 5**



FIG. 6



**FIG. 7**



**FIG. 8**



**FIG. 9**



**FIG. 10**



FIG. 11



1240

1210B

FIG. 12



FIG. 13



FIG. 14



**FIG. 15**



**FIG. 16**



**FIG. 17**



FIG. 18

FIG. 19

FIG. 20

FIG. 21



FIG. 22



FIG. 23



FIG. 24



FIG. 25

Case 1:06-cv-00417-GMS    Document 38-2    Filed 05/08/2007    Page 29 of 112



**FIG. 26**



**FIG. 27**



**FIG. 28**



**FIG. 29**



**FIG. 30**



**FIG. 31**



FIG. 32



FIG. 33



3416

3426
3430
3428
3424
3422
3428
3430
3426

3414

3410

3412

FIG. 34





FIG. 40

FIG. 41

FIG. 42

Patent Application Publication    Feb. 9, 2006    Sheet 20 of 62    US 2006/0026784 A1



FIG. 43

FIG. 44



FIG. 45



FIG. 46



FIG. 47

FIG. 48



FIG. 49



FIG. 50



FIG. 51



FIG. 52

Case 1:06-cv-00417-GMS    Document 38-2    Filed 05/08/2007    Page 44 of 112



FIG. 53

FIG. 54



FIG. 55

FIG. 56



FIG. 57



FIG. 58



FIG. 59



FIG. 59a          FIG. 59b



FIG. 59c



**FIG. 60**



**FIG. 61**



FIG. 61a



FIG. 61b



FIG. 62

FIG. 63

FIG. 64

FIG. 65



FIG. 66

FIG. 67

FIG. 68



FIG. 69



FIG. 70



FIG. 71



FIG. 72



FIG. 73                  FIG. 74

FIG. 75



**FIG. 76**



**FIG. 77**

Case 1:06-cv-00417-GMS    Document 38-2    Filed 05/08/2007    Page 55 of 112



**FIG. 78**



**FIG. 79**



FIG. 80



FIG. 81



FIG. 82        FIG. 83



FIG. 84



FIG. 85



FIG. 86

FIG. 87



FIG. 88

FIG. 89



FIG. 90

FIG. 91



FIG. 92

FIG. 93



FIG. 94

FIG. 95



FIG. 96

FIG. 97



FIG. 98



FIG. 98A

FIG. 98B

FIG. 98C



_Fig._ 103





*Fig. 104*

*Fig. 106*

*Fig. 105*

*Fig. 107*

_Fig. 108_



9850

9810A



Fig. 114





FIG. 115



FIG. 116

Case 1:06-cv-00417-GMS    Document 38-2    Filed 05/08/2007    Page 76 of 112



**FIG. 117**



**FIG. 118**



FIG. 119



FIG. 120



FIG. 121

US 2006/0026784 A1

Feb. 9, 2006

1

# ORAL CARE IMPLEMENT

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] This application is a continuation in part of co-pending U.S. patent application Ser. No. 10/768,363, filed Jan. 30, 2004, which is a continuation in part application of U.S. application Ser. No. 10/697,213, filed Oct. 30, 2003.

[0002] Further, this application is a continuation in part of co-pending U.S. patent application Ser. No. 11/019,671, filed Dec. 23, 2004, which: (1) is a continuation in part of co-pending U.S. patent application Ser. No. 10/869,922, filed Jun. 18, 2004, which is a continuation in part of co-pending U.S. patent application Ser. No. 10/601,106, filed Jun. 20, 2003; (2) is a continuation in part of PCT Patent Application Serial No. PCT/US03/030633 (designating the U.S.) filed Sep. 26, 2003, which claims the benefit of U.S. Provisional Application No. 60/414,117, filed Sep. 27, 2002, U.S. Provisional Application No. 60/418,776, filed Oct. 16, 2002, and U.S. Provisional Application No. 60/419, 425, filed Oct. 18, 2002; (3) is a continuation in part of PCT Patent Application No. PCT/US2003/029497 (designating the U.S.), filed Sep. 17, 2003, which claims the benefit of U.S. Provisional Application No. 60/412,290, filed Sep. 20, 2002; (4) is a continuation in part of U.S. patent application Ser. No. 29/189,729, filed Sep. 10, 2003; and (5) is a continuation-in-part of co-pending U.S. patent application Serial No. 10/989,267, filed Nov. 17, 2004, which is a continuation-in-part application of co-pending U.S. patent application Ser. No. 29/209,242, filed Jul. 14, 2004.

[0003] Additionally, this application is a continuation in part application of co-pending U.S. application Ser. No. 10/989,267, 2004, filed Nov. 17, 2004, which is a continuation in part application of co-pending U.S. patent application Ser. No. 29/209,242, filed Jul. 14, 2004, and a continuation in part application of co-pending U.S. patent application Ser. No. 29/209,244, filed Jul. 14, 2004.

[0004] Further, this application is a continuation in part application of co-pending U.S. application Ser. No. 10/902, 257, 2004, filed Jul. 30, 2004, which (1) is a continuation in part of co-pending PCT Application No. PCT/US2003/ 029497 (designating the U.S.), filed Sep. 17, 2003, entitled "Toothbrush With Gripping Area" (Attorney Docket No. IR 6989-00), which claims priority of U.S. Provisional Application Ser. No. 60/412,290, filed Sep. 20, 2002; and (2) is a continuation in part of co-pending U.S. patent application Ser. No. 29/189,729, filed Sep. 10, 2003.

[0005] In addition, this application is a continuation in part of U.S. patent application Ser. No. 11/053,583, filed Feb. 8, 2005, which is a continuation of International Patent Application No. PCT/US2003/024878 designating the U.S. filed Aug. 8, 2003 and published as International Publication No. WO2004/014181, which claims priority to U.S. Applications Ser. Nos. 60/402,162 filed Aug. 9, 2002, 60/402,170 filed Aug. 9, 2002 and 60/402,670 filed Aug. 12, 2002.

[0006] Further, this application is a continuation in part of U.S. patent application Ser. No. 11/053,589, filed Feb. 4, 2005, which is a continuation of International Patent Application No. PCT/US2003/024879 designating the U.S. filed Aug. 8, 2003 and published as International Publication No. WO2004/014182 on Feb. 19, 2004, which claims priority to U.S. Application Ser. No. 60/402,165 filed Aug. 9, 2002.

[0007] The contents of the above-noted applications are each expressly incorporated herein by reference.

## FIELD OF THE INVENTION

[0008] The present invention pertains to an oral care implement having various features that may include a cleanser for cleaning soft tissue surfaces in a user's mouth, tooth cleaning or tooth treating elements, movable cleaning features, vibratory mechanisms, and/or handle gripping features.

## BACKGROUND OF THE INVENTION

[0009] A variety of toothbrush configurations exist that have stationary and/or mechanically-driven movable cleaning elements. These conventional toothbrushes are dedicated to tooth cleaning/polishing operations and typically include a head portion directed to the cleaning/polishing operations, and a handle portion. The head typically has a flat or slightly altered surface to which the cleaning elements are attached, or to which mechanically-driven movable carriers for the cleaning elements are attached. The cleaning elements of these toothbrushes are configured for cleaning and/or for polishing a user's teeth, but are not configured for effective cleaning of soft tissue in a user's mouth, such as the user's tongue.

[0010] Tongue scrapers exist as devices for removing micro debris disposed on a user's tongue. Conventional tongue scrapers are stand-alone devices directed to the singular purpose of scraping a user's tongue. These conventional devices typically include a handle and scraper portion without including other cleaning elements.

[0011] Users manipulate conventional toothbrushes and tongue scrapers by grasping their handle portions. The handles are typically simple, linear rods of a relatively rigid material, which are neither comfortable for the user nor given to easy manipulation. As these devices are commonly used in wet conditions, their handles are often slippery during use.

[0012] Many people use multiple oral care implements, such as toothbrushes and tongue scrapers, on a daily basis to accomplish multiple oral care tasks. For instance, a user may use a toothbrush to clean his teeth and then use a tongue scraper to remove debris from his tongue. The user may then re-use the toothbrush to further clean his tongue. Thus, the user may switch between various oral care implements during a single session in a wet environment.

## BRIEF SUMMARY OF THE INVENTION

[0013] The present invention pertains to an oral care implement that provides several advantages and that may be used for multiple functions. In one embodiment of the invention, an oral care implement is provided that has a plurality of cleaning elements extending from the head, which are attached to a flexible support on the head and are outwardly movable from the head. The cleaning elements may include a column-shaped central bristle at the central portion of the flexible support, and may further include a row of first cleaning elements traversing a central region of the flexible support. The oral care implement may further include a soft tissue cleanser on the head, which may be disposed on an opposite face from the cleaning elements. The soft tissue cleanser may include a ring of projections.

2

[0014]   Embodiments of the invention may be multi-functional and include various combinations of features in advantageous combinations. Some embodiments include a soft tissue cleanser in combination with tooth cleaning features and/or in combination with gripping features on the handle that improve the user's grip and handling thereof. The embodiments may be manual or mechanically-driven devices, or combinations thereof. These and other aspects are discussed in relation to the following figures.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0015]   A more complete understanding of the present invention and the advantages thereof may be acquired by referring to the following description in consideration of the accompanying drawings, in which like reference numbers indicate like features.

[0016]   FIG. 1 shows a side view, partially in section, of an embodiment of a toothbrush according to the invention and of a handle-closure part separated from one another (without a battery).

[0017]   FIG. 2 shows a bottom view, partially in section, of another embodiment of a toothbrush according to the invention shown in the assembled state.

[0018]   FIG. 3 shows a side view, partially in section, of the toothbrush according to FIG. 2 and the closure part separated from one another (without a battery).

[0019]   FIG. 4 shows a side view of a further embodiment of a toothbrush according to the invention shown in the assembled state.

[0020]   FIG. 5 shows a front part of the toothbrush according to FIG. 4 with different embodiments of exchangeable treatment heads.

[0021]   FIG. 6 is a perspective view of an additional toothbrush embodiment in accordance with this invention.

[0022]   FIG. 7 is a side elevational view, in partial section, of the toothbrush shown in FIG. 6.

[0023]   FIG. 8 is a top, plan view of the toothbrush shown in FIGS. 6 and 7.

[0024]   FIG. 9 is a side elevational view similar to FIG. 7 partially broken away.

[0025]   FIG. 10 is a side elevational view showing a subassembly of the bristle containing portion of the brush head in accordance with another aspect of this invention.

[0026]   FIG. 11 is a side elevational view, in partial section, showing the subassembly of FIG. 10 incorporated in a completed toothbrush.

[0027]   FIG. 12 is a top plan view of a further toothbrush in accordance with the invention.

[0028]   FIG. 13 is a top plan view of a head of a manual toothbrush in accordance with the invention.

[0029]   FIG. 14 is a side cross-sectional view taken along lines 14-14 of FIG. 13 showing the bristle and wiper arrangement with minimal force applied to the toothbrush handle.

[0030]   FIG. 15 is a side cross-sectional view taken along lines 14-14 of FIG. 13 showing the bristle and wiper arrangement where greater force is applied to the toothbrush handle.

[0031]   FIG. 16 is a top plan view of a powered toothbrush in accordance with the invention.

[0032]   FIG. 17 is a side elevational overview of another toothbrush embodiment in accordance with the invention having a flexible head with fingers mounted thereon, shown broken along its length and showing the ribs interconnecting the finger and flexible head.

[0033]   FIG. 18 is a fragmental front plan view of the toothbrush of FIG. 17 showing an arrangement of fingers connected by ribs to a flexible head.

[0034]   FIG. 19 is a fragmental plan view of single finger connected by ribs to an unflexed toothbrush head of the toothbrush of FIG. 17.

[0035]   FIGS. 20 and 21 are fragmental plan views of a single finger connected by ribs to a flexible head in flexed positions caused by movement of the flexible head of the toothbrush of FIG. 17.

[0036]   FIGS. 22-24 are fragmental plan views of multiple fingers interconnected to each other and to a flexible toothbrush head in accordance with FIG. 17 by ribs forming a web between the fingers.

[0037]   FIG. 25 is a fragmental cross-sectional view in elevation of the fingers mounted in a flexible toothbrush head in accordance with FIG. 17.

[0038]   FIGS. 26-28 are fragmental elevational views of the fingers used with the toothbrush of FIG. 17.

[0039]   FIG. 29 is a side elevational view of a further toothbrush configuration using a flexible head and gum stimulation fingers.

[0040]   FIGS. 30 and 31 are cross sectional views of the fingers with ribs interconnecting the fingers to a flexible portion of the toothbrush head.

[0041]   FIG. 32 is a perspective view of the toothbrush of FIG. 29 including a head constructed in accordance with another embodiment of the invention.

[0042]   FIG. 33 is a top plan view of the head of FIG. 32.

[0043]   FIG. 34 is a side elevational view of a further toothbrush embodiment in accordance with this invention.

[0044]   FIG. 35 is a front plan view showing the resilient cleaning field to which the cleaning/treating elements of FIG. 34 could be mounted.

[0045]   FIGS. 36-37 are front plan views of different forms of cleaning heads in accordance with the invention.

[0046]   FIG. 38 is a side elevational view of still yet another form of cleaning head in accordance with this invention.

[0047]   FIG. 39 is a front plan view of a modified form of cleaning head in accordance with the invention.

[0048]   FIG. 40 is a perspective view of a further embodiment of a toothbrush of the present invention wherein the bristle bars are generally in the form of parallelepipeds.

3

[0049]  FIG. 41 is a perspective view of another embodiment of a toothbrush of the present invention, wherein the bristle bars have generally curved foot-prints.

[0050]  FIG. 42 is a perspective view of a further embodiment of a toothbrush of the present invention, wherein the bristle bars have generally oval footprints.

[0051]  FIG. 43 is a perspective view of an alternative embodiment of the toothbrush shown in FIG. 40, wherein there are additional bristle bars located central to the toothbrush head.

[0052]  FIG. 44 is a perspective view of an alternative embodiment of the toothbrush shown in FIG. 40, wherein there are additional bristle tufts located central to the toothbrush head.

[0053]  FIG. 45 is an exploded assembly perspective view of an oral care implement according to one or more aspects of an illustrative embodiment.

[0054]  FIG. 46 is an enlarged perspective view of a head of an oral care implement of FIG. 45.

[0055]  FIG. 47 is a plan view of the oral care implement of FIG. 45 illustrating a tongue cleaning feature.

[0056]  FIG. 48 is a partial section view of a head of the oral care implement of FIG. 45 taken along line 48-48 of FIG. 47.

[0057]  FIG. 49 is a plan view of the oral care implement of FIG. 45 illustrating at least one tooth cleaning configuration.

[0058]  FIG. 50 is another perspective of the view of the oral care implement of FIG. 45.

[0059]  FIG. 51 is a section view of an alternative construction of the head of the oral care implement of FIG. 45.

[0060]  FIG. 52 is a perspective view of a head of a further embodiment of the invention.

[0061]  FIG. 53 is a partial cross-sectional view taken along line IX-IX in FIG. 52.

[0062]  FIG. 54 is a partial cross-sectional view of another embodiment of the invention taken along line IX-IX in FIG. 52.

[0063]  FIG. 55 is a partial cross-sectional view of a further embodiment taken along line IX-IX in FIG. 52.

[0064]  FIG. 56 is a partial cross-sectional view of an additional embodiment taken along line IX-IX in FIG. 52.

[0065]  FIG. 57 is a partial perspective view of yet another oral care implement in accordance with the present invention.

[0066]  FIG. 58 is a partial cross-sectional view taken along line XIV-XIV in FIG. 57.

[0067]  FIG. 59 is a perspective view of a head of a further toothbrush embodiment in accordance with the present invention.

[0068]  FIG. 59a is a top plan view of the head of FIG. 59.

[0069]  FIGS. 59b and 59c are top plan views of the head illustrating alternative concave-shaped ridges for the head of FIG. 59.

[0070]  FIG. 60 is a partial cross-sectional view taken along line II-II in FIG. 59.

[0071]  FIG. 61 is a partial cross sectional plan view of an alternative structure taken along line II-II of FIG. 59.

[0072]  FIGS. 61a and 61b are partial cross-sectional views of alternative ridge shapes for the embodiment of FIG. 59.

[0073]  FIGS. 62-75 are each a top plan view of the head illustrating an alternative ridge construction for the embodiment of FIG. 59.

[0074]  FIGS. 76-80 are each a perspective view of a further embodiment of a head of an oral care implement in accordance with the invention.

[0075]  FIG. 81 is a perspective view of an oral care implement according to one or more aspects of another embodiment of the present invention.

[0076]  FIG. 82 is a bottom plan view of the oral care implement of FIG. 81.

[0077]  FIG. 83 is a top plan view of the oral care implement of FIG. 81.

[0078]  FIG. 84 is a side view of the oral care implement of FIG. 81.

[0079]  FIG. 85 is a section view of the oral care implement taken along line 85-85 in FIG. 83.

[0080]  FIG. 86 is a partial side view of a base of an oral care implement of FIG. 81.

[0081]  FIG. 87 is a partial front view of the base of FIG. 86.

[0082]  FIG. 88 is a forward axial view of the oral care implement of FIG. 81.

[0083]  FIG. 89 is a forward axial view of the oral care implement of FIG. 81.

[0084]  FIG. 90 is top plan view of a further oral care implement in accordance with the present invention.

[0085]  FIG. 91 is partial perspective view of a head portion of the oral care implement of FIG. 90.

[0086]  FIG. 92 is side view of a further oral care implement in accordance with the present invention.

[0087]  FIG. 93 is partial perspective view of a head portion of the oral care implement of FIG. 92.

[0088]  FIG. 94 is side view of a further oral care implement in accordance with the present invention.

[0089]  FIG. 95 is partial perspective view of a head portion of the oral care implement of FIG. 94.

[0090]  FIG. 96 is side view of a further oral care implement in accordance with the present invention.

[0091]  FIG. 97 is partial perspective view of a head portion of the oral care implement of FIG. 96.

[0092]  FIG. 98 is partial perspective view of a head portion of yet another oral care implement in accordance with the present invention.

[0093]  FIGS. 98A-C show an additional oral care implement in accordance with the invention.

[0094] FIG. 99 is a perspective view of a toothbrush in accordance with the invention.

[0095] FIG. 100 is a side view of the toothbrush shown in FIG. 99.

[0096] FIG. 101 is a top view of the toothbrush shown in FIGS. 99 and 100.

[0097] FIG. 102 is a cross-sectional view taken through line 102-102 of FIG. 101.

[0098] FIG. 103 is a top view of a powered toothbrush in accordance with the invention.

[0099] FIG. 104 is a perspective view of a toothbrush having elastic areas in the head and handle in accordance with a further embodiment of the invention.

[0100] FIG. 105 is a side view of the toothbrush shown in FIG. 104.

[0101] FIG. 106 is a top view of the toothbrush shown in FIGS. 104 and 105.

[0102] FIG. 107 is a side view of the toothbrush of FIG. 104 showing deflection in the open area under the bristles and the handle area.

[0103] FIG. 108 is a top view of a powered toothbrush in accordance with the invention.

[0104] FIG. 109 is a perspective view of a toothbrush formed in accordance with still another embodiment of the invention.

[0105] FIG. 110 is a side elevational view of the toothbrush shown in FIG. 109.

[0106] FIG. 111 is a top view of the toothbrush shown in FIGS. 109-110.

[0107] FIG. 112 is an end view of the toothbrush shown in FIGS. 109-111 shown in an original closed position.

[0108] FIG. 113 is a cross-sectional view taken along line 113-113 of FIG. 111 with the brush head in its hinged open position and omitting some of the cleaning elements.

[0109] FIG. 114 is a top view of a powered toothbrush in accordance with an embodiment of the invention.

[0110] FIG. 115 is perspective view of a head portion of a further embodiment of an oral care implement in accordance with the invention.

[0111] FIG. 116 is a top view of the head portion of FIG. 115.

[0112] FIG. 117 is a side view of the head portion of FIG. 115.

[0113] FIG. 118 is a side view of a head portion of an oral care implement in accordance with the invention.

[0114] FIG. 119 is partial perspective view of a head portion of an oral care implement in accordance with the invention.

[0115] FIG. 120 is a top view of the head portion of FIG. 119.

[0116] FIG. 121 is a front view of the head portion of FIG. 119.

DETAILED DESCRIPTION OF THE INVENTION

[0117] The following embodiments describe aspects of the invention in the form of various oral care implement configurations that provide a variety of features and functions. Although these aspects are disclosed in the context of particular exemplary embodiments, the invention provides an oral care implement that includes one or more of the features described herein. The oral care implement may include a first feature described in one example configuration herein, as well as a second feature described in another example configuration herein.

[0118] In other words, the invention contemplates mixing and matching features from the disclosed embodiments in various combinations into a single oral care implement. The present invention thus makes it possible to select a combination of cleaning/treating element configurations, tissue cleanser configurations, handle features, gripping features, mechanical driving features, materials and orientations, etc. to achieve intended results, and to deliver additional oral health benefits, such as enhanced cleaning, tooth polishing, tooth whitening, tongue cleansing, massaging of gums, etc.

[0119] Oral care implements of various configurations are provided that generally include a handle and one or more cleaning features. The handle may include a mechanically-driven feature, such as rotating, vibrating, and/or moving cleaning elements. In one configuration, a toothbrush is provided with a mechanical vibratory element and a head having a plurality of different types of cleaning/treating elements and cleaning areas which provide for an enhanced cleaning and/or treating effects. The cleaning/treating elements move by the mechanical vibratory device and/or independently of the mechanical vibratory device. Such a toothbrush, therefore, provides for synergistic and enhanced cleaning, scrubbing and massaging experience on the teeth and gums.

[0120] A variety of toothbrush configurations are disclosed herein. One configuration is a toothbrush having multiple groupings of cleaning/treating elements that are uniquely mounted to the head of a toothbrush, which mounting facilitates flexible orientation of those groupings relative to the teeth and gums being cleaned. For example, the head of such a toothbrush could be designed to "wrap around" individual teeth resulting in deeper penetration of cleaning/treating elements between teeth. Such a configuration provides overall cleaning, for example, by independent movement of groups of cleaning/treating elements relative to the toothbrush head and each other.

[0121] In one example, a first group is a central grouping or "island" of cleaning/treating elements flexibly mounted to the toothbrush head. A second group is fixedly mounted to the toothbrush head in a configuration surrounding at least part of the central grouping. The central group is attached to the toothbrush head via, a flexible elastomeric membrane, resilient plastic straps, webbing or other material that flexibly interconnects the first group with the toothbrush head.

[0122] In another embodiment, the toothbrush head is divided into a plurality of separate cleaning areas. These areas include at least one and preferably two areas wherein the cleaning/treating elements are mounted to a base with other areas having the cleaning/treating elements mounted to

5

pods wherein the pods have a greater degree of movability than do the bases. The pods are resilient so that during use, the cleaning/treating elements could be moved from their initial position and then returned to the initial position. The pods may be formed from a narrow or small diameter beam extending from the body of the toothbrush head to a cleaning/treating elements support pad. The narrow or small diameter beam may be enclosed in elastic material.

[0123] In one other configuration, a relatively non-movable base is located at each of the distal and proximal ends of the toothbrush head with at least two elastic pods mounted between the two bases. These various cleaning areas are separated from each other by channels extending completely across the head in a transverse direction.

[0124] This application further discloses a toothbrush configuration having multiple groupings of cleaning/treating elements ("islands") uniquely mounted to the head of a toothbrush, which mounting facilitates flexible orientation of those groupings relative to the teeth and gums being cleaned. More particularly, the groupings of cleaning/treating elements are mounted relative to the toothbrush head using a transverse, flexible membrane or web extending from the periphery of the cleaning/treating elements to the sidewalls of the toothbrush head. In one example, such flexible mounting facilitates 360 degree limited angle wobble of the cleaning/treating elements, which, in turn, orients the cleaning/treating elements towards the teeth even if the toothbrush head is not angled directly parallel to the user's teeth.

[0125] One exemplary toothbrush of this configuration includes a head in the form of a base having an upstanding wall to create a peripheral frame. In one embodiment, a thin resilient membrane or web is mounted within the frame. The membrane or web is capable of flexing to facilitate orientation of the cleaning/treating elements carried by the membrane relative to the teeth of the user.

[0126] The cleaning/treating elements may be bristles secured to the membrane or web by in-molded technology. Additional cleaning/treating elements can be arranged on the periphery of the "islands" to facilitate cleaning in those areas between the "islands". In a one embodiment, these additional cleaning/treating elements are fixedly mounted to the toothbrush head outside the periphery of the membrane or web flexibly holding the "islands" of cleaning/treating elements. This combination of flexible and fixed mounting of cleaning/treating elements provides very effective brushing of teeth and massaging of gums.

[0127] In use, for example, pressure applied to the toothbrush handle by a user causes a first group of cleaning/treating elements to contact the teeth being cleaned. As the force applied to the toothbrush exceeds a predetermined volume, a central group of cleaning/treating elements moves relative to the balance of the head. This movement, in turn, allows an outer group of fixed cleaning/treating elements to contact other areas of the teeth located at a greater distance from the head, including interproximal spaces between teeth.

[0128] This desired flexibility of the central grouping of cleaning/treating elements may be accomplished with an elastomeric bridge between the central movable group of cleaning/treating elements and the surrounding outer group of cleaning/treating elements. This elastomeric bridge may be continuous or maybe a series of independent bridges with a void between each bridge to encourage greater flexibility. The width of this bridge can be adjusted to vary the amount of force needed to push the central group of cleaning/treating elements into a position where the outer group can achieve their greatest cleaning potential.

[0129] In another toothbrush configuration, the gap between the groups of cleaning/treating elements corresponding to the width of the elastomeric bridge between them can effectively be filled with elastomeric wipers that move as force is applied to the central group of cleaning/treating elements. For example, tapered elastomeric wipers can be mounted to the elastomeric bridge so that the narrower tip of the wipers flex in ward and outward as force is applied to and released from the toothbrush handle. This wiping action further enhances the cleaning and treating functions of the toothbrush.

[0130] In a powered configuration, the toothbrush has a power source. The power source may be at least one battery, for example, 1, 2 or more batteries. The battery may be removable or fixed, rechargeable, non-rechargeable or rechargeable from an external source. Further, the battery may be of any size, such as, for example, AA, AAA, 9V and C. Alternatively, the power source may from an external source, for example via an AC adapter.

[0131] Turning to the Figures, both the toothbrush illustrated in FIG. 1 and that according to FIGS. 2 and 3 each have a handle 1, a front bristle-carrying head part 3 and a neck part 4, which connects the head part 3 to the handle 1. The bristles combined to form clusters of bristles 6 are anchored in a bristle carrier 5 and form a profiled brushing surface with their free ends. In the embodiment illustrated, the bristle carrier 5 with the clusters of bristles 6 is positioned, in a manner which is known per se and thus is not described in detail, on a retaining part 2 of the head part 3 such that it can be exchanged. Also, as note above, any of the arrangements of teeth cleaning elements disclosed herein could be used in place of the illustrated bristle pattern.

[0132] The neck part 4 is provided with neck-part zones 7 which are preferably made of an elastically relatively compliant material component and provide for, or additionally increase, the elasticity of the neck part 4, with the result that, during use of the toothbrush, the bristle-carrying head part 3 can be forced back resiliently in the case of forces acting in the direction of the brushing surface. Optionally, the neck-part zones 7 are designed as notches which extend over part of the neck circumference and are filled with elastically compliant material (e.g., with a thermoplastic elastomer). It is understood that the form and number of neck-part zones can be different. It is also conceivable to have a flexible neck zone without using elastic material components, e.g., by providing constrictions or by way of a bellows.

[0133] Integrated in the front head part 3, or in that region of the neck part 4 which is adjacent to the head part 3, is a mechanical vibratory device 10, by means of which vibrations which effect or enhance the teeth-cleaning action may be imparted to the bristle-carrying head part 3. The vibratory device 10 can be connected to an electric power source, accommodated in the handle 1, via electrical connections running in the neck part 4, as is described herein below. In one embodiment, neck-part zones 7 are made of an elasti-

cally compliant material which dampens the vibration between the vibrating head part 3 and the handle 1, with the result that the vibratory action is produced, in particular, in the head part and is transmitted to the handle 1 to a slight extent. This means that slight vibrations can be felt in the handle 1 during the teeth-cleaning operation, and the toothbrush is thus comfortable to handle. In another embodiment, the vibration produced is not damped by the handle 1 and can act to full effect in the head part 3. Instead of the neck-part zones 7 having elastically compliant-material, however, other vibration-damping elements could also be used. Further, the dampening may also be achieved, for example, by using a basic material, by the neck part being configured in a particular form, for example by the presence of a bellows/accordion part, etc.

[0134] Accommodated in the handle 1 is a sheath or sleeve 20 which extends in the longitudinal direction of said handle and is made of electrically conductive material. Both the handle 1 and the sleeve 20 are open to the rear, this forming a cavity 21 which can be closed from the rear by a closure part 22 and into which it is possible to insert a battery 25, in the preferred embodiment illustrated a commercially available, non-rechargeable cylindrical battery, with a defined power (e.g. 1.5 V) as the power source for the vibratory device 10. It would also be possible, however, for a button cell or for a rechargeable storage battery to be used as the power source.

[0135] A spring contact 29 for the positive pole 30 of the battery 25 (see FIG. 2) is fitted in the sleeve 20, on a transverse wall 28, and is connected to the vibratory device 10 via an electric line 31, a switch 32, which is installed in the sleeve 20 and can be actuated from the outside of the handle 1, and an electric line 33 running in the neck part 4. The electrical connection can be interrupted by means of the switch 32.

[0136] The closure part 22 is provided with a threaded stub 22a made of an electrically conductive material and can be screwed into the handle 1 and/or into the sleeve 20 by way of said threaded stub. The threaded stub 22a is provided with a contact surface 22b which, with the closure part 22 screwed in, comes into abutment against the negative pole 35 of the battery 25 inserted into the sleeve 20. The negative pole 35 is electrically connected to the vibratory device 10 via the threaded stub 22a, the sleeve 20 itself and a line 34, which connects the sleeve 20 to the vibratory device 10 and runs in the neck part 4.

[0137] Instead of being transmitted via the electrically conductive sleeve 20, it would also be possible for the power to be transmitted in some other way, for example using wires or an electrically conductive plastic.

[0138] In the embodiment illustrated in FIG. 1, the vibratory device 10 comprises a vibratory element 11' which functions preferably in the manner of a vibratory armature, can be electrically connected directly to the power source via the lines 33, 34 and, with the power source connected, is made to vibrate.

[0139] In the case of the toothbrush variant illustrated in FIGS. 2 and 3, the vibratory device 10 comprises a vibratory element 11 in the form of an eccentric, which produces mechanical vibrations and can be rotated about an axis located in the longitudinal direction of the toothbrush, and

also comprises a drive which is arranged directly adjacent and is designed as a micromotor 15. The vibratory element 11 is connected to the shaft 15a of the micromotor 15, which can be electrically connected to the power source via the lines 33, 34. The micromotor 15 and the eccentric may be accommodated as a structural unit in a housing 12.

[0140] Instead of an eccentric which can be driven in rotation, it would also be possible to have a vibratory element 11 which can be driven in a translatory manner. It would be possible, in the case of the toothbrush according to the invention, to arrange the bristle-carrying head part 3 such that it can be moved in relation to the neck part 4 in order for the latter, in the case of vibrations produced by means of the vibratory device 10, to be made to move in relation to the rest of the toothbrush.

[0141] The electric lines 31, 33, 34 could also be realized by electricity-conducting plastic tracks. The switch 32, which connects or interrupts the lines 31, 33, may also be, for example, a magnetic switch. A preferred configuration of the switch 32, however, has a pulse switch arranged on a printed circuit board as well as further electronic components which store the switching state.

[0142] It is also possible, however, for the electrical connection between the battery 25 and the vibratory element 11' (FIG. 1) or the drive 15 (FIGS. 2 and 3) to be produced or interrupted not by the switch 32, but by the closure part 22, which can be screwed into the handle and/or into the sleeve 20 or connected to the same in a bayonet-like manner, being turned (i.e., the switch 32 is dispensed with in the case of such a configuration).

[0143] Instead of the rear closure part 22 being screwed to the handle 1, it would, of course, also be possible to have some other type of releasable connection (e.g., plug-in connection, bayonet connection, etc.) and a corresponding configuration of the contact part interacting with the negative pole 35.

[0144] It would also be possible for the closure part 22 to be in a form which is quite different to that illustrated in the drawing. For example, the closure part could be provided with a set-down surface or a foot part and thus serve as an element on which the toothbrush can be set down.

[0145] The toothbrush illustrated in FIG. 4 corresponds essentially to that according to FIGS. 2 and 3. According to FIG. 4, the vibratory device 10 is arranged directly in the front head part 3. In this exemplary embodiment, the sleeve 20 is dispensed with; the battery 25 is connected directly to the vibratory device 10 via the lines 33, 34. It is also the case with this toothbrush that use is preferably made of an exchangeable bristle carrier 5, which can be positioned on a retaining part 2 of the head part 3, e.g., in the manner of a snap-in connection. The capacity for changing the bristle carrier 5 provided with the clusters of bristles 6 is particularly advantageous since the toothbrush provided with the vibratory device 10 can be used irrespective of the service life of the bristles, which is usually even shorter than the service life of the battery 25.

[0146] As can be seen from FIG. 5, it is possible, instead of the bristle carrier 5 or 5a, which forms part of a conventional brush head and is provided with respective clusters of bristles 6 or 6a, to position other, optionally different bristle carriers or adapters 5b to 5d on the retaining part 2, these

7

being provided with different interdental brushes 6b, 6c or interdental treatment parts 6d for effective cleaning of the spaces between the teeth. The interdental brush 6b may be designed, for example, as a helical brush made of coated wire with plastic filaments twisted in. The interdental brush 6c comprises bristles which, together, form a cluster tip. The treatment part 6d may be designed, for example, as a plastic element which has a tip and may preferably be provided with an abrasive coating for removing plaque and tartar from the spaces between the teeth. Of course, it would also be possible to use any other desired treatment heads. It is also the case with the variant according to FIGS. 4 and 5 that the bristle carrier 5 could be configured such that a vibration-induced movement in relation to the retaining part 2 were possible.

[0147]    For the introduction of the vibratory device 10, the connecting lines 33, 34 and further electronic components, it is possible for a toothbrush according to the invention, or the housing thereof, to be produced in two parts and for the two parts to be welded in a water-tight manner once the abovementioned parts have been positioned therein. It is also possible, however, for a toothbrush according to the invention to be produced by injection molding preferably involving two or more components. The abovementioned parts are advantageously positioned as a unit in an injection molding made of a first material component and then encapsulated in the second material component (or in the further material component) by injection molding. It is not necessary here for full encapsulation to take place. Certain parts may be exposed, as a result of which it is possible to achieve an esthetic effect.

[0148]    It would also be possible, however, for the above-mentioned electronic components to be inserted into a ready-molded handle 1. In a preferred embodiment, since it is not only the vibratory element 11, 11' itself but also the drive, i.e. the micromotor 15, which are arranged in the front head part 3, or in the directly adjacent front region of the neck part 4, it is not necessary for a mechanical drive element to be led through the flexible neck part 4 in order to connect the micromotor to the vibratory element 11. In this embodiment, electric lines 33, 34 (e.g., wires, cables or electrically conductive plastic tracks) run through the neck part 4.

[0149]    According to one embodiment of the invention, use is made of a mechanical vibratory device 10 which has a diameter of less than about 15 mm preferably less than about 6 mm, and is less than about 35 mm, preferably less than about 20 mm, in length. This ensures that the toothbrush may be of ergonomic configuration and is easy to handle. A toothbrush according to the invention corresponds, in size, more or less to the conventional manual toothbrushes, which makes them more straightforward to handle in comparison with the commercially available, considerably larger electric toothbrushes. A number of head configurations can produce an enhanced cleaning effect when the mechanical vibratory device is engaged.

[0150]    FIGS. 6-9 illustrate a toothbrush 610 in accordance with one embodiment of this invention. As shown therein toothbrush 610 includes an elongated hand-held handle 612 with a head 614 connected to and extending from the handle. The head 614 is divided into a plurality of separate cleaning areas which are spaced from each other. As illustrated the

cleaning areas include a base 616 located at the distal end of the head 614 and projecting outwardly from the main body portion 930 of the head. Base 616 includes at least one and preferably a plurality of cleaning/treating elements 618. Head 614 further includes a base or supporting member 620 at the proximal end of head 614 cleaning/treating elements 618 also extend outwardly from base 620.

[0151]    Mounted between the cleaning areas which incorporate bases 616 and 620 are a pair of pods 622, 624. Each pod is provided with at least one and preferably a plurality of cleaning/treating elements. As later described the pods 622, 624 have a greater degree of movability than do the bases 616, 620. In a preferred practice of the invention the pods 622, 624 are resilient members so that the pod cleaning/treating elements add a motion range beyond the cleaning/treating elements 618 which are generally static or non-movable. Because the various cleaning/treating elements are separated from each other such as by channels 728, which extend completely across head 614 in a transverse direction, and because of the elastic nature of pods 622, 624, the cleaning/treating elements 626 may be capable of 360 degrees rotation about the vertical axis of each individual pod. The angle of the bend may be dictated by the ability of the material to bend.

[0152]    Toothbrush 610 thus provides a head 614 wherein the front (distal end) and the back (proximal end) areas are in a relatively fixed position and wherein the cleaning/treating elements, such as bristle strands, 618 do not have any extra degree of motion. The middle portion of head 614, however, has two areas of cleaning/treating elements 626, which are capable of 360 degree rotation.

[0153]    As best shown in FIG. 9 the head 914 includes a main body portion 930 which supports the bases and pods. Body portion 930 and bases 616 and 620 are preferably made from conventional hard plastic materials, such as polypropylene, commonly used in the making of toothbrush handles and heads. Pods 622, 624, however, are made so as to be resilient. In a preferred practice of this invention, the resiliency of pods 622, 624 is achieved by providing a thin diameter beam 932 which extends from the main body portion 930 of the head of the toothbrush. Beam 932 is joined to the bottom of a thin pad or plate 934 which provides a support area onto which the cleaning/treating elements 626 are affixed. The manner of mounting the cleaning/treating elements 626 to the support pads 934 can be achieved utilizing various cleaning/treating elements, such as bristles and other cleaning materials, in known attachment methods.

[0154]    The desired flexibility or resiliency of the pods 622, 624 is enhanced by enclosing the thin beams 932 in elastic material 936 which could be acquired during the multi-injection molding process. The elastic material 936 serves as a rubber band by returning the beams 932 to their original form or initial position. This return action creates an active motion in the opposite direction of the beam bend which aids in the cleaning of teeth by introducing extra brushing strokes.

[0155]    As best shown in FIGS. 6, 7 and 9 the pods 622, 624 include a widened portion disposed toward the body 930. The support pads 934 are also widened. Each pod has a narrow or reduced diameter central portion 938 longitudinally intermediate the length of each pod. Thus, each pod is of generally mushroom shape.

8

[0156]  Beam 932 could be of any suitable shape such as having a cross-section which is circular, square or any other geometric shape that provides a thin dimension or thin diameter to the beam to facilitate the bendability of the beam. The elastomer 936 may be considered as a continuous layer of any suitable thickness which covers the entire central area of head 614 as illustrated so that both pods 622, 624 are incorporated as part of the same elastic material. The portion of the head 614 which includes pods 622, 624 may be formed as a separate subassembly similar to the subassembly later described with respect to **FIGS. 10** and **11**.

[0157]  Although the invention could be practiced with a single base and a single pod and could be practiced with the base having some, but a lesser degree of flexibility than the pod, the invention is preferably practiced wherein the base is generally static or non-movable. In addition, the invention is preferably practiced where there are a plurality of such bases and a plurality of pods. The drawings illustrate a configuration of the invention where there are a total of four separate cleaning areas with the pods being located in the central portion of head 614. The invention may be practiced in a configuration in which the cleaning/treating elements comprise a plurality of bristles or strands on each base and each pod.

[0158]  As illustrated in **FIG. 8** each base 616 and 620 and each pod 622 and 624 may have a generally oval outer surface. The bases and pods are longitudinally aligned, but spaced from each other by the depressions or open areas which form the channels 728. As also illustrated in **FIG. 8** the pods may have a larger outer surface or cleaning/treating element carrying surface than do the bases.

[0159]  As shown in **FIG. 7** the terminal surfaces of the cleaning/treating elements 618 and 626 are tapered so that the terminal surfaces of the cleaning/treating elements 618 taper outwardly in a direction toward the center of head 614 while the terminal surfaces of cleaning/treating elements 626 taper outwardly in a direction away from the center of head 614. Thus, the highest points of each set of cleaning/treating elements 618 and its adjacent set of cleaning/treating elements 626 are generally disposed toward each other for each pair of base and pod 616, 622 and 620, 624.

[0160]  Any suitable form of cleaning/treating elements may be used as the cleaning/treating elements 618 and 626 in the broad practice of this invention. The term "cleaning/treating elements" is intended to be used in a generic sense which could include conventional fiber bristles or massage elements or other forms of cleaning/treating elements such as elastomeric fingers or walls arranged in a circular cross-sectional shape or any type of desired shape including straight portions or sinusoidal portions. Where bristles are used, the bristles could be mounted to tuft blocks or sections by extending through suitable openings in the tuft blocks so that the base of the bristles is mounted within or below the tuft block.

[0161]  Using different cleaning materials as cleaning/treating elements of the toothbrushes may yield different effects. In an attempt to provide better stain removal a rubber-like material or elastomer can be used in combination with conventional bristles or used by itself to "brighten/whiten" the teeth.

[0162]  It is to be understood that the specific illustration of the cleaning/treating elements is merely for exemplary pur-

poses. The invention can be practiced with various combinations of the same or different cleaning/treating element configurations (such as stapled or in-molded technology bristles, etc.) and/or with the same bristle or cleaning/treating elements materials (such as nylon bristles, spiral bristles, rubber bristles, etc.) Similarly, while **FIG. 7** illustrates the cleaning/treating elements to be generally perpendicular to the outer surface of head 614, some or all of the cleaning/treating elements may be angled at various angles with respect to the outer surface of head 614. It is thereby possible to select the combination of cleaning/treating element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning tooth polishing, tooth whitening and/or massaging of the gums. Further, although shown as a manual toothbrush, the disclosed head and cleaning elements could be formed as part of a powered brush, e.g., as part of a vibrating brush (as in **FIG. 1**) with the drive means disclosed for the brush of **FIG. 16**, or other known powered brushes where the heads or parts of the heads (e.g., platforms) are driven.

[0163]  **FIGS. 10-11** illustrate a further embodiment of this invention. The toothbrush 1110A has the ability to provide flexible support for the bristles 1026A, 1126A in designated areas. The flexibility is provided by designing the tuft holding areas 1034A, 1134A as plates which in combination with the stems 1038A, 1138A forms pods of mushroom shape. The mushroom stem 1038A, 1138A is made flexible to allow the plate 1034A, 1134A populated with bristles or cleaning/treating elements 1026A, 1126A to move in different directions while brushing, as described with respect to the flexible pods of **FIGS. 6-9**.

[0164]  **FIGS. 10-11** show the toothbrush 1110A and in particular the cleaning/treating element or bristle carrying portion 1023, 1133 of the head 1114A. As shown in **FIG. 10** the bristle or cleaning/treating element carrying portion 1023 forms an initial subassembly. This subassembly is made by introducing the cleaning/treating elements 1026A into the mold cavity into which a plastic material is injected. As the material injected cools off it permanently traps the bristles or cleaning/treating elements 1026A to form a brush or subassembly 1023.

[0165]  To achieve a functional flexibility and proper tuft retention the portion of the bristle holding part or subassembly 1023 which comprises the plates 1034A, stems 1038A and interconnecting support 1025 is preferably a blend of polypropylene (PP) and soft TPE. Once the PP/TPE blend is combined with the bristles 1026A the subassembly 1023 is formed. The subassembly 1023 is then overmolded with an entire toothbrush handle 1012A and head 1014A during a second injection cycle to form the completed toothbrush 1110A shown in **FIG. 11**. If desired or required the entire handle 1112A and head 1114A absent the subassembly 1123 could be made first and the subassembly or bristle retaining portion 1123 made second.

[0166]  It is to be understood that the invention described in **FIGS. 10-11** could be practiced where all portions of the head 1114 include the flexible mushroom sections without having less flexible base portions such as bases 616 and 620 of **FIGS. 6-9**. Similarly, the subassembly two shot techniques of **FIGS. 10-11** could be utilized in the embodiment of **FIGS. 6-9** for forming the two or more central pods as a

single subassembly initially made separate from the remainder of the toothbrush head **1114**. The final toothbrush would be made in a second injection molding process wherein the subassembly having interconnected pods **622, 624** would be molded to the handle **612** and head **614** made of more rigid material.

[0167]  As noted, **FIG. 7** illustrates the terminal surfaces of the cleaning/treating elements **618** and **626** to be tapered in an up and down or zigzag manner. **FIGS. 10-11** show an alternative taper wherein the terminal surfaces form a smooth, gentle, concave shape. If desired, other shapes may be used such as a planar shape for the terminal surfaces or a convex shape as well as the zigzag or up and down shape shown in **FIG. 7**. Similarly, the terminal ends of the cleaning/treating elements in the **FIGS. 6-9** embodiment, as well as those of **FIGS. 10-11**, could have the various shapes such as zigzag, convex, concave or planar.

[0168]  **FIG. 12** illustrates a toothbrush **1210B**, which includes a power driven movable disc or section **1240** having cleaning elements. Although **FIG. 12** shows movable section **1240** to be at the distal end of the head, the movable section(s) could be located at any desired location on the head.

[0169]  **FIG. 13** illustrates head **1314** of a manual toothbrush **1310** in accordance with one embodiment of this invention. Head **1314** is attached to handle **1312** (partially shown in **FIG. 13**). In one embodiment, two groups of cleaning/treating elements or bristle are arranged on head **1314**. The first group as illustrated in **FIG. 13** is located in the central region of the head **1314** and comprises cleaning/treating elements **1318** in the form of strands or bristles. Elastomeric material **1320** is preferably of a material or combinations of material that can flex to become altered from its original shape and recover to its original shape randomly during brushing.

[0170]  The first group of cleaning/treating elements **1318** flexibly mounted in head **1314** and **1614** (**FIG. 16**) are complemented by a second group of fixed cleaning/treating elements **1322** generally arrayed in a surrounding relationship with the first group **1318**.

[0171]  The first and second group of cleaning/treating elements work together to provide improved cleansing of teeth. To further promote teeth cleaning, the toothbrush **1310** of this invention may include, for example, wipers **1324** positioned between the two groups of cleaning/treating elements as best illustrated in **FIG. 13**. These wipers are preferably made of rubber or like material. Further, any suitable form of cleaning/treating elements may be used as the cleaning/treating elements **1318** and **1322** in the broad practice of this invention.

[0172]  It is to be understood that the specific illustration of the cleaning/treating elements is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning/treating element configurations (such as stapled or in-molded technology bristles, etc.) and/or with the same bristle or cleaning/treating element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.) Similarly, while **FIG. 13** illustrates the cleaning/treating elements to be generally perpendicular to head **1314** some or all of the, cleaning/treating elements may be angled at various angles with respect to the

outer surface of head **1314**. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning, tooth polishing, tooth whitening and/or massaging of the gums.

[0173]  This invention may also be practiced where head **1314** includes one or more power or electrically operated movable sections carrying cleaning/treating elements.

[0174]  **FIG. 16** illustrates a toothbrush **1610A** which includes a power driven movable disc or section **1650** having cleaning/treating elements. The movable section **1650** could be oscillated rotationally such as by using the type of drive mechanism shown in U.S. Pat. No. 5,625,916, or could move in and out using the type of drive mechanism shown in U.S. Pat. No. Re35,941; all of the details of both patents are incorporated herein by reference thereto. Alternatively, the other types of drives referred to above could move section **50** in other manners and directions. Although **FIG. 16** shows movable section **1650** to be at one end of the head, the movable section(s) could be located at any desired location on the head.

[0175]  **FIGS. 17 and 18** illustrate a toothbrush **1710** with a handle **1712** and head **1714, 1814**. Mounted on or in head **1714, 1814** are fingers **1716, 1816**, preferably having a tapered shape. As shown in **FIG. 18** fingers **1816** are preferably arranged about the periphery of head **1814**. That location materially assists the gum massaging effect of the finger movement contemplated by this invention. More particularly, when the longitudinal axis of toothbrush **1710** is perpendicular to the axis of teeth being brushed, as is typical with most users, the fingers **1716, 1816** are closest to the gum line.

[0176]  The fingers **1716, 1816** are preferably flexible and soft to the touch. Accordingly they may be formed of a soft elastomeric material. The general shape of fingers **2616, 2716, 2816** is illustrated in **FIGS. 26-28**. As so illustrated they are tapered and comprise all elastomeric material (**FIG. 26**) or a set of bristles **2818** partially surrounded by elastomeric material **2720, 2820** (**FIGS. 27 and 28**). The elastomeric material preferably extend along the length of finger **2616, 2716, 2816** a sufficient distance to facilitate attachment of ribs as described in more detail below.

[0177]  To facilitate the therapeutic movement of the fingers, the head of the toothbrush may be flexible and the fingers may be flexibly mounted in the head. **FIG. 25** illustrates one form of flexible mounting of fingers in head **2514**. In this embodiment the head **2514** has a box-like shape in cross section. At least the upper face **2522** of head **2514**, and preferably the entirety of head **2514**, is made of a flexible material so that the axes of fingers **2516** can move relative to the plane of toothbrush **1710**. The fingers **2516** project from apertures **2526** in the flexible upper face **2522** of head **2514**. Any rib and finger **2216, 2316, 2416** arrangement shown in **FIGS. 22-24** can be molded into the toothbrush head **2214**. This flexible mounting in a flexible portion **2222** of head **2214** assists in obtaining the desired lateral movement of fingers relative to the axes of toothbrush **1710**. The role of ribs in obtaining that movement is explained below.

[0178]  **FIG. 29** illustrates a powered toothbrush **2910A** containing the fingers **2916** of the invention mounted on a

flexible head 2914 of the toothbrush. Cleaning elements 1817 may be mounted inboard of fingers 1816 as illustrated in FIG. 18. Although FIG. 29 shows movable section 2930 to be at the distal end of the head, the movable section(s) could be located at any desired location on the head.

[0179] Another manner of imparting movement to the fingers 3016, 3116 is illustrated in FIGS. 30 and 31. As illustrated, fingers 3016, 3116 are physically linked to a flexible face 3022A, 3122A of head 3014, 3114 by angled rib 3024, 3124. Rib 3024, 3124 can be integrally molded into head 3014, 3114 and finger 3016, 3116 during the manufacture of toothbrush 1710. It can also be formed of a more rigid (than elastomeric) material such as polypropylene in order to enhance lateral movement of fingers 3016, 3116. Flexible face 3022A, 3122A of head 3014, 3114 in this embodiment can be molded around frame members 3026, 3126 forming the outer periphery of head 3014, 3114. These frame members 3026, 3126 of head 3014, 3114 may be attached to handle 1712 of toothbrush 1710 in a known manner.

[0180] The role of ribs and the flexible head in imparting lateral movement to the fingers is illustrated in FIGS. 18-21. FIG. 18 illustrates the location of fingers 1816 and ribs along outer edges of flexible face 1822 of head 1814. Other groups of bristles or cleaning/treating elements 1817 are arranged inboard of fingers 1816 as illustrated in FIG. 18. Fingers 1816 on the outer edge of head 1614 are closest to the gum line when the user holds the toothbrush in a normal position, i.e., with the longitudinal axis perpendicular to the axis of the user's teeth. Ribs 1824 extend from the side of finger 1816 to the face 1822 or 1822A of flexible head 1814. These ribs can have a triangular, trapezoidal or like shape that interconnects the finger 1816 to the face of flexible head 1814. This interconnection assures lateral movement of finger 1816 as the face 1822 or 1822A deflects outward or inward along the longitudinal axis when in use as described below.

[0181] The lateral movement of fingers is illustrated in the sequence shown in FIGS. 19-21. In FIG. 19 there is no deflection of face 1922 or 1924 of flexible head 1914. FIG. 20 represents a deflection of face 2022 that stretches that face as shown by the arrows 2023 at the edge of this fragmental view. When so stretched the ends 2028 of rib 2024 anchored to face 2022 move away from each other. That movement exerts a lateral force on finger 2016 causing it to move laterally toward the outside periphery of head 2014 as indicated by the arrow 2025 in FIG. 20. Conversely, when deflection of face 2122 or 2122A of head 2114 causes that face to compress, the ribs 2124 push finger 2116 laterally in the opposite direction as indicated by the arrow 2125 in FIG. 21. Thus, as various forces are transmitted to flexible face 2122 or 2122A of head 2114 during use, that head moves in compression or expansion. That movement causes fingers 2116 to move in a lateral direction thereby promoting tooth cleaning and gum stimulation.

[0182] Another embodiment of the invention illustrated in FIGS. 30 and 31 shows ribs 3024, 3124 oriented approximately 90 degrees to the longitudinal axis of toothbrush 1710 versus approximately 45 degrees shown in FIGS. 18-21. In the former embodiment, movement of the flexible face 3022A in an upward direction (FIG. 30) causes lateral inward movement of fingers 3016 as illustrated by the arrows 3127 in this Figure. Conversely, downward movement of flexible face 3022A would cause lateral movement of fingers 3016 away from each other toward the outside of head 3014 (not illustrated).

[0183] Other arrangements of ribs 2224, 2324, 2424 and their attachment to fingers 2216, 2316, 2416 are illustrated in FIGS. 22-24. As illustrated, multiple fingers 2216, 2316, 2416 are interconnected by a continuous rib 2224, 2324, 2424. FIG. 22 illustrates the interconnecting ribs 2224 on one side of fingers 2216. Thus, upon deflection of flexible face 2222 or 2222A of head 2214 all fingers 2216 move in the same direction as indicated by the arrows 2229, 2329 in FIGS. 22 and 23. If it were desirable to have the fingers 2416 move in different directions the arrangement of ribs 2424 shown in FIG. 24 can be utilized.

[0184] It is to be understood that the specific illustration of the cleaning/treating element is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning/treating element configurations (such as stapled or in-molded technology bristles, etc.) and/or with the same bristle or cleaning/treating element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIG. 18 illustrates the cleaning/treating elements to be generally perpendicular to head 1814, some or all of the cleaning/treating elements may be angled at various angles with respect to the outer surface of head 1814. It is thereby possible to select the combination of cleaning/treating element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning, tooth polishing, tooth whitening and/or massaging of the gums. This technology may also be used in manually powered toothbrushes.

[0185] Referring to FIGS. 32 and 33, an exemplary toothbrush including a head plate according to the invention is illustrated and generally indicated at 3200. Toothbrush 3200 includes a handle 3202 at a proximal end thereof, and a brush section 3204 that is defined by a neck 3210 that terminates in a head 3220 at a distal end of toothbrush 3200. Handle 3202 has a free proximal end 3208 and an opposite neck end 3206. Neck 3210 generally includes a first end 3214 and a second end 3216 with first end 3214 being located at neck end 3206 of handle 3202 and the second end 3216 being located at head 3220. In other words, neck 3210 is the portion of toothbrush 3200 that extends between handle 3202 and head 3220. Head 3220 is preferably generally aligned with the longitudinal axis x-x of toothbrush 3200.

[0186] Neck 3210 and handle 3202 may be constructed as a unitary member by forming neck 3210 integral to handle 3202 at neck end 3206 of handle 3202, or may be formed detachable from handle 3202 at the neck end 3206. In accordance with this detachable embodiment, the combined neck 3210 and head 3220 can be removed from handle 3202 to permit cleaning, servicing and/or interchanging of either handle 3202 or the combined neck 3210 and head 3220 (brush section 3204). When neck 3210 is formed to be detachable from handle 3202, first neck end 3214 preferably includes a connector linkage (not shown) detachably joined to handle 3202 using traditional techniques. It will also be appreciated that the point of detachment may be between head 3220 and neck 3210 such that head 3220 is of a refill head type.

[0187] It will further be appreciated that the illustrated shapes of handle 3202 and neck 3210 are merely exemplary in nature and handle 3202 and/or neck 3210 can be formed to have any number of shapes. Preferably, the shapes of handle 3202 and neck 3210 are ergonomically pleasing to a user of toothbrush 3200 and provide a toothbrush that is easily gripped and held and easily manipulated by a user. For example, handle 3202 may include a slightly recessed finger section 3218 which is formed on handle 3202. The recessed finger section 3218 is designed to receive the thumb of one hand to thereby assist a user in proper placement of toothbrush 3200 in a user's hand. Recessed finger section 3218 may include ribs or another type of roughened surface to assist a user in gripping toothbrush 3200 at recessed finger sections 3218. Of course other patterns for providing recessed finger sections may be employed.

[0188] The head plate for the bristles is formed with a solid perimeter and defines a field of variously shaped and sized holes within this perimeter. Fibers that are to form the tufts are then placed in the holes in the field of the head plate, and the backs of the tufts are melted together to fix their position relative to one another.

[0189] The tufted head plate is then inserted into a pre-defined receiving portion of the head portion of a toothbrush handle and is sonically welded into place. The brush is then end rounded and packaged for sale as a traditional tooth-brush.

[0190] As is shown in FIGS. 32 and 33 of the present invention, a head plate 3250 is provided, and is fixed to head 3220 of toothbrush 3200, preferably by sonic welding, although any other appropriate attachment technique may be employed. Head plate 3250 is fanned of at least two materials. A first rigid material is used to form the perimeter portion 3252 of the head plate. Such a material, such as for example polypropylene, is easily sonically welded. A tuft field 3254 is formed of a flexible elastomer (preferably having a hardness of 90 Shore A or less).

[0191] A process known as "Anchor Free Tufting" (AFT) is used in the formation of head 3250. In such an AFT process, head plate 3250 is used for holding toothbrush bristles in their proper orientation. When the bristles are placed in their proper orientation through the corresponding holes in the head plate 3250, the head plate 3250 is placed in the head plate cavity formed in the front face of the head section 3204 of the brush, and for insertion into a toothbrush.

[0192] As is best shown in FIG. 32, head plate 3250 is formed with a solid perimeter and defines a field of variously shaped and sized apertures or holes 3256 within the flexible elastomer tuft field 3254. Fibers that are to form one or more bristle tufts 3258 are then placed in the holes in field 3254 of head plate 3250, and the backs of tufts 3258 are melted together to fix their position relative to one another. Thus, such a head plate is able to flex, thereby allowing the tuft field and bristles to move under normal brushing conditions, while providing a perimeter of structural rigidity that is able to be sonically welded. Therefore, the head plate and bristles move or flex under the pressure of normal brushing. While bristles 3258 are shown, elastomeric members may also be used in place of these 31 tufts. Furthermore, while a particular tuft field pattern is shown, any desirable tuft field pattern may be employed. Furthermore, the bristle material need not be the same for all of the tufts, and indeed varying

materials for performance color or indication of life remaining in the brush head, may be used exclusively, or in combination as desired.

[0193] FIG. 34 illustrates a toothbrush 3410 which could be of generally typical structure in the sense of having a handle 3412 at one end connected to a cleaning head 3414 which has an outer surface 3416 from which a plurality of cleaning/treating elements extend.

[0194] In a preferred embodiment, toothbrush 3410 includes a mechanical vibratory device as described above (not shown in FIG. 34) which causes the cleaning head to vibrate. The mechanical vibratory device is preferably located in the head or in a region adjacent to the cleaning head and operatively connected to an electric power source.

[0195] In accordance with this invention the cleaning head 3414, as shown in FIG. 35, may include a peripheral frame 3518. A resilient membrane 3520 is secured across frame 3518 so that membrane 3520 is free to move in a direction toward and away from the outer surface 3416. The membrane 3520 could be recessed below outer surface 3416 or could be flush with the outer surface. Because membrane 3416 is mounted across frame 3418 when pressure is applied to membrane 3520 the membrane would move in a direction away from the outer surface 3416 and would return in the opposite direction upon release or diminution of pressure.

[0196] Head 3414 may be completely open in the area of frame 3518, except for membrane 3520, or may include a rear wall spanning the frame and spaced from membrane 3520 to permit inward movement of membrane 3520.

[0197] An embodiment of the present invention is preferably directed toward making use of the movement that results from resilient membrane 3520 in combination with various specialized types of cleaning/treating elements, particularly such elements wherein some of the elements have physical characteristics that differ from other of the elements so that an enhanced cleaning or treatment results from the combination of the actual cleaning/treating elements performing their specialized functions and the movement of the resilient or flexible membrane 3520. Membrane 3520 may be considered as defining a cleaning field in which the various cleaning/treating elements are located.

[0198] FIG. 34 illustrates some examples of cleaning/treating elements wherein the various elements are in the form of different types of bristles. The bristle pattern of FIG. 34 is disclosed in U.S. Pat. No. 6,643,886 to Moskovich et al. filed on Feb. 21, 2001, which is hereby expressly incorporated by reference. As illustrated, the cleaning/treating elements include angled bristles 3422, 3424 which may also be arranged to crisscross each other. Other bristles could include generally straight or inclined bristles having slanted or pointed ends, respectively, and other straight bristles 3428 having flat ends. The slanted end bristles 3426 have their outer surface taper from one side to another, while the pointed portion of the bristles 3430 is located at the center of the bristles. As shown in FIGS. 34 and 38 the various combinations of bristles could also result in multi-level bristles.

[0199] The bristles could be secured to membrane 3520 in any suitable manner such as by anchor-free tufting or by any other conventional techniques. Instead of having individual tufts of bristles the bristles could be located closely together

12

to form an elongated bristle wall **3832** such as shown in **FIG. 38**. Such bristle wall **3832** could be included on the same cleaning field as various of the previously described tufts of bristles. The wall **3832** could be straight, curved, sinusoidal or of any desired shape.

[0200] The invention may be practiced where the cleaning/treating elements are elastomeric elements rather than tufts of bristles of **FIGS. 34 and 38** made of nylon fiber or the like. It is also contemplated that the invention may be practiced where the cleaning/treating elements include a combination of bristle elements and non-bristle elements. The non-bristle elements include, for example, a tongue-cleaning structure, elastomeric fingers, elastomeric walls and prophy cups. As noted above, this kind of head could be used as a manual or powered toothbrush.

[0201] **FIGS. 36-37** show some examples of the incorporation of elastomeric cleaning/treating elements. As shown in **FIG. 36** a plurality of rubber or elastomeric fingers **3634** are mounted to membrane **3520**. The fingers could be of any suitable size and shape such as being oval at their base and tapering uniformly inwardly toward their free end to generally end in a point or narrow line type structure at their free end. The size of the individual elastomeric fingers **3634** could vary as illustrated in **FIG. 36**. **FIG. 37** shows other forms of elastomeric cleaning/treating elements. Such other forms include prophy cups **3736**, elastomeric walls **3738** and elastomeric fingers **3740** which would be conically shaped to function as massage elements. The elastomeric walls could be straight, arcuate, sinusoidal or of any other desired shape. The size and number and location of these elastomeric elements could vary. **FIG. 37** also shows the combination of elastomeric elements and bristles. As shown therein, various tufts of bristles **3742** are located in a ring-like pattern around a central portion of bristles **3744**. It is to be understood that any combination of the bristles and/or elastomeric elements mounted to membrane **3520** could be used within the spirit of this invention. Similarly, as illustrated in **FIG. 39**, the frame **3518** of head **3414** could be of sufficient size so as to accommodate cleaning/treating elements such as spaced tufts of bristles **3946** secured directly to the rigid material such as conventionally used in the toothbrush head and handle. These fixed cleaning/treating elements **3946** would be in combination with the movable elements on the cleaning field formed by membrane **3520**. As previously noted, any of the disclosed heads could be used in manual or powered toothbrushes.

[0202] The toothbrush and particularly the cleaning head **3414** could also be provided with various forms of structure to achieve tongue cleaning. Thus, **FIG. 38** illustrates tongue cleaning structure **3548** at the backside of head **3414** while **FIG. 39** illustrates the tongue cleaning structure **3950** at the tip of cleaning head **2414** remote from the handle. The tongue cleaning structure could be stiff or flexible fingers or walls, made from a suitable elastomeric material. The various cleaning/treating elements could also be located to provide for interproximal cleaning. Further, any of the tongue cleansers disclosed herein can be used on any of the heads, in conjunction with manual or powered toothbrushes, or used as a separate oral care implement.

[0203] In the preferred practice of the invention the resilient membrane **3520** has mounted to it a plurality of various types of cleaning/treating elements with different physical

characteristics. Such physical characteristics could be of the types previously described with regard to size, shape and structure of the cleaning/treating elements or could be the result of different internal characteristics such as differing degrees of stiffness.

[0204] The present invention thus makes it possible to select the combination of cleaning/treating element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits such as enhanced cleaning, tooth polishing, tooth whitening and/or the massaging of gums. These results are enhanced by mounting the various cleaning/treating elements on the resilient cleaning field so that in addition to the benefits from the specific physical characteristics of the individual cleaning/treating elements there is also a movement imparted to the cleaning/treating elements when pressure is applied to the elements such as by contacting the teeth thereby causing the resilient membrane to move in response to the pressure.

[0205] Referring now to **FIG. 40** of the drawings, a toothbrush **4010** of this invention includes a body formed of an elongated member with a head **4012** on one end and a handle **4014** on the other. The handle **4014** may be conventional in shape. The head **4012** has a flattened bristle mounting surface or face **4016**, from which extend a plurality of bristles having proximal ends attached to the face **4016** and distal ends extending outwardly from the head **4012**. As seen in **FIG. 40**, there are two types of bristle groups, the first type being peripheral bristle tufts **4018**, located about the periphery of the head **4012**. These peripheral bristle tufts **4018** are generally symmetrical in cross-section, i.e. circular, square or, if oval or rectangular, having a larger cross-sectional dimension less than about 1.3 times the shorter cross-sectional dimension. Further, these peripheral bristle tufts **4018** have a cross-sectional diameter or larger dimension of from about 1.0 mm to about 2.0 mm, preferably from 1.4 mm to about 1.9 mm, and more preferably from about 1.5 mm to about 1.7 mm. The second type of bristle group shown are bristle bars **4020**, which are generally elongated in shape and which are located adjacent to the peripheral bristle tufts **4018** and internal to the head **4012** of the peripheral bristle tufts **4018**. Bristle bars **4020** have a cross-sectional length of at least 2.5 mm, preferably at least 3.0 mm and more preferably at least 4 mm. The bristle bars may also be formed as elastomeric walls of rubber or other elastomeric material (e.g., SEBS).

[0206] In a preferred embodiment, toothbrush **4010** includes a mechanical vibratory device as described above (not shown in **FIG. 40**) which causes the head to vibrate. The mechanical vibratory device is located in the head or in a region adjacent to the head and operatively connected to an electric power source. The bristle tufts and bristle bars are moved by the mechanical vibratory device and/or independently of the mechanical vibratory device in a manner so as to provide an enhanced scrubbing action of the teeth and gums. Nevertheless, the head could be driven by other means or used as a manual brush.

[0207] As illustrated in **FIGS. 40 and 41** the bristle bars **4020** of the present invention can be shaped in a variety of geometric forms, such as substantially parallelepipeds; or alternately having curved foot-prints to conform to the curvature of the toothbrush head **4012**; or combinations thereof. The peripheral bristle tufts **4018** can preferably be

taller, i.e., in height from the face 4016, than the bristle bars 4020 or any other bristle tufts on the toothbrush. Peripheral bristle tufts 4018 having such extra height over any other bristle tufts within the head 4012 will penetrate into the interproximal areas between teeth for enhanced cleaning therein without interference by such other shorter bristle tufts. It is preferred that the peripheral bristle tufts are from about 9.0 mm to about 13.0 mm in height about the face 4016 of the toothbrush, preferably from about 11 mm to about 12 mm in height. Further, the bristle bars 4020 are preferably at least about 50% to about 85% of the height of the peripheral bristle tufts 4018, so as to provide the desired support to the peripheral bristle tufts 4018.

[0208]   U.S. Pat. No. 5,511,275 to Volpenhein discloses that in addition to the stiffness characteristics of the bristles, the more tightly bristles are packed together in tufts, the more additional support they will lend each other to enhance their overall stiffness and cleaning ability. Volpenhein further discloses as a measure of this effect a Buttress Factor defined as the cross-sectional area taken up by the bristles divided by the total cross sectional area of the tuft at its base, i.e., from 0 to 1. The higher the Buttress Factor, the greater the stiffness and cleaning ability of the bristles. While Volpenhein discloses toothbrushes having Buttress Factors of from 0.8 to 0.96, the bristle tufts 4018 and bristle bars 4020 in the present invention surprisingly only require a Buttress Factor of from about 0.6 to about 0.75. Preferably the Buttress Factor of both the bristle tufts 4018 and the bristle bars 4020 of the present invention is from about 0.65 to about 0.7, and most preferably about 0.68. This Buttress Factor range is further advantageous in equating closely with DuPont Polymers recommended optimum bristle wear performance packing factor range of 0.63 to 0.74, defined similarly as filament cross-sectional area divided by tuft hole opening. See, DuPont Polymers, Wilmington, Del. 19898 publication Z-1737.

[0209]   As shown in FIGS. 41, 42 and 43 the bristle bars 4020 may generally have rectangular, curved, or oval footprints. The general shape of the bristle bars 4020 is not critical, so long as the bristle bars are of sufficient dimension to provide the adjacent peripheral tufts support during tooth brushing. Considering the simultaneous brushing movement of toothbrushes from the front to the rear of the mouth and up and down; the bristle bars 4020 are preferably of such a length and such a spacing from the peripheral bristle tufts 4018, to provide support to each adjacent peripheral bristle tuft 4018 when the adjacent peripheral bristle tuft is deflected toward the particular bristle bar 4020 at any angle up to 20 degrees from the perpendicular therebetween, preferably up to 30 degrees, more preferably up to 40 degrees and most preferably up to 50 degrees or more.

[0210]   The width of the bristle bars 4020, shown as dimension "a" in FIG. 40, is preferably at least about "1.0 mm, more preferably at least about 1.5 mm. Further, the narrowest transverse space between each peripheral tuft 4018 and the supporting bristle bar 4020 therefore, are preferably not greater than about 1.5 mm, more preferably not greater than 1.0 mm and most preferably not greater than about 0.7 mm.

[0211]   Referring again to FIGS. 40 and 41, it can be seen that in each figure a transverse opening is provided between the bristle tufts 4018 and extending through the bristle bars

4020, toward the center of the head 4012; this opening being located middle way up the head 4012. This opening may be provided to enhance the users ability to clean the toothbrush of toothpaste and debris accumulated during brushing, by providing a clear channel for rinse water to the interior" of the head 4012. Alternatively, additional openings can be provided as is illustrated in FIG. 42, to further enhance the ease of cleaning.

[0212]   Another embodiment of the present invention, as illustrated in FIG. 43, has a head 4012 having extending from its face 4016 the same peripheral tufts 4018 and adjacent bristle bars 4020 internal thereto as the afore-described embodiment; however, in addition to these sets of bristle tufts 4018 and bars 4020, there is a set of additional bristle bars 4022 located central to the head ("central bristle bars"). These central bristle bars, illustrated as wedges in FIG. 43, provide not only additional bristle area for cleaning, but also, enhanced support for the now intermediate within the head located bristle bars 4020, to enhance the overall stiffness and cleaning ability of the toothbrush 4010. These central bristle bars 4022 play have cross-sections other than wedges, such as ovals, egg shapes, or rectangular.

[0213]   An alternative embodiment of the present invention shown in FIG. 44 is similar to the embodiment disclosed above for FIGS. 40 and 41, except the central bristle bars 4322 can be replaced by a plurality of central bristle tufts 4424, similar to the individual, peripheral bristle tufts 4018. The height of any such central bristle tufts 4024 above the brush face 4016 can be equal to or less than that of the now intermediate within the head located bristle bars 4020.

[0214]   FIGS. 45 and 52 show additional embodiments of the invention that are discussed in terms of a toothbrush. For example, toothbrush 4500 is shown as one embodiment in FIG. 45, and toothbrush 5000 as an alternative embodiment in FIG. 52. Nevertheless, the invention could be used in other oral care implements including simply a tissue cleansing implement. They also could be as powered brushes.

[0215]   As seen in FIGS. 45-51, an oral care implement in the form of a toothbrush 4500 includes a handle 4503 and a head 4505 which may be used for cleaning the teeth and soft tissue in the mouth, such as the tongue, interior surfaces of the cheeks, lips or the gums. Handle 4503 is provided for the user to readily grip and manipulate the toothbrush, and may be formed of many different shapes and constructions. While the head is normally widened relative to the neck of the handle, it could in some constructions simply be a continuous extension or narrowing of the handle. In one construction, head 4505 has a first face 4506 that supports tooth cleaning elements 4507 (FIGS. 49 and 51) and a second face 4508 that supports a tissue cleanser 4800 (FIGS. 46 and 47). The first and second faces 4506, 4508 are preferably on opposite sides of head 4505. Nevertheless, tissue cleanser 4800 may be mounted elsewhere, such as at the proximal end 4504 of handle 4503. The tissue cleanser 4800 or portions of it may also be located on the peripheral sidewall surface 4501 of head 4505 or extend farther towards the proximate end 4504 of handle 4503 than illustrated.

[0216]   The elastomeric material of tissue cleanser 4800 may be any biocompatible resilient material suitable for uses in an oral hygiene apparatus. To provide optimum comfort as well as cleaning benefits, the elastomeric material pref-

14

erably has a hardness property in the range of A8 to A35 Shore hardness. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene block copolymer (SEBS) manufactured by GLS Corporation. Nevertheless, SEBS material from other manufacturers or other materials within and outside the noted hardness range could be used.

[0217] Tissue cleanser 4800 is preferably configured with a multiplicity of tissue engaging elements 4803 (FIGS. 45-48), which in a preferred construction are formed as nubs. Alternative nub constructions 5002, as discussed below, are also illustrated in alternative constructions in FIGS. 52-56. As used herein a "nub" is generally meant to include a column-like protrusion (without limitation to the cross-sectional shape of the protrusion) which is upstanding from a base surface. In a general sense, the nub, in a preferred construction, has a height that is greater than the width at the base of the nub (as measured in the longest direction). Nevertheless, nubs could include projections wherein the widths and heights are roughly the same or wherein the heights are somewhat smaller than the base widths. Moreover, in some circumstances (e.g., where the nub tapers to a tip or includes a base portion that narrows to a smaller projection), the base width can be substantially larger than the height.

[0218] Such tissue engaging elements 4803 are designed to significantly reduce a major source of bad breath in people and improve hygiene. Nubs 4803 enable removal of microflora and other debris from the tongue and other soft tissue surfaces within the mouth. The tongue, in particular, is prone to develop bacterial coatings that are known to harbor organisms and debris that can contribute to bad breath. This microflora can be found in the recesses between the papillae on most of the tongue's upper surface as well as along other soft tissue surfaces in the mouth. When engaged or otherwise pulled against a tongue surface, for example, nubs 4803 of elastomeric tissue cleanser 4800 provide for gentle engagement with the soft tissue while reaching downward into the recesses of adjacent papillae of the tongue. The elastomeric construction of tissue cleanser 4800 also enables the base surface 4801 to follow the natural contours of the oral tissue surfaces, such as the tongue, cheeks, lips, and gums of a user. Moreover, the soft nubs 4803 are able to flex as needed to traverse and clean the soft tissue surfaces in the mouth along which it is moved.

[0219] As seen in FIGS. 46 and 48, in one preferred arrangement of tissue cleanser 4800, nubs 4803 are preferably conically shaped. As used herein, "conically shaped" or "conical" is meant to include true cones, frusto-conically shaped elements, and other shapes that taper to a narrow end and thereby resemble a cone irrespective of whether they are uniform, continuous in their taper, or have rounded cross-sections. With reference to FIG. 48, the base portion 4805 of each conically shaped tissue engaging element 4803 is larger than the corresponding tip portion 4807. In this conically shaped configuration, the base portion 4805 has a wider cross-sectional area to provide effective shear strength to withstand the lateral movement of the tissue cleanser 4800 along the surface of the tongue or other soft tissue surface. The smaller width or diameter of the tip portion 4807 in conjunction with the length of the conically shaped nub 4803 enable the nubs to sweep into the recesses of the tongue and other surfaces to clean the microbial deposits and other debris from the soft tissue surfaces. In the preferred construction, nubs 4803 are able to flex and bend from their respective vertical axes as lateral pressure is applied during use. This flexing enhances the comfort and cleaning of the soft tissue surfaces. In a preferred construction, the thickness or width of the base of the nub in 0.64 mm, and preferably within the range from about 0.51 mm to about 2.00 mm. Tip 4807 of the nubs is 0.127 mm and preferably within a range from about 0.10 mm to about 0.75 mm for optimal penetration between the recesses of papillae of a user's tongue. The length or height of nubs 303, as measured from base surface 301 to tip 307, is preferably 0.91 mm and preferably within range from about 0.5 mm to about 2.5 mm, and most preferably range between 0.75 mm to 1.5 mm. Nevertheless, nubs of other sizes and shapes outside the given ranges can be used.

[0220] Alternatively, the tissue cleaning elements 4803 may have other shapes. As one example, the tissue cleanser may have a grated form such as described in co-pending U.S. patent application Ser. No. 10/601,106, incorporated herein by reference.

[0221] In a preferred construction, nubs 4803 are disposed on the base surface 4801 of tissue cleanser 4800 in a high density pattern. Each nub 4803 is preferably spaced apart from adjacent nubs 4803 between a range of about 0.5 mm to about 3 mm; more preferably the spacing ranges between 0.7 mm to 2.5 mm, and most preferably between 1 mm to 2 mm. Nevertheless, other spacing ranges are possible. The surface density of the nubs 4803 on base surface 4801 ranges preferably from about 100 to about 600 nubs per square inch. In a more preferred construction of the tissue cleanser, the surface density may range from 200 to 500 nubs per square inch, and most preferably between 300 to 450 nubs per square inch. In one preferred example, tissue cleanser 300 includes about 400 nubs per square inch of surface area. The surface density features in conjunction with the height of the nubs 4803 enables the tissue cleanser to provide enhanced cleaning of the soft tissue surfaces with improved comfort. Nonetheless, other surface densities are possible.

[0222] As seen in FIG. 47, nubs 4803 are preferably disposed in longitudinal rows in a direction generally parallel to the longitudinal axis a-a. Further, nubs 4803 are disposed in transverse rows R1, R2 on an axis parallel to base surface 4801 and generally perpendicular to the longitudinal axis a-a. In one preferred construction, adjacent nubs 4803 are provided on the base surface 4801 in a staggered arrangement. For example, adjacent transverse rows of nubs R1 and R2 have nubs 4803 that are not directly behind each other. A first nub is said herein to be "directly behind" second nub when it is located within the lateral bounds of the second nub extending in a longitudinal direction. This configuration enables improved cleaning of the soft tissue surfaces by facilitating the removal of microflora and other debris, and especially from the recesses of adjacent papillae of the tongue. Nonetheless, the nubs could be arranged randomly or in a myriad of different patterns.

[0223] Tongue cleanser 4800 is preferably formed by being molded to head 4505, although other manufacturing processes could be used. With reference to FIGS. 45 and 47, tissue cleanser 4800 is preferably molded within a basin or a receiving cavity 4511 in face 4508 of head 4505. The receiving cavity 4511 has a lower base surface 4513 and a

peripheral sidewall 4515 extending away from the lower base surface 4513. In one mounting arrangement, nubs 4803 of the tissue cleanser 4800 are exposed for use with the base surface of the tissue cleanser 4800 being flush or recessed relative to the surface 4514 of the head. Nevertheless, other orientations are possible. Also, base surface 4801 of the tissue cleanser could be embedded in head 4505 or covered by another layer with nubs 4803 projecting through appropriate openings.

[0224]   As can be seen in FIGS. 45 and 47, face 4508 also preferably includes one or more peg members 4517a-c disposed within basin 4511. Peg members 4517 form anchor points against the opposing mold to prevent the head from moving under the pressure of the injection molding. As a result, tissue cleanser 4800 preferably includes one or more complementary apertures 4811a-c which exposes the tops of peg members 4517a-c. Although, the pegs are illustrated in alignment along the centerline of the head (e.g., longitudinal axis a-a), the pegs could have many different positions. Further, the pegs and basin are preferably both included with head 4505, but either could be used without the other.

[0225]   Alternatively, basin 4511 and peg members 4517a-c may be provided to position and hold a previously molded tissue cleanser, although these constructions are not necessary to use such a previously molded tissue cleanser.

[0226]   Peg members 4517a-c may take on a variety of shapes and lengths. With continued reference to the FIGS. 45 and 47, head 4505 includes peg members 4517a-c extending away from the lower base surface 4513 of basin 4511 to the height of the peripheral sidewall 4515. The peg members 4517a-c are shaped in the form of a cylinder, but other shapes and lengths of the peg members 4517a-c are possible. While the molding process would preferably bond the tissue cleanser to the head, the tissue cleanser could be performed and attached by adhesive or other known means.

[0227]   As shown in FIGS. 45-47, tissue cleanser 4800 is preferably formed as a pad composed of a soft and pliable elastomeric material for comfortable cleaning and effective removal of bacteria and debris disposed on the surface of the tongue, other soft tissue in the mouth and even along the lips. The tissue cleanser 4800 also provides effective massaging, stimulation and removal of bacteria, debris and epithelial cells from the surfaces of the tongue, cheeks, gums or lips.

[0228]   In the construction of FIGS. 45-51, tissue cleansers 4800 may rub against the inside surfaces of the cheeks or lips, and on the sides of the tongue while the user brushes his or her teeth, and thus provide a desired massaging, stimulation and cleaning of various soft tissue surfaces within the mouth. For example, during brushing of the facial tooth surfaces, tissue cleanser 4800 is disposed on the outer face 4508 of head 4505 to naturally rub against the oral surfaces of the cheek. As a result, enhanced cleaning is attained without additional cleaning steps. Further, some users may sense a stimulating tingle on the cheek surfaces that leads to a positive user reaction, and even enjoyment of the comfortable feel of the tissue cleanser along the soft tissues surfaces in the mouth. Tissue cleanser 4800 may also be additionally rubbed on the cheeks, tongue, etc., as desired for further cleaning aside from the contact that may occur while brushing the teeth.

[0229]   Referring to FIGS. 49 and 50, the tooth cleaning elements 4507 of head 4505 may include a variety of tooth cleaning elements which can be used for wiping, cleaning and massaging the user's teeth and gums. Any suitable form of tooth cleaning elements may be used. The term "tooth cleaning elements" is used in a generic sense which refers to filament bristles or elastomeric fingers or walls that have any desirable shape. In the illustrated example of FIG. 49, tooth cleaning elements 4507 include distal tooth cleaning elements 4603a-b disposed at a distal tip 4521 of head 4505, peripheral tooth cleaning elements 4605a-1, longitudinal tooth cleaning elements 4607a-c disposed along longitudinal axis a-a, arcuate tooth cleaning elements 4609a-d and 4611a-b, and proximal cleaning elements 4613a,b. Tooth cleaning elements 4605, 4607, 4611 and 4613 are preferably provided as tufts of bristles whereas tooth cleaning elements 4609 are preferably formed as elastomeric walls. Nevertheless, other forms and types of tooth cleaning elements may be used.

[0230]   FIG. 51 illustrates a sectional view of an alternative arrangement of a head 4900 of a toothbrush. Head 4900 is similar in construction to head 4505, except that tooth cleaning elements 4609a-d are integrally formed with tissue cleanser 4800. To accomplish the alternative construction, head 4900 has appropriately sized ports or openings 4901 to allow the elastomeric material to flow through the head during an injection molding process. In this construction, tooth cleaning elements 4609a-d and tissue cleaner 4800 are formed with the same elastomeric material. Thus, head 4900 may include at least one elastomeric tooth cleaning element formed as a unitary member with tissue cleanser 4800.

[0231]   In FIG. 52, toothbrush 5000 includes a plurality of nubs or other projections 5002 protruding from a back side 5004 of head 5006 as a cleanser 5008 of soft tissue in the mouth. Teeth cleaning elements 5016 preferably extend from a front side 5005 of head 5006. The projections 5002 are preferably arranged seriatim along at least one narrow base or pad in the form of a strip 5010 fixed to the head 5006. In the illustrated example, a plurality of generally parallel strips 5010a, 5010b, 5010c, 5010d are fixed in a generally concave shape facing away from the handle. In this one construction, the strips extend along back side 5004 of head 5006 and each sidewall 5011, although extensions along the sidewalls are not necessary. Any number of strips could be included. The strips could define virtually any shape or orientation on the head. For example, strips 5010 could have any of the shapes disclosed for the ridges in co-pending U.S. patent application Ser. No. 10/989,267, filed Nov. 17, 2004, entitled "Oral Care Implement" and having an attorney docket no. 006427.00131, which is incorporated herein by reference. In the illustrated construction, strips 5010 are interconnected by an axial stem 5012 which extends into the handle and forms a part of the grip for the user. Further, this handle extension or even the stem is of course not necessary.

[0232]   In one construction, each projection 5002 is generally columnar and formed with a width W of about 1.1 mm and a height H of about 1.7 mm (FIG. 53). The projections are spaced apart from each other along strip 5010 a distance of about 1.0 mm. These height, width and spacing dimensions could, however, vary widely. In the illustrated embodiment, projections 5002 each includes a peripheral wall 5013 protruding outward from base 5010, and an inclined distal end surface 5014 at an angle of about 50 degrees to side surface 5004 of head 5006. The inclined end surface 5014 defines a narrow top edge 5016 along a portion of peripheral

wall **5013**, which is advantageous for cleansing the tongue and other soft tissue. Although the end surfaces **5014** are shown to be inclined in the same direction, they could be inclined in different directions.

[0233]  In an alternative construction (FIG. 57), head **5006** is additionally formed with at least one elongate ridge **5025**. With this arrangement, the user is provided with a cleanser that obtains a beneficial dual cleaning effect by moving the discrete projections **5002** and the ridge **5025** across the tongue or other tissue. In the illustrated example, ridge **5025** is a curved, elongate projection protruding generally outward along the outer edge of the remote end **5027** of the head. Nevertheless, other arrangements, locations and shapes are possible. Additional ridges could also be provided. In one preferred construction, ridge **5025** is molded as one-piece with the head and formed of a relatively hard plastic such as polypropylene. The ridge, however, could be formed separately from the head and/or composed of other materials that are compatible for oral care implements.

[0234]  In one construction, ridge **5025** is, as noted above, formed of a relatively hard material (e.g., polypropylene), while projections **5002** are formed of a relatively soft material (e.g., a thermoplastic elastomer). This use of dual materials enables the benefits of both materials to be gained. The cleanser includes the firm engagement of the relatively hard scraper blade in ridge **5025** and the relatively soft discrete projections that flex and turn as they dig into the tongue or other tissue.

[0235]  As seen in **FIGS. 57 and 58**, ridge **5025** is defined by a pair of opposite sidewalls **5033, 5034** which meet to form a scraper edge **5035**. While edge **5035** is relatively narrow in this construction, it could be substantially widened. In one embodiment, sidewalls **5033, 5034** are formed with different slopes relative to side **5004** of head **5006**, though they could have the same slope. In one preferred construction, sidewall **5033** is formed with a steeper slope than sidewall **5034** to define a more aggressive scraping action as the head is pulled across the tongue by the user. The shallower slope of sidewall **5034** facing generally away from the handle, makes the ridge less prone to pushing the tongue biofilm farther back in the throat as the ridge is pushed back toward the throat. In a preferred embodiment, sidewall **5033** is oriented at an angle α of 62 degrees relative to side **5004**, whereas sidewall **5034** is oriented at an angle β of 43 degrees. Other angles could also be used for both sidewalls.

[0236]  In another alternative construction (FIG. 54), each projection **5002**a is provided with an end surface **5014**a having two inclined end face portions **5015**a, **5017**a and a top edge **5016**a. As with ridge **5025**, end face portion **5015**a, generally facing toward the handle, is preferably inclined at a steeper angle relative to side **5004**a than end face portion **5017**a, although other arrangements including end face portions having the same inclination can be used. As one example, end face portion **5015**a is oriented at an angle α of 62 degrees relative to side **5004**a, and end face portion **5017**a is oriented at an angle β of 43 degrees. The steeper angle of end face portion **5015**a provides a more aggressive scraping action as the head is dragged out of the mouth. The shallower angle of end surface **5017**a makes the projection less prone to pushing the tongue biofilm farther back in the throat.

[0237]  Of course, other projections can be used. For example, each projection could include a non-inclined distal end or an end that tapers to a pointed tip. The projections could have a wide variety of shapes beyond the cylindrical shape shown in FIG. 52. For example, the projections could have a conical shape, irregular cross sections, or be inclined to the back side **5004**. Moreover, the projections may also be ridge shaped to extend entirely or partially along the length of strip **5010**.

[0238]  In a preferred construction, projections **5002** and strip **5010** are formed as a one piece member molded or otherwise secured to head **5006**. The projections and strip are preferably formed as a resilient member of a resilient thermoplastic elastomer such as styrene-ethylene/butylene-styrene block copolymer (SEBS) manufactured by GLS Corporation, but could be composed of other resilient materials, hard materials, or a combination of materials such as disclosed in U.S. patent application Ser. No. 11/011,605, filed Dec. 15, 2004, entitled Oral Care Implement and having attorney docket no. 006427.00132, incorporated herein by reference. The projections and strips could also be formed of the same substance as head **5006** (e.g., polypropylene), but have a different color or the like to define it a different material from the head and thereby create at least a visually appealing brush.

[0239]  In one construction, strips **5010** are molded to overlie a generally planar surface **5004** of head **5006** (FIG. 53). Nevertheless, channels **5007** could be formed in side **5004** to receive strips **5010** therein so that side **5004** and the outer surfaces **5012** of strips **5010** having projections **5002** are generally co-planar (FIG. 55). Additionally, the strips of resilient material could be formed as an integral part of the head construction (FIG. 56). More specifically, in this alternative construction, the head includes a plurality of first members **5020** joined together by a resilient second member **5022** that acts as a living hinge to permit the first members to move relative to each other during use of the toothbrush. The second member also forms the base **5010**c of soft tissue cleanser **5006** provided with projections **5002**. Additionally, as discussed in regard to toothbrush **4900**, projections **5002** or **5022**a can be integrally formed as a one-piece member with elastomeric tooth cleaning elements extending in an opposite directions from the head.

[0240]  The following examples are set forth as representative of the improved operation of the present invention. These examples are not to be construed as limiting the scope of the invention.

### EXAMPLE 1

[0241]  The performance nature of a toothbrush can be measured using known oral malodor assessment methods. A study was conducted to evaluate the performance of a toothbrush provided with an elastomeric tissue cleanser having conically shaped nubs, such as the preferred construction of toothbrush **4500** discussed above. Human test subjects participated in the study. There was a washout or normalization period prior to testing of about 7 days in which the test subjects brushed twice a day with a fluoride dental cream (see Table 1). After the washout period, the test subjects were asked to refrain from any oral hygiene (brushing, rinsing, and flossing), eating and drinking prior to oral testing. A baseline volatile sulfur compound (VSC) sample

was taken from each of the test subjects. In the study for overnight odor control, the test subjects brushed their teeth for one minute with a fluoride dental cream (see Table 1) using toothbrush **4500** provided with the above noted tissue cleanser **4800**. Subsequently, the subjects cleaned their tongue surface with the tissue engaging elements of the toothbrush for ten seconds. The test subjects slept overnight and returned for post treatment. VSC samples were taken at the ten-hour time point from the previous day cleaning. In the illustrative example, use of the toothbrush reduced oral VSC about 60% verses brushing the teeth alone as measured from a baseline ten hours after use. The VSC readings were obtained by gas chromatography.

EXAMPLE 2

[0242]   In another study of the above-noted toothbrush **4500**, there was a washout or normalization period prior to testing of about 7 days which the test subjects brushed twice a day with a fluoride dental cream (see Table 1). The test subjects were asked to refrain from any oral hygiene (brushing, rinsing, and flossing), eating and drinking before testing. After the washout period, the test subjects provided a baseline tongue bacteria sample by swabbing a side of the back of the tongue with a sterile cotton swab. The test subjects brushed their teeth with a fluoride dental cream (see Table 1) for one minute with the toothbrush having the above-noted tissue cleanser. Subsequently, the test subjects cleaned their tongue surface with a preferred construction of the tissue engaging elements **4800** of the toothbrush **4500** for ten seconds. Two hours after the cleaning of the tongue surface, a tongue bacteria sample was taken from a side of the back of the tongue with a cotton swab. In the illustrative example, use of the tissue engaging elements controlled more odor causing tongue bacteria than simply brushing the teeth alone. Use of the tissue cleanser **4800** demonstrated a tongue bacteria log reduction of over 0.8 Log colony forming units/ml two hours after use on the tongue.

EXAMPLE 3

[0243]   In another study of the above-noted toothbrush, a MTT assay was used to examine the viability of the epithelial cells collected from the oral cavity prior to and after the use of the toothbrush with the noted tissue cleanser. The MTT Assay was based on the enzymatic reduction of the tetrazolium salt MTT [3-(4,5-dimethylthiazol-2-yl)-2,5-diphenyl-tetrazoliumbromide+++] in living, metabolically active cells. The reaction was carried out in situ in test tubes, and the reaction product, a purple-colored formazan soluble in dimethylsulfoxide, was measured colormetrically using a multiwell plate reader. Advantageously, the MTT Assay offers a high degree of precision, ease of use, and suitability for the purpose for large scale chemosensitivity testing.

[0244]   Following a 7-day washout period, the test subjects reported to a test site without prior eating, drinking, or performing oral hygiene. The test subjects provided salivary rinse samples by rinsing their oral cavity with 9 ml of sterile water for 10 seconds and then discharging the water from the rinse into a tube containing 10x sterile phosphate buffered saline (PBS) solution. The samples were refrigerated for approximately 30 minutes before the MTT Assay was run. The test subjects brushed their teeth under supervision for one minute using a fluoride dental cream (see Table 1) followed by 10 seconds of tongue cleaning with the tongue

cleanser **4800** of the preferred construction. Approximately 30 minutes after brushing and tongue cleaning, the test subjects provided a rinse sample in the manner described previously.

[0245]   The pre-rinse samples and post-rinse samples were centrifuged for 15 minutes at about 3000 RPM. The supernatant, e.g., clear liquid, was removed and the pellet was resuspended in 2.5 mL of PBS. The samples were vortexed for 5 seconds, then 2.5 ml of MTT Solution was added. The samples were subsequently incubated in a gently shaking waterbath set at 37° C. for 2 hours. Following the 2 hour incubation period, the samples were centrifuged for 15 minutes at about 3000 RPM. The supernatataant was siphoned out and 3 mL of detergent (0.04 N Acid Isopropanol) was added to dissolve purple crystals. An increase or decrease in MTT conversion was spectrophotometrically quantified. From each sample, 200 $\mu l$ of each was added to 96 well plates and the optical density was measured at 570 nm and compared to a negative buffer control. In the illustrative example, one minute of brushing followed by 10 seconds of use of the tissue cleanser reduced oral epithelial cells about 72% as determined by a MTT assay protocol.

EXAMPLE 4

[0246]   In another study, human test subjects provided baseline VSC samples via a Halimeter™ (i.e., a sulfide meter). A Halimeter™ uses an electrochemical, voltammetric sensor which generates a signal when it is exposed to VSC such as, sulfide and mercaptan gases and measures the concentration of hydrogen sulfide gas in parts per billion. The test subjects brushed their teeth under supervision for one minute with the preferred construction of a toothbrush having the above noted tissue cleanser. Then, the test subjects used the noted toothbrush to provide six strokes on the tongue surface. A subsequent VSC sample was taken from the test subjects two hours after the brushing stage. In this illustrative example, use of a toothbrush with the tissue cleanser reduced the mouth odor over 35% from a baseline measured two hours after use.

EXAMPLE 5

[0247]   In one other study, after a washout period, human test subjects rinsed their mouths with sterile water to provide a baseline sample for viable epithelial cell analysis with the MTT assay. The subjects brushed their teeth under supervision for one minute with the preferred construction of the toothbrush having the above-noted tissue cleanser. Then, the test subjects used the tissue cleanser to provide six strokes on the tongue surface. The test subjects provided a post rinse sample for analysis. The samples were tested and analyzed in the manner as discussed with respect to Example 3. In this example, use of the toothbrush reduced oral epithelial cells by about 92% from a baseline as determined by MTT assay protocol.

[0248]   In the above noted examples, the subjects brushed their teeth using a fluoride dental cream with the formulation in Table 1.

US 2006/0026784 A1

Feb. 9, 2006

TABLE 1

| % wt. | Ingredient |
|---|---|
| 48.76% | Dicalcium Phosphate Dihydrate |
| 22.0063% | Water |
| 22.00% | Glycerin |
| 4.138% | SO3 Sodium Lauryl Sulfate base-29% |
| 1.000% | Sodium CMC-7MF-Food Grade |
| 0.89% | 105 Dental Cream Flavor |
| .76% | Sodium Monofluorophosphate |
| .25% | Tetrasodium Pyrophosphate |
| .20% | Sodium Saccharin |

[0249] An oral care implement in accordance with the present invention is further illustrated in the form of a toothbrush 10 including a head 12 and a handle 14. Although discussed in terms of a toothbrush, it is understood that the device could be in the form of other oral care implements including simply a tissue cleansing implement.

[0250] An oral care implement in accordance with the present invention is illustrated in the form of a toothbrush 10 including a head 12 and a handle 14. While FIG. 59 only illustrates the connection of the handle to the head, the handle is preferably an elongate member to be grasped by the user. The handle 14 could have any known shape adapted for the manipulation needed to clean the teeth and/or tongue of a user.

[0251] The head 12 with a pair of opposite sides 16, 17 is shown with a generally oblong shape, although other known shapes could be used. A plurality of teeth cleaning elements 20 extend from one side 16 of the head 12. The teeth cleaning elements could be bristles and/or elastomeric members of various shapes and sizes. Any form or combination of elements 20 suitable for cleaning a user's teeth could be used.

[0252] The other side 17 of head 12 includes at least one ridge and preferably a plurality of elongate ridges 22 to cleanse the tongue and other soft tissue of the mouth (e.g., the inner surfaces of the cheeks). While the ridges are preferably formed on a head also provided with teeth cleaning elements, they could also be formed on other implements or other parts of the toothbrush. A head of the implement is simply meant to be the operative portion of the implement that is inserted into the mouth for cleaning of the tongue, and does not refer to a particular shape or structure of the head.

[0253] In one construction of the invention, each ridge 22 projects orthogonally from a back surface 17a of the head and has a generally square-like cross-sectional configuration (FIG. 60). The ridge includes a distal end 29 remote from surface 17a that forms a contact region 29a adapted to contact and clean the tongue or other soft tissue in the mouth. In this embodiment, the contact region 29a is defined between and includes protruding corners or edges 25, 27. As can be appreciated, the contact region 29a has a width W extending transverse to the extension of the ridge across surface 17a. The width W of ridge 22 is at least as large as the height H of the ridge (i.e., the distance the ridge extends from surface 17a). With this width to height relationship, the risk of the ridge cutting or injuring the soft tissue of the tongue or other parts of the mouth is reduced. A narrow ridge that extends outward from head 12 a distance greater than its

width has an increased risk of cutting or otherwise injuring the user as compared to a similarly narrow ridge (i.e., one with the same width) that extends from the head a distance less than the width of the ridge; such a ridge will not tend to cut or hurt the user. The tongue and other soft tissue in the mouth will give and bend some distance around the ridge so long as the ridge is not too tall for the width of the ridge engaging the tissue. In one exemplary embodiment, ridges 22 have a width W that is preferably about 0.8 mm and a height H about 0.6 mm. Nevertheless, a wide range of relative sizes are possible.

[0254] Additionally, ridge 22 also includes a base 28 where the ridge is fixed to surface 17a. In a preferred construction, base 28 defines a width W1 that is at least as large as the height H of the ridge. In this way, the ridges do not experience undue bending as they are dragged over the tongue. Rather, ridges 22 are stably supported so that they tend to remain generally in a protruding orientation. As a result, edges 25, 27 are stably supported to dig into recesses in the tongue to effectively remove bacteria and debris.

[0255] Alternatively, the ridges could have other shapes. For example, FIG. 61 illustrates ridges 22' that are substantially wider than they are tall, i.e., base 28' and contact region 29a' each has a width W2 that is substantially greater than the height H2 of the ridge. In one example, the width is about twice the distance of the height. The increased width to height ratio of ridge 22' provides for a stiffer, smaller ridge to effectively cleanse the tongue. Such ridges are beneficial in that they reduce the size of the head, which is preferred by some users. A shorter, wider ridge also further reduces the prospect of users injuring themselves. Moreover, such ridges can be made of softer materials without losing the desired stability.

[0256] In another example (FIG. 61a) ridge 22'' has a rounded distal end. Accordingly, the contact region 29a'' has an arcuate, convex surface to engage the tongue or other soft tissue. In this example, the contact region 29a'' (i.e., the surface adapted to engage the tongue) has a width W3 that is at least as large as the height H3 of the ridge. In this embodiment, the base 28'' of ridge 22'' also has a width W4 that is at least as large as height H to present a stable ridge. Of course, numerous variations may be formed in the shape of the ridge while maintaining the benefits of the invention.

[0257] In addition the ridges may be formed to gain only some of the benefits of the invention. For instance, ridge 22''' can be formed to taper to a narrowed distal end 29''' (FIG. 3b). In this instance, contact region 29a''' has a width W5 that is less than the height H5. However, the base 28''' of ridge 22''' has a width W6 that is at least as large as the height to form a stable ridge construction.

[0258] Although the illustrated ridges have all been shown to extend generally perpendicular from surface 17a, they could be inclined relative to surface 17a. A perpendicular extension is preferred to provide effective cleaning regardless of whether the tongue cleaner is pushed or pulled over the tongue. The sides 24, 26 could also be inclined, curved, angular, irregular or otherwise shaped. Additionally, the ridges could project from a non-planar surface. As one example, surface 17a and ridges 22 could have an undulating configuration.

[0259] Regardless of the cross-sectional shape of the ridge, each ridge 22 is preferably curved to define a concave

side 24 facing toward handle 14 and a convex side 26 facing in the opposite direction. Although ridges that are continuously curved are preferred (**FIG. 59a**), such concave-shaped ridges could be defined by non-continuous ridges (**FIG. 59b**) or angular ridges (**FIG. 59c**). Further, in one preferred construction, ridges 22 are progressively less curved as they are formed farther from handle 14. In one illustrated construction (**FIGS. 59 and 59a**), the ridges are generally concentric to each other curving generally about a common point near the connection of handle 14 to head 12.

[0260]   In use, the user grips the handle and typically pulls the tongue cleanser repeatedly over the tongue from back to front so that the concave sides 24 are scraped against the tongue to effectively gather and remove bacteria and debris on the tongue. Alternatively, the user may also commonly move the tongue cleanser forward and backward over the tongue. In either event, the different curvatures of the ridges enable aligned segments of the ridges (i.e., along lines generally parallel to longitudinal axis 30) to engage the tongue surface at different angles for effective cleaning of the tongue. Nevertheless, the tongue cleansing ridges can be moved over the tongue in a number of ways to clean the tongue.

[0261]   Further, other ridge constructions could be used. For example, the oral care implement could include ridges 22a that are reversed so that the concave sides face away from the handle (e.g., **FIG. 62**), ridges 22b, 22g, 22i, 22j, 22s with different curved shapes (e.g., FIGS. 63, 68-70, and 78), ridges 22c, 22d, 22k and 22r that are linear (e.g., **FIGS. 64, 65, 71 and 77**), ridges 22e, 22l, 22m, 22n and 22o that include a mixture of curved and linear ridges (e.g., **FIGS. 66 and 72-75**), or one continuous ridge member 22f, 22g forming successive ridges 22f, 22g', (e.g., **FIGS. 67 and 68**). The ridges could be non-concentric or curved at all the same radius of curvature. While the ridges preferably extend substantially across the entire side 17 of head 12, they could extend only part way across the head. For example, ridges 22p, 22r, 22t, 22v could be provided only along the sides of surface 17a (**FIGS. 76-77 and 79-80**). Ridges along the sides of head 12 could also be used with central ridge(s); i.e., side ridges 22p, 22t, 22v could be used with a central ridge(s) such as an oval or partially oval ridge 22q, 22u, 22w (**FIGS. 76, 79 and 80**), any of the ridge patterns illustrated in FIGS. 59a-c and 62-75, or another ridge pattern. Any of the ridges could also be used with various projections, e.g., conical projections 31 (see, e.g., **FIGS. 74 and 76-80**). Regardless of whether the ridge 22 each form a continuous segment across the head (e.g., **FIG. 59a**) or is defined by aligned ridge sections 22h separated by gaps 23 (e.g., **FIG. 59b**), they are in this application each considered a ridge. Also, regardless of whether successive ridges 22 are separated (e.g., **FIG. 59a**) or interconnected to define a single ridge member 22f (e.g., **FIG. 67**), the successive sections extending laterally across the hand are each considered to be a ridge. Concepts of this invention can be used in connection with ridges having virtually any shape or orientation along surface 17a.

[0262]   As shown in FIGS. 59 and 60, head 12, handle 14 and ridges 22 can be molded together as a one-piece member of the same material, for example, polypropylene. Nonetheless, other arrangements are possible. For example, head 12 could be detachable from handle 14. Further, ridges 22 could be separately molded, glued or otherwise attached to side 17

of head 12. The ridges as well as the head and the handle could each be made from a material different from the other parts. Soft materials, such as TPE or the like, can be fixed to head 12 to form the ridges (see, e.g., **FIGS. 76-80**). The ridges could be made of virtually any known material used to make oral care implements.

[0263]   **FIGS. 81-89** illustrate an oral care implement in the form of a toothbrush 8100 having an improved handle 8103 and a head 8105 with bristles or other tooth engaging elements. While reference is made to a toothbrush with an improved handle, other oral care implements, such as interproximal picks, flossing tools, plaque scrapers, tongue and soft tissue cleansers/massagers and the like, may use the same handle.

[0264]   Handle 8103 is provided for the user to reliably grip and manipulate the toothbrush. Handle 8103 includes ergonomic features which provide a high degree of control for the user while maintaining comfort. In a preferred construction (**FIGS. 81-89**), handle 8103 includes a base 8300, a grip body 8403, and a gripping member 8407. These components cooperatively form a grip portion 8400 by which the user holds and manipulates the toothbrush. For optimum comfort and control, grip portion 8400 includes three segments 8111, 8113, 8115. A rear segment 8115 forms a portion that generally fits comfortably within the palm of the user. A front segment 8111 forms a portion that generally fits comfortably between the user's thumb and index finger. A narrow transition segment 8113 connects the front and rear segments 8111, 8115.

[0265]   In a preferred construction, front segment 8111 is inclined relative to rear segment 8115 to define an inclined portion positioned for comfortable gripping and to facilitate a desired offset positioning of the head relative to the palm gripping region 8115. The angle θ of the incline is preferably 23 degrees, but may range approximately between 5-40 degrees. This feature allows improved control of the handle during brushing in which the head 8105 can be more desirably positioned within the mouth to engage the tooth cleaning elements 8200 against the teeth.

[0266]   In the preferred embodiment, front and rear segments 8111, 8115 are widened sections that are joined by a narrowed portion 8113 to form an undulating structure which is more reliably and comfortably held within the user's hand. Further, this wide construction of the palm and finger gripping regions 8111, 8115 requires less fine motor control by the user and is, hence, easier to hold and manipulate. In addition, front segment 8111 transitions into neck 8116 which, in turn, supports head 8105. In a preferred embodiment, base 8300 includes a gripping region 8301 that corresponds to grip portion 8400, the neck 8116, and the head 8105 to define an oral engaging region.

[0267]   Under a normal use position, grip portion 8400 is grasped by a user with the fingers engaging the handle 8103 so that the thumb is on one side and the index finger and other fingers are positioned on the opposite side. Front segment 8111 of grip portion 8400 includes grip body 8403 having opposing sides 8405, 8404 preferably for engaging the thumb and index finger of a user. Grip portion 8400 further includes a rear segment 8115 which enables reliable gripping of the toothbrush 8100 with the third through the fifth fingers of the user's hand in a normal use position. While a normal use position is discussed, the features of the

20

toothbrush could be employed by a user having less fingers or a user which holds the toothbrush in other ways.

[0268] In one preferred construction, front section 8111 includes a soft, resilient grip body 8403 fixed within aperture 8303 of base 8300. As shown in FIGS. 88 and 89, front section 8111 has the widest transverse dimension of any other part of handle 8103. As shown in FIGS. 81 and 84, aperture 8303 occupies more than one-half of the transverse dimension across front section 8111 of handle 8103. Nevertheless, other constructions are possible. As an example only, grip body 8403 may occupy a smaller portion of the transverse dimension, such as one-third of the transverse dimension of front section 8111. Nevertheless, the width and length of aperture 8303 may be adjusted as desired and other parts of handle 8103 may be as wide as or wider than front segment 8111.

[0269] Referring to FIGS. 86-87, in one construction, aperture 8303 extends through base 8300 to mount grip body 8403. Aperture 8303 includes a sidewall geometry 8305 for the retaining and dynamic positioning of the resilient grip body 8403 during use of the toothbrush. While grip body 8403 is preferably molded into aperture 8303, it could be premolded and mounted into aperture 8303. In a preferred construction, grip member 8403 is a soft, resilient element formed of a thermoplastic elastomer (TPE) which fills the aperture 8303. To provide optimum comfort as well as control benefits, the elastomeric material preferably has a hardness durometer measurement ranging between A11 to A15 Shore hardness. Nevertheless, the hardness of the elastomer could also range between A8 to A24 Shore hardness. Other materials outside this hardness range could also be used. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene (SEBS) manufactured by GLS Corporation. Nevertheless, other manufacturers can supply the SEBS material and other materials could be used.

[0270] Referring to FIGS. 81-85, resilient grip body 8403 preferably has a generally bulbous shape that bulges out of aperture 8303 and which resembles an oval or elliptical shape. The bulbous shape of the resilient grip body 8403 enables the user to reliably roll and control the handle 8103 between the thumb and index fingers during use. Grip body 8403 could also be non-bulging or have any number of shapes, such as circular, a true oval shape and the like.

[0271] Referring to FIGS. 86-87, aperture 8303 preferably includes a peripheral shoulder or rim 8304 for supporting grip body 8403. Sidewall 8305 of aperture 8303 extends between opposing outer surfaces of base 8300 and includes inclined surfaces 8309, 8310 inside of the periphery 8306 of aperture 8303. The inclined surfaces 8309, 8310 extend from the outer surfaces towards a rounded edge surface 8311 which is the narrowest part of the aperture 8303. This construction, in conjunction with the soft, resilient nature of grip member 8403, provides a weight shifting feature which improves control of the handle 8103 during use.

[0272] Resilient grip body 8403 further helps attenuate the brushing force applied to the oral surfaces to prevent gum recession, loss of tooth enamel or to provide for a more comfortable brushing experience. When the toothbrush is used against the oral surfaces, such as the teeth, reaction forces are transferred to the resilient grip body 8403. The elastomeric material dampens the forces against the head

8105 which reduces the brush pressure applied to the teeth and soft tissue surfaces, such as the gums. In a preferred construction, elastomeric material of the resilient grip body 8403 is enabled to flow and shift within aperture 8303. Net pressure applied by the user's fingers is transferred to grip body 8403 so that the inclined surface 8309, 8310 enables the elastomeric material to flow to the narrowest portion of the aperture. Hence, some of the elastomeric material squeezes past rounded edge surface 8311 to the other side of the aperture while under pressure. The shifting of the material to the other side of the aperture causes a slight shift in the mass centroid of the resilient member 8403 to counter balance the brushing forces. Thus, grip body 8403 balances handle 8103 enabling it to "float" in the hand of the user and reduce the brushing forces applied by the head 8105.

[0273] In one preferred construction, grip body 8403 has a multiplicity of finger grip protrusions 8411 (FIGS. 81-85). Finger grip protrusions 8411 provide a tactile feature to increase the friction on the user's finger surfaces and thus enhance the user's ability to grip the handle, particularly under wet conditions. Finger grip protrusions 8411 are preferably provided in a desired conical or frusto-conical shape for improved grip performance. Of course, other roughened surfaces could be used.

[0274] Referring to FIGS. 86 and 87, rear segment 8115 is preferably formed by base 8300 and gripping member 8407. In one preferred embodiment, base 8300 defines a relatively rigid support structure which is at least partially overlain by an elastomeric gripping member 407. While gripping member 8407 is shown as a single unitary member or layer, it could be formed by separate independent parts or sections.

[0275] Base 8300 along rear segment 8115 includes at least one projection, and preferably a plurality of spaced projections. While the projections could have virtually any shape, they are preferably in the form of spaced, elongate, transverse projections or ribs 8315. In the preferred embodiment, ribs 8315 are generally parallel with respect to each other and generally symmetrical in relation to the longitudinal axis a-a of rear segment 8115. The projections 8315 are preferably linear and span laterally between the longitudinal sides 8313, 8314 of handle 8103, although they may have different transverse lengths. The transverse length of each projection 8315 generally matches the width at the longitudinal location along the handle 8103; although the ribs are preferably slightly short of the actual width of handle segment 8115 at any one location so as to be covered on the sides by gripping member 8407. Since ribs 8315 span the width of segment 8115, they each have varying lengths due to the variations in the width of handle segment 8115. While nine projections are shown, the inventive aspects may be obtained by other numbers of projections.

[0276] In a preferred arrangement, a receiving region 8317 is defined between each of the adjacent transverse projections 8315. The receiving regions 8317 are configured to retain and hold a layer of suitable gripping member 8407, such as a thermoplastic elastomer (TPE) or other similar materials used in oral care products. In a preferable construction, receiving regions 8317 have a transverse arcuate base surface 8319 with a transverse groove or depression 8321. The arcuate base surface 8319 extends between the longitudinal sides of base 8300. When a gripping member

8407 is applied to the base, grooves 8321 create concaved regions 8413 in grip surface 8410 to improve the tactile performance of the toothbrush handle (see FIG. 84). While horizontal or straight projections 8315 are illustrated, the projections 8315, alternatively, may be any number of shapes or orientations with respect to the longitudinal axis a-a. For example, the projections 8315 may be chevron shaped, circular, oval, elliptical, rectangular, or triangular or other shapes. The orientation of the projections 8315 may also be off-axis from the longitudinal axis a-a to form an asymmetrical relationship. The projections 8315 may be regularly or randomly spaced on base 8300 for the intended gripping performance. As shown in FIG. 87, a peripheral portion of base 8300 has a peripheral groove 8323 arranged to receive and hold a thin layer of the grip material for suitable use with the toothbrush.

[0277]   Referring to FIGS. 82, 84 and 85, gripping member 8407 is fixed to base 8300 to provide several gripping features to improve performance. In one aspect, gripping member 8407 has a grip surface 8410 with at least one end and preferably a plurality of spaced openings, preferably in the form of elongate transverse slots 8415, which expose portions of base 8300. In this way, the outline shape of slots 8415 is formed by the peripheral shape of projections 8315 of base 300 (FIGS. 86 and 87). To form slots 8415, suitable injection molding equipment mates with the top surfaces of the projections 8315 to prevent overmolding of ribs 8315 and any undesired deflection of base 8300 during the molding process. This enables the top surfaces of the projections 8315 to be exposed after the molding process.

[0278]   To provide comfort as well as control benefits, the elastomeric material of the grip surface 8410 may have a hardness durometer measurement ranging between A13 to A50 Shore hardness, although materials outside this range may be used. A preferred range of the hardness durometer rating is between A25 to A40 Shore hardness. While an injection molded construction is preferred, a suitable deformable thermoplastic material, such as TPE, may be formed in a thin layer and attached to base 8300 with an appropriate adhesive or by other means. Irrespective of the manufacturing process, ribs 8315 are preferably recessed relative to gripping surface 8410, i.e., a suitable thickness of elastomeric material is used to control the depth of the slot 8415 as measured from the top of the grip surface 8410 to the top of the projection (e.g., the exposed portion of base 8300). In a preferred construction, the depth of the slots along axis a-a is about 0.5 mm. These transverse slots 8415 prevent slippage of the handle 8103 by enabling portions of the user's fingers to slightly protrude into the depth of the slot 8415. Additionally, slots 8415 channel water away from the fingers tips during wet operational conditions. Air is also able to enter the slots during brushing to provide some evaporative effect.

[0279]   In another aspect, the grip surface 8410 includes concaved regions 8413 between each slot 8415 to further improve the grip performance of handle 8103. The concaved regions 8413 are preferably created by a suitable thickness of the elastomeric material during the injection molding process filling into the transverse grooves 8321 in base 8300, but could be formed by other means (FIGS. 86 and 87). While base surface 8319 is preferably arcuate in a transverse direction, the base surface may be horizontal or take on other shapes.

[0280]   In one preferred construction, resilient grip body 8403 has a different hardness as compared to the hardness of the grip surface 8410. Generally, the material of grip body 8403 is softer than the material forming the grip surface 8410. In this manner, the handle 8103 may be provided different grip features to complement the particular control need. For example, the handle 8103 may have a soft forward portion with a shock absorption advantage and a slightly harder aft portion with a comfort and control advantage. The material of the resilient grip body 8403 and grip surface 8410 are preferably each a thermoplastic elastomer.

[0281]   The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any combination, improve the control and grip performance of oral care implements. Other constructions of toothbrush are possible. For example, head 8105 may be replaceable or interchangeable on handle 8103. Head 8105 may include various oral surface engaging elements, such as inter-proximal picks, brushes, flossing element, plaque scrapper, tongue cleansers and soft tissue massages. While the various features of the toothbrush 8100 work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to obtain some of the aforementioned advantages without the necessity to adopt all of these features in an oral care implement.

[0282]   FIGS. 90-98 show additional embodiments of the invention that further illustrate the combinability of various aspects, features and functions disclosed herein into single oral care implement configurations. FIGS. 90-98 disclose oral care implement configurations that provide tongue cleanser functionality and include handle gripping features. As such, oral care implements 90-98 generally include the aspects discussed along with FIGS. 38, 39 and 45-81 pertaining to soft tissue cleansers (e.g., tongue cleansers), as well as the aspects discussed along with FIGS. 84-89 pertaining to handle features. Further, it is understood that other features may be used along with these configurations.

[0283]   As an example of potential embodiments based on combinations of features disclosed herein, the mechanical drive features discussed along with FIG. 1-5 and/or tooth cleansing features discussed throughout the specification may be combined with the soft tissue cleansers of FIGS. 90-98. Thus, as illustrated in FIGS. 98A-C, embodiments of the invention include any one of heads 9014, 9214, 9414, 9614 and 9514 discussed hereafter in combination with handle 1 and neck part 4 shown in FIGS. 1-4 instead of bristle-carrying head part 3 shown in FIGS. 1-5. These embodiments provide powered oral care implement configurations that can provide enhanced cleansing benefits. For example, such combination devices can provide the functions of two devices in a single device. Further, these devices can simultaneously provide dual cleaning functionality. For instance, toothbrush features may be used to clean a user's teeth while the soft tissue cleanser features simultaneously clean soft tissues, such as the inside of a user's cheeks.

[0284]   FIGS. 90 and 91 disclose a soft tissue cleanser 9010 for removing microbial and other debris from the soft tissue of a user's mouth, such as the user's tongue and inside of their cheeks and lips. As shown, cleanser 9000 generally includes a handle 8103 attached to a head 9014. The head

22

and handle may be molded together as a one-piece member of the same material, for example, polypropylene or another thermoplastic elastomer. In addition, the head may be detachable from the handle. In the configuration shown, handle **8103** is the handle of oral care implement **8100** discussed along with FIGS. **81-89**.

[0285] In general, head **9014** includes a plurality of tissue engaging elements **9012** disposed about a central portion **9016** of the head. Elements **9012** include projections in the form of ridges **9018** and nubs **9020**, which extend from the head to engage the soft tissue in a user's mouth. The ridges and nubs may be separately molded, glued or otherwise attached to head **9014**. In addition, they may be integrally formed therewith. The ridges and nubs could each be made from a material different from each other and/or different from other parts. Soft materials, such as TPE or the like, can be fixed to head **9014** to form the ridges. However, a harder material or virtually any known material used to make oral care implements may be appropriate for the ridges and nubs. Ridges **9018** and nubs **9020** could have a variety of shapes, patterns, cross-sections, configurations, etc., as discussed along with FIGS. **38**, **39** and **45-81**.

[0286] Central portion **9016** is shown as a generally elliptically-shaped region on a face of head **9014** about which cleaning elements **9012** are disposed that has a bottom surface **9017** generally disposed below the tips of the ridges and nubs. It is understood, however, that the central portion may have a variety of shapes, sizes and depths. In the configuration shown, central portion **9016** is a relatively shallow depression that extends into the head about 10% to about 30% of the thickness of the head. In another configuration, the central portion may be shallow and may not extend into the head. For instance, the central portion may be formed by a surface **9017** of the head upon which the cleaning elements are disposed along with a ring of cleaning elements **9012** bounding the central portion. In such a configuration, the central portion would be a depressed region with respect to the protruding cleaning elements disposed about it, but would not otherwise extend into the head. In other configurations, the central portion may be depressed into the head about 0 to 10% of its thickness, it may be depressed about 30% to 50% or more of its thickness, or the central portion may even form a cavity through the head (i.e., 100% of its thickness).

[0287] As shown, surface **9017** may be continuous to provide a non-interrupted boundary for the central portion **9016** and it may be relatively smooth. In alternate configurations, surface **9017** may include interrupting or undulating features, such as one or more notches, contour features, or features to permit partial flow of materials therethrough, such as a mesh or screen. In addition, surface **9017** may include irregular features, such as cleaning elements, projections, etc. Further, surface **9017** may be formed by a flexible membrane, which may be disposed within a cavity of the head (not shown). In such an alternative configuration, tooth cleaning members (e.g., bristles) may be disposed on one side of the flexible membrane opposite surface **9017**. As such, movement of the cleaning members away from and toward the head will move surface **9017**.

[0288] Central portion **9016** and the ring of protruding cleaning elements **9012** cooperate to translate a downward force applied by the user into a concentrated force at the cleaning elements. Thus, the cleaning elements penetrate more deeply into the user's soft tissue than would be provided by a relatively uniform contact surface or a uniform field of cleaning elements, such as the configuration provided by tissue cleanser **4800** shown in FIG. **45**. This permits ridges **9018** and nubs **9020** to more effectively penetrate the soft tissues. In an alternative construction in which the head includes toothbrush features on an opposite side thereof (see FIG. **98**), the ring of protruding cleaning elements configuration can effectively engage soft tissues in the inside of a user's cheeks and lips without the user applying significant force in the direction of the ring, as may be the case when the user cleans their teeth via the toothbrush features. As further shown, central portion **9016** includes a bottom surface **9017** for contacting soft tissue during use. The bottom surface can act as a guide to limit the penetration depth of the nubs and ridges when excessive downward force is applied by the user. In addition, it can provide a collector for micro debris scraped during use of the oral care implement.

[0289] A variety of ridges, nubs, or other cleaning element configurations may be used. In the configuration shown for oral care implement **9010**, ridges **9018** are generally oriented away from a center of central portion **9012** in a radial manner. Central portion **9016** is elliptically shaped and is aligned with a longitudinal axis of handle **8103**. As such, ridges **9018** are oriented generally perpendicular to the longitudinal axis of the handle, which provide blades oriented transverse to the scraping direction for most users. When a user scrapes the oral care implement **9010** forward and backward in a direction substantially parallel to the longitudinal axis of handle **8103**, ridges **9018** act as small blades to scrape micro debris from the soft tissue. As also shown in FIGS. **90 and 91**, the ridges may be angled upward toward engagement with soft tissue during use. Thus, inner portions **9022** of ridges **9018** engage soft tissue when the user applies a light downward pressure, and the ridges more fully engage the soft tissue when additional pressure is applied. As such, variable cleaning and scraping functionality is provided as desired by the user via their selection of a downward force.

[0290] As further shown in FIGS. **90 and 91**, nubs **9020** are provided along a portion of central portion **9016** disposed between handle **8103** and a distal end of head **9014**. Nubs provide concentrated penetration into the user's soft tissue during use. In addition, in their location along central portion **9016** as shown in FIG. **91**, they can encourage dislodged micro debris into central portion **9016** to be captured therein and removed by the user. It is understood that various nub configurations, positions and orientations, as well as ridge and central portion configurations, positions and orientations, can provide various advantages and functionality.

[0291] FIGS. **92 and 93** illustrate another possible configuration of cleaning elements in an example oral care implement **9210**. Oral care implement **9210** generally includes the same aspects and features of oral care implement **9010**, except that it additionally includes a narrow protrusion **9224** erected around the perimeter of central portion **9216**. The narrow protrusion may be a semi-flexible, "blade-like" structure that assists with scraping a user's tongue or other soft tissue. In alternative constructions, it may be a rigid structure or relatively flexible structure.

23

Narrow protrusion **9224** may be made from a flexible or semi-flexible, thermoplastic elastomer, a hard plastic structure or another rigid material, such as metal. As shown in **FIGS. 92 and 93**, blade-like protrusion **9224** may be continuous structure disposed about the central portion. In other configurations, it may a partial structure, such as an arc. It may also exist apart from or without the central portion, and it may include a truncated shape or shapes. The blade-like protrusion provides an effective blade for scraping micro debris from a user's soft tissue. In a continuous configuration, it may further encourage micro debris scraped from the user's soft tissue to be retained within central portion **9216**.

[0292] **FIGS. 94 and 95** illustrate another possible configuration of cleaning elements in an example oral care implement **9410**. Oral care implement **9410** generally includes the same aspects and features of oral care implement **9210**, except that cleaning elements **9412** only include nubs **9420** disposed about central portion **9416**. The nubs provide concentrated penetration into the user's soft tissue, which can act to dislodge micro debris and thereby assist blade-like protrusion **9416** with scraping micro debris from the user's soft tissue.

[0293] **FIGS. 96 and 97** illustrate another possible configuration of cleaning elements in an example oral care implement **9610**. Oral care implement **9610** generally includes the same aspects and features of oral care implement **9010**, except with respect to cleaning elements **9612** and blade-like structure **9624**. As shown, cleaning elements **9612** include a combination of blades **9618** extending substantially radially from the center of central portion **9616**, as well as blades **9630** oriented substantially perpendicular to blades **9618**. The mixture of blades in alternating orientations can improve scraping effectiveness of the oral care implement. In addition, blade-like structure **9624** includes notches **9632** spaced about its blade, which can further improve the scraping effectiveness of the oral care implement.

[0294] **FIG. 98** illustrates a further possible configuration of an oral care implement. Oral care implement **9510** generally includes the same aspects and features of oral care implement **9210**, except with respect to cleaning elements **9512** and blade-like structure **9524**. As shown, cleaning elements **9512** include short blades **9534** interposed between pairs of longer blades **9518**, which can further improve the scraping effectiveness of the blades. In addition, blade-like structure **9524** is truncated such that it only extends around a distal portion of central portion **9516**, which can encourage dislodged micro debris to be retained within central portion **9516** when the oral care implement **9510** is scraped across soft tissue while being withdrawn from the user's mouth. Oral care implement **9510** further includes tooth cleaning elements **9536** extending from an opposite side of the head from cleaning elements **9512**. Thus, a user can use the single oral care implement **9510** to effectively clean their teeth and to scrape their tongue, for which the handling of the implement is improved via gripping features of handle **8103**. In addition, the user can simultaneously clean their teeth via cleaning elements **9536** and engage the inside of their cheeks and lips via **9512**.

[0295] **FIGS. 98A-C** show an oral cleaning implement **9810** that includes a dual function head **4900** or **9514**, and

a powered handle **1**. The handle is generally the same as powered handle **1** discussed along with **FIGS. 1-5**, which may be used to move or vibrate tooth cleaning features of the head, and/or soft tissue cleanser features of the head. Although the head is shown as either head **4900** or head **9514**, the head may include any one of heads **9014, 9214, 9414, 9614** and **9514** or other dual function heads. As discussed above, these embodiments can provide enhanced cleansing benefits by simultaneously engaging proximate oral surfaces, such as cleaning a user's teeth, and cleaning or stimulating the inside of their cheeks and lips. Moreover, such combination devices can provide the functions of two devices in a single device.

[0296] **FIGS. 99-102** illustrate a toothbrush **9710** in accordance with another embodiment of the invention. As shown therein, toothbrush **9710** includes a handle **9712** and a head **9714**. Handle **9712** may include a suitable grip pad **9716** made of an elastomer material. As shown in **FIG. 102**, head **9714** has a base portion **9718** with an upstanding wall **9720** to create a peripheral frame extending outwardly above base portion **9718**. A membrane **9722** is attached to frame **9720** completely along its periphery. Membrane **9722** in its initial non-use condition is convex or bowed outwardly as shown in **FIG. 102**. The convex bowing would preferably be both in the longitudinal and transverse directions, thus presenting a dome-like outer surface **9724** to which cleaning elements **9726** are connected.

[0297] Toothbrush **9710** is particularly suitable for cleaning elements in the form of strands or bristles attached via in-molded technology (IMT) methods that generally require small cross-sections of material into which the strands are permanently attached. The strands utilizing IMT methods are preferably attached during formation of the toothbrush handle or at least during formation of the head which is the portion of the toothbrush to which the strands and other materials are attached.

[0298] A feature of the invention as illustrated in **FIGS. 99-102** and **FIG. 103** is the use of thin cross-sections of material for membrane **9722**. Membrane **9722** is flexible and resilient. The cross-section shown, for example, in **FIG. 102** is formed like a moon crescent thus representing a shape similar to the dome.

[0299] Because of the open space **9728** between base portion **9718** and membrane **9722**, the membrane can move from its original dome-like shape to be distorted into other shapes as the cleaning elements or bristles **9726** contact the teeth. Thus, the dome **9722** has a thin membrane of material or combinations of material that can flex to become altered from its original shape and recover to its original shape randomly during brushing. The bristles **9726** are attached to the flexible dome and move accordingly, creating a random topology based on interactions with teeth and by doing so improve the cleaning of the teeth. The moving bristle strands have more degrees of motion than conventional toothbrushes due to the flexibility of the membrane and thus represent a different and unique tooth brushing device.

[0300] In illustrated embodiments of this invention, the head **9714** is generally oval shaped and the membrane **9722** has a corresponding oval shape. See **FIG. 101**. However, other configurations may include a variety of membrane shapes.

[0301] Any suitable form of cleaning elements may be used as the cleaning elements **9726** in the broad practice of

this invention. The term "cleaning elements" is intended to be used in a generic sense, which could include conventional fiber bristles or massage elements or other forms of cleaning elements, such as elastomeric fingers or walls arranged in a circular cross-sectional shape or any type of desired shape including straight portions or sinusoidal portions. Where bristles are used, the bristles could be mounted to tuft blocks or sections by extending through suitable openings in the tuft blocks so that the base of the bristles is mounted within or below the tuft block and below membrane **9722**.

[0302] It is to be understood that the illustrated cleaning elements are merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning element configurations (such as stapled or in-molded technology bristles, anchor free technology (AFT), etc.) and/or with the same bristle or cleaning element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while **FIG. 100** illustrates the cleaning elements to be generally perpendicular to the outer surface **9724** of membrane **9722** or head **9714**, some or all of the cleaning elements may be angled at various angles with respect to the outer surface of head **9714**. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning tooth polishing, tooth whitening and/or massaging of the gums.

[0303] Preferably, however, cleaning elements **9726** are IMT bristles since IMT bristles require small cross-sections of material into which the strands are attached and the membrane **9722** in a preferred practice of the invention has a small cross-section.

[0304] Although **FIGS. 99-101** illustrate the membrane **9722** to occupy generally the entire head **9714**, the invention may be practiced where the head **9714** is of sufficient size that it could include other bristle carrying surfaces adjacent to the dome shape membrane **9722**.

[0305] Although **FIGS. 99-102** illustrate a manually operated toothbrush, the invention may also be practiced where the head includes one or more power or electrically operated movable sections carrying cleaning elements. Such movable sections may oscillate in a rotational manner or may oscillate linearly in a longitudinal direction with respect to the longitudinal axis of the head or may oscillate linearly in a lateral or transverse direction with respect to the longitudinal axis of the head. The movable section may oscillate in and out in a direction toward and away from the outer surface of the head. The movable section may rock back and forth with respect to the outer surface of the head. The movable section may rotate continuously in the same direction, rather than oscillate. Any suitable drive mechanism may be used for imparting the desired to the movable section. Where plural movable sections are used, all of the movable sections may have the same type and direction of movement, or combinations of different movements may be used.

[0306] As an example, **FIG. 103** illustrates a toothbrush **9710A** that is similar to toothbrush **9710**, except that toothbrush **9710A** is a powered toothbrush having a power driven movable disc or section **9730A** having cleaning elements attached thereto. The movable section **9730A** could be oscillated rotationally such as by using the type of drive mechanism shown in U.S. Pat. No. 5,625,916, or it could

move in and out using the type of drive mechanism shown in U.S. Pat. No. Re35,941, all of the details of both patents are incorporated herein by reference thereto. Alternatively, the other types of drives referred to above could move section **9730A** in other manners and directions, such as the drive features shown in **FIGS. 1-4**. Although **FIG. 103** shows movable section **9730A** to be at the distal end of the head, the movable section (s) could be located at any desired location on the head.

[0307] Returning to **FIGS. 99-102**, handle **9712**, base **9718** and frame **9720A** are preferably made of hard plastic materials, which are conventionally used for manual toothbrushes. As noted, however, a characteristic of dome shape membrane **9722** is that it is made of a flexible resilient material such as an elastomer capable of being moved from its original position and then returning to that original position.

[0308] Membrane **9722** may be secured to frame **9720** in any suitable manner. Thus, for example, frame **9720** includes inwardly inclined surfaces for receiving membrane **9722**. Other structural arrangements may be used within the practice of this invention to mount membrane **9722** on head **9714**.

[0309] **FIGS. 104-107** illustrate a manual toothbrush **9810** in accordance with another embodiment of the invention. This is a variation of the prior embodiment that uses a trampoline type structure to achieve an up and down motion rather than a convex membrane, as well as grip features on the handle. As shown, toothbrush **9810** includes a handle **9812** and a head **9814**. Handle **9812** may include a suitable area **9816** made of an elastomeric material. This elastomeric portion of the handle is preferably molded with an open area **9818** which is readily deformable by the user. The elastomeric material **9816** on the top side of the handle **9812** (as viewed in **FIGS. 104, 105** and **107**) will yield under pressure of the user's fingers to provide a better grip on the handle while providing a more comfortable feel to the handle. **FIG. 107** illustrates this elastomeric portion **9816** of the handle **9812** in a depressed state. The downward arrow P in this Figure represents the pressure applied by the toothbrush user. The open area **9818** is thereby minimized. As soon as the user's pressure is released, the properties of the elastomeric portion **9816** of the handle **9812** return the elastomeric material **9816** to its original shape as illustrated in **FIG. 104**.

[0310] A similar flexible, deformable open area **9820** is created in the head by inclusion of an elastomeric portion **9822** in the head overlying open area **9820**. Cleaning elements **9824** are arrayed in the elastomeric portion of the head and fastened thereto by known methods including in-molded technology (IMT). Bristle attachment utilizing IMT methods preferably occurs during formation of the toothbrush handle or at least during formation of the elastomeric portion **9822** of the head **9814**.

[0311] In use, the application of pressure by the toothbrush user causes a like pressure of the teeth against cleaning elements **9824** as illustrated by arrow F in **FIG. 107**. This causes deflection of the elastomeric portion **9822** of head **9814**, which in turn causes a reorientation of cleaning elements relative to the teeth being cleaned. As the user's pressure is reduced, the open area **9820** of head **9814** opens up causing the cleaning elements to follow the shape of the teeth being brushed and thereby improving the cleaning of

Case 1:06-cv-00417-GMS     Document 38-2     Filed 05/08/2007     Page 103 of 112

the teeth. When all user pressure is released, the open area 9820 returns to its original shape.

[0312] The elastomeric portion 9822 of head 9814 should be a material or combinations of material that can flex to become altered from its original shape and recover to its original shape randomly during brushing. The cleaning elements, for example, bristles, are attached to the flexible membrane creating a flexible orientation of cleaning elements 9824 which improves the cleaning of the teeth. The moving bristle strands have considerable degrees of motion and thus provide a unique tooth brushing experience.

[0313] Any suitable form of cleaning elements may be used as the cleaning elements 9824 in the broad practice of this invention, as discussed with the embodiments of FIGS. 99-103. It is to be understood that the specific illustration of the cleaning elements is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning element configurations (such as stapled or in-molded technology bristles, AFT, etc.) and/or with the same bristle or cleaning element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIGS. 105 and 107 illustrate the cleaning elements to be generally perpendicular to the elastomeric portion 9822 of head 9814, some or all of the cleaning elements may be angled at various angles. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning, polishing, tooth whitening and/or massaging of the gums.

[0314] Portions of handle 9812 and head 9814 may be made of hard plastic material which is used for manual toothbrushes. As noted, however, a feature of this toothbrush is use of elastomeric portions 9816 of the handle and/or elastomeric portion 9822 of head 9814, such as an elastomer capable of being moved from its original position and then returning to its original position.

[0315] This invention may also be practiced where the head 9814 includes one or more powered or electrically operated movable sections carrying cleaning elements.

[0316] FIG. 108 illustrates a toothbrush 9810A which includes a power driven movable disc or section 9850 having cleaning elements. The movable section 9850 could be similar to section 9730 of FIG. 103. Although FIG. 108 shows movable section 9850 to be at the one end of the head, as with FIG. 103, the movable section(s) could be located at any desired location on the head.

[0317] In another embodiment of the invention shown in FIGS. 109-113, a toothbrush 9910 includes a head longitudinally separated into side by side areas by means of a flexible hinge structure that serves as a spring to return the brush head materials and cleaning areas to their original position. As shown, toothbrush 9910 includes an elongated handle 9912 and a head 9914. A portion of handle 9912 may be recessed at gripping area 9916 between shoulders 9918 and 9920. Shoulder 9918 could extend outwardly a sufficient distance to act as a hook or ledge to facilitate hanging the toothbrush in an inverted condition.

[0318] Head 9914 and handle 9912 are elongated and have a longitudinal axis. As shown in FIGS. 112 and 113, head 9914 includes a spine 9922 which extends collinear with the longitudinal or major axis of the toothbrush handle and head. As a result, head 9914 is separated into two side by side longitudinal sections 9924, 9926 connected to the spine 9922. Spine 9922 is made of a resilient material, such as an elastomer, which is sufficiently flexible as to be movable and yet return to its original position. As a result, spine 9922 functions as a hinge axis whereby the side by side sections 9924, 9926 may move or pivot about the spine away from the original position shown in FIG. 112 to an open position such as shown in FIG. 113 when the cleaning elements on the sections 9924, 9926 contact the teeth. Then sections 9924, 9926 return to their original position under the influence of the resilient hinge or spine 9922. Preferably hinge or spine 9922 is confined to head 9914.

[0319] As illustrated, each of the sections 9924, 9926 includes sets of cleaning elements. For example, an outer set of cleaning elements 9928 is located at the outer periphery of each section 9924, 9926 while an inner set of cleaning elements 9930 is located closer to the spine 9922. Preferably, the terminal surfaces 9932 of the inner cleaning elements 9930 are tapered toward the hinge axis 9922 so that the adjacent terminal ends 9932 of each inner set of cleaning elements forms an obtuse angle as indicated by the letter A in FIG. 112 when the brush head is in its original position.

[0320] The outer sets of cleaning elements 9928 extend outwardly a longer distance from the outer surface of the sections than do the inner cleaning elements 9930. As a result, the combined cleaning elements are designed to wrap around the edge of the teeth for simultaneous possible contact with both the front and top of the teeth. See FIG. 112. During use, the brush head is pressed against the edge of the teeth causing the flexible hinge to open and close during cleaning.

[0321] As illustrated in FIGS. 109-113, in a preferred practice of the invention, the outer sets of cleaning elements 9928 are bristle bundles of plaque bristles. The inner sets of cleaning elements 9930 may be bristles formed by in-molded technology (IMT) where sets of bristles are fused together at one end and the fused end is inserted in a mold cavity during the manufacture of the head.

[0322] FIG. 113 shows the sections 9924, 9926 in their open position. FIG. 113 omits some of the cleaning elements so as to provide a better understanding of how the cleaning elements are mounted. As shown therein, the plaque bristles 9928 are in the form of bristle bundles or tufts inserted into individual holes 9934 in bristle container 9936. The inner sets of cleaning elements 9930 are IMT bristles mounted in IMT container 9938. The IMT containers 9938 may be made of soft flexible elastomer material integral with hinge axis 9922, as shown in FIG. 113.

[0323] As shown in FIGS. 109-113 the bristle container 9936 does not extend completely to the distal end of the head 9914. Accordingly, side plates 9940 are provided on each side of the head longitudinally abutting against bristle containers 9936 and disposed against containers 9938 for the remaining length of containers 9938 so that a smooth contour results along the side of the head 9914. Side plates 9940 may also be made of a soft, flexible elastomer material.

[0324] As best shown in FIGS. 109-111 each inner row of IMT bristles 9930 has its bristles spaced apart or staggered so that the inclined IMT bristles of each section may fit between the spacing of adjacent IMT bristles of the other section.

26

[0325] Although FIGS. 109-113 illustrate a preferred form of cleaning elements to be the plaque bristles and IMT bristles any suitable form of cleaning elements may be used as the cleaning elements 9928 and 9930 as previously described. Thus the term "cleaning elements" is intended to be used in a generic sense which could include conventional fiber bristles or massage elements or other forms of cleaning elements such as elastomeric fingers or walls arranged in a circular cross-sectional shape or any type of desired shape including straight portions or sinusoidal portions. Where bristles are used, the bristles could be mounted to tuft blocks or sections by extending through suitable openings in the tuft blocks so that the base of the bristles is mounted within or below the tuft block.

[0326] Similarly, it is to be understood that the specific illustration of the cleaning elements is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning element configurations (such as stapled or IMT bristles, AFT, etc.) and/or with the same bristle or cleaning element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIG. 109 illustrates the cleaning elements to be generally perpendicular to the outer surface of head 9914 some or all of the cleaning elements may be angled at various angles with respect to the outer surface of head 9914. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning tooth polishing, tooth whitening and/or massaging of the gums.

[0327] Handle 9912 could be made of a conventional hard plastic material which could, however, include a soft elastomer section 9942 near the head 9914. Bristle containers 9936, 9936 could also be made of a hard plastic material while side plates 9940 and IMT containers 9938 are made of a soft elastomer material. By having the bristle containers 9936 mounted against the IMT containers 9938, the bristle containers 9936 and their cleaning elements 9928 move along with the movement of the IMT containers 9938 in response to the IMT bristles 9930 contacting the teeth. If desired, the bristle containers 236 may also be made of a soft elastomer material.

[0328] Although FIGS. 109-113 illustrate a manually operated toothbrush, the invention may also be practiced with powered configurations, such as where the head includes one or more power or electrically operated movable sections carrying cleaning elements. FIG. 114 illustrates a toothbrush 9910 which includes a power driven movable disc or section 9950 having cleaning elements, similar to the movable sections of toothbrushes 9710A and 9810A.

[0329] FIGS. 115-121 show additional embodiments of the invention that further illustrate the combinability of various aspects, features and functions disclosed herein into single oral care implement configurations. FIGS. 115-121 disclose oral care implement configurations that provide flexibly mounted tooth cleansing features, tongue cleanser functionality and/or handle gripping features. As such, the oral care implements disclosed in FIGS. 115-121 generally include the aspects discussed along with FIGS. 99-102 pertaining to flexibly mounted tooth cleansing configurations including a flexible dome-shaped membrane, as well as the aspects discussed along with FIGS. 84-89, 104-107 and

109-111 pertaining to handle grip features, and aspects discussed along with FIGS. 38, 39, 45-80 and 90-98 pertaining to soft tissue cleansers. However, it is understood that other features may used along with these configurations, such as mechanical drive features discussed along with FIG. 1-5, 103 and 114, the flexibly mounted tooth cleansing configuration of FIGS. 104-107, and tooth cleansing features discussed throughout the specification.

[0330] FIGS. 115-117 illustrate a toothbrush 10010 in accordance with another embodiment of the invention. As shown therein, toothbrush 10010 includes a head 10014 and a handle 9812, which is generally the same as handle 9812 disclosed in FIGS. 104-107. In other configurations, handle 9812 may generally be the same as handle 8103 discussed along with FIGS. 81-89, handle 9712 discussed along with FIGS. 99-102, or other handle configurations. Head 10014 is generally the same as head 9714 discussed along with FIGS. 99-102, with the exception of cleaning elements 10026. As such, a membrane 10022 is attached to head 10014, which in its initial non-use condition may be convex or bowed outwardly, from which cleaning elements 10026 extend. Although configured differently than cleaning elements 9714 of FIGS. 99-102, it is understood that cleaning elements 10014 may also be attached to the membrane via in-molded technology (IMT) methods or other appropriate methods.

[0331] As shown in FIG. 116, cleaning elements 10014 form star configurations 10015 that better retain dentifrice among the tooth cleaning elements, conform to a user's teeth, and penetrate gaps between a user's teeth. These advantages may be particularly realized during use of the oral care implement when the convex membrane 10022 is flexed downward toward the head. When the membrane is flexed downward due to contact with a user's teeth, the tooth cleaning elements converge inward toward each other about the user's teeth. This action improves interaction with the user's teeth and other oral structures, as well as improves retention of the dentifrice.

[0332] Tooth cleaning elements may be formed of elastomeric wall members, elongate bristle tufts, or other types of cleaning elements, which are independently flexible. In this way, the cleaning elements are able to provide a limited and controlled flow of the dentifrice, as well as maintain sufficient flexibility to provide improved cleaning of a user's teeth and stimulation of the user's gums via the cleaning elements. In the configuration shown in FIG. 116, cleaning elements 10022 include central elements 10024 that are generally disposed along a longitudinal axis of membrane 10022 substantially aligned with the longitudinal axis a-a of handle 9812. As shown in FIGS. 115 and 117, central elements 10024 may be taller than adjacent cleaning elements, such that central elements 10024 typically make contact with a user's teeth prior to adjacent elements. During use, central elements 10024 cause membrane 10022 to flex toward the head due to contact with a user's teeth, which flexes other cleaning elements inward toward the central elements while membrane 10022 flexes toward the head.

[0333] Disposed about each central element, and radially extending therefrom, is a plurality of cleaning elements 10026. Radial cleaning elements and their respective central element each form the star configuration 10015. Adjacent radial elements are spaced apart to form gaps 10028 ther-

ebetween, which permit a limited outward flow of dentifrice, independent flexing of each radial cleaning element, and convergence of the radial cleaning elements. The gaps also aid the cleaning of cleaning elements 10026 by permitting water to flush through the cleaning elements. The gaps, however, are preferably kept small to limit the escape of the dentifrice. While three star configurations are shown, which each include six radial cleaning elements, other numbers of radial cleaning elements and numbers of star configurations could be used.

[0334] Disposed along perimeter regions of the head are a plurality of outer cleaning elements 10030. During use, the outer cleaning elements converge inward toward the star configurations, which assist with the retention of dentifrice and with grasping teeth being engaged by the cleaning elements.

[0335] The cleaning elements 10014 may be formed from bristles or tufts pertaining to cleaning soft tissues, and may further be made from the nylon material marketed by Dupont under the name BRILLIANCE. Nevertheless, other materials could be used, such as an elastomeric material. In addition, the cleaning elements may be formed as upstanding elastomeric projections or walls. As shown in FIG. 117, a distal star configuration 10032 of cleaning elements at the distal end of the head may have a height greater than other cleaning elements, which can assist with engagement of molars and other teeth at the rear of a user's mouth.

[0336] FIG. 118 illustrates a toothbrush 11810 in accordance with another embodiment of this invention. Toothbrush 11810 includes a handle 9812, a head 11814, tooth cleaning elements 11826 on one side of the head, and a soft tissue cleanser 11830 on the opposite side of the head. Toothbrush 11810 generally includes the same aspects and features of toothbrush 10010, except with respect to soft tissue cleanser 11830. In addition, base portion 9718 shown in FIG. 102 may include a flexible membrane forming surface 9017 shown in FIG. 98. In such a configuration, movement of the tooth cleaning elements 11826 away from and toward the head will move surface 9017.

[0337] Soft tissue cleanser 11830 generally includes the same aspects and features pertaining to cleaning soft tissues, such as a user's tongue, as oral care implement 9510 as shown in FIG. 98. As such, soft tissue cleanser includes soft tissue engaging elements 9512 disposed about a recess 9516 formed in the head, as well as a blade-like structure 9524. Elements 9512 include projections in the form of ridges 9518 and nubs 9520, which extend from the head to engage the soft tissue in a user's mouth along with the blade-like structure.

[0338] Toothbrush 11810 provides a single oral care implement that can be used to effectively clean a user's teeth and to scrape their tongue, for which the handling of the device may be improved via gripping features of handle 9812. Thus, toothbrush 11810 further illustrates the combinability of various aspects, features and functions disclosed herein into single oral care implement configurations. It is understood that a variety of combinations of possible. For instance, toothbrush 11810 may include a soft tissue cleanser configuration shown in FIGS. 38, 39, 45-80 or 90-97 rather than the configuration of soft tissue cleanser 11830. In addition, toothbrush 11810 may include a handle shown in FIGS. 1-4, 84-89, 99-102, 104-107 or 109-111

rather than handle 9812. The handle may include a resilient elongate ridge in a gripping region thereof that merges with the soft tissue cleanser, as disclosed in the embodiment of FIG. 52. Further, various tooth cleaning element configurations may be used instead of tooth cleaning elements 11826.

[0339] The advantages of particular configurations will depend on the features selected and the intended use of the device. In the configuration of toothbrush 11810, a variety of advantages are provided in a single device including flexibility and cleaning advantages of the dome membrane configuration, tooth cleaning advantages of the star configuration for the tooth cleaning elements, soft tissue cleaning advantages of the soft tissue cleanser, and handling advantages of the handle grip features.

[0340] FIGS. 119-121 show a further oral care implement 11910 that also provides a variety of advantages and features in a single device. Oral care implement includes a handle 9812, a head 11914, tooth cleaning elements 11926 on one side of the head, and a soft tissue cleanser 11830 on the opposite side of the head. Toothbrush 11810 generally includes the same aspects and features of toothbrush 10810, except with respect to the configuration of tooth cleaning elements 11926.

[0341] As shown in FIG. 121, cleaning elements 11926 include central elements 11928 that are generally disposed along a longitudinal axis b-b of the toothbrush, and transverse elements 11930 oriented substantially perpendicular to longitudinal axis b-b across the face of the toothbrush head. The central elements and transverse elements intersect to generally form a cross-shape 11921 across membrane 11922.

[0342] As shown in FIG. 120, the central and transverse elements may extend further from the toothbrush head than adjacent cleaning elements, which encourages membrane 11922 to flex toward the head as the central and transverse elements make initial contact with a user's teeth. The central elements and transverse elements may have circular cross-sections, elongate cross-sections such as provided by wall-like elements, and combinations thereof. As also shown in FIG. 120, cleaning elements 11926 further include opposing arcuate cleaning elements 11934 at the ends of cross-shape configuration. These elements assist with the retention of dentifrice, as well as provide cleaning and polishing benefits.

[0343] In the configuration shown in FIG. 121, the central elements and transverse elements include a mixture of rounded 11940 and wall-like elements 11942, which provide various advantages. For instance, the rounded elements tend to have higher column strengths than elongate or wall-like elements. Thus, high column strength rounded elements may be included to improve the transfer of force to membrane 11922 for flexing the membrane. The elongate or wall-like elements tend to provide other advantages, such as improved tooth polishing and retention of dentifrice within the cleaning elements. Combinations of types of cleaning elements, as shown in FIG. 121, can provide advantages based on the overall configuration and functionality provided by the mixture of cleaning elements.

[0344] Cleaning elements 11926 further include radial cleaning elements 11932 that are wall-like elements. Clean-

ing elements **11926** are generally oriented in a radial fashion such that their flat side portions are angled toward a central portion of the head proximate an intersection **11934** of the cross-shape configuration **11921** of the cleaning elements. As with the embodiments for FIGS. 99-118, the radial cleaning elements, and the other cleaning elements, may each be formed as an upstanding elastomeric wall attached to and extending from membrane **11922**. In other configurations, they may be formed from tufts of bristles extending from the membrane.

[0345]    As shown in FIG. 121, oral care implement **11910** provides orientations of wall-like elements that generally cover 360 degrees. This full range of orientations is provide by the arrangement of radial wall-like cleaning elements **11926**, as well as the central cleaning elements **11928** and transverse cleaning elements **11930**. As such, one or more cleaning elements are likely oriented to match crevices between a user's teeth during cleaning, which can improve effectiveness of the toothbrush. Further, the flexibility provided by the dome configuration of membrane **11922** provides a dynamic cleaning environment that further enhances cleaning and polishing of a user's teeth. In addition, the range of orientations of the radial cleaning elements along with their elongate shape can provide enhanced polishing benefits as they move across a user's teeth.

[0346]    As various changes could be made in the above methods, compositions and structures without departing from the scope of the invention, it is intended that all matter contained in this application, including all mechanisms and/or modes of interaction described above, shall be interpreted as illustrative only and not limiting in any way the scope of the appended claims. Further, as noted above, it is intended that oral care implements according to the invention and associated methods may utilize various combinations of aspects, features and configurations discussed within the application.

What is claimed is:

1. An oral care implement comprising:

a handle;

a head attached to the handle, the head having a face on a first side thereof;

a flexible support attached to the head; and

a plurality of cleaning elements attached to the flexible support and projecting outwardly from the face, the cleaning elements including bristles and wall-like elements and being movable in the outward direction from the head in which the bristles extend.

2. The oral care implement of claim 1, wherein some of the wall-like cleaning elements laterally radiate from a central portion of the flexible support.

3. The oral care implement of claim 1, wherein the cleaning elements include a substantially column-shaped bristle at the central portion of the flexible support.

4. The oral care implement of claim 1, wherein the cleaning elements comprise a row of first cleaning elements substantially aligned with a longitudinal axis of the head and traversing a central region of the flexible support.

5. The oral care implement of claim 1, wherein the cleaning elements further include a row of second cleaning elements extending in a line substantially perpendicular to the row of first cleaning elements.

6. The oral care implement of claim 5, wherein the cleaning elements further comprise a plurality of wall-like cleaning elements oriented generally transverse to the first row of cleaning elements.

7. The oral care implement of claim 6, wherein the wall-like cleaning elements substantially radiate from a central area of the flexible support.

8. The oral care implement of claim 6, wherein the cleaning elements further comprise a first pair of bent cleaning elements, each one of the first pair of cleaning elements disposed at an opposite end of the row of first cleaning elements, each one of the first pair of cleaning elements having a concave side oriented toward the row of first cleaning elements.

9. The oral care implement of claim 8, wherein the cleaning elements further comprise a second pair of bent cleaning elements disposed at an opposite end of the row of second cleaning elements, each one of the second pair of cleaning elements having a concave side oriented toward the row of second cleaning elements.

10. The oral care implement according to claim 1, wherein the flexible support includes a resilient membrane mounted to the head.

11. The oral care implement of claim 10, wherein the head includes a base forming a peripheral frame, the resilient membrane being mounted to the frame, and an open space being formed between opposite portions of the frame beneath the resilient membrane.

12. The oral care implement of claim 11, wherein the resilient membrane has an initial condition of non-use, the resilient membrane in the initial condition being convex to have an original dome-like shape, the resilient membrane being capable of flexing to alter the original shape during use of the oral care implement and to move the cleaning elements with respect to the head and then recovering to the original shape randomly during use of the oral care implement.

13. The oral care implement of claim 10, wherein the head further includes a peripheral frame for supporting the resilient frame to extend across the first face and for supporting a soft tissue cleanser on a second face opposite the first face.

14. The oral care implement of claim 13, wherein the soft tissue cleanser includes a ring of projections on the peripheral frame.

15. The oral care implement of claim 14, wherein the projections are formed of a resilient material.

16. The oral care implement of claim 15, wherein the resilient material includes an elastomer.

17. The oral care implement of claim 1, further comprising a soft tissue cleanser disposed on a second side of the head substantially opposite from the first side, the soft tissue cleanser comprising a plurality of projections protruding outwardly from the first side for removal of microbial and other debris from soft tissue of a user's mouth.

18. The oral care implement of claim 17, wherein the projections of the soft tissue cleanser comprise a plurality of nubs and ridges.

19. The oral care implement of claim 17, wherein the projections are arranged in a ring around a recess formed on the second side of the head.

20. The oral care implement of claim 17, wherein the projections include an elongate ridge.

21. The oral care implement of claim 1, further including a motor for driving at least a portion of the cleaning elements.

22. The oral care implement of claim 17, wherein the handle includes a resilient element that merges with the soft tissue cleanser.

23. An oral care implement comprising:

a handle;

a head attached to the handle, the head having a first face and substantially opposite second face, the head having a flexible support on the first face and a plurality of cleaning elements mounted to the flexible support; and

a soft tissue cleanser on the second face of the head for cleansing soft tissue in a user's mouth, the soft tissue cleanser including a plurality of projections protruding outwardly from the head for removal of microbial and other debris from the soft tissue.

24. The oral care implement of claim 23, wherein the head includes a peripheral frame forming a central open space, the flexible support being mounted to the frame to extend across the open space, the soft tissue cleanser mounted on the peripheral frame to have a ring shape.

25. The oral care implement of claim 24, wherein the flexible support has an initial condition of non-use, the flexible support in the initial condition being convex to have an original dome-like shape, the flexible support being capable of flexing to alter the original shape during use of the oral care implement and to move the cleaning elements with respect to the head and then recovering to the original shape randomly during use of the oral care implement.

26. An oral care implement comprising:

a handle;

a head attached to the handle, the head having a first face and substantially opposite second face, the head having a flexible support on the first face and a plurality of cleaning elements mounted to the flexible support extending outwardly from the face, the flexible support being movable outward and inward in the direction from the face in which the cleaning elements extend, the inward and outward movement of the flexible support imparting movement to the cleaning elements attached thereto;

a soft tissue cleanser on the second face of the head for cleansing soft tissue in a user's mouth, the soft tissue cleanser including a plurality of projections protruding outwardly from the head for removal of microbial and other debris from the soft tissue, the projections including an elongate ridge and a plurality of ridges and nubs.

27. A toothbrush comprising:

a handle;

a head having a plurality of tooth cleaning elements extending outwardly from the head in a first direction; and

a soft tissue cleanser disposed about the cleaning elements on the head.

28. The toothbrush of claim 27, further comprising a flexible support on a first face of the head, the tooth cleaning elements being attached to the flexible support, and a base spaced apart from the flexible support forming a central portion of the soft tissue cleanser on a second face of the head.

29. The toothbrush of claim 28, wherein the base is flexible.

30. The toothbrush of claim 29, wherein movement of the tooth cleaning elements and the flexible support toward and away from the first face imparts movement to the flexible base.

31. The toothbrush of claim 27, wherein the soft tissue cleanser includes soft tissue cleansing elements extending outwardly from the head in a second direction substantially opposite the first direction.

32. The toothbrush of claim 27, wherein the soft tissue cleansing elements form a ring of projections.

33. The toothbrush of claim 32, wherein the soft tissue cleanser further comprises a central portion bordered by the ring of projections and by a surface disposed opposite the tooth cleaning elements.

34. The toothbrush of claim 32, wherein the ring of projections comprise ridges and nubs.

35. The toothbrush of claim 34, wherein the ring of projections is substantially elliptically shaped.

36. The toothbrush of claim 34, wherein the soft tissue cleanser further comprises an elongate ridge projecting from the head in generally the same direction as the projections of the ring of projections.

\* \* \* \* \*

# EXHIBIT C

## EXHIBIT C

## List of Features of the Colgate Toothbrush

As can be seen in the Figs. of the Colgate design patents, the Colgate toothbrush includes the following features:

(1)    a head supporting a set of bristles;

(2)    a neck that is narrower than the head;

(3)    a front handle segment that is inclined relative to the neck and has a bulbous shape that is wider than the neck;

(4)    the width of the front handle segment increases from the end adjacent to the neck to the end opposite the neck;

(5)    a transition handle segment that is narrower than the front segment and the rear segment;

(6)    the transition handle segment has an oval-shaped cross-section that is longer in the vertical direction;

(7)    a rear handle segment that is wider than the transition segment;

(8)    the rear handle segment is generally round in cross-section;

(9)    the rear handle segment is straight;

(10)    a grip material overlying the lower surface of the front, transition and rear portions of the handle;

(11)    the grip material overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle;

(12)    a series of nine transverse slots forming apertures in the grip material;

(13)    the transverse slots are parallel;

(14)    the transverse slots are narrow, and extend across approximately the entire width of the handle;

(15)    concave regions in the grip material between each of the transverse slots;

(16)    a thumb grip on the upper surface of the front handle segment;

(17)    a finger grip on the lower surface of the front handle segment;

(18)    the thumb and finger grips formed of a different material than the handle and the grip material;

(19)    the thumb grip having a convex, bulbous shape;

(20)    the thumb grip having a football shaped periphery;

(21)    the finger grip having a convex, bulbous shape;

(22)    the finger grip having a football shaped periphery;

(23)    a plurality of round nubs extending outwardly from the surfaces of the thumb and finger grips;

(24)    the nubs on the thumb grip are arranged in three rings, each ring having approximately the same football shape as the thumb grip periphery;

(25)    the nubs on the finger grip are arranged in an outer ring and an inner ring having approximately the same football shape as the finger grip periphery, and a line extending in a longitudinal direction within the inner ring;

(26)    a narrow ring of uniform width formed around the finger grip between the grip material and the finger grip;

(27)    a tongue cleanser on the lower surface of the head;

(28)   the tongue cleanser overlying approximately the entire lower surface of the head;

(29)   a portion of the tongue cleanser extending over a portion of the lower surface of the neck;

(30)   a plurality of nubs extending outwardly from the tongue cleanser;

(31)   the nubs covering approximately the entire surface of the tongue cleanser;

(32)   the tips of the nubs extending outwardly at a uniform distance from the lower surface of the head;

(33)   the nubs arranged in rows extending in a longitudinal direction;

(34)   the nubs approximately evenly spaced on the tongue cleanser;

(35)   three white circles evenly spaced along the longitudinal axis of the toothbrush within the tongue cleanser;

(36)   three loop configurations extending from the head opposite the tongue cleanser and spaced longitudinally along the head;

(37)   each loop configuration having a circular shape formed from four arc-shaped elastomers;

(38)   the loop configurations approximately evenly spaced on the head;

(39)   the loop configurations each having the same diameter;

(40)   an outer bristle ring comprised of two arc-shaped bristle tufts on opposite sides of the middle loop configuration, the bristles of the outer ring are taller than the loop configurations;

(41)   the bristles of the outer ring arranged in two opposing arc-shaped tufts;

(42)   three central bristle tufts, each located in the center of one of the loop configurations;

(43)   the central bristle tufts being no taller than the loop configurations;

(44)   three peripheral tufts spaced apart in a line along each side of the distal loop configuration;

(45)   three peripheral tufts spaced apart in a line on each side of the proximal loop configuration;

(46)   the middle tuft of each group of three peripheral tufts being taller than the outer two tufts;

(47)   each peripheral bristle tuft having a generally uniform diameter from the head to the tip;

(48)   two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length;

(49)   the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips;

(50)   the distal bristle tufts being shorter in height than the peripheral bristle tufts;

(51)   two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and

(52)   the proximal bristle tufts being shorter in height than the peripheral bristle tufts.

# Exhibit D

## EXHIBIT D

## List of Functional Features of the Colgate Toothbrush

The following features of the Colgate toothbrush (which are numbered to correspond to the list of all of the features of the Colgate patents in Exhibit C) are dictated by functional considerations – and thus not protected under the Colgate design patents:

(3)     a front handle segment that is inclined relative to the neck and has a bulbous shape that is wider than the neck;

(5)     a transition handle segment that is narrower than the front segment and the rear segment;

(7)     a rear handle segment that is wider than the transition segment;

(10)    a grip material overlying the lower surface of the front, transition and rear portions of the handle;

(12)    a series of nine transverse slots forming apertures in the grip material;

(15)    concave regions in the grip material between each of the transverse slots;

(16)    a thumb grip on the upper surface of the front handle segment;

(17)    a finger grip on the lower surface of the front handle segment;

(18)    the thumb and finger grips formed of a different material than the handle and the grip material;

(19)    the thumb grip having a convex, bulbous shape;

(21)    the finger grip having a convex, bulbous shape;

(23)    a plurality of round nubs extending outwardly from the surfaces of the thumb and finger grips;

(27)    a tongue cleanser on the lower surface of the head;

(30)    a plurality of nubs extending outwardly from the tongue cleanser;

(36)    three loop configurations extending from the head opposite the tongue cleanser and spaced longitudinally along the head;

(37)    each loop configuration having a circular shape formed from four arc-shaped elastomers;

(41)    the bristles of the outer ring arranged in two opposing arc-shaped tufts;

(42)    three central bristle tufts, each located in the center of one of the loop configurations; and

(46)    the middle tuft of each group of three peripheral tufts being taller than the outer two tufts.

1403756