# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

COLGATE-PALMOLIVE COMPANY,   )
                            )
    **PLAINTIFF,**   )
                            )
    **V.**   )    **Civil Action No. 06-417-GMS**
                            )
RANIR, L.L.C.,   )
                            )
    **DEFENDANT.**   )

## PLAINTIFF COLGATE-PALMOLIVE COMPANY'S MEMORANDUM IN SUPPORT OF ITS PROPOSED CLAIM CONSTRUCTIONS

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Robert F. Altherr, Jr.
Nina L. Medlock
Christopher B. Roth
Elizabeth Almeter
Banner & Witcoff, Ltd.
1100 13th Street, N.W., Suite 1200
Washington, DC 20005
Phone (202) 824-3000

*Attorneys for Colgate-Palmolive Company*

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ v

I.    INTRODUCTION ................................................................................ 1

II.   THE LAW REGARDING CLAIM CONSTRUCTION ..................................... 2

    A.   This Court Has No Obligation To Construe Any — Let Alone Every —
          Claim Limitation In The Patents-In-Suit .......................................... 2

    B.   Claim Terms Should Generally Be Construed in Accordance With Their
          Ordinary and Customary Meaning ................................................... 3

    C.   The Court Must Avoid Importing Limitations From the Specification
          Into the Claims or Limiting Claims to Preferred Embodiments ...................... 5

    D.   Indefiniteness Must be Shown by Clear and Convincing Evidence ................. 5

    E.   Claim Construction of Design Patents .............................................. 7

III.  THE COLGATE PATENTS IN SUIT ............................................................ 8

    A.   The Colgate Design Patents ......................................................... 8

        1.   The 'D882 Patent ................................................................ 8

        2.   The 'D812 Patent ................................................................ 9

        3.   The 'D818 Patent ................................................................ 9

        4.   The 'D819 Patent ................................................................ 10

        5.   The 'D7812 Patent .............................................................. 11

        6.   The 'D813 Patent ................................................................ 12

        7.   The 'D753 Patent ................................................................ 12

    B.   The Colgate Utility Patent - U.S. Patent No. 7,047,591 .................. 13

        1.   The Patent Specification ....................................................... 13

        2.   The Prosecution History ....................................................... 14

IV.    CONSTRUCTION OF DISPUTED CLAIM TERMS ................................... 15

  A.    The Colgate Design Patents ............................................................................ 16

     1.    The 'D882 Patent ....................................................................................... 16

     2.    The 'D812 Patent ....................................................................................... 17

     3.    The 'D818 Patent ....................................................................................... 18

     4.    The 'D819 Patent ....................................................................................... 18

     5.    The 'D7812 Patent ..................................................................................... 19

     6.    The 'D813 Patent ....................................................................................... 20

     7.    The 'D753 Patent ....................................................................................... 20

  B.    The '591 Utility Patent .................................................................................... 21

     1.    Claim 1 ....................................................................................................... 22

       a)    "a gripping member ............................................................................. 22

       b)    "a resilient grip body" ......................................................................... 24

       c)    "the gripping member having a different durometer characteristic than the resilient grip body" ............................................................. 25

     2.    Claim 2 ....................................................................................................... 27

       a)    "the gripping member and the grip body comprises an elastomeric material" .............................................................................................. 27

     3.    Claim 15 ..................................................................................................... 28

       a)    "the grip body is of a softer material than said gripping member .......... 28

     4.    Claim 24 ..................................................................................................... 29

       a)    "the grip body is composed of a softer material than the gripping member" .............................................................................................. 29

     5.    Claim 27 ..................................................................................................... 30

       a)    "a gripping region" .............................................................................. 30

b) "a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion" ................................................................................... 31

c) "a resilient grip surface" ........................................................ 33

d) "a grip body" ......................................................................... 34

6. Claim 27 ................................................................................... 35

a) "configured to counterbalance forces acting on the base" ...................... 35

V. CONCLUSION ................................................................................ 37

## TABLE OF AUTHORITIES

### Cases

*ACTV, Inc. v. Walt Disney Co.*,
   346 F.3d 1082 (Fed. Cir. 2003) ............................................................ 4

*Aero Products Int'l Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006) ............................................................ 6

*Amhil Enters. Ltd. v. Wawa, Inc.*,
   81 F.3d 1554 (Fed. Cir. 1996) ............................................................ 23

*Amini Innovation Corp. v. Anthony California, Inc.*,
   439 F.3d 1365 (Fed. Cir. 2006) ............................................................ 7

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
   132 F.3d 701 (Fed. Cir. 1997) ............................................................ 4

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
   55 F.3d 615 (Fed. Cir. 1995) ............................................................ 3

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*,
   334 F.3d 1294 (Fed. Cir. 2003) ............................................................ 4

*Comark Communications, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998) ............................................................ 5

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002) ............................................................ 7

*Datamize LLC v. Plumtree Software, Inc.*,
   417 F.3d 1345 (Fed. Cir. 2005) ........................................................ 6, 32

*Door-Master Corp. v. Yorktowne, Inc.*,
   256 F.3d 1308 (Fed. Cir. 2001) ............................................................ 7

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*,
   401 F.3d 1367 (Fed. Cir. 2005) ........................................................ 6, 32

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
   149 F.Supp.2d 60 (S.D.N.Y. 2001) ...................................................... 16

*In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988) .......................................... 16

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) .................. 2, 3

*Nazomi Communications, Inc. v. ARM Holdings, PLC*,
   403 F.3d 1364 (Fed. Cir. 2005) ................................................................ 5

*Orion IP, LLC v. Staples, Inc.*,
406 F. Supp. 2d 717 (E.D. Tex. 2005) ......................................................... 2

*Personalized Media Communications, LLC v. ITC*,
   161 F.3d 696 (Fed. Cir. 1998) ................................................................ 6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................... 4, 5, 6, 21, 23, 24, 25

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) ................................................................ 4

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
   374 F.3d 1151 (Fed. Cir. 2004) ............................................................... 6

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ............................................................... 3

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................. 4, 5

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) ................................................................ 2

## **Statutes**

35 U.S.C. § 101 ....................................................................................... 1

35 U.S.C. § 112, ¶ 2 ........................................................................ 6, 31, 32

35 U.S.C. § 171 ....................................................................................... 1

35 U.S.C. § 282 ....................................................................................... 6

## I.  **INTRODUCTION**

Pursuant to this Court's November 7, 2006 Scheduling Order, plaintiff Colgate-Palmolive Company ("Colgate") submits this Memorandum in support of its proposed constructions for the claim terms and phrases identified in the parties' "Joint Disputed Claim Terms Chart" (Exhibit 1) filed in this Court on April 17, 2007.

Colgate is a leading developer of consumer products, and manufactures and sells a wide variety of oral care products, including toothbrushes. Over the years, Colgate has taken substantial steps to protect its innovative toothbrushes and toothbrush designs and has obtained several hundred patents in the toothbrush field.

Colgate has asserted eight (8) of its toothbrush patents against Defendant Ranir L.L.C. ("Ranir") in this lawsuit. Seven of the patents in suit are "design patents," and cover various ornamental toothbrush designs.[1]  The eighth patent, U.S. Patent No. 7,047,591 (the '591 patent), is a utility patent and relates to a novel handle for an oral care implement, e.g., a toothbrush.[2]

Beginning in late 2004, Colgate began marketing its 360° ® toothbrush, which is encompassed within the scope of a number of the claims of the patents in suit. The marketplace quickly embraced the unique design of this toothbrush, as evidenced by its strong initial sales, and the toothbrush has enjoyed overwhelming commercial success.

---

[1]    Pursuant to 35 U.S.C. § 171, "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor." 35 U.S.C. § 171 (West 2007).

[2]    A utility patent protects "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101 (West 2007).

In an effort to capitalize on the commercial success of Colgate's 360° ®
toothbrush, Ranir has introduced its "Orbit" toothbrush. The Orbit toothbrush is sold
under various private label brands for stores such as CVS, Rite Aid, and Target, and is
virtually identical to Colgate's patented designs. Ranir's Orbit toothbrush also includes
all of the elements of the asserted claims of the '591 patent. In fact, the Orbit
toothbrush could easily be a three-dimensional model of the exemplary drawings of the
'591 patent.

Despite these obvious similarities, Ranir maintains that its Orbit toothbrush does
not infringe the Colgate design patents and that the toothbrush does not include all of
the elements recited in the asserted claims of the '591 patent.

## II.    THE LAW REGARDING CLAIM CONSTRUCTION

### A.    This Court Has No Obligation To Construe Any — Let Alone Every — Claim Limitation In The Patents-In-Suit

This Court is not required to construe any — let alone all — of the limitations in
the patents in suit. The patent law is well established that "although every word used in
a claim has a meaning, *not every word requires a construction*." *Orion IP, LLC v.
Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (emphasis added). The *only*
terms that need to be construed are those terms "that are in controversy, and only to the
extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g,
Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Moreover, the Federal Circuit has explained
that:

> The *Markman* decisions do *not* hold that the trial judge must repeat or
> restate every claim term in order to comply with the ruling that claim
> construction is for the court. Claim construction is a matter of resolution
> of disputed meanings and technical scope, to clarify and *when necessary*
> to explain what the patentee covered by the claims, for use in the

determination of infringement. ***It is not an obligatory exercise in redundancy.***

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (emphasis added).

In this case, a person of ordinary skill in the art, after reviewing the specification and claims of the '591 patent, would plainly understand the ordinary and customary meaning of the claim terms. There is no reason to provide a further construction of these claim terms. To construe the claim terms would be an unnecessary and confusing "exercise in redundancy." *See U.S. Surgical Corp.*, 103 F.3d at 1568.

Before the parties filed their Joint Disputed Claim Terms Chart in this Court, Ranir identified a number of terms in Colgate's patents in suit that Ranir contends require construction. Colgate does not consider that any claim terms need to be construed by this Court. Nonetheless, to advance the claim construction process, Colgate has provided the Court with the plain and ordinary meaning of the identified claim terms, as those terms would have been understood by a person of ordinary skill in the art at the time the claimed inventions were made.

**B.    Claim Terms Should Generally Be Construed in Accordance With Their Ordinary and Customary Meaning**

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) *(en banc)*, *aff'd*, 517 U.S. 370 (1996). Claim construction begins with and focuses on the words of the claim. *See Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995). The starting point of patent claim construction is to give each disputed term its ordinary and customary meaning. This is the meaning the term would have "to a person of ordinary skill in the art in question at the time of the invention . . . ."

3

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).  The Federal Circuit has emphasized that there is a "heavy presumption" that the terms used in a claim "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art."  *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 874 (Fed. Cir. 2004).

In determining the ordinary meaning of claim terminology, the Court may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314. "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence[3] concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.*

The presumption given to the ordinary meaning of claim terminology may be overcome but only if the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  *Phillips*, 415 F.3d at 1316.  Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316.

---

[3]    Dictionaries, encyclopedias and treatises may be helpful in determining the ordinary meaning of claim terminology as they are "objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1089 (Fed. Cir. 2003).  Courts may rely on dictionary definitions when construing claim terms, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996); *see also Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003).  Courts may also consider expert testimony for background on the technology, or for the limited purpose of explaining the meaning of claim terms to those of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1318.  Expert testimony may not be offered, however, to "change" the meaning of the claims when that meaning is made clear by the intrinsic evidence. *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997).

Colgate respectfully submits that the only claim constructions that stay true to the claim language of the patents in suit are the ones that are consistent with the ordinary and customary meaning of the claims terms. Those are the constructions that should be adopted by this Court.

## C. The Court Must Avoid Importing Limitations From the Specification Into the Claims or Limiting Claims to Preferred Embodiments

The patent specification is always highly relevant to the claim construction analysis. "Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). "Properly viewed, the ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. However, the Federal Circuit has repeatedly warned against "importing limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323; *see also Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Thus, although a specification may describe very specific embodiments of the invention, it is improper to confine the claims to only those embodiments. *Phillips*, 415 F.3d at 1323; *see Comark*, 156 F.3d at 1186-87. Claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification." *See, e.g., Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005).

## D. Indefiniteness Must be Shown by Clear and Convincing Evidence

Ranir contends that certain claim terms are allegedly indefinite under 35 U.S.C. § 112 ¶ 2.[4] In other words, Ranir alleges that these claims are invalid.

---

[4]    35 U.S.C. § 112, ¶ 2 requires that the patent specification shall "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the

Patent claims are presumed to be valid. 35 U.S.C. § 282 (West 2007). Ranir bears the burden of proving invalidity and must do so by clear and convincing evidence. *See id.*; *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004).

The determination of whether a claim is sufficiently definite so as to satisfy the requirements of 35 U.S.C. § 112, ¶ 2 is a question of law. *Aero Products Int'l Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1015 (Fed. Cir. 2006). The essential inquiry for the Court is whether a person experienced in the field of the invention would understand the scope of the claim when read in light of the specification. *See, e.g., Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1371 (Fed. Cir. 2005) (finding the claim not indefinite due to ambiguity when the meaning was readily ascertained from the description in the specification); *Personalized Media Communications, LLC v. ITC*, 161 F.3d 696, 704-05 (Fed. Cir. 1998); *see generally Phillips*, 415 F.3d at 1303 (explaining that claims are construed in the context of the specification and prosecution history, as they would be understood by persons in the same field of endeavor).

The definiteness requirement does not compel absolute clarity. Thus, only claims "not amenable to construction" or "insolubly ambiguous" are indefinite. *See Datamize LLC v. Plumtree Software, Inc.,* 417 F.3d 1345, 1347 (Fed. Cir. 2005). A difficult issue of claim construction does not *ipso facto* result in a holding of indefiniteness. *Datamize,* 417 F.3d at 1347. Therefore, a claim is not indefinite if the claim is amenable to construction, "even though the task may be formidable and the

---

applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (West 2007). This provision both facilitates examination during the patent application stage, and upon grant serves to notify the public of what is patented.

conclusion may be one over which reasonable persons will disagree." *Aero Prods.*, 466

F.3d at 1016 (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371,

1375 (Fed. Cir. 2001)).

### E.  Claim Construction of Design Patents

Seven of the eight patents at issue in this case are "design patents." Because

design patent claims are visual, "the scope of the claimed design encompasses its visual

appearance as a whole, and in particular the visual impression it creates." *Contessa*

*Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (citations

omitted). Proper claim construction of a design patent requires reference to the

ornamental design as shown in the figures. *See Amini Innovation Corp. v. Anthony*

*California, Inc.,* 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("Claim Construction – The '219

patent claims '[t]he ornamental design for a bed frame, as shown and described.'"). A

patented design is defined by the drawings in the patent, not just by one feature of the

claimed design. *See id.* ("These drawings affirm that it is the overall 'bed frame' that is

patented – not just the details of its ornamentation."). Accordingly, in a design patent,

the figures represent what is claimed. *Contessa*, 282 F.3d at 1378. If the patentee does

not want features appearing in the figures to be claimed, the patentee is permitted to

show the features in broken lines to exclude those features from the claimed design.

*Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001).

When construing the claim in each of Colgate's seven design patents, this Court

must determine the visual impression created by the patent figures in each design

patent. This can only be done by reference to the figures themselves.

### III.    THE COLGATE PATENTS IN SUIT

#### A.    The Colgate Design Patents

Colgate's design patents in suit, U.S. Des. Pat. Nos. D513,882 (the 'D882 patent, Exhibit 2); D514,812 (the 'D812 patent, Exhibit 3); D516,818 (the 'D818 patent, Exhibit 4); D516,819 (the 'D819 patent, Exhibit 5); D517,812 (the 'D7812 patent, Exhibit 6); D517,813 (the 'D813 patent, Exhibit 7); and D520,753 (the 'D753 patent, Exhibit 8), generally pertain to ornamental designs for a toothbrush or portions of a toothbrush.

#### 1.    The 'D882 Patent

The 'D882 patent is entitled "Toothbrush." The design is depicted in seven figures taken from various views. Fig. 1, reproduced below, is a perspective front view of a toothbrush showing the claimed design.



FIG. 1

Figs. 2 and 3 are views taken from opposite ends of the toothbrush, i.e., a head end view and a handle end view, respectively. And Figs. 4-7 are views taken from the right side, left side, bottom, and top of the toothbrush. The two generally almond-shaped regions on opposing sides of the handle shown in broken lines and the unshaded regions therein are not a part of the claimed design. The region on the back of the toothbrush head

8

shown in broken lines (best shown in Fig. 6) and the unshaded area therein also are not a part of the claimed design.

### 2.    The 'D812 Patent

The 'D812 patent is entitled "Handle Portion of a Toothbrush." The design is depicted in five figures taken from various views. Fig. 1, reproduced below, is a perspective front view of a handle portion of a toothbrush showing the claimed design.



FIG.1

Figs. 2-5 are views taken from the right side, left side, bottom, and top of the toothbrush handle. The broken line showing of the two generally almond-shaped regions, including the unshaded area therein and the reminder of the toothbrush are not a part of the claimed design.

### 3.    The 'D818 Patent

The 'D818 patent is entitled "Handle Portion of a Toothbrush." The design is depicted in five figures taken from various views. Fig. 1, reproduced below, is a perspective front view of a handle portion of a toothbrush showing the claimed design.



FIG. 1

Figs. 2-5 are views taken from the right side, left side, bottom, and top of the toothbrush handle. The broken line showing of the toothbrush head and of the various regions, including the unshaded areas therein, are not a part of the claimed design.

### 4.    The 'D819 Patent

The 'D819 patent is entitled "Set of Bristles for a Toothbrush." The design is depicted in five figures taken from various views. Fig. 1, reproduced below, is a perspective front view of a set of bristles for a toothbrush showing the claimed design.



FIG. 1

Figs. 2-5 are views taken from the right side, left side, bottom, and head end of the set of bristles. The broken line showing of the remainder of the toothbrush is not a part of the claimed design.

5.    **The 'D7812 Patent**

The 'D7812 patent is entitled "Toothbrush." The design is depicted in seven figures using photographic imagery taken from various views. The photographic figures inherently illustrate a contrast in appearance between various portions of the toothbrush body and between various groups of bristles on the brush head. Fig. 1, reproduced below, is a right side front perspective view of a toothbrush showing the claimed design.



FIG. 1

Fig. 2 is a right side back perspective view. Figs. 3-5 are back, left side, and front elevation views. And Figs. 6 and 7 are bottom and top plan views, respectively. No portion of any of the drawings is disclaimed.

11

### 6.    The 'D813 Patent

The 'D813 patent is entitled "Handle Portion of a Toothbrush." The design is depicted in five figures taken from various views. Fig. 1, reproduced below, is a perspective front view of a handle portion of a toothbrush showing the claimed design.



FIG. 1

Figs. 2-5 are views taken from the right side, left side, bottom, and top of the toothbrush handle. The claimed design includes the portions of the handle that are shown in solid lines and depicted with both line shading and stipple shading (i.e., formed by dots). As is described on the face of the patent, different shading techniques used (i.e., the line shading and the stipple shading) represent a contrast in appearance. The broken line showing of the toothbrush head and of various regions and the unshaded areas therein are not a part of the claimed design.

### 7.    The 'D753 Patent

The 'D753 patent is entitled "Set of Bristles for a Toothbrush." The design is depicted in six figures taken from various views. Fig. 1, reproduced below, is a perspective front view of a set of bristles for a toothbrush showing the claimed design.



FIG. 1

Figs. 2-4 are right side, left side, and top view of the set of bristles. Fig. 5 is an enlarged perspective view and Fig. 6 is an enlarged top view. The drawings reflect a combination of photographs used for the bristle area and broken lines for the remainder of the toothbrush. The photographic representations of the bristle area inherently illustrate a contrast in appearance between various groups of bristles on the brush head due to their different gray-scale intensities. The broken line showing of the remainder of the toothbrush is not a part of the claimed design.

### B.    The Colgate Utility Patent - U.S. Patent No. 7,047,591

#### 1.    The Patent Specification

Colgate's '591 utility patent (Exhibit 9) is directed to an oral care implement having an improved handle for providing greater comfort and improved control during use.

Figures 2-4 of the patent specification, reproduced below, illustrate an oral care implement in the form of a toothbrush 100 encompassed by at least one of the claims of the '591 patent. As shown in the figures, toothbrush 100 comprises a handle 103 and a head 105 with bristles or other tooth cleaning elements:

13



FIG. 2    FIG. 3    FIG. 4

The specification describes that handle 103 includes a base 300, a grip body 403, and a gripping member 407, which cooperatively form a grip portion 400 by which the user holds and manipulates the toothbrush. *See* '591 Patent, col. 2, lines 33-51. The grip portion 400 includes three segments – a front segment 111, a rear segment 115, and a narrow transition segment 113 that connects the front and rear segments. In a preferred construction, the front segment 111 is inclined relative to the rear segment 115, as shown in Fig. 4. The angle of inclination may range from 5 to 40 degrees. *See* '591 Patent, col. 2, lines 52-64.

## 2.    **The Prosecution History**

There was nothing exceptional or unusual about the prosecution of the '591 patent in the United States Patent & Trademark Office (the "USPTO"). The application was originally filed on July 30, 2004, and claimed the benefit of two earlier applications in the United States filed on September 20, 2002 and September 10, 2003 and an international application filed on September 17, 2003.

Colgate filed a Petition to Make Special on November 16, 2004 to expedite examination of the application. Colgate also filed a supporting Information Disclosure Statement in which Colgate identified over 100 patents, dated prior to the filing of the filing of the '591 patent application, for the patent examiner to consider in deciding whether to grant the '591 patent. Colgate filed a further Information Disclosure Statement on June 2, 2004 to bring an additional reference to the Examiner's attention.

The Examiner issued a first "Office Action" in the application on August 15, 2005 in which he rejected all of the claims as being unpatentable in view of several patent references. Colgate responded to the Office Action on November 15, 2005. In the response, Colgate amended the pending claims and presented arguments to the Examiner explaining why Colgate believed these claims should be granted.

The Examiner issued a second, final Office Action on December 23, 2005 in which he allowed claims 1-28 and 30-34 and rejected the remaining claims 29 and 35-52.

Colgate responded on February 21, 2006 by amending claim 29 and cancelling claims 35-52. The '591 patent was then issued by the USPTO on May 23, 2006.

## IV.    CONSTRUCTION OF DISPUTED CLAIM TERMS

The parties exchanged preliminary claim constructions and filed a Joint Statement regarding claim construction on April 17, 2007. *See* Exhibit 1, Joint Disputed Claim Terms Chart. The proper construction of the design patent claims and the construction of the claim terms of the '591 patent identified below are in dispute.

### A.    The Colgate Design Patents

As described above, in the design context, claim construction focuses on the visual impression the design creates. Thus, in construing the claims of Colgate's design patents, this Court should properly refer to the patent drawings. *See, e.g., In re Mann*, 861 F.2d 1581, 1582 (Fed.Cir.1988) (noting that scope of design patent is "limited to what is shown in the application drawings").

Ranir would have this Court adopt a claim construction that is a detailed verbal description of the patented design. However, with a design patent, the process of claim construction "must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words[.]" *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 149 F.Supp.2d 60, 63 (S.D.N.Y. 2001) (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire and Rubber Co.*, 163 F.3d 1113, 1116 (Fed. Cir. 1998). The illustration is its own best description; therefore, the proper claim construction is what is shown in the application drawings. *See Hsin Ten Enterprise*, 149 F.Supp.2d at 64.

### 1.    The 'D882 Patent

The 'D882 patent claim is properly construed with reference to the patent drawings. Accordingly, this Court should reject Ranir's proposal to translate the drawings into a written description.

As described above, in the design patent context, the proper claim construction is defined by what is shown in the application drawings. This Court should adopt Colgate's proposed construction which properly delineates the scope of the design patent claim by referencing the figures and specifically identifying those portions of the

16

figures shown in broken lines that have been disclaimed and, therefore, are not a part of the claimed invention:

> The claim is for the overall design of a toothbrush as shown in the figures. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The region on the back of the toothbrush head depicted in broken lines (best shown in FIG. 6) and the unshaded area within have been disclaimed. It is this claimed design that is to be compared to the accused products.



## 2. The 'D812 Patent

For the reasons set forth above, this Court should adopt Colgate's proposed construction, which properly delineates the scope of the design patent claim by referencing the figures and specifically identifying those portions of the figures shown in broken lines that have been disclaimed and, therefore, are not a part of the claimed invention:

> The claim is for a design for a center handle portion of a toothbrush as shown in the figures. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The remainder of the toothbrush which is shown in broken lines forms no part of the claimed design. It is this claimed design that is to be compared to the accused products.



### 3.    The 'D818 Patent

For the reasons set forth above, this Court should adopt Colgate's proposed construction, which properly delineates the scope of the design patent claim by referencing the figures and specifically identifying those portions of the figures shown in broken lines that have been disclaimed and, therefore, are not a part of the claimed invention:

> The claim is for a design for a handle portion of a toothbrush as shown in the figures. The claimed design includes the handle shown in solid lines and depicted with line shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the back of the handle and the unshaded areas within form no part of the claimed design. It is this claimed design that is to be compared to the accused products.



### 4.    The 'D819 Patent

For the reasons set forth above, this Court should adopt Colgate's proposed construction, which properly delineates the scope of the design patent claim by

18

referencing the figures and specifically identifying those portions of the figures shown in broken lines that have been disclaimed and, therefore, are not a part of the claimed invention:

> The claim is for a design for a set of bristles for a toothbrush as shown in the figures. The claimed design includes the bristle design which is the portion of the design shown in solid lines. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design. It is this claimed design in the figures that is to be compared to the accused products.



### 5.    The 'D7812 Patent

For the reasons set forth above, this Court should adopt Colgate's proposed construction, which properly delineates the scope of the design patent claim with reference to the figures:

> The claim is for the overall design of a toothbrush as shown in the figures. No portions have been disclaimed. It is the design in the figures that is to be compared to the accused products.



### 6.    The 'D813 Patent

For the reasons set forth above, this Court should adopt Colgate's proposed construction, which properly delineates the scope of the design patent claim by referencing the figures and specifically identifying those portions of the figures shown in broken lines that have been disclaimed and, therefore, are not a part of the claimed invention:

> The claim is for a design for a handle portion of a toothbrush as shown in the figures. The claimed design includes the handle which is the portions of the handle that is shown in solid lines and depicted with line and stipple (i.e., formed by dots) shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the bottom of the handle and the unshaded areas within form no part of the claimed design. The appearance of the area shaded with the line shading technique contrasts with the appearance of the area shaded with the stipple shading technique. It is this claimed design that is to be compared to the accused products.



### 7.    The 'D753 Patent

For the reasons set forth above, this Court should adopt Colgate's proposed construction, which properly delineates the scope of the design patent claim by referencing the figures and specifically identifying those portions of the figures shown in broken lines that have been disclaimed and, therefore, are not a part of the claimed invention:

The claim is for a design for a set of bristles for a toothbrush as shown in the figures. These figures consist of FIGS. 4-6 in the patent as originally printed and FIGS. 1-3 in the Certificate of Correction. The claimed design includes the bristle design which is the portion shown in photographic imagery. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design. It is this claimed design in the figures that is to be compared to the accused products.



## B.    The '591 Utility Patent

Colgate respectfully submits that the language of the claims of the '591 utility patent is sufficiently clear such that the terms and phrases in these claims must be given their ordinary and customary meanings. *See Phillips*, 415 F.3d at 1312. This is not a case where the patentee has acted as his own lexicographer. There are no special meanings or hidden connotations in the '591 patent specification to alter the ordinary meaning of the claim terms. There also is no clear disclaimer of the ordinary meaning in the prosecution history.

Ranir's proposed claim constructions should be rejected as a transparent effort to avoid infringement by erroneously and improperly narrowing the claims by importing limitations from the specification into the claims. As detailed below, the claim terms are properly construed to have the customary and ordinary meaning that a person skilled in the art would have given them at the time of the invention.

21

1.    **Claim 1**

    a)    **"a gripping member"**

An oral care implement comprising: a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough; *a gripping member* at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base;

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"a gripping member"**: the outer constituent part of the handle of an oral care implement that covers at least a portion of the base. *See, e.g., '591 Patent, col. 1, lines 40-46; col. 2, lines 44-57; col. 3, lines 13-25; col. 4, lines 41-67; col. 5, lines 1-39; Figs. 2 and 4, identified by number 407; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* | **"a gripping member"**: A slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand. *Col. 1, line 45; Col. 13 [sic], lines 19-22.* |

The phrase "gripping member" needs no explanation in the nature of claim construction. The meaning of the phrase, when read in the context of the '591 patent, is clear and straightforward. It means just what the claim language says, and what the specification discloses – the gripping member is the outer constituent part of the handle of an oral care implement that covers at least a portion of the base.

In the "Brief Summary of the Invention," the '591 patent describes that the handle of the oral care implement includes a grip member having a plurality of openings that expose portions of an underlying base. *See* '591 Patent, col. 1, lines 40-46. Referring to Figs. 6 and 7, the specification further describes that the base 300 defines a relatively rigid support structure that is at least partially overlain by a gripping member 407. *See* '591 Patent, col. 4, lines 41-45.

Ranir's proposed construction of "gripping member" as "a slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand" is incorrect as a matter of law. Nothing in the claim language, the specification, or the prosecution history requires the "gripping member" to be slip-resistant. There also is nothing to confine the term to an element intended to be grasped by the third through fifth fingers of the user's hand.

The '591 patent specification describes that in a preferred embodiment, the handle may include a friction surface to resist slippage. But the claims are not limited to only that embodiment. Indeed, the Federal Circuit has repeatedly warned that it is improper to limit the invention as described in the claims to what is shown in a preferred embodiment in the specification. *See Phillips,* 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). The Federal Circuit has thus made clear that a preferred embodiment is "just that and the scope of a patentee's claims is not necessarily or automatically limited to the preferred embodiment." *Amhil Enters. Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1559 (Fed. Cir. 1996).

Ranir seizes upon the portion of the '591 patent specification (at col. 3, lines 19-22) that describes that the toothbrush is gripped with the third through fifth fingers of the user's hand in a normal use position. But Ranir conveniently ignores the very next sentence that explicitly states that the toothbrush can be held in other ways, and makes it abundantly clear that the "gripping member" is not limited to an element grasped by the third through fifth fingers of the user's hand.

> While a normal use position is discussed, the features of the toothbrush
> could be employed by a user having less fingers or a user which holds
> the toothbrush in other ways.

'591 Patent, col. 3, lines 22-25.

Ranir's proposed construction is improper because it imports limitations from

the specification into the claim. *See Phillips*, 415 F.3d at 1323. This Court's adoption

of Ranir's proposed construction would run afoul of established claim construction

precedent and would result in reversible error.

### b)    "a resilient grip body"

and *a resilient grip body* in the gripping region and extending through
the aperture,

| Colgate's Proposed Construction | Ranir's Proposed Construction |
| --- | --- |
| "a resilient grip body": a constituent part of the handle that can recover its size and shape after application of pressure. *See, e.g., '591 Patent, col. 1, lines 47-55; col. 1, line 63 – col. 2, line 2; col. 2, lines 44-57; col. 3, lines 13-65; col. 4, lines 10-40; col. 6, lines 4-14; Figs 1-5, 8 and, 9 identified by number 403; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* | "a resilient grip body": A soft, resilient element separate from the gripping member intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand. *Col. 3, lines 16-19; Col. 3, lines 40-61; Col. 4, lines 10-19;Col. 6, lines 4-13.* |

The phrase "resilient grip body" needs no construction.  The meaning of the

phrase, when read in the context of the '591 patent, is clear.  The term "resilient" is

commonly understood to refer to the ability of an element to recover its size and shape

after application of pressure. *See Merriam-Webster's Collegiate Dictionary, 10th Ed.*

(1999) at 996.  One of ordinary skill in the art would readily understand that the phrase

"resilient grip body" means exactly what it says and what the specification discloses –

that the grip body is a constituent part of the handle that can recover its size and shape

after application of pressure.

This is a classic situation where the claim uses commonly understood words for which the meaning to a person of ordinary skill in the art is readily apparent and for which no special definition has been provided by the patentee. In these circumstances, the Federal Circuit has recognized that "little more than the application of the widely accepted meaning of commonly understood words" is required. *Phillips,* 415 F. 3d at 1314.

Ranir proposes to limit the phrase "resilient grip body" to a "soft" element that is "intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand." But again, there is nothing in the claim language, the specification, or the prosecution history to require the improperly narrow construction that Ranir proposes. The '591 patent specification describes that the grip body has opposing sides *preferably* for engaging the thumb and index finger of a user. *See* '591 Patent, col. 3, lines 16-19. The patent specification also describes that in a *preferred construction* of the invention, the grip member is a soft, resilient element. *See* '591 Patent, col. 3, lines 45-47. However, as described above, it is improper to limit patent claims to only the preferred embodiments disclosed in the specification. The specification also is clear that the toothbrush can be held in other ways. *See* '591 Patent, col. 3, lines 22-25.

This Court should reject Ranir's attempt to import limitations from the specification into the claims.

    c)    **"the gripping member having a different durometer characteristic than the resilient grip body"**

*the gripping member having a different durometer characteristic than the resilient grip body.*

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"the gripping member having a different durometer characteristic than the resilient grip body"**: the gripping member has a different hardness than the resilient grip body. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999).*<br><br>Hardness is a property measured by a durometer. *Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999).* | **"the gripping member having a different durometer characteristic than the resilient grip body"**: The hardness durometer measurement or rating of the gripping member material, measured on the Shore A scale, is different than that of the grip body material. *Col. 3, lines 49-53; Col. 5, lines 40-45, Col. 6, lines 4-6.* |

The phrase "the gripping member having a different durometer characteristic than the resilient grip body" needs no explanation in the nature of claim construction. The phrase is written with simple and understandable words and should be interpreted in accordance with its ordinary and customary meaning. "Durometer" is a technical term but it is one that is commonly used and consistently understood to refer to an instrument for measuring hardness. *See Merriam-Webster's Collegiate Dictionary, 10th Ed.* (1999) at 360. A person of ordinary skill in the art would readily understand that the phrase "the gripping member having a different durometer characteristic than the resilient grip body" means just what the words say and what the patent specification discloses - the gripping member has a different hardness than the resilient grip body. *See, e.g.,* '591 Patent, col. 3, lines 45-57 and col. 5, lines 40-45.

Ranir asserts that this phrase should be construed to mean that the hardness of the gripping member *material* is different than that of the grip body *material*. Yet the word "material" is nowhere present in the plain language of the claims.

Ranir is not entitled to rewrite the claims to suit its own purposes. And Ranir's improper attempt to do so should be rejected by this Court.

26

This Court also should reject Ranir's proposal to confine the claim to measurements on the Shore A scale. Nothing in the claim language, the specification or the prosecution history limits this claim to only measurements on the Shore A scale.

### 2.    Claim 2

#### a)    "the gripping member and the grip body comprises an elastomeric material"

The oral care implement according to claim 1 in which *the gripping member and the grip body comprises an elastomeric material.*

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"the gripping member and the grip body comprises an elastomeric material"**: the gripping member and grip body are composed of at least a material resembling rubber. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 4, lines 10-31; col. 4, lines 41-47; col. 5, lines 1-25; col. 5, lines 40-61; col. 6, lines 4-14; Merriam-Webster's Collegiate Dictionary 10th Ed., (1999).* | **"the gripping member and the grip body comprises an elastomeric material"**: The gripping member and grip body are each a thermoplastic elastomer. *Col. 1, lines 43-45; Col. 3, lines 45-47; Col. 4, line 45; Col. 5, lines 3-6; Col. 6, lines 12-14.* |

The phrase "the gripping member and the grip body comprises an elastomeric material" needs no explanation in the nature of claim construction. These words, when read in the context of the '591 patent, are simple and straightforward. The term "elastomeric" is commonly understood to refer to a material resembling rubber, *Merriam-Webster's Collegiate Dictionary 10th Ed.,* (1999) at 370. One of ordinary skill in the art would readily understand from the '591 patent specification that the claim language means just what it says - the gripping member and the grip body are composed of at least a material resembling rubber. No further construction is required or appropriate.

As it has done with other claim terms, Ranir proposes to introduce an additional limitation that the gripping member and the grip body are each formed of a *"thermoplastic"* elastomer. However, there is nothing in the claim language or the '591 patent specification that narrows the common understanding of "elastomer" to a thermoplastic elastomer.

The '591 patent specification describes that in a ***preferred construction***, the grip member is formed of a thermoplastic elastomer, *see* col. 3, lines 45-47, and that the grip body is ***preferably*** a thermoplastic elastomer. *See* col. 6, lines 12-14. But the specification does not require the grip member or the grip body to be formed of a *thermoplastic* elastomer. To the contrary, the specification explicitly describes that the gripping member may be formed of a thermoplastic elastomer *"or other similar materials used in oral care products."* *See* '591 Patent, col. 5, lines 1-6.

Ranir's proposed construction should be rejected.

### 3.    Claim 15

#### a)    **"the grip body is of a softer material than said gripping member**

The oral care implement according to claim 1, in which ***the grip body is of a softer material than said gripping member.***

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"the grip body is of a softer material than said gripping member"**: the grip body material has a durometer measurement that is less than the durometer measurement of the gripping member. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61 ; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999); ASTM D2440-00* | **"the grip body is of a softer material than said gripping member"**: The grip body material is softer than the gripping member material. The hardness durometer measurement of the resilient grip body material, measured on the Shore A scale, is less than that of the gripping member material. *Col. 6, lines 6-7.* |

The phrase "the grip body is of a softer material than said gripping member" is written with simple and understandable words and means precisely what it says - the grip body is softer, i.e, lacking relatively or comparatively in hardness (a characteristic measured with a durometer) see *Merriam-Webster's Collegiate Dictionary, 10th Ed.* (1999) at 360 and 1116, than the gripping member. Accordingly, the phrase should be construed to mean that the grip body material has a durometer measurement that is less than the durometer measurement of the gripping member.

Ranir incorrectly asserts that this phrase should be construed to mean that the grip body material is softer than the gripping member *material*. The term "gripping member *material*" nowhere appears in the claim language. Ranir's improper attempt to rewrite the claim to suit its own purposes should be rejected by this Court.

This Court also should reject Ranir's proposal to limit this claim to measurements on the Shore A scale. Nothing in the claim language, the specification or the prosecution history confines the claim to only measurements on the Shore A scale.

 4.    **Claim 24**

  a)    **"the grip body is composed of a softer material than the gripping member"**

The oral care implement according to claim 1 in which the gripping member is composed of a softer material than the base and ***the grip body is composed of a softer material than the gripping member.***

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"the grip body is composed of a softer material than the gripping member"**: the grip body material has a durometer measurement that is less than the durometer measurement of the gripping member. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61; Merriam-* | **"the grip body is composed of a softer material than the gripping member"**: The grip body material is softer than the gripping member material. The hardness durometer measurement of the resilient grip body material, measured on the Shore A scale, is less than that of the gripping |

| *Webster's Collegiate Dictionary, 10th Ed. (1999); ASTM D2440-00* | member material. *Col. 6, lines 6-7.* |
|---|---|

*See* Claim 15 above.

### 5.   Claim 27

#### a)    "a gripping region"

An oral care implement comprising: a base with a ***gripping region*** and an oral engaging region,

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"a gripping region"**: a subdivision of the oral care implement that includes the area held by a user. *See e.g., '591 Patent, col. 1, lines 40-47; col. 2, line 58 – col. 3, line 12; Figs. 1-9 numbered item 301; Merriam-Webster's Collegiate Dictionary 10th Ed. (1999)* | **"a gripping region"**: The gripping region is the longitudinal portion of the implement defined by the longitudinal extent of the gripping member and the grip body. *Col. 1, lines 49-57; Col. 2, lines 49-51.* |

The phrase "a gripping region" does not need to be construed by the Court.  The terms "gripping" and "region" used in this phrase are commonly understood words and are used in their customary and ordinary way in the '591 patent specification.  The patent specification thus uses the term "gripping region" to refer to a subdivision of the oral care implement that includes the area held, i.e., gripped, by a user.  *See, e.g.,* '591 Patent, col. 1, lines 40-47; col. 2, line 58 – col. 3, line 12; Figs. 1-9 numbered item 301.  *See also Merriam-Webster's Collegiate Dictionary, 10th Ed.* (1999) at 984.  No further construction is required or would be appropriate.

Ranir's proposed construction bears no resemblance to the actual words of the claim; therefore it should be rejected by this Court.

**b)**    **"a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion"**

the gripping region including *a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion;*

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion":** the front segment of the gripping region is inclined at an angle of about 20 to about 40 degrees relative to the rear segment of the gripping region. *See, e.g., '591 Patent, col. 1, lines 57-62; col. 2, lines 44-67; col. 3, lines 1-12; Figs 2, 3, identified by numbers 111, 113, and 115; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* | **"a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion":** This language does not comply with 35 U.S.C. 112, First and Second Paragraphs. Nevertheless, the following best guess is provided. The rear segment is the portion of the implement from the tip of the base to center of the top-most finger opening in the grip surface. The front segment is the portion of the implement from the lower-most edge of the base material surrounding the grip body to the top-most portion of the grip surface. The angle of inclination of the front segment to the rear segment is defined by the angle of the intersection of the midlines of the front and rear segments. Each midline is defined by the midpoints of the thickness of the implement at each end of the respective segment. *Col. 2, lines 49-64; Fig. 2, Fig. 4.* |

Ranir contends that the phrase "a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion" does not comply with the requirements of 35 U.S.C. § 112. Ranir is flatly wrong.

31

Whether a claim is sufficiently definite so as to satisfy the requirements of 35 U.S.C. § 112 is a question of law and depends on whether a person experienced in the field of the invention would understand the scope of the claim when read in light of the specification. *See, e.g., Howmedica Osteonics Corp.,* 401 F.3d at 1371. Only claims "not amenable to construction" or "insolubly ambiguous" are indefinite. Thus, a claim is not indefinite if the claim is amenable to construction, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree." *See Datamize LLC,* 417 F.3d at 1347.

Ranir has offered *no* evidence, let alone clear and convincing evidence, to support its argument that a person of ordinary skill in the art would be unable to understand the scope of the claim when read in light of the patent specification. It also is telling that Ranir was not prevented by this alleged indefiniteness from offering its own proposed construction of the claim phrase.

A person of skill in the art would readily understand from the claim language and the '591 patent specification that the phrase "a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion" means exactly what it says and what the specification clearly describes and depicts in the figures – the front segment of the gripping region is inclined at an angle of about 20 to about 40 degrees relative to the rear segment of the gripping region. *See* '591 Patent, col. 2, lines 58-64 and Figs. 2-4. Ranir's allegations of § 112 violation are unfounded and should be summarily dismissed.

Ranir's proposed construction also should be rejected. Ranir would construe the claim to read out the word "*about*" in the phrase "*about* 20-40 degrees" and require that a particular methodology be used to measure the incline angle. Neither the claim language nor the patent specification limits measurement of the incline angle to the particular methodology that Ranir proposes and they further make clear that the range of the incline angle is "*about* 20-40 degrees."

**c)**    **"a resilient grip surface"**

*a resilient grip surface* being disposed on the rear segment;

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"a resilient grip surface"**: an exterior of the gripping member that can recover its size and shape after application of pressure. *See, e.g., '591 Patent, Col. 5, line 1 – col. 6, line 14; Figs. 2, 4, and 9 identified by number 410; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* | **"a resilient grip surface"**: A resilient, slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand. *Col. 1, line 45; Col. 13 [sic], lines 19-22.* |

The phrase "resilient grip surface" needs no construction by this Court. The meaning of the phrase, when read in the context of the '591 patent, is clear and straightforward. The '591 patent specification describes that the "grip surface" is the exterior of the gripping member. *See, e.g.,* '591 Patent, col. 5, line 26-col. 6, line 14. "Resilient" also is a commonly used word and is generally understood to refer to the ability of an element to recover its size and shape after application of pressure. *Merriam-Webster's Collegiate Dictionary, 10th Ed.* (1999) at 996.

A person of ordinary skill in the art would readily understand that the claim language means just what it says and just what the specification discloses - the resilient

33

grip surface is an exterior of the gripping member that can recover its size and shape after application of pressure. No further construction is required or appropriate.

Ranir attempts, as it has with other claim terms, to improperly import limitations from specific preferred embodiments in the specification into the claim. Ranir thus proposes to limit the phrase "resilient grip surface" to a "slip-resistant" element that is "intended to be grasped by the third through fifth fingers of the user's hand." Nothing in the claim language, the specification, or the prosecution history requires that the claim term be construed as Ranir proposes. This Court should reject Ranir's strained and repeated efforts to avoid infringement by reading unsupported and unnecessary limitations into the claims.

### d)    "a grip body"

*a grip body* extending through an aperture in the base

| **Colgate's Proposed Construction** | **Ranir's Proposed Construction** |
|---|---|
| **"a grip body"**: a constituent part of the handle that may be contacted by a user's thumb and finger during normal use of the oral cleaning implement. *See, e.g., '591 Patent, col. 1, lines 47-55; col. 1, line 63 – col. 2, line 2; col. 2, lines 44-57; col. 3, lines 13-65; col. 4, lines 10-40; col. 6, lines 4-14; Figs 1-5, 8, and 9 identified by number 403; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* | **"a grip body"**: A soft element separate from the gripping member intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand. *Col. 3, lines 16-19; Col. 3, lines 40-61; Col. 4, lines 10-19; Col. 6, lines 4-13.* |

The phrase "grip body" needs no construction by this Court. This phrase, when read in the context of the '591 patent, is simple and straightforward. One of ordinary skill would readily understand from the '591 patent specification that the "grip body" is a part of the handle of the oral care implement that may be gripped by the user's finger and thumb. *See, e.g.,* '591 Patent, col. 1, lines 47-56.

Ranir proposes to add the further limitation that the "grip body" is a "soft" element that is "intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand." Again, there is nothing in the claim language or the patent specification to require that the claim term be construed as Ranir proposes. As described above with respect to the phrase "resilient grip body," the '591 patent specification describes that the grip body has opposing sides *preferably* for engaging the thumb and index finger of a user. *See* '591 Patent, col. 3, lines 16-19. The patent specification also describes that in a *preferred construction* of the invention, the grip member is a soft, resilient element. *See* '591 Patent, col. 3, lines 45-47. However, it is improper to limit patent claims to only the preferred embodiments disclosed in the specification.

### 6.    Claim 27

#### a)    "configured to counterbalance forces acting on the base"

The oral care implement according to claim 27 in which the grip body is *configured to counterbalance forces acting on the base.*

| Colgate's Proposed Construction | Ranir's Proposed Construction |
|---|---|
| **"configured to counterbalance forces acting on the base"**: the grip body is particularly arranged to transmit forces acting on the base. *See, e.g., '591 Patent, col. 4, lines 10-31; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* | **"configured to counterbalance forces acting on the base"**: The mass of the grip body can be shifted by pressure on either side for greater comfort and control, and to dampen the pressure applied by the brush. The grip body can flow and shift within the base. *Col. 1, lines 52-54; Col. 3, line 66 through Col. 4, line 40.* |

The phrase "configured to counterbalance forces acting on the base" needs no construction by this Court. The meaning of the phrase, when read in the context of the '591 patent, is clear and straightforward. The '591 patent specification describes that

the grip body is configured so that when the toothbrush is used against the oral surfaces, such as the teeth, reaction forces are transferred to the grip body to counterbalance the brushing forces. *See, e.g.,* '591 Patent, col. 4, lines 10-31. One of skill in the art would readily understand that this limitation means what it says and what the patent specification discloses - the grip body is particularly arranged to transmit forces acting on the base.

The '591 patent specification describes a preferred construction where the elastomeric material of the grip body is enabled to flow and shift within an aperture. The specification describes that this shifting of material causes a slight shift in the mass centroid of the grip body to counterbalance the brushing forces. *See* '591 Patent, col. 4, lines 18-31.

Ranir's proposed construction would limit the claims to only this preferred embodiment. As such, Ranir's proposed construction is contrary to established precedent and should be rejected by this Court.

## V.  **CONCLUSION**

For the reasons set forth above, this Court should adopt Colgate's proposed claim constructions.  In other words, this Court should construe the claim terms in accordance with their ordinary and customary meaning.

Date:  May 8, 2007

Respectfully submitted,

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

Robert F. Altherr, Jr.
Nina L. Medlock
Christopher B. Roth
Elizabeth Almeter
Banner & Witcoff, Ltd.
1100 13th Street, N.W., Suite 1200
Washington, DC 20005
Phone (202) 824-3000

*Attorneys for Colgate-Palmolive Company*

537859

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COLGATE-PALMOLIVE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-417-GMS |
| | ) | |
| RANIR, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>JOINT DISPUTED CLAIM TERMS CHART</u>

Attached is the Joint Disputed Claim Terms Chart submitted by Plaintiff, Colgate-Palmolive Company ("Colgate"), and Defendant, Ranir L.L.C. ("Ranir"), pursuant to the Court's November 7, 2006 Scheduling Order ("Scheduling Order"). As required by paragraph 4 of the Scheduling Order, Colgate and Ranir have each additionally cited the supporting intrinsic evidence in the Joint Disputed Claim Terms Chart.

**JOINT CHART OF PROPOSED CONSTRUCTIONS**

| U.S. Patent 7,047,591 (claim limitations proposed for construction are <u>underlined</u>) | Ranir's Proposed Construction | Colgate's Proposed Construction[1] |
|---|---|---|
| 1. An oral care implement comprising: a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough; <u>a gripping member</u> at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base; and <u>a resilient grip body</u> in the gripping region and extending through the aperture, <u>the gripping member having a different durometer characteristic than the resilient grip body</u>. | **"a gripping member"**: A slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand. *Col. 1, line 45; Col. 13, lines 19-22.* | **"gripping member"**: the outer constituent part of the handle of an oral care implement that covers at least a portion of the base. *See, e.g., '591 Patent, col. 1, lines 40-46; col. 2, lines 44-57; col. 3, lines 13-25; col. 4, lines 41-67; col. 5, lines 1-39; Figs. 2 and 4, identified by number 407; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |
| | **"a resilient grip body"**: A soft, resilient element separate from the gripping member intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand. *Col. 3, lines 16-19; Col. 3, lines 40-61; Col. 4, lines 10-19;Col. 6, lines 4-13.* | **"a resilient grip body"**: a constituent part of the handle that can recover its size and shape after application of pressure. *See, e.g., '591 Patent, col. 1, lines 47-55; col. 1, line 63 – col. 2, line 2; col. 2, lines 44-57; col. 3, lines 13-65; col. 4, lines 10-40; col. 6, lines 4-14; Figs 1-5, 8 and, 9 identified by number 403; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |
| | **"the gripping member having a different durometer characteristic than the resilient grip body"**: The hardness durometer measurement or | **"the gripping member having a different durometer characteristic than the resilient grip body"**: the gripping member has a different hardness than the resilient |

[1] Colgate does not believe that any claim limitation needs to be construed as each claim limitation is properly given its ordinary meaning according to one of skill in the art at the time of invention. In order to expedite the claim construction process, Colgate hereby provides its understanding of the ordinary meaning according to one of skill in the art at the time of the invention for the claim terms that Ranir asserts need to be construed.

1

| U.S. Patent 7,047,591 (claim limitations proposed for construction are **underlined**) | Ranir's Proposed Construction | Colgate's Proposed Construction[1] |
|---|---|---|
| | rating of the gripping member material, measured on the Shore A scale, is different than that of the grip body material. *Col. 3, lines 49-53; Col. 5, lines 40-45, Col. 6, lines 4-6.* | grip body. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61 ; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999).*<br><br>Hardness is a property measured by a durometer. *Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999).* |
| 2. The oral care implement according to claim 1, in which <u>the gripping member and the grip body comprises an elastomeric material</u>. | **"the gripping member and the grip body comprises an elastomeric material"**: The gripping member and the grip body are each a thermoplastic elastomer. *Col. 1, lines 43-45; Col. 3, lines 45-47; Col. 4; line 45; Col. 5; lines 3-6; Col. 6, lines12-14.* | **"the gripping member and the grip body comprises an elastomeric material"**: the gripping member and grip body are composed of at least a material resembling rubber. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 4, lines 10-31; col. 4, lines 41-47; col. 5, lines 1-25; col.5, lines 40-61; col. 6, lines 4-14; Merriam-Webster's Collegiate Dictionary 10th Ed., (1999).* |
| 15. The oral care implement according to claim 1, in which <u>the grip body is of a softer material than said gripping member</u>. | **"the grip body is of a softer material than said gripping member"**: The grip body material is softer than the gripping member material. The hardness durometer measurement of the resilient grip body material, measured on the Shore A scale, is less than that of the gripping member material. *Col. 6, lines 6-7.* | **"the grip body is of a softer material than said gripping member"**: the grip body material has a durometer measurement that is less than the durometer measurement of the gripping member. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61 ; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999); ASTM D2440-00* |
| 24. The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base and <u>the grip body is composed of a softer material than the</u> | **"the grip body is composed of a softer material than the gripping member"**: The grip body material is softer than the gripping member material. The hardness | **"the grip body is composed of a softer material than the gripping member"**: the grip body material has a durometer measurement that is less than the |

| U.S. Patent 7,047,591 (claim limitations proposed for construction are **underlined**) | Ranir's Proposed Construction | Colgate's Proposed Construction[1] |
|---|---|---|
| gripping member. | durometer measurement of the resilient grip body material, measured on the Shore A scale, is less than that of the gripping member material. *Col. 6, lines 6-7.* | durometer measurement of the gripping member. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61 ; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999); ASTM D2440-00* |
| 27. An oral care implement comprising: a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20 40 degrees thereby defining the inclined portion; a resilient grip surface being disposed on the rear segment; and a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base. | **"a gripping region"**: The gripping region is the longitudinal portion of the implement defined by the longitudinal extent of the gripping member and the grip body. *Col. 1, lines 49-57; Col. 2, lines 49-51.*<br><br>**"a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion"**: This language does not comply with 35 U.S.C. 112, First and Second Paragraphs.  Nevertheless, the following best guess is provided.  The rear segment is the portion of the implement from the tip of the base to center of the top-most finger opening in the grip surface.  The front segment is the portion of the implement from the lower-most edge of the base material surrounding the grip body to the top-most portion of the grip surface.  The | **"a gripping region"**: a subdivision of the oral care implement that includes the area held by a user. *See e.g., '591 Patent, col. 1, lines 40-47; col. 2, line 58 – col. 3, line 12; Figs.* 1-9 numbered item 301*; Merriam-Webster's Collegiate Dictionary 10th Ed. (1999)*<br><br>**"a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion"**: the front segment of the gripping region is inclined at an angle of about 20 to about 40 degrees relative to the rear segment of the gripping region. *See, e.g., '591 Patent, col. 1, lines 57-62; col. 2, lines 44-67; col. 3, lines 1-12; Figs 2, 3, , identified by numbers 111, 113, and 115; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |

| U.S. Patent 7,047,591 (claim limitations proposed for construction are <u>underlined</u>) | Ranir's Proposed Construction | Colgate's Proposed Construction[1] |
|---|---|---|
| | angle of inclination of the front segment to the rear segment is defined by the angle of the intersection of the midlines of the front and rear segments. Each midline is defined by the midpoints of the thickness of the implement at each end of the respective segment. *Col. 2, lines 49-64; Fig. 2, Fig. 4.* | |
| | **"<u>a resilient grip surface</u>"**: A resilient, slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand. *Col. 1, line 45; Col. 13, lines 19-22.* | **"<u>a resilient grip surface</u>"**: an exterior of the gripping member that can recover its size and shape after application of pressure. *See, e.g., '591 Patent, Col. 5, line 1 – col. 6, line 14; Figs. 2, 4, and 9 identified by number 410; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |
| | **"<u>a grip body</u>"**: A soft element separate from the gripping member intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand. *Col. 3, lines 16-19; Col. 3, lines 40-61; Col. 4, lines 10-19; Col. 6, lines 4-13.* | **"<u>a grip body</u>"**: a constituent part of the handle that may be contacted by a user's thumb and finger during normal use of the oral cleaning implement. *See, e.g., '591 Patent, col. 1, lines 47-55; col. 1, line 63 – col. 2, line 2; col. 2, lines 44-57; col. 3, lines 13-65; col. 4, lines 10-40; col. 6, lines 4-14; Figs 1-5, 8 and, 9 identified by number 403; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |
| | **"<u>spaced from the grip surface</u>"**: The resilient grip surface and the grip body do not contact each other. *Fig. 5* | **"<u>spaced from the grip surface</u>"**: there is an area separating the grip body from the grip surface. *See. e.g., '591 Patent, col. 3,* |

4

| U.S. Patent 7,047,591 (claim limitations proposed for construction are **underlined**) | Ranir's Proposed Construction | Colgate's Proposed Construction[1] |
|---|---|---|
| | | line 66 – col. 4, line 9; Figs, 5-7; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999) |
| 29. The oral care implement according to claim 27, in which the grip body is <u>configured to counterbalance forces acting on the base</u>. | **"configured to counterbalance forces acting on the base"**: The mass of the grip body can be shifted by pressure on either side for greater comfort and control, and to dampen the pressure applied by the brush. The grip body can flow and shift within the base. *Col. 1, lines 52-54; Col. 3, line 66 through Col. 4, line 40.* | **"configured to counterbalance forces acting on the base"**: the grip body is particularly arranged to transmit forces acting on the base. *See, e.g., '591 Patent, col. 4, lines 10-31; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |

**Claim Chart for U.S. Patent D513,882**

| U.S. Patent D513,882 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including:<br>a head supporting a set of bristles;<br>a neck that is narrower than the head;<br>the width of the front handle segment increases from the end adjacent to the neck to the end opposite the neck;<br>the transition handle segment has an oval-shaped cross-section that is longer in the vertical direction;<br>the rear handle segment is generally round in cross-section;<br>the grip material overlies approximately only the lower half of the transition handle segment and the rear handle | The claim is for the overall design of a toothbrush as shown in the figures. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The region on the back of the toothbrush head depicted in broken lines (best shown in FIG. 6) and the unshaded area within have been disclaimed. It is this claimed design that is to be compared to the accused products. |

| U.S. Patent D513,882 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | segment, forming a straight dividing line along the sides and rear of the handle; the transverse slots are parallel; the transverse slots are narrow, and extend across approximately the entire width of the handle; each loop configuration having a circular shape formed from four arc-shaped elastomers, the loop configurations approximately evenly spaced on the head; the loop configurations each having the same diameter; the bristles of the outer ring arranged in two opposing arc-shaped tufts; the central bristle tufts being no taller than the loop configurations; three peripheral tufts spaced apart in a line along each side of the distal loop configuration; three peripheral tufts spaced apart in a line on each side of the proximal loop configuration; each peripheral bristle tuft having a gradually increasing diameter from the head to the tip; each peripheral bristle tuft narrowing to a point at the tip; two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length; the distal bristle tufts having a slight gap | |

| U.S. Patent D513,882 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | between them at the base, but converging together to close the gap at the tips; the distal bristle tufts being shorter in height than the peripheral bristle tufts; two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and the proximal bristle tufts being shorter in height than the peripheral bristle tufts. *Figs. 1-7* | |

Claim Chart for U.S. Patent D516,819

| U.S. Patent D516,819 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including:<br>a plurality of bristles, wherein some of the bristles form loop configurations that each have a circular shape formed from four arc-shaped elastomers;<br>the loop configurations are approximately evenly spaced on the head;<br>the loop configurations each having the same diameter;<br>the bristles of the outer ring arranged in two opposing arc-shaped tufts;<br>the central bristle tufts being no taller than the loop configurations;<br>three peripheral tufts spaced apart in a line along each side of the distal loop configuration;<br>three peripheral tufts spaced apart in a line on each side of the proximal loop configuration;<br>each peripheral bristle tuft having a generally uniform diameter from the head to the tip;<br>two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length;<br>the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips;<br>the distal bristle tufts being shorter in | The claim is for a design for a set of bristles for a toothbrush as shown in the figures. The claimed design includes the bristle design which is the portion of the design shown in solid lines. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design. It is this claimed design in the figures that is to be compared to the accused products. |

| U.S. Patent D516,819 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | height than the peripheral bristle tufts; two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and the proximal bristle tufts being shorter in height than the peripheral bristle tufts. *Figs. 1-5* | |

**Claim Chart for U.S. Patent D514,812**

| U.S. Patent D514,812 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a front handle segment having a width that gradually increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer in the vertical direction; a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle; and a narrow ring of uniform width formed around the finger grip between the grip material and the finger grip. *Figs. 1-5* | The claim is for a design for a center handle portion of a toothbrush as shown in the figures. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The remainder of the toothbrush which is shown in broken lines forms no part of the claimed design. It is this claimed design that is to be compared to the accused products. |

**Claim Chart for U.S. Patent D516,818**

| U.S. Patent D516,818 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a handle having a front handle segment with a width that gradually increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer in the vertical direction; a rear handle segment that is generally round in cross-section; and a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle. *Figs. 1-5* | The claim is for a design for a handle portion of a toothbrush as shown in the figures. The claimed design includes the handle shown in solid lines and depicted with line shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the back of the handle and the unshaded areas within form no part of the claimed design. It is this claimed design that is to be compared to the accused products. |

**Claim Chart for U.S. Patent D517,812**

| U.S. Patent D517,812 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a head supporting a set of bristles; a neck that is narrower than the head; a front handle segment having a width that increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer | The claim is for the overall design of a toothbrush as shown in the figures. No portions have been disclaimed. It is the design in the figures that is to be compared to the accused products. |

| U.S. Patent D517,812 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | in the vertical direction;<br>a rear handle segment that is generally round in cross-section;<br>a rear handle segment that is straight;<br>a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle;<br>transverse slots that are parallel;<br>transverse that slots are narrow, and extend across approximately the entire width of the handle;<br>a thumb grip having a football shaped periphery;<br>a finger grip having a football shaped periphery;<br>nubs on the thumb grip that are arranged in three rings, each ring having approximately the same football shape as the thumb grip periphery;<br>nubs on the finger grip that are arranged in an outer ring and an inner ring having approximately the same football shape as the finger grip periphery, and a line extending in a longitudinal direction within the inner ring;<br>a narrow ring of uniform width formed around the finger grip between the grip material and the finger grip;<br>a tongue cleanser overlying | |

| U.S. Patent D517,812 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | approximately the entire lower surface of the head;<br>a portion of the tongue cleanser extending over a portion of the lower surface of the neck;<br>nubs covering approximately the entire surface of the tongue cleanser;<br>the tips of the nubs extending outwardly at a uniform distance from the lower surface of the head;<br>the nubs arranged in rows extending in a longitudinal direction;<br>the nubs approximately evenly spaced on the tongue cleanser;<br>three white circles evenly spaced along the longitudinal axis of the toothbrush within the tongue cleanser;<br>the loop configurations approximately evenly spaced on the head;<br>the loop configurations each having the same diameter;<br>an outer bristle ring comprised of two arc-shaped bristle tufts on opposite sides of the middle loop configuration, the bristles of the outer ring are taller than the loop configurations;<br>the central bristle tufts being no taller than the loop configurations;<br>three peripheral tufts spaced apart in a line along each side of the distal loop configuration;<br>three peripheral tufts spaced apart in a | |

| U.S. Patent D517,812 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | line on each side of the proximal loop configuration; | |
| | each peripheral bristle tuft having a generally uniform diameter from the head to the tip; | |
| | two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length; | |
| | the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips; | |
| | the distal bristle tufts being shorter in height than the peripheral bristle tufts; | |
| | two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and | |
| | the proximal bristle tufts being shorter in height than the peripheral bristle tufts. *Figs. 1-7* | |

**Claim Chart for U.S. Patent D517,813**

| U.S. Patent D517,813 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a front handle segment with a width that gradually increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer | The claim is for a design for a handle portion of a toothbrush as shown in the figures. The claimed design includes the handle which is the portions of the handle that is shown in solid lines and depicted with line and stipple (i.e., formed by dots) shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle |

13

| U.S. Patent D517,813 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
|  | in the vertical direction; a rear handle segment that is generally round in cross-section; and a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle. *Figs. 1-5* | and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the bottom of the handle and the unshaded areas within form no part of the claimed design. The appearance of the area shaded with the line shading technique contrasts with the appearance of the area shaded with the stipple shading technique. It is this claimed design that is to be compared to the accused products. |

**Claim Chart for U.S. Patent D520,753**

| U.S. Patent D520,753 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a plurality of bristles, wherein some of the bristles form loop configurations that each have a circular shape formed from four arc-shaped elastomers, the loop configurations are approximately evenly spaced on the head; the loop configurations each having the same diameter; the bristles of the outer ring arranged in two opposing arc-shaped tufts; the central bristle tufts being no taller than the loop configurations; three peripheral tufts spaced apart in a line along each side of the distal loop configuration; three peripheral tufts spaced apart in a line on each side of the proximal loop | The claim is for a design for a set of bristles for a toothbrush as shown in the figures. These figures consist of FIGS. 4-6 in the patent as originally printed and FIGS. 1-3 in the Certificate of Correction. The claimed design includes the bristle design which is the portion shown in photographic imagery. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design. It is this claimed design in the figures that is to be compared to the accused products. |

| U.S. Patent D520,753 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | configuration; each peripheral bristle tuft having a generally uniform diameter from the head to the tip; two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length; the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips; the distal bristle tufts being shorter in height than the peripheral bristle tufts; two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and the proximal bristle tufts being shorter in height than the peripheral bristle tufts. *Figs. 1-6* | |

| | |
|---|---|
| */s/ Francis DiGiovanni* . | */s/ Steven J. Balick* . |
| Francis DiGiovanni (#3189) | Steven J. Balick (#2114) |
| fdigiovanni@cblh.com | sbalick@ashby-geddes.com |
| Connolly Bove Lodge & Hutz LLP | Ashby & Geddes |
| The Nemours Building | 500 Delaware Avenue, 8th Floor |
| 1007 N. Orange Street | P.O. Box 1150 |
| Wilmington, DE  19899 | Wilmington, Delaware 19899 |
| (302) 658-9141 | (302) 654-1888 |
| | |
| Robert F. Altherr, Jr. | James Moskal |
| Nina L. Medlock | Warner Norcross & Judd |
| Christopher B. Roth | 900 Fifth Third Center |
| Elizabeth A. Almeter | 111 Lyon Street, N.W. |
| Banner & Witcoff, Ltd. | Grand Rapids, MI 49503-2487 |
| 1100 13th Street, N.W., Suite 1200 | |
| Washington, D.C. 20005 | Attorneys for Defendant, |
| | Ranir, L.L.C. |
| Attorneys for Plaintiff, | |
| Colgate-Palmolive Company | |

# EXHIBIT
# 2

US00D513882S

(12) **United States Design Patent**    (10) Patent No.:     **US D513,882 S**

Hohlbein et al.    (45) Date of Patent:   ＊＊ *Jan. 31, 2006

(54) **TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,024**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ...................................................... **D4/104**
(58) **Field of Classification Search** ......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 56; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,132,326 A | * | 3/1915 | Fouyer ..................... 15/167.1 |
| 1,588,785 A | | 6/1926 | Van Sant |
| 2,161,349 A | | 6/1939 | Hadden |
| 2,188,005 A | | 1/1940 | Casto |
| 2,262,982 A | * | 11/1941 | Wolcott ..................... 15/167.1 |
| D272,683 S | | 2/1984 | Stocchi |
| D273,635 S | | 5/1984 | Stocchi |
| 4,461,285 A | | 7/1984 | Courtin |
| 4,610,043 A | | 9/1986 | Vezjak |

| | | | |
|---|---|---|---|
| 5,120,225 A | | 6/1992 | Amit |
| D334,474 S | * | 4/1993 | Sauceda ..................... D4/104 |
| 5,242,235 A | | 9/1993 | Li |
| D340,808 S | | 11/1993 | Sherman et al. |
| D345,256 S | | 3/1994 | Khin |
| 5,305,489 A | | 4/1994 | Lage |
| 5,396,678 A | | 3/1995 | Bredall et al. |
| 5,398,369 A | | 3/1995 | Heinzelman et al. |
| D371,680 S | | 7/1996 | Juhlin et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | 2000000118 A | * | 1/2000 |
| JP | 2002191436 A | * | 7/2002 |
| WO | WO 200117433 A1 | * | 3/2001 |
| WO | WO 2004/026162 A2 | | 4/2004 |
| WO | WO 2004/028235 A2 | | 4/2004 |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a toothbrush, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective front view of a toothbrush showing our new design;
FIG. **2** is a head end view thereof;
FIG. **3** is a handle end view thereof;
FIG. **4** is a right side view thereof;
FIG. **5** is a left side view thereof;
FIG. **6** is a bottom view thereof; and,
FIG. **7** is a top view thereof.
The broken line showing of the two generally-oval shaped regions on the handle including the unshaded areas therein, and the enclosed region and features on the back of the toothbrush head, is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



## US D513,882 S
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,628,082 | A | 5/1997 | Moskovich |
| D386,905 | S | 12/1997 | Brady et al. |
| D391,769 | S | 3/1998 | Kling et al. |
| 5,735,011 | A | 4/1998 | Asher |
| 5,735,012 | A | 4/1998 | Heinzelman et al. |
| 5,735,864 | A | 4/1998 | Heisinger, Jr. |
| D412,064 | S | 7/1999 | Achepohl et al. |
| D413,728 | S | 9/1999 | Waguespack et al. |
| D416,685 | S | 11/1999 | Overthun |
| D418,979 | S | 1/2000 | Moskovich et al. |
| D418,981 | S | 1/2000 | Cheong et al. |
| D419,304 | S | 1/2000 | Moskovich et al. |
| D419,773 | S | 2/2000 | Beals et al. |
| D420,802 | S | 2/2000 | Cheong et al. |
| D420,804 | S | 2/2000 | Juhlin et al. |
| D421,841 | S | 3/2000 | Achepohl et al. |
| D427,437 | S | 7/2000 | Vonarburg |
| 6,108,869 | A | 8/2000 | Meessmann et al. |
| D437,486 | S | * 2/2001 | Francos ...................... D4/104 |
| D438,012 | S | * 2/2001 | Cheong et al. .............. D4/104 |
| D439,412 | S | 3/2001 | Volpenhein et al. |
| D440,767 | S | 4/2001 | Moskovich et al. |
| D448,174 | S | 9/2001 | Harris et al. |
| 6,298,516 | B1 | 10/2001 | Beals et al. |
| D450,457 | S | 11/2001 | Hohlbein |
| 6,311,358 | B1 | 11/2001 | Soetewey et al. |
| D452,615 | S | 1/2002 | Cheong et al. |
| D453,270 | S | 2/2002 | Choong |
| D453,998 | S | 3/2002 | Ping |
| D454,252 | S | 3/2002 | Lee |
| D456,139 | S | 4/2002 | Hohlbein |
| 6,374,448 | B2 | 4/2002 | Seifert |
| D456,607 | S | 5/2002 | Carlucci et al. |
| D457,323 | S | 5/2002 | Hohlbein |
| D457,325 | S | 5/2002 | Wilson et al. |
| D458,453 | S | 6/2002 | Baertschi |
| D459,086 | S | 6/2002 | Belton et al. |
| D461,313 | S | 8/2002 | Hohlbein |
| D462,178 | S | 9/2002 | Moskovich et al. |
| D462,528 | S | 9/2002 | Crossman et al. |
| D463,132 | S | 9/2002 | Winter et al. |
| D463,133 | S | 9/2002 | Hohlbein |
| 6,446,295 | B1 | 9/2002 | Calabrese |
| D463,668 | S | 10/2002 | Yoshimoto et al. |
| D466,302 | S | 12/2002 | Ping |
| D471,362 | S | 3/2003 | Moskovich et al. |
| D474,608 | S | 5/2003 | Hohlbein |
| D475,531 | S | 6/2003 | Klimeck et al. |
| D476,158 | S | 6/2003 | Ling |
| D478,213 | S | 8/2003 | Ping |
| D478,424 | S | 8/2003 | Saindon et al. |
| D478,425 | S | 8/2003 | Ping |
| D478,727 | S | 8/2003 | Wong |
| D479,046 | S | 9/2003 | Winkler |
| D479,047 | S | 9/2003 | Wong |
| D479,914 | S | 9/2003 | Choong |
| D480,213 | S | 10/2003 | Ping |
| D483,183 | S | 12/2003 | De Salvo |
| 6,654,979 | B2 | 12/2003 | Calabrese |
| D486,649 | S | 2/2004 | Sprosta et al. |
| 6,687,940 | B1 | 2/2004 | Gross et al. |
| D487,195 | S | 3/2004 | Winkler |
| 6,735,804 | B2 | 5/2004 | Carlucci et al. |
| 2001/0023516 | A1 | 9/2001 | Driesen et al. |
| 2002/0004964 | A1 | 1/2002 | Luchino et al. |
| 2002/0100134 | A1 | 8/2002 | Dunn et al. |
| 2002/0138926 | A1 | 10/2002 | Brown, Jr. et al. |
| 2002/0138931 | A1 | 10/2002 | Davies |

* cited by examiner



FIG. 1



# FIG. 2



# FIG. 3



FIG. 4                    FIG. 5





FIG. 6              FIG. 7

# EXHIBIT
# 3

US00D514812S

(12) **United States Design Patent**     (10) Patent No.:     **US D514,812 S**

Hohlbein et al.                                 (45) Date of Patent:     ** **Feb. 14, 2006**

(54) **HANDLE PORTION OF A TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/211,027**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**

(52) **U.S. Cl.** .................................................... **D4/104**

(58) **Field of Classification Search** .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/6; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D334,474 S | * | 4/1993 | Sauceda ...................... D4/104 |
| 5,398,369 A | | 3/1995 | Heinzelman et al. |
| D371,680 S | | 7/1996 | Juhlin et al. |
| 5,735,012 A | | 4/1998 | Heinzelman et al. |
| D416,685 S | | 11/1999 | Overthun |
| D418,981 S | | 1/2000 | Cheong et al. |
| D420,802 S | | 2/2000 | Cheong et al. |
| D420,804 S | | 2/2000 | Juhlin et al. |
| D421,841 S | | 3/2000 | Achepohl et al. |
| D427,437 S | | 7/2000 | Vonarburg |
| D437,486 S | * | 2/2001 | Francos ...................... D4/104 |
| D439,412 S | | 3/2001 | Volpenhein et al. |
| D448,174 S | | 9/2001 | Harris et al. |
| 6,298,516 B1 | | 10/2001 | Beals et al. |
| D450,457 S | | 11/2001 | Hohlbein |
| D452,615 S | | 1/2002 | Cheong et al. |

| | | |
|---|---|---|
| D453,270 S | 2/2002 | Choong |
| D454,252 S | 3/2002 | Lee |
| D457,323 S | 5/2002 | Hohlbein |
| D458,453 S | 6/2002 | Baertschi |
| D461,313 S | 8/2002 | Hohlbein |
| D462,178 S | 9/2002 | Moskovich et al. |
| D462,528 S | 9/2002 | Crossman et al. |
| D463,132 S | 9/2002 | Winter et al. |
| D463,668 S | 10/2002 | Yoshimoto et al. |
| D466,302 S | 12/2002 | Ping |
| D471,362 S | 3/2003 | Moskovich et al. |
| D474,608 S | 5/2003 | Hohlbein |
| D475,531 S | 6/2003 | Klimeck et al. |
| D478,727 S | 8/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| 2002/0100134 A1 | 8/2002 | Dunn et al. |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| WO | WO 200117433 A1 | * | 3/2001 |
| WO | WO 2004/026162 A2 | | 4/2004 |
| WO | WO 2004/028235 A2 | | 4/2004 |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57)                    **CLAIM**

The ornamental design for a handle portion of a toothbrush, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective front view of a handle portion of a toothbrush showing our new design;
FIG. **2** is a right side view thereof;
FIG. **3** is a left side view thereof;
FIG. **4** is a bottom view thereof; and,
FIG. **5** is a top view thereof.
The broken line showing of the two generally-oval shaped regions within the claim boundaries, including the unshaded areas therein, and the remainder of the toothbrush is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**





FIG. 1



FIG. 2          FIG. 3



FIG. 4          FIG. 5

# EXHIBIT
# 4

US00D516818S

(12) **United States Design Patent** (10) Patent No.:     **US D516,818 S**

Hohibein et al.                         (45) Date of Patent:     ** *Mar. 14, 2006

(54) **HANDLE PORTION OF A TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohibein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,025**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ...................................................... **D4/104**
(58) **Field of Classification Search** ......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/DIG. 6; 16/430, 431; 132/308, 309, 311; 601/139, 141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,610,043 | A | 9/1986 | Vezjak |
| D334,474 | S * | 4/1993 | Sauceda ...................... D4/104 |
| D386,905 | S | 12/1997 | Brady et al. |
| D391,769 | S | 3/1998 | Kling et al. |
| D413,728 | S | 9/1999 | Waguespack et al. |
| D418,979 | S | 1/2000 | Moskovich et al. |
| D418,981 | S | 1/2000 | Cheong et al. |
| D419,304 | S | 1/2000 | Moskovich et al. |
| D419,773 | S | 2/2000 | Beals et al. |
| D422,413 | S * | 4/2000 | Goldinger et al. ........... D4/104 |
| D427,437 | S | 7/2000 | Vonarburg |
| 6,108,869 | A | 8/2000 | Meessmann et al. |
| D437,486 | S * | 2/2001 | Francos ...................... D4/104 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 200117433 A1 * | 3/2001 |
| WO | WO 2004/026162 A2 | 4/2004 |
| WO | WO 2004/028235 A2 | 4/2004 |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a handle portion of a toothbrush, as shown and described.

**DESCRIPTION**

**FIG. 1** is a perspective front view of a handle portion of a toothbrush showing our new design;
FIG. **2** is a right side view thereof;
FIG. **3** is a left side view thereof;
FIG. **4** is a bottom view thereof; and,
FIG. **5** is a top view thereof.
The broken line showing of the toothbrush head and of various regions, including the unshaded areas therein, are for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**



**US D516,818 S**

Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D439,412 S | 3/2001 | Volpenhein et al. |
| 6,298,516 B1 | 10/2001 | Beals et al. |
| D452,615 S | 1/2002 | Cheong et al. |
| D453,998 S | 3/2002 | Ping |
| D456,139 S | 4/2002 | Hohlbein |
| D457,325 S | 5/2002 | Wilson et al. |
| D459,086 S | 6/2002 | Belton et al. |
| D462,178 S | 9/2002 | Moskovich et al. |
| D463,133 S | 9/2002 | Hohlbein |
| D471,362 S | 3/2003 | Moskovich et al. |
| D475,531 S | 6/2003 | Klimeck et al. |
| D476,158 S | 6/2003 | Ling |
| D478,213 S | 8/2003 | Ping |
| D478,424 S | 8/2003 | Saindon et al. |
| D478,425 S | 8/2003 | Ping |
| D479,047 S | 9/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| D486,649 S | 2/2004 | Sprosta et al. |
| 6,687,940 B1 | 2/2004 | Gross et al. |
| D487,195 S | 3/2004 | Winkler |
| 2002/0138931 A1 | 10/2002 | Davies |

* cited by examiner



FIG. 1



FIG. 2          FIG. 3

**U.S. Patent**          Mar. 14, 2006          Sheet 3 of 3          US D516,818 S



FIG. 4                    FIG. 5

# EXHIBIT
# 5

US00D516819S

(12) **United States Design Patent** (10) Patent No.: **US D516,819 S**

Hohlbein (45) Date of Patent: ✲✲ *Mar. 14, 2006

(54) **SET OF BRISTLES FOR A TOOTHBRUSH**

(75) Inventor: **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,028**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ...................................................... **D4/104**
(58) **Field of Classification Search** .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/DIG. 6; 16/430, 431; 132/308, 309, 311; 601/139, 141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,132,326 | A | * | 3/1915 | Fouyer ...................... 15/167.1 |
| 1,588,785 | A | | 6/1926 | Van Sant |
| 2,161,349 | A | | 6/1939 | Hadden |
| 2,186,005 | A | | 1/1940 | Casto |
| 2,262,982 | A | * | 11/1941 | Wolcott ..................... 15/167.1 |
| D272,683 | S | | 2/1984 | Stocchi |
| D273,635 | S | | 5/1984 | Stocchi |
| 5,120,225 | A | | 6/1992 | Amit |
| 5,396,678 | A | | 3/1995 | Bredall et al. |
| D378,166 | S | | 2/1997 | Savitt et al. |
| 5,628,082 | A | | 5/1997 | Moskovich |

| | | | | |
|---|---|---|---|---|
| D434,906 | S | * | 12/2000 | Beals et al. ................... D4/104 |
| D440,767 | S | | 4/2001 | Moskovich et al. |
| 6,311,358 | B1 | | 11/2001 | Soetewey et al. |
| D451,286 | S | * | 12/2001 | Hohlbein ...................... D4/104 |
| 6,374,448 | B1 | | 4/2002 | Seifert |
| D456,607 | S | | 5/2002 | Carlucci et al. |
| 6,446,295 | B1 | | 9/2002 | Calabrese |
| D479,046 | S | | 9/2003 | Winkler |
| D483,183 | S | | 12/2003 | De Salvo |
| 6,654,979 | B1 | | 12/2003 | Calabrese |
| 6,735,804 | B1 | | 5/2004 | Carlucci et al. |
| 2001/0023516 | A1 | | 9/2001 | Driesen et al. |
| 2002/0004964 | A1 | | 1/2002 | Luchino et al. |
| 2002/0108194 | A1 | | 8/2002 | Carlucci et al. |
| 2002/0138926 | A1 | | 10/2002 | Brown, Jr. et al. |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| JP | 2000000118 | A | * 1/2000 |
| JP | 2002191436 | A | * 7/2002 |
| WO | WO 2004/026162 | A2 | 4/2004 |
| WO | WO 2004/028235 | A2 | 4/2004 |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a set of bristles for a toothbrush, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective front view of a set of bristles for a toothbrush showing my new design;
FIG. **2** is a right side view thereof;
FIG. **3** is a left side iew thereof;
FIG. **4** is a top view thereof; and,
FIG. **5** is a head end view thereof.
The broken line showing of the remainder of the toothbrush for illustratve pusposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**





FIG. 1



FIG. 2          FIG. 3



FIG. 4



FIG. 5

# EXHIBIT
# 6

US00D517812S

(12) **United States Design Patent** (10) Patent No.: **US D517,812 S**

Hohlbein et al. (45) Date of Patent: ** **Mar. 28, 2006**

(54) **TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/189,729**

(22) Filed: **Sep. 10, 2003**

(51) **LOC (8) Cl.** ...................................... **04-02**

(52) **U.S. Cl.** ............................................ **D4/104**

(58) **Field of Classification Search** .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5–DIG. 6; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,132,326 A | * | 3/1915 | Fouyer ...................... 15/167.1 |
| 1,588,785 A | | 6/1926 | Van Sant |
| 2,161,349 A | | 6/1939 | Hadden |
| 2,186,005 A | | 1/1940 | Casto |
| 2,262,982 A | * | 11/1941 | Wolcott .................... 15/167.1 |
| D272,683 S | | 2/1984 | Stocchi |
| D273,635 S | | 5/1984 | Stocchi |
| 4,461,285 A | | 7/1984 | Courtin |
| 4,610,043 A | | 9/1986 | Vezjak |
| 5,120,225 A | | 6/1992 | Amit |
| 5,242,235 A | | 9/1993 | Li |
| D340,808 S | | 11/1993 | Sherman et al. |
| D345,256 S | | 3/1994 | Khin |
| 5,305,489 A | | 4/1994 | Lage |
| 5,396,678 A | | 3/1995 | Bredall et al. |
| 5,398,369 A | | 3/1995 | Heinzelman et al. |
| D371,680 S | | 7/1996 | Juhlin et al. |
| 5,628,082 A | | 5/1997 | Moskovich |
| D386,905 S | | 12/1997 | Brady et al. |
| D391,769 S | | 3/1998 | Kling et al. |

| | | | |
|---|---|---|---|
| 5,735,011 A | | 4/1998 | Asher |
| 5,735,012 A | | 4/1998 | Heinzelman et al. |
| 5,735,864 A | | 4/1998 | Heisinger, Jr. |
| D412,064 S | | 7/1999 | Achepohl et al. |
| D413,728 S | | 9/1999 | Waguespack et al. |
| D416,685 S | | 11/1999 | Overthun |
| D418,979 S | | 1/2000 | Moskovich et al. |
| D418,981 S | | 1/2000 | Cheong et al. |
| D419,304 S | | 1/2000 | Moskovich et al. |
| D419,773 S | | 2/2000 | Beals et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | 2000000118 A | * | 1/2000 | |
| JP | 2001314232 A | * | 11/2001 | |
| JP | 2002191436 A | * | 7/2002 | |
| WO | WO 9825500 A1 | * | 6/1998 | |
| WO | WO 200117433 A1 | * | 3/2001 | |
| WO | WO 2004/026162 A2 | | 4/2004 | |
| WO | WO 2004/028235 A2 | | 4/2004 | |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a toothbrush, as shown and described.

**DESCRIPTION**

FIG. **1** is a right side front perspective view of a toothbrush of our new design, the left side front perspective view being a mirror image;

FIG. **2** is a right side back perspective view thereof, the left side back perspective view being a mirror image;

FIG. **3** is a back elevation view thereof;

FIG. **4** is a left side elevation view thereof, the right side elevation view being a mirror image;

FIG. **5** is a front elevation view thereof;

FIG. **6** is a bottom plan view thereof; and,

FIG. **7** is a top plan view thereof.

FIGS. **6** and **7** are partial views with the portions not shown being omitted for clarity of the disclosure.

**1 Claim, 3 Drawing Sheets**



**US D517,812 S**

Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D420,802 | S | 2/2000 | Cheong et al. |
| D420,804 | S | 2/2000 | Juhlin et al. |
| D421,841 | S | 3/2000 | Achepohl et al. |
| D427,437 | S | 7/2000 | Vonarburg |
| 6,108,869 | A | 8/2000 | Meessmann et al. |
| D437,486 | S * | 2/2001 | Francos ..................... D4/104 |
| D439,412 | S | 3/2001 | Volpenhein et al. |
| D440,767 | S | 4/2001 | Moskovich et al. |
| D448,174 | S | 9/2001 | Harris et al. |
| 6,298,516 | B1 | 10/2001 | Beals et al. |
| D450,457 | S | 11/2001 | Hohlbein |
| 6,311,358 | B1 | 11/2001 | Soetewey et al. |
| D452,615 | S | 1/2002 | Cheong et al. |
| D453,270 | S | 2/2002 | Choong |
| D453,998 | S | 3/2002 | Ping |
| D454,252 | S | 3/2002 | Lee |
| D456,139 | S | 4/2002 | Hohlbein |
| 6,374,448 | B1 | 4/2002 | Seifert |
| D456,607 | S | 5/2002 | Carlucci et al. |
| D457,323 | S | 5/2002 | Hohlbein |
| D457,325 | S | 5/2002 | Wilson et al. |
| D458,453 | S | 6/2002 | Baertschi |
| D459,086 | S | 6/2002 | Belton et al. |
| D461,313 | S | 8/2002 | Hohlbein |
| D462,178 | S | 9/2002 | Moskovich et al. |
| D462,528 | S | 9/2002 | Crossman et al. |
| D463,132 | S | 9/2002 | Winter et al. |

| | | | |
|---|---|---|---|
| D463,133 | S | 9/2002 | Hohlbein |
| 6,446,295 | B1 | 9/2002 | Calabrese |
| D463,668 | S | 10/2002 | Yoshimoto et al. |
| D466,302 | S | 12/2002 | Ping |
| D471,362 | S | 3/2003 | Moskovich et al. |
| D474,608 | S | 5/2003 | Hohlbein |
| D475,531 | S | 6/2003 | Klimeck et al. |
| D476,158 | S | 6/2003 | Ling |
| D478,213 | S | 8/2003 | Ping |
| D478,424 | S | 8/2003 | Saindon et al. |
| D478,425 | S | 8/2003 | Ping |
| D478,727 | S | 8/2003 | Wong |
| D479,046 | S | 9/2003 | Winkler |
| D479,047 | S | 9/2003 | Wong |
| D479,914 | S | 9/2003 | Choong |
| D480,213 | S | 10/2003 | Ping |
| D483,183 | S | 12/2003 | De Salvo |
| 6,654,979 | B1 | 12/2003 | Calabrese |
| D486,649 | S | 2/2004 | Sprosta et al. |
| 6,687,940 | B1 | 2/2004 | Gross et al. |
| D487,195 | S | 3/2004 | Winkler |
| 6,735,804 | B1 | 5/2004 | Carlucci et al. |
| 2001/0023516 | A1 | 9/2001 | Driesen et al. |
| 2002/0004964 | A1 | 1/2002 | Luchino et al. |
| 2002/0100134 | A1 | 8/2002 | Dunn et al. |
| 2002/0138926 | A1 | 10/2002 | Brown, Jr. et al. |
| 2002/0138931 | A1 | 10/2002 | Davies |

* cited by examiner

**U.S. Patent**     **Mar. 28, 2006**     **Sheet 1 of 3**     **US D517,812 S**



**FIG. 1**          **FIG. 2**



FIG. 3          FIG. 4          FIG. 5

**U.S. Patent**    Mar. 28, 2006    Sheet 3 of 3    **US D517,812 S**



**FIG. 6**



**FIG. 7**

# EXHIBIT
# 7

(12) **United States Design Patent** (10) Patent No.: **US D517,813 S**
Hohlbein et al. (45) Date of Patent: ** *Mar. 28, 2006

(54) **HANDLE PORTION OF A TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ
(US); **Luca Casini**, Milan (IT); **Jacob
Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New
York, NY (US)

( * ) Notice: This patent is subject to a terminal dis-
claimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,026**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep.
10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ....................................................... **D4/104**
(58) **Field of Classification Search** ......... D4/104–112,
D4/132, 134, 138; D24/146, 147; 15/105,
15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5,
15/6; 16/430, 431; 132/308, 309, 311; 601/139,
601/141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D334,474 S | * | 4/1993 | Sauceda ...................... D4/104 |
| D358,938 S | | 6/1995 | Schneider et al. |
| D391,769 S | | 3/1998 | Kling et al. |
| 5,781,958 A | | 7/1998 | Meessmann et al. |
| D416,685 S | | 11/1999 | Overthun |
| D418,981 S | | 1/2000 | Cheong et al. |
| D419,773 S | | 2/2000 | Beals et al. |
| D422,413 S | | 4/2000 | Goldinger et al. |
| D427,437 S | | 7/2000 | Vonarburg |
| D429,566 S | | 8/2000 | Yoshimoto et al. |
| D429,567 S | | 8/2000 | Yoshimoto et al. |
| 6,108,869 A | | 8/2000 | Meessmann et al. |

| | | | |
|---|---|---|---|
| D437,486 S | * | 2/2001 | Francos ...................... D4/104 |
| D439,412 S | | 3/2001 | Volpenhein et al. |
| 6,298,516 B1 | | 10/2001 | Beals et al. |
| D452,615 S | | 1/2002 | Cheong et al. |
| D457,325 S | | 5/2002 | Wilson et al. |
| D459,086 S | | 6/2002 | Belton et al. |
| D462,178 S | | 9/2002 | Moskovich et al. |
| D463,131 S | | 9/2002 | Winter et al. |
| D463,132 S | | 9/2002 | Winter et al. |
| D463,133 S | | 9/2002 | Hohlbein |
| D463,668 S | | 10/2002 | Yoshimoto |
| D471,362 S | | 3/2003 | Moskovich et al. |
| D475,531 S | | 6/2003 | Klimeck et al. |
| D478,211 S | | 8/2003 | Ping |
| D480,213 S | | 10/2003 | Ping |

FOREIGN PATENT DOCUMENTS

| WO | WO 200117433 A1 | * | 3/2001 |
|---|---|---|---|
| WO | 2004/026162 A2 | | 4/2004 |
| WO | 2004/028235 A2 | | 4/2004 |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a handle portion of a toothbrush,
as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective front view of a handle portion of a
toothbrush showing our new design;
FIG. **2** is a right side view thereof;
FIG. **3** is a left side view thereof;
FIG. **4** is a bottom view thereof; and,
FIG. **5** is a top view thereof.
The broken line showing of the toothbrush head and of
various regions and the unshaded areas therein are for
illustrative purposes only and forms no part of the claimed
design. The different shading techniques used represent a
contrast in appearance and do not represent any particular
color, material or texture.

**1 Claim, 3 Drawing Sheets**





FIG. 1



FIG. 2          FIG. 3



FIG. 4          FIG. 5

# EXHIBIT
# 8

US00D520753S

(12) **United States Design Patent**       (10) **Patent No.:**     **US D520,753 S**

Hohlbein                                    (45) **Date of Patent:** ＊＊ *May 16, 2006

(54) **SET OF BRISTLES FOR A TOOTHBRUSH**

(75) Inventor:   **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee:   **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice:    This patent is subject to a terminal disclaimer.

(**) Term:       **14 Years**

(21) Appl. No.: **29/211,030**

(22) Filed:      **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ...................................................... **D4/104**
(58) **Field of Classification Search** .......... D4/104–112,
              D4/132, 134, 138; D24/146, 147; 15/105,
              15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5,
              15/6; 16/430, 431; 132/308, 309, 311; 601/139,
              601/141; 606/160, 161, 235
     See application file for complete search history.

(56)              **References Cited**

              U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,132,326 | A | * | 3/1915 | Fouyer ...................... 15/167.1 |
| 1,588,785 | A | | 6/1926 | Van Sant |
| 2,161,349 | A | | 6/1939 | Hadden |
| 2,186,005 | A | | 1/1940 | Casto |
| 2,262,982 | A | * | 11/1941 | Wolcott ...................... 15/167.1 |
| D272,683 | S | | 2/1984 | Stocchi |
| D273,635 | S | | 5/1984 | Stocchi |
| 5,120,225 | A | | 6/1992 | Amit |
| 5,396,678 | A | | 3/1995 | Bredall et al. |
| D360,981 | S | * | 8/1995 | Moskovich et al. ......... D4/104 |
| D378,166 | S | | 2/1997 | Savitt et al. |
| 5,628,082 | A | | 5/1997 | Moskovich |

| | | | | |
|---|---|---|---|---|
| D434,906 | S | * | 12/2000 | Beals et al. .................. D4/104 |
| D440,767 | S | | 4/2001 | Moskovich et al. |
| 6,311,358 | B1 | | 11/2001 | Soetewey et al. |
| D451,286 | S | * | 12/2001 | Hohlbein ..................... D4/104 |
| 6,374,448 | B1 | | 4/2002 | Seifert |
| D456,607 | S | | 5/2002 | Carlucci et al. |
| 6,446,295 | B1 | | 9/2002 | Calabrese |
| D479,046 | S | | 9/2003 | Winkler |
| D483,183 | S | | 12/2003 | De Salvo |
| 6,654,979 | B1 | | 12/2003 | Calabrese |
| 6,735,804 | B1 | | 5/2004 | Carlucci et al. |
| 2001/0023516 | A1 | | 9/2001 | Driesen et al. |
| 2002/0004964 | A1 | | 1/2002 | Luchino et al. |
| 2002/0108194 | A1 | | 8/2002 | Carlucci et al. |
| 2002/0138926 | A1 | | 10/2002 | Brown, Jr. et al. |

              FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | | 2000000118 A | * | 1/2000 |
| JP | | 2002191436 A | * | 7/2002 |
| WO | WO 2004/026162 A2 | | | 4/2004 |
| WO | WO 2004/028235 A2 | | | 4/2004 |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57)               **CLAIM**

The ornamental design for a set of bristles of a toothbrush, as shown and described.

              **DESCRIPTION**

FIG. **1** is a perspective front view of a set of bristles for a toothbrush showing my new design;
FIG. **2** is a right side view thereof;
FIG. **3** is a left side view thereof;
FIG. **4** is a top view thereof; and
FIG. **5** is an enlarged perspective view thereof; and,
FIG. **6** is an enlarged top view thereof.
The broken line showing of the remainder of the toothbrush for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 4 Drawing Sheets**







FIG. 3          FIG. 4





FIG. 1          FIG. 2



FIG. 5



FIG. 6



FIG. 7



FIG. 4



FIG. 5



FIG. 6

# EXHIBIT
# 9

US007047591B2

US 7,047,591 B2

(12) **United States Patent**      (10) **Patent No.:**      **US 7,047,591 B2**

Hohlbein                          (45) **Date of Patent:**      **May 23, 2006**

(54) **ORAL CARE IMPLEMENT**

(75) Inventor: **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/902,257**

(22) Filed: **Jul. 30, 2004**

(65) **Prior Publication Data**

US 2005/0044647 A1      Mar. 3, 2005

**Related U.S. Application Data**

(63) Continuation-in-part of application No. PCT/US03/29497, filed on Sep. 17, 2003, and a continuation-in-part of application No. 29/189,729, filed on Sep. 10, 2003.

(60) Provisional application No. 60/412,290, filed on Sep. 20, 2002.

(51) **Int. Cl.**
*A46B 5/02* (2006.01)

(52) **U.S. Cl.** ...................... **15/143.1**; 15/167.1; 16/430; 16/436; 16/DIG. 19

(58) **Field of Classification Search** ............... 15/143.1, 15/167.1; 16/431, 436, DIG. 19, 16/430; 132/321, 323; 433/141; 601/141; 606/161

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,796,001 A | 3/1931 | Church | |
| 2,263,885 A | 11/1941 | McGauley | |
| 3,185,582 A | 5/1965 | Viator | |

| | | | | |
|---|---|---|---|---|
| 3,848,871 A | * | 11/1974 | Sweet et al. | ................ 473/549 |
| 4,712,304 A | * | 12/1987 | Sanelli | ........................ 30/343 |
| 4,721,021 A | | 1/1988 | Kusznir | |
| D317,986 S | | 7/1991 | Huang | |
| 5,052,071 A | * | 10/1991 | Halm | ........................ 15/167.1 |
| 5,054,154 A | | 10/1991 | Schiffer et al. | |
| D334,288 S | | 3/1993 | Witzig-Jaggi | |
| 5,339,482 A | | 8/1994 | Desimone et al. | |
| 5,398,369 A | | 3/1995 | Heinzelman et al. | |
| D358,938 S | | 6/1995 | Schneider et al. | |
| D368,163 S | | 3/1996 | Overthun | |
| D371,680 S | | 7/1996 | Juhlin et al. | |
| D376,695 S | | 12/1996 | Tveras | |
| 5,673,454 A | | 10/1997 | Quintanilla et al. | |
| 5,735,012 A | | 4/1998 | Heinzelman et al. | |
| 5,781,958 A | | 7/1998 | Meessmann et al. | |
| 5,860,183 A | | 1/1999 | Kam | |
| 5,875,510 A | | 3/1999 | Lamond et al. | |
| 5,908,038 A | | 6/1999 | Bennett | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 00/64306 | 11/2000 |

(Continued)

*Primary Examiner*—Mark Spisich

(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **ABSTRACT**

An oral care implement has an improved handle for control. The handle may include a gripping region having a grip surface with a plurality of spaced slot openings exposing portions of the base. In one construction, the handle may have an inclined portion and a grip body extending through a base of the handle. The grip body forms opposite finger grips on the inclined portion of the handle. In one construction, the handle may include a grip element which provides shifting of a mass centroid of the handle during use. In another construction, the handle includes a resilient grip body and the handle includes an aperture extend through the handle. Aperture has an inclined surface for engaging a resilient grip body.

**34 Claims, 6 Drawing Sheets**



**US 7,047,591 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D412,064 S | 7/1999 | Achepohl et al. | |
| 5,926,901 A | 7/1999 | Tseng et al. | |
| D413,728 S | 9/1999 | Waguespack et al. | |
| D415,352 S | 10/1999 | Beals et al. | |
| 5,964,009 A * | 10/1999 | Hoepfl et al. | 16/430 |
| D416,685 S | 11/1999 | Overthun | |
| D418,979 S | 1/2000 | Moskovich et al. | |
| D419,304 S | 1/2000 | Moskovich et al. | |
| D419,773 S | 2/2000 | Beals et al. | |
| D420,802 S | 2/2000 | Cheong et al. | |
| D420,804 S | 2/2000 | Juhlin et al. | |
| D421,184 S | 2/2000 | Koh et al. | |
| D421,841 S | 3/2000 | Achepohl et al. | |
| 6,049,936 A | 4/2000 | Holley | |
| 6,070,286 A * | 6/2000 | Cardarelli | 15/167.1 |
| 6,076,223 A * | 6/2000 | Dair et al. | 15/167.1 |
| D429,566 S | 8/2000 | Yoshimoto et al. | |
| D429,567 S | 8/2000 | Yoshimoto et al. | |
| 6,108,849 A | 8/2000 | Weihrauch | |
| 6,108,869 A | 8/2000 | Meessmann et al. | |
| 6,128,808 A * | 10/2000 | Jansson et al. | 16/431 |
| D434,906 S | 12/2000 | Beals et al. | |
| 6,179,503 B1 | 1/2001 | Taghavi-Khanghah | |
| D439,412 S | 3/2001 | Volpenhein et al. | |
| D440,767 S | 4/2001 | Moskovich et al. | |
| D441,958 S | 5/2001 | Rueb | |
| 6,266,840 B1 * | 7/2001 | Munro | 15/167.1 |
| D446,021 S | 8/2001 | Jen | |
| D447,238 S | 8/2001 | Tang | |
| D448,174 S | 9/2001 | Harris et al. | |
| D448,570 S | 10/2001 | Harris et al. | |
| D448,571 S | 10/2001 | Harris et al. | |
| 6,298,516 B1 | 10/2001 | Beals et al. | |
| D450,457 S | 11/2001 | Hohlbein | |
| 6,322,362 B1 * | 11/2001 | Holms | 433/143 |
| 6,325,626 B1 * | 12/2001 | Blass | 433/141 |
| 6,332,233 B1 | 12/2001 | Proulx | |
| D452,615 S | 1/2002 | Cheong et al. | |
| D453,270 S | 2/2002 | Choong | |
| D453,998 S | 3/2002 | Ping | |
| D454,252 S | 3/2002 | Lee | |
| 6,353,958 B1 * | 3/2002 | Weihrauch | 15/167.1 |
| D456,139 S | 4/2002 | Hohlbein | |
| D457,323 S | 5/2002 | Hohlbein | |
| D457,325 S | 5/2002 | Wilson et al. | |
| D458,453 S | 6/2002 | Baertschi | |
| D459,086 S | 6/2002 | Belton et al. | |
| 6,408,476 B1 | 6/2002 | Cann | |
| 6,408,524 B1 * | 6/2002 | Lai | 30/324 |
| D461,313 S | 8/2002 | Hohlbein | |
| D462,178 S | 9/2002 | Moskovich et al. | |
| D462,527 S | 9/2002 | Ping | |
| D462,528 S | 9/2002 | Crossman et al. | |
| D463,131 S | 9/2002 | Winter et al. | |
| D463,132 S | 9/2002 | Winter et al. | |
| D463,133 S | 9/2002 | Hohlbein | |
| D463,668 S | 10/2002 | Yoshimoto et al. | |
| D466,302 S | 12/2002 | Ping | |
| D467,430 S | 12/2002 | Ping | |
| D469,958 S | 2/2003 | Saindon et al. | |
| D474,608 S | 5/2003 | Hohlbein | |
| D475,531 S | 6/2003 | Klimeck et al. | |
| D476,158 S | 6/2003 | Ling | |
| D476,487 S | 7/2003 | Saindon et al. | |
| D478,211 S | 8/2003 | Ping | |
| D478,213 S | 8/2003 | Ping | |
| D478,424 S | 8/2003 | Saindon et al. | |
| D478,425 S | 8/2003 | Ping | |
| D478,727 S | 8/2003 | Wong | |
| D478,728 S | 8/2003 | Wong | |
| 6,601,272 B1 | 8/2003 | Stvartak et al. | |
| D479,047 S | 9/2003 | Wong | |
| D479,914 S | 9/2003 | Choong | |
| D480,213 S | 10/2003 | Ping | |
| D480,214 S | 10/2003 | Kling et al. | |
| D480,877 S | 10/2003 | Crossman et al. | |
| D482,199 S | 11/2003 | De Salvo | |
| D483,569 S | 12/2003 | Wong | |
| D485,989 S | 2/2004 | Winkler | |
| D486,649 S | 2/2004 | Sprosta et al. | |
| 6,687,940 B1 | 2/2004 | Gross et al. | |
| D487,195 S | 3/2004 | Winkler | |
| D488,621 S | 4/2004 | Wong | |
| 2001/0047556 A1 | 12/2001 | Weihrauch | |
| 2002/0100134 A1 | 8/2002 | Dunn et al. | |
| 2002/0138931 A1 | 10/2002 | Davies | |
| 2002/0170145 A1 | 11/2002 | Stvartak et al. | |
| 2004/0010878 A1 | 1/2004 | Kraemer | |
| 2004/0025272 A1 | 2/2004 | Stvartak et al. | |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 2003-005855 A1 | 1/2003 |

* cited by examiner



FIG. 1



FIG. 2                    FIG. 3



FIG. 4



FIG. 5



FIG. 6

FIG. 7



FIG. 8



FIG. 9

US 7,047,591 B2

| 1 | 2 |

**ORAL CARE IMPLEMENT**

CROSS-REFERENCE TO RELATED
APPLICATIONS

This application is a continuation in part of co-pending
PCT Application No. PCT/US2003/029497 (designating the
U.S.), filed Sep. 17, 2003, entitled "Toothbrush With Grip-
ping Area", which claims priority of U.S. Provisional Appli-
cation Ser. No. 60/412,290, filed Sep. 20, 2002. This appli-
cation also is a continuation in part of co-pending U.S.
patent application Ser. No. 29/189,729, filed Sep. 10, 2003.
The contents of the above-noted applications are each
expressly incorporated herein by reference.

FIELD OF THE INVENTION

The present invention generally pertains to an oral care
implement, and in particular, to an implement with an
improved handle.

BACKGROUND OF THE INVENTION

Oral care implements, especially toothbrushes, are used
by many people on a daily basis. With such devices, a handle
is usually provided to be grasped and manipulated by the
user as needed. However, many handles are simply linear
rods of relatively rigid material which are neither comfort-
able nor given to easy manipulation. Further, use of an oral
care implement may commonly occur under wet conditions,
which can cause the handle to be slippery. Accordingly, there
is a need for an oral care implement that provides for
improved control and greater comfort for the user.

BRIEF SUMMARY OF THE INVENTION

The invention pertains to an oral care implement with an
improved handle that provides greater comfort and
improved control during use.

In one aspect of the invention, the handle includes a
gripping region formed by a grip member having a plurality
of spaced openings that expose portions of an underlying
base. In a preferred embodiment, the grip member is an
elastomer and the exposed base portions are recessed in the
slots. This construction provides a reliable, slip-resistant and
comfortable portion to be grasped.

In one other aspect of the invention, the handle has a
resilient grip body that extends through the handle to be
gripped by the user's finger and thumb. In a preferred
embodiment, the grip body is fit into a large opening in a
base where the mass of the grip body can be shifted by
pressure on either side for greater comfort and control, and
to dampen the pressure applied by the brush. Moreover, the
grip body also preferably includes a friction surface to resist
slippage.

In one other aspect of the invention, the handle includes
an inclined segment that offsets the head of the implement
relative to a palm gripping region for better control and
manipulation of the toothbrush or other implement. A grip
body is preferably positioned along the inclined segment to
further enhance the comfort and control felt by the user.

In another aspect of the invention, the handle includes a
large aperture into which a resilient grip body is stably fixed.
The aperture has a sidewall geometry shaped for securely
engaging the resilient grip body while facilitating an easy
molding process. In a preferred construction, the sidewall
geometry includes at least one inclined surface which
defines a narrowed portion of the aperture.

BRIEF DESCRIPTION OF THE DRAWINGS

A more complete understanding of the present invention
and the advantages thereof may be acquired by referring to
the following description in consideration of the accompa-
nying drawings, in which like reference numbers indicate
like features, and wherein:

FIG. **1** is a perspective front view of an oral care imple-
ment according to one or more aspects of an illustrative
embodiment;

FIG. **2** is a rear view of the oral care implement of FIG.
**1**;

FIG. **3** is a front view of the oral care implement of FIG.
**1**;

FIG. **4** is a side view of the oral care implement of FIG.
**1**;

FIG. **5** is a section view of the oral care implement taken
along line **5**—**5** in FIG. **3**;

FIG. **6** is a partial side view of a base of an oral care
implement of FIG. **1**;

FIG. **7** is a partial front view of the base of FIG. **6**;

FIG. **8** is a top axial view of the oral care implement of
FIG. **1**; and

FIG. **9** is a bottom axial view of the oral care implement
of FIG. **1**.

DETAILED DESCRIPTION OF THE
INVENTION

FIGS. **1**–**9** illustrate an oral care implement in the form of
a toothbrush **100** having an improved handle **103** and a head
**105** with bristles or other tooth engaging elements. While
reference is made to a toothbrush with an improved handle,
other oral care implements, such as inter-proximal picks,
flossing tools, plaque scrapers, tongue and soft tissue cleans-
ers/massagers and the like, may use the same handle. It is
also to be understood that other embodiments may be
utilized, and that structural and functional modifications
may be made without departing from the scope of the
present invention.

Handle **103** is provided for the user to reliably grip and
manipulate the toothbrush. Handle **103** includes ergonomic
features which provide a high degree of control for the user
while maintaining comfort. In a preferred construction
(FIGS. **1**–**9**), handle **103** includes a base **300**, a grip body
**403**, and a gripping member **407**. These components coop-
eratively form a grip portion **400** by which the user holds
and manipulates the toothbrush. For optimum comfort and
control, grip portion **400** includes three segments **111**, **113**,
**115**. A rear segment **115** forms a portion that generally fits
comfortably within the palm of the user. A front segment **111**
forms a portion that generally fits comfortably between the
user's thumb and index finger. A narrow transition segment
**113** connects the front and rear segments **111**, **115**.

In a preferred construction, front segment **111** is inclined
relative to rear segment **115** to define an inclined portion
positioned for comfortable gripping and to facilitate a
desired offset positioning of the head relative to the palm
gripping region **115**. The angle θ of the incline is preferably
23 degrees, but may range approximately between 5–40
degrees. This feature allows improved control of the handle
during brushing in which the head **105** can be more desirably
positioned within the mouth to engage the tooth cleaning
elements **200** against the teeth.

US 7,047,591 B2

3

In the preferred embodiment, front and rear segments 111, 115 are widened sections that are joined by a narrowed portion 113 to form an undulating structure which is more reliably and comfortably held within the user's hand. Further, this wide construction of the palm and finger gripping regions 111, 115 requires less fine motor control by the user and is, hence, easier to hold and manipulate. In addition, front segment 111 transitions into neck 116 which, in turn, supports head 105. In a preferred embodiment, base 300 includes a gripping region 301 that corresponds to grip portion 400, the neck 116, and the head 105 to define an oral engaging region.

Under a normal use position, grip portion 400 is grasped by a user with the fingers engaging the handle 103 so that the thumb is on one side and the index finger and other fingers are positioned on the opposite side. Front segment 111 of grip portion 400 includes grip body 403 having opposing sides 405, 404 preferably for engaging the thumb and index finger of a user. Grip portion 400 further includes a rear segment 115 which enables reliable gripping of the toothbrush 100 with the third through the fifth fingers of the user's hand in a normal use position. While a normal use position is discussed, the features of the toothbrush could be employed by a user having less fingers or a user which holds the toothbrush in other ways.

In one preferred construction, front section 111 includes a soft, resilient grip body 403 fixed within aperture 303 of base 300. As shown in FIGS. 8 and 9, front section 111 has the widest transverse dimension of any other part of handle 103. As shown in FIGS. 1 and 4, aperture 303 occupies more than one-half of the transverse dimension across front section 111 of handle 103. Nevertheless, other constructions are possible. As an example only, grip body 403 may occupy a smaller portion of the transverse dimension, such as one-third of the transverse dimension of front section 111. Nevertheless, the width and length of aperture 303 may be adjusted as desired and other parts of handle 103 may be as wide as or wider than front segment 111.

Referring to FIGS. 5–7, in one construction, aperture 303 extends through base 300 to mount grip body 403. Aperture 303 includes a sidewall geometry 305 for the retaining and dynamic positioning of the resilient grip body 403 during use of the toothbrush. While grip body 403 is preferably molded into aperture 303, it could be premolded and mounted into aperture 303. In a preferred construction, grip member 403 is a soft, resilient element formed of a thermoplastic elastomer (TPE) which fills the aperture 303. To provide optimum comfort as well as control benefits, the elastomeric material preferably has a hardness durometer measurement ranging between A11 to A15 Shore hardness. Nevertheless, the hardness of the elastomer could also range between A8 to A24 Shore hardness. Other materials outside this hardness range could also be used. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene (SEBS) manufactured by GLS Corporation. Nevertheless, other manufacturers can supply the SEBS material and other materials could be used.

Referring to FIGS. 1–5, resilient grip body 403 preferably has a generally bulbous shape that bulges out of aperture 303 and which resembles an oval or elliptical shape. The bulbous shape of the resilient grip body 403 enables the user to reliably roll and control the handle 103 between the thumb and index fingers during use. Grip body 403 could also be non-bulging or have any number of shapes, such as circular, a true oval shape and the like.

Referring to FIGS. 5–7, aperture 303 preferably includes a peripheral shoulder or rim 304 for supporting grip body

4

403. Sidewall 305 of aperture 303 extends between opposing outer surfaces of base 300 and includes inclined surfaces 309, 310 inside of the periphery of aperture 303. The inclined surfaces 309, 310 extend from the outer surfaces towards a rounded edge surface 311 which is the narrowest part of the aperture 303. This construction, in conjunction with the soft, resilient nature of grip member 403, provides a weight shifting feature which improves control of the handle 103 during use.

Resilient grip body 403 further helps attenuate the brushing force applied to the oral surfaces to prevent gum recession, loss of tooth enamel or to provide for a more comfortable brushing experience. When the toothbrush is used against the oral surfaces, such as the teeth, reaction forces are transferred to the resilient grip body 403. The elastomeric material dampens the forces against the head 105 which reduces the brush pressure applied to the teeth and soft tissue surfaces, such as the gums. In a preferred construction, elastomeric material of the resilient grip body 403 is enabled to flow and shift within aperture 303. Net pressure applied by the user's fingers is transferred to grip body 403 so that the inclined surface 309, 310 enables the elastomeric material to flow to the narrowest portion of the aperture. Hence, some of the elastomeric material squeezes past rounded edge surface 311 to the other side of the aperture while under pressure. The shifting of the material to the other side of the aperture causes a slight shift in the mass centroid of the resilient member 403 to counter balance the brushing forces. Thus, grip body 403 balances handle 103 enabling it to "float" in the hand of the user and reduce the brushing forces applied by the head 105.

In one preferred construction, grip body 403 has a multiplicity of finger grip protrusions 411 (FIGS. 1–5). Finger grip protrusions 411 provide a tactile feature to increase the friction on the user's finger surfaces and thus enhance the user's ability to grip the handle, particularly under wet conditions. Finger grip protrusions 411 are preferably provided in a desired conical or frusto-conical shape for improved grip performance. Of course, other roughened surfaces could be used.

Referring to FIGS. 6 and 7, rear segment 115 is preferably formed by base 300 and gripping member 407. In one preferred embodiment, base 300 defines a relatively rigid support structure which is at least partially overlain by an elastomeric gripping member 407. While gripping member 407 is shown as a single unitary member or layer, it could be formed by separate independent parts or sections.

Base 300 along rear segment 115 includes at least one projection, and preferably a plurality of spaced projections. While the projections could have virtually any shape, they are preferably in the form of spaced, elongate, transverse projections or ribs 315. In the preferred embodiment, ribs 315 are generally parallel with respect to each other and generally symmetrical in relation to the longitudinal axis a—a of rear segment 115. The projections 315 are preferably linear and span laterally between the longitudinal sides 313, 314 of handle 103, although they may have different transverse lengths. The transverse length of each projection 315 generally matches the width at the longitudinal location along the handle 103; although the ribs are preferably slightly short of the actual width of handle segment 115 at any one location so as to be covered on the sides by gripping member 407. Since ribs 315 span the width of segment 115, they each have varying lengths due to the variations in the width of handle segment 115. While nine projections are shown, the inventive aspects may be obtained by other numbers of projections.

5

In a preferred arrangement, a receiving region **317** is defined between each of the adjacent transverse projections **315**. The receiving regions **317** are configured to retain and hold a layer of suitable gripping member **407**, such as a thermoplastic elastomer (TPE) or other similar materials used in oral care products. In a preferable construction, receiving regions **317** have a transverse arcuate base surface **319** with a transverse groove or depression **321**. The arcuate base surface **319** extends between the longitudinal sides of base **300**. When a gripping member **407** is applied to the base, grooves **321** create concaved regions **413** in grip surface **410** to improve the tactile performance of the toothbrush handle (see FIG. **4**). While horizontal or straight projections **315** are illustrated, the projections **315**, alternatively, may be any number of shapes or orientations with respect to the longitudinal axis a—a. For example, the projections **315** may be chevron shaped, circular, oval, elliptical, rectangular, or triangular or other shapes. The orientation of the projections **315** may also be off-axis from the longitudinal axis a-a to form an asymmetrical relationship. The projections **315** may be regularly or randomly spaced on base **300** for the intended gripping performance. As shown in FIG. **7**, a peripheral portion of base **300** has a peripheral groove **323** arranged to receive and hold a layer of the grip material for suitable use with the toothbrush.

Referring to FIGS. **2**, **4** and **5**, gripping member **407** is fixed to base **300** to provide several gripping features to improve performance. In one aspect, gripping member **407** has a grip surface **410** with at least one and preferably a plurality of spaced openings, preferably in the form of elongate transverse slots **415**, which expose portions of base **300**. In this way, the outline shape of slots **415** is formed by the peripheral shape of projections **315** of base **300** (FIGS. **6** and **7**). To form slots **415**, suitable injection molding equipment mates with the top surfaces of the projections **315** to prevent overmolding of ribs **315** and any undesired deflection of base **300** during the molding process. This enables the top surfaces of the projections **315** to be exposed after the molding process.

To provide comfort as well as control benefits, the elastomeric material of the grip surface **410** may have a hardness durometer measurement ranging between A13 to A50 Shore hardness, although materials outside this range may be used. A preferred range of the hardness durometer rating is between A25 to A40 Shore hardness. While an injection molded construction is preferred, a suitable deformable thermoplastic material, such as TPE, may be formed in a thin layer and attached to base **300** with an appropriate adhesive or by other means. Irrespective of the manufacturing process, ribs **315** are preferably recessed relative to gripping surface **410**, i.e., a suitable thickness of elastomeric material is used to control the depth of the slot **415** as measured from the top of the grip surface **410** to the top of the projection (e.g., the exposed portion of base **300**). In a preferred construction, the depth of the slots along axis a—a is about 0.5 mm. These transverse slots **415** prevent slippage of the handle **103** by enabling portions of the user's fingers to slightly protrude into the depth of the slot **415**. Additionally, slots **415** channel water away from the fingers tips during wet operational conditions. Air is also able to enter the slots during brushing to provide some evaporative effect.

In another aspect, the grip surface **410** includes concaved regions **413** between each slot **415** to further improve the grip performance of handle **103**. The concaved regions **413** are preferably created by a suitable thickness of the elastomeric material during the injection molding process filling into the transverse grooves **321** in base **300**, but could be

6

formed by other means (FIGS. **6** and **7**). While base surface **319** is preferably arcuate in a transverse direction, the base surface may be horizontal or take on other shapes.

In one preferred construction, resilient grip body **403** has a different hardness as compared to the hardness of the grip surface **410**. Generally, the material of grip body **403** is softer than the material forming the grip surface **410**. In this manner, the handle **103** may be provided different grip features to complement the particular control need. For example, the handle **103** may have a soft forward portion with a shock absorption advantage and a slightly harder aft portion with a comfort and control advantage. The material of the resilient grip body **403** and grip surface **410** are preferably each a thermoplastic elastomer.

The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any combination, improve the control and grip performance of oral implements. Other constructions of toothbrush are possible. For example, head **105** may be replaceable or interchangeable on handle **103**. Head **105** may include various oral surface engaging elements, such as inter-proximal picks, brushes, flossing element, plaque scrapper, tongue cleansers and soft tissue massages. While the various features of the toothbrush **100** work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to obtain some of the aforementioned advantages without the necessity to adopt all of these features in an oral care implement.

While the invention has been described with respect to specific examples including presently preferred modes of carrying out the invention, those skilled in the art will appreciate that there are numerous variations and permutations of the above described systems and techniques. It is to be understood that other embodiments may be utilized and structural and functional modifications may be made without departing from the scope of the present invention. Thus, the spirit and scope of the invention should be construed broadly as set forth in the appended claims.

What is claimed is:

**1**. An oral care implement comprising:

a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough;

a gripping member at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base; and

a resilient grip body in the gripping region and extending through the aperture, the gripping member having a different durometer characteristic than the resilient grip body.

**2**. The oral care implement according to claim **1**, in which the gripping member and the grip body comprises an elastomeric material.

**3**. The oral care implement according to claim **2**, in which the at least one opening exposing a portion of the base is recessed to define a cavity.

**4**. The oral care implement according to claim **3**, in which the base further includes at least one projection having an outer surface, and the exposed portion of the base in the least one opening being the outer surface of the projection.

**5**. The oral care implement according to claim **2** wherein the at least one opening further comprises a plurality of the openings provided in the gripping member.

**6**. The oral care implement according to claim **5**, in which the gripping member further includes a concaved region disposed between each pair of adjacent openings.

US 7,047,591 B2

7

**7**. The oral care implement according to claim **6**, in which the base further includes a plurality of projections and a base surface extending between the projections, wherein the base surface between each adjacent pair of said projections has a groove disposed between the projections, and wherein the groove is disposed below the concaved regions.

**8**. The oral care implement of claim **5**, in which the openings are elongate, transverse slots.

**9**. The oral care implement according to claim **8**, in which the slots have varying lengths along a longitudinal direction of the gripping region.

**10**. The oral care implement according to claim **5** wherein the resilient grip body is fixed in the aperture to define tactile finger gripping surfaces on opposite sides of the base.

**11**. The oral care implement according to claim **10**, in which the openings in the gripping member with exposed portions of the base are recessed.

**12**. The oral care implement according to claim **11**, in which the gripping region of the base includes a rear segment and a front segment that is inclined relative to the rear segment, the rear segment including the gripping member.

**13**. The oral care implement according to claim **12** wherein the aperture is formed in the front segment.

**14**. The oral care implement according to claim **2** wherein the grip body is surrounded by the gripping member on one side of the aperture.

**15**. The oral care implement according to claim **1**, in which the grip body is of a softer material than said gripping member.

**16**. The oral care implement according to claim **15** wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

**17**. The oral care implement according to claim **16** wherein the at least one opening further comprises a plurality of openings provided in the gripping member.

**18**. The oral care implement according to claim **17**, in which the exposed portions of the base in the gripping member are recessed.

**19**. The oral care implement according to claim **1**, wherein the resilient grip body is fixed in the aperture to define tactile finger gripping surfaces on opposite sides of the base.

**20**. The oral care implement according to claim **19** wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

**21**. The oral care implement according to claim **1**, in which the base includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

8

**22**. The oral care implement according to claim **21**, in which the first section is inclined relative to the second section.

**23**. The oral care implement according to claim **1**, in which the exposed portion of the base is recessed in the gripping member to define a cavity in the opening.

**24**. The oral care implement according to claim **1**, which the gripping member is composed of a softer material than the base and the grip body is composed of a softer material than the gripping member.

**25**. The oral care implement according to claim **24**, in which the at least one opening includes a plurality of openings exposing base portions that are recessed relative to the gripping member.

**26**. The oral care implement according to claim **1**, in which the oral engaging region includes teeth cleaning elements.

**27**. An oral care implement comprising:

a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20–40 degrees thereby defining the inclined portion;

a resilient grip surface being disposed on the rear segment; and

a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

**28**. The oral care implement according to claim **27**, in which the grip body comprises an elastomeric material.

**29**. The oral care implement according to claim **27**, in which the grip body is configured to counterbalance forces acting on the base.

**30**. The oral care implement according to claim **27**, in which the grip body has a hardness of about 8–24 Shore A.

**31**. The oral care implement according to claim **30** wherein the resilient grip surface has a hardness of about 13–50 Shore A.

**32**. The oral care implement according to claim **27** wherein the grip body is spaced from the grip surface by a portion of the base.

**33**. The oral care implement according to claim **27** wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

**34**. The oral care implement according to claim **27** wherein each said finger gripping surface includes a plurality of projections.

\*    \*    \*    \*    \*

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on May 8, 2007, I caused a copy of the

foregoing document to be served by e-mail and hand-delivery on the following counsel of

record:

Steven J. Balick
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19801
sbalick@ashby-geddes.com

I, Francis DiGiovanni, hereby certify that on May 8, 2007, I caused a copy of the

foregoing document to be served by e-mail and by U.S. Mail on the following counsel of record:

James Moskal, Esq.
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
jmoskal@wnj.com

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 9th Floor
1007 North Orange Street
Wilmington, Delaware 19801
(302) 658-9141
fdigiovanni@cblh.com

536298