# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLGATE-PALMOLIVE COMPANY,<br><br>PLAINTIFF,<br><br>V.<br><br>RANIR, L.L.C.,<br><br>DEFENDANT. | Civil Action No. 06-417-GMS |

## JOINT APPENDIX OF INTRINSIC AND EXTRINSIC EVIDENCE
### VOLUME 1 OF 2

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Robert F. Altherr, Jr.
Nina L. Medlock
Christopher B. Roth
Elizabeth Almeter
Banner & Witcoff, Ltd.
1100 13th Street, N.W., Suite 1200
Washington, DC 20005
Phone (202) 824-3000

*Attorneys for Colgate-Palmolive Company*

Steven J. Balick (#2114)
John G. Day (#2403)
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801

Charles E. Burpee
James Moskal
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487

*Attorneys for Ranir, L.L.C.*

COLGATE-PALMOLIVE v. RANIR, L.L.C.
U.S.D.C. Del. Case No. 06-417-GMS

**JOINT APPENDIX OF INTRINSIC AND EXTRINSIC EVIDENCE**

| TAB | DESCRIPTION | PARTY CITING | PAGE(S) |
|-----|-------------|--------------|---------|
| 1 | Joint Disputed Claim Chart | Colgate-Palmolive | JA00001-JA00017 |
| 2 | U.S. Patent No. D513,882 | Colgate-Palmolive | JA00018-JA00023 |
| 3 | U.S. Patent No. D514,812 | Colgate-Palmolive | JA00024-JA00027 |
| 4 | U.S. Patent No. D516,818 | Colgate-Palmolive | JA00028-JA00032 |
| 5 | U.S. Patent No. D516,819 | Colgate-Palmolive | JA00033-JA00036 |
| 6 | U.S. Patent No. D517,812 | Colgate-Palmolive | JA00037-JA00041 |
| 7 | U.S. Patent No. D517,813 | Colgate Palmolive | JA00042-JA00045 |
| 8 | U.S. Patent No. D520,753 | Colgate Palmolive | JA00046-JA00050 |
| 9 | U.S. Patent No. 7,047,591 | Colgate Palmolive | JA00051-JA00062 |
| 10 | U.S. Patent No. 7,089,621 | Ranir, L.L.C. | JA00063-JA00074 |
| 11 | U.S. Patent Application Publication US 2006/0026784 | Ranir, L.L.C. | JA00075-JA00167 |
| 12 | Prosecution History for U.S. Patent No. 7,047,591 | Colgate Palmolive | JA000168-JA000383 |
| 13 | May 18, 2007 Hohlbein Declaration | Colgate Palmolive | JA000384-JA000572 |
| 14 | May 2, 2007 Crossman Deposition Excerpts | Colgate Palmolive | JA000573-JA000578 |

COLGATE-PALMOLIVE v. RANIR, L.L.C.
U.S.D.C. Del. Case No. 06-417-GMS

| 15 | Merriam-Webster's Collegiate Dictionary 10th edition Excerpts | Colgate Palmolive | JA000579-JA000587 |
| 16 | Transmittal Form and November 15, 2006 Amendment for Application No. 10/902,257 | Ranir, L.L.C. | JA000588-JA000602 |
| 17 | Merriam-Webster's Collegiate Dictionary 10th edition Excerpts | Ranir, L.L.C. | JA000603-JA000604 |
| 18 | Standard Test Method for Rubber Property – Durometer Hardness | Ranir, L.L.C. | JA000605-JA000617 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLGATE-PALMOLIVE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-417-GMS |
| | ) | |
| RANIR, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT DISPUTED CLAIM TERMS CHART

Attached is the Joint Disputed Claim Terms Chart submitted by Plaintiff, Colgate-Palmolive Company ("Colgate"), and Defendant, Ranir L.L.C. ("Ranir"), pursuant to the Court's November 7, 2006 Scheduling Order ("Scheduling Order"). As required by paragraph 4 of the Scheduling Order, Colgate and Ranir have each additionally cited the supporting intrinsic evidence in the Joint Disputed Claim Terms Chart.

JOINT CHART OF PROPOSED CONSTRUCTIONS

| U.S. Patent 7,047,591 (Claim limitations proposed for construction are underlined) | Ramir Proposed Construction | Colgate Proposed Construction[1] |
|---|---|---|
| 1. An oral care implement comprising: a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough; <u>a gripping member</u> at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base; and <u>a resilient grip body</u> in the gripping region and extending through the aperture, <u>the gripping member having a different durometer characteristic than the resilient grip body.</u> | **"a gripping member"**: A slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand. *Col. 1, line 45; Col. 13, lines 19-22.*<br><br>**"a resilient grip body"**: A soft, resilient element separate from the gripping member intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand. *Col. 3, lines 16-19; Col. 3, lines 40-61; Col. 4, lines 10-19; Col. 6, lines 4-13.*<br><br>**"the gripping member having a different durometer characteristic than the resilient grip body"**: The hardness durometer measurement or | **"gripping member"**: the outer constituent part of the handle of an oral care implement that covers at least a portion of the base. *See, e.g., '591 Patent, col. 1, lines 40-46; col. 2, lines 44-57; col. 3, lines 13-25; col. 4, lines 41-67; col. 5, lines 1-39; Figs. 2 and 4, identified by number 407; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)*<br><br>**"a resilient grip body"**: a constituent part of the handle that can recover its size and shape after application of pressure. *See, e.g., '591 Patent, col. 1, lines 47-55; col. 1, line 63 – col. 2, line 2; col. 2, lines 44-57; col. 3, lines 13-65; col. 4, lines 10-40; col. 6, lines 4-14; Figs 1-5, 8 and, 9 identified by number 403; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)*<br><br>**"the gripping member having a different durometer characteristic than the resilient grip body"**: the gripping member has a different hardness than the resilient |

[1] Colgate does not believe that any claim limitation needs to be construed as each claim limitation is properly given its ordinary meaning according to one of skill in the art at the time of invention. In order to expedite the claim construction process, Colgate hereby provides its understanding of the ordinary meaning according to one of skill in the art at the at the time of the invention for the claim terms that Ramir asserts need to be construed.

1

| U.S. Patent No. 6,751,59[?] claim limitations [proposed for construction are underlined] | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | rating of the gripping member material, measured on the Shore A scale, is different than that of the grip body material. *Col. 3, lines 49-53; Col. 5, lines 40-45, Col. 6, lines 4-6.* | grip body. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999).*<br><br>Hardness is a property measured by a durometer. *Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999).* |
| 2. The oral care implement according to claim 1, in which <u>the gripping member and the grip body comprises an elastomeric material</u> | "the gripping member and the grip body comprises an elastomeric material": The gripping member and the grip body are each a thermoplastic elastomer. *Col. 1, lines 43-45; Col. 3, lines 45-47; Col. 4, line 45; Col. 5; lines 3-6; Col. 6, lines12-14.* | "the gripping member and the grip body comprises an elastomeric material": the gripping member and grip body are composed of at least a material resembling rubber. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 4, lines 10-31; col. 4, lines 41-47; col. 5, lines 1-25; col.5, lines 40-61; col. 6, lines 4-14; Merriam-Webster's Collegiate Dictionary 10th Ed., (1999).* |
| 15. The oral care implement according to claim 1, in which <u>the grip body is of a softer material than said gripping member.</u> | "the grip body is of a softer material than said gripping member": The grip body material is softer than the gripping member material. The hardness durometer measurement of the resilient grip body material, measured on the Shore A scale, is less than that of the gripping member material. *Col. 6, lines 6-7.* | "the grip body is of a softer material than said gripping member": the grip body material has a durometer measurement that is less than the durometer measurement of the gripping member. *See, e.g., '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999); ASTM D2440-00* |
| 24. The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base and the grip body is composed of a softer material than the | "the grip body is composed of a softer material than the gripping member": The grip body material is softer than the gripping member material. The hardness | "the grip body is composed of a softer material than the gripping member": the grip body material has a durometer measurement that is less than the |

2

| U.S. Patent 7,047,591 (claim limitations proposed for construction are underlined) | Rini's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| gripping member. | durometer measurement of the resilient grip body material, measured on the Shore A scale, is less than that of the gripping member material. Col. 6, lines 6-7. | durometer measurement of the gripping member. *See, e.g.*, '591 Patent, col. 3, lines 39-57; col. 5, lines 40-61; *Merriam-Webster's Collegiate Dictionary, 10th Ed.* (1999); ASTM D2440-00 |
| 27. An oral care implement comprising: a base with a gripping region and an oral engaging region, the gripping region including a <u>rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion</u>; a resilient grip surface being disposed on the rear segment; and a grip body extending <u>from the grip surface, the grip body forming an aperture in the base and spaced opposite finger gripping surfaces on the inclined portion of the base.</u> | "<u>a gripping region</u>". The gripping region is the longitudinal portion of the implement defined by the longitudinal extent of the gripping member and the grip body. *Col. 1, lines 49-57; Col. 2, lines 49-51.*<br><br>"<u>a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion</u>". This language does not comply with 35 U.S.C. 112, First and Second Paragraphs. Nevertheless, the following best guess is provided. The rear segment is the portion of the implement from the tip of the base to center of the top-most finger opening in the grip surface. The front segment is the portion of the implement from the lower-most edge of the base material surrounding the grip body to the top-most portion of the grip surface. The | "<u>a gripping region</u>": a subdivision of the oral care implement that includes the area held by a user. *See e.g.*, '591 Patent, col. 1, lines 40-47; col. 2, line 58 – col. 3, line 12; Figs. 1-9 numbered item 301; *Merriam-Webster's Collegiate Dictionary*, 10th Ed. (1999)<br><br>"<u>a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion</u>": the front segment of the gripping region is inclined at an angle of about 20 to about 40 degrees relative to the rear segment of the gripping region. *See, e.g.*, '591 Patent, col. 1, lines 57-62; col. 2, lines 44-67; col. 3, lines 1-12; Figs 2, 3, identified by numbers 111, 113, and 115; *Merriam-Webster's Collegiate Dictionary*, 10th Ed. (1999) |

3

| U.S. Patent 7,047,591 (claim limitations proposed for construction are underlined) | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | angle of inclination of the front segment to the rear segment is defined by the angle of the intersection of the midlines of the front and rear segments. Each midline is defined by the midpoints of the thickness of the implement at each end of the respective segment. *Col. 2, lines 49-64; Fig. 2, Fig. 4.* | |
| | **"a resilient grip surface":** A resilient, slip-resistant element intended to be grasped by the third through fifth fingers of the user's hand. *Col. 1, line 45; Col. 13, lines 19-22.* | **"a resilient grip surface":** an exterior of the gripping member that can recover its size and shape after application of pressure. *See, e.g., '591 Patent, Col. 5, line 1 – col. 6, line 14; Figs. 2, 4, and 9 identified by number 410; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |
| | **"a grip body":** A soft element separate from the gripping member intended to be grasped between the first and second fingers (i.e. the thumb and the index finger) of the user's hand. *Col. 3, lines 16-19; Col. 3, lines 40-61; Col. 4, lines 10-19; Col. 6, lines 4-13.* | **"a grip body":** a constituent part of the handle that may be contacted by a user's thumb and finger during normal use of the oral cleaning implement. *See, e.g., '591 Patent, col. 1, lines 47-55; col. 1, line 63 – col. 2, line 2; col. 2, lines 44-57; col. 3, lines 13-65; col. 4, lines 10-40; col. 6, lines 4-14; Figs 1-5, 8 and, 9 identified by number 403; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)* |
| | **"spaced from the grip surface":** The resilient grip surface and the grip body do not contact each other. *Fig. 5* | **"spaced from the grip surface":** there is an area separating the grip surface from the grip surface. *See. e.g., '591 Patent, col. 3,* |

4

| U.S. Patent 7,047,597 (Claim limitations proposed for construction are underlined) | Ramir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| 29. The oral care implement according to claim 27, in which the grip body is configured to counterbalance forces acting on the base. | "configured to counterbalance forces acting on the base". The mass of the grip body can be shifted by pressure on either side for greater comfort and control, and to dampen the pressure applied by the brush. The grip body can flow and shift within the base. Col. I, lines 52-54; Col. 3, line 66 through Col. 4, line 40. | line 66 – col. 4, line 9; Figs. 5-7; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999)  "configured to counterbalance forces acting on the base": the grip body is particularly arranged to transmit forces acting on the base. See, e.g., '591 Patent, col. 4, lines 10-31; Merriam-Webster's Collegiate Dictionary, 10th Ed. (1999) |

### Claim Chart for U.S. Patent D513,882

| U.S. Patent D513,882 | Ramir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including:  a head supporting a set of bristles;  a neck that is narrower than the head;  the width of the front handle segment increases from the end adjacent to the neck to the end opposite the neck;  the transition handle segment has an oval-shaped cross-section that is longer in the vertical direction;  the rear handle segment is generally round in cross-section;  the grip material overlies approximately only the lower half of the transition handle segment and the rear handle | The claim is for the overall design of a toothbrush as shown in the figures. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The region on the back of the toothbrush head depicted in broken lines (best shown in FIG. 6) and the unshaded area within have been disclaimed. It is this claimed design that is to be compared to the accused products. |

5

| U.S. Patent D513,882 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | segment, forming a straight dividing line along the sides and rear of the handle;<br><br>the transverse slots are parallel;<br><br>the transverse slots are narrow, and extend across approximately the entire width of the handle;<br><br>each loop configuration having a circular shape formed from four arc-shaped elastomers,<br><br>the loop configurations approximately evenly spaced on the head;<br><br>the loop configurations each having the same diameter;<br><br>the bristles of the outer ring arranged in two opposing arc-shaped tufts;<br><br>the central bristle tufts being no taller than the loop configurations;<br><br>three peripheral tufts spaced apart in a line along each side of the distal loop configuration;<br><br>three peripheral tufts spaced apart in a line on each side of the proximal loop configuration;<br><br>each peripheral bristle tuft having a gradually increasing diameter from the head to the tip;<br><br>each peripheral bristle tuft narrowing to a point at the tip;<br><br>two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length;<br><br>the distal bristle tufts having a slight gap | |

6

| U.S. Patent D513,882 | Rairu's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | between them at the base, but converging together to close the gap at the tips; the distal bristle tufts being shorter in height than the peripheral bristle tufts; two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and the proximal bristle tufts being shorter in height than the peripheral bristle tufts. *Figs. 1-7* | |

Claim Chart for U.S. Patent D516,819

| U.S. Patent D516,819 | Trani's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a plurality of bristles, wherein some of the bristles form loop configurations that each have a circular shape formed from four arc-shaped elastomers; the loop configurations are approximately evenly spaced on the head; the loop configurations each having the same diameter; the bristles of the outer ring arranged in two opposing arc-shaped tufts; the central bristle tufts being no taller than the loop configurations; three peripheral tufts spaced apart in a line along each side of the distal loop configuration; three peripheral tufts spaced apart in a line on each side of the proximal loop configuration; each peripheral bristle tuft having a generally uniform diameter from the head to the tip; two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length; the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips; the distal bristle tufts being shorter in | The claim is for a design for a set of bristles for a toothbrush as shown in the figures. The claimed design includes the bristle design which is the portion of the design shown in solid lines. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design. It is this claimed design in the figures that is to be compared to the accused products. |

8

| U.S. Patent D516,819 | Raille's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | height than the peripheral bristle tufts; two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and the proximal bristle tufts being shorter in height than the peripheral bristle tufts. *Figs. 1-5* | |

Claim Chart for U.S. Patent D514,812

| U.S. Patent D514,812 | Raille's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a front handle segment having a width that gradually increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer in the vertical direction; a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle; and a narrow ring of uniform width formed around the finger grip between the grip material and the finger grip. *Figs. 1-5* | The claim is for a design for a center handle portion of a toothbrush as shown in the figures. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The remainder of the toothbrush which is shown in broken lines forms no part of the claimed design. It is this claimed design that is to be compared to the accused products. |

9

Claim Chart for U.S. Patent D516,818

| U.S. Patent D516,818 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a handle having a front handle segment with a width that gradually increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer in the vertical direction; a rear handle segment that is generally round in cross-section; and a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle. *Figs. 1-5* | The claim is for a design for a handle portion of a toothbrush as shown in the figures. The claimed design includes the handle shown in solid lines and depicted with line shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the back of the handle and the unshaded areas within form no part of the claimed design. It is this claimed design that is to be compared to the accused products. |

Claim Chart for U.S. Patent D517,812

| U.S. Patent D517,812 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a head supporting a set of bristles; a neck that is narrower than the head; a front handle segment having a width that increases from the end adjacent to the neck to the end opposite the neck; a transition handle segment that has an oval-shaped cross-section that is longer | The claim is for the overall design of a toothbrush as shown in the figures. No portions have been disclaimed. It is the design in the figures that is to be compared to the accused products. |

10

| US Patent D517,812 Rahn's Proposed Construction | Colgate's Proposed Construction |
|---|---|
| in the vertical direction; a rear handle segment that is generally round in cross-section; a rear handle segment that is straight; a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle; transverse slots that are parallel; transverse slots that are narrow, and extend across approximately the entire width of the handle; a thumb grip having a football shaped periphery; a finger grip having a football shaped periphery; nubs on the thumb grip that are arranged in three rings, each ring having approximately the same football shape as the thumb grip periphery; nubs on the finger grip that are arranged in an outer ring and an inner ring having approximately the same football shape as the finger grip periphery, and a line extending in a longitudinal direction within the inner ring; a narrow ring of uniform width formed around the finger grip between the grip material and the finger grip; a tongue cleanser overlying | |

11

| U.S. Patent D5,738,12 | Ramji's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | approximately the entire lower surface of the head; a portion of the tongue cleanser extending over a portion of the lower surface of the neck; nubs covering approximately the entire surface of the tongue cleanser; the tips of the nubs extending outwardly at a uniform distance from the lower surface of the head; the nubs arranged in rows extending in a longitudinal direction; the nubs approximately evenly spaced on the tongue cleanser; three white circles evenly spaced along the longitudinal axis of the toothbrush within the tongue cleanser; the loop configurations approximately evenly spaced on the head; the loop configurations each having the same diameter; an outer bristle ring comprised of two arc-shaped bristle tufts on opposite sides of the middle loop configuration, the bristles of the outer ring are taller than the loop configurations; the central bristle tufts being no taller than the loop configurations; three peripheral tufts spaced apart in a line along each side of the distal loop configuration; three peripheral tufts spaced apart in a | |

12

JA00013

| U.S. Patent D517,812 | Rami's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | line on each side of the proximal loop configuration;<br>each peripheral bristle tuft having a generally uniform diameter from the head to the tip;<br>two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length;<br>the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips;<br>the distal bristle tufts being shorter in height than the peripheral bristle tufts;<br>two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and<br>the proximal bristle tufts being shorter in height than the peripheral bristle tufts.<br>*Figs. 1-7* | |

Claim Chart for U.S. Patent D517,813

| U.S. Patent D517,813 | Rami's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including:<br>a front handle segment with a width that gradually increases from the end adjacent to the neck to the end opposite the neck;<br>a transition handle segment that has an oval-shaped cross-section that is longer | The claim is for a design for a handle portion of a toothbrush as shown in the figures. The claimed design includes the handle which is the portions of the handle that is shown in solid lines and depicted with line and stipple (i.e., formed by dots) shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle |

13

| U.S. Patent D517,813 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | in the vertical direction; a rear handle segment that is generally round in cross-section; and a grip material that overlies approximately only the lower half of the transition handle segment and the rear handle segment, forming a straight dividing line along the sides and rear of the handle. *Figs. 1-5* | and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the bottom of the handle and the unshaded areas within form no part of the claimed design. The appearance of the area shaded with the line shading technique contrasts with the appearance of the area shaded with the stipple shading technique. It is this claimed design that is to be compared to the accused products. |

**Claim Chart for U.S. Patent D520,753**

| U.S. Patent D520,753 | Ranir's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| See Figures | A toothbrush including: a plurality of bristles, wherein some of the bristles form loop configurations that each have a circular shape formed from four arc-shaped elastomers, the loop configurations are approximately evenly spaced on the head; the loop configurations each having the bristles of the outer ring arranged in two opposing arc-shaped tufts; the central bristle tufts being no taller than the loop configurations; three peripheral tufts spaced apart in a line along each side of the distal loop configuration; three peripheral tufts spaced apart in a line on each side of the proximal loop | The claim is for a design for a set of bristles for a toothbrush as shown in the figures. These figures consist of FIGS. 4-6 in the patent as originally printed and FIGS. 1-3 in the Certificate of Correction. The claimed design includes the bristle design which is the portion shown in photographic imagery. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design. It is this claimed design in the figures that is to be compared to the accused products. |

14

| U.S. Patent D520,753 | Rani's Proposed Construction | Colgate's Proposed Construction |
|---|---|---|
| | configuration;<br>each peripheral bristle tuft having a generally uniform diameter from the head to the tip;<br>two distal bristle tufts, each with a slight arc-shape, having bristles of uniform length;<br>the distal bristle tufts having a slight gap between them at the base, but converging together to close the gap at the tips;<br>the distal bristle tufts being shorter in height than the peripheral bristle tufts;<br>two proximal bristle tufts, each with a slight arc-shape, including bristles of uniform length; and<br>the proximal bristle tufts being shorter in height than the peripheral bristle tufts.<br>*Figs. 1-6* | |

15

/s/ Francis DiGiovanni            .
Francis DiGiovanni (#3189)
fdigiovanni@cblh.com
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
(302) 658-9141

Robert F. Altherr, Jr.
Nina L. Medlock
Christopher B. Roth
Elizabeth A. Almeter
Banner & Witcoff, Ltd.
1100 13th Street, N.W., Suite 1200
Washington, D.C. 20005

Attorneys for Plaintiff,
Colgate-Palmolive Company

/s/ Steven J. Balick            .
Steven J. Balick (#2114)
sbalick@ashby-geddes.com
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

James Moskal
Warner Norcross & Judd
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503-2487

Attorneys for Defendant,
Ranir, L.L.C.



US00D513882S

(12) **United States Design Patent**     (10) Patent No.:     **US D513,882 S**
Hohlbein et al.                          (45) Date of Patent:    ** *Jan. 31, 2006

(54) **TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(*) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,024**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ....................................................... **D4/104**
(58) **Field of Classification Search** .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 56; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,132,326 A | * | 3/1915 | Fouyer ....................... 15/167.1 |
| 1,588,785 A | | 6/1926 | Van Sant |
| 2,161,349 A | | 6/1939 | Hadden |
| 2,188,005 A | | 1/1940 | Casto |
| 2,262,982 A | * | 11/1941 | Wolcott ....................... 15/167.1 |
| D272,683 S | | 2/1984 | Stocchi |
| D273,635 S | | 5/1984 | Stocchi |
| 4,461,285 A | | 7/1984 | Courtin |
| 4,610,043 A | | 9/1986 | Vezjak |

| | | | |
|---|---|---|---|
| 5,120,225 A | | 6/1992 | Amit |
| D334,474 S | * | 4/1993 | Sauceda ....................... D4/104 |
| 5,242,235 A | | 9/1993 | Li |
| D340,808 S | | 11/1993 | Sherman et al. |
| D345,256 S | | 3/1994 | Khin |
| 5,305,489 A | | 4/1994 | Lage |
| 5,396,678 A | | 3/1995 | Bredall et al. |
| 5,398,369 A | | 3/1995 | Heinzelman et al. |
| D371,680 S | | 7/1996 | Juhlin et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | | 2000000118 A | * | 1/2000 |
| JP | | 2002191436 A | * | 7/2002 |
| WO | WO 200117433 A1 | * | 3/2001 |
| WO | WO 2004/026162 A2 | | 4/2004 |
| WO | WO 2004/028235 A2 | | 4/2004 |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective front view of a toothbrush showing our new design;
FIG. 2 is a head end view thereof;
FIG. 3 is a handle end view thereof;
FIG. 4 is a right side view thereof;
FIG. 5 is a left side view thereof;
FIG. 6 is a bottom view thereof; and,
FIG. 7 is a top view thereof.
The broken line showing of the two generally-oval shaped regions on the handle including the unshaded areas therein, and the enclosed region and features on the back of the toothbrush head, is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



**US D513,882 S**

Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,628,082 A | 5/1997 | Moskovich |
| D386,905 S | 12/1997 | Brady et al. |
| D391,769 S | 3/1998 | Kling et al. |
| 5,735,011 A | 4/1998 | Asher |
| 5,735,012 A | 4/1998 | Heinzelman et al. |
| 5,735,864 A | 4/1998 | Heisinger, Jr. |
| D412,064 S | 7/1999 | Achepohl et al. |
| D413,728 S | 9/1999 | Waguespack et al. |
| D416,685 S | 11/1999 | Overthun |
| D418,979 S | 1/2000 | Moskovich et al. |
| D418,981 S | 1/2000 | Cheong et al. |
| D419,304 S | 1/2000 | Moskovich et al. |
| D419,773 S | 2/2000 | Beals et al. |
| D420,802 S | 2/2000 | Cheong et al. |
| D420,804 S | 2/2000 | Juhlin et al. |
| D421,841 S | 3/2000 | Achepohl et al. |
| D427,437 S | 7/2000 | Vonarburg |
| 6,108,869 A | 8/2000 | Meessmann et al. |
| D437,486 S * | 2/2001 | Francos .................... D4/104 |
| D438,012 S * | 2/2001 | Cheong et al. .............. D4/104 |
| D439,412 S | 3/2001 | Volpenhein et al. |
| D440,767 S | 4/2001 | Moskovich et al. |
| D448,174 S | 9/2001 | Harris et al. |
| 6,298,516 B1 | 10/2001 | Beals et al. |
| D450,457 S | 11/2001 | Hohlbein |
| 6,311,358 B1 | 11/2001 | Soetewey et al. |
| D452,615 S | 1/2002 | Cheong et al. |
| D453,270 S | 2/2002 | Choong |
| D453,998 S | 3/2002 | Ping |
| D454,252 S | 3/2002 | Lee |
| D456,139 S | 4/2002 | Hohlbein |
| D374,448 B2 | 4/2002 | Seifert |
| D456,607 S | 5/2002 | Carlucci et al. |
| D457,323 S | 5/2002 | Hohlbein |
| D457,325 S | 5/2002 | Wilson et al. |
| D458,453 S | 6/2002 | Baertschi |
| D459,086 S | 6/2002 | Belton et al. |
| D461,313 S | 8/2002 | Hohlbein |
| D462,178 S | 9/2002 | Moskovich et al. |
| D462,528 S | 9/2002 | Crossman et al. |
| D463,132 S | 9/2002 | Winter et al. |
| D463,133 S | 9/2002 | Hohlbein |
| 6,446,295 B1 | 9/2002 | Calabrese |
| D463,668 S | 10/2002 | Yoshimoto et al. |
| D466,302 S | 12/2002 | Ping |
| D471,362 S | 3/2003 | Moskovich et al. |
| D474,608 S | 5/2003 | Hohlbein |
| D475,531 S | 6/2003 | Klimeck et al. |
| D476,158 S | 6/2003 | Ling |
| D478,213 S | 8/2003 | Ping |
| D478,424 S | 8/2003 | Saindon et al. |
| D478,425 S | 8/2003 | Ping |
| D478,727 S | 8/2003 | Wong |
| D479,046 S | 9/2003 | Winkler |
| D479,047 S | 9/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| D483,183 S | 12/2003 | De Salvo |
| 6,654,979 B2 | 12/2003 | Calabrese |
| D486,649 S | 2/2004 | Sprosta et al. |
| 6,687,940 B1 | 2/2004 | Gross et al. |
| D487,195 S | 3/2004 | Winkler |
| 6,735,804 B2 | 5/2004 | Carlucci et al. |
| 2001/0023516 A1 | 9/2001 | Driesen et al. |
| 2002/0004964 A1 | 1/2002 | Luchino et al. |
| 2002/0100134 A1 | 8/2002 | Dunn et al. |
| 2002/0138926 A1 | 10/2002 | Brown, Jr. et al. |
| 2002/0138931 A1 | 10/2002 | Davies |

* cited by examiner



FIG. 1

**U.S. Patent**      Jan. 31, 2006      Sheet 2 of 4        US D513,882 S



# FIG. 2



# FIG. 3



FIG. 4



FIG. 5

**U.S. Patent**     Jan. 31, 2006     Sheet 4 of 4     US D513,882 S





FIG. 6

FIG. 7



US00D514812S

(12) **United States Design Patent**     (10) Patent No.:      **US D514,812 S**
Hohlbein et al.                          (45) Date of Patent:   ** **Feb. 14, 2006**

(54) **HANDLE PORTION OF A TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/211,027**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) LOC (8) Cl. .................................................... **04-02**
(52) U.S. Cl. ............................................................ **D4/104**
(58) **Field of Classification Search** .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/6; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235
See application file for complete search history.

(56)          **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D334,474 S | * | 4/1993 | Sauceda ...................... D4/104 |
| 5,398,369 A | | 3/1995 | Heinzelman et al. |
| D371,680 S | | 7/1996 | Juhlin et al. |
| 5,735,012 A | | 4/1998 | Heinzelman et al. |
| D416,685 S | | 11/1999 | Overthun |
| D418,981 S | | 1/2000 | Cheong et al. |
| D420,802 S | | 2/2000 | Cheong et al. |
| D420,804 S | | 2/2000 | Juhlin et al. |
| D421,841 S | | 3/2000 | Achepohl et al. |
| D427,437 S | | 7/2000 | Vonarburg |
| D437,486 S | * | 2/2001 | Francos ...................... D4/104 |
| D439,412 S | | 3/2001 | Volpenhein et al. |
| D448,174 S | | 9/2001 | Harris et al. |
| 6,298,516 B1 | | 10/2001 | Beals et al. |
| D450,457 S | | 11/2001 | Hohlbein |
| D452,615 S | | 1/2002 | Cheong et al. |

| | | |
|---|---|---|
| D453,270 S | 2/2002 | Choong |
| D454,252 S | 3/2002 | Lee |
| D457,323 S | 5/2002 | Hohlbein |
| D458,453 S | 6/2002 | Baertschi |
| D461,313 S | 8/2002 | Hohlbein |
| D462,178 S | 9/2002 | Moskovich et al. |
| D462,528 S | 9/2002 | Crossman et al. |
| D463,132 S | 9/2002 | Winter et al. |
| D463,668 S | 10/2002 | Yoshimoto et al. |
| D466,302 S | 12/2002 | Ping |
| D471,362 S | 3/2003 | Moskovich et al. |
| D474,608 S | 5/2003 | Hohlbein |
| D475,531 S | 6/2003 | Klimeck et al. |
| D478,727 S | 8/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| 2002/0100134 A1 | 8/2002 | Dunn et al. |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| WO | WO 200117433 A1 | * | 3/2001 | |
| WO | WO 2004/026162 A2 | | 4/2004 | |
| WO | WO 2004/028235 A2 | | 4/2004 | |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57)          **CLAIM**

The ornamental design for a handle portion of a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective front view of a handle portion of a toothbrush showing our new design;
FIG. 2 is a right side view thereof;
FIG. 3 is a left side view thereof;
FIG. 4 is a bottom view thereof; and,
FIG. 5 is a top view thereof.
The broken line showing of the two generally-oval shaped regions within the claim boundaries, including the unshaded areas therein, and the remainder of the toothbrush is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**     Feb. 14, 2006     Sheet 1 of 3     US D514,812 S



FIG. 1

**U.S. Patent**     Feb. 14, 2006     Sheet 2 of 3     **US D514,812 S**



FIG. 2                    FIG. 3

JA00026



FIG. 4



FIG. 5



US00D516818S

(12) **United States Design Patent** (10) Patent No.: **US D516,818 S**

Hohibein et al. (45) Date of Patent: ✶✶ *Mar. 14, 2006

(54) **HANDLE PORTION OF A TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohibein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringlers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(*) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,025**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) LOC (8) Cl. .................................................... **04-02**

(52) U.S. Cl. ...................................................... **D4/104**

(58) **Field of Classification Search** .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/DIG. 6; 16/430, 431; 132/308, 309, 311; 601/139, 141; 606/160, 161, 235

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,610,043 A | 9/1986 | Vezjak | |
| D334,474 S | * 4/1993 | Sauceda | D4/104 |
| D386,905 S | 12/1997 | Brady et al. | |
| D391,769 S | 3/1998 | Kling et al. | |

| | | | |
|---|---|---|---|
| D413,728 S | 9/1999 | Waguespack et al. | |
| D418,979 S | 1/2000 | Moskovich et al. | |
| D418,981 S | 1/2000 | Cheong et al. | |
| D419,304 S | 1/2000 | Moskovich et al. | |
| D419,773 S | 2/2000 | Beals et al. | |
| D422,413 S | * 4/2000 | Goldinger et al. | D4/104 |
| D427,437 S | 7/2000 | Vonarburg | |
| 6,108,869 A | 8/2000 | Meessmann et al. | |
| D437,486 S | * 2/2001 | Francos | D4/104 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 200117433 A1 * | 3/2001 |
| WO | WO 2004/026162 A2 | 4/2004 |
| WO | WO 2004/028235 A2 | 4/2004 |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a handle portion of a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective front view of a handle portion of a toothbrush showing our new design;
FIG. 2 is a right side view thereof;
FIG. 3 is a left side view thereof;
FIG. 4 is a bottom view thereof; and,
FIG. 5 is a top view thereof.
The broken line showing of the toothbrush head and of various regions, including the unshaded areas therein, are for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**



**US D516,818 S**

Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D439,412 S | 3/2001 | Volpenhein et al. |
| 6,298,516 B1 | 10/2001 | Beals et al. |
| D452,615 S | 1/2002 | Cheong et al. |
| D453,998 S | 3/2002 | Ping |
| D456,139 S | 4/2002 | Hohlbein |
| D457,325 S | 5/2002 | Wilson et al. |
| D459,086 S | 6/2002 | Belton et al. |
| D462,178 S | 9/2002 | Moskovich et al. |
| D463,133 S | 9/2002 | Hohlbein |
| D471,362 S | 3/2003 | Moskovich et al. |
| D475,531 S | 6/2003 | Klimeck et al. |

| | | |
|---|---|---|
| D476,158 S | 6/2003 | Ling |
| D478,213 S | 8/2003 | Ping |
| D478,424 S | 8/2003 | Saindon et al. |
| D478,425 S | 8/2003 | Ping |
| D479,047 S | 9/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| D486,649 S | 2/2004 | Sprosta et al. |
| 6,687,940 B1 | 2/2004 | Gross et al. |
| D487,195 S | 3/2004 | Winkler |
| 2002/0138931 A1 | 10/2002 | Davies |

* cited by examiner

**U.S. Patent**    Mar. 14, 2006    Sheet 1 of 3    **US D516,818 S**



FIG. 1



FIG. 2          FIG. 3





FIG. 4

FIG. 5

**JA00032**



US00D516819S

(12) **United States Design Patent**   (10) Patent No.:    **US D516,819 S**
Hohlbein    (45) Date of Patent:    ** *Mar. 14, 2006

(54) **SET OF BRISTLES FOR A TOOTHBRUSH**

(75) Inventor: **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,028**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) LOC (8) Cl. .................................................. **04-02**
(52) U.S. Cl. ...................................................... **D4/104**
(58) Field of Classification Search .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/DIG. 6; 16/430, 431; 132/308, 309, 311; 601/139, 141; 606/160, 161, 235
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,132,326 A | * | 3/1915 | Fouyer ...................... 15/167.1 |
| 1,588,785 A | | 6/1926 | Van Sant |
| 2,161,349 A | | 6/1939 | Hadden |
| 2,186,005 A | | 1/1940 | Casto |
| 2,262,982 A | * | 11/1941 | Wolcott ...................... 15/167.1 |
| D272,683 S | | 2/1984 | Stocchi |
| D273,635 S | | 5/1984 | Stocchi |
| 5,120,225 A | | 6/1992 | Amit |
| 5,396,678 A | | 3/1995 | Bredall et al. |
| D378,166 S | | 2/1997 | Savitt et al. |
| 5,628,082 A | | 5/1997 | Moskovich |

| | | | |
|---|---|---|---|
| D434,906 S | * | 12/2000 | Beals et al. ................... D4/104 |
| D440,767 S | | 4/2001 | Moskovich et al. |
| 6,311,358 B1 | | 11/2001 | Soetewey et al. |
| D451,286 S | * | 12/2001 | Hohlbein ..................... D4/104 |
| 6,374,448 B1 | | 4/2002 | Seifert |
| D456,607 S | | 5/2002 | Carlucci et al. |
| 6,446,295 B1 | | 9/2002 | Calabrese |
| D479,046 S | | 9/2003 | Winkler |
| D483,183 S | | 12/2003 | De Salvo |
| 6,654,979 B1 | | 12/2003 | Calabrese |
| 6,735,804 B1 | | 5/2004 | Carlucci et al. |
| 2001/0023516 A1 | | 9/2001 | Driessen et al. |
| 2002/0004964 A1 | | 1/2002 | Luchino et al. |
| 2002/0108194 A1 | | 8/2002 | Carlucci et al. |
| 2002/0138926 A1 | | 10/2002 | Brown, Jr. et al. |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | 2000000118 A | * | 1/2000 | |
| JP | 2002191436 A | * | 7/2002 | |
| WO | WO 2004/026162 A2 | | 4/2004 | |
| WO | WO 2004/028235 A2 | | 4/2004 | |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **CLAIM**

The ornamental design for a set of bristles for a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective front view of a set of bristles for a toothbrush showing my new design;
FIG. 2 is a right side view thereof;
FIG. 3 is a left side iew thereof;
FIG. 4 is a top view thereof; and,
FIG. 5 is a head end view thereof.
The broken line showing of the remainder of the toothbrush for illustratve pusposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**    Mar. 14, 2006    Sheet 1 of 3    US D516,819 S



FIG. 1



FIG. 2          FIG. 3



FIG. 4



FIG. 5



US00D517812S

(12) **United States Design Patent**      (10) Patent No.:      **US D517,812 S**
Hohlbein et al.                           (45) Date of Patent:   **  Mar. 28, 2006**

(54) **TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/189,729**

(22) Filed: **Sep. 10, 2003**

(51) LOC (8) Cl. ................................................ 04-02
(52) U.S. Cl. ...................................................... D4/104
(58) Field of Classification Search .......... D4/104–112,
D4/132, 134, 138; D24/146, 147; 15/105,
15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5–DIG. 6;
16/430, 431; 132/308, 309, 311; 601/139,
601/141; 606/160, 161, 235
See application file for complete search history.

(56)                 **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,132,326 | A | * 3/1915 | Fouyer ...................... 15/167.1 |
| 1,588,785 | A | 6/1926 | Van Sant |
| 2,161,349 | A | 6/1939 | Hadden |
| 2,186,005 | A | 1/1940 | Casto |
| 2,262,982 | A | * 11/1941 | Wolcott ...................... 15/167.1 |
| D272,683 | S | 2/1984 | Stocchi |
| D273,635 | S | 5/1984 | Stocchi |
| 4,461,285 | A | 7/1984 | Courtin |
| 4,610,043 | A | 9/1986 | Vezjak |
| 5,120,225 | A | 6/1992 | Amit |
| 5,242,235 | A | 9/1993 | Li |
| D340,808 | S | 11/1993 | Sherman et al. |
| D345,256 | S | 3/1994 | Khin |
| 5,305,489 | A | 4/1994 | Lage |
| 5,396,678 | A | 3/1995 | Bredall et al. |
| 5,398,369 | A | 3/1995 | Heinzelman et al. |
| D371,680 | S | 7/1996 | Juhlin et al. |
| 5,628,082 | A | 5/1997 | Moskovich |
| D386,905 | S | 12/1997 | Brady et al. |
| D391,769 | S | 3/1998 | Kling et al. |
| 5,735,011 | A | 4/1998 | Asher |
| 5,735,012 | A | 4/1998 | Heinzelman et al. |
| 5,735,864 | A | 4/1998 | Heisinger, Jr. |
| D412,064 | S | 7/1999 | Achepohl et al. |
| D413,728 | S | 9/1999 | Waguespack et al. |
| D416,685 | S | 11/1999 | Overthun |
| D418,979 | S | 1/2000 | Moskovich et al. |
| D418,981 | S | 1/2000 | Cheong et al. |
| D419,304 | S | 1/2000 | Moskovich et al. |
| D419,773 | S | 2/2000 | Beals et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | 2000000118 | A | * | 1/2000 |
| JP | 2001314232 | A | * | 11/2001 |
| JP | 2002191436 | A | * | 7/2002 |
| WO | WO 9825500 | A1 | * | 6/1998 |
| WO | WO 200117433 | A1 | * | 3/2001 |
| WO | WO 2004/026162 | A2 | | 4/2004 |
| WO | WO 2004/028235 | A2 | | 4/2004 |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57)                 **CLAIM**

The ornamental design for a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a right side front perspective view of a toothbrush of our new design, the left side front perspective view being a mirror image;
FIG. 2 is a right side back perspective view thereof, the left side back perspective view being a mirror image;
FIG. 3 is a back elevation view thereof;
FIG. 4 is a left side elevation view thereof, the right side elevation view being a mirror image;
FIG. 5 is a front elevation view thereof;
FIG. 6 is a bottom plan view thereof; and,
FIG. 7 is a top plan view thereof.
FIGS. 6 and 7 are partial views with the portions not shown being omitted for clarity of the disclosure.

**1 Claim, 3 Drawing Sheets**



US D517,812 S

Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D420,802 S | 2/2000 | Cheong et al. |
| D420,804 S | 2/2000 | Juhlin et al. |
| D421,841 S | 3/2000 | Achepohl et al. |
| D427,437 S | 7/2000 | Vonaburg |
| 6,108,869 A | 8/2000 | Meessmann et al. |
| D437,486 S * | 2/2001 | Francos ........................ D4/104 |
| D439,412 S | 3/2001 | Volpenhein et al. |
| D440,767 S | 4/2001 | Moskovich et al. |
| D448,174 S | 9/2001 | Harris et al. |
| 6,298,516 B1 | 10/2001 | Beals et al. |
| D450,457 S | 11/2001 | Hohlbein |
| 6,311,358 B1 | 11/2001 | Soetewey et al. |
| D452,615 S | 1/2002 | Cheong et al. |
| D453,270 S | 2/2002 | Choong |
| D453,998 S | 3/2002 | Ping |
| D454,252 S | 3/2002 | Lee |
| D456,139 S | 4/2002 | Hohlbein |
| 6,374,448 B1 | 4/2002 | Seifert |
| D456,607 S | 5/2002 | Carlucci et al. |
| D457,323 S | 5/2002 | Hohlbein |
| D457,325 S | 5/2002 | Wilson et al. |
| D458,453 S | 6/2002 | Baertschi |
| D459,086 S | 6/2002 | Belton et al. |
| D461,313 S | 8/2002 | Hohlbein |
| D462,178 S | 9/2002 | Moskovich et al. |
| D462,528 S | 9/2002 | Crossman et al. |
| D463,132 S | 9/2002 | Winter et al. |
| D463,133 S | 9/2002 | Hohlbein |
| 6,446,295 B1 | 9/2002 | Calabrese |
| D463,668 S | 10/2002 | Yoshimoto et al. |
| D466,302 S | 12/2002 | Ping |
| D471,362 S | 3/2003 | Moskovich et al. |
| D474,608 S | 5/2003 | Hohlbein |
| D475,531 S | 6/2003 | Klimeck et al. |
| D476,158 S | 6/2003 | Ling |
| D478,213 S | 8/2003 | Ping |
| D478,424 S | 8/2003 | Saindon et al. |
| D478,425 S | 8/2003 | Ping |
| D478,727 S | 8/2003 | Wong |
| D479,046 S | 9/2003 | Winkler |
| D479,047 S | 9/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| D483,183 S | 12/2003 | De Salvo |
| 6,654,979 B1 | 12/2003 | Calabrese |
| D486,649 S | 2/2004 | Sprosta et al. |
| 6,687,940 B1 | 2/2004 | Gross et al. |
| D487,195 S | 3/2004 | Winkler |
| 6,735,804 B1 | 5/2004 | Carlucci et al. |
| 2001/0023516 A1 | 9/2001 | Driesen et al. |
| 2002/0004964 A1 | 1/2002 | Luchino et al. |
| 2002/0100134 A1 | 8/2002 | Dunn et al. |
| 2002/0138926 A1 | 10/2002 | Brown, Jr. et al. |
| 2002/0138931 A1 | 10/2002 | Davies |

* cited by examiner

**U.S. Patent**    Mar. 28, 2006    Sheet 1 of 3    US D517,812 S



FIG. 1          FIG. 2

JA00039



FIG. 3          FIG. 4          FIG. 5

**U.S. Patent**    Mar. 28, 2006    Sheet 3 of 3    US D517,812 S



FIG. 6



FIG. 7



US00D517813S

(12) **United States Design Patent**     (10) Patent No.:     **US D517,813 S**
Hohlbein et al.                          (45) Date of Patent:    ** *Mar. 28, 2006

(54) **HANDLE PORTION OF A TOOTHBRUSH**

(75) Inventors: **Douglas J. Hohlbein**, Pennington, NJ (US); **Luca Casini**, Milan (IT); **Jacob Pringiers**, Milan (IT)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/211,026**

(22) Filed: **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) LOC (8) Cl. .................................................. 04-02
(52) U.S. Cl. ....................................................... D4/104
(58) Field of Classification Search .......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/6; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D334,474 S | * | 4/1993 | Sauceda ...................... D4/104 |
| D358,938 S | | 6/1995 | Schneider et al. |
| D391,769 S | | 3/1998 | Kling et al. |
| 5,781,958 A | | 7/1998 | Meessmann et al. |
| D416,685 S | | 11/1999 | Overthun |
| D418,981 S | | 1/2000 | Cheong et al. |
| D419,773 S | | 2/2000 | Beals et al. |
| D422,413 S | | 4/2000 | Goldinger et al. |
| D427,437 S | | 7/2000 | Vonarburg |
| D429,566 S | | 8/2000 | Yoshimoto et al. |
| D429,567 S | | 8/2000 | Yoshimoto et al. |
| 6,108,869 A | | 8/2000 | Meessmann et al. |

| | | | |
|---|---|---|---|
| D437,486 S | * | 2/2001 | Francos ...................... D4/104 |
| D439,412 S | | 3/2001 | Volpenhein et al. |
| 6,298,516 B1 | | 10/2001 | Beals et al. |
| D452,615 S | | 1/2002 | Cheong et al. |
| D457,325 S | | 5/2002 | Wilson et al. |
| D459,086 S | | 6/2002 | Belton et al. |
| D462,178 S | | 9/2002 | Moskovich et al. |
| D463,131 S | | 9/2002 | Winter et al. |
| D463,132 S | | 9/2002 | Winter et al. |
| D463,133 S | | 9/2002 | Hohlbein |
| D463,668 S | | 10/2002 | Yoshimoto |
| D471,362 S | | 3/2003 | Moskovich et al. |
| D475,531 S | | 6/2003 | Klimeck et al. |
| D478,211 S | | 8/2003 | Ping |
| D480,213 S | | 10/2003 | Ping |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| WO | WO 200117433 A1 | * | 3/2001 |
| WO | 2004/026162 A2 | | 4/2004 |
| WO | 2004/028235 A2 | | 4/2004 |

* cited by examiner

Primary Examiner—Alan P. Douglas
Assistant Examiner—Lavone D. Tabor
(74) Attorney, Agent, or Firm—Harris A. Wolin

(57)                    **CLAIM**

The ornamental design for a handle portion of a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective front view of a handle portion of a toothbrush showing our new design;
FIG. 2 is a right side view thereof;
FIG. 3 is a left side view thereof;
FIG. 4 is a bottom view thereof; and,
FIG. 5 is a top view thereof.
The broken line showing of the toothbrush head and of various regions and the unshaded areas therein are for illustrative purposes only and forms no part of the claimed design. The different shading techniques used represent a contrast in appearance and do not represent any particular color, material or texture.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**    Mar. 28, 2006    Sheet 1 of 3    US D517,813 S



FIG. 1



FIG. 2

FIG. 3





FIG. 4          FIG. 5

**JA00045**



US00D520753S

(12) **United States Design Patent**     (10) Patent No.:     **US D520,753 S**

Hohlbein     (45) Date of Patent:     ** *May 16, 2006

(54) **SET OF BRISTLES FOR A TOOTHBRUSH**

(75) Inventor:     **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee:     **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice:     This patent is subject to a terminal disclaimer.

(**) Term:     **14 Years**

(21) Appl. No.: **29/211,030**

(22) Filed:     **Aug. 11, 2004**

**Related U.S. Application Data**

(63) Continuation of application No. 29/189,729, filed on Sep. 10, 2003.

(51) **LOC (8) Cl.** .................................................. **04-02**
(52) **U.S. Cl.** ...................................................... **D4/104**
(58) **Field of Classification Search** ......... D4/104–112, D4/132, 134, 138; D24/146, 147; 15/105, 15/110, 111, 143.1, 167.1, 167.2, 207.2, DIG. 5, 15/6; 16/430, 431; 132/308, 309, 311; 601/139, 601/141; 606/160, 161, 235
See application file for complete search history.

(56)     **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,132,326 A | * | 3/1915 | Fouyer ....................... 15/167.1 |
| 1,588,785 A | | 6/1926 | Van Sant |
| 2,161,349 A | | 6/1939 | Hadden |
| 2,186,005 A | | 1/1940 | Casto |
| 2,262,982 A | * | 11/1941 | Wolcott ..................... 15/167.1 |
| D272,683 S | | 2/1984 | Stocchi |
| D273,635 S | | 5/1984 | Stocchi |
| 5,120,225 A | | 6/1992 | Amit |
| 5,396,678 A | | 3/1995 | Bredall et al. |
| D360,981 S | * | 8/1995 | Moskovich et al. ......... D4/104 |
| D378,166 S | | 2/1997 | Savitt et al. |
| 5,628,082 A | | 5/1997 | Moskovich |

| | | | |
|---|---|---|---|
| D434,906 S | * | 12/2000 | Beals et al. ................... D4/104 |
| D440,767 S | | 4/2001 | Moskovich et al. |
| 6,311,358 B1 | | 11/2001 | Soetewey et al. |
| D451,286 S | * | 12/2001 | Hohlbein ..................... D4/104 |
| 6,374,448 B1 | | 4/2002 | Seifert |
| D456,607 S | | 5/2002 | Carlucci et al. |
| 6,446,295 B1 | | 9/2002 | Calabrese |
| D479,046 S | | 9/2003 | Winkler |
| D483,183 S | | 12/2003 | De Salvo |
| 6,654,979 B1 | | 12/2003 | Calabrese |
| 6,735,804 B1 | | 5/2004 | Carlucci et al. |
| 2001/0023516 A1 | | 9/2001 | Driesen et al. |
| 2002/0004964 A1 | | 1/2002 | Luchino et al. |
| 2002/0108194 A1 | | 8/2002 | Carlucci et al. |
| 2002/0138926 A1 | | 10/2002 | Brown, Jr. et al. |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | 2000000118 A | * | 1/2000 | |
| JP | 2002191436 A | * | 7/2002 | |
| WO | WO 2004/026162 A2 | | 4/2004 | |
| WO | WO 2004/028235 A2 | | 4/2004 | |

* cited by examiner

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Lavone D. Tabor
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57)     **CLAIM**

The ornamental design for a set of bristles of a toothbrush, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective front view of a set of bristles for a toothbrush showing my new design;
FIG. 2 is a right side view thereof;
FIG. 3 is a left side view thereof;
FIG. 4 is a top view thereof; and
FIG. 5 is an enlarged perspective view thereof; and,
FIG. 6 is an enlarged top view thereof.
The broken line showing of the remainder of the toothbrush for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 4 Drawing Sheets**





**U.S. Patent**     May 16, 2006     Sheet 1 of 4     US D520,753 S



FIG. 3          FIG. 4




FIG. 1          FIG. 2



FIG. 5



FIG. 6



FIG. 7



FIG. 4



FIG. 5



FIG. 6



US007047591B2

(12) **United States Patent**
Hohlbein

(10) Patent No.: **US 7,047,591 B2**
(45) Date of Patent: **May 23, 2006**

(54) **ORAL CARE IMPLEMENT**

(75) Inventor: **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/902,257**

(22) Filed: **Jul. 30, 2004**

(65) **Prior Publication Data**

US 2005/0044647 A1    Mar. 3, 2005

**Related U.S. Application Data**

(63) Continuation-in-part of application No. PCT/US03/29497, filed on Sep. 17, 2003, and a continuation-in-part of application No. 29/189,729, filed on Sep. 10, 2003.

(60) Provisional application No. 60/412,290, filed on Sep. 20, 2002.

(51) Int. Cl.
*A46B 5/02*    (2006.01)

(52) U.S. Cl. ...................... 15/143.1; 15/167.1; 16/430; 16/436; 16/DIG. 19

(58) Field of Classification Search ............... 15/143.1, 15/167.1; 16/431, 436, DIG. 12, DIG. 19, 16/430; 132/321, 323; 433/141; 601/141; 606/161

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,796,001 A | | 3/1931 | Church |
| 2,263,885 A | | 11/1941 | McGauley |
| 3,185,582 A | | 5/1965 | Viator |
| 3,848,871 A | * | 11/1974 | Sweet et al. ................ 473/549 |
| 4,712,304 A | * | 12/1987 | Sanelli ........................ 30/343 |
| 4,721,021 A | | 1/1988 | Kusznir |
| D317,986 S | | 7/1991 | Huang |
| 5,052,071 A | * | 10/1991 | Halm ........................ 15/167.1 |
| 5,054,154 A | | 10/1991 | Schiffer et al. |
| D334,288 S | | 3/1993 | Witzig-Jaggi |
| 5,339,482 A | | 8/1994 | Desimone et al. |
| 5,398,369 A | | 3/1995 | Heinzelman et al. |
| D358,938 S | | 6/1995 | Schneider et al. |
| D368,163 S | | 3/1996 | Overthun |
| D371,680 S | | 7/1996 | Juhlin et al. |
| D376,695 S | | 12/1996 | Tveras |
| 5,673,454 A | | 10/1997 | Quintanilla et al. |
| 5,735,012 A | | 4/1998 | Heinzelman et al. |
| 5,781,958 A | | 7/1998 | Meessmann et al. |
| 5,860,183 A | | 1/1999 | Kam |
| 5,875,510 A | | 3/1999 | Lamond et al. |
| 5,908,038 A | | 6/1999 | Bennett |

(Continued)

FOREIGN PATENT DOCUMENTS

WO    WO 00/64306    11/2000

(Continued)

*Primary Examiner*—Mark Spisich
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **ABSTRACT**

An oral care implement has an improved handle for control. The handle may include a gripping region having a grip surface with a plurality of spaced slot openings exposing portions of the base. In one construction, the handle may have an inclined portion and a grip body extending through a base of the handle. The grip body forms opposite finger grips on the inclined portion of the handle. In one construction, the handle may include a grip element which provides shifting of a mass centroid of the handle during use. In another construction, the handle includes a resilient grip body and the handle includes an aperture extend through the handle. Aperture has an inclined surface for engaging a resilient grip body.

**34 Claims, 6 Drawing Sheets**



## US 7,047,591 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D412,064 S | 7/1999 | Achepohl et al. |
| 5,926,901 A | 7/1999 | Tseng et al. |
| D413,728 S | 9/1999 | Waguespack et al. |
| D415,352 S | 10/1999 | Beals et al. |
| 5,964,009 A * | 10/1999 | Hoepfl et al. .................. 16/430 |
| D416,685 S | 11/1999 | Overthun |
| D418,979 S | 1/2000 | Moskovich et al. |
| D419,304 S | 1/2000 | Moskovich et al. |
| D419,773 S | 2/2000 | Beals et al. |
| D420,802 S | 2/2000 | Cheong et al. |
| D420,804 S | 2/2000 | Juhlin et al. |
| D421,184 S | 2/2000 | Koh et al. |
| D421,841 S | 3/2000 | Achepohl et al. |
| 6,049,936 A | 4/2000 | Holley |
| 6,070,286 A * | 6/2000 | Cardarelli .................. 15/167.1 |
| 6,076,223 A * | 6/2000 | Dair et al. .................. 15/167.1 |
| D429,566 S | 8/2000 | Yoshimoto et al. |
| D429,567 S | 8/2000 | Yoshimoto et al. |
| 6,108,849 A | 8/2000 | Weihrauch |
| 6,108,869 A | 8/2000 | Meessmann et al. |
| 6,128,808 A * | 10/2000 | Jansson et al. .................. 16/431 |
| D434,906 S | 12/2000 | Beals et al. |
| 6,179,503 B1 | 1/2001 | Taghavi-Khanghah |
| D439,412 S | 3/2001 | Volpenhein et al. |
| D440,767 S | 4/2001 | Moskovich et al. |
| D441,958 S | 5/2001 | Rueb |
| 6,266,840 B1 * | 7/2001 | Munro .................. 15/167.1 |
| D446,021 S | 8/2001 | Jen |
| D447,238 S | 8/2001 | Tang |
| D448,174 S | 9/2001 | Harris et al. |
| D448,570 S | 10/2001 | Harris et al. |
| D448,571 S | 10/2001 | Harris et al. |
| 6,298,516 B1 | 10/2001 | Beals et al. |
| D450,457 S | 11/2001 | Hohlbein |
| 6,322,362 B1 * | 11/2001 | Holms .................. 433/143 |
| 6,325,626 B1 * | 12/2001 | Blass .................. 433/141 |
| 6,332,233 B1 | 12/2001 | Proulx |
| D452,615 S | 1/2002 | Cheong et al. |
| D453,270 S | 2/2002 | Choong |
| D453,998 S | 3/2002 | Ping |
| D454,252 S | 3/2002 | Lee |
| 6,353,958 B1 * | 3/2002 | Weihrauch .................. 15/167.1 |
| D456,139 S | 4/2002 | Hohlbein |
| D457,323 S | 5/2002 | Hohlbein |
| D457,325 S | 5/2002 | Wilson et al. |
| D458,453 S | 6/2002 | Baertschi |
| D459,086 S | 6/2002 | Belton et al. |
| 6,408,476 B1 | 6/2002 | Cann |
| 6,408,524 B1 * | 6/2002 | Lai .................. 30/324 |
| D461,313 S | 8/2002 | Hohlbein |
| D462,178 S | 9/2002 | Moskovich et al. |
| D462,527 S | 9/2002 | Ping |
| D462,528 S | 9/2002 | Crossman et al. |
| D463,131 S | 9/2002 | Winter et al. |
| D463,132 S | 9/2002 | Winter et al. |
| D463,133 S | 9/2002 | Hohlbein |
| D463,668 S | 10/2002 | Yoshimoto et al. |
| D466,302 S | 12/2002 | Ping |
| D467,430 S | 12/2002 | Ping |
| D469,958 S | 2/2003 | Saindon et al. |
| D474,608 S | 5/2003 | Hohlbein |
| D475,531 S | 6/2003 | Klimeck et al. |
| D476,158 S | 6/2003 | Ling |
| D476,487 S | 7/2003 | Saindon et al. |
| D478,211 S | 8/2003 | Ping |
| D478,213 S | 8/2003 | Ping |
| D478,424 S | 8/2003 | Saindon et al. |
| D478,425 S | 8/2003 | Ping |
| D478,727 S | 8/2003 | Wong |
| D478,728 S | 8/2003 | Wong |
| 6,601,272 B1 | 8/2003 | Stvartak et al. |
| D479,047 S | 9/2003 | Wong |
| D479,914 S | 9/2003 | Choong |
| D480,213 S | 10/2003 | Ping |
| D480,214 S | 10/2003 | Kling et al. |
| D480,877 S | 10/2003 | Crossman et al. |
| D482,199 S | 11/2003 | De Salvo |
| D483,569 S | 12/2003 | Wong |
| D485,989 S | 2/2004 | Winkler |
| D486,649 S | 2/2004 | Sprosta et al. |
| 6,687,940 B1 | 2/2004 | Gross et al. |
| D487,195 S | 3/2004 | Winkler |
| D488,621 S | 4/2004 | Wong |
| 2001/0047556 A1 | 12/2001 | Weihrauch |
| 2002/0100134 A1 | 8/2002 | Dunn et al. |
| 2002/0138931 A1 | 10/2002 | Davies |
| 2002/0170145 A1 | 11/2002 | Stvartak et al. |
| 2004/0010878 A1 | 1/2004 | Kraemer |
| 2004/0025272 A1 | 2/2004 | Stvartak et al. |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 2003-005855 A1 | 1/2003 |

* cited by examiner



FIG. 1



FIG. 2                    FIG. 3



FIG. 4



FIG. 5



FIG. 6

FIG. 7



FIG. 8



FIG. 9

US 7,047,591 B2

1

# ORAL CARE IMPLEMENT

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation in part of co-pending PCT Application No. PCT/US2003/029497 (designating the U.S.), filed Sep. 17, 2003, entitled "Toothbrush With Gripping Area", which claims priority of U.S. Provisional Application Ser. No. 60/412,290, filed Sep. 20, 2002. This application also is a continuation in part of co-pending U.S. patent application Ser. No. 29/189,729, filed Sep. 10, 2003. The contents of the above-noted applications are each expressly incorporated herein by reference.

## FIELD OF THE INVENTION

The present invention generally pertains to an oral care implement, and in particular, to an implement with an improved handle.

## BACKGROUND OF THE INVENTION

Oral care implements, especially toothbrushes, are used by many people on a daily basis. With such devices, a handle is usually provided to be grasped and manipulated by the user as needed. However, many handles are simply linear rods of relatively rigid material which are neither comfortable nor given to easy manipulation. Further, use of an oral care implement may commonly occur under wet conditions, which can cause the handle to be slippery. Accordingly, there is a need for an oral care implement that provides for improved control and greater comfort for the user.

## BRIEF SUMMARY OF THE INVENTION

The invention pertains to an oral care implement with an improved handle that provides greater comfort and improved control during use.

In one aspect of the invention, the handle includes a gripping region formed by a grip member having a plurality of spaced openings that expose portions of an underlying base. In a preferred embodiment, the grip member is an elastomer and the exposed base portions are recessed in the slots. This construction provides a reliable, slip-resistant and comfortable portion to be grasped.

In one other aspect of the invention, the handle has a resilient grip body that extends through the handle to be gripped by the user's finger and thumb. In a preferred embodiment, the grip body is fit into a large opening in a base where the mass of the grip body can be shifted by pressure on either side for greater comfort and control, and to dampen the pressure applied by the brush. Moreover, the grip body also preferably includes a friction surface to resist slippage.

In one other aspect of the invention, the handle includes an inclined segment that offsets the head of the implement relative to a palm gripping region for better control and manipulation of the toothbrush or other implement. A grip body is preferably positioned along the inclined segment to further enhance the comfort and control felt by the user.

In another aspect of the invention, the handle includes a large aperture into which a resilient grip body is stably fixed. The aperture has a sidewall geometry shaped for securely engaging the resilient grip body while facilitating an easy molding process. In a preferred construction, the sidewall

2

geometry includes at least one inclined surface which defines a narrowed portion of the aperture.

## BRIEF DESCRIPTION OF THE DRAWINGS

A more complete understanding of the present invention and the advantages thereof may be acquired by referring to the following description in consideration of the accompanying drawings, in which like reference numbers indicate like features, and wherein:

FIG. 1 is a perspective front view of an oral care implement according to one or more aspects of an illustrative embodiment;

FIG. 2 is a rear view of the oral care implement of FIG. 1;

FIG. 3 is a front view of the oral care implement of FIG. 1;

FIG. 4 is a side view of the oral care implement of FIG. 1;

FIG. 5 is a section view of the oral care implement taken along line 5—5 in FIG. 3;

FIG. 6 is a partial side view of a base of an oral care implement of FIG. 1;

FIG. 7 is a partial front view of the base of FIG. 6;

FIG. 8 is a top axial view of the oral care implement of FIG. 1; and

FIG. 9 is a bottom axial view of the oral care implement of FIG. 1.

## DETAILED DESCRIPTION OF THE INVENTION

FIGS. 1–9 illustrate an oral care implement in the form of a toothbrush 100 having an improved handle 103 and a head 105 with bristles or other tooth engaging elements. While reference is made to a toothbrush with an improved handle, other oral care implements, such as inter-proximal picks, flossing tools, plaque scrapers, tongue and soft tissue cleansers/massagers and the like, may use the same handle. It is also to be understood that other embodiments may be utilized, and that structural and functional modifications may be made without departing from the scope of the present invention.

Handle 103 is provided for the user to reliably grip and manipulate the toothbrush. Handle 103 includes ergonomic features which provide a high degree of control for the user while maintaining comfort. In a preferred construction (FIGS. 1–9), handle 103 includes a base 300, a grip body 403, and a gripping member 407. These components cooperatively form a grip portion 400 by which the user holds and manipulates the toothbrush. For optimum comfort and control, grip portion 400 includes three segments 111, 113, 115. A rear segment 115 forms a portion that generally fits comfortably within the palm of the user. A front segment 111 forms a portion that generally fits comfortably between the user's thumb and index finger. A narrow transition segment 113 connects the front and rear segments 111, 115.

In a preferred construction, front segment 111 is inclined relative to rear segment 115 to define an inclined portion positioned for comfortable gripping and to facilitate a desired offset positioning of the head relative to the palm gripping region 115. The angle θ of the incline is preferably about 23 degrees, but may range approximately between 5–40 degrees. This feature allows improved control of the handle during brushing in which the head 105 can be more desirably positioned within the mouth to engage the tooth cleaning elements 200 against the teeth.

US 7,047,591 B2

3                                                    4

In the preferred embodiment, front and rear segments 111, 115 are widened sections that are joined by a narrowed portion 113 to form an undulating structure which is more reliably and comfortably held within the user's hand. Further, this wide construction of the palm and finger gripping regions 111, 115 requires less fine motor control by the user and is, hence, easier to hold and manipulate. In addition, front segment 111 transitions into neck 116 which, in turn, supports head 105. In a preferred embodiment, base 300 includes a gripping region 301 that corresponds to grip portion 400, the neck 116, and the head 105 to define an oral engaging region.

Under a normal use position, grip portion 400 is grasped by a user with the fingers engaging the handle 103 so that the thumb is on one side and the index finger and other fingers are positioned on the opposite side. Front segment 111 of grip portion 400 includes grip body 403 having opposing sides 405, 404 preferably for engaging the thumb and index finger of a user. Grip portion 400 further includes a rear segment 115 which enables reliable gripping of the toothbrush 100 with the third through the fifth fingers of the user's hand in a normal use position. While a normal use position is discussed, the features of the toothbrush could be employed by a user having less fingers or a user which holds the toothbrush in other ways.

In one preferred construction, front section 111 includes a soft, resilient grip body 403 fixed within aperture 303 of base 300. As shown in FIGS. 8 and 9, front section 111 has the widest transverse dimension of any other part of handle 103. As shown in FIGS. 1 and 4, aperture 303 occupies more than one-half of the transverse dimension across front section 111 of handle 103. Nevertheless, other constructions are possible. As an example only, grip body 403 may occupy a smaller portion of the transverse dimension, such as one-third of the transverse dimension of front section 111. Nevertheless, the width and length of aperture 303 may be adjusted as desired and other parts of handle 103 may be as wide as or wider than front segment 111.

Referring to FIGS. 5–7, in one construction, aperture 303 extends through base 300 to mount grip body 403. Aperture 303 includes a sidewall geometry 305 for the retaining and dynamic positioning of the resilient grip body 403 during use of the toothbrush. While grip body 403 is preferably molded into aperture 303, it could be premolded and mounted into aperture 303. In a preferred construction, grip member 403 is a soft, resilient element formed of a thermoplastic elastomer (TPE) which fills the aperture 303. To provide optimum comfort as well as control benefits, the elastomeric material preferably has a hardness durometer measurement ranging between A11 to A15 Shore hardness. Nevertheless, the hardness of the elastomer could also range between A8 to A24 Shore hardness. Other materials outside this hardness range could also be used. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene (SEBS) manufactured by GLS Corporation. Nevertheless, other manufacturers can supply the SEBS material and other materials could be used.

Referring to FIGS. 1–5, resilient grip body 403 preferably has a generally bulbous shape that bulges out of aperture 303 and which resembles an oval or elliptical shape. The bulbous shape of the resilient grip body 403 enables the user to reliably roll and control the handle 103 between the thumb and index fingers during use. Grip body 403 could also be non-bulging or have any number of shapes, such as circular, a true oval shape and the like.

Referring to FIGS. 5–7, aperture 303 preferably includes a peripheral shoulder or rim 304 for supporting grip body

403. Sidewall 305 of aperture 303 extends between opposing outer surfaces of base 300 and includes inclined surfaces 309, 310 inside of the periphery of aperture 303. The inclined surfaces 309, 310 extend from the outer surfaces towards a rounded edge surface 311 which is the narrowest part of the aperture 303. This construction, in conjunction with the soft, resilient nature of grip member 403, provides a weight shifting feature which improves control of the handle 103 during use.

Resilient grip body 403 further helps attenuate the brushing force applied to the oral surfaces to prevent gum recession, loss of tooth enamel or to provide for a more comfortable brushing experience. When the toothbrush is used against the oral surfaces, such as the teeth, reaction forces are transferred to the resilient grip body 403. The elastomeric material dampens the forces against the head 105 which reduces the brush pressure applied to the teeth and soft tissue surfaces, such as the gums. In a preferred construction, elastomeric material of the resilient grip body 403 is enabled to flow and shift within aperture 303. Net pressure applied by the user's fingers is transferred to grip body 403 so that the inclined surface 309, 310 enables the elastomeric material to flow to the narrowest portion of the aperture. Hence, some of the elastomeric material squeezes past rounded edge surface 311 to the other side of the aperture while under pressure. The shifting of the material to the other side of the aperture causes a slight shift in the mass centroid of the resilient member 403 to counter balance the brushing forces. Thus, grip body 403 balances handle 103 enabling it to "float" in the hand of the user and reduce the brushing forces applied by the head 105.

In one preferred construction, grip body 403 has a multiplicity of finger grip protrusions 411 (FIGS. 1–5). Finger grip protrusions 411 provide a tactile feature to increase the friction on the user's finger surfaces and thus enhance the user's ability to grip the handle, particularly under wet conditions. Finger grip protrusions 411 are preferably provided in a desired conical or frusto-conical shape for improved grip performance. Of course, other roughened surfaces could be used.

Referring to FIGS. 6 and 7, rear segment 115 is preferably formed by base 300 and gripping member 407. In one preferred embodiment, base 300 defines a relatively rigid support structure which is at least partially overlain by an elastomeric gripping member 407. While gripping member 407 is shown as a single unitary member or layer, it could be formed by separate independent parts or sections.

Base 300 along rear segment 115 includes at least one projection, and preferably a plurality of spaced projections. While the projections could have virtually any shape, they are preferably in the form of spaced, elongate, transverse projections or ribs 315. In the preferred embodiment, ribs 315 are generally parallel with respect to each other and generally symmetrical in relation to the longitudinal axis a—a of rear segment 115. The projections 315 are preferably linear and span laterally between the longitudinal sides 313, 314 of handle 103, although they may have different transverse lengths. The transverse length of each projection 315 generally matches the width at the longitudinal location along the handle 103; although the ribs are preferably slightly short of the actual width of handle segment 115 at any one location so as to be covered on the sides by gripping member 407. Since ribs 315 span the width of segment 115, they each have varying lengths due to the variations in the width of handle segment 115. While nine projections are shown, the inventive aspects may be obtained by other numbers of projections.

5

In a preferred arrangement, a receiving region 317 is defined between each of the adjacent transverse projections 315. The receiving regions 317 are configured to retain and hold a layer of suitable gripping member 407, such as a thermoplastic elastomer (TPE) or other similar materials used in oral care products. In a preferable construction, receiving regions 317 have a transverse arcuate base surface 319 with a transverse groove or depression 321. The arcuate base surface 319 extends between the longitudinal sides of base 300. When a gripping member 407 is applied to the base, grooves 321 create concaved regions 413 in grip surface 410 to improve the tactile performance of the toothbrush handle (see FIG. 4). While horizontal or straight projections 315 are illustrated, the projections 315, alternatively, may be any number of shapes or orientations with respect to the longitudinal axis a—a. For example, the projections 315 may be chevron shaped, circular, oval, elliptical, rectangular, or triangular or other shapes. The orientation of the projections 315 may also be off-axis from the longitudinal axis a-a to form an asymmetrical relationship. The projections 315 may be regularly or randomly spaced on base 300 for the intended gripping performance. As shown in FIG. 7, a peripheral portion of base 300 has a peripheral groove 323 arranged to receive and hold a layer of the grip material for suitable use with the toothbrush.

Referring to FIGS. 2, 4 and 5, gripping member 407 is fixed to base 300 to provide several gripping features to improve performance. In one aspect, gripping member 407 has a grip surface 410 with at least one and preferably a plurality of spaced openings, preferably in the form of elongate transverse slots 415, which expose portions of base 300. In this way, the outline shape of slots 415 is formed by the peripheral shape of projections 315 of base 300 (FIGS. 6 and 7). To form slots 415, suitable injection molding equipment mates with the top surfaces of the projections 315 to prevent overmolding of ribs 315 and any undesired deflection of base 300 during the molding process. This enables the top surfaces of the projections 315 to be exposed after the molding process.

To provide comfort as well as control benefits, the elastomeric material of the grip surface 410 may have a hardness durometer measurement ranging between A13 to A50 Shore hardness, although materials outside this range may be used. A preferred range of the hardness durometer rating is between A25 to A40 Shore hardness. While an injection molded construction is preferred, a suitable deformable thermoplastic material, such as TPE, may be formed in a thin layer and attached to base 300 with an appropriate adhesive or by other means. Irrespective of the manufacturing process, ribs 315 are preferably recessed relative to gripping surface 410, i.e., a suitable thickness of elastomeric material is used to control the depth of the slot 415 as measured from the top of the grip surface 410 to the top of the projection (e.g., the exposed portion of base 300). In a preferred construction, the depth of the slots along axis a—a is about 0.5 mm. These transverse slots 415 prevent slippage of the handle 103 by enabling portions of the user's fingers to slightly protrude into the depth of the slot 415. Additionally, slots 415 channel water away from the fingers tips during wet operational conditions. Air is also able to enter the slots during brushing to provide some evaporative effect.

In another aspect, the grip surface 410 includes concaved regions 413 between each slot 415 to further improve the grip performance of handle 103. The concaved regions 413 are preferably created by a suitable thickness of the elastomeric material during the injection molding process filling into the transverse grooves 321 in base 300, but could be

6

formed by other means (FIGS. 6 and 7). While base surface 319 is preferably arcuate in a transverse direction, the base surface may be horizontal or take on other shapes.

In one preferred construction, resilient grip body 403 has a different hardness as compared to the hardness of the grip surface 410. Generally, the material of grip body 403 is softer than the material forming the grip surface 410. In this manner, the handle 103 may be provided different grip features to complement the particular control need. For example, the handle 103 may have a soft forward portion with a shock absorption advantage and a slightly harder aft portion with a comfort and control advantage. The material of the resilient grip body 403 and grip surface 410 are preferably each a thermoplastic elastomer.

The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any combination, improve the control and grip performance of oral implements. Other constructions of toothbrush are possible. For example, head 105 may be replaceable or interchangeable on handle 103. Head 105 may include various oral surface engaging elements, such as inter-proximal picks, brushes, flossing element, plaque scrapper, tongue cleansers and soft tissue massages. While the various features of the toothbrush 100 work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to obtain some of the aforementioned advantages without the necessity to adopt all of these features in an oral care implement.

While the invention has been described with respect to specific examples including presently preferred modes of carrying out the invention, those skilled in the art will appreciate that there are numerous variations and permutations of the above described systems and techniques. It is to be understood that other embodiments may be made without departing from the scope of the present invention. Thus, the spirit and scope of the invention should be construed broadly as set forth in the appended claims.

What is claimed is:

1. An oral care implement comprising:
a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough;
a gripping member at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base; and
a resilient grip body in the gripping region and extending through the aperture, the gripping member having a different durometer characteristic than the resilient grip body.

2. The oral care implement according to claim 1, in which the gripping member and the grip body comprises an elastomeric material.

3. The oral care implement according to claim 2, in which the at least one opening exposing a portion of the base is recessed to define a cavity.

4. The oral care implement according to claim 3, in which the base further includes at least one projection which has an outer surface, and the exposed portion of the base in the least one opening being the outer surface of the projection.

5. The oral care implement according to claim 2 wherein the at least one opening further comprises a plurality of openings provided in the gripping member.

6. The oral care implement according to claim 5, in which the gripping member further includes a concaved region disposed between each pair of adjacent openings.

US 7,047,591 B2

7

7. The oral care implement according to claim 6, in which the base further includes a plurality of projections and a base surface extending between the projections, wherein the base surface between each adjacent pair of said projections has a groove disposed between the projections, and wherein the groove is disposed below the concaved regions.

8. The oral care implement of claim 5, in which the openings are elongate, transverse slots.

9. The oral care implement according to claim 8, in which the slots have varying lengths along a longitudinal direction of the gripping region.

10. The oral care implement according to claim 5 wherein the resilient grip body is fixed in the aperture to define tactile finger gripping surfaces on opposite sides of the base.

11. The oral care implement according to claim 10, in which the openings in the gripping member with exposed portions of the base are recessed.

12. The oral care implement according to claim 11, in which the gripping region of the base includes a rear segment and a front segment that is inclined relative to the rear segment, the rear segment including the gripping member.

13. The oral care implement according to claim 12 wherein the aperture is formed in the front segment.

14. The oral care implement according to claim 2 wherein the grip body is surrounded by the gripping member on one side of the aperture.

15. The oral care implement according to claim 1, in which the grip body is of a softer material than said gripping member.

16. The oral care implement according to claim 15 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

17. The oral care implement according to claim 16 wherein the at least one opening further comprises a plurality of openings provided in the gripping member.

18. The oral care implement according to claim 17, in which the exposed portions of the base in the gripping member are recessed.

19. The oral care implement according to claim 1, wherein the resilient grip body is fixed in the aperture to define tactile finger gripping surfaces on opposite sides of the base.

20. The oral care implement according to claim 19 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

21. The oral care implement according to claim 1, in which the base includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

8

22. The oral care implement according to claim 21, in which the first section is inclined relative to the second section.

23. The oral care implement according to claim 1, in which the exposed portion of the base is recessed in the gripping member to define a cavity in the opening.

24. The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base and the grip body is composed of a softer material than the gripping member.

25. The oral care implement according to claim 24, in which the at least one opening includes a plurality of openings exposing base portions that are recessed relative to the gripping member.

26. The oral care implement according to claim 1, in which the oral engaging region includes teeth cleaning elements.

27. An oral care implement comprising:
   a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20–40 degrees thereby defining the inclined portion;
   a resilient grip surface being disposed on the rear segment; and
   a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

28. The oral care implement according to claim 27, in which the grip body comprises an elastomeric material.

29. The oral care implement according to claim 27, in which the grip body is configured to counterbalance forces acting on the base.

30. The oral care implement according to claim 27, in which the grip body has a hardness of about 8–24 Shore A.

31. The oral care implement according to claim 30 wherein the resilient grip surface has a hardness of about 13–50 Shore A.

32. The oral care implement according to claim 27 wherein the grip body is spaced from the grip surface by a portion of the base.

33. The oral care implement according to claim 27 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

34. The oral care implement according to claim 27 wherein each said finger gripping surface includes a plurality of projections.

* * * * *



US007089621B2

(12) **United States Patent**
    Hohlbein

(10) Patent No.:     **US 7,089,621 B2**
(45) Date of Patent:     **Aug. 15, 2006**

(54) **TOOTHBRUSH**

(75) Inventor: **Douglas J. Hohlbein**, Pennington, NJ (US)

(73) Assignee: **Colgate-Palmolive Company**, New York, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/870,462**

(22) Filed: **Jun. 18, 2004**

(65) **Prior Publication Data**

US 2005/0000048 A1     Jan. 6, 2005

**Related U.S. Application Data**

(63) Continuation of application No. PCT/US03/30633, filed on Sep. 26, 2003, and a continuation-in-part of application No. 10/601,106, filed on Jun. 20, 2003, now abandoned, application No. 10/870,462, which is a continuation-in-part of application No. PCT/US03/29497, filed on Sep. 17, 2003, application No. 10/870,462, which is a continuation-in-part of application No. 29/189,729, filed on Sep. 10, 2003.

(60) Provisional application No. 60/419,425, filed on Oct. 18, 2002, provisional application No. 60/418,776, filed on Oct. 16, 2002, provisional application No. 60/414,117, filed on Sep. 27, 2002, provisional application No. 60/412,290, filed on Sep. 20, 2002.

(51) Int. Cl.
    *A46B 9/04*     (2006.01)

(52) U.S. Cl. ...................... 15/110; 15/22.1; 15/167.1; 601/142

(58) Field of Classification Search ................ 15/22.1, 15/22.2, 110, 167.1, 28, 170; 433/127, 186; 601/139, 141, 142
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

411,910 A     10/1889     Van Horne

| | | | |
|---|---|---|---|
| 1,188,823 A | 6/1916 | Plank | |
| 1,191,556 A | 7/1916 | Blake | |
| 1,268,544 A | 6/1918 | Cates | |
| 1,405,279 A | 7/1922 | Cassedy | |
| 1,588,785 A | 8/1926 | Van Sant | |
| 1,598,224 A | 8/1926 | Van Sant | |
| 1,910,414 A | 5/1933 | Varga | |
| 1,924,152 A | 8/1933 | Coney et al. | |
| 2,059,914 A | 11/1936 | Rosenberg | |
| 2,083,217 A | 6/1937 | Brother et al. | |
| 2,088,839 A | 8/1937 | Coney et al. | |
| 2,161,349 A | 6/1939 | Hadden | |
| 2,186,005 A | 1/1940 | Casto | |
| 2,305,461 A * | 12/1942 | Spyra | ....................... 15/167.1 |
| 2,312,828 A | 3/1943 | Adamsson | |
| 2,364,205 A * | 12/1944 | Fuller | ....................... 601/141 |
| 2,443,461 A | 6/1948 | Kempster | |
| 2,545,814 A | 3/1951 | Kempster | |

(Continued)

FOREIGN PATENT DOCUMENTS

EP     0449655 B1     5/1995

(Continued)

*Primary Examiner*—Gladys JP Corcoran
*Assistant Examiner*—Shay Balsis
(74) *Attorney, Agent, or Firm*—Harris A. Wolin

(57) **ABSTRACT**

A toothbrush includes a head and a plurality of tooth cleaning elements for enhanced cleaning of the teeth. The tooth cleaning elements include cleaning elements that define a loop arrangement for better retention of the dentifrice, a central cleaning element disposed within the loop, two opposing arcuate cleaning elements disposed on opposite sides of the loop, peripheral cleaning element with a stepped and tapered construction, elongate distal cleaning elements, and proximal cleaning elements.

**33 Claims, 5 Drawing Sheets**



**US 7,089,621 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,637,870 A | 5/1953 | Cohen |
| 3,153,800 A | 10/1964 | Trotin |
| 3,195,537 A | 7/1965 | Blasl |
| 3,261,354 A | 7/1966 | Shpuntoff |
| 3,638,270 A | 2/1972 | Schlegel, Jr. et al. |
| 4,249,521 A | 2/1981 | Gueret |
| 4,277,862 A | 7/1981 | Weideman |
| 4,292,705 A | 10/1981 | Stouffer |
| D272,683 S | 2/1984 | Stocchi |
| D272,687 S | 2/1984 | Stocchi |
| D272,689 S | 2/1984 | Stocchi |
| D272,690 S | 2/1984 | Stocchi |
| D273,635 S | 5/1984 | Stocchi |
| 4,455,704 A | 6/1984 | Williams |
| 4,461,285 A | 7/1984 | Courtin |
| 4,493,125 A | 1/1985 | Collis |
| 4,592,108 A | 6/1986 | Svendsen |
| 4,607,411 A | 8/1986 | Lewis, Jr. |
| 4,827,557 A | 5/1989 | Siler, Jr. et al. |
| 5,120,225 A | 6/1992 | Amit |
| 5,242,235 A | 9/1993 | Li |
| 5,305,489 A | 4/1994 | Lage |
| 5,373,600 A | 12/1994 | Stojanovski et al. |
| 5,392,483 A | 2/1995 | Heinzelman et al. |
| 5,396,678 A | 3/1995 | Bredall et al. |
| 5,446,940 A | 9/1995 | Curtis et al. |
| 5,570,487 A | 11/1996 | Schneider |
| 5,584,690 A | 12/1996 | Maassarani |
| 5,604,951 A | 2/1997 | Shipp |
| 5,628,082 A | 5/1997 | Moskovich |
| D386,905 S | 12/1997 | Brady et al. |
| 5,729,858 A | 3/1998 | Riffel |
| 5,735,011 A | 4/1998 | Asher |
| 5,735,864 A | 4/1998 | Heisinger, Jr. |
| 5,778,475 A | 7/1998 | Garcia |
| 5,809,608 A | 9/1998 | Zadro |
| D402,116 S | 12/1998 | Magloff et al. |
| D403,510 S | 1/1999 | Menke et al. |
| 5,875,510 A | 3/1999 | Lamond et al. |
| 5,896,614 A | 4/1999 | Flewitt |
| 5,930,860 A | 8/1999 | Shipp |
| 5,930,861 A | 8/1999 | White |
| 5,970,564 A | 10/1999 | Inns et al. |
| 5,974,614 A | 11/1999 | Ross |
| 6,041,467 A | 3/2000 | Roberts et al. |
| 6,041,468 A | 3/2000 | Chen et al. |

| | | | |
|---|---|---|---|
| D422,143 S | 4/2000 | Beals et al. | |
| D424,808 S | 5/2000 | Beals et al. | |
| D425,306 S | 5/2000 | Beals et al. | |
| 6,098,233 A | 8/2000 | Chen | |
| 6,105,191 A | 8/2000 | Chen et al. | |
| 6,108,851 A | 8/2000 | Bredall et al. | |
| 6,119,296 A | 9/2000 | Noe et al. | |
| D440,767 S | 4/2001 | Moskovich et al. | |
| 6,260,227 B1 * | 7/2001 | Fulop et al. | 15/167.1 |
| 6,276,021 B1 | 8/2001 | Holhbien | |
| D450,929 S | 11/2001 | Angelini et al. | |
| 6,311,358 B1 | 11/2001 | Soetewey et al. | |
| 6,319,332 B1 | 11/2001 | Gavney, Jr. et al. | |
| 6,374,448 B1 | 4/2002 | Seifert | |
| 6,389,634 B1 | 5/2002 | Devlin et al. | |
| D461,959 S | 8/2002 | Chan et al. | |
| 6,446,295 B1 | 9/2002 | Calabrese | |
| 6,463,618 B1 | 10/2002 | Zimmer | |
| 6,463,619 B1 | 10/2002 | Gavney, Jr. | |
| 6,496,999 B1 | 12/2002 | Gleason et al. | |
| 6,513,182 B1 | 2/2003 | Calabrese et al. | |
| 6,546,586 B1 | 4/2003 | Cho | |
| D483,568 S | 12/2003 | Jamison | |
| 6,658,688 B1 | 12/2003 | Gavney, Jr. | |
| 6,859,969 B1 * | 3/2005 | Gavney et al. | 15/117 |
| 2001/0042280 A1 | 11/2001 | Moskovich et al. | |
| 2002/0124333 A1 | 9/2002 | Hufliger et al. | |
| 2002/0138928 A1 | 10/2002 | Calabrese et al. | |
| 2003/0196283 A1 | 10/2003 | Gutzemeyer et al. | |
| 2003/0208865 A1 | 11/2003 | Davies | |
| 2003/0229959 A1 | 12/2003 | Kim et al. | |
| 2004/0025275 A1 | 2/2004 | Moskovich et al. | |
| 2004/0068810 A1 | 4/2004 | Lee | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1308108 | 5/2003 |
| GB | 2371217 | 7/2002 |
| JP | 51 36303 | 8/1976 |
| JP | 9-182626 | 7/1997 |
| JP | 10-42957 | 2/1998 |
| WO | WO 97/03587 | 2/1997 |
| WO | WO 1998/05241 A | 2/1998 |
| WO | WO 99/01054 | 1/1999 |
| WO | WO 99/07251 | 2/1999 |
| WO | WO 2003/030680 A | 4/2003 |
| WO | WO 2004/019801 A | 3/2004 |

\* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4

FIG. 5



FIG. 6

**U.S. Patent**    Aug. 15, 2006    Sheet 5 of 5    US 7,089,621 B2



# FIG. 7

US 7,089,621 B2

1

## TOOTHBRUSH

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation in part of U.S. patent application Ser. No. 10/601,106 filed Jun. 20, 2003, abandoned, entitled "Toothbrush with Tongue Cleaning Member", and is a continuation in part of U.S. PCT application Ser. No. PCT/US2003/030633 (designating the U.S.) filed Sep. 26, 2003, entitled "Toothbrush", which claims priority to U.S. Patent Application No. 60/414,117, filed Sep. 27, 2002 (now abandoned), U.S. Patent Application No. 60/418, 776, filed Oct. 16, 2002 (now abandoned) and U.S. patent application Ser. No. 60/419,425, filed Oct. 18, 2002 (now abandoned), and is, a continuation in part of PCT patent application No. PCT/US2003/029497 (designating the U.S.), filed Sep. 17, 2003, entitled "Toothbrush With Gripping Area", which claims priority to U.S. Provisional Patent Application Ser. No. 60/412,290, filed Sep. 20, 2002 (now abandoned), and is a continuation in part of U.S. Patent Application Ser. No. 29/189,729, filed Sep. 10, 2003. This application is also related to U.S. Patent Application Ser. No. 10/869,922 entitled "Oral Care Implement" filed on the same date herewith. The contents of the above-noted applications are each expressly incorporated herein by reference.

### FIELD OF THE INVENTION

The present invention pertains to a toothbrush with an enhanced cleaning head.

### BACKGROUND OF THE INVENTION

A toothbrush is used to clean the teeth by removing plaque and debris from the tooth surfaces. Conventional toothbrushes provided with a flat bristle trim are limited in their ability to conform to the curvature of the teeth, to penetrate into the interproximal areas between the teeth, to sweep away the plaque and debris, and to clean along the gum line. Additionally, such toothbrushes have a limited ability to retain dentifrice for cleaning the teeth. During the brushing process, the dentifrice typically slips through the tufts of bristles and away from the contact between the bristles and the teeth. As a result, the dentifrice often is spread around the mouth, rather than being concentrated on the contact of the bristles with the teeth. Therefore, the efficiency of the cleaning process is reduced.

### SUMMARY OF THE INVENTION

The invention pertains to a toothbrush with a novel arrangement of cleaning elements to provide superior cleaning of the teeth.

In one aspect of the invention, a toothbrush includes a head having a plurality of tooth cleaning elements extending from a base surface. The tooth cleaning elements generally define a loop arrangement to better retain the dentifrice proximate to the contact between the bristles and the teeth for more effective cleaning. In one preferred construction, each loop is formed by a plurality of independently flexible cleaning elements so as to maintain user comfort and provide improved cleaning of the teeth.

In another aspect of the invention, other cleaning elements are disposed within the cleaning elements forming the loop. In this construction, these central cleaning elements are strategically located to maximize the cleaning effect of the retained dentifrice.

2

In another aspect of the invention, tooth cleaning elements are positioned along the periphery of the head. In one preferred construction, these peripheral cleaning elements are stepped and tapered to clean along the gum line and reach the interproximal areas between the teeth.

The present invention also pertains to combinations of different kinds of cleaning elements on a single head that cooperate to provide a pattern for overall improved cleaning of the teeth, including effective cleaning of the rear teeth, the interproximal areas between the teeth, along the gum line, and the lingual and facial side surfaces of the teeth.

### BRIEF DESCRIPTION OF THE DRAWINGS

A more complete understanding of the present invention and the advantages thereof may be acquired by referring to the following description in consideration of the accompanying drawings, in which like reference numbers indicate like features, and wherein:

FIG. 1 is a perspective view of a toothbrush according to one or more aspects of an illustrative embodiment;

FIG. 2 is an enlarged plan view of a head section of the toothbrush of FIG. 1;

FIG. 3 is an enlarged side view of a head section of the toothbrush of FIG. 1;

FIG. 4 is a section view of the head section taken along line 4—4 in FIG. 2;

FIG. 5 is a partial section view of the head section similar to FIG. 4 showing a tooth cleaning element arrangement in isolation for clarity;

FIG. 6 is a partial section view of the head section similar to FIG. 4 showing another tooth cleaning element arrangement in isolation for clarity; and

FIG. 7 is a distal end view of the head section of the toothbrush of FIG. 1.

### DETAILED DESCRIPTION OF THE INVENTION

FIGS. 1–7 illustrate a toothbrush 100 having a support 101 including a handle 103 and a head 105, and tooth cleaning elements 200 for cleaning the user's teeth. Handle 103 is provided for the user to readily grip and manipulate the toothbrush 100, and may be formed of many different shapes and with a variety of constructions. Head 105 is the end portion of the support provided with tooth cleaning elements 200. The tooth cleaning elements can be attached to a base surface 109 of head 105 by any known means.

In a preferred construction, base surface 109 is provided with at least one group of cleaning elements 209 that collectively define a loop configuration 214 to better retain dentifrice among the tooth cleaning elements 200 and specifically between the contact of the cleaning elements and the teeth. While the loop configuration is preferably a circle, it could be in the form of a myriad of different closed loops including without limitation ovals, squares and irregular shapes. It is believed that the use of interior concave wall surfaces within the loop will best retain and move the dentifrice on the teeth especially when the toothbrush is generally moved in the desired small circular motions to brush the teeth. Nevertheless, other shapes can be used. The loop should simply define a substantially closed configuration to retain the dentifrice.

To better retain the dentifrice, each loop configuration is preferably defined by cleaning elements of elastomeric wall members. Although the loop configurations could be formed by tightly packed, elongate bristle tufts,

US 7,089,621 B2

3

such arrangements will permit a greater escape of the dentifrice than the elastomeric wall members. Further, although the loop configurations could be completely closed structures, they are preferably only substantially closed and each formed by a plurality of independently flexible cleaning elements 209a–d. In this way, the cleaning elements are able to provide a limited and controlled flow of the dentifrice to the outer cleaning elements and maintain sufficient flexibility to provide greater user comfort and improved cleaning by elements 209. In the preferred construction, as seen in FIG. 2, each loop construction is defined by four elastomeric wall members 209a–d each defining an arc segment that is approximately a quarter of a circle. As noted above, adjacent arc segments are spaced apart to define gaps 212 that permit a limited outward flow of dentifrice and independent flexing of each wall member. The gaps also aid the cleaning of cleaning elements 209 by permitting water to flush through the loops. The gaps, however, are preferably kept small to limit the escape of the dentifrice. While four segments have been illustrated to define each loop, other numbers of segments could be used. The wall members can be formed of any elastomeric material known for use as tooth cleaning elements. Finally, although the arc segments are preferably independent cleaning members, the loop could also be formed as a single member provided with slits to define gaps 212 and independently flexible cleaning elements 209a–d.

As best seen in FIG. 2, the preferred embodiment includes three loops 214a–c that are each positioned front to back along longitudinal axis a—a. In this way, a large portion of the dentifrice applied to the tooth cleaning elements can be retained to clean the user's teeth. Nevertheless, one, two or more than three loops could be used. Moreover, the loops could be arranged in other patterns including non-aligned arrangements or positioned off of axis a—a.

In a preferred construction, a central cleaning element 207 is disposed within each loop 214; although more than one central cleaning element 207 could be provided within each loop when larger loops are used. With this arrangement, dentifrice stays near the tips of cleaning elements 207 during a brushing operation for efficient cleaning. In the preferred construction, the concave nature of the inside surfaces of cleaning elements 209a–d directs the dentifrice to cleaning elements 207a–c during the sweeping or oscillating motion of head 105.

Central cleaning elements 207 are each preferably formed as bristle tufts for effectively cleaning the teeth. Nevertheless, one or more elastomer members may be used to form the distal cleaning elements in lieu of or in addition to the use of bristles.

The bristles of cleaning elements 203 as well as the bristles of other tufts discussed below are preferably composed of a nylon material such as, for example, a nylon material marketed by Dupont under the name BRILLIANCE. Nevertheless, other materials could be used. The bristles in toothbrush 100 also preferably have a circular cross-sectional shape, but could have other cross-sections as well. The round bristles in toothbrush may be composed on a nylon marketed by Dupont under the name of TYNEX. The diameter of the round bristles are preferably 0.007 inches–0.008 inches thick or have other thicknesses depending on the desired cleaning action of the bristles. The tooth cleaning elements are connected to the toothbrush using known manufacturing methods for oral care products.

With reference to FIGS. 1 and 2, an additional outer ring of cleaning elements 211a, 211b is disposed in a central region of head 105 in a generally arcuate arrangement about cleaning elements 209a–d of central loop 214b. These outer arcuate cleaning elements 211a–b are preferably defined by

4

two opposing arcuate cleaning elements which are arranged generally symmetrical on each side of the longitudinal axis a—a of head 105. As shown in FIG. 2, the outer cleaning elements 211a–b surround the loop cleaning elements 209a–d in the central region of head 105 to effectively use this space on the head. In a preferred arrangement, the loop cleaning elements 209a–d in the central region may be disposed generally concentrically within outer cleaning elements 211a–b. The dentifrice flowing through gaps 212 in the sides of loop 214b will be used by outer cleaning elements 211. While the outer arcuate cleaning elements 211a, b are preferably defined by elongate bristle tufts for effective brushing of the teeth, they could be formed of one or more elastomeric members in lieu of or in addition to the bristles.

FIGS. 4–6 are sectional views of head 105 that reveal the preferred height characteristics of the cleaning elements 207, 209 and 211. In the preferred construction, central cleaning elements 207a and 207c are shorter than cleaning elements 209 forming loops 214a, 214c to facilitate enhanced brushing of the lingual and facial tooth surfaces with the dentifrice retained by loops 214a, c. The difference between the first height H1 of cleaning elements 207a, c and the second height H2 of cleaning elements 209 is preferably about 0.20–2.0 mm, but there could be other variations. Central cleaning element 207b is taller than cleaning elements 209 forming central loop 214b to facilitate better interproximal cleaning as well as cleaning of the crowns of the molars. The difference between the third height H3 of cleaning element 207b and the second height H2 of cleaning elements 209 is preferably about 0.20–2.0 mm, but other variations could be used. While this construction is preferred to maximize the cleaning of various surfaces in the mouth, other variations in the heights of the cleaning elements could be used as desired. For example, central cleaning elements 207 could all have the same heights with each other and as loop cleaning elements 209, or have heights that are higher or lower than the loop cleaning elements in different ways. In another example, the central cleaning elements 209 may have heights that are higher than the loop cleaning elements 209 in a staple configuration of toothbrush 100.

Head 105 also includes distal cleaning elements 203a–b at the free end 107. In the preferred construction, a pair of adjacent distal cleaning elements 203a, 203b straddle longitudinal axis a—a, although they could be formed by one or more than two cleaning elements. Distal cleaning elements 203a–b protrude higher from base surface 109 than the tips of the other tooth cleaning elements. The tips of each bristle tuft 203a–b collectively define an outermost cleaning surface 204 that is angled with respect to base surface 109 of head 105. By way of example, cleaning surface 204 is preferably at an angle Ø of about 30 degrees to base surface 109, but may also range between 10–50 degrees. It should be recognized that other angular values are possible. The extension and angular orientation of cleaning surface 204 of distal cleaning elements 203a–b better enable the user to reach and better clean the teeth in the back of the mouth. Cleaning elements 203a–b also can be used to dig into the crevices between the teeth and into the crown portions of the molars. Finally, as can been seen in FIG. 7, the outermost cleaning surface 204 also preferably is sloped laterally downward (to form a crowned surface) to assist in the removal of debris from the teeth.

Peripheral cleaning elements 205a–c are positioned near free end 107 and along each side 108 of head 105. These peripheral cleaning elements 205a–c are preferably formed by a plurality of bristle tufts that are arranged generally symmetrical with respect to the longitudinal axis a—a. Cleaning elements 205a–c are positioned rearward and laterally of distal cleaning elements 203a–b. Similarly,

US 7,089,621 B2

5

peripheral cleaning elements 215a–c are also positioned symmetrically about axis a—a along each side 108 near proximal end 111 of head 105. These two groups of cleaning elements 205a–c, 215a–c are generally mirror images of each other, but could have other constructions. Both the distal and proximal peripheral cleaning elements 205a–c, 215a–c are generally configured to enable the user to clean along the gum line and in the crevices between the teeth. In the illustrative embodiment, three bristle tufts form each group of peripheral cleaning elements 205a–c, 215a–c. Nevertheless, more or fewer bristle tufts in these groups may be used. Further, one or more elastomeric elements may be used to define the peripheral cleaning elements in place of or with the bristles.

As shown in FIG. 3, the tips of the peripheral cleaning elements 205a–c and 215a–c protrude higher from base surface 109 than the tips of the interior cleaning elements 207, 209, 211. In a preferred embodiment, two groups of peripheral cleaning elements 205, 215 are arranged along each side 108 of head 105. Each group of peripheral cleaning elements includes three generally aligned tufts of bristles, although other numbers of tufts could be used. The center tuft of cleaning elements 205b, 215b in each group of peripheral cleaning elements protrudes outward farther from base surface 109 than the others tufts 205a, 205c, 215a, 215c. This arrangement allows deeper engagement of the tooth surfaces along the gum line with cleaning elements 205b or 215b, while stimulating the gums with cleaning elements 205a, 205c and 215a, 215c. Moreover, each of the tufts has tapered ends 206, 216 to improve the cleaning of the interproximal areas and along the gum line.

Proximal cleaning elements 213a–b are positioned near the proximal end 111 of head 105. Preferably a pair of bristle tufts straddle longitudinal axis a—a, but one or more than two cleaning elements could be formed at the proximal end of the head. These proximal cleaning elements 213a,b are preferably defined by bristle tufts, but could also include or be defined by one or more elastomeric members.

The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any combination, improves cleaning performance of toothbrushes. These advantages are also achieved by the cleaning elements and the synergistic features. While the various features of the toothbrush 100 work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to obtain some of the aforementioned advantages without the necessity to adopt all of these features. This unique combination of elements gives exceptional cleaning power in a compact head space.

While the invention has been described with respect to specific examples including presently preferred modes of carrying out the invention, those skilled in the art will appreciate that there are numerous variations and permutations of the above described systems and techniques. Thus, the spirit and scope of the invention should be construed broadly as set forth in the appended claims.

What is claimed is:

1. A toothbrush comprising:

a handle;

a head coupled to the handle and including a base surface, and a pair of opposite side edges; and

a plurality of tooth cleaning elements extending from the base surface of the head, the tooth cleaning elements including:

a first plurality of elastomeric walls that collectively define a first substantially closed loop, each elastomeric wall having a concave surface and separated

6

from an adjacent elastomeric wall in the first plurality of elastomeric walls by a gap, the first substantially closed loop having a first center generally equidistant from the concave surface of each of the elastomeric walls of the first plurality of elastomeric walls;

a first central cleaning element of bristles disposed within the first substantially closed loop;

a plurality of arcuate-shaped cleaning elements of bristles that collectively define an outer loop, each arcuate-shaped cleaning element having an inner concave surface of the outer loop and an outer convex surface defining at least an outer portion of the outer loop, each arcuate-shaped cleaning element separated from an adjacent arcuate-shaped cleaning element by a gap, the outer loop having a second center generally equidistant from each of the concave surfaces of each of the arcuate-shaped cleaning elements, wherein the first center and the second center are generally concentric.

2. The toothbrush according to claim 1, wherein the head further includes a longitudinal axis, and the tooth cleaning elements further comprising:

a second plurality of elastomeric walls that collectively define a second substantially closed loop, each elastomeric wall in the second plurality of elastomeric walls having a concave surface and separated from an adjacent elastomeric wall in the second plurality of elastomeric walls by a gap, the second substantially closed loop having a third center generally equidistant from each of the elastomeric walls of the second plurality of elastomeric walls, wherein the third center is disposed adjacent to the first center and the second center, along the longitudinal axis; and

a second central cleaning element of bristles disposed within the second substantially closed loop.

3. The toothbrush according to claim 2, wherein the first central cleaning element has a first height defined from the base surface and the first plurality of elastomeric walls has a second height defined from the base surface, the first height and the second height being different.

4. The toothbrush according to claim 3, wherein the first height is above the second height.

5. The toothbrush according to claim 3, in which the plurality of arcuate-shaped cleaning elements have a third height defined from the head, the third height being above the second height.

6. The toothbrush according to claim 5, wherein the second plurality of elastomeric walls has a fourth height defined from the base surface and the second central cleaning element has a fifth height defined from the base surface, the fourth height and the fifth height being different.

7. The toothbrush according to claim 6 wherein the fifth height is below the fourth height.

8. The toothbrush according to claim 5 wherein the second plurality of elastomeric walls has a fourth height defined from the base surface and the second central cleaning element has a fifth height defined from the base surface, the fourth height being about the same as the fifth height.

9. The toothbrush according to claim 2, wherein the tooth cleaning elements further comprise at least one group of peripheral tooth cleaning elements of bristle tufts along each side edge of the head and disposed adjacent and lateral to the second substantially closed loop, each said peripheral tooth cleaning element extending farther from the base surface than the second plurality of elastomeric walls, and each said

US 7,089,621 B2

7

group of peripheral tooth cleaning elements including at least three adjacent peripheral cleaning elements, a central one of the adjacent peripheral tooth cleaning elements extending farther from the base surface than end ones of the adjacent peripheral tooth cleaning elements.

10. The toothbrush according to claim 9 wherein at least one of the peripheral tooth cleaning element has a tapered tip.

11. The toothbrush according to claim 1 wherein each of the arcuate-shaped cleaning elements of bristles of the plurality of arcuate-shaped cleaning elements of bristles is a continuous group of bristles.

12. The toothbrush according to claim 1, in which the tooth cleaning elements further include at least one distal cleaning element extending at a free end of the head, and the distal cleaning element extends farther from the base of the head than the elastomeric walls and the arcuate-shaped cleaning elements of bristles.

13. The toothbrush according to claim 12, in which the distal cleaning element defines an outer cleaning surface facing generally away from the head, wherein the outer cleaning surface is at an acute angle to the head and in which the outer cleaning surface slopes laterally away from a longitudinal axis of the head.

14. The toothbrush according to claim 12 in which the tooth cleaning element include at least one proximal cleaning element of a continuous tuft of bristles disposed near where the head couples to the handle.

15. A toothbrush comprising:
    a handle;
    a head coupled to the handle; and
    a plurality of tooth cleaning elements extending from the head, the tooth cleaning elements including a first set of cleaning elements and a second set of cleaning elements, each of said sets including a plurality of arcuate cleaning elements arranged with generally opposing concave surfaces facing each other, said sets being generally concentric to each other and a central cleaning element disposed in about the center of the arcuate cleaning elements.

16. The toothbrush according to claim 15, in which the arcuate tooth cleaning elements are elastomeric wall members.

17. The toothbrush according to claim 16, in which the arcuate tooth cleaning elements define a substantially closed loop about the central cleaning element.

18. The toothbrush according to claim 15, in which the arcuate tooth cleaning elements are a continuous tuft of bristles.

19. The toothbrush according to claim 15 wherein the tooth cleaning elements further include at least one group of peripheral cleaning elements along each side of the head.

20. The toothbrush according to claim 19 wherein each said peripheral cleaning element is a tuft of bristles with a tapered tip.

21. The toothbrush according to claim 20 in which each group of said peripheral cleaning elements includes at least three adjacent peripheral cleaning elements, wherein a central one of the adjacent peripheral cleaning elements projects farther from the head than end ones of the adjacent peripheral cleaning elements.

22. A toothbrush comprising:
    a handle;
    a head coupled to the handle, the head including a base surface; and

8

a plurality of tooth cleaning elements extending from the base surface of the head, the tooth cleaning elements including:

an outer loop comprising a plurality of arcuate-shaped bristle tufts, each arcuate-shaped bristle tuft having a concave surface defining an internal side of the outer loop and a convex surface defining an external side of the outer loop, and separated from an adjacent arcuate-shaped bristle tuft of the plurality of arcuate-shaped bristle tufts by an outer loop gap;

a first substantially closed loop disposed within the outer loop, the first substantially closed loop including a first plurality of elastomeric arc segments, each elastomeric arc segment having a convex surface and being separated from an adjacent elastomeric arc segment of the first plurality of elastomeric arc segments by a first loop gap, in which at least one first loop gap faces the concave surface of an arcuate-shaped bristle tuft of the outer loop; and

a fluid pathway being defined between the convex surface of the first substantially closed loop and the concave surface of the outer loop for allowing a fluid to flow therein.

23. The toothbrush according to claim 22 wherein the first substantially closed loop includes two sets of opposing first loop gaps, the tooth cleaning elements further including a bristle tuft disposed within the first substantially closed loop and between the opposing sets of the first loop gaps.

24. The toothbrush according to claim 22 wherein the at least one first loop gap is unaligned with an outer loop gap.

25. The toothbrush according to claim 22 wherein the first substantially closed loop defines an interior region, the interior region being in fluid communication with the fluid pathway via the least one first loop gap.

26. The toothbrush according to claim 22 further comprising a first central bristle tuft disposed within the first substantially closed loop, wherein each elastomeric arc segment has a first height extending from the base surface and each arc segment has a top surface above the base surface, and each arcuate-shaped bristle tuft has a second height extending from the base surface, the first height being below the second height.

27. The toothbrush according to claim 26, wherein a generally cylindrical cavity is defined by the top surfaces of the elastomeric arc segments and the concave surfaces of each arcuate-shaped bristle tuft of the outer loop.

28. The toothbrush according to claim 22 further comprising:

a second substantially closed loop including a second plurality of elastomeric arc segment, each elastomeric arc segment of the second plurality of elastomeric arc segments having a concave surface, a convex surface and separated from an adjacent elastomeric arc segment of the second plurality of elastomeric arc segments by a second loop gap, wherein at least one second loop gap is generally aligned on an axis with at least one first loop gap of the first substantially closed loop.

29. The toothbrush according to claim 28 further comprising a first central bristle tuft disposed within the first substantially closed loop and generally disposed on the axis.

30. The toothbrush according to claim 29 further comprising a second central bristle tuft disposed within the second substantially closed loop, the second bristle tuft being generally disposed on the axis.

US 7,089,621 B2

9

**31.** The toothbrush according to claim 29 wherein head includes a pair of side edges, wherein the tooth cleaning elements further include at least one group of peripheral cleaning elements along each side of the head.

**32.** The toothbrush according to claim 31 in which each group of peripheral cleaning elements includes at least three adjacent peripheral cleaning elements, wherein a central one

10

of the adjacent peripheral cleaning elements extends farther from the head than end ones of the adjacent peripheral cleaning elements.

**33.** The toothbrush according to claim 22 wherein each arcuate-shaped bristle tuft is a continuous group of bristles.

* * * * *



US 20060026784A1

(19) **United States**
(12) **Patent Application Publication** (10) Pub. No.: **US 2006/0026784 A1**
　　　Moskovich et al. (43) **Pub. Date: Feb. 9, 2006**

(54) **ORAL CARE IMPLEMENT**

(75) Inventors: **Robert Moskovich**, East Brunswick, NJ (US); **John J. Gatzemeyer**, Hillsborough, NJ (US); **Bruce Russell**, Howell, NJ (US); **Peter Andersen**, Zell am See (AT); **Luca Casini**, Milan (IT); **John Hancock**, Hertfordshire (IT); **Douglas Hohlbein**, Pennington, NJ (US); **Eduardo Jimenez**, Manalapan, NJ (US); **Thomas Kuchler**, Schliem (CH); **Tanja Langgner**, London (GB); **Michael Rooney**, Milburn, NJ (US); **Alan V. Sorrentino**, Cranbury, NJ (US); **Thomas Mintel**, Rahway, NJ (US); **Joachim Storz**, Zell am See (AT)

Correspondence Address:
**BANNER & WITCOFF, LTD., ATTORNEYS**
**FOR RESERVE**
**CLIENT NO. 3**
**1001 G STREET, N.W., 11TH FLOOR**
**WASHINGTON, DC 20001-4597 (US)**

(73) Assignee: **Colgate-Palmolive Company**, New York, NY

(21) Appl. No.: **11/122,258**

(22) Filed: **May 5, 2005**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/768,363, filed on Jan. 30, 2004, which is a continuation-in-part of application No. 10/697,213, filed on Oct. 30, 2003. Continuation-in-part of application No. 11/019,671, filed on Dec. 23, 2004, which is a continuation-in-part of application No. 10/869,922, filed on Jun. 18, 2004, which is a continuation-in-part of application No. 10/601,106, filed on Jun. 20, 2003, now abandoned, and which is a continuation-in-part of application No. PCT/US03/30533, filed on Sep. 26, 2003. Said application No. 10/869,922 is a continuation-in-

part of application No. PCT/US03/29497, filed on Sep. 17, 2003.
Continuation-in-part of application No. 10/989,267, filed on Nov. 17, 2004, which is a continuation-in-part of application No. 29/209,242, filed on Jul. 14, 2004, and which is a continuation-in-part of application No. 29/209,244, filed on Jul. 14, 2004.
Continuation-in-part of application No. 10/902,257, filed on Jul. 30, 2004, which is a continuation-in-part of application No. PCT/US03/29497, filed on Sep. 17, 2003.
Said application No. 10/902,257 is a continuation-in-part of application No. 29/189,729, filed on Sep. 10, 2003.
Continuation-in-part of application No. 11/053,583, filed on Feb. 8, 2005, which is a continuation of application No. PCT/US03/24878, filed on Aug. 8, 2003.

(Continued)

**Publication Classification**

(51) Int. Cl.
　　　*A46B* 9/04 (2006.01)
(52) U.S. Cl. ............................ 15/110; 15/167.1; 15/111; 606/161

(57) **ABSTRACT**

An oral care implement is provided having a handle and a head with a soft tissue cleanser and/or tooth cleaning elements. The tooth cleaning elements may be attached to a flexible support on the head and be outwardly movable from the head. The cleaning elements may include a column-shaped bristle at the central portion of the flexible support, and may further include a row of first cleaning elements traversing a central region of the flexible support. The soft tissue cleanser may include a plurality of projections for cleaning the soft tissue and may have an elongate ridge projecting from the head in generally the same direction as the projections. The handle may include a base with a gripping region and a projection protruding from the base in the gripping region. The handle may also have a grip surface with a plurality of spaced slot openings exposing portions of the base.

US 2006/0026784 A1

Page 2

### Related U.S. Application Data

Continuation-in-part of application No. 11/053,589, filed on Feb. 8, 2005, which is a continuation of application No. PCT/US03/24879, filed on Aug. 8, 2003.

(60) Provisional application No. 60/414,117, filed on Sep. 27, 2002. Provisional application No. 60/418,776, filed on Oct. 16, 2002. Provisional application No. 60/419,425, filed on Oct. 18, 2002. Provisional application No. 60/412,290, filed on Sep. 20, 2002. Provisional application No. 60/412,290, filed on Sep. 20, 2002. Provisional application No. 60/402,162, filed on Aug. 9, 2002. Provisional application No. 60/402,170, filed on Aug. 9, 2002. Provisional application No. 60/402,670, filed on Aug. 12, 2002. Provisional application No. 60/402,165, filed on Aug. 9, 2002.

Case 1:06-cv-00417-GMS     Document 42-2     Filed 05/22/2007     Page 15 of 74



FIG. 1



FIG. 2

JA00078





FIG. 3

Patent Application Publication    Feb. 9, 2006   Sheet 4 of 62        US 2006/0026784 A1



FIG. 4



FIG. 5



FIG. 6



**FIG. 7**



**FIG. 8**



**FIG. 9**



**FIG. 10**



FIG. 11

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 22 of 74



**FIG. 12**

JA00084



FIG. 13



FIG. 14

Patent Application Publication    Feb. 9, 2006    Sheet 10 of 62    US 2006/0026784 A1



## FIG. 15



## FIG. 16

## FIG. 17

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 25 of 74



FIG. 18

FIG. 19

FIG. 20

FIG. 21

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 26 of 74



FIG. 22



FIG. 23



FIG. 24



FIG. 25

Patent Application Publication   Feb. 9, 2006   Sheet 13 of 62      US 2006/0026784 A1



**FIG. 26**



**FIG. 27**



**FIG. 28**



**FIG. 29**

Patent Application Publication    Feb. 9, 2006    Sheet 14 of 62      US 2006/0026784 A1



# FIG. 30



# FIG. 31

Patent Application Publication    Feb. 9, 2006    Sheet 15 of 62    US 2006/0026784 A1



FIG. 32



FIG. 33

Patent Application Publication    Feb. 9, 2006    Sheet 17 of 62    US 2006/0026784 A1



**FIG. 34**



Patent Application Publication    Feb. 9, 2006    Sheet 19 of 62    US 2006/0026784 A1



FIG. 40

FIG. 41

FIG. 42

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 34 of 74



**FIG. 43**



**FIG. 44**



FIG. 45

Patent Application Publication    Feb. 9, 2006    Sheet 22 of 62    US 2006/0026784 A1



FIG. 46

Patent Application Publication    Feb. 9, 2006    Sheet 23 of 62    US 2006/0026784 A1



JA00099



FIG. 49



FIG. 50



FIG. 51



FIG. 52



FIG. 53



FIG. 54



FIG. 55



FIG. 56

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 43 of 74



**FIG. 57**



**FIG. 58**

Patent Application Publication    Feb. 9, 2006  Sheet 30 of 62    US 2006/0026784 A1



FIG. 59

Patent Application Publication    Feb. 9, 2006    Sheet 31 of 62    US 2006/0026784 A1



FIG. 59a          FIG. 59b



FIG. 59c



**FIG. 60**



**FIG. 61**

Patent Application Publication    Feb. 9, 2006    Sheet 33 of 62    US 2006/0026784 A1



**FIG. 61a**



**FIG. 61b**

Patent Application Publication    Feb. 9, 2006    Sheet 34 of 62    US 2006/0026784 A1



**FIG. 62**



**FIG. 63**



**FIG. 64**



**FIG. 65**

Patent Application Publication    Feb. 9, 2006  Sheet 35 of 62    US 2006/0026784 A1



FIG. 66          FIG. 67



FIG. 68

JA00111

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 50 of 74



FIG. 69



FIG. 70



FIG. 71



FIG. 72

Patent Application Publication     Feb. 9, 2006   Sheet 37 of 62       US 2006/0026784 A1



FIG. 73          FIG. 74



FIG. 75

Patent Application Publication    Feb. 9, 2006   Sheet 38 of 62      US 2006/0026784 A1



**FIG. 76**



**FIG. 77**



**FIG. 78**



**FIG. 79**

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 54 of 74



FIG. 80

Patent Application Publication    Feb. 9, 2006    Sheet 41 of 62    US 2006/0026784 A1



FIG. 81

Case 1:06-cv-00417-GMS    Document 42-2    Filed 05/22/2007    Page 56 of 74



FIG. 82

FIG. 83

JA00118



FIG. 84



FIG. 85



FIG. 86

FIG. 87



FIG. 88



FIG. 89

JA00122



FIG. 90

FIG. 91



FIG. 92

FIG. 93



FIG. 94

FIG. 95

Patent Application Publication    Feb. 9, 2006    Sheet 50 of 62    US 2006/0026784 A1



FIG. 96

FIG. 97

Patent Application Publication    Feb. 9, 2006    Sheet 51 of 62    US 2006/0026784 A1



FIG. 98

Patent Application Publication    Feb. 9, 2006    Sheet 52 of 62    US 2006/0026784 A1



FIG. 98A

FIG. 98B

FIG. 98C



Patent Application Publication    Feb. 9, 2006   Sheet 54 of 62      US 2006/0026784 A1

*Fig. 103*



9730A

9722A

9718A

9720A

9710A

9712A

Patent Application Publication    Feb. 9, 2006   Sheet 55 of 62       US 2006/0026784 A1



*Fig. 104*

*Fig. 106*

*Fig. 105*

*Fig. 107*

_Fig._ 108



9850

9810A

Patent Application Publication    Feb. 9, 2006   Sheet 57 of 62    US 2006/0026784 A1



Fig. 114



9950

9910A

Patent Application Publication    Feb. 9, 2006    Sheet 59 of 62    US 2006/0026784 A1



FIG. 115



FIG. 116

Patent Application Publication    Feb. 9, 2006    Sheet 60 of 62      US 2006/0026784 A1



**FIG. 117**



**FIG. 118**

Patent Application Publication    Feb. 9, 2006    Sheet 61 of 62    US 2006/0026784 A1



FIG. 119

JA00137

Patent Application Publication    Feb. 9, 2006   Sheet 62 of 62       US 2006/0026784 A1



**FIG. 120**



**FIG. 121**

Case 1:06-cv-00417-GMS    Document 42-3    Filed 05/22/2007    Page 3 of 38

US 2006/0026784 A1

Feb. 9, 2006

1

# ORAL CARE IMPLEMENT

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] This application is a continuation in part of co-pending U.S. patent application Ser. No. 10/768,363, filed Jan. 30, 2004, which is a continuation in part application of U.S. application Ser. No. 10/697,213, filed Oct. 30, 2003.

[0002] Further, this application is a continuation in part of co-pending U.S. patent application Ser. No. 11/019,671, filed Dec. 23, 2004, which: (1) is a continuation in part of co-pending U.S. patent application Ser. No. 10/869,922, filed Jun. 18, 2004, which is a continuation in part of co-pending U.S. patent application Ser. No. 10/601,106, filed Jun. 20, 2003; (2) is a continuation in part of PCT Patent Application Serial No. PCT/US03/030633 (designating the U.S.) filed Sep. 26, 2003, which claims the benefit of U.S. Provisional Application No. 60/414,117, filed Sep. 27, 2002, U.S. Provisional Application No. 60/418,776, filed Oct. 16, 2002, and U.S. Provisional Application No. 60/419, 425, filed Oct. 18, 2002; (3) is a continuation in part of PCT Patent Application No. PCT/US2003/029497 (designating the U.S.), filed Sep. 17, 2003, which claims the benefit of U.S. Provisional Application No. 60/412,290, filed Sep. 20, 2002; (4) is a continuation in part of U.S. patent application Ser. No. 29/189,729, filed Sep. 10, 2003; and (5) is a continuation-in-part of co-pending U.S. patent application Serial No. 10/989,267, filed Nov. 17, 2004, which is a continuation-in-part application of co-pending U.S. patent application Ser. No. 29/209,242, filed Jul. 14, 2004.

[0003] Additionally, this application is a continuation in part application of co-pending U.S. application Ser. No. 10/989,267, 2004, filed Nov. 17, 2004, which is a continuation in part application of co-pending U.S. patent application Ser. No. 29/209,242, filed Jul. 14, 2004, and a continuation in part application of co-pending U.S. patent application Ser. No. 29/209,244, filed Jul. 14, 2004.

[0004] Further, this application is a continuation in part application of co-pending U.S. application Ser. No. 10/902, 257, 2004, filed Jul. 30, 2004, which (1) is a continuation in part of co-pending PCT Application No. PCT/US2003/ 029497 (designating the U.S.), filed Sep. 17, 2003, entitled "Toothbrush With Gripping Area" (Attorney Docket No. IR 6989-00), which claims priority to U.S. Provisional Application Ser. No. 60/412,290, filed Sep. 20, 2002; and (2) is a continuation in part of co-pending U.S. patent application Ser. No. 29/189,729, filed Sep. 10, 2003.

[0005] In addition, this application is a continuation in part of U.S. patent application Ser. No. 11/053,583, filed Feb. 8, 2005, which is a continuation of International Patent Application No. PCT/US2003/024879 designating the U.S. filed Aug. 8, 2003 and published as International Publication No. WO2004/014181, which claims priority to U.S. Applications Ser. Nos. 60/402,162 filed Aug. 9, 2002, 60/402,170 filed Aug. 9, 2002 and 60/402,670 filed Aug. 12, 2002.

[0006] Further, this application is a continuation in part of U.S. patent application Ser. No. 11/053,589, filed Feb. 4, 2005, which is a continuation of International Patent Application No. PCT/US2003/024879 designating the U.S. filed Aug. 8, 2003 and published as International Publication No. WO2004/014182 on Feb. 19, 2004, which claims priority to U.S. Application Ser. No. 60/402,165 filed Aug. 9, 2002.

[0007] The contents of the above-noted applications are each expressly incorporated herein by reference.

## FIELD OF THE INVENTION

[0008] The present invention pertains to an oral care implement having various features that may include a cleanser for cleaning soft tissue surfaces in a user's mouth, tooth cleaning or tooth treating elements, movable cleaning features, vibratory mechanisms, and/or handle gripping features.

## BACKGROUND OF THE INVENTION

[0009] A variety of toothbrush configurations exist that have stationary and/or mechanically-driven movable cleaning elements. These conventional toothbrushes are dedicated to tooth cleaning/polishing operations and typically include a head portion directed to the cleaning/polishing operations, and a handle portion. The head typically has a flat or slightly altered surface to which the cleaning elements are attached, or to which mechanically-driven movable carriers for the cleaning elements are attached. The cleaning elements of these toothbrushes are configured for cleaning and/or for polishing a user's teeth, but are not configured for effective cleaning of soft tissue in a user's mouth, such as the user's tongue.

[0010] Tongue scrapers exist as devices for removing micro debris disposed on a user's tongue. Conventional tongue scrapers are stand-alone devices directed to the singular purpose of scraping a user's tongue. These conventional devices typically include a handle and scraper portion without including other cleaning elements.

[0011] Users manipulate conventional toothbrushes and tongue scrapers by grasping their handle portions. The handles are typically simple, linear rods of a relatively rigid material, which are neither comfortable for the user nor given to easy manipulation. As these devices are commonly used in wet conditions, their handles are often slippery during use.

[0012] Many people use multiple oral care implements, such as toothbrushes and tongue scrapers, on a daily basis to accomplish multiple oral care tasks. For instance, a user may use a toothbrush to clean his teeth and then use a tongue scraper to remove debris from his tongue. The user may then re-use the toothbrush to further clean his tongue. Thus, the user may switch between various oral care implements during a single session in a wet environment.

## BRIEF SUMMARY OF THE INVENTION

[0013] The present invention pertains to an oral care implement that provides several advantages and that may be used for multiple functions. In one embodiment of the invention, an oral care implement is provided that has a plurality of cleaning elements extending from the head, which are attached to a flexible support on the head and are outwardly movable from the head. The cleaning elements may include a column-shaped central bristle at the central portion of the flexible support, and may further include a row of first cleaning elements traversing a central region of the flexible support. The oral care implement may further include a soft tissue cleanser on the head, which may be disposed on an opposite face from the cleaning elements. The soft tissue cleanser may include a ring of projections.

JA00139

US 2006/0026784 A1

Feb. 9, 2006

2

[0014] Embodiments of the invention may be multi-functional and include various combinations of features in advantageous combinations. Some embodiments include a soft tissue cleanser in combination with tooth cleaning features and/or in combination with gripping features on the handle that improve the user's grip and handling thereof. The embodiments may be manual or mechanically-driven devices, or combinations thereof. These and other aspects are discussed in relation to the following figures.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0015] A more complete understanding of the present invention and the advantages thereof may be acquired by referring to the following description in consideration of the accompanying drawings, in which like reference numbers indicate like features.

[0016] FIG. 1 shows a side view, partially in section, of an embodiment of a toothbrush according to the invention and of a handle-closure part separated from one another (without a battery).

[0017] FIG. 2 shows a bottom view, partially in section, of another embodiment of a toothbrush according to the invention shown in the assembled state.

[0018] FIG. 3 shows a side view, partially in section, of the toothbrush according to FIG. 2 and the closure part separated from one another (without a battery).

[0019] FIG. 4 shows a side view of a further embodiment of a toothbrush according to the invention shown in the assembled state.

[0020] FIG. 5 shows a front part of the toothbrush according to FIG. 4 with different embodiments of exchangeable treatment heads.

[0021] FIG. 6 is a perspective view of an additional toothbrush embodiment in accordance with this invention.

[0022] FIG. 7 is a side elevational view, in partial section, of the toothbrush shown in FIG. 6.

[0023] FIG. 8 is a top plan view of the toothbrush shown in FIGS. 6 and 7.

[0024] FIG. 9 is a side elevational view similar to FIG. 7 partially broken away.

[0025] FIG. 10 is a side elevational view showing a subassembly of the bristle containing portion of the brush head in accordance with another aspect of this invention.

[0026] FIG. 11 is a side elevational view, in partial section, showing the subassembly of FIG. 10 incorporated in a completed toothbrush.

[0027] FIG. 12 is a top plan view of a further toothbrush in accordance with the invention.

[0028] FIG. 13 is a top plan view of a head of a manual toothbrush in accordance with the invention.

[0029] FIG. 14 is a side cross-sectional view taken along lines 14-14 of FIG. 13 showing the bristle and wiper arrangement with minimal force applied to the toothbrush handle.

[0030] FIG. 15 is a side cross-sectional view taken along lines 14-14 of FIG. 13 showing the bristle and wiper arrangement where greater force is applied to the toothbrush handle.

[0031] FIG. 16 is a top plan view of a powered toothbrush in accordance with the invention.

[0032] FIG. 17 is a side elevational overview of another toothbrush embodiment in accordance with the invention having a flexible head with fingers mounted thereon, shown broken along its length and showing the ribs interconnecting the finger and flexible head.

[0033] FIG. 18 is a fragmental front plan view of the toothbrush of FIG. 17 showing an arrangement of fingers connected by ribs to a flexible head.

[0034] FIG. 19 is a fragmental plan view of single finger connected by ribs to an unflexed toothbrush head of the toothbrush of FIG. 17.

[0035] FIGS. 20 and 21 are fragmental plan views of a single finger connected by ribs to a flexible head in flexed positions caused by movement of the flexible head of the toothbrush of FIG. 17.

[0036] FIGS. 22-24 are fragmental plan views of multiple fingers interconnected to each other and to a flexible toothbrush head in accordance with FIG. 17 by ribs forming a web between the fingers.

[0037] FIG. 25 is a fragmental cross-sectional view in elevation of the fingers mounted in a flexible toothbrush head in accordance with FIG. 17.

[0038] FIGS. 26-28 are fragmental elevational views of the fingers used with the toothbrush of FIG. 17.

[0039] FIG. 29 is a side elevational view of a further toothbrush configuration using a flexible head and gum stimulation fingers.

[0040] FIGS. 30 and 31 are cross sectional views of the fingers with ribs interconnecting the fingers to a flexible portion of the toothbrush head.

[0041] FIG. 32 is a perspective view of the toothbrush of FIG. 29 including a head constructed in accordance with another embodiment of the invention.

[0042] FIG. 33 is a top plan view of the head of FIG. 32.

[0043] FIG. 34 is a side elevational view of a further toothbrush embodiment in accordance with this invention.

[0044] FIG. 35 is a front plan view showing the resilient cleaning field to which the cleaning/treating elements of FIG. 34 could be mounted.

[0045] FIGS. 36-37 are front plan views of different forms of cleaning heads in accordance with the invention.

[0046] FIG. 38 is a side elevational view of still yet another form of cleaning head in accordance with this invention.

[0047] FIG. 39 is a front plan view of a modified form of cleaning head in accordance with the invention.

[0048] FIG. 40 is a perspective view of a further embodiment of a toothbrush of the present invention wherein the bristle bars are generally in the form of parallelepipeds.

US 2006/0026784 A1

3

Feb. 9, 2006

[0049]  FIG. 41 is a perspective view of another embodiment of a toothbrush of the present invention, wherein the bristle bars have generally curved foot-prints.

[0050]  FIG. 42 is a perspective view of a further embodiment of a toothbrush of the present invention, wherein the bristle bars have generally oval footprints.

[0051]  FIG. 43 is a perspective view of an alternative embodiment of the toothbrush shown in FIG. 40, wherein there are additional bristle bars located central to the toothbrush head.

[0052]  FIG. 44 is a perspective view of an alternative embodiment of the toothbrush shown in FIG. 40, wherein there are additional bristle tufts located central to the toothbrush head.

[0053]  FIG. 45 is an exploded assembly perspective view of an oral care implement according to one or more aspects of an illustrative embodiment.

[0054]  FIG. 46 is an enlarged perspective view of a head of an oral care implement of FIG. 45.

[0055]  FIG. 47 is a plan view of the oral care implement of FIG. 45 illustrating a tongue cleaning feature.

[0056]  FIG. 48 is a partial section view of a head of the oral care implement of FIG. 45 taken along line 48-48 of FIG. 47.

[0057]  FIG. 49 is a plan view of the oral care implement of FIG. 45 illustrating at least one tooth cleaning configuration.

[0058]  FIG. 50 is another perspective of the view of the oral care implement of FIG. 45.

[0059]  FIG. 51 is a section view of an alternative construction of the head of the oral care implement of FIG. 45.

[0060]  FIG. 52 is a perspective view of a head of a further embodiment of the invention.

[0061]  FIG. 53 is a partial cross-sectional view taken along line IX-IX in FIG. 52.

[0062]  FIG. 54 is a partial cross-sectional view of another embodiment of the invention taken along line IX-IX in FIG. 52.

[0063]  FIG. 55 is a partial cross-sectional view of a further embodiment taken along line IX-IX in FIG. 52.

[0064]  FIG. 56 is a partial cross-sectional view of an additional embodiment taken along line IX-IX in FIG. 52.

[0065]  FIG. 57 is a partial perspective view of yet another oral care implement in accordance with the present invention.

[0066]  FIG. 58 is a partial cross-sectional view taken along line XIV-XIV in FIG. 57.

[0067]  FIG. 59 is a perspective view of a head of a further toothbrush embodiment in accordance with the present invention.

[0068]  FIG. 59a is a top plan view of the head of FIG. 59.

[0069]  FIGS. 59b and 59c are top plan views of the head illustrating alternative concave-shaped ridges for the head of FIG. 59.

[0070]  FIG. 60 is a partial cross-sectional view taken along line II-II in FIG. 59.

[0071]  FIG. 61 is a partial cross sectional plan view of an alternative structure taken along line II-II of FIG. 59.

[0072]  FIGS. 61a and 61b are partial cross-sectional views of alternative ridge shapes for the embodiment of FIG. 59.

[0073]  FIGS. 62-75 are each a top plan view of the head illustrating an alternative ridge construction for the embodiment of FIG. 59.

[0074]  FIGS. 76-80 are each a perspective view of a further embodiment of a head of an oral care implement in accordance with the invention.

[0075]  FIG. 81 is a perspective view of an oral care implement according to one or more aspects of another embodiment of the present invention.

[0076]  FIG. 82 is a bottom plan view of the oral care implement of FIG. 81.

[0077]  FIG. 83 is a top plan view of the oral care implement of FIG. 81.

[0078]  FIG. 84 is a side view of the oral care implement of FIG. 81.

[0079]  FIG. 85 is a section view of the oral care implement taken along 85-85 in FIG. 83.

[0080]  FIG. 86 is a partial side view of a base of an oral care implement of FIG. 81.

[0081]  FIG. 87 is a partial front view of the base of FIG. 86.

[0082]  FIG. 88 is a forward axial view of the oral care implement of FIG. 81.

[0083]  FIG. 89 is a forward axial view of the oral care implement of FIG. 81.

[0084]  FIG. 90 is top plan view of a further oral care implement in accordance with the present invention.

[0085]  FIG. 91 is partial perspective view of a head portion of the oral care implement of FIG. 90.

[0086]  FIG. 92 is side view of a further oral care implement in accordance with the present invention.

[0087]  FIG. 93 is partial perspective view of a head portion of the oral care implement of FIG. 92.

[0088]  FIG. 94 is side view of a further oral care implement in accordance with the present invention.

[0089]  FIG. 95 is partial perspective view of a head portion of the oral care implement of FIG. 94.

[0090]  FIG. 96 is side view of a further oral care implement in accordance with the present invention.

[0091]  FIG. 97 is partial perspective view of a head portion of the oral care implement of FIG. 96.

[0092]  FIG. 98 is partial perspective view of a head portion of yet another oral care implement in accordance with the present invention.

[0093]  FIGS. 98A-C show an additional oral care implement in accordance with the invention.

US 2006/0026784 A1

Feb. 9, 2006

4

[0094]  FIG. 99 is a perspective view of a toothbrush in accordance with the invention.

[0095]  FIG. 100 is a side view of the toothbrush shown in FIG. 99.

[0096]  FIG. 101 is a top view of the toothbrush shown in FIGS. 99 and 100.

[0097]  FIG. 102 is a cross-sectional view taken through line 102-102 of FIG. 101.

[0098]  FIG. 103 is a top view of a powered toothbrush in accordance with the invention.

[0099]  FIG. 104 is a perspective view of a toothbrush having elastic areas in the head and handle in accordance with a further embodiment of the invention.

[0100]  FIG. 105 is a side view of the toothbrush shown in FIG. 104.

[0101]  FIG. 106 is a top view of the toothbrush shown in FIGS. 104 and 105.

[0102]  FIG. 107 is a side view of the toothbrush of FIG. 104 showing deflection in the open area under the bristles and the handle area.

[0103]  FIG. 108 is a top view of a powered toothbrush in accordance with the invention.

[0104]  FIG. 109 is a perspective view of a toothbrush formed in accordance with still another embodiment of the invention.

[0105]  FIG. 110 is a side elevational view of the toothbrush shown in FIG. 109.

[0106]  FIG. 111 is a top view of the toothbrush shown in FIGS. 109-110.

[0107]  FIG. 112 is an end view of the toothbrush shown in FIGS. 109-111 shown in an original closed position.

[0108]  FIG. 113 is a cross-sectional view taken along line 113-113 of FIG. 111 with the brush head in its hinged open position and omitting some of the cleaning elements.

[0109]  FIG. 114 is a top view of a powered toothbrush in accordance with an embodiment of the invention.

[0110]  FIG. 115 is perspective view of a head portion of a further embodiment of an oral care implement in accordance with the invention.

[0111]  FIG. 116 is a top view of the head portion of FIG. 115.

[0112]  FIG. 117 is a side view of the head portion of FIG. 115.

[0113]  FIG. 118 is a side view of a head portion of an oral care implement in accordance with the invention.

[0114]  FIG. 119 is partial perspective view of a head portion of an oral care implement in accordance with the invention.

[0115]  FIG. 120 is a top view of the head portion of FIG. 119.

[0116]  FIG. 121 is a front view of the head portion of FIG. 119.

## DETAILED DESCRIPTION OF THE INVENTION

[0117]  The following embodiments describe aspects of the invention in the form of various oral care implement configurations that provide a variety of features and functions. Although these aspects are disclosed in the context of particular exemplary embodiments, the invention provides an oral care implement that includes one or more of the features described herein. The oral care implement may include a first feature described in one example configuration herein, as well as a second feature described in another example configuration herein.

[0118]  In other words, the invention contemplates mixing and matching features from the disclosed embodiments in various combinations into a single oral care implement. The present invention thus makes it possible to select a combination of cleaning/treating element configurations, tissue cleanser configurations, handle features, gripping features, mechanical driving features, materials and orientations, etc. to achieve intended results, and to deliver additional oral health benefits, such as enhanced cleaning, tooth polishing, tooth whitening, tongue cleansing, massaging of gums, etc.

[0119]  Oral care implements of various configurations are provided that generally include a handle and one or more cleaning features. The handle may include a mechanically-driven feature, such as rotating, vibrating, and/or moving cleaning elements. In one configuration, a toothbrush is provided with a mechanical vibratory element and a head having a plurality of different types of cleaning/treating elements and cleaning areas which provide for an enhanced cleaning and/or treating effects. The cleaning/treating elements move by the mechanical vibratory device and/or independently of the mechanical vibratory device. Such a toothbrush, therefore, provides for synergistic and enhanced cleaning, scrubbing and massaging experience on the teeth and gums.

[0120]  A variety of toothbrush configurations are disclosed herein. One configuration is a toothbrush having multiple groupings of cleaning/treating elements that are uniquely mounted to the head of a toothbrush, which mounting facilitates flexible orientation of those groupings relative to the teeth and gums being cleaned. For example, the head of such a toothbrush could be designed to "wrap around" individual teeth resulting in deeper penetration of cleaning/treating elements between teeth. Such a configuration provides overall cleaning, for example, by independent movement of groups of cleaning/treating elements relative to the toothbrush head and each other.

[0121]  In one example, a first group is a central grouping or "island" of cleaning/treating elements flexibly mounted to the toothbrush head. A second group is fixedly mounted to the toothbrush head in a configuration surrounding at least part of the central grouping. The central group is attached to the toothbrush head via, a flexible elastomeric membrane, resilient plastic straps, webbing or other material that flexibly interconnects the first group with the toothbrush head.

[0122]  In another embodiment, the toothbrush head is divided into a plurality of separate cleaning areas. These areas include at least one and preferably two areas wherein the cleaning/treating elements are mounted to a base with other areas having the cleaning/treating elements mounted to

5

pods wherein the pods have a greater degree of movability than do the bases. The pods are resilient so that during use, the cleaning/treating elements could be moved from their initial position and then returned to the initial position. The pods may be formed from a narrow or small diameter beam extending from the body of the toothbrush head to a cleaning/treating elements support pad. The narrow or small diameter beam may be enclosed in elastic material.

[0123] In one other configuration, a relatively non-movable base is located at each of the distal and proximal ends of the toothbrush head with at least two elastic pods mounted between the two bases. These various cleaning areas are separated from each other by channels extending completely across the head in a transverse direction.

[0124] This application further discloses a toothbrush configuration having multiple groupings of cleaning/treating elements ("islands") uniquely mounted to the head of a toothbrush, which mounting facilitates flexible orientation of those groupings relative to the teeth and gums being cleaned. More particularly, the groupings of cleaning/treating elements are mounted relative to the toothbrush head using a transverse, flexible membrane or web extending from the periphery of the cleaning/treating elements to the sidewalls of the toothbrush head. In one example, such flexible mounting facilitates 360 degree limited angle wobble of the cleaning/treating elements, which, in turn, orients the cleaning/treating elements towards the teeth even if the toothbrush head is not angled directly parallel to the user's teeth.

[0125] One exemplary toothbrush of this configuration includes a head in the form of a base having an upstanding wall to create a peripheral frame. In one embodiment, a thin resilient membrane or web is mounted within the frame. The membrane or web is capable of flexing to facilitate orientation of the cleaning/treating elements carried by the membrane relative to the teeth of the user.

[0126] The cleaning/treating elements may be bristles secured to the membrane or web by in-molded technology. Additional cleaning/treating elements can be arranged on the periphery of the "islands" to facilitate cleaning in those areas between the "islands". In a one embodiment, these additional cleaning/treating elements are fixedly mounted to the toothbrush head outside the periphery of the membrane or web flexibly holding the "islands" of cleaning/treating elements. This combination of flexible and fixed mounting of cleaning/treating elements provides very effective brushing of teeth and massaging of gums.

[0127] In use, for example, pressure applied to the toothbrush handle by a user causes a first group of cleaning/treating elements to contact the teeth being cleaned. As the force applied to the toothbrush exceeds a predetermined volume, a central group of cleaning/treating elements moves relative to the balance of the head. This movement, in turn, allows an outer group of fixed cleaning/treating elements to contact other areas of the teeth located at a greater distance from the head, including interproximal spaces between teeth.

[0128] This desired flexibility of the central grouping of cleaning/treating elements may be accomplished with an elastomeric bridge between the central movable group of cleaning/treating elements and the surrounding outer group

of cleaning/treating elements. This elastomeric bridge may be resilient or maybe a series of independent bridges with a void between each bridge to encourage greater flexibility. The width of this bridge can be adjusted to vary the amount of force needed to push the central group of cleaning/treating elements into a position where the outer group can achieve their greatest cleaning potential.

[0129] In another toothbrush configuration, the gap between the groups of cleaning/treating elements corresponding to the width of the elastomeric bridge between them can effectively be filled with elastomeric wipers that move as force is applied to the central group of cleaning/treating elements. For example, tapered elastomeric wipers can be mounted to the elastomeric bridge so that the narrower tip of the wipers flex in ward and outward as force is applied to and released from the toothbrush handle. This wiping action further enhances the cleaning and treating functions of the toothbrush.

[0130] In a powered configuration, the toothbrush has a power source. The power source may be at least one battery, for example, 1, 2 or more batteries. The battery may be removable or fixed, rechargeable, non-rechargeable or rechargeable from an external source. Further, the battery may be of any size, such as, for example, AA, AAA, 9V and C. Alternatively, the power source may from an external source, for example via an AC adapter.

[0131] Turning to the Figures, both the toothbrush illustrated in FIG. 1 and that according to FIGS. 2 and 3 each have a handle 1, a front bristle-carrying head part 3 and a neck part 4, which connects the head part 3 to the handle 1. The bristles combined to form clusters of bristles 6 are anchored in a bristle carrier 5 and form a profiled brushing surface with their free ends. In the embodiment illustrated, the bristle carrier 5 with the clusters of bristles 6 is positioned, in a manner which is known per se and thus is not described in detail, on a retaining part 2 of the head part 3 such that it can be exchanged. Also, as note above, any of the arrangements of teeth cleaning elements disclosed herein could be used in place of the illustrated bristle pattern.

[0132] The neck part 4 is provided with neck-part zones 7 which are preferably made of an elastically relatively compliant material component and provide for, or additionally increase, the elasticity of the neck part 4, with the result that, during use of the toothbrush, the bristle-carrying head part 3 can be forced back resiliently in the case of forces acting in the direction of the brushing surface. Optionally, the neck-part zones 7 are designed as notches which extend over part of the neck circumference and are filled with elastically compliant material (e.g., with a thermoplastic elastomer). It is understood that the form and number of neck-part zones can be different. It is also conceivable to have a flexible neck zone without using elastic material components, e.g., by providing constrictions or by way of a bellows.

[0133] Integrated in the front head part 3, or in that region of the neck part 4 which is adjacent to the head part 3, is a mechanical vibratory device 10, by means of which vibrations which effect or enhance the teeth-cleaning action may be imparted to the bristle-carrying head part 3. The vibratory device 10 can be connected to an electric power source, accommodated in the handle 1, via electrical connections running in the neck part 4, as is described herein below. In one embodiment, neck-part zones 7 are made of an elasti-

US 2006/0026784 A1

Feb. 9, 2006

6

cally compliant material which dampens the vibration between the vibrating head part 3 and the handle 1, with the result that the vibratory action is produced, in particular, in the head part and is transmitted to the handle 1 to a slight extent. This means that slight vibrations can be felt in the handle 1 during the teeth-cleaning operation, and the toothbrush is thus comfortable to handle. In another embodiment, the vibration produced is not damped by the handle 1 and can act to full effect in the head part 3. Instead of the neck-part zones 7 having elastically compliant-material, however, other vibration-damping elements could also be used. Further, the dampening may also be achieved, for example, by using a basic material, by the neck part being configured in a particular form, for example by the presence of a bellows/accordion part, etc.

[0134] Accommodated in the handle 1 is a sheath or sleeve 20 which extends in the longitudinal direction of said handle and is made of electrically conductive material. Both the handle 1 and the sleeve 20 are open to the rear, this forming a cavity 21 which can be closed from the rear by a closure part 22 and into which it is possible to insert a battery 25, in the preferred embodiment illustrated a commercially available, non-rechargeable cylindrical battery, with a defined power (e.g. 1.5 V) as the power source for the vibratory device 10. It would also be possible, however, for a button cell or for a rechargeable storage battery to be used as the power source.

[0135] A spring contact 29 for the positive pole 30 of the battery 25 (see FIG. 2) is fitted in the sleeve 20, on a transverse wall 28, and is connected to the vibratory device 10 via an electric line 31, a switch 32, which is installed in the sleeve 20 and can be actuated from the outside of the handle 1, and an electric line 33 running in the neck part 4. The electrical connection can be interrupted by means of the switch 32.

[0136] The closure part 22 is provided with a threaded stub 22a made of an electrically conductive material and can be screwed into the handle 1 and/or into the sleeve 20 by way of said threaded stub. The threaded stub 22a is provided with a contact surface 22b which, with the closure part 22 screwed in, comes into abutment against the negative pole 35 of the battery 25 inserted into the sleeve 20. The negative pole 35 is electrically connected to the vibratory device 10 via the threaded stub 22a, the sleeve 20 itself and a line 34, which connects the sleeve 20 to the vibratory device 10 and runs in the neck part 4.

[0137] Instead of being transmitted via the electrically conductive sleeve 20, it would also be possible for the power to be transmitted in some other way, for example using wires or an electrically conductive plastic.

[0138] In the embodiment illustrated in FIG. 1, the vibratory device 10 comprises a vibratory element 11' which functions preferably in the manner of a vibratory armature, can be electrically connected directly to the power source via the lines 33, 34 and, with the power source connected, is made to vibrate.

[0139] In the case of the toothbrush variant illustrated in FIGS. 2 and 3, the vibratory device 10 comprises a vibratory element 11 in the form of an eccentric, which produces mechanical vibrations and can be rotated about an axis located in the longitudinal direction of the toothbrush, and

also comprises a drive which is arranged directly adjacent and is designed as a micromotor 15. The vibratory element 11 is connected to the shaft 15a of the micromotor 15, which can be electrically connected to the power source via the lines 33, 34. The micromotor 15 and the eccentric may be accommodated as a structural unit in a housing 12.

[0140] Instead of an eccentric which can be driven in rotation, it would also be possible to have a vibratory element 11 which can be driven in a translatory manner. It would be possible, in the case of the toothbrush according to the invention, to arrange the bristle-carrying head part 3 such that it can be moved in relation to the neck part 4 in order for the latter, in the case of vibrations produced by means of the vibratory device 10, to be made to move in relation to the rest of the toothbrush.

[0141] The electric lines 31, 33, 34 could also be realized by electricity-conducting plastic tracks. The switch 32, which connects or interrupts the lines 31, 33, may also be, for example, a magnetic switch. A preferred configuration of the switch 32, however, has a pulse switch arranged on a printed circuit board as well as further electronic components which store the switching state.

[0142] It is also possible, however, for the electrical connection between the battery 25 and the vibratory element 11' (FIG. 1) or the drive 15 (FIGS. 2 and 3) to be produced or interrupted not by the switch 32, but by the closure part 22, which can be screwed into the handle and/or into the sleeve 20 or connected to the same in a bayonet-like manner, being turned (i.e., the switch 32 is dispensed with in the case of such a configuration).

[0143] Instead of the rear closure part 22 being screwed to the handle 1, it would, of course, also be possible to have some other type of releasable connection (e.g., plug-in connection, bayonet connection, etc.) and a corresponding configuration of the contact part interacting with the negative pole 35.

[0144] It would also be possible for the closure part 22 to be in a form which is quite different to that illustrated in the drawing. For example, the closure part could be provided with a set-down surface or a foot part and thus serve as an element on which the toothbrush can be set down.

[0145] The toothbrush illustrated in FIG. 4 corresponds essentially to that according to FIGS. 2 and 3. According to FIG. 4, the vibratory device 10 is arranged directly in the front head part 3. In this exemplary embodiment, the sleeve 20 is dispensed with; the battery 25 is connected directly to the vibratory device 10 via the lines 33, 34. It is also the case with this toothbrush that use is preferably made of an exchangeable bristle carrier 5, which can be positioned on a retaining part 2 of the head part 3, e.g., in the manner of a snap-in connection. The capacity for changing the bristle carrier 5 provided with the clusters of bristles 6 is particularly advantageous since the toothbrush provided with the vibratory device 10 can be used irrespective of the service life of the bristles, which is usually even shorter than the service life of the battery 25.

[0146] As can be seen from FIG. 5, it is possible, instead of the bristle carrier 5 or 5a, which forms part of a conventional brush head and is provided with respective clusters of bristles 6 or 6a, to position other, optionally different bristle carriers or adapters 5b to 5d on the retaining part 2, these

7

being provided with different interdental brushes 6b, 6c or interdental treatment parts 6d for effective cleaning of the spaces between the teeth. The interdental brush 6b may be designed, for example, as a helical brush made of coated wire with plastic filaments twisted in. The interdental brush 6c comprises bristles which, together, form a cluster tip. The treatment part 6d may be designed, for example, as a plastic element which has a tip and may preferably be provided with an abrasive coating for removing plaque and tartar from the spaces between the teeth. Of course, it would also be possible to use any other desired treatment parts. It is also the case with the variant according to FIGS. 4 and 5 that the bristle carrier 5 could be configured such that a vibration-induced movement in relation to the retaining part 2 were possible.

[0147]   For the introduction of the vibratory device 10, the connecting lines 33, 34 and further electronic components, it is possible for a toothbrush according to the invention, or the housing thereof, to be produced in two parts which are subsequently joined in a water-tight manner once the two parts to be welded in a water-tight manner once the abovementioned parts have been positioned therein. It is also possible, however, for a toothbrush according to the invention to be produced by injection molding preferably involving two or more components. The abovementioned parts are advantageously positioned as a unit in an injection molding made of a first material component and then encapsulated in the second material component (or in the further material component) by injection molding. It is not necessary here for full encapsulation to take place. Certain parts may be exposed, as a result of which it is possible to achieve an esthetic effect.

[0148]   It would also be possible, however, for the above-mentioned electronic components to be inserted into a ready-molded handle 1. In a preferred embodiment, since it is not only the vibratory element 11, 11' itself but also the drive, i.e. the micromotor 15, which are arranged in the front head part 3, or in the directly adjacent front region of the neck part 4, it is not necessary for a mechanical drive element to be led through the flexible neck part 4 in order to connect the micromotor to the vibratory element 11. In this embodiment, electric lines 33, 34 (e.g., wires, cables or electrically conductive plastic tracks) run through the neck part 4.

[0149]   According to one embodiment of the invention, use is made of a mechanical vibratory device 10 which has a diameter of less than about 15 mm preferably less than about 6 mm, and is less than about 35 mm, preferably less than about 20 mm, in length. This ensures that the toothbrush may be of ergonomic configuration and is easy to handle. A toothbrush according to the invention corresponds, in size, more or less to the conventional manual toothbrushes, which makes them more straightforward to handle in comparison with the commercially available, considerably larger electric toothbrushes. A number of head configurations can produce an enhanced cleaning effect when the mechanical vibratory device is engaged.

[0150]   FIGS. 6-9 illustrate a toothbrush 610 in accordance with one embodiment of this invention. As shown therein toothbrush 610 includes an elongated hand-held handle 612 with a head 614 connected to and extending from the handle. The head 614 is divided into a plurality of separate cleaning areas which are spaced from each other. As illustrated the

cleaning areas include a base 616 located at the distal end of the head 614 and projecting outwardly from the main body portion 930 of the head. Base 616 includes at least one and preferably a plurality of cleaning/treating elements 618. Head 614 further includes a base or supporting member 620 at the proximal end of head 614 cleaning/treating elements 618 also extend outwardly from base 620.

[0151]   Mounted between the cleaning areas which incorporate bases 616 and 620 are a pair of pods 622, 624. Each pod is provided with at least one and preferably a plurality of cleaning/treating elements. As later described the pods 622, 624 have a greater degree of movability than do the bases 616, 620. In a preferred practice of the invention the pods 622, 624 are resilient members so that the pod cleaning/treating elements add a motion range beyond the cleaning/treating elements 618 which are generally static or non-movable. Because the various cleaning/treating elements are separated from each other such as by channels 728, which extend completely across head 614 in a transverse direction, and because of the elastic nature of pods 622, 624, the cleaning/treating elements 626 may be capable of 360 degrees rotation about the vertical axis of each individual pod. The angle of the bend may be dictated by the ability of the material to bend.

[0152]   Toothbrush 610 thus provides a head 614 wherein the front (distal end) and the back (proximal end) areas are in a relatively fixed position and wherein the cleaning/treating elements, such as bristle strands, 618 do not have any extra degree of motion. The middle portion of head 614, however, has two areas of cleaning/treating elements 626, which are capable of 360 degree rotation.

[0153]   As best shown in FIG. 9 the head 914 includes a main body portion 930 which supports the bases and pods. Body portion 930 and bases 616 and 620 are preferably made from conventional hard plastic materials, such as polypropylene, commonly used in the making of toothbrush handles and heads. Pods 622, 624, however, are made so as to be resilient. In a preferred practice of this invention, the resiliency of pods 622, 624 is achieved by providing a thin diameter beam 932 which extends from the main body portion 930 of the head of the toothbrush. Beam 932 is joined into the bottom of a thin pad or plate 934 which provides a support area onto which the cleaning/treating elements 626 are affixed. The manner of mounting the cleaning/treating elements 626 to the support pads 934 can be achieved utilizing various cleaning/treating elements, such as bristles and other cleaning materials, in known attachment methods.

[0154]   The desired flexibility or resiliency of the pods 622, 624 is enhanced by enclosing the thin beams 932 in elastic material 936 which could be acquired during the multi-injection molding process. The elastic material 936 serves as a rubber band by returning the beams 932 to their original form or initial position. This return action creates an active motion in the opposite direction of the beam bend which aids in the cleaning of teeth by introducing extra brushing strokes.

[0155]   As best shown in FIGS. 6, 7 and 9 the pods 622, 624 include a widened portion disposed toward the body 930. The support pads 934 are also widened. Each pod has a narrow or reduced diameter central portion 938 longitudinally intermediate the length of each pod. Thus, each pod is of generally mushroom shape.

US 2006/0026784 A1

Feb. 9, 2006

8

[0156]  Beam 932 could be of any suitable shape such as having a cross-section which is circular, square or any other geometric shape that provides a thin dimension or thin diameter to the beam to facilitate the bendability of the beam. The elastomer 936 may be considered as a continuous layer of any suitable thickness which covers the entire central area of head 614 as illustrated so that both pods 622, 624 are incorporated as part of the same elastic material. The portion of the head 614 which includes pods 622, 624 may be formed as a separate subassembly similar to the subassembly later described with respect to FIGS. 10 and 11.

[0157]  Although the invention could be practiced with a single base and a single pod and could be practiced with the base having a single pod, but a lesser degree of flexibility than the pod, the invention is preferably practiced wherein the base is generally static or non-movable. In addition, the invention is preferably practiced where there are a plurality of such bases and a plurality of pods. The drawings illustrate a configuration of the invention where there are a total of four separate cleaning cleaning areas with the pods being located in the central portion of head 614. The invention may be practiced in a configuration in which the cleaning/treating elements comprise a plurality of bristles or strands on each base and each pod.

[0158]  As illustrated in FIG. 8 each base 616 and 620 and each pod 622 and 624 may have a generally oval outer surface. The bases and pods are longitudinally aligned, but spaced from each other by the depressions or open areas which form the channels 728. As also illustrated in FIG. 8 the pods may have a larger outer surface or cleaning/treating element carrying surface than do the bases.

[0159]  As shown in FIG. 7 the terminal surfaces of the cleaning/treating elements 618 and 626 are tapered so that the terminal surfaces of the cleaning/treating elements 618 taper outwardly in a direction toward the center of head 614 while the terminal surfaces of cleaning/treating elements 626 taper outwardly in a direction away from the center of head 614. Thus, the highest points of each set of cleaning/treating elements 618 and its adjacent set of cleaning/treating elements 626 are generally disposed toward each other for each pair of base and pod 616, 622 and 620, 624.

[0160]  Any suitable form of cleaning/treating elements may be used as the cleaning/treating elements 618 and 626 in the broad practice of this invention. The term "cleaning/treating elements" is intended to be used in a generic sense which could include conventional fiber bristles or massage elements or other forms of cleaning/treating elements such as elastomeric fingers or walls arranged in a circular cross-sectional shape or any type of desired shape including straight portions or sinusoidal portions. Where bristles are used, the bristles could be mounted to tuft blocks or sections by extending through suitable openings in the tuft blocks so that the base of the bristles is mounted within or below the tuft block.

[0161]  Using different cleaning materials as cleaning/treating elements of the toothbrushes may yield different effects. In an attempt to provide better stain removal a rubber-like material or elastomer can be used in combination with conventional bristles or used by itself to "brighten/whiten" the teeth.

[0162]  It is to be understood that the specific illustration of the cleaning/treating elements is merely for exemplary pur-

poses. The invention can be practiced with various combinations of the same or different cleaning/treating element configurations (such as stapled or in-molded technology bristles, etc.) and/or with the same bristle or cleaning/treating elements materials (such as nylon bristles, spiral bristles, rubber bristles, etc.) Similarly, while FIG. 7 illustrates the cleaning/treating elements to be generally perpendicular to the outer surface of head 614, some or all of the cleaning/treating elements may be angled at various angles with respect to the outer surface of head 614. It is thereby possible to select the combination of cleaning/treating element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning tooth polishing, tooth whitening and/or massaging of the gums. Further, although shown as a manual toothbrush, the disclosed head and cleaning elements could be formed as part of a powered brush, e.g., as part of a vibrating brush (as in FIG. 1) with the drive means disclosed for the brush of FIG. 16, or other known powered brushes where the heads or parts of the heads (e.g., platforms) are driven.

[0163]  FIGS. 10-11 illustrate a further embodiment of this invention. The toothbrush 1110A has the ability to provide flexible support for the bristles 1026A, 1126A in designated areas. The flexibility is provided by designing the tuft holding areas 1034A, 1134A as plates which in combination with the stems 1038A, 1138A forms pods of mushroom shape. The mushroom stem 1038A, 1138A is made flexible to allow the plate 1034A, 1134A populated with bristles or cleaning/treating elements 1026A, 1126A to move in different directions while brushing, as described with respect to the flexible pods of FIGS. 6-9.

[0164]  FIGS. 10-11 show the toothbrush 1110A and in particular the cleaning/treating element or bristle carrying portion 1023, 1133 of the head 1114A. As shown in FIG. 10 the bristle or cleaning/treating element carrying portion 1023 forms an initial subassembly. This subassembly is made by introducing the cleaning/treating elements 1026A into the mold cavity into which a plastic material is injected. As the material injected cools off it permanently traps the bristles or cleaning/treating elements 1026A to form a brush or subassembly 1023.

[0165]  To achieve a functional flexibility and proper tuft retention the portion of the bristle holding part or subassembly 1023 which comprises the plates 1034A, stems 1038A and interconnecting support 1025 is preferably a blend of polypropylene (PP) and soft TPE. Once the PP/TPE blend is combined with the bristles 1026A the subassembly 1023 is formed. The subassembly 1023 is then overmolded with an entire toothbrush handle 1012A and head 1014A during a second injection cycle to form the completed toothbrush 1110A shown in FIG. 11. If desired or required the entire handle 1112A and head 1114A absent the subassembly 1123 could be made first and the subassembly or bristle retaining portion 1123 made second.

[0166]  It is to be understood that the invention described in FIGS. 10-11 could be practiced where all portions of the head 1114 include the flexible mushroom sections without having less flexible base portions such as bases 616 and 620 of FIGS. 6-9. Similarly, the subassembly two shot techniques of FIGS. 10-11 could be utilized in the embodiment of FIGS. 6-9 for forming the two or more central pods as a

single subassembly initially made separate from the remainder of the toothbrush head 1114. The final toothbrush would be made in a second injection molding process wherein the subassembly having interconnected pods 622, 624 would be molded to the handle 612 and head 614 made of more rigid material.

[0167] As noted, FIG. 7 illustrates the terminal surfaces of the cleaning/treating elements 618 and 626 to be tapered in an up and down or zigzag manner. FIGS. 10-11 show an alternative taper wherein the terminal surfaces form a smooth, gentle, concave shape. If desired, other shapes may be used such as a planar shape for the terminal surfaces or a convex shape as well as the zigzag or up and down shape shown in FIG. 7. Similarly, the terminal ends of the cleaning/treating elements in the FIGS. 6-9 embodiment, as well as those of FIGS. 10-11, could have the various shapes such as zigzag, convex, concave or planar.

[0168] FIG. 12 illustrates a toothbrush 1210B, which includes a power driven movable disc or section 1240 having cleaning elements. Although FIG. 12 shows movable section 1240 to be at the distal end of the head, the movable section(s) could be at any desired location on the head.

[0169] FIG. 13 illustrates head 1314 of a manual toothbrush 1310 in accordance with one embodiment of this invention. Head 1314 is attached to handle 1312 (partially shown in FIG. 13). In one embodiment, two groups of cleaning/treating elements or bristle are arranged on head 1314. The first group as illustrated in FIG. 13 is located in the central region of the head 1314 and comprises cleaning/treating elements 1318 in the form of strands or bristles. Elastomeric material 1320 is preferably of a material or combinations of material that can flex to become altered from its original shape and recover to its original shape randomly during brushing.

[0170] The first group of cleaning/treating elements 1318 flexibly mounted in head 1314 and 1614 (FIG. 16) are complemented by a second group of fixed cleaning/treating elements 1322 generally arrayed in a surrounding relationship with the first group 1318.

[0171] The first and second group of cleaning/treating elements work together to provide improved cleansing of teeth. To further promote teeth cleaning, the toothbrush 1310 of this invention may include, for example, wipers 1324 positioned between the two groups of cleaning/treating elements as best illustrated in FIG. 13. These wipers are preferably made of rubber or like material. However, any suitable form of cleaning/treating elements may be used as the cleaning/treating elements 1318 and 1322 in the broad practice of this invention.

[0172] It is to be understood that the specific illustration of the cleaning/treating elements is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning/treating element configurations (such as stapled or in-molded technology bristles, etc.) and/or with the same bristle or cleaning/treating element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.) Similarly, while FIG. 13 illustrates the cleaning/treating elements to be generally perpendicular to head 1314 some or all of the, cleaning/treating elements may be angled at various angles with respect to the

outer surface of head 1314. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning, tooth polishing, tooth whitening and/or massaging of the gums.

[0173] This invention may also be practiced where head 1314 includes one or more power or electrically operated movable sections carrying cleaning/treating elements.

[0174] FIG. 16 illustrates a toothbrush 1610A which includes a power driven movable disc or section 1650 having cleaning/treating elements. The movable section 1650 could be oscillated rotationally such as by using the type of drive mechanism shown in U.S. Pat. No. 5,625,916, or could move in and out using the type of drive mechanism shown in U.S. Pat. No. Re35,941; all of the details of both patents are incorporated herein by reference thereto. Alternatively, the other types of drives referred to above could move section 50 in other manners and directions. Although FIG. 16 shows movable section 1650 to be at one end of the head, the movable section(s) could be located at any desired location on the head.

[0175] FIGS. 17 and 18 illustrate a toothbrush 1710 with a handle 1712 and head 1714, 1814. Mounted on or in head 1714, 1814 are fingers 1716, 1816, preferably having a tapered shape. As shown in FIG. 18 fingers 1816 are preferably arranged about the periphery of head 1814. That location materially assists the gum massaging effect of the finger movement contemplated by this invention. More particularly, when the longitudinal axis of toothbrush 1710 is perpendicular to the axis of teeth being brushed, as is typical with most users, the fingers 1716, 1816 are closest to the gum line.

[0176] The fingers 1716, 1816 are preferably flexible and soft to the touch. Accordingly they may be formed of a soft elastomeric material. The general shape of fingers 2616, 2716, 2816 is illustrated in FIGS. 26-28. As so illustrated they are tapered and comprise all elastomeric material (FIG. 26) or a set of bristles 2818 partially surrounded by elastomeric material 2720, 2820 (FIGS. 27 and 28). The elastomeric material preferably extend along the length of finger 2616, 2716, 2816 a sufficient distance to facilitate attachment of ribs as described in more detail below.

[0177] To facilitate the magnetic movement of the fingers, the head of the toothbrush may be flexible and the fingers may be flexibly mounted in the head. FIG. 25 illustrates one form of flexible mounting of fingers in head 2514. In this embodiment the head 2514 has a box-like shape in cross section. At least the upper face 2522 of head 2514, and preferably the entirety of head 2514, is made of a flexible material so that the axes of fingers 2516 can move relative to the plane of toothbrush 1710. The fingers 2516 project from apertures 2526 in the flexible upper face 2522 of head 2514. Any rib and finger 2216, 2316, 2416 arrangement shown in FIGS. 22-24 can be molded into the toothbrush head 2214. This flexible mounting in a flexible portion 2222 of head 2214 assists in obtaining the desired lateral movement of fingers relative to the axes of toothbrush 1710. The role of ribs in obtaining that movement is explained below.

[0178] FIG. 29 illustrates a powered toothbrush 2910A containing the fingers 2916 of the invention mounted on a

Feb. 9, 2006

10

flexible head 2914 of the toothbrush. Cleaning elements 1817 may be mounted inboard of fingers 1816 as illustrated in FIG. 18. Although FIG. 29 shows movable section 2930 to be at the distal end of the head, the movable section(s) could be located at any desired location on the head.

[0179] Another manner of imparting movement to the fingers 3016, 3116 is illustrated in FIGS. 30 and 31. As illustrated, fingers 3016, 3116 are physically linked to a flexible face 3022A, 3122A of head 3014, 3114 by angled rib 3024, 3124. Rib 3024, 3124 can be integrally molded into head 3014, 3114 and finger 3016, 3116 during the manufacture of toothbrush 1710. It can also be formed of a more rigid (than elastomeric) material such as polypropylene in order to enhance lateral movement of fingers 3016, 3116. Flexible face 3022A, 3122A of head 3014, 3114 in this embodiment can be molded around frame members 3026, 3126 forming the outer periphery of head 3014, 3114. These frame members 3026, 3126 of head 3014, 3114 may be attached to handle 1712 of toothbrush 1710 in a known manner.

[0180] The role of ribs and the flexible head in imparting lateral movement to the fingers is illustrated in FIGS. 18-21. FIG. 18 illustrates the location of fingers 1816 along outer edges of flexible face 1822 of head 1814. Other groups of bristles or cleaning/treating elements 1817 are arranged inboard of fingers 1816 as illustrated in FIG. 18. Fingers 1816 on the outer edge of head 1614 are closest to the gum line when the user holds the toothbrush in a normal position, i.e., with the longitudinal axis perpendicular to the axis of the user's teeth. Ribs 1824 extend from the side of finger 1816 to the face 1822 or 1822A of flexible head 1814. These ribs can have a triangular, trapezoidal or like shape that interconnects the finger 1816 to the face of flexible head 1814. This interconnection assures lateral movement of finger 1816 as the face 1822 or 1822A deflects outward or inward along the longitudinal axis when in use as described below.

[0181] The lateral movement of fingers is illustrated in the sequence shown in FIGS. 19-21. In FIG. 19 there is no deflection of face 1922 or 1924 of flexible head 1914. FIG. 20 represents a deflection of face 2022 that stretches that face as shown by the arrows 2023 at the edge of this fragmental view. When so stretched the ends 2028 of rib 2024 anchored to face 2022 move away from each other. That movement exerts a lateral force on finger 2016 causing it to move laterally toward the outside periphery of head 2014 as indicated by the arrow 2025 in FIG. 20. Conversely, when deflection of face 2122 or 2122A of head 2114 causes that face to compress, the ribs 2124 push finger 2116 laterally in the opposite direction as indicated by the arrow 2125 in FIG. 21. Thus, as various forces are transmitted to flexible face 2122 or 2122A of head 2114 during use, that head moves in compression or expansion. That movement causes fingers 2116 to move in a lateral direction thereby promoting tooth cleaning and gum stimulation.

[0182] Another embodiment of the invention illustrated in FIGS. 30 and 31 shows ribs 3024, 3124 oriented approximately 90 degrees to the longitudinal axis of toothbrush 1710 versus approximately 45 degrees shown in FIGS. 18-21. In the former embodiment, movement of the flexible face 3022A in an upward direction (FIG. 30) causes lateral inward movement of fingers 3016 as illustrated by the

arrows 3127 in this Figure. Conversely, downward movement of flexible face 3022A would cause lateral movement of fingers 3016 away from each other toward the outside of head 3014 (not illustrated).

[0183] Other arrangements of ribs 2224, 2324, 2424 and their attachment to fingers 2216, 2316, 2416 are illustrated in FIGS. 22-24. As illustrated, multiple fingers 2216, 2316, 2416 are interconnected by a continuous rib 2224, 2324, 2424. FIG. 22 illustrates the interconnecting ribs 2224 on one side of fingers 2216. Thus, upon deflection of flexible face 2222 or 2222A of head 2214 all fingers 2216 move in the same direction as indicated by the arrows 2229, 2329 in FIGS. 22 and 23. If it were desirable to have the fingers 2416 move in different directions the arrangement of ribs 2424 shown in FIG. 24 can be utilized.

[0184] It is to be understood that the specific illustration of the cleaning/treating element is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning/treating element configurations (such as stapled or in-molded technology bristles, etc.) and/or with the same bristle or cleaning/treating element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIG. 18 illustrates the cleaning/treating elements to be generally perpendicular to head 1814, some or all of the cleaning/treating elements may be angled at various angles with respect to the outer surface of head 1814. It is thereby possible to select the combination of cleaning/treating element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning, tooth polishing, tooth whitening and/or massaging of the gums. This technology may also be used in manually powered toothbrushes.

[0185] Referring to FIGS. 32 and 33, an exemplary toothbrush including a head plate according to the invention is illustrated and generally indicated at 3200. Toothbrush 3200 includes a handle 3202 at a proximal end thereof, and a brush section 3204 that is defined by a neck 3210 that terminates in a head 3220 at a distal end of toothbrush 3200. Handle 3202 has a free proximal end 3208 and an opposite neck end 3206. Neck 3210 generally includes a first end 3214 and a second end 3216 with first end 3214 being located at neck end 3206 of handle 3202 and the second end 3216 being located at head 3220. In other words, neck 3210 is the portion of toothbrush 3200 that extends between handle 3202 and head 3220. Head 3220 is preferably generally aligned with the longitudinal axis x-x of toothbrush 3200.

[0186] Neck 3210 and handle 3202 may be constructed as a unitary member by forming neck 3210 integral to handle 3202 at neck end 3206 of handle 3202, or may be formed detachable from handle 3202 at the neck end 3206. In accordance with this detachable embodiment, the combined neck 3210 and head 3220 can be removed from handle 3202 to permit cleaning, servicing and/or interchanging of either handle 3202 or the combined neck 3210 and head 3220 (brush section 3204). When neck 3210 is formed to be detachable from handle 3202, first neck end 3214 preferably includes a connector linkage (not shown) detachably joined to handle 3202 using traditional techniques. It will also be appreciated that the point of detachment may be between head 3220 and neck 3210 such that head 3220 is of a refill head type.

US 2006/0026784A1

Feb. 9, 2006

11

[0187] It will further be appreciated that the illustrated shapes of handle 3202 and neck 3210 are merely exemplary in nature and handle 3202 and/or neck 3210 can be formed to have any number of shapes. Preferably, the shapes of handle 3202 and neck 3210 are ergonomically pleasing to a user of toothbrush 3200 and provide a toothbrush that is easily gripped and held and easily manipulated by a user. For example, handle 3202 may include a slightly recessed finger section 3218 which is formed on handle 3202. The recessed finger section 3218 is designed to receive the thumb of one hand to thereby assist a user in proper placement of toothbrush 3200 in a user's hand. Recessed finger section 3218 may include ribs or another type of roughened surface to assist a user in gripping toothbrush 3200 at recessed finger sections 3218. Of course other patterns for providing recessed finger sections may be employed.

[0188] The head plate for the bristles is formed with a solid perimeter and defines a field of variously shaped and sized holes within this perimeter. Fibers that are to form the tufts are then placed in the holes in the field of the head plate, and the backs of the tufts are melted together to fix their position relative to one another.

[0189] The tufted head plate is then inserted into a pre-defined receiving portion of the head portion of a toothbrush handle and is sonically welded into place. The brush is then end rounded and packaged for sale as a traditional tooth-brush.

[0190] As is shown in FIGS. 32 and 33 of the present invention, a head plate 3250 is provided, and is fixed to head 3220 of toothbrush 3200, preferably by sonic welding, although any other appropriate attachment technique may be employed. Head plate 3250 is fanned of at least two materials. A first rigid material is used to form the perimeter portion 3252 of the head plate. Such a material, such as for example polypropylene, is easily sonically welded. A tuft field 3254 is formed of a flexible elastomer (preferably having a hardness of 90 Shore A or less).

[0191] A process known as "Anchor Free Tufting" (AFT) is used in the formation of head 3250. In such an AFT process, head plate 3250 is used for holding toothbrush bristles in their proper orientation. When the bristles are placed in their proper orientation through the corresponding holes in the head plate 3250, the head plate 3250 is placed in the head plate cavity formed in the front face of the head section 3204 of the brush, and for insertion into a toothbrush.

[0192] As is best shown in FIG. 32, head plate 3250 is formed with a solid perimeter and defines a field of variously shaped and sized apertures or holes 3256 within the flexible elastomer tuft field 3254. Fibers that are to form one or more bristle tufts 3258 are then placed in the holes in field 3254 of head plate 3250, and the backs of tufts 3258 are melted together to fix their position relative to one another. Thus, such a head plate is able to flex, thereby allowing the tuft field and bristles to move under normal brushing conditions, while providing a perimeter of structural rigidity that is able to be sonically welded. Therefore, the head plate and bristles move or flex under the pressure of normal brushing. While bristles 3258 are shown, elastomeric members may also be used in place of these 31 tufts. Furthermore, while a particular tuft field pattern is shown, any desirable tuft field pattern may be employed. Furthermore, the bristle material need not be the same for all of the tufts, and indeed varying

materials for performance color or indication of life remaining in the brush head, may be used exclusively, or in combination as desired.

[0193] FIG. 34 illustrates a toothbrush 3410 which could be of generally typical structure in the sense of having a handle 3412 at one end connected to a cleaning head 3414 which has an outer surface 3416 from which a plurality of cleaning/treating elements extend.

[0194] In a preferred embodiment, toothbrush 3410 includes a mechanical vibratory device as described above (not shown in FIG. 34) which causes the cleaning head to vibrate. The mechanical vibratory device is preferably located in the head or in a region adjacent to the cleaning head and operatively connected to an electric power source.

[0195] In accordance with this invention the cleaning head 3414, as shown in FIG. 35, may include a peripheral frame 3518. A resilient membrane 3520 is secured across frame 3518 so that membrane 3520 is free to move in a direction toward and away from the outer surface 3416. The membrane 3520 could be recessed below outer surface 3416 or could be flush with the outer surface. Because membrane 3416 is mounted across frame 3418 when pressure is applied to membrane 3520 the membrane would move in a direction away from the outer surface 3416 and would return in the opposite direction upon release of pressure.

[0196] Head 3414 may be completely open in the area of frame 3518, except for membrane 3520, or may include a rear wall spanning the frame and spaced from membrane 3520 to permit inward movement of membrane 3520.

[0197] An embodiment of the present invention is preferably directed toward making use of the movement that results from resilient membrane 3520 in combination with various specialized types of cleaning/treating elements, particularly such elements wherein some of the elements have physical characteristics which differ from other of the elements so that an enhanced cleaning or treatment results from the combination of the actual cleaning/treating elements performing their specialized functions and the movement of the resilient or flexible membrane 3520. Membrane 3520 may be considered as defining a cleaning field in which the various cleaning/treating elements are located.

[0198] FIG. 34 illustrates some examples of cleaning/treating elements wherein the various elements are in the form of different types of bristles. The bristle pattern of FIG. 34 is disclosed in U.S. Pat. No. 6,643,886 to Moskovich et al. filed on Feb. 21, 2001, which is hereby expressly incorporated by reference. As illustrated, the cleaning/treating elements include angled bristles 3422, 3424 which may also be arranged to crisscross each other. Other bristles could include generally straight or inclined bristles having slanted or pointed ends, respectively, and other straight bristles 3428 having flat ends. The slanted end bristles 3426 have their outer surface taper from one side to another, while the pointed portion of the bristles 3430 is located at the center of the bristles. As shown in FIGS. 34 and 38 the various combinations of bristles could also result in multi-level bristles.

[0199] The bristles could be secured to membrane 3520 in any suitable manner such as by anchor-free tufting or by any other conventional techniques. Instead of having individual tufts of bristles the bristles could be located closely together

US 2006/0026784 A1

Feb. 9, 2006

12

to form an elongated bristle wall 3832 such as shown in FIG. 38. Such bristle wall 3832 could be included on the same cleaning field as various of the previously described tufts of bristles. The wall 3832 could be straight, curved, sinusoidal or of any desired shape.

[0200]  The invention may be practiced where the cleaning/treating elements are elastomeric elements rather than tufts of bristles of FIGS. 34 and 38 made of nylon fiber or the like. It is also contemplated that the invention may be practiced where the cleaning/treating elements include a combination of bristle elements and non-bristle elements. The non-bristle elements include, for example, a tongue-cleaning structure, elastomeric fingers, elastomeric walls and prophy cups. As noted above, this kind of head could be used as a manual or powered toothbrush.

[0201]  FIGS. 36-37 show some examples of the incorporation of elastomeric cleaning/treating elements. As shown in FIG. 36 a plurality of rubber or elastomeric fingers 3634 are mounted to membrane 3520. The fingers could be of any suitable size and shape such as being oval at their base and tapering uniformly inwardly toward their free end to generally end in a point or narrow line type structure at their free end. The size of the individual elastomeric fingers 3634 could vary as illustrated in FIG. 36. FIG. 37 shows other forms of elastomeric cleaning/treating elements. Such other forms include prophy cups 3736, elastomeric walls 3738 and elastomeric fingers 3740 which would be conically shaped to function as massage elements. The elastomeric walls could be straight, arcuate, sinusoidal or of any other desired shape. The size and number and location of these elastomeric elements could vary. FIG. 37 also shows the combination of elastomeric elements and bristles. As shown therein, various tufts of bristles 3742 are located in a ring-like pattern around a central portion of bristles 3744. It is to be understood that any combination of the bristles and/or elastomeric elements mounted to membrane 3520 could be used within the spirit of this invention. Similarly, as illustrated in FIG. 39, the frame 3518 of head 3414 could be of sufficient size so as to accommodate cleaning/treating elements such as spaced tufts of bristles 3946 secured directly to the rigid material such as conventionally used in the toothbrush head and handle. These fixed cleaning/treating elements 3946 would be in combination with the movable elements on the cleaning field formed by membrane 3520. As previously noted, any of the disclosed heads could be used in manual or powered toothbrushes.

[0202]  The toothbrush and particularly the cleaning head 3414 could also be provided with various forms of structure to achieve tongue cleaning. Thus, FIG. 38 illustrates tongue cleaning structure 3548 at the backside of head 3414 while FIG. 39 illustrates the tongue cleaning structure 3950 at the tip of cleaning head 2414 remote from the handle. The tongue cleaning structure could be stiff or flexible fingers or walls, made from a suitable elastomeric material. The various cleaning/treating elements could also be located to provide for interproximal cleaning. Further, any of the tongue cleansers disclosed herein can be used on any of the heads, in conjunction with manual or powered toothbrushes, or used as a separate oral care implement.

[0203]  In the preferred practice of the invention the resilient membrane 3520 has mounted to it a plurality of various types of cleaning/treating elements with different physical characteristics. Such physical characteristics could be of the types previously described with regard to size, shape and structure of the cleaning/treating elements or could be the result of different internal characteristics such as differing degrees of stiffness.

[0204]  The present invention thus makes it possible to select the combination of cleaning/treating element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits such as enhanced cleaning, tooth polishing, tooth whitening and/or the massaging of gums. These results are enhanced by mounting the various cleaning/treating elements on the resilient cleaning field so that in addition to the benefits from the specific physical characteristics of the individual cleaning/treating elements there is also a movement imparted to the cleaning/treating elements when pressure is applied to the elements such as by contacting the teeth thereby causing the resilient membrane to move in response to the pressure.

[0205]  Referring now to FIG. 40 of the drawings, a toothbrush 4010 of this invention includes a body formed of an elongated member with a head 4012 on one end and a handle 4014 on the other. The handle 4014 may be conventional in shape. The head 4012 has a flattened bristle mounting surface or face 4016, from which extend a plurality of bristles having proximal ends attached to the face 4016 and distal ends extending outwardly from the head 4012. As seen in FIG. 40, there are two types of bristle groups, the first type being peripheral bristle tufts 4018, located about the periphery of the head 4012. These peripheral bristle tufts 4018 are generally symmetrical in cross-section, i.e. circular, square, or, if oval or rectangular, having a larger cross-sectional dimension less than about 1.3 times the shorter cross-sectional dimension. Further, these peripheral bristle tufts 4018 have a cross-sectional diameter or larger dimension of from about 1.0 mm to about 2.0 mm, preferably from 1.4 mm to about 1.9 mm, and more preferably from about 1.5 mm to about 1.7 mm. The second type of bristle group shown are bristle bars 4020, which are generally elongated in shape and which are located adjacent to the peripheral bristle tufts 4018 and internal to the head 4012 of the peripheral bristle tufts 4018. Bristle bars 4020 have a cross-sectional length of at least 2.5 mm, preferably at least 3.0 mm and more preferably at least 4 mm. The bristle bars may also be formed as elastomeric walls of rubber or other elastomeric material (e.g., SEBS).

[0206]  In a preferred embodiment, toothbrush 4010 includes a mechanical vibratory device as described above (not shown in FIG. 40) which causes the head to vibrate. The mechanical vibratory device is located in the head or in a region adjacent to the head and operatively connected to an electric power source. The bristle tufts and bristle bars are moved by the mechanical vibratory device in a manner so as to provide an enhanced scrubbing action of the teeth and gums. Nevertheless, the head could be driven by other means or used as a manual brush.

[0207]  As illustrated in FIGS. 40 and 41 the bristle bars 4020 of the present invention can be shaped in a variety of geometric forms, such as substantially parallelepipeds; or alternately having curved foot-prints to conform to the curvature of the toothbrush head 4012; or combinations thereof. The peripheral bristle tufts 4018 can preferably be

US 2006/0026784 A1

Feb. 9, 2006

13

taller, i.e., in height from the face 4016, than the bristle bars 4020 or any other bristle tufts on the toothbrush. Peripheral bristle tufts 4018 having such extra height over any other bristle tufts within the head 4012 will penetrate into the interproximal areas between teeth for enhanced cleaning therein without interference by such other shorter bristle tufts. It is preferred that the peripheral bristle tufts are from about 9.0 mm to about 13.0 mm in height about the face 4016 of the toothbrush, preferably from about 11 mm to about 12 mm in height. Further, the bristle bars 4020 are preferably at least about 50% to about 85% of the height of the peripheral bristle tufts 4018, so as to provide the desired support to the peripheral bristle tufts 4018.

[0208] U.S. Pat. No. 5,511,275 to Volpenhein discloses that in addition to the stiffness characteristics of the bristles, the more tightly bristles are packed together in tufts, the more additional support they will lead each other to enhance their overall stiffness and cleaning ability. Volpenhein further discloses as a measure of this effect a Buttress Factor defined as the cross-sectional area taken up by the bristles divided by the total cross sectional area of the tuft at its base, i.e., from 0 to 1. The higher the Buttress Factor, the greater the stiffness and cleaning ability of the bristles. While Volpenhein discloses toothbrushes having Buttress Factors of from 0.8 to 0.96, the bristle tufts 4018 and bristle bars 4020 in the present invention surprisingly only require a Buttress Factor of from about 0.6 to about 0.75. Preferably the Buttress Factor of both the bristle tufts 4018 and the bristle bars 4020 of the present invention is from about 0.65 to about 0.7, and most preferably about 0.68. This Buttress Factor range is further advantageous in equating closely with DuPont Polymers recommended optimum bristle wear performance packing factor range of 0.63 to 0.74, defined similarly as filament cross-sectional area divided by tuft hole opening. See, DuPont Polymers, Wilmington, Del. 19898 publication Z-1737.

[0209] As shown in FIGS. 41, 42 and 43 the bristle bars 4020 may generally have rectangular, curved, or oval footprints. The general shape of the bristle bars 4020 is not critical, so long as the bristle bars are of sufficient dimension to provide the adjacent peripheral tufts support during tooth brushing. Considering the simultaneous brushing movement of toothbrushes from the front to the rear of the mouth and up and down; the bristle bars 4020 are preferably of such a length and such a spacing from the peripheral bristle tufts 4018, to provide support to each adjacent peripheral bristle tuft 4018 when the adjacent peripheral bristle tuft is deflected toward the particular bristle bar 4020 at any angle up to 20 degrees from the perpendicular therebetween, preferably up to 30 degrees, more preferably up to 40 degrees and most preferably up to 50 degrees or more.

[0210] The width of the bristle bars 4020, shown as dimension "s" in FIG. 40, is preferably at least about "1.0 mm, more preferably at least about 1.5 mm. Further, the narrowest transverse space between each peripheral tuft 4018 and the supporting bristle bar 4020 therefore, are preferably not greater than about 1.5 mm, more preferably not greater than 1.0 mm and most preferably not greater than about 0.7 mm.

[0211] Referring again to FIGS. 40 and 41, it can be seen that in each figure a transverse opening is provided between the bristle tufts 4018 and extending through the bristle bars 4020, toward the center of the head 4012. This opening being located middle way up the head 4012. This opening may be provided to enhance the users ability to clean the toothbrush of toothpaste and debris accumulated during brushing, by providing a clear channel for rinse water to the interior" of the head 4012. Alternatively, additional openings can be provided as is illustrated in FIG. 42, to further enhance the ease of cleaning.

[0212] Another embodiment of the present invention, as illustrated in FIG. 43, has a head 4012 having extending from its face 4016 the same peripheral bristle tufts 4018 and adjacent bristle bars 4020 internal thereto as the afore-described embodiment; however, in addition to these sets of bristle tufts 4018 and bars 4020, there is a set of additional bristle bars 4022 located central to the head ("central bristle bars"). These central bristle bars, illustrated as wedges in FIG. 43, provide not only additional bristle area for cleaning, but also, enhanced support for the now intermediate within the head located bristle tufts 4020, to enhance the overall stiffness and cleaning ability of the toothbrush 4010. These central bristle bars 4022 play have cross-sections other than wedges, such as ovals, egg shapes, or rectangular.

[0213] An alternative embodiment of the present invention shown in FIG. 44 is similar to the embodiment disclosed above for FIGS. 40 and 41, except the central bristle bars 4322 can be replaced by a plurality of central bristle tufts 4424, similar to the individual, peripheral bristle tufts 4018. The height of any such central bristle tufts 4024 above the brush face 4016 can be equal to or less than that of the now intermediate within the head located bristle bars 4020.

[0214] FIGS. 45 and 52 show additional embodiments of the invention that are discussed in terms of a toothbrush. For example, toothbrush 4500 is shown as one embodiment in FIG. 45, and toothbrush 5000 as an alternative embodiment in FIG. 52. Nevertheless, the invention could be used in other oral care implements including simply a tissue cleansing implement. They also could be as powered brushes.

[0215] As seen in FIGS. 45-51, an oral care implement in the form of a toothbrush 4500 includes a handle 4503 and a head 4505 which may be used for cleaning the teeth and soft tissue in the mouth, such as the tongue, interior surfaces of the cheeks, lips or the gums. Handle 4503 is provided for the user to readily grip and manipulate the toothbrush, and may be formed of many different shapes and constructions. While the head is normally widened relative to the neck of the handle, it could in some constructions simply be a continuous extension or narrowing of the handle. In one construction, head 4505 has a first face 4506 that supports tooth cleaning elements 4507 (FIGS. 49 and 51) and a second face 4508 that supports a tissue cleanser 4800 (FIGS. 46 and 47). The first and second faces 4506, 4508 are preferably on opposite sides of head 4505. Nevertheless, tissue cleanser 4800 may be mounted elsewhere, such as at the proximal end 4504 of handle 4503. The tissue cleanser 4800 or portions of it may also be located on the peripheral sidewall surface 4501 of head 4505 or extend farther towards the proximate end 4504 of handle 4503 than illustrated.

[0216] The elastomeric material of tissue cleanser 4800 may be any biocompatible resilient material suitable for uses in an oral hygiene apparatus. To provide optimum comfort as well as cleaning benefits, the elastomeric material pref-

JA00151

14

erably has a hardness property in the range of A8 to A35 Shore hardness. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene block copolymer (SEBS) manufactured by GLS Corporation. Nevertheless, SEBS material from other manufacturers or other materials within and outside the noted hardness range could be used.

[0217]   Tissue cleanser 4800 is preferably configured with a multiplicity of tissue engaging elements 4803 (FIGS. 45-48), which in a preferred construction are formed as nubs. Alternative nub constructions 5002, as discussed below, are also illustrated in alternative constructions in FIGS. 52-56. As used herein a "nub" is generally meant to include a column-like protrusion (without limitation to the cross-sectional shape of the protrusion) which is upstanding from a base surface. In a general sense, the nub, in a preferred construction, has a height that is greater than the width at the base of the nub (as measured in the longest direction). Nevertheless, nubs could include projections wherein the widths and heights are roughly the same or wherein the heights are somewhat smaller than the base widths. Moreover, in some circumstances (e.g., where the nub tapers to a tip or includes a base portion that narrows to a smaller projection), the base width can be substantially larger than the height.

[0218]   Such tissue engaging elements 4803 are designed to significantly reduce a major source of bad breath in people and improve hygiene. Nubs 4803 enable removal of microflora and other debris from the tongue and other soft tissue surfaces within the mouth. The tongue, in particular, is prone to develop bacterial coatings that can contribute to bad breath. This microflora can be found in the recesses between the papillae on most of the tongue's upper surface as well as other soft tissue surfaces in the mouth. When engaged or otherwise pulled against a tongue surface, for example, nubs 4803 of elastomeric tissue cleanser 4800 provide for gentle engagement with the soft tissue while reaching downward into the recesses of adjacent papillae of the tongue. The elastomeric construction of tissue cleanser 4800 also enables the base surface 4801 to follow the natural contours of the oral tissue surfaces, such as the tongue, cheeks, lips, and gums of a user. Moreover, the soft nubs 4803 are able to flex as needed to traverse and clean the soft tissue surfaces in the mouth along which it is moved.

[0219]   As seen in FIGS. 46 and 48, in one preferred arrangement of tissue cleanser 4800, nubs 4803 are preferably conically shaped. As used herein, "conically shaped" or "conical" is meant to include true cones, frusto-conically shaped elements, and other shapes that taper to a narrow end and thereby resemble a cone irrespective of whether they are uniform, continuous in their taper, or have rounded cross-sections. With reference to FIG. 48, the base portion 4805 of each conically shaped tissue engaging element 4803 is larger than the corresponding tip portion 4807. In this conically shaped configuration, the base portion 4805 has a wider cross-sectional area to provide effective shear strength to withstand the lateral movement of the tissue cleanser 4800 along the surface of the tongue or other soft tissue surface. The smaller width or diameter of the tip portion 4807 in conjunction with the length of the conically shaped nub 4803 enable the nubs to sweep into the recesses of the tongue and other surfaces to clean the microbial deposits and

other debris from the soft tissue surfaces. In the preferred construction, nubs 4803 are able to flex and bend from their respective vertical axes as lateral pressure is applied during use. This flexing enhances the comfort and cleaning of the soft tissue surfaces. In a preferred construction, the thickness or width of the base of the nub in 0.64 mm, and preferably within the range from about 0.51 mm to about 2.00 mm. Tip 4807 of the nubs is 0.127 mm and preferably within a range from about 0.10 mm to about 0.75 mm for optimal penetration between the recesses of papillae of a user's tongue. The length or height of nubs 303, as measured from base surface 301 to tip 307, is preferably 0.91 mm and preferably within range from about 0.5 mm to about 2.5 mm, and most preferably range between 0.75 mm to 1.5 mm. Nevertheless, nubs of other sizes and shapes outside the given ranges can be used.

[0220]   Alternatively, the tissue cleaning elements 4803 may have other shapes. As one example, the tissue cleanser may have a grated form such as described in co-pending U.S. patent application Ser. No. 10/601,106, incorporated herein by reference.

[0221]   In a preferred construction, nubs 4803 are disposed on the base surface 4801 of tissue cleanser 4800 in a high density pattern. Each nub 4803 is preferably spaced apart from adjacent nubs 4803 between a range of about 0.5 mm to about 3 mm; more preferably the spacing ranges between 0.7 mm to 2.5 mm, and most preferably between 1 mm to 2 mm. Nevertheless, other spacing ranges are possible. The surface density of the nubs 4803 on base surface 4801 ranges preferably from about 100 to about 600 nubs per square inch. In a more preferred construction of the tissue cleanser, the surface density may range from 200 to 500 nubs per square inch, and most preferably between 300 to 450 nubs per square inch. In one preferred example, tissue cleanser 300 includes about 400 nubs per square inch of surface area. The surface density features in conjunction with the height of the nubs 4803 enables the tissue cleanser to provide enhanced cleaning of the soft tissue surfaces with improved comfort. Nonetheless, other surface densities are possible.

[0222]   As seen in FIG. 47, nubs 4803 are preferably disposed in longitudinal rows in a direction generally parallel to the longitudinal axis a-a. Further, nubs 4803 are disposed in transverse rows R1, R2 on an axis parallel to base surface 4801 and generally perpendicular to the longitudinal axis a-a. In one preferred construction, adjacent nubs 4803 are provided on the base surface 4801 in a staggered arrangement. For example, adjacent transverse rows of nubs R1 and R2 have nubs 4803 that are not directly behind each other. A first nub is said herein to be "directly behind" second nub when it is located within the lateral bounds of the second nub extending in a longitudinal direction. This configuration enables improved cleaning of the soft tissue surfaces by facilitating the removal of microflora and other debris, and especially from the recesses of adjacent papillae of the tongue. Nonetheless, the nubs could be arranged randomly or in a myriad of different patterns.

[0223]   Tongue cleanser 4800 is preferably formed by being molded to head 4505, although other manufacturing processes could be used. With reference to FIGS. 45 and 47, tissue cleanser 4800 is preferably molded within a basin or a receiving cavity 4511 in face 4508 of head 4505. The receiving cavity 4511 has a lower base surface 4513 and a

peripheral sidewall 4515 extending away from the lower base surface 4513. In one mounting arrangement, nubs 4803 of the tissue cleanser 4800 are exposed for use with the base surface of the tissue cleanser 4800 being flush or recessed relative to the surface 4514 of the head. Nevertheless, other orientations are possible. Also, base surface 4801 of the tissue cleanser could be embedded in head 4505 or covered by another layer with nubs 4803 projecting through appropriate openings.

[0224]   As can be seen in FIGS. 45 and 47, face 4508 also preferably includes one or more peg members 4517a-c disposed within basin 4511. Peg members 4517 form anchor points against the opposing mold to prevent the head from moving under the pressure of the injection molding. As a result, tissue cleanser 4800 preferably includes one or more complementary apertures 4812a-c which exposes the tops of peg members 4517a-c. Although, the pegs are illustrated in alignment along the centerline of the head (e.g., longitudinal axis a-a), the pegs could have many different positions. Further, the pegs and basin are preferably both included with head 4505, but either could be used without the other.

[0225]   Alternatively, basin 4511 and peg members 4517a-c may be provided to position and hold a previously molded tissue cleanser, although these constructions are not necessary to use such a previously molded tissue cleanser.

[0226]   Peg members 4517a-c may take on a variety of shapes and lengths. With continued reference to the FIGS. 45 and 47, head 4505 includes peg members 4517a-c extending away from the lower base surface 4513 of basin 4511 to the height of the peripheral sidewall 4515. The peg members 4517a-c are shaped in the form of a cylinder, but other shapes and lengths of the peg members 4517a-c are possible. While the molding process would preferably bond the tissue cleanser to the head, the tissue cleanser could be performed and attached by adhesive or other known means.

[0227]   As shown in FIGS. 45-47, tissue cleanser 4800 is preferably formed as a pad composed of a soft and pliable elastomeric material for comfortable cleaning and effective removal of bacteria and debris disposed on the surface of the tongue, other soft tissue in the mouth and even along the lips. The tissue cleanser 4800 also provides effective massaging, stimulation and removal of bacteria, debris and epithelial cells from the surfaces of the tongue, cheeks, gums or lips.

[0228]   In the construction of FIGS. 45-51, tissue cleansers 4800 may rub against the inside surfaces of the cheeks or lips, and on the sides of the tongue while the user brushes his or her teeth, and thus provide a desired massaging, stimulation and cleaning of various soft tissue surfaces within the mouth. For example, during brushing of the facial tooth surfaces, tissue cleanser 4800 is disposed on the outer face 4508 of head 4505 to naturally rub against the oral surfaces of the cheek. As a result, enhanced cleaning is attained without additional cleaning steps. Further, some users may sense a stimulating tingle on the cheek surfaces that leads to a positive user reaction, and even enjoyment of the comfortable feel of the tissue cleanser along the soft tissues surfaces in the mouth. Tissue cleanser 4800 may also be additionally rubbed on the cheeks, tongue, etc., as desired for further cleaning aside from the contact that may occur while brushing the teeth.

[0229]   Referring to FIGS. 49 and 50, the tooth cleaning elements 4507 of head 4505 may include a variety of tooth

cleaning elements which can be used for wiping, cleaning and massaging the user's teeth and gums. Any suitable form of tooth cleaning elements may be used. The term "tooth cleaning elements" is used in a generic sense which refers to cleaning elements or walls that have any desirable shape. In the illustrated example of FIG. 49, tooth cleaning elements 4507 include distal tooth cleaning elements 4603a-b disposed at a distal tip 4521 of head 4505, peripheral tooth cleaning elements 4607a-c disposed along longitudinal tooth cleaning elements 4607a-c disposed along longitudinal axis a-a, arcuate tooth cleaning elements 4609a-d and 4611a-b, and proximal cleaning elements 4613a,b. Tooth cleaning elements 4605, 4607, 4611 and 4613 are preferably provided as tufts of bristles whereas tooth cleaning elements 4609 are preferably formed as elastomeric walls. Nevertheless, other forms and types of tooth cleaning elements may be used.

[0230]   FIG. 51 illustrates a sectional view of an alternative arrangement of a head 4900 of a toothbrush. Head 4900 is similar in construction to head 4505, except that tooth cleaning elements 4609a-d are integrally formed with tissue cleanser 4800. To accomplish the alternative construction, head 4900 has appropriately sized ports or openings 4901 to allow the elastomeric material to flow through the head during an injection molding process. In this construction, tooth cleaning elements 4609a-d and tissue cleaner 4800 are formed with the same elastomeric material. Thus, head 4900 may include at least one elastomeric tooth cleaning element formed as a unitary member with tissue cleanser 4800.

[0231]   In FIG. 52, toothbrush 5000 includes a plurality of nubs or other projections 5002 protruding from a back side 5004 of head 5006 as a cleanser 5008 of soft tissue in the mouth. Teeth cleaning elements 5016 preferably extend from a front side 5005 of head 5006. The projections 5002 are preferably arranged seriatim along at least one narrow base or pad in the form of a strip 5010 fixed to the head 5006. In the illustrated example, a plurality of generally parallel strips 5010a, 5010b, 5010c, 5010d are fixed in a generally concave shape facing away from the handle. In this one construction, the strips extend along back side 5004 of head 5006 and each sidewall 5012, although extensions along the sidewalls are not necessary. Any number of strips could be included. The strips could define virtually any shape or orientation on the head. For example, strips 5010 could have any of the shapes disclosed for the ridges in co-pending U.S. patent application Ser. No. 10/989,267, filed Nov. 17, 2004, entitled "Oral Care Implement" and having an attorney docket no. 006427.00131, which is incorporated herein by reference. In the illustrated construction, strips 5010 are interconnected by an axial stem 5012 which extends into the handle and forms a part of the grip for the user. Further, this handle extension or even the stem is of course not necessary.

[0232]   In one construction, each projection 5002 is generally columnar and formed with a width W of about 1.1 mm and a height H of about 1.7 mm (FIG. 53). The projections are spaced apart from each other along strip 5010 a distance of about 1.0 mm. These height, width and spacing dimensions could, however, vary widely. In the illustrated embodiment, projections 5002 each includes a peripheral wall 5013 protruding outward from base 5010, and an inclined distal end surface 5014 at an angle of about 50 degrees to side surface 5004 of head 5006. The inclined end surface 5014 defines a narrow top edge 5016 along a portion of peripheral

wall 5013, which is advantageous for cleansing the tongue and other soft tissue. Although the end surfaces 5014 are shown to be inclined in the same direction, they could be inclined in different directions.

[0233] In an alternative construction (FIG. 57), head 5006 is additionally formed with at least one elongate ridge 5025. With this arrangement, the user is provided with a cleanser that obtains a beneficial dual cleaning effect by moving the discrete projections 5002 and the ridge 5025 across the tongue or other tissue. In the illustrated example, ridge 5025 is a curved, elongate projection protruding generally outward along the outer edge of the remote end 5027 of the head. Nevertheless, other arrangements, locations and shapes are possible. Additional ridges could also be provided. In one preferred construction, ridge 5025 is molded as one-piece with the head and formed of a relatively hard plastic such as polypropylene. The ridge, however, could be formed separately from the head and/or composed of other materials that are compatible with oral care implements.

[0234] In one construction, ridge 5025 is, as noted above, formed of a relatively hard material (e.g., polypropylene), while projections 5002 are formed of a relatively soft material (e.g., a thermoplastic elastomer). This use of dual materials enables the benefits of both materials to be gained. The cleanser includes the firm engagement of the relatively hard scraper blade in ridge 5025 and the relatively soft discrete projections that flex and turn as they dig into the tongue or other tissue.

[0235] As seen in FIGS. 57 and 58, ridge 5025 is defined by a pair of opposite sidewalls 5033, 5034 which meet to form a scraper edge 5035. While edge 5035 is relatively narrow in this construction, it could be substantially widened. In one embodiment, sidewalls 5033, 5034 are formed with different slopes relative to side 5004 of head 5006, though they could have the same slope. In one preferred construction, sidewall 5033 is formed with a steeper slope than sidewall 5034 to define a more aggressive scraping action as the head is pulled across the tongue by the user. The shallower slope of sidewall 5034 facing generally away from the handle, makes the ridge less prone to pushing the tongue biofilm farther back in the throat as the ridge is pushed back toward the throat. In a preferred embodiment, sidewall 5033 is oriented at an angle α of 62 degrees relative to side 5004, whereas sidewall 5034 is oriented at an angle β of 43 degrees. Other angles could also be used for both sidewalls.

[0236] In another alternative construction (FIG. 54), each projection 5002a is provided with an end surface 5014a having two inclined end face portions 5015a, 5017a and a top edge 5016a. As with ridge 5025, end face portion 5015a, generally facing toward the handle, is preferably inclined at a steeper angle relative to side 5004a than end face portion 5017a, although other arrangements including end face portions having the same inclination can be used. As one example, end face portion 5015a is oriented at an angle α of 62 degrees relative to side 5004a, and end face portion 5017a is oriented at an angle β of 43 degrees. The steeper angle of end face portion 5015a provides a more aggressive scraping action as the head is dragged out of the mouth. The shallower angle of end surface 5017a makes the projection less prone to pushing the tongue biofilm farther back in the throat.

[0237] Of course, other projections can be used. For example, each projection could include a non-inclined distal end or an end that tapers to a pointed tip. The projections could have a wide variety of shapes beyond the cylindrical shape shown in FIG. 52. For example, the projections could have a conical shape, irregular cross sections, or be inclined to the back side 5004. Moreover, the projections may also be ridge shaped to extend entirely or partially along the length of strip 5010.

[0238] In a preferred construction, projections 5002 and strip 5010 are formed as a one piece member molded or otherwise secured to head 5006. The projections and strip are preferably formed as a one-piece member of a resilient thermoplastic elastomer such as styrene-ethylene/butylene-styrene block copolymer (SEBS) manufactured by GLS Corporation, but could be composed of other resilient materials, hard materials, or a combination of materials such as disclosed in U.S. patent application Ser. No. 11/011,605, filed Dec. 15, 2004, entitled Oral Care Implement and having attorney docket no. 006427.00132, incorporated herein by reference. The projections and strips could also be formed of the same substance as head 5006 (e.g., polypropylene), but have a different color or the like to define it a different material from the head and thereby create at least a visually appealing brush.

[0239] In one construction, strips 5010 are molded to overlie a generally planar surface 5004 of head 5006 (FIG. 53). Nevertheless, channels 5007 could be formed in side 5004 to receive strips 5010 therein so that side 5004 and the outer surfaces 5012 of strips 5010 having projections 5002 are generally co-planar (FIG. 55). Additionally, the strips of resilient material could be formed as an integral part of the head construction (FIG. 56). More specifically, in this alternative construction, the head includes a plurality of first members 5020 joined together by a resilient second member 5022 that acts as a living hinge to permit the first members to move relative to each other during use of the toothbrush. The second member also forms the base 5010c of soft tissue cleanser 5006 provided with projections 5002. Additionally, as discussed in regard to toothbrush 4900, projections 5002 or 5002a can be integrally formed as a one-piece member with elastomeric tooth cleaning elements extending in an opposite directions from the head.

[0240] The following examples are set forth as representative of the improved operation of the present invention. These examples are not to be construed as limiting the scope of the invention.

### EXAMPLE 1

[0241] The performance nature of a toothbrush can be measured using known oral malodor assessment methods. A study was conducted to evaluate the performance of a toothbrush provided with an elastomeric tissue cleanser having conically shaped nubs, such as the preferred construction of toothbrush 4500 discussed above. Human test subjects participated in the study. There was a washout or normalization period prior to testing of about 7 days in which the test subjects brushed twice a day with a fluoride dental cream (see Table 1). After the washout period, the test subjects were asked to refrain from any oral hygiene (brushing, rinsing, and flossing), eating and drinking prior to oral testing. A baseline volatile sulfur compound (VSC) sample

US 2006/0026784 A1

Feb. 9, 2006

17

was taken from each of the test subjects. In the study for overnight odor control, the test subjects brushed their teeth for one minute with a fluoride dental cream (see Table 1) using toothbrush 4500 provided with the above noted tissue cleanser 4800. Subsequently, the subjects cleaned their tongue surface with the tissue engaging elements of the toothbrush for ten seconds. The test subjects slept overnight and returned for post treatment. VSC samples were taken at the ten-hour time point from the previous day cleaning. In the illustrative example, use of the toothbrush reduced oral VSC about 60% verses brushing the teeth alone as measured from a baseline ten hours after use. The VSC readings were obtained by gas chromatography.

### EXAMPLE 2

[0242]  In another study of the above-noted toothbrush 4500, there was a washout or normalization period prior to testing of about 7 days which the test subjects brushed twice a day with a fluoride dental cream (see Table 1). The test subjects were asked to refrain from any oral hygiene (brushing, rinsing, and flossing), eating and drinking before testing. After the washout period, the test subjects provided a baseline tongue bacteria sample by swabbing a side of the back of the tongue with a sterile cotton swab. The test subjects brushed their teeth with a fluoride dental cream (see Table 1) for one minute with the toothbrush having the above-noted tissue surface. Subsequently, the test subjects cleaned their tongue surface with a preferred construction of the tissue engaging elements 4800 of the toothbrush 4500 for ten seconds. Two hours after the cleaning of the tongue surface, a tongue bacteria sample was taken from a side of the back of the tongue with a cotton swab. In the illustrative example, use of the tissue engaging elements controlled more cid more causing tongue bacteria than simply brushing the teeth alone. Use of the tissue cleanser 4800 demonstrated a tongue bacteria log reduction of over 0.8 Log colony forming units/ml two hours after use on the tongue.

### EXAMPLE 3

[0243]  In another study of the above-noted toothbrush, a MTT assay was used to examine the viability of the epithelial cells collected from the oral cavity prior to and after the use of the toothbrush with the noted tissue cleanser. The MTT Assay was based on the enzymatic reduction of the tetrazolium salt MTT [3-(4,5-dimethylthiazol-2-yl)-2,5-diphenyl-tetrazoliumbromide+++] in living, metabolically active cells. The reaction was carried out in situ in test tubes, and the reaction product, a purple-colored formazan soluble in dimethylsulfoxide, was measured colormetrically using a multiwell plate reader. Advantageously, the MTT Assay offers a high degree of precision, ease of use, and suitability for the purpose for large scale chemosensitivity testing.

[0244]  Following a 7-day washout period, the test subjects reported to a test site without prior eating, drinking, or performing oral hygiene. The test subjects provided salivary rinse samples by rinsing their oral cavity with 9 ml of sterile water for 10 seconds and then discharging the water from the rinse into a tube containing 10x sterile phosphate buffered saline (PBS) solution. The samples were refrigerated for approximately 30 minutes before the MTT Assay was run. The test subjects brushed their teeth under supervision for one minute using a fluoride dental cream (see Table 1) followed by 10 seconds of tongue cleaning with the tongue

cleanser 4800 of the preferred construction. Approximately 30 minutes after brushing and tongue cleaning, the test subjects provided a rinse sample in the manner described previously.

[0245]  The pre-rinse samples and post-rinse samples were centrifuged for 15 minutes at about 3000 RPM. The supernatant, e.g., clear liquid, was removed and the pellet was resuspended in 2.5 mL of PBS. The samples were vortexed for 5 seconds, then 2.5 ml of MTT Solution was added. The samples were subsequently incubated in a gently shaking waterbath set at 37° C. for 2 hours: Following the 2 hour incubation period, the samples were centrifuged for 15 minutes at about 3000 RPM. The supernatant was siphoned out and 3 mL of detergent (0.04 N Acid Isopropanol) was added to dissolve purple crystals. An increase or decrease in MTT conversion was spectrophotometrically quantified. From each sample, 200 $\mu$l of each was added to 96 well plates and the optical density was measured at 570 nm and compared to a negative buffer control. In the illustrative example, one minute of brushing followed by 10 seconds of use of the tissue cleanser reduced oral epithelial cells about 72% as determined by a MTT assay protocol.

### EXAMPLE 4

[0246]  In another study, human test subjects provided baseline VSC samples via a Halimeter™ (i.e., a sulfide meter). A Halimeter™ uses an electrochemical, voltammetric sensor which generates a signal when it is exposed to VSC such as, sulfide and mercaptan gases and measures the concentration of hydrogen sulfide gas in parts per billion. The test subjects brushed their teeth under supervision for one minute with the preferred construction of a toothbrush having the above noted tissue cleanser. Then, the test subjects used the noted toothbrush to provide six strokes on the tongue surface. A subsequent VSC sample was taken from the test subjects two hours after the brushing stage. In this illustrative example, use of a toothbrush with the tissue cleanser reduced the measured VSC in the mouth odor over 35% from a baseline measured two hours after use.

### EXAMPLE 5

[0247]  In one other study, after a washout period, human test subjects rinsed their mouths with sterile water to provide a baseline sample for viable epithelial cell analysis with the MTT assay. The subjects brushed their teeth under supervision for one minute with the preferred construction of the toothbrush having the above-noted tissue cleanser. Then, the test subjects used the tissue cleanser to provide six strokes on the tongue surface. The test subjects provided a post rinse sample for analysis. The samples were tested and analyzed in the manner as discussed with respect to Example 3. In this example, use of the toothbrush reduced oral epithelial cells by about 92% from a baseline as determined by MTT assay protocol.

[0248]  In the above noted examples, the subjects brushed their teeth using a fluoride dental cream with the formulation in Table 1.

## TABLE 1

| % wt. | Ingredient |
|---|---|
| 48.76% | Dicalcium Phosphate Dihydrate |
| 22.0063% | Water |
| 22.00% | Glycerin |
| 4.138% | SCS Sodium Lauryl Sulfate base-29% |
| 1.000% | Sodium CMC-7MF-Food Grade |
| 0.89% | 105 Dental Cream Flavor |
| .76% | Sodium Monofluorophosphate |
| .25% | Tetrasodium Pyrophosphate |
| .20% | Sodium Saccharin |

[0249]  An oral care implement in accordance with the present invention is further illustrated in the form of a toothbrush 10 including a head 12 and a handle 14. Although discussed in terms of a toothbrush, it is understood that the device could be in the form of other oral care implements including simply a tissue cleansing implement.

[0250]  An oral care implement in accordance with the present invention is illustrated in the form of a toothbrush 10 including a head 12 and a handle 14. While FIG. 59 only illustrates the connection of the handle to the head, the handle is preferably an elongate member to be grasped by the user. The handle 14 could have any known shape adapted for the manipulation needed to clean the teeth and/or tongue of a user.

[0251]  The head 12 with a pair of opposite sides 16, 17 is shown with a generally oblong shape, although other known shapes could be used. A plurality of teeth cleaning elements 20 extend from one side 16 of the head 12. The teeth cleaning elements could be bristles and/or elastomeric members of various shapes and sizes. Any form or combination of elements 20 suitable for cleaning a user's teeth could be used.

[0252]  The other side 17 of head 12 includes at least one ridge and preferably a plurality of elongate ridges 22 to cleanse the tongue and other soft tissue of the mouth (e.g., the inner surfaces of the cheeks). While the ridges are preferably formed on a head also, provided with teeth cleaning elements, they could also be formed on other implements or other parts of the toothbrush. A head of the implement is simply meant to be the operative portion of the implement that is inserted into the mouth for cleaning of the tongue, and does not refer to a particular shape or structure of the head.

[0253]  In one construction of the invention, each ridge 22 projects orthogonally from a back surface 17a of the head and has a generally square-like cross-sectional configuration (FIG. 60). The ridge includes a distal end 29 remote from surface 17a that forms a contact region 29a adapted to contact and clean the tongue or other soft tissue in the mouth. In this embodiment, the contact region 29a is defined between and includes protruding corners or edges 25, 27. As can be appreciated, the contact region 29a has a width W extending transverse to the extension of the ridge across surface 17a. The width W of ridge 22 is at least as large as the height H of the ridge 22 (i.e., the distance the ridge extends from surface 17a). With this width to height relationship, the risk of the ridge cutting or injuring the soft tissue of the tongue or other parts of the mouth is reduced. A narrow ridge that extends outward from head 12 a distance greater than its width has an increased risk of cutting or otherwise injuring the user as compared to a similarly narrow ridge (i.e., one with the same width) that extends from the head a distance less than the width of the ridge; such a ridge will not tend to cut or hurt the user. The tongue and other soft tissue in the mouth will give and bend some distance around the ridge so long as the ridge is not too tall for the width of the ridge engaging the tissue. In one exemplary embodiment, ridges 22 have a width W that is preferably about 0.8 mm and a height H about 0.6 mm. Nevertheless, a wide range of relative sizes are possible.

[0254]  Additionally, ridge 22 also includes a base 28 where the ridge is fixed to surface 17a. In a preferred construction, base 28 defines a width W1 that is at least as large as the height H of the ridge. In this way, the ridges do not experience undue bending as they are dragged over the tongue. Rather, ridges 22 are stably supported so that they tend to remain generally in a protruding orientation. As a result, edges 25, 27 are stably supported to dig into recesses in the tongue to effectively remove bacteria and debris.

[0255]  Alternatively, the ridges could have other shapes. For example, FIG. 61 illustrates ridges 22′ that are substantially wider than they are tall, i.e., base 28′ and contact region 29a′ each has a width W2 that is substantially greater than the height H2 of the ridge. In one example, the width is about twice the distance of the height. The increased width to height ratio of ridge 22′ provides for a stiffer, smaller ridge to effectively cleanse the tongue. Such ridges are beneficial in that they reduce the size of the head, which is preferred by some users. A shorter, wider ridge also further reduces the prospect of users injuring themselves. Moreover, such ridges can be made of softer materials without losing the desired stability.

[0256]  In another example (FIG. 61a) ridge 22″ has a rounded distal end. Accordingly, the contact region 29a″ has an arcuate, convex surface to engage the tongue or other soft tissue. In this example, the contact region 29a″ (i.e., the surface adapted to engage the tongue) has a width W3 that is at least as large as the height H3 of the ridge. In this embodiment, the base 28″ of ridge 22″ also has a width W4 that is at least as large as height H to present a stable ridge. Of course, numerous variations may be formed in the shape of the ridge while maintaining the benefits of the invention.

[0257]  In addition the ridges may be formed to gain only some of the benefits of the invention. For instance, ridge 22‴ can be formed to taper to a narrowed distal end 29‴ (FIG. 3b). In this instance, contact region 29a‴ has a width W5 that is less than the height H5. However, the base 28‴ of ridge 22‴ has a width W6 that is at least as large as the height to form a stable ridge construction.

[0258]  Although the illustrated ridges have all been shown to extend generally perpendicular from surface 17a, they could be inclined relative to surface 17a. A perpendicular extension is preferred to provide effective cleaning regardless of whether the tongue cleaner is pushed or pulled over the tongue. The sides 24, 26 could also be inclined, curved, angular, irregular or otherwise shaped. Additionally, the ridges could project from a non-planar surface. As one example, surface 17a and ridges 22 could have an undulating configuration.

[0259]  Regardless of the cross-sectional shape of the ridge, each ridge 22 is preferably curved to define a concave

19

side 24 facing toward handle 14 and a convex side 26 facing in the opposite direction. Although ridges that are continuously curved are preferred (FIG. 59a), such concave-shaped ridges could be defined by non-continuous ridges (FIG. 59b) or angular ridges (FIG. 59c). Further, in one preferred construction, ridges 22 are progressively less curved as they are formed farther from handle 14. In one illustrated construction (FIGS. 59 and 59a), the ridges are generally concentric to each other curving generally about a common point near the connection of handle 14 to head 12.

[0260] In use, the user grips the handle and typically pulls the tongue cleanser repeatedly over the tongue from back to front so that the concave sides 24 are scraped against the tongue to effectively gather and remove bacteria and debris on the tongue. Alternatively, the user may also commonly move the tongue cleanser forward and backward over the tongue. In either event, the different curvatures of the ridges enable aligned segments of the ridges (i.e., along lines generally parallel to longitudinal axis 30) to engage the tongue surface at different angles for effective cleaning of the tongue. Nevertheless, the tongue cleansing ridges can be moved over the tongue in a number of ways to clean the tongue.

[0261] Further, other ridge constructions could be used. For example, the oral care implement could include ridges 22a that are reversed so that the concave sides face away from the handle (e.g., FIG. 62), ridges 22b, 22g, 22i, 22j, 22s with different curved shapes (e.g., FIGS. 63, 68-70, and 78), ridges 22c, 22d, 22k and 22r that are linear (e.g., FIGS. 64, 65, 71 and 77), ridges 22e, 22l, 22m, 22n and 22o that include a mixture of curved and linear ridges (e.g., FIGS. 66 and 72-75), or one continuous ridge member 22f, 22g forming successive ridges 22f, 22g', (e.g., FIGS. 67 and 68). The ridges could be non-concentric or curved at all the same radius of curvature. While the ridges preferably extend substantially across the entire side 17 of head 12, they could extend only part way across the head. For example, ridges 22p, 22t, 22v could be provided only along the sides of surface 17a (FIGS. 76-77 and 79-80). Ridges along the sides of head 12 could also be used with central ridges; i.e., side ridges 22p, 22t, 22v could be used with a central ridge(s) such as an oval or partially oval ridge 22q, 22u, 22w (FIGS. 76, 79 and 80), any of the ridge patterns illustrated in FIGS. 59a-c and 62-75, or another ridge pattern. Any of the ridges could also be used with various projections, e.g., conical projections 31 (see, e.g., FIGS. 74 and 76-80). Regardless of whether the ridge 22 each form a continuous segment across the head (e.g., FIG. 59a) or is defined by aligned ridge sections 22h separated by gaps 23 (e.g., FIG. 59b), they are in this application each considered a ridge. Also, regardless of whether successive ridges 22 are separated (e.g., FIG. 59a) or interconnected to define a single ridge member 22f (e.g., FIG. 67), the successive sections extending laterally across the head are each considered to be a ridge. Concepts of this invention can be used in connection with ridges having virtually any shape or orientation along surface 17a.

[0262] As shown in FIGS. 59 and 60, head 12, handle 14 and ridges 22 can be molded together as a one-piece member of the same material, for example, polypropylene. Nonetheless, other arrangements are possible. For example, head 12 could be detachable from handle 14. Further, ridges 22 could be separately molded, glued or otherwise attached to side 17

of head 12. The ridges as well as the head and the handle could each be made from a material different from the other parts. Soft materials, such as TPE or the like, can be fixed to head 12 to form the ridges (see, e.g., FIGS. 76-80). The ridges could be made of virtually any known material used to make oral care implements.

[0263] FIGS. 81-89 illustrate an oral care implement in the form of a toothbrush 8100 having an improved handle 8103 and a head 8105 with bristles or other tooth engaging elements. While reference is made to a toothbrush with an improved handle, other oral care implements, such as interproximal picks, flossing tools, plaque scrapers, tongue and soft tissue cleansers/massagers and the like, may use the same handle.

[0264] Handle 8103 is provided for the user to reliably grip and manipulate the toothbrush. Handle 8103 includes ergonomic features which provide a high degree of control for the user while maintaining comfort. In a preferred construction (FIGS. 81-89), handle 8103 includes a base 8300, a grip body 8403, and a gripping member 8407. These components cooperatively form a grip portion 8400 by which the user holds and manipulates the toothbrush. For optimum comfort and control, grip portion 8400 includes three segments 8111, 8113, 8115. A rear segment 8115 forms a portion that generally fits comfortably within the palm of the user. A front segment 8111 forms a portion that generally fits comfortably between the user's thumb and index finger. A narrow transition segment 8113 connects the front and rear segments 8111, 8115.

[0265] In a preferred construction, front segment 8111 is inclined relative to rear segment 8115 to define an inclined portion positioned for comfortable gripping and to facilitate a desired offset positioning of the head relative to the palm gripping region 8115. The angle θ of the incline is preferably 23 degrees, but may range approximately between 5-40 degrees. This feature allows improved control of the handle during brushing in which the head 8105 can be more desirably positioned within the mouth to engage the tooth cleaning elements 8200 against the teeth.

[0266] In the preferred embodiment, front and rear segments 8111, 8115 are widened sections that are joined by a narrowed portion 8113 to form an undulating structure which is more reliably and comfortably held within the user's hand. Further, this wide construction of the palm and finger gripping regions 8111, 8115 requires less fine motor control by the user and is, hence, easier to hold and manipulate. In addition, front segment 8111 transitions into neck 8116 which, in turn, supports head 8105. In a preferred embodiment, base 8300 includes a gripping region 8301 that corresponds to grip portion 8400, the neck 8116, and the head 8105 to define an oral engaging region.

[0267] Under a normal use position, grip portion 8400 is grasped by a user with the fingers engaging the handle 8103 so that the thumb is on one side and the index finger and other fingers are positioned on the opposite side. Front segment 8111 of grip portion 8400 includes grip body 8403 having opposing sides 8405, 8404 preferably for engaging the thumb and index finger of a user. Grip portion 8400 further includes a rear segment 8115 which enables reliable gripping of the toothbrush 8100 with the third through the fifth fingers of the user's hand in a normal use position. While a normal use position is discussed, the features of the

toothbrush could be employed by a user having less fingers or a user which holds the toothbrush in other ways.

[0268] In one preferred construction, front section 8111 includes a soft, resilient grip body 8403 fixed within aperture 8303 of base 8300. As shown in FIGS. 88 and 89, front section 8111 has the widest transverse dimension of any other part of handle 8103. As shown in FIGS. 81 and 84, aperture 8303 occupies more than one-half of the transverse dimension across front section 8111 of handle 8103. Nevertheless, other constructions are possible. As an example only, grip body 8403 may occupy a smaller portion of the transverse dimension, such as one-third of the transverse dimension of front section 8111. Nevertheless, the width and length of aperture 8303 may be adjusted as desired and other parts of handle 8103 may be as wide as or wider than front segment 8111.

[0269] Referring to FIGS. 86-87, in one construction, aperture 8303 extends through base 8300 to mount grip body 8403. Aperture 8303 includes a sidewall geometry 8305 for the retaining and dynamic positioning of the resilient grip body 8403 during use of the toothbrush. While grip body 8403 is preferably molded into aperture 8303, it could be premolded and mounted into aperture 8303. In a preferred construction, grip member 8403 is a soft, resilient element formed of a thermoplastic elastomer (TPE) which fills the aperture 8303. To provide optimum comfort as well as control benefits, the elastomeric material preferably has a hardness durometer measurement ranging between A11 to A15 Shore hardness. Nevertheless, the hardness of the elastomer could also range between A8 to A24 Shore hardness. Other materials outside this hardness range could also be used. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene (SEBS) manufactured by GLS Corporation. Nevertheless, other manufacturers can supply the SEBS material and other materials could be used.

[0270] Referring to FIGS. 81-85, resilient grip body 8403 preferably has a generally bulbous shape that bulges out of aperture 8303 and which resembles an oval or elliptical shape. The bulbous shape of the resilient grip body 8403 enables the user to reliably roll and control the handle 8103 between the thumb and index fingers during use. Grip body 8403 could also be non-bulging or have any number of shapes, such as circular, a true oval shape and the like.

[0271] Referring to FIGS. 86-87, aperture 8303 preferably includes a peripheral shoulder or rim 8304 for supporting grip body 8403. Sidewall 8305 of aperture 8303 extends between opposing outer surfaces of base 8300 and includes inclined surfaces 8309, 8310 inside of the periphery 8306 of aperture 8303. The inclined surfaces 8309, 8310 extend from the outer surfaces towards a rounded edge surface 8311 which is the narrowest part of the aperture 8303. This construction, in conjunction with the soft, resilient nature of grip member 8403, provides a weight shifting feature which improves control of the handle 8103 during use.

[0272] Resilient grip body 8403 further helps attenuate the brushing force applied to the oral surfaces to prevent gum recession, loss of tooth enamel or to provide for a more comfortable brushing experience. When the toothbrush is used against the oral surfaces, such as the teeth, reaction forces are transferred to the resilient grip body 8403. The elastomeric material dampens the forces against the head

8105 which reduces the brush pressure applied to the teeth and soft tissue surfaces, such as the gums. In a preferred construction, elastomeric material of the resilient grip body 8403 is enabled to flow and shift within aperture 8303. Net pressure applied by the user's fingers is transferred to grip body 8403 so that the inclined surface 8309, 8310 enables the elastomeric material to flow to the narrowest portion of the aperture. Hence, some of the elastomeric material squeezes past rounded edge surface 8311 to the other side of the aperture while under pressure. The shifting of the material to the other side of the aperture causes a slight shift in the mass centroid of the resilient member 8403 to counter balance the brushing forces. Thus, grip body 8403 balances handle 8103 enabling it to "float" in the hand of the user and reduce the brushing forces applied by the head 8105.

[0273] In one preferred construction, grip body 8403 has a multiplicity of finger grip protrusions 8411 (FIGS. 81-85). Finger grip protrusions 8411 provide a tactile feature to increase the friction on the user's finger surfaces and thus enhance the user's ability to grip the handle, particularly under wet conditions. Finger grip protrusions 8411 are preferably provided in a desired conical or frusto-conical shape for improved grip performance. Of course, other roughened surfaces could be used.

[0274] Referring to FIGS. 86 and 87, rear segment 8115 is preferably formed by base 8300 and gripping member 8407. In one preferred embodiment, base 8300 defines a relatively rigid support structure which is at least partially overlain by an elastomeric gripping member 407. While gripping member 8407 is shown as a single unitary member or layer, it could be formed by separate independent parts or sections.

[0275] Base 8300 along rear segment 8115 includes at least one projection, and preferably a plurality of spaced projections. While the projections could have virtually any shape, they are preferably in the form of spaced, elongate, transverse projections or ribs 8315. In the preferred embodiment, ribs 8315 are generally parallel with respect to each other and generally symmetrical in relation to the longitudinal axis a-a of rear segment 8115. The projections 8315 are preferably linear and span laterally between the longitudinal sides 8313, 8314 of handle 8103, although they may have different transverse lengths. The transverse length of each projection 8315 generally matches the width at the longitudinal location along the handle 8103; although the ribs are preferably slightly short of the actual width of handle segment 8115 at any one location so as to be covered on the sides by gripping member 8407. Since ribs 8315 span the width of segment 8115, they each have varying lengths due to the variations in the width of handle segment 8115. While nine projections are shown, the inventive aspects may be obtained by other numbers of projections.

[0276] In a preferred arrangement, a receiving region 8317 is defined between each of the adjacent transverse projections 8315. The receiving regions 8317 are configured to retain and hold a layer of suitable gripping member 8407, such as a thermoplastic elastomer (TPE) or other similar materials used in oral care products. In a preferable construction, receiving regions 8317 have a transverse arcuate base surface 8319 with a transverse groove or depression 8321. The arcuate base surface 8319 extends between the longitudinal sides of base 8300. When a gripping member

US 2006/0026784 A1

Feb. 9, 2006

21

8407 is applied to the base, grooves 8321 create concaved regions 8413 in grip surface 8410 to improve the tactile performance of the toothbrush handle (see FIG. 84). While horizontal or straight projections 8315 are illustrated, the projections 8315, alternatively, may be any number of shapes or orientations with respect to the longitudinal axis a-a. For example, the projections 8315 may be chevron shaped, circular, oval, elliptical, rectangular, or triangular or other shapes. The orientation of the projections 8315 may also be off-axis from the longitudinal axis a-a to form an asymmetrical relationship. The projections 8315 may be regularly or randomly spaced on base 8300 for the intended gripping performance. As shown in FIG. 87, a peripheral portion of base 8300 has a peripheral groove 8323 arranged to receive and hold a layer of the grip material for suitable use with the toothbrush.

[0277] Referring to FIGS. 82, 84 and 85, gripping member 8407 is fixed to base 8300 to provide several gripping features to improve performance. In one aspect, gripping member 8407 has a grip surface 8410 with at least one and preferably a plurality of spaced openings, preferably in the form of elongate transverse slots 8415, which expose portions of base 8300. In this way, the outline shape of slots 8415 is formed by the peripheral shape of projections 8315 of base 300 (FIGS. 86 and 87). To form slots 8415, suitable injection molding equipment mates with the top surfaces of the projections 8315 to prevent overmolding of ribs 8315 and any undesired deflection of base 8300 during the molding process. This enables the top surfaces of the projections 8315 to be exposed after the molding process.

[0278] To provide comfort as well as control benefits, the elastomeric material of the grip surface 8410 may have a hardness durometer measurement ranging between A13 to A50 Shore hardness, although materials outside this range may be used. A preferred range of the hardness durometer rating is between A25 to A40 Shore hardness. While an injection molded construction is preferred, a suitable deformable thermoplastic material, such as TPE, may be formed in a thin layer and attached to base 8300 with an appropriate adhesive or by other means. Irrespective of the manufacturing process, ribs 8315 are preferably recessed relative to gripping surface 8410, i.e., a suitable thickness of elastomeric material is used to control the depth of the slot 8415 as measured from the top of the grip surface 8410 to the top of the projection (e.g., the exposed portion of base 8300). In a preferred construction, the depth of the slots along axis a-a is about 0.5 mm. These transverse slots 8415 prevent slippage of the handle 8103 by enabling portions of the user's fingers to slightly protrude into the depth of the slot 8415. Additionally, slots 8415 channel water away from the fingers tips during wet operational conditions. Air is also able to enter the slots during brushing to provide some evaporative effect.

[0279] In another aspect, the grip surface 8410 includes concaved regions 8413 between each slot 8415 to further improve the grip performance of handle 8103. The concaved regions 8413 are preferably created by a suitable thickness of the elastomeric material during the injection molding process filling into the transverse grooves 8321 in base 8300, but could be formed by other means (FIGS. 86 and 87). While base surface 8319 is preferably arcuate in a transverse direction, the base surface may be horizontal or take on other shapes.

[0280] In one preferred construction, resilient grip body 8403 has a different hardness as compared to the hardness of the grip surface 8410. Generally, the material of grip body 8403 is softer than the material forming the grip surface 8410. In this manner, the handle 8103 may be provided different grip features to complement the particular control need. For example, the handle 8105 may have a soft forward portion with a shock absorption advantage and a slightly harder aft portion with a comfort and control advantage. The material of the resilient grip body 8403 and grip surface 8410 are preferably each a thermoplastic elastomer.

[0281] The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any combination, improve the control and grip performance of oral implements. Other constructions of toothbrush are possible. For example, head 8105 may be replaceable or interchangeable on handle 8103. Head 8105 may include various oral surface engaging elements, such as inter-proximal picks, brushes, flossing element, plaque scrapper, tongue cleansers and soft tissue massagers. While the various features of the toothbrush 8100 work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to obtain some of the aforementioned advantages without the necessity to adopt all of these features in an oral care implement.

[0282] FIGS. 90-98 show additional embodiments of the invention that further illustrate the combinability of various aspects, features and functions disclosed herein into single oral care implement configurations. FIGS. 90-98 disclose oral care implement configurations that provide tongue cleanser functionality and include handle gripping features. As such, oral care implements 90-98 generally include the aspects discussed along with FIGS. 38, 39 and 45-81 pertaining to soft tissue cleansers (e.g., tongue cleansers), as well as the aspects discussed along with FIGS. 84-89 pertaining to handle features. Further, it is understood that other features may be used along with these configurations.

[0283] As an example of potential embodiments based on combinations of features disclosed herein, the mechanical drive features discussed along with FIG. 1-5 and/or tooth cleansing features discussed throughout the specification may be combined with the soft tissue cleansers of FIGS. 90-98. Thus, as illustrated in FIGS. 98A-C, embodiments of the invention include any one of heads 9014, 9214, 9414, 9614 and 9514 discussed hereafter in combination with handle 1 and neck part 4 shown in FIGS. 1-4 instead of bristle-carrying head part 3 shown in FIGS. 1-5. These embodiments provide powered oral care implement configurations that can provide enhanced cleansing benefits. For example, such combination devices can provide the functions of two devices in a single device. Further, these devices can simultaneously provide dual cleaning functionality. For instance, toothbrush features may be used to clean a user's teeth while the soft tissue cleanser features simultaneously clean soft tissues, such as the inside of a user's cheeks.

[0284] FIGS. 90 and 91 disclose a soft tissue cleanser 9010 for removing microbial and other debris from the soft tissue of a user's mouth, such as the user's tongue and inside of their cheeks and lips. As shown, cleanser 9000 generally includes a handle 8103 attached to a head 9014. The head

and handle may be molded together as a one-piece member of the same material, for example, polypropylene or another thermoplastic elastomer. In addition, the head may be detachable from the handle. In the configuration shown, handle 8103 is the handle of oral care implement 8100 discussed along with FIGS. 81-89.

[0285]  In general, head 9014 includes a plurality of tissue engaging elements 9012 disposed about a central portion 9016 of the head. Elements 9012 include projections in the form of ridges 9018 and nubs 9020, which extend from the head to engage the soft tissue in a user's mouth. The ridges and nubs may be separately molded, glued or otherwise attached to head 9014. In addition, they may be integrally formed therewith. The ridges and nubs could each be made from a material different from each other and/or different from other parts. Soft materials, such as TPE or the like, can be fixed to head 9014 to form the ridges. However, a harder material or virtually any known material used to make oral care implements may be appropriate for the ridges and nubs. Ridges 9018 and nubs 9020 could have a variety of shapes, patterns, cross-sections, configurations, etc., as discussed along with FIGS. 38, 39 and 45-81.

[0286]  Central portion 9016 is shown as a generally elliptically-shaped region on a face of head 9014 about which cleaning elements 9012 are disposed that has a bottom surface 9017 generally disposed below the tips of the ridges and nubs. It is understood, however, that the central portion may have a variety of shapes, sizes and depths. In the configuration shown, central portion 9016 is a relatively shallow depression that extends into the head about 10% to about 30% of the thickness of the head. In another configuration, the central portion may be shallow and may not extend into the head. For instance, the central portion may be formed by a surface 9017 of the head upon which the cleaning elements are disposed along with a ring of cleaning elements 9012 bounding the central portion. In such a configuration, the central portion would be a depressed region with respect to the protruding cleaning elements disposed about it, but would not otherwise extend into the head. In other configurations, the central portion may be depressed into the head about 0 to 10% of its thickness, it may be depressed about 30% to 50% or more of its thickness, or the central portion may even form a cavity through the head (i.e., 100% of its thickness).

[0287]  As shown, surface 9017 may be continuous to provide a non-interrupted boundary for the central portion 9016 and it may be relatively smooth. In alternate configurations, surface 9017 may include interrupting or undulating features, such as one or more notches, contour features, or features to permit partial flow of materials therethrough, such as a mesh or screen. In addition, surface 9017 may include irregular features, such as cleaning elements, projections, etc. Further, surface 9017 may be formed by a flexible membrane, which may be disposed within a cavity of the head (not shown). In such an alternative configuration, tooth cleaning members (e.g., bristles) may be disposed on one side of the flexible membrane opposite surface 9017. As such, movement of the cleaning members away from and toward the head will move surface 9017.

[0288]  Central portion 9016 and the ring of protruding cleaning elements 9012 cooperate to translate a downward force applied by the user into a concentrated force at the

cleaning elements. Thus, the cleaning elements penetrate more deeply into the user's soft tissue than would be provided by a relatively uniform contact surface or a uniform field of cleaning elements, such as the configuration provided by tissue cleanser 4800 shown in FIG. 45. This permits ridges 9018 and nubs 9020 to more effectively penetrate the soft tissues. In an alternative construction in which the head includes toothbrush features on an opposite side thereof (see FIG. 98), the ring of protruding cleaning elements configuration can effectively engage soft tissues in the inside of a user's cheeks and lips without the user applying significant force in the direction of the ring, as may be the case when the user cleans their teeth via the toothbrush features. As further shown, central portion 9016 includes a bottom surface 9017 for contacting soft tissue during use. The bottom surface can act as a guide to limit the penetration depth of the nubs and ridges when excessive downward force is applied by the user. In addition, it can provide a collector for micro debris scraped during use of the oral care implement.

[0289]  A variety of ridges, nubs, or other cleaning element configurations may be used. In the configuration shown for oral care implement 9010, ridges 9018 are generally oriented away from a center of central portion 9012 in a radial manner. Central portion 9016 is elliptically shaped and is aligned with a longitudinal axis of handle 8103. As such, ridges 9018 are oriented generally perpendicular to the longitudinal axis of the handle, which provide blades oriented transverse to the scraping direction for most users. When a user scrapes the oral care implement 9010 forward and backward in a direction substantially parallel to the longitudinal axis of handle 8103, ridges 9018 act as small blades to scrape micro debris from the soft tissue. As also shown in FIGS. 90 and 91, the ridges may be angled upward toward engagement with soft tissue during use. Thus, inner portions 9022 of ridges 9018 engage soft tissue when the user applies a light downward pressure, and the ridges more fully engage the soft tissue when additional pressure is applied. As such, variable cleaning and scraping functionality is provided as desired by the user via their selection of a downward force.

[0290]  As further shown in FIGS. 90 and 91, nubs 9020 are provided along a portion of central portion 9016 disposed between handle 8103 and a distal end of head 9014. Nubs provide concentrated penetration into the user's soft tissue during use. In addition, in their location along central portion 9016 as shown in FIG. 91, they can encourage dislodged micro debris into central portion 9016 to be captured therein and removed by the user. It is understood that various nub configurations, positions and orientations, as well as ridge and central portion configurations, positions and orientations, can provide various advantages and functionality.

[0291]  FIGS. 92 and 93 illustrate another possible configuration of cleaning elements in an example oral care implement 9210. Oral care implement 9210 generally includes the same aspects and features of oral care implement 9010, except that it additionally includes a narrow protrusion 9224 erected around the perimeter of central portion 9216. The narrow protrusion may be a semi-flexible, "blade-like" structure that assists with scraping a user's tongue or other soft tissue. In alternative constructions, it may be a rigid structure or relatively flexible structure.

Narrow protrusion 9224 may be made from a flexible or semi-flexible, thermoplastic elastomer, a hard plastic structure or another rigid material, such as metal. As shown in FIGS. 92 and 93, blade-like protrusion 9224 may be continuous structure disposed about the central portion. In other configurations, it may a partial structure, such as an arc. It may also exist apart from or without the central portion, and it may include a truncated shape or shapes. The blade-like protrusion provides an effective blade for scraping micro debris from a user's soft tissue. In a continuous configuration, it may further encourage micro debris scraped from the user's soft tissue to be retained within central portion 9216.

[0292]  FIGS. 94 and 95 illustrate another possible configuration of cleaning elements in an example oral care implement 9410. Oral care implement 9410 generally includes the same aspects and features of oral care implement 9210, except that cleaning elements 9412 only include nubs 9420 disposed about central portion 9416. The nubs provide concentrated penetration into the user's soft tissue, which can act to dislodge micro debris and thereby assist blade-like protrusion 9416 with scraping micro debris from the user's soft tissue.

[0293]  FIGS. 96 and 97 illustrate another possible configuration of cleaning elements in an example oral care implement 9610. Oral care implement 9610 generally includes the same aspects and features of oral care implement 9010, except with respect to cleaning elements 9612 and blade-like structure 9624. As shown, cleaning elements 9612 include a combination of blades 9618 extending substantially radially from the center of central portion 9616, as well as blades 9630 oriented substantially perpendicular to blades 9618. The mixture of blades in alternating orientations can improve scraping effectiveness of the oral care implement. In addition, blade-like structure 9624 includes notches 9632 spaced about its blade, which can further improve the scraping effectiveness of the oral care implement.

[0294]  FIG. 98 illustrates a further possible configuration of an oral care implement. Oral care implement 9510 generally includes the same aspects and features of oral care implement 9210, except with respect to cleaning elements 9512 and blade-like structure 9524. As shown, cleaning elements 9512 include short blades 9534 interposed between pairs of longer blades 9518, which can further improve the scraping effectiveness of the blades. In addition, blade-like structure 9524 is truncated such that it only extends around a distal portion of central portion 9516, which can encourage dislodged micro debris to be retained within central portion 9516 when the oral care implement 9510 is scraped across soft tissue while being withdrawn from the user's mouth. Oral care implement 9510 further includes tooth cleaning elements 9536 extending from an opposite side of the head from cleaning elements 9512. Thus, a user can use the single oral care implement 9510 to effectively clean their teeth and to scrape their tongue, for which the handling of the implement is improved via gripping features of handle 8103. In addition, the user can simultaneously clean their teeth via cleaning elements 9536 and engage the inside of their cheeks and lips via 9512.

[0295]  FIGS. 98A-C show an oral cleaning implement 9810 that includes a dual function head 4900 or 9514, and

a powered handle 1. The handle is generally the same as powered handle 1 discussed along with FIGS. 1-5, which may be used to move or vibrate tooth cleaning features of the head, and/or soft tissue cleanser features of the head. Although the head is shown as either head 4900 or head 9514, the head may include any one of heads 9014, 9214, 9414, 9614 and 9514 or other dual function heads. As discussed above, these embodiments can provide enhanced cleaning benefits by simultaneously engaging proximate oral surfaces, such as cleaning a user's teeth, and cleaning or stimulating the inside of their cheeks and lips. Moreover, such combination devices can provide the functions of two devices in a single device.

[0296]  FIGS. 99-102 illustrate a toothbrush 9710 in accordance with another embodiment of the invention. As shown therein, toothbrush 9710 includes a handle 9712 and a head 9714. Handle 9712 may include a suitable grip pad 9716 made of an elastomer material. As shown in FIG. 102, head 9714 has a base portion 9718 with an upstanding wall 9720 to create a peripheral frame extending outwardly above base portion 9718. A membrane 9722 is attached to frame 9720 completely along its periphery. Membrane 9722 in its initial non-use condition is convex or bowed outwardly as shown in FIG. 102. The convex bowing would preferably be both in the longitudinal and transverse directions, thus presenting a dome-like outer surface 9724 to which cleaning elements 9726 are connected.

[0297]  Toothbrush 9710 is particularly suitable for cleaning elements in the form of strands or bristles attached via in-molded technology (IMT) methods that generally require small cross-sections of material into which the strands are permanently attached. The strands utilizing IMT methods are preferably attached during formation of the toothbrush handle or at least during formation of the head which is the portion of the toothbrush to which the strands and other materials are attached.

[0298]  A feature of the invention as illustrated in FIGS. 99-102 and FIG. 103 is the use of thin cross-sections of material for membrane 9722. Membrane 9722 is flexible and resilient. The cross-section shown, for example, in FIG. 102 is formed like a moon crescent thus representing a shape similar to the dome.

[0299]  Because of the open space 9728 between base portion 9718 and membrane 9722, the membrane can move from its original dome-like shape to be distorted into other shapes as the cleaning elements or bristles 9726 contact the teeth. Thus, the dome 9722 has a thin membrane of material or combinations of material that can flex to become altered from its original shape and recover to its original shape randomly during brushing. The bristles 9726 are attached to the flexible dome and move accordingly, creating a random topology based on interactions with teeth and by doing so improve the cleaning of the teeth. The moving bristle strands have more degrees of motion than conventional toothbrushes due to the flexibility of the membrane and thus represent a different and unique tooth brushing device.

[0300]  In illustrated embodiments of this invention, the head 9714 is generally oval shaped and the membrane 9722 has a corresponding oval shape. See FIG. 101. However, other configurations may include a variety of membrane shapes.

[0301]  Any suitable form of cleaning elements may be used as the cleaning elements 9726 in the broad practice of

this invention. The term "cleaning elements" is intended to be used in a generic sense, which could include conventional fiber bristles or massage elements or other forms of cleaning elements, such as elastomeric fingers or walls arranged in a circular cross-sectional shape or any type of desired shape including straight portions or sinusoidal portions. Where bristles are used, the bristles could be mounted to tuft blocks or sections by extending through suitable openings in the tuft blocks so that the base of the bristles is mounted within or below the tuft block and below membrane 9722.

[0302] It is to be understood that the illustrated cleaning elements are merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning element configurations (such as stapled or in-molded technology bristles, anchor free technology (AFT), etc.) and/or with the same bristle or cleaning element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIG. 100 illustrates the cleaning elements to be generally perpendicular to the outer surface 9724 of membrane 9722 or head 9714, some or all of the cleaning elements may be angled at various angles with respect to the outer surface of head 9714. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning tooth polishing, tooth whitening and/or massaging of the gums.

[0303] Preferably, however, cleaning elements 9726 are IMT bristles since IMT bristles require small cross-sections of material into which the strands are attached and the membrane 9722 in a preferred practice of the invention has a small cross-section.

[0304] Although FIGS. 99-101 illustrate the membrane 9722 to occupy generally the entire head 9714, the invention may be practiced where the head 9714 is of sufficient size that it could include other bristle carrying surfaces adjacent to the dome shape membrane 9722.

[0305] Although FIGS. 99-102 illustrate a manually operated toothbrush, the invention may also be practiced where the head includes one or more power or electrically operated movable sections carrying cleaning elements. Such movable sections may oscillate in a rotational manner or may oscillate linearly in a longitudinal direction with respect to the longitudinal axis of the head or may oscillate linearly in a lateral or transverse direction with respect to the longitudinal axis of the head. The movable section may oscillate in and out in a direction toward and away from the outer surface of the head. The movable section may rock back and forth with respect to the outer surface of the head. The movable section may rotate continuously in the same direction, rather than oscillate. Any suitable drive mechanism may be used for imparting the desired to the movable section. Where plural movable sections are used, all of the movable sections may have the same type and direction of movement, or combinations of different movements may be used.

[0306] As an example, FIG. 103 illustrates a toothbrush 9710A that is similar to toothbrush 9710, except that toothbrush 9710A is a powered toothbrush having a power driven movable disc or section 9730A having cleaning elements attached thereto. The movable section 9730A could be oscillated rotationally such as by using the type of drive mechanism shown in U.S. Pat. No. 5,625,916, or it could

move in and out using the type of drive mechanism shown in U.S. Pat. No. Re35,941, all of the details of both patents are incorporated herein by reference thereto. Alternatively, the other types of drives referred to above could move section 9730A in other manners and directions, such as the drive features shown in FIGS. 1-4. Although FIG. 103 shows movable section 9730A to be at the distal end of the head, the movable section (s) could be located at any desired location on the head.

[0307] Returning to FIGS. 99-102, handle 9712, base 9718 and frame 9720A are preferably made of hard plastic materials, which are conventionally used for manual toothbrushes. As noted, however, a characteristic of dome shape membrane 9722 is that it is made of a flexible resilient material such as an elastomer capable of being moved from its original position and then returning to that original position.

[0308] Membrane 9722 may be secured in any suitable manner. Thus, for example, frame 9720 includes inwardly inclined surfaces for receiving membrane 9722. Other structural arrangements may be used within the practice of this invention to mount membrane 9722 on head 9714.

[0309] FIGS. 104-107 illustrate a manual toothbrush 9810 in accordance with another embodiment of the invention. This is a variation of the prior embodiment that uses a trampoline type structure to achieve an up and down motion rather than a convex membrane, as well as grip features on the handle. As shown, toothbrush 9810 includes a handle 9812 and a head 9814. Handle 9812 may include a suitable area 9816 made of an elastomeric material. This elastomeric portion of the handle is preferably molded with an open area 9818 which is readily deformable by the user. The elastomeric material 9816 on the top side of the handle 9812 (as viewed in FIGS. 104, 105 and 107) will yield under pressure of the user's fingers to provide a better grip on the handle while providing a more comfortable feel to the handle. FIG. 107 illustrates this elastomeric portion 9816 of the handle 9812 in a depressed state. The downward arrow P in this Figure represents the pressure applied by the toothbrush user. The open area 9818 is thereby minimized. As soon as the user's pressure is released, the properties of the elastomeric portion 9816 of the handle 9812 return the elastomeric material 9816 to its original shape as illustrated in FIG. 104.

[0310] A similar flexible, deformable open area 9820 is created in the head by inclusion of an elastomeric portion 9822 in the head overlying an open area 9820. Cleaning elements 9824 are arrayed in the elastomeric portion of the head and fastened thereto by known methods including in-molded technology (IMT). Bristle attachment utilizing IMT methods preferably occurs during formation of the toothbrush handle or at least during formation of the elastomeric portion 9822 of the head 9814.

[0311] In use, the application of pressure by the toothbrush user causes a like pressure of the teeth against cleaning elements 9824 as illustrated by arrow F in FIG. 107. This causes deflection of the elastomeric portion 9822 of head 9814, which in turn causes a reorientation of cleaning elements relative to the teeth being cleaned. As the user's pressure is reduced, the open area 9820 of head 9814 opens up causing the cleaning elements to follow the shape of the teeth being brushed and thereby improving the cleaning of

US 2006/0026784 A1
Feb. 9, 2006

25

the teeth. When all user pressure is released, the open area 9820 returns to its original shape.

[0312] The elastomeric portion 9822 of head 9814 should be a material or combinations of material that can flex to become altered from its original shape and recover to its original shape randomly during brushing. The cleaning elements, for example, bristles, are attached to the flexible membrane creating a flexible orientation of cleaning elements 9824 which improves the cleaning of the teeth. The moving bristle strands have considerable degrees of motion and thus provide a unique tooth brushing experience.

[0313] Any suitable form of cleaning elements may be used as the cleaning elements 9824 in the broad practice of this invention, as discussed with the embodiments of FIGS. 99-103. It is to be understood that the specific illustration of the cleaning elements is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning element configurations (such as stapled or in-molded technology bristles, AFT, etc.) and/or with the same bristle or cleaning element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIGS. 105 and 107 illustrate the cleaning elements to be generally perpendicular to the elastomeric portion 9822 of head 9814, some or all of the cleaning elements may be angled at various angles. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning, polishing, tooth whitening and/or massaging of the gums.

[0314] Portions of handle 9812 and head 9814 may be made of hard plastic material which is used for manual toothbrushes. As noted, however, a feature of this toothbrush is use of elastomeric portions 9816 of the handle and/or elastomeric portion 9822 of head 9814, such as an elastomer capable of being moved from its original position and then returning to its original position.

[0315] This invention may also be practiced where the head 9814 includes one or more powered or electrically operated movable sections carrying cleaning elements.

[0316] FIG. 108 illustrates a toothbrush 9810A which includes a power driven movable disc or section 9850 having cleaning elements. The movable section 9850 could be similar to section 9730 of FIG. 103. Although FIG. 108 shows movable section 9850 to be at the one end of the head, as with FIG. 103, the movable section(s) could be located at any desired location on the head.

[0317] In another embodiment of the invention shown in FIGS. 109-113, a toothbrush 9910 includes a head longitudinally separated into side by side areas by means of a flexible hinge structure that serves as a spring to return the brush head materials and cleaning areas to their original position. As shown, toothbrush 9910 includes an elongated handle 9912 and a head 9914. A portion of handle 9912 may be recessed at gripping area 9916 between shoulders 9918 and 9920. Shoulder 9918 could extend outwardly a sufficient distance to act as a hook or ledge to facilitate hanging the toothbrush in an inverted condition.

[0318] Head 9914 and handle 9912 are elongated and have a longitudinal axis. As shown in FIGS. 112 and 113, head 9914 includes a spine 9922 which extends collinear with the

longitudinal or major axis of the toothbrush handle and head. As a result, head 9914 is separated into two side by side longitudinal sections 9924, 9926 connected to the spine 9922. Spine 9922 is made of a resilient material, such as an elastomer, which is sufficiently flexible as to be movable and yet return to its original position. As a result, spine 9922 functions as a hinge axis whereby the side by side sections 9924, 9926 may move or pivot about the spine away from the original position shown in FIG. 112 to an open position such as shown in FIG. 113 when the cleaning elements on the sections 9924, 9926 contact the teeth. Then sections 9924, 9926 return to their original position under the influence of the resilient hinge or spine 9922. Preferably hinge or spine 9922 is confined to head 9914.

[0319] As illustrated, each of the sections 9924, 9926 includes sets of cleaning elements. For example, an outer set of cleaning elements 9928 is located at the outer periphery of each section 9924, 9926 while an inner set of cleaning elements 9930 is located closer to the spine 9922. Preferably, the terminal surfaces 9932 of the inner cleaning elements 9930 are tapered toward the hinge axis 9922 so that the adjacent terminal ends 9932 of each inner set of cleaning elements forms an obtuse angle as indicated by the letter A in FIG. 112 when the brush head is in its original position.

[0320] The outer sets of cleaning elements 9928 extend outwardly a longer distance from the outer surface of the sections than do the inner cleaning elements 9930. As a result, the combined cleaning elements are designed to wrap around the edge of the teeth for simultaneous possible contact with both the front and top of the teeth. See FIG. 112. During use, the brush head is pressed against the edge of the teeth causing the flexible hinge to open and close during cleaning.

[0321] As illustrated in FIGS. 109-113, in a preferred practice of the invention, the outer sets of cleaning elements 9928 are bristle bundles of plaque bristles. The inner sets of cleaning elements 9930 may be bristles formed by in-molded technology (IMT) where sets of bristles are fused together at one end and the fused end is inserted in a mold cavity during the manufacture of the head.

[0322] FIG. 113 shows the sections 9924, 9926 in their open position. FIG. 113 omits some of the cleaning elements so as to provide a better understanding of how the cleaning elements are mounted. As shown therein, the plaque bristles 9928 are in the form of bristle bundles or tufts inserted into individual holes 9934 in bristle container 9936. The inner sets of cleaning elements 9930 are IMT bristles mounted in IMT container 9938. The IMT containers 9938 may be made of soft flexible elastomer material integral with hinge axis 9922, as shown in FIG. 113.

[0323] As shown in FIGS. 109-113 the bristle container 9936 does not extend completely to the distal end of the head 9914. Accordingly, side plates 9940 are provided on each side of the head longitudinally abutting against bristle containers 9936 and disposed against containers 9938 for the remaining length of containers 9938 so that a smooth contour results along the side of the head 9914. Side plates 9940 may also be made of a soft, flexible elastomer material.

[0324] As best shown in FIGS. 109-111 each inner row of IMT bristles 9930 has its bristles spaced apart or staggered so that the inclined IMT bristles of each section may fit between the spacing of adjacent IMT bristles of the other section.

US 2006/0026784 A1

Feb. 9, 2006

26

[0325] Although FIGS. 109-113 illustrate a preferred form of cleaning elements to be the plaque bristles and IMT bristles any suitable form of cleaning elements may be used as the cleaning elements 9928 and 9930 as previously described. Thus the term "cleaning elements" is intended to be used in a generic sense which could include conventional fiber bristles or massage elements or other forms of cleaning elements such as elastomeric fingers or walls arranged in a circular cross-sectional shape or any type of desired shape including straight portions or sinusoidal portions. Where bristles are used, the bristles could be mounted to tuft blocks or sections by extending through suitable openings in the tuft blocks so that the base of the bristles is mounted within or below the tuft block.

[0326] Similarly, it is to be understood that the specific illustration of the cleaning elements is merely for exemplary purposes. The invention can be practiced with various combinations of the same or different cleaning element configurations (such as stapled or IMT bristles, AFT, etc.) and/or with the same bristle or cleaning element materials (such as nylon bristles, spiral bristles, rubber bristles, etc.). Similarly, while FIG. 109 illustrates the cleaning elements to be generally perpendicular to the outer surface of head 9914 some or all of the cleaning elements may be angled at various angles with respect to the outer surface of head 9914. It is thereby possible to select the combination of cleaning element configurations, materials and orientations to achieve specific intended results to deliver additional oral health benefits, like enhanced cleaning tooth polishing, tooth whitening and/or massaging of the gums.

[0327] Handle 9912 could be made of a conventional hard plastic material which could, however, include a soft elastomer section 9942 near the head 9914. Bristle containers 9936, 9936 could also be made of a hard plastic material while side plates 9940 and IMT containers 9938 are made of a soft elastomer material. By having the bristle containers 9936 mounted against the IMT containers 9938, the bristle containers 9936 and their cleaning elements 9928 move along with the movement of the IMT containers 9938 in response to the IMT bristles 9930 contacting the teeth. If desired, the bristle containers 236 may also be made of a soft elastomer material.

[0328] Although FIGS. 109-113 illustrate a manually operated toothbrush, the invention may also be practiced with powered configurations, such as where the head includes one or more power or electrically operated movable sections carrying cleaning elements. FIG. 114 illustrates a toothbrush 9910 which includes a power driven movable disc or section 9950 having cleaning elements, similar to the movable sections of toothbrushes 9710A and 9810A.

[0329] FIGS. 115-121 show additional embodiments of the invention that further illustrate the combinability of various aspects, features and functions disclosed herein into single oral care implement configurations. FIGS. 115-121 disclose oral care implement configurations that provide flexibly mounted tooth cleansing features, tongue cleanser functionality and/or handle gripping features. As such, the oral care implements of FIGS. 115-121 generally include the aspects discussed along with FIGS. 99-102 pertaining to flexibly mounted tooth cleansing configurations including a flexible dome-shaped membrane, as well as the aspects discussed along with FIGS. 84-89, 104-107 and

109-111 pertaining to handle grip features, and aspects discussed along with FIGS. 38, 39, 45-80 and 90-98 pertaining to soft tissue cleansers. However, it is understood that other features may used along with these configurations, such as mechanical drive features discussed along with FIG. 1-5, 103 and 114, the flexibly mounted tooth cleansing configuration of FIGS. 104-107, and tooth cleansing features discussed throughout the specification.

[0330] FIGS. 115-117 illustrate a toothbrush 10010 in accordance with another embodiment of the invention. As shown therein, toothbrush 10010 includes a head 10014 and a handle 9812, which is generally the same as handle 9812 disclosed in FIGS. 104-107. In other configurations, handle 9812 may generally be the same as handle 8103 discussed along with FIGS. 81-89, handle 9712 discussed along with FIGS. 99-102, or other handle configurations. Head 10014 is generally the same as head 9714 discussed along with FIGS. 99-102, with the exception of cleaning elements 10026. As such, a membrane 10022 is attached to head 10014, which in its initial non-use condition may be convex or bowed outwardly, from which cleaning elements 10026 extend. Although configured differently than cleaning elements 9714 of FIGS. 99-102, it is understood that cleaning elements 10014 may also be attached to the membrane via in-molded technology (IMT) methods or other appropriate methods.

[0331] As shown in FIG. 116, cleaning elements 10014 form star configurations 10015 that better retain dentifrice among the tooth cleaning elements, conform to a user's teeth, and penetrate gaps between a user's teeth. These advantages may be particularly realized during use of the oral care implement when the convex membrane 10022 is flexed downward toward the head. When the membrane is flexed downward due to contact with a user's teeth, the tooth cleaning elements converge inward toward each other about the user's teeth. This action improves interaction with the user's teeth and other oral structures, as well as improves retention of the dentifrice.

[0332] Tooth cleaning elements may be formed of elastomeric wall members, elongate bristle tufts, or other types of cleaning elements, which are independently flexible. In this way, the cleaning elements are able to provide a limited and controlled flow of the dentifrice, as well as maintain sufficient flexibility to provide improved cleaning of a user's teeth and stimulation of the user's gums via the cleaning elements. In the configuration shown in FIG. 116, cleaning elements 10022 include central elements 10024 that are generally disposed along a longitudinal axis of membrane 10022 substantially aligned with the longitudinal axis a-a of handle 9812. As shown in FIGS. 115 and 117, central elements 10024 may be taller than adjacent cleaning elements, such that central elements 10024 typically make contact with a user's teeth prior to adjacent elements. During use, central elements 10024 cause membrane 10022 to flex toward the head due to contact with a user's teeth, which flexes other cleaning elements inward toward the central elements while membrane 10022 flexes toward the head.

[0333] Disposed about each central element, and radially extending therefrom, is a plurality of cleaning elements 10026. Radial cleaning elements and their respective central element each form the star configuration 10015. Adjacent radial elements are spaced apart to form gaps 10028 ther-

ebetween, which permit a limited outward flow of dentifrice, independent flexing of each radial cleaning element, and convergence of the radial cleaning elements. The gaps also aid the cleaning of cleaning elements 10026 by permitting water to flush through the cleaning elements. The gaps, however, are preferably kept small to limit the escape of the dentifrice. While three star configurations are shown, which each include six radial cleaning elements, other numbers of radial cleaning elements and numbers of star configurations could be used.

[0334] Disposed along perimeter regions of the head are a plurality of outer cleaning elements 10030. During use, the outer cleaning elements converge inward toward the star configurations, which assist with the retention of dentifrice and with grasping teeth being engaged by the cleaning elements.

[0335] The cleaning elements 10014 may be formed from bristles or tufts composed of nylon, and may further be made from the nylon material marketed by Dupont under the name BRILLIANCE. Nevertheless, other materials could be used, such as an elastomeric material. In addition, the cleaning elements may be formed as upstanding elastomeric projections or walls. As shown in FIG. 117, a distal star configuration 10032 of cleaning elements at the distal end of the head may have a height greater than other cleaning elements, which can assist with engagement of molars and other teeth at the rear of a user's mouth.

[0336] FIG. 118 illustrates a toothbrush 11810 in accordance with another embodiment of this invention. Toothbrush 11810 includes a handle 9812, a head 11814, tooth cleaning elements 11826 on one side of the head, and a soft tissue cleanser 11830 on the opposite side of the head. Toothbrush 11810 generally includes the same aspects and features of toothbrush 10010, except with respect to soft tissue cleanser 11830. In addition, base portion 9718 shown in FIG. 102 may include a flexible membrane forming surface 9017 shown in FIG. 98. In such a configuration, movement of the tooth cleaning elements 11826 away from and toward the head will move surface 9017.

[0337] Soft tissue cleanser 11830 generally includes the same aspects and features pertaining to cleaning soft tissues, such as a user's tongue, as oral care implement 9510 shown in FIG. 98. As such, soft tissue cleanser includes soft tissue engaging elements 9512 disposed about a recess 9516 formed in the head, as well as a blade-like structure 9524. Elements 9512 include projections in the form of ridges 9518 and nubs 9520, which extend from the head to engage the soft tissue in a user's mouth along with the blade-like structure.

[0338] Toothbrush 11810 provides a single oral care implement that can be used to effectively clean a user's teeth and to scrape their tongue, for which the handling of the device may be improved via gripping features of handle 9812. Thus, toothbrush 11810 further illustrates the combinability of various aspects, features and functions disclosed herein into single oral care implement configurations. It is understood that a variety of combinations of possible. For instance, toothbrush 11810 may include a soft tissue cleanser configuration shown in FIGS. 38, 39, 45-80 or 90-97 rather than the configuration of soft tissue cleanser 11830. In addition, toothbrush 11810 may include a handle shown in FIGS. 1-4, 84-89, 99-102, 104-107 or 109-111

rather than handle 9812. The handle may include a resilient elongate ridge in a gripping region thereof that merges with the soft tissue cleanser in the embodiment of FIG. 52. Further, various tooth cleaning element configurations may be used instead of tooth cleaning elements 11826.

[0339] The advantages of particular configurations will depend on the features selected and the intended use of the device. In the configuration of toothbrush 11810, a variety of advantages are provided in a single device including, flexibility and cleaning advantages of the dome membrane configuration, tooth cleaning advantages of the star configuration for the tooth cleaning elements, soft tissue cleaning advantages of the soft tissue cleanser, and handling advantages of the handle grip features.

[0340] FIGS. 119-121 show a further oral care implement 11910 that also provides a variety of advantages and features in a single device. Oral care implement includes a handle 9812, a head 11914, tooth cleaning elements 11926 on one side of the head, and a soft tissue cleanser 11830 on the opposite side of the head. Toothbrush 11810 generally includes the same aspects and features of toothbrush 10010, except with respect to the configuration of tooth cleaning elements 11926.

[0341] As shown in FIG. 121, cleaning elements 11926 include central elements 11928 that are generally disposed along a longitudinal axis b-b of the toothbrush, and transverse elements 11930 oriented substantially perpendicular to longitudinal axis b-b across the face of the toothbrush head. The central elements and transverse elements intersect to generally form a cross-shape 11921 across membrane 11922.

[0342] As shown in FIG. 120, the central and transverse elements may extend further from the toothbrush head than adjacent cleaning elements, which encourages membrane 11922 to flex toward the head as the central and transverse elements make initial contact with a user's teeth. The central elements and transverse elements may have circular cross-sections, elongate cross-sections such as provided by wall-like elements, and combinations thereof. As also shown in FIG. 120, cleaning elements 11926 further include opposing arcuate cleaning elements 11934 at the ends of cross-shape configuration. These elements assist with the retention of dentifrice, as well as provide cleaning and polishing benefits.

[0343] In the configuration shown in FIG. 121, the central elements and transverse elements include a mixture of rounded 11940 and wall-like elements 11942, which provide various advantages. For instance, the rounded elements tend to have higher column strengths than elongate or wall-like elements. Thus, high column strength rounded elements may be included to improve the transfer of force to membrane 11922 for flexing the membrane. The elongate or wall-like elements tend to provide other advantages, such as improved tooth polishing and retention of dentifrice within the cleaning elements. Combinations of types of cleaning elements, as shown in FIG. 121, can provide advantages based on the overall configuration and functionality provided by the mixture of cleaning elements.

[0344] Cleaning elements 11926 further include radial cleaning elements 11932 that are wall-like elements. Clean-

US 2006/0026784 A1

28

Feb. 9, 2006

ing elements 11926 are generally oriented in a radial fashion such that their flat side portions are angled toward a central portion of the head proximate an intersection 11934 of the cross-shape configuration 11921 of the cleaning elements. As with the embodiments for FIGS. 99-118, the radial cleaning elements, and the other cleaning elements, may each be formed as an upstanding elastomeric wall attached to and extending from membrane 11922. In other configurations, they may be formed from tufts of bristles extending from the membrane.

[0345] As shown in FIG. 121, oral care implement 11910 provides orientations of wall-like elements that generally cover 360 degrees. This full range of orientations is provide by the arrangement of radial wall-like cleaning elements 11926, as well as the central cleaning elements 11928 and transverse cleaning elements 11930. As such, one or more cleaning elements are likely oriented to match crevices between a user's teeth during cleaning, which can improve effectiveness of the toothbrush. Further, the flexibility provided by the dome configuration of membrane 11922 provides a dynamic cleaning environment that further enhances cleaning and polishing of a user's teeth. In addition, the range of orientations of the radial cleaning elements along with their elongate shape can provide enhanced polishing benefits as they move across a user's teeth.

[0346] As various changes could be made in the above methods, compositions and structures without departing from the scope of the invention, it is intended that all matter contained in this application, including all mechanisms and/or modes of interaction described above, shall be interpreted as illustrative and not limiting in any way the scope of the appended claims. Further, as noted above, it is intended that oral care implements according to the invention and associated methods may utilize various combinations of aspects, features and configurations discussed within the application.

What is claimed is:

1. An oral care implement comprising:

a handle;

a head attached to the handle, the head having a face on a first side thereof;

a flexible support attached to the head; and

a plurality of cleaning elements attached to the flexible support and projecting outwardly from the face, the cleaning elements including bristles and wall-like elements and being movable in the outward direction from the head in which the bristles extend.

2. The oral care implement of claim 1, wherein some of the wall-like cleaning elements laterally radiate from a central portion of the flexible support.

3. The oral care implement of claim 1, wherein the cleaning elements include a substantially column-shaped bristle at the central portion of the flexible support.

4. The oral care implement of claim 1, wherein the cleaning elements comprise a row of first cleaning elements substantially aligned with a longitudinal axis of the head and traversing a central region of the flexible support.

5. The oral care implement of claim 1, wherein the cleaning elements further include a row of second cleaning elements extending in a line substantially perpendicular to the row of first cleaning elements.

6. The oral care implement of claim 5, wherein the cleaning elements further comprise a plurality of wall-like cleaning elements oriented generally transverse to the first row of cleaning elements.

7. The oral care implement of claim 6, wherein the wall-like cleaning elements substantially radiate from a central area of the flexible support.

8. The oral care implement of claim 6, wherein the cleaning elements further comprise a first pair of bent cleaning elements, each one of the first pair of cleaning elements disposed at an opposite end of the row of first cleaning elements, each one of the second pair of cleaning elements having a concave side oriented toward the row of first cleaning elements.

9. The oral care implement of claim 8, wherein the cleaning elements further comprise a second pair of bent cleaning elements disposed at an opposite end of the row of second cleaning elements, each one of the second pair of cleaning elements having a concave side oriented toward the row of second cleaning elements.

10. The oral care implement according to claim 1, wherein the flexible support includes a resilient membrane mounted to the head.

11. The oral care implement of claim 10, wherein the head includes a base forming a peripheral frame, the resilient membrane being mounted to the frame, and an open space being formed between opposite portions of the frame beneath the resilient membrane.

12. The oral care implement of claim 11, wherein the resilient membrane has an initial condition of non-use, the resilient membrane in the initial condition being convex to have an original dome-like shape, the resilient membrane being capable of flexing to alter the original shape during use of the oral care implement and to move the cleaning elements with respect to the head and then recovering to the original shape randomly during use of the oral care implement.

13. The oral care implement of claim 10, wherein the head further includes a peripheral frame for supporting the resilient frame to extend across the first face and for supporting a soft tissue cleanser on a second face opposite the first face.

14. The oral care implement of claim 13, wherein the soft tissue cleanser includes a ring of projections on the peripheral frame.

15. The oral care implement of claim 14, wherein the projections are formed of a resilient material.

16. The oral care implement of claim 15, wherein the resilient material includes an elastomer.

17. The oral care implement of claim 1, further comprising a soft tissue cleanser disposed on a second side of the head substantially opposite from the first side, the soft tissue cleanser comprising a plurality of projections protruding outwardly from the first side for removal of microbial and other debris from soft tissue of a user's mouth.

18. The oral care implement of claim 17, wherein the projections of the soft tissue cleanser comprise a plurality of nubs and ridges.

19. The oral care implement of claim 17, wherein the projections are arranged in a ring around a recess formed on the second side of the head.

20. The oral care implement of claim 17, wherein the projections include an elongate ridge.

US 2006/0026784 A1

Feb. 9, 2006

29

21. The oral care implement of claim 1, further including a motor for driving at least a portion of the cleaning elements.

22. The oral care implement of claim 17, wherein the handle includes a resilient element that merges with the soft tissue cleanser.

23. An oral care implement comprising:

a handle;

a head attached to the handle, the head having a first face and substantially opposite second face, the head having a flexible support on the first face and a plurality of cleaning elements mounted to the flexible support; and

a soft tissue cleanser on the second face of the head for cleansing soft tissue in a user's mouth, the soft tissue cleanser including a plurality of projections protruding outwardly from the head for removal of microbial and other debris from the soft tissue.

24. The oral care implement of claim 23, wherein the head includes a peripheral frame forming a central open space, the flexible support being mounted to the frame to extend across the open space, the soft tissue cleanser mounted on the peripheral frame to have a ring shape.

25. The oral care implement of claim 24, wherein the flexible support has an initial condition of non-use, the flexible support in the initial condition being convex to have an original dome-like shape, the flexible support being capable of flexing to alter the original shape during use of the oral care implement and to move the cleaning elements with respect to the head and then recovering to the original shape randomly during use of the oral care implement.

26. An oral care implement comprising:

a handle;

a head attached to the handle, the head having a first face and substantially opposite second face, the head having a flexible support on the first face and a plurality of cleaning elements mounted to the flexible support extending outwardly from the face, the flexible support being movable outward and inward in the direction from the face in which the cleaning elements extend, the inward and outward movement of the flexible support imparting movement to the cleaning elements attached thereto;

a soft tissue cleanser on the second face of the head for cleansing soft tissue in a user's mouth, the soft tissue cleanser including a plurality of projections protruding outwardly from the head for removal of microbial and other debris from the soft tissue, the projections including an elongate ridge and a plurality of ridges and nubs.

27. A toothbrush comprising:

a handle;

a head having a plurality of tooth cleaning elements extending outwardly from the head in a first direction; and

a soft tissue cleanser disposed about the cleaning elements on the head.

28. The toothbrush of claim 27, further comprising a flexible support on a first face of the head, the tooth cleaning elements being attached to the flexible support, and a base spaced apart from the flexible support forming a central portion of the soft tissue cleanser on a second face of the head.

29. The toothbrush of claim 28, wherein the base is flexible.

30. The toothbrush of claim 29, wherein movement of the tooth cleaning elements and the flexible support toward and away from the first face imparts movement to the flexible base.

31. The toothbrush of claim 27, wherein the soft tissue cleanser includes soft tissue cleansing elements extending outwardly from the head in a second direction substantially opposite the first direction.

32. The toothbrush of claim 27, wherein the soft tissue cleansing elements form a ring of projections.

33. The toothbrush of claim 32, wherein the soft tissue cleanser further comprises a central portion bordered by the ring of projections and by a surface disposed opposite the tooth cleaning elements.

34. The toothbrush of claim 32, wherein the ring of projections comprise ridges and nubs.

35. The toothbrush of claim 34, wherein the ring of projections is substantially elliptically shaped.

36. The toothbrush of claim 34, wherein the soft tissue cleanser further comprises an elongate ridge projecting from the head in generally the same direction as the projections of the ring of projections.

* * * * *

JA00167

## UNITED STATES PATENT AND TRADEMARK OFFICE
### Certificate

Patent No. 7,047,591 B2

Patented: May 23, 2006

On petition requesting issuance of a certificate for correction of inventorship pursuant to 35 U.S.C. 256, it has been found that the above identified patent, through error and without any deceptive intent, improperly sets forth the inventorship.

Accordingly, it is hereby certified that the correct inventorship of this patent is: Douglas J. Hohlbein, Pennington, NJ (US); Michael Charles Rooney, Milburn, NJ (US); Luca Casini, Milan, Italy; and Jacob Pringiers, Milan, Italy.

Signed and Sealed this First Day of August 2006.

GLADYS JP CORCORAN
*Supervisory Patent Examiner*
Art Unit 3672

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DATE:**    July 5, 2006
**TO:**      Certificates of Correction Branch
**FROM:**    Gladys JP Corcoran
             SPE, Art Unit 1744
**SUBJECT:** REQUEST FOR CERTIFICATE OF CORRECTION

Please issue a Certificate of Correction in U. S. Letters Patent No. 7,047,591 as specified on the attached Certificate.

Gladys JP Corcoran, SPE
Art Unit 1744

## UNITED STATES PATENT AND TRADEMARK OFFICE

## CERTIFICATE

Patent No.  7,047,591
Patented:  May 23, 2006

On petition requesting issuance of a certificate for correction of inventorship pursuant to 35 U.S.C. 256, it has been found that the above identified patent, through error and without deceptive intent, improperly sets forth the inventorship.  Accordingly, it is hereby certified that the correct inventorship of this patent is:

    Luca Casini, Milan, Italy
    Douglas J. Hohlbein, Pennington, NJ (US)
    Jacob Pringiers, Milan, Italy
    Michael Charles Rooney, Millburn, NJ (US)

Gladys JP Corcoran
Supervisory Patent Examiner
Art Unit 1744

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

6/29/06

In re Patent No. HOHLBEIN, DOUGLAS  J.          :
Issue Date:  May 23, 2006                       :     **DECISION GRANTING**
Appl No.: 10/902,257                            :     **PETITION**
Filed: July 30, 2004                            :     *37 CFR 1.324*
For:  **ORAL CARE IMPLEMENT**                   :
                                                :
                                                :
                                                :
                                                :

This is a decision on the petition filed June 2, 2006 to correct inventorship under 37 CFR 1.324.

The petition is granted.

The patented file is being forwarded to Certificate of Corrections Branch for issuance of a certificate naming only the actual inventor or inventors.

Gladys J. Corcoran
Supervisory Patent Examiner
Art Unit 1744
Technology Center 1700

COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ 08855

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 1065341 |
| **Application Number:** | 10902257 |
| **Confirmation Number:** | 1397 |
| **Title of Invention:** | ORAL CARE IMPLEMENT |
| **First Named Inventor:** | Douglas J. Hohlbein |
| **Customer Number:** | 23909 |
| **Filer:** | Darrell Gilbert Mottley./Donna Holbert |
| **Filer Authorized By:** | Darrell Gilbert Mottley. |
| **Attorney Docket Number:** | 6989-01 |
| **Receipt Date:** | 02-JUN-2006 |
| **Filing Date:** | 30-JUL-2004 |
| **Time Stamp:** | 14:20:21 |
| **Application Type:** | Utility |
| **International Application Number:** | |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment was successfully received in RAM | $130 |
| RAM confirmation Number | 710 |
| Deposit Account | 190733 |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:
    Charge any Additional Fees required under 37 C.F.R. Section 1.16 and 1.17

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part | Pages |
|---|---|---|---|---|---|
| 1 | Request under Rule 48 correcting inventorship | 00042PetitiontoCorrectInventorship.pdf | 142562 | no | 6 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 8136 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | Total Files Size (in bytes): | 150698 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| U.S. Pat. No   7,047,591 | |
| Issue Date      May 23, 2006 | Atty. Docket No.: 6989-01 |
| Serial No.:      10/902,257 | Group Art Unit:  1744 |
| Filed:            July 30, 2004 | Examiner:      Mark  Spisich |
| For:              ORAL CARE IMPLEMENT | |

## PETITION TO CORRECT INVENTORSHIP OF U.S. PAT. NO. 7,047,591 UNDER 37 C.F.R. § 1.324

Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Applicants hereby submit a petition to correct the inventorship of the subject application by adding the following inventors to the above-referenced patent and request a certificate of correction issue naming the actual inventors:

Michael Charles Rooney, Millburn New Jersey
Luca Casini, Milan, Italy
Jacob Pringiers, Milan, Italy

The omission of above-named inventors in this patent occurred in error without deceptive intent. Accompanying this petition are the following, as required by 37 C.F.R. § 1.324:

- A statement from each of the above-named inventors indicating that this omission occurred in error and without deception intention on his part;

- A statement from the current named inventor agreeing to the change of inventorship;

- A Fee Transmittal Sheet, authorizing the charge of $130.00 for the fee required under 37 C.F.R § 1.20(b); and

- Written consent of the assignee of the original named inventor.

If any additional fees are required or if an overpayment has been made the Commissioner is authorized to charge or credit Deposit Account No. 19-0733.

Respectfully submitted,

Dated:   June 2, 2006

By:  _Darrell G. Mottley_
Darrell G. Mottley
Registration No.  42,912

Tel: 202-824-3000

**JA00174**

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| U.S. Pat. No    7,047,591 | |
| Issue Date    May 23, 2006 | Atty. Docket No.: 6989-01 |
| Serial No.:    10/902,257 | Group Art Unit:    1744 |
| Filed:    July 30, 2004 | Examiner:    Mark Spisich |
| For:    ORAL CARE IMPLEMENT | |

<u>CONSENT TO CHANGE OF INVENTORSHIP</u>

Commissioner of Patents
P.O. Box 1450
Alexandria, Virginia  22313-1450

Sir:

The undersigned, Colgate-Palmolive Company, having a place of business at 300 Park Avenue, New York, New York 10022 being the assignee of record of the total interest in the above-identified application by the Assignment filed at the United States Patent and Trademark Office and recorded on November 10, 2004 at Reel 015353 and Frame 0032, consents to the addition of Michael Charles Rooney, Luca Casini, and Jacob Pringiers as joint inventors to correct inventorship in the above captioned patent. I have authority to act on behalf of Colgate Palmolive Company.

6-2-06
_____
Date

Name:    HAROLD A. WOLIN

SENIOR PATENT ATTORNEY
_____
Position:

Colgate Palmolive Company
300 Park Avenue
New York, New York 10022

PATENT

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| U.S. Pat. No. | 7,047,591 | | |
| Issue Date | May 23, 2006 | Atty. Docket | 6989-01 |
| | | No.: | |
| Serial No.: | 10/902,257 | Group Art | 1744 |
| | | Unit: | |
| Filed: | July 30, 2004 | Examiner: | Mark Spisich |
| For: | ORAL CARE | | |
| | IMPLEMENT | | |

### STATEMENT OF INVENTOR-Luca CASINI

Commissioner of Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Sir:

The inventorship error of failing to include Luca Casini as an inventor of the patent

occurred without any deceptive intent on the part of Luca Casini.

_Date_ 01 June 2006                   _Luca Casini_

Luca Casini
Milan, Italy
C/O Colgate Palmolive Company
300 Park Avenue
New York, New York 10022

PATENT

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| U.S. Pat. No | 7,047,591 |
| Issue Date | May 23, 2006 |
| Serial No.: | 10/902,257 |
| Filed: | July 30, 2004 |
| For: | ORAL CARE IMPLEMENT |

Atty. Docket No.: 6989-01

Group Art Unit:  1744

Examiner:   Mark  Spisch

## STATEMENT OF INVENTOR- Douglas J. HOHLBEIN

Commissioner of Patents
P.O. Box 1450
Alexandria. Virginia  22313-1450

Sir:

    I. Douglas J. Hohlbein, a current named inventor. agree to the addition of Michael Charles

Rooney, Luca Casini. and Jacob Pringiers as joint inventors in the above referenced patent.

5/31/06
Date

Douglas J. Hohlbein

01/06 '06 THU 08:46 FAX                                                    ☒001

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| U.S. Pat. No | 7,047,591 | | |
| Issue Date | May 23, 2006 | Atty. Docket No.: | 6989-01 |
| Serial No.: | 10/902,257 | Group Art Unit: | 1744 |
| Filed: | July 30, 2004 | Examiner: | Mark Spisich |
| For: | ORAL CARE IMPLEMENT | | |

### STATEMENT OF INVENTOR-Michael Charles ROONEY

Commissioner of Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Sir:

The inventorship error of failing to include Michael Charles Rooney as an inventor of the

patent occurred without any deceptive intent on the part of Michael Charles Rooney.

_June 1, 2006_
Date

Michael Charles Rooney
Millburn, New Jersey
C/O Colgate Palmolive Company
300 Park Avenue
New York, New York 10022

2-JUN-2006 15:32  FROM::JACOB PRINGIERS DESI +390287393065        TC:0017328787660      P.1

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| U.S. Pat. No  7,047,591 | |
| Issue Date   May 23, 2006 | Atty. Docket No.: 6989-01 |
| Serial No.:  10/902,257 | Group Art Unit:  1744 |
| Filed:       July 30, 2004 | Examiner:     Mark  Spisich |
| For:         ORAL CARE IMPLEMENT | |

### STATEMENT OF INVENTOR-Jacob PRINGIERS

Commissioner of Patents
P.O. Box 1450
Alexandria, Virginia  22313-1450

Sir:

The inventorship error of failing to include Jacob Pringiers as an inventor of the patent

occurred without any deceptive intent on the part of Jacob Pringiers.

02 - 06 - 2006
_____
Date

JACOB PRINGIERS

Jacob Pringiers
Milan, Italy
C/O Colgate Palmolive Company
300 Park Avenue
New York, New York 10022

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | PATENT NUMBER | GROUP ART UNIT | FILE WRAPPER LOCATION |
|---|---|---|---|
| 10/902,257 | 7047591 | 1744 | 9200 |

## Correspondence Address / Fee Address Change

The following fields have been set to Customer Number 23909 on 03/01/2006

- Correspondence Address
- Maintenance Fee Address

The address of record for Customer Number 23909 is:
COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ 08855

9

JA00180

## Electronic Patent Application Fee Transmittal

| Application Number: | 10902257 |
|---|---|
| Filing Date: | 30-Jul-2004 |
| Title of Invention: | ORAL CARE IMPLEMENT |
| First Named Inventor: | Douglas J. Hohlbein |
| Filer: | Darrell Gilbert Mottley./Donna Holbert |
| Attorney Docket Number: | 6989-01 |

Filed as Large Entity

## Utility    Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| Petition fee- 37 CFR 1.17(h) (Group III) | 1464 | 1 | 130 | 130 |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Miscellaneous: | | | | |
| | | | Total in USD ($) | 130 |

MAR 23 2006  4:30 PM FR COLGATE PATENT DEPT 878 7660 TO 915712732885    P.01/01

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

23909    7590    03/02/2006
COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ 08855

03/24/2006 TBESHAH2 00000101 032455  10902257
01 FC:1501    1400.00 DA
02 FC:1504    300.00 DA

Certificate of Mailing or Transmission
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| | |
|---|---|
| Tracy Cavataro | (Depositor's name) |
| [signature] | (Signature) |
| 3/23/06 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 6989-01 | 1397 |

TITLE OF INVENTION: ORAL CARE IMPLEMENT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $1700 | 06/02/2006 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SPISICH, MARK | 1744 | 015-143100 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Harris A. Wolin
2  _____
3  _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                                      (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Colgate-Palmolive Company
New York, New York 10022

Please check the appropriate assignee category or categories (will not be printed on the patent):  ☐ Individual  ☒ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are enclosed:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s):
☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Director is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number 03-2455 (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid Issue Fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature [signature]                    Date  3.23.06

Typed or printed name  Harris A. Wolin              Registration No.  39,432

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**JA00183**

| Search Notes | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit |
| | Mark Spisich | 1744 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 15 | 143.1 | | |
| | 167.1 | | |
| 16 | 430,431 | | |
| | 436 | | |
| | DIG. 12 | | |
| | DIG. 19 | | |
| 132 | 321,323 | | |
| 433 | 141 | | |
| 601 | 141 | | |
| 606 | 161 | 8/9/2005 | MS |
| to date | | 12/21/05 | MS |
| to date | | 2/28/06 | MS |
| | | | |
| | | | |

## SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| Consulted C MAH in class 16 | 8/4/2005 | MS |
| Inventor name search | 8/9/2005 | MS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| EAST search query attached | | 2/28/06 | MS |

U.S. Patent and Trademark Office

Part of Paper No. 08092005



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

23909    7590    03/02/2006

COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ 08855

| EXAMINER |
|---|
| SPISICH, MARK |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1744 | |

DATE MAILED: 03/02/2006

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 6989-01 | 1397 |

TITLE OF INVENTION: ORAL CARE IMPLEMENT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $1700 | 06/02/2006 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
**PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE
MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS
STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE
REFLECTS A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR
AN EQUIVALENT) MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL
BE REGARDED AS ABANDONED.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

| If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status: | If the SMALL ENTITY is shown as NO: |
|---|---|
| A. If the status is the same, pay the TOTAL FEE(S) DUE shown above. | A. Pay TOTAL FEE(S) DUE shown above, or |
| B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or | B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above. |

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with
your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be
completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be
completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to
Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER:** Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 3

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

```
23909        7590        03/02/2006
COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ 08855
```

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 6989-01 | 1397 |

TITLE OF INVENTION: ORAL CARE IMPLEMENT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $1700 | 06/02/2006 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SPISICH, MARK | 1744 | 015-143100 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                           (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ☐ Individual    ☐ Corporation or other private group entity    ☐ Government

**4a. The following fee(s) are enclosed:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s):**
☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 6989-01 | 1397 |

| EXAMINER |
|---|
| SPISICH, MARK |

23909     7590     03/02/2006

COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ 08855

| ART UNIT | PAPER NUMBER |
|---|---|
| 1744 | |

DATE MAILED: 03/02/2006

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.

$\mathcal{S}$

| | Application No. | Applicant(s) |
|---|---|---|
| ***Notice of Allowability*** | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit | |
| | Mark Spisich | 1744 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *amendment filed 21 February 2006.*

2. ☒ The allowed claim(s) is/are *1-34*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  a) ☐ All    b) ☐ Some*   c) ☐ None   of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
    3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
  * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
  (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
    1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
  (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
  Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO-1449 or PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application (PTO-152)
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

*Mark Spisich*
Mark Spisich
Primary Examiner
Art Unit: 1744

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| [barcode] | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit |
| | Mark Spisich | 1744 |

## ISSUE CLASSIFICATION

| ORIGINAL | | | CROSS REFERENCE(S) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | |
| 15 | 143.1 | 15 | 167.1 | | | | | | |
| INTERNATIONAL CLASSIFICATION | | 16 | 430 | 436 | DIG. 19 | | | | |
| A 4 6 B | 5/02 | | | | | | | | |
| | / | | | | | | | | |
| | / | | | | | | | | |
| | / | | | | | | | | |
| | / | | | | | | | | |

| -- | | | Total Claims Allowed: 34 | |
|---|---|---|---|---|
| (Assistant Examiner)   (Date) | *Mark Spisich* | | | |
| | Mark Spisich | | | |
| *Harold Smith* 2/28/06 | Primary Examiner | | O.G. Print Claim(s) | O.G. Print Fig. |
| (Legal Instruments Examiner)   (Date) | Art Unit 1744    2/28/06 | | | |
| | (Primary Examiner)         (Date) | | 1 | 2,5 |

☒ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 31 | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| 2 | 2 | 32 | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| 3 | 3 | 33 | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| 4 | 4 | 34 | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| 5 | 5 | | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| 6 | 6 | | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| 7 | 7 | | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| 8 | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| 9 | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| 10 | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| 11 | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| 12 | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| 13 | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| 14 | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| 15 | 15 | | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| 16 | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| 17 | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| 18 | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| 19 | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| 20 | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| 21 | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| 22 | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| 23 | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| 24 | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| 25 | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| 26 | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| 27 | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| 28 | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| 29 | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| 30 | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |

U.S. Patent and Trademark Office

Part of Paper No. 02282006



FEB 21 2006  3:89 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300    P.02

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005

RECEIVED
CENTRAL FAX CENTER

FEB 2 1 2006

Certificate of Facsimile Transmission

I hereby certify that this paper is being facsimile
transmitted to (571) 273-8360 at the U.S. Patent and
Trademark Office on February 21, 2006.

_Tracy Cavallaro_

Tracy Cavallaro

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the Application of: | Atty. Docket No.:    6989-01 |
| Douglas J. Hohlbein et al. | |
| Serial No.:    10/902,257 | Group Art Unit:    1744 |
| Filed:    July 30, 2004 | Examiner:    Mark Spisich |
| For:    Oral Care Implement | Confirmation No.:    1397 |

## AMENDMENT

Commissioner for Patents
P.O. Box 1450
Arlington, VA  22313-1450

Sir:

In response to the Office Action mailed December 23, 2005, please amend the application as follows:

Amendments to the Claims are reflected in the Listing of Claims, which begins on page 2 of this paper.

Remarks begin on page 7 of this paper.

Page 1 of 7

PAGE 2/8 * RCVD AT 2/21/2006 3:52:47 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/28 * DNIS:2738300 * CSID:732 878 7660 * DURATION (mm-ss):0146

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L13 | 12 | ((grip or handle) and (aperture or hole) and resilient and (toothbrush or oral)).clm. | US-PGPUB | OR | OFF | 2006/02/28 12:13 |

JA00192

| Index of Claims | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit |
| | Mark Spisich | 1744 |

| | |
|---|---|
| √ Rejected | − (Through numeral) Cancelled |
| = Allowed | + Restricted |
| N Non-Elected | A Appeal |
| I Interference | O Objected |

| Claim | | Date | Claim | | Date | Claim | | Date |
|---|---|---|---|---|---|---|---|---|
| Final | Original | | Final | Original | | Final | Original | |
| | 1 | | | 51 | | | 101 | |
| | 2 | | | 52 | | | 102 | |
| | 3 | | | 53 | | | 103 | |
| | 4 | | | 54 | | | 104 | |
| | 5 | | | 55 | | | 105 | |
| | 6 | | | 56 | | | 106 | |
| | 7 | | | 57 | | | 107 | |
| | 8 | | | 58 | | | 108 | |
| | 9 | | | 59 | | | 109 | |
| | 10 | | | 60 | | | 110 | |
| | 11 | | | 61 | | | 111 | |
| | 12 | | | 62 | | | 112 | |
| | 13 | | | 63 | | | 113 | |
| | 14 | | | 64 | | | 114 | |
| | 15 | | | 65 | | | 115 | |
| | 16 | | | 66 | | | 116 | |
| | 17 | | | 67 | | | 117 | |
| | 18 | | | 68 | | | 118 | |
| | 19 | | | 69 | | | 119 | |
| | 20 | | | 70 | | | 120 | |
| | 21 | | | 71 | | | 121 | |
| | 22 | | | 72 | | | 122 | |
| | 23 | | | 73 | | | 123 | |
| | 24 | | | 74 | | | 124 | |
| | 25 | | | 75 | | | 125 | |
| | 26 | | | 76 | | | 126 | |
| | 27 | | | 77 | | | 127 | |
| | 28 | | | 78 | | | 128 | |
| | 29 | | | 79 | | | 129 | |
| | 30 | | | 80 | | | 130 | |
| | 31 | | | 81 | | | 131 | |
| | 32 | | | 82 | | | 132 | |
| | 33 | | | 83 | | | 133 | |
| | 34 | | | 84 | | | 134 | |
| | 35 | | | 85 | | | 135 | |
| | 36 | | | 86 | | | 136 | |
| | 37 | | | 87 | | | 137 | |
| | 38 | | | 88 | | | 138 | |
| | 39 | | | 89 | | | 139 | |
| | 40 | | | 90 | | | 140 | |
| | 41 | | | 91 | | | 141 | |
| | 42 | | | 92 | | | 142 | |
| | 43 | | | 93 | | | 143 | |
| | 44 | | | 94 | | | 144 | |
| | 45 | | | 95 | | | 145 | |
| | 46 | | | 96 | | | 146 | |
| | 47 | | | 97 | | | 147 | |
| | 48 | | | 98 | | | 148 | |
| | 49 | | | 99 | | | 149 | |
| | 50 | | | 100 | | | 150 | |

U.S. Patent and Trademark Office

Part of Paper No. 08092005

JA00193

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2003

Application or Docket Number: 10.902257

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY TYPE ☐ | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| | | | | RATE | FEE | OR | RATE | FEE |
| TOTAL CLAIMS | 52 | | BASIC FEE | 385.00 | | OR | BASIC FEE | 770.00 |
| FOR | NUMBER FILED | NUMBER EXTRA | | | | | | |
| TOTAL CHARGEABLE CLAIMS | 52 minus 20= | 32 | X$ 9= | | | OR | X$18= | 576 |
| INDEPENDENT CLAIMS | 5 minus 3 = | 2 | X49= | | | OR | X86= | 172 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ | +145= | | | OR | +290= | |
| | | | TOTAL | | | OR | TOTAL | 1518 |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** 11-16-04 | | | | | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| Total | 52 | Minus | ** 52 | * | X$ 9= | | OR | X$18= | |
| Independent | 5 | Minus | *** 5 | * | X49= | | OR | X86= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ | +145= | | OR | +290= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDITIONAL FEE | OR | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** 11-15-05 | | | | | | | | | |
| Total | 52 | Minus | ** 52 | * | X$ 9= | | OR | X$18= | — |
| Independent | 5 | Minus | *** 5 | * | X49= | | OR | X86= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ | +145= | | OR | +290= | — |
| | | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDITIONAL FEE ? | OR | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT C** | | | | | | | | | |
| Total | 35 | Minus | ** 52 | * | X$ 9= | | OR | X$18= | |
| Independent | 2 | Minus | *** 5 | * | X49= | | OR | X86= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ | +145= | | OR | +290= | |
| | | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 10/03)    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

FEB 21 2006  3:39 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300    P.03

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.    (Previously Presented)        An oral care implement comprising:

a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough;

a gripping member at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base; and

a resilient grip body in the gripping region and extending through the aperture, the gripping member having a different durometer characteristic than the resilient grip body.

2.    (Previously Presented)        The oral care implement according to claim 1, in which the gripping member and the grip body comprises an elastomeric material.

3.    (Previously Presented)        The oral care implement according to claim 2, in which the at least one opening exposing a portion of the base is recessed to define a cavity.

4.    (Previously Presented)        The oral care implement according to claim 3, in which the base further includes at least one projection which has an outer surface, and the exposed portion of the base in the least one opening being the outer surface of the projection.

5.    (Previously Presented)        The oral care implement according to claim 2 wherein the at least one opening further comprises a plurality of the openings provided in the gripping member.

PAGE 3/8 * RCVD AT 2/21/2006 3:52:47 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/28 * DNIS:2738300 * CSID:732 878 7660 * DURATION (mm-ss):01:46

JA00195

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005

6.    (Previously Presented) The oral care implement according to claim 5, in which the gripping member further includes a concaved region disposed between each pair of adjacent openings.

7.    (Original)    The oral care implement according to claim 6, in which the base further includes a plurality of projections and a base surface extending between the projections, wherein the base surface between each adjacent pair of said projections has a groove disposed between the projections, and wherein the groove is disposed below the concaved regions.

8.    (Original)    The oral care implement of claim 5, in which the openings are elongate, transverse slots.

9.    (Original)    The oral care implement according to claim 8, in which the slots have varying lengths along a longitudinal direction of the gripping region.

10.    (Previously Presented)    The oral care implement according to claim 5 wherein the resilient grip body is fixed in the aperture to define tactile finger gripping surfaces on opposite sides of the base.

11.    (Previously Presented)    The oral care implement according to claim 10, in which the openings in the gripping member with exposed portions of the base are recessed.

12.    (Previously Presented)    The oral care implement according to claim 11, in which the gripping region of the base includes a rear segment and a front segment that is inclined relative to the rear segment, the rear segment including the gripping member.

13.    (Original)    The oral care implement according to claim 12 wherein the aperture is formed in the front segment.

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005

14.    (Previously Presented)    The oral care implement according to claim 2 wherein the grip body is surrounded by the gripping member on one side of the aperture.

15.    (Previously Presented)    The oral care implement according to claim 1, in which the grip body is of a softer material than said gripping member.

16.    (Original)    The oral care implement according to claim 15 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

17.    (Previously Presented)    The oral care implement according to claim 16 wherein the at least one opening further comprises a plurality of openings provided in the gripping member.

18.    (Previously Presented)    The oral care implement according to claim 17, in which the exposed portions of the base in the gripping member are recessed.

19.    (Previously Presented)    The oral care implement according to claim 1, wherein the resilient grip body is fixed in the aperture to define tactile finger gripping surfaces on opposite sides of the base.

20.    (Original)    The oral care implement according to claim 19 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

21.    (Previously Presented)    The oral care implement according to claim 1, in which the base includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

Page 4 of 7

JA00197

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005


22.    (Original)    The oral care implement according to claim 21, in which the first section is inclined relative to the second section.

23.    (Previously Presented)    The oral care implement according to claim 1, in which the exposed portion of the base is recessed in the gripping member to define a cavity in the opening.

24.    (Previously Presented)    The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base and the grip body is composed of a softer material than the gripping member.

25.    (Previously Presented)    The oral care implement according to claim 24, in which the at least one opening includes a plurality of openings exposing base portions that are recessed relative to the gripping member.

26.    (Original)    The oral care implement according to claim 1, in which the oral engaging region includes teeth cleaning elements.

27.    (Previously Presented)    An oral care implement comprising:
a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion;
a resilient grip surface being disposed on the rear segment; and
a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005

28.    (Original)    The oral care implement according to claim 27, in which the grip body comprises an elastomeric material.

29.    (Currently Amended)    The oral care implement according to claim 27, in which the grip body is configured to counterbalance forces acting on the ~~handle~~ base.

30.    (Original)    The oral care implement according to claim 27, in which the grip body has a hardness of about 8-24 Shore A.

31.    (Previously Presented)    The oral care implement according to claim 30 wherein the resilient grip surface has a hardness of about 13-50 Shore A.

32.    (Previously Presented)    The oral care implement according to claim 27 wherein the grip body is spaced from the grip surface by a portion of the base.

33.    (Original)    The oral care implement according to claim 27 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

34.    (Original)    The oral care implement according to claim 27 wherein each said finger gripping surface includes a plurality of projections.

35-52. (Cancelled)

FEB 21 2006  3:40 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300        P.08

## REMARKS

These remarks are responsive to the Office Action of December 23, 2005. In the Office Action, claims 1-28 and 30-34 are allowed. Claim 29 has been amended to overcome the 35 USC 112 rejection and is believed to be allowable. Claims 35-52 have been cancelled in order to expedite allowance of this case, all rejections thereto being traversed. Applicant appreciates the allowance of the noted claims. Applicant reserves the right to prosecute claims 35-52 in a continuing application.

Should the Examiner believe that anything further is desirable in order to place the application in even better form for allowance, the Examiner is respectfully urged to contact the undersigned. The Commissioner is authorized to charge additional fees for additional independent claims and dependent claims to our Deposit Account No. 03-2455. If any additional fees are required or if an overpayment has been made the Commissioner is authorized to charge or credit Deposit Account No. 03-2455.

Respectfully submitted,

Harris A. Wolin
Registration No. 39,432

**CUSTOMER NUMBER 23909**
PHONE:  (732) 878-6341
FAX:  (732) 878-7660
DOCKET NO.:  6989-01

Page 7 of 7

PAGE 8/8 * RCVD AT 2/21/2006 3:52:47 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/28 * DNIS:2738300 * CSID:732 878 7660 * DURATION (mm-ss):01-46

FEB 21 2006  3:38 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300    P.01

RECEIVED
CENTRAL FAX CENTER
FEB 2 1 2006

# *Facsimile*

| To | Company | Fax Number | Phone Number |
|---|---|---|---|
| 1 **Examiner Mark Spisich** | USPTO GAU 1744 Re: USSN 10/902,257 Conf. No.: 1397 | (571) 273-8300 | |

| Date | Our Reference Number |
|---|---|
| ***February 21, 2006*** | 6989-01 |

| From | Email Address |
|---|---|
| **Harris A. Wolin** | **harris_wolin@colpal.com** |

| Direct Phone | Fax |
|---|---|
| **(732) 878-6341** | **(732) 878-7660** |

**Total number of pages, including cover letter: 8**
**If you do not receive all of the pages, please call: (732) 878-6341**

## Enclosed:

7 pages    -    Amendment

*Important*

This facsimile transmission contains information intended for the exclusive use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.

If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender by telephone to arrange for the return or destruction of the information and all copies.

PAGE 1/8 * RCVD AT 2/21/2006 3:52:47 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/28 * DNIS:2738300 * CSID:732 878 7660 * DURATION (mm-ss):01-46

FEB 21 2006  3:89 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300    P.02

Application. No.: 10/902,257
Amendment dated February 21, 2006
Reply to Office Action of December 23, 2005

**RECEIVED**
**CENTRAL FAX CENTER**

**FEB 2 1 2006**

Certificate of Facsimile Transmission

I hereby certify that this paper is being facsimile transmitted to (571) 273-8260 at the U.S. Patent and Trademark Office on February 21, 2006.

_____
Tracy Cavallaro

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of:                              Atty. Docket No.:      6989-01

    Douglas J. Hohlbein et al.

Serial No.:    10/902,257                              Group Art Unit:        1744

Filed:         July 30, 2004                           Examiner:              Mark Spisich

For:           Oral Care Implement                     Confirmation No.:      1397

### AMENDMENT

Commissioner for Patents
P.O. Box 1450
Arlington, VA  22313-1450

Sir:

In response to the Office Action mailed December 23, 2005, please amend the application as follows:

**Amendments to the Claims** are reflected in the Listing of Claims, which begins on page 2 of this paper.

**Remarks** begin on page 7 of this paper.

Page 1 of 7

PAGE 2/8 * RCVD AT 2/21/2006 3:52:47 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/28 * DNIS:2738300 * CSID:732 878 7660 * DURATION (mm-ss):01-46

| *Search Notes* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit | |
| | Mark Spisich | 1744 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 15 | 143.1 | | |
| | 167.1 | | |
| 16 | 431 | | |
| | 436 | | |
| | DIG. 12 | | |
| | DIG. 19 | | |
| 132 | 321,323 | | |
| 433 | 141 | | |
| 601 | 141 | | |
| 606 | 161 | 8/9/2005 | MS |
| to date | | 12/21/05 | MS |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| Consulted C MAH in class 16 | 8/4/2005 | MS |
| Inventor name search | 8/9/2005 | MS |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

U.S. Patent and Trademark Office

Part of Paper No. 08092005

**JA00203**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit |
| | Mark Spisich | 1744 |

| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Final | Original | 8/1005 | | | | | Final | Original | 8/2/05 | | | | | Final | Original | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | 51 | | | | | | | 101 | | | | |
| | 2 | | | | | | | 52 | | | | | | | 102 | | | | |
| | 3 | | | | | | | 53 | | | | | | | 103 | | | | |
| | 4 | | | | | | | 54 | | | | | | | 104 | | | | |
| | 5 | | | | | | | 55 | | | | | | | 105 | | | | |
| | 6 | | | | | | | 56 | | | | | | | 106 | | | | |
| | 7 | | | | | | | 57 | | | | | | | 107 | | | | |
| | 8 | | | | | | | 58 | | | | | | | 108 | | | | |
| | 9 | | | | | | | 59 | | | | | | | 109 | | | | |
| | 10 | | | | | | | 60 | | | | | | | 110 | | | | |
| | 11 | | | | | | | 61 | | | | | | | 111 | | | | |
| | 12 | | | | | | | 62 | | | | | | | 112 | | | | |
| | 13 | | | | | | | 63 | | | | | | | 113 | | | | |
| | 14 | | | | | | | 64 | | | | | | | 114 | | | | |
| | 15 | | | | | | | 65 | | | | | | | 115 | | | | |
| | 16 | | | | | | | 66 | | | | | | | 116 | | | | |
| | 17 | | | | | | | 67 | | | | | | | 117 | | | | |
| | 18 | | | | | | | 68 | | | | | | | 118 | | | | |
| | 19 | | | | | | | 69 | | | | | | | 119 | | | | |
| | 20 | | | | | | | 70 | | | | | | | 120 | | | | |
| | 21 | | | | | | | 71 | | | | | | | 121 | | | | |
| | 22 | | | | | | | 72 | | | | | | | 122 | | | | |
| | 23 | | | | | | | 73 | | | | | | | 123 | | | | |
| | 24 | | | | | | | 74 | | | | | | | 124 | | | | |
| | 25 | | | | | | | 75 | | | | | | | 125 | | | | |
| | 26 | | | | | | | 76 | | | | | | | 126 | | | | |
| | 27 | | | | | | | 77 | | | | | | | 127 | | | | |
| | 28 | | | | | | | 78 | | | | | | | 128 | | | | |
| | 29 | | | | | | | 79 | | | | | | | 129 | | | | |
| | 30 | | | | | | | 80 | | | | | | | 130 | | | | |
| | 31 | | | | | | | 81 | | | | | | | 131 | | | | |
| | 32 | | | | | | | 82 | | | | | | | 132 | | | | |
| | 33 | | | | | | | 83 | | | | | | | 133 | | | | |
| | 34 | | | | | | | 84 | | | | | | | 134 | | | | |
| | 35 | | | | | | | 85 | | | | | | | 135 | | | | |
| | 36 | | | | | | | 86 | | | | | | | 136 | | | | |
| | 37 | | | | | | | 87 | | | | | | | 137 | | | | |
| | 38 | | | | | | | 88 | | | | | | | 138 | | | | |
| | 39 | | | | | | | 89 | | | | | | | 139 | | | | |
| | 40 | | | | | | | 90 | | | | | | | 140 | | | | |
| | 41 | | | | | | | 91 | | | | | | | 141 | | | | |
| | 42 | | | | | | | 92 | | | | | | | 142 | | | | |
| | 43 | | | | | | | 93 | | | | | | | 143 | | | | |
| | 44 | | | | | | | 94 | | | | | | | 144 | | | | |
| | 45 | | | | | | | 95 | | | | | | | 145 | | | | |
| | 46 | | | | | | | 96 | | | | | | | 146 | | | | |
| | 47 | | | | | | | 97 | | | | | | | 147 | | | | |
| | 48 | | | | | | | 98 | | | | | | | 148 | | | | |
| | 49 | | | | | | | 99 | | | | | | | 149 | | | | |
| | 50 | | | | | | | 100 | | | | | | | 150 | | | | |

U.S. Patent and Trademark Office

Part of Paper No.  08092005

JA00204

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 6989-01 | 1397 |

23909      7590      12/23/2005
COLGATE-PALMOLIVE COMPANY
909 RIVER ROAD
PISCATAWAY, NJ  08855

| EXAMINER |
|---|
| SPISICH, MARK |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1744 | |

DATE MAILED: 12/23/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| **Office Action Summary** | 10/902,257 | HOHLBEIN, DOUGLAS J. |  |
|  | Examiner | Art Unit |  |
|  | Mark Spisich | 1744 |  |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on 15 November 2005.

2a)☒ This action is **FINAL.**      2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-52* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☒ Claim(s) *1-28 and 30-34* is/are allowed.

6)☒ Claim(s) *29 and 35-52* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All  b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____ .

U.S. Patent and Trademark Office
PTOL-326 (Rev. 7-05)                    Office Action Summary                    Part of Paper No./Mail Date 12202005

Application/Control Number: 10/902,257                                    Page 2
Art Unit: 1744

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

1.      Claims 29,42 and 52 are rejected under 35 U.S.C. 112, second paragraph, as

being indefinite for failing to particularly point out and distinctly claim the subject matter

which applicant regards as the invention.    "Handle" (claim 29, line 2) lacks antecedent.

"Handle" (claim 42, line 1) lacks antecedent. "Grip element" (claim 52, line 1) lacks

antecedent. It should instead be grip **body**.    Applicant should review the claims for

any additional informalities.

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

3.      Claims 35-37,39-42,46-50 and 52 are rejected under 35 U.S.C. 102(e) as being

anticipated by Weihrauch (USP 6,353,958).  The patent to Weihrauch discloses an oral

care implement comprising a base (1,2,3) and an elastomeric (column 5, lines 18-23)

gripping element (10,11) within an aperture in the base which defines opposed gripping

surfaces (12,13) on opposite sides of the base.  An elastomeric material fixed in an

aperture in the base would be capable of shifting within the aperture (claim 35).  See

Application/Control Number: 10/902,257                                    Page 3

Art Unit: 1744

figure 1 for the inclined sidewalls of the aperture (claim 40). The two gripping elements

may be molded in one piece (column 4, lines 3-8). With regard to claim 40, the

opening or aperture in which the elastomeric body (12,13) is located is bounded by a

recessed portion of "peripheral groove".

4.      Claims 35,36,39,47-50 and 52 are rejected under 35 U.S.C. 102(b) as being

anticipated by Desimone et al (USP 5,339,482). The patent to Desimone discloses an

oral care implement (10) comprising a base (16) including an aperture (38,40) in which

is located an elastomeric (column 5, lines 10-15) grip body (22) to define gripping

surfaces on opposite sides of the body.

### Claim Rejections - 35 USC § 103

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

6.      Claims 38,43-45 and 51 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Weihrauch (USP 6,353,958) in view of Beals et al (USP 6,298,516).

The patent to Weihrauch discloses the invention substantially as claimed with the

exception of the hardness of the grip body. The patent to Beals discloses an

elastomeric material (34) overlying a base material (18) and which has a hardness of

from 3 to 90 Shore A (column 7, lines 46-57). It would have been obvious to one of

ordinary skill to have utilized such a material as it is shown in the art to be recognized

as a suitable grip for an oral cleaning implement. The choice of a material within the

Application/Control Number: 10/902,257                                      Page 4
Art Unit: 1744

range taught by Beals would be obvious to one of ordinary skill as involving no more

than routine experimentation and optimization of the prior art. The provision of other

surfaces of "grip elements" is also taught by Beals with the recited hardness thereof

also being in the range taught therein.

### *Allowable Subject Matter*

7.     Claims 1-28 and 30-34 are allowed.

8.     Claim 29 would be allowable if rewritten or amended to overcome the rejection(s)

under 35 U.S.C. 112, 2nd paragraph, set forth in this Office action.

### *Response to Arguments*

9.     Applicant's arguments filed 11 November 2005 have been fully considered but

they are not persuasive. Claim 35 recites "the grip body further having a centroid that is

shiftable within the aperture by user pressure to opposite sides of the base" (lines 5-6)

and claim 47 recites "the grip body being configured to dampen forces applied to the

oral engaging region by the user holding the gripping region" (lines 6-7). With regard to

the specification and drawings of the present application, this refers to the body (403)

which is received in an aperture in the handle and which is made of a resilient

elastomeric material either molded into or premolded and mounted into aperture

(paragraph 25, line 4-5). The prior art device of Weihrauch includes a resilient

elastomer (12,13) which is received in an aperture passing through the handle (see fig 5

and column 4, lines 3-16). This is essentially what is found in the present invention.

There is no reason why the resilient body (12,13) of Weihrauch would not function in the

manner recited in claims 35 and 47. Applicant's remarks do not even assert a **claimed**

Application/Control Number: 10/902,257                                    Page 5
Art Unit: 1744

**structural difference** to define over the device of Weihrauch.  The same is true for

Desimone, which discloses a toothbrush handle which includes an aperture (42, also

says that the bridge portion 28 is not required) in which is located a resilient body (22)

(silicone rubber, RTV silicone, etc as in column 5, lines 9-23).  With regard to the

structure positively recited in claims 35 and 47, Desimone discloses the same thing.

Applicant does not provide a convincing argument that there is a **structural difference**

between the claimed invention (35 and 47) and that of the prior art.  Is there some

reason why the disclosed invention is able to function differently than the brushes of

either Weihrauch or Desimone?  If there is, it sure isn't positively recited in the claims.

With regard to the added phrase in claim 40, ("the base includes a peripheral groove in

the gripping region", lines 4-5), there is a recessed portion in the body of the handle that

is about the periphery of the aperture in which the resilient body is received.  This

feature meets the broad recitation of a peripheral groove in the gripping region.  This

added limitation is in reference to the groove (323) shown in figure 7; however, claim 40

is a far cry from positively reciting any particular structure shown in figure 7.  Claim 40

merely requires a groove somewhere in the base(handle) and does not even require

that it be around the resilient body.

### Conclusion

10.    **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

Application/Control Number: 10/902,257                    Page 6
Art Unit: 1744

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Mark Spisich whose telephone number is (571) 272-

1278. The examiner can normally be reached on M-Th (5:30-3:00), Alternate Fri off.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Kim can be reached on (571) 272-1142. The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Mark Spisich
Primary Examiner
Art Unit 1744

MS

DEC 08 2005  1:33 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300    P.01

## *Facsimile*

RECEIVED
CENTRAL FAX CENTER

DEC 0 8 2005

| To | Company | Fax Number | Phone Number |
|----|---------|-----------|--------------|
| 1 **Examiner Mark Spisich** | USPTO GAU: 1744 <br> Re: USSN 10/902,257 <br> Conf. No.: 1397 | **(571) 273-8300** | |

| Date | Our Reference Number |
|------|---------------------|
| **December 8, 2005** | 6989-01 |

| From | Email Address |
|------|---------------|
| **Harris A. Wolin** | **harris_wolin@colpal.com** |

| Direct Phone | Fax |
|--------------|-----|
| **(732) 878-6341** | **(732) 878-7660** |

**Total number of pages, including cover letter: 2**
**If you do not receive all of the pages, please call: (732) 878-6341**

### Enclosed:

1 page    -    Change of Correspondence

## BEST AVAILABLE COPY

*Important*

This facsimile transmission contains information intended for the exclusive use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.

If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender by telephone to arrange for the return or destruction of the information and all copies.

- 3 -

PAGE 1/2 * RCVD AT 12/8/2005 1:47:16 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:732 878 7660 * DURATION (mm-ss):00-38



DEC 08 2005  1:34 PM FR COLGATE PATENT DEPT 878 7660 TO 915712738300      P.02

RECEIVED
CENTRAL FAX CENTER

DEC 0 8 2005

Certificate of Facsimile Transmission

I hereby certify that this paper is being facsimile transmitted to (571)
273-8300 at the U.S. Patent and Trademark Office on

12/8/05

_____
Tracy Cavallaro

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants: Douglas Hohlbein et al. | Examiner: Mark Spisich |
| Serial No.: 10/902,257 | Art Unit: 1744 |
| Filing Date: July 30, 2004 | Confirmation No.: 1397 |
| For: **Oral Care Implement** | Attorney Docket No.: 00647.00042 (6989-01) |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### CHANGE OF CORRESPONDENCE INFORMATION

SIR:

Please address all future correspondence for the above referenced matter to the following:

**CUSTOMER NUMBER 23909**

**Docket Number: 6989-01**

Respectfully submitted,

_____
Harris A. Wolin
Reg. No. 39,432

**CUSTOMER NUMBER 23909**
PHONE: (732) 878-6341
FAX: (732) 878-7660
DOCKET NO.: 00647.00042 (6989-01)

BEST AVAILABLE COPY

- 2 -

| | | Index of Claims | | Application/Control No. 10/902257 | Applicant(s)/Patent under Reexamination NO NAME |
|---|---|---|---|---|---|
| | | | | Examiner ••• | Art Unit |

| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Claim | | Date | | | | | | | | Claim | | Date | | | | | | | | Claim | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | | | Final | Original | | | | | | | | | Final | Original | | | | | | | | |
| | (1) | | | | | | | | | | 51 | | | | | | | | | | 101 | | | | | | | | |
| | 2 | | | | | | | | | | 52 | | | | | | | | | | 102 | | | | | | | | |
| | 3 | | | | | | | | | | 53 | | | | | | | | | | 103 | | | | | | | | |
| | 4 | | | | | | | | | | 54 | | | | | | | | | | 104 | | | | | | | | |
| | 5 | | | | | | | | | | 55 | | | | | | | | | | 105 | | | | | | | | |
| | 6 | | | | | | | | | | 56 | | | | | | | | | | 106 | | | | | | | | |
| | 7 | | | | | | | | | | 57 | | | | | | | | | | 107 | | | | | | | | |
| | 8 | | | | | | | | | | 58 | | | | | | | | | | 108 | | | | | | | | |
| | 9 | | | | | | | | | | 59 | | | | | | | | | | 109 | | | | | | | | |
| | 10 | | | | | | | | | | 60 | | | | | | | | | | 110 | | | | | | | | |
| | 11 | | | | | | | | | | 61 | | | | | | | | | | 111 | | | | | | | | |
| | 12 | | | | | | | | | | 62 | | | | | | | | | | 112 | | | | | | | | |
| | 13 | | | | | | | | | | 63 | | | | | | | | | | 113 | | | | | | | | |
| | 14 | | | | | | | | | | 64 | | | | | | | | | | 114 | | | | | | | | |
| | 15 | | | | | | | | | | 65 | | | | | | | | | | 115 | | | | | | | | |
| | 16 | | | | | | | | | | 66 | | | | | | | | | | 116 | | | | | | | | |
| | 17 | | | | | | | | | | 67 | | | | | | | | | | 117 | | | | | | | | |
| | 18 | | | | | | | | | | 68 | | | | | | | | | | 118 | | | | | | | | |
| | 19 | | | | | | | | | | 69 | | | | | | | | | | 119 | | | | | | | | |
| | 20 | | | | | | | | | | 70 | | | | | | | | | | 120 | | | | | | | | |
| | 21 | | | | | | | | | | 71 | | | | | | | | | | 121 | | | | | | | | |
| | 22 | | | | | | | | | | 72 | | | | | | | | | | 122 | | | | | | | | |
| | 23 | | | | | | | | | | 73 | | | | | | | | | | 123 | | | | | | | | |
| | 24 | | | | | | | | | | 74 | | | | | | | | | | 124 | | | | | | | | |
| | 25 | | | | | | | | | | 75 | | | | | | | | | | 125 | | | | | | | | |
| | 26 | | | | | | | | | | 76 | | | | | | | | | | 126 | | | | | | | | |
| | (27) | | | | | | | | | | 77 | | | | | | | | | | 127 | | | | | | | | |
| | 28 | | | | | | | | | | 78 | | | | | | | | | | 128 | | | | | | | | |
| | 29 | | | | | | | | | | 79 | | | | | | | | | | 129 | | | | | | | | |
| | 30 | | | | | | | | | | 80 | | | | | | | | | | 130 | | | | | | | | |
| | 31 | | | | | | | | | | 81 | | | | | | | | | | 131 | | | | | | | | |
| | 32 | | | | | | | | | | 82 | | | | | | | | | | 132 | | | | | | | | |
| | 33 | | | | | | | | | | 83 | | | | | | | | | | 133 | | | | | | | | |
| | 34 | | | | | | | | | | 84 | | | | | | | | | | 134 | | | | | | | | |
| | (35) | | | | | | | | | | 85 | | | | | | | | | | 135 | | | | | | | | |
| | 36 | | | | | | | | | | 86 | | | | | | | | | | 136 | | | | | | | | |
| | 37 | | | | | | | | | | 87 | | | | | | | | | | 137 | | | | | | | | |
| | 38 | | | | | | | | | | 88 | | | | | | | | | | 138 | | | | | | | | |
| | 39 | | | | | | | | | | 89 | | | | | | | | | | 139 | | | | | | | | |
| | (40) | | | | | | | | | | 90 | | | | | | | | | | 140 | | | | | | | | |
| | 41 | | | | | | | | | | 91 | | | | | | | | | | 141 | | | | | | | | |
| | 42 | | | | | | | | | | 92 | | | | | | | | | | 142 | | | | | | | | |
| | 43 | | | | | | | | | | 93 | | | | | | | | | | 143 | | | | | | | | |
| | 44 | | | | | | | | | | 94 | | | | | | | | | | 144 | | | | | | | | |
| | 45 | | | | | | | | | | 95 | | | | | | | | | | 145 | | | | | | | | |
| | 46 | | | | | | | | | | 96 | | | | | | | | | | 146 | | | | | | | | |
| | (47) | | | | | | | | | | 97 | | | | | | | | | | 147 | | | | | | | | |
| | 48 | | | | | | | | | | 98 | | | | | | | | | | 148 | | | | | | | | |
| | 49 | | | | | | | | | | 99 | | | | | | | | | | 149 | | | | | | | | |
| | 50 | | | | | | | | | | 100 | | | | | | | | | | 150 | | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. 111111

**JA00214**

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Effective October 1, 2003 | Application or Docket Number<br>10.902257 |
|---|---|

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 52 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 52 minus 20 = | 32 |
| INDEPENDENT CLAIMS | 5 minus 3 = | 2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | ☐ | |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 385.00 | OR | BASIC FEE | 770.00 |
| X$9= | | OR | X$18= | 576 |
| X43= | | OR | X86= | 172 |
| +145= | | OR | +290= | |
| TOTAL | | OR | TOTAL | 1518 |

### CLAIMS AS AMENDED - PART II

**AMENDMENT A** — 11-16-04

| | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA |
|---|---|---|---|---|
| Total | 52 | Minus | ** 52 | 0 |
| Independent | 5 | Minus | *** 5 | 0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B** — 11-15-05

| | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA |
|---|---|---|---|---|
| Total | 52 | Minus | ** 52 | |
| Independent | 5 | Minus | *** 5 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | ** | |
| Independent | | Minus | *** | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 10/03)                    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

App. No. 10/902,257

**Listing of Claims:**

1. (Currently Amended)    An oral care implement comprising:

a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough; and

a gripping member at least partially overlying the gripping region of the base and having a grip surface provided with at least one opening exposing a portion of the base; and

a resilient grip body in the gripping region and extending through the aperture, the gripping member having a different durometer characteristic than the resilient grip body.

2. (Currently Amended)    The oral care implement according to claim 1, in which the gripping member and the grip body comprises an elastomeric material.

3. (Currently Amended)    The oral care implement according to claim 2, in which the at least one opening exposed exposing a portion of the base are is recessed in the grip surface to define a cavity in the opening.

4. (Currently Amended)    The oral care implement according to claim 3, in which the base further includes at least one projection which has an outer surface, and the exposed portion of the base in the least one opening is being the outer surface of the projection.

5. (Currently Amended)    The oral care implement according to claim 2 wherein the at least one opening further comprises a plurality of the openings are provided in the grip surface gripping member.

6. (Currently Amended)    The oral care implement according to claim 5, in which the grip surface gripping member further includes a concaved region disposed between each pair of adjacent openings.

7. (Original)   The oral care implement according to claim 6, in which the base further includes a plurality of projections and a base surface extending between the projections, wherein the base

Page 2 of 14

**JA00216**

App. No. 10/902,257

surface between each adjacent pair of said projections has a groove disposed between the projections, and wherein the groove is disposed below the concaved regions.

8. (Original)   The oral care implement of claim 5, in which the openings are elongate, transverse slots.

9. (Original)   The oral care implement according to claim 8, in which the slots have varying lengths along a longitudinal direction of the gripping region.

10. (Currently Amended)    The oral care implement according to claim 5 wherein the ~~base includes an aperture, and a~~ resilient grip body is fixed in the aperture to define <u>tactile</u> finger gripping surfaces on opposite sides of the base.

11. (Currently Amended)    The oral care implement according to claim 10, in which the <u>openings in the gripping member with</u> exposed portions of the base are recessed ~~in the grip surface~~.

12. (Currently Amended)    The oral care implement according to claim 11, in which the <u>gripping region of the</u> base includes a rear segment and a front segment that is inclined <u>relative</u> to the rear segment<u>, the rear segment including the gripping member</u>.

13. (Original)  The oral care implement according to claim 12 wherein the aperture is formed in the front segment.

14. (Currently Amended)  The oral care implement according to claim 2 ~~further including an independent, resilient~~ <u>wherein the</u> grip body <u>is surrounded by the gripping member on one side of the aperture</u> ~~extending through the base~~.

15. (Currently Amended)    The oral care implement according to claim <u>1</u> ~~14~~, in which the grip body is of a softer material than said gripping member.

Page 3 of 14

App. No. 10/902,257

16. (Original) The oral care implement according to claim 15 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

17. (Currently Amended)    The oral care implement according to claim 16 ~~1~~ wherein the at least one opening further comprises a plurality of ~~the~~ openings ~~are~~ provided in the ~~grip surface~~ gripping member.

18. (Currently Amended)    The oral care implement according to claim 17, in which the exposed portions of the base in the gripping member are recessed ~~in the grip surface~~.

19. (Currently Amended)    The oral care implement according to claim 1, wherein the ~~base includes an aperture, and a~~ resilient grip body is fixed in the aperture to define _tactile_ finger gripping surfaces on opposite sides of the base.

20. (Original) The oral care implement according to claim 19 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

21. (Currently Amended)    The oral care implement according to claim 1, in which the ~~handle~~ base includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

22. (Original) The oral care implement according to claim 21, in which the first section is inclined relative to the second section.

23. (Currently Amended)    The oral care implement according to claim 1, in which the exposed portion of the base is recessed in the ~~grip surface~~ gripping member to define a cavity in the opening.

JA00218

App. No. 10/902,257

24. (Currently Amended)    The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base and the grip body is composed of a softer material than the gripping member.

25. (Currently Amended)    The oral care implement according to claim 24, in which the at least one opening includes a plurality of openings exposed exposing base portions that are recessed relative to the gripping member grip surface.

26. (Original) The oral care implement according to claim 1, in which the oral engaging region includes teeth cleaning elements.

27. (Currently Amended)    An oral care implement comprising:
     a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment; wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion;
          a resilient grip surface being disposed on the rear segment; and
     a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

28. (Original) The oral care implement according to claim 27, in which the grip body comprises an elastomeric material.

29. (Original) The oral care implement according to claim 27, in which the grip body is configured to counterbalance forces acting on the handle.

30. (Original) The oral care implement according to claim 27, in which the grip body has a hardness of about 8-24 Shore A.

App. No. 10/902,257

31. (Currently Amended)    The oral care implement according to claim 30, ~~in which the handle further includes a resilient grip surface on the base,~~ wherein the resilient grip surface has a hardness of about 13-50 Shore A.

32. (Currently Amended) The oral care implement according to claim 27 wherein <u>the grip body is spaced from the grip surface by a portion of the base</u> ~~front segment is inclined to the rear segment at about 5-40 degrees.~~

33. (Original) The oral care implement according to claim 27 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

34. (Original) The oral care implement according to claim 27 wherein each said finger gripping surface includes a plurality of projections.

35. (Original) An oral care implement comprising:
    a base with gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and
    a resilient grip body disposed in the aperture and extending through the base to define finger gripping surfaces on opposite sides of the base, the grip body further having a centroid that is shiftable within the aperture by user pressure to opposite sides of the base.

36. (Original) The oral care implement according to claim 35, in which the grip body comprises an elastomeric material.

37. (Currently Amended) The oral care implement of claim <u>35</u> ~~34~~, in which the grip<u> body</u> ~~element~~ is disposed in a widest portion of the base.

38. (Currently Amended)    The oral care implement according to claim <u>35</u> ~~34~~, in which the grip <u>body</u> ~~element~~ has hardness of about 8-24 Shore A.

JA00220

App. No. 10/902,257

39. (Currently Amended)    The oral care implement according to claim 35 34 wherein the aperture is defined by side surfaces that are inclined toward a central portion of the aperture to define a narrowed rounded edge surface.

40. (Currently Amended)    An oral care implement comprising:

a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base, the aperture being defined by at least one inclined sidewall that defines a narrowed edge surface within the aperture; wherein the base includes a peripheral groove in the gripping region; and

a resilient grip body being molded into the aperture, the grip body defining grip surfaces exposed on opposite sides of the base.

41. (Previously Presented)    The oral care implement according to claim 40, in which the grip body comprises an elastomeric material.

42. (Original)  The oral care implement according to claim 40, in which the handle includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

43. (Original)  The oral care implement according to claim 40 wherein the grip body has a hardness of about 8-25 Shore A.

44. (Original)  The oral care implement according to claim 43, further including a grip surface on the base, the grip surface having hardness of about 13-40 Shore A.

45. (Original)  The oral care implement according to claim 40 wherein the grip body has a hardness of about 11-15 Shore A.

46. (Original)  The oral care implement according to claim 40, in which the grip body is disposed in the widest portion of the base.

JA00221

App. No. 10/902,257

47. (Original) An oral care implement comprising:

a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and

a resilient grip body secured within the aperture to extend through the base and define a gripping surface on opposite sides of the base to be gripped by a thumb of a user and one finger, the grip body being configured to dampen the forces applied to the oral engaging region by the user holding the gripping region.

48. (Original) The oral care implement according to claim 47 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

49. (Original) The oral care implement according to claim 47 wherein the aperture is defined by side surfaces that are inclined toward a central portion of the aperture to define a narrowed rounded edge surface.

50. (Original) The oral care implement according to claim 49 wherein the grip body defines a centroid that is shiftable to opposite sides of the rounded edge surface upon application of pressure by the user.

51. (Original) The oral care implement according to claim 47 wherein the grip body has a hardness of about 8-25 Shore A.

52. (Original) The oral care implement according to claim 47, in which the grip element is disposed in a widest portion of the base.

Page 8 of 14

PTO/SB/122 (04-05)
Approved for use through 07/31/2006. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| | | |
|---|---|---|
| **CHANGE OF CORRESPONDENCE ADDRESS** *Application* | Application Number | 10/902,257 |
| | Filing Date | 7/30/2004 |
| Address to: Commissioner for Patents P.O. Box 1450 Alexandria, VA 22313-1450 | First Named Inventor | Douglas J. Hohlbein |
| | Art Unit | 1744 |
| | Examiner Name | Mark Spisch |
| | Attorney Docket Number | 6989-01 |

Please change the Correspondence Address for the above-identified patent application to:

[✓] The address associated with Customer Number:             23909

*OR*

[ ] Firm or Individual Name

Address

| City | State | Zip |
|---|---|---|
| | | |

Country

| Telephone | Email |
|---|---|
| | |

This form cannot be used to change the data associated with a Customer Number. To change the data associated with an existing Customer Number use "Request for Customer Number Data Change" (PTO/SB/124).

I am the:

[ ] Applicant/Inventor

[ ] Assignee of record of the entire interest. Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96).

[✓] Attorney or agent of record. Registration Number 42,192

[ ] Registered practitioner named in the application transmittal letter in an application without an executed oath or declaration. See 37 CFR 1.33(a)(1). Registration Number_____

| Signature | *Darrell G. Mottley* |
|---|---|
| Typed or Printed Name | DARRELL G. MOTTLEY |
| Date NOVEMBER 15, 2005 | Telephone 202-824-3000 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

[✓] *Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

App. No. 10/902,257

## REMARKS

These remarks are responsive to the non-final Office Action mailed August 15, 2005. Claims 1-6, 10-12, 14, 15, 17, 18, 19, 21, 23, 24, 25, 27, 31, 32 and 37-40 have been editorially amended. Claims 1-52 are pending. No new matter has been added. Reconsideration and allowance the application is respectfully requested.

*Claims Discussion*

Claim 1 recites an oral care implement a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough; and a gripping member at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base, and a resilient grip body in the gripping region and extending through the aperture, the gripping member having a different durometer characteristic than the resilient grip body. In this way, for example, the user is provided with a shock absorption advantage during brushing, while having comfort and control of the oral care implement.

Claim 1 was rejected under 35 U.S.C. § 102(b) by Blass (U.S. Pat. No. 6,325,626); or Davies (U.S. Pub. No. 2002/0138931). The noted references fail to anticipate claim 1. For example, Blass and Davies fail to disclose the recited aperture extending through a base, and a resilient grip body. Additionally, both references fail to disclose the recited gripping member having a different durometer characteristic than the resilient grip body. In view of the foregoing, claim 1 is allowable over Blass or Davies. Claims 2-26, depending directly or indirectly from claim 1, are allowable for at least the reasons of claim 1 and for further features recited therein.

Independent claims 27, 35 40, and 47 were rejected under 35 U.S.C. § 102(e) by Weihrauch (U.S. Pat. No. 6,353,958). Regarding claim 27, Weihrauch fails to teach the recited oral care implement including a base with a gripping region and an oral engaging region, wherein the front segment is inclined relative to the rear segment at about 20-40 degrees thereby defining the inclined portion; a resilient grip surface being disposed on the rear segment. If Weihrauch's embodiments had a rear segment, there are no resilient grip surfaces shown or described on a rear segment. Further, Weihrauch fails to disclose a grip body extending through an aperture in the base and spaced from the grip surface. In view of the foregoing, claim 27 is

JA00224

App. No. 10/902,257

allowable.   Claims 28-34, depending directly or indirectly from claim 27, are allowable for at least the reasons of claim 27 and for further features recited therein.

Regarding claim 35, the Office Action alleges that an elastomeric material "would be capable of shifting within the aperture." (Office Action, pg. 3, para. 5). There is absolutely no teaching in Weihrauch of the recited oral care implement including a resilient grip body disposed in the aperture and extending through the base to define finger gripping surfaces on opposite sides of the base, the grip body further having a centroid that is shiftable within the aperture by user pressure to opposite sides of the base.   Nothing in Weihrauch provides one of ordinary skill to gleam the inventive concepts as recited in claim 35.   Hence, claim 35 is not anticipated Weihrauch.   Claims 36-39, depending directly or indirectly from claim 35, are allowable for at least the reasons of claim 35 and for further features recited therein.

Regarding claim 40, Weihrauch fails to disclose the recited oral care implement including a base with a gripping region and an oral engaging region, wherein the base includes a peripheral groove in the gripping region. In the instant application, the peripheral groove is at least shown in FIG. 7. Claim 40 is not anticipated by Weihrauch.   Claims 41-46, depending directly or indirectly from claim 40, are allowable for at least the reasons of claim 40 and for further features recited therein.

Regarding claim 47, there is absolutely no teaching in Weihrauch of the recited oral care implement including a resilient grip body secured within an aperture to extend through a base and define a gripping surface on opposite sides of the base to be gripped by a thumb of a user and one finger, the grip body being configured to dampen the forces applied to the oral engaging region by the user holding the gripping region.   Weihrauch merely mentions grip elements 10, 11 could be made of an elastomer.   There is no grip body being configured to dampen the forces applied to the oral engaging region during use of the oral care implement.   Nothing in Weihrauch provides one of ordinary skill to gleam the inventive concepts as recited in claim 47.   Hence, claim 47 is not anticipated Weihrauch.

JA00225

App. No. 10/902,257

Claims 48-52, depending directly or indirectly from claim 47, are allowable for at least the reasons of claim 47 and for further features recited therein. Regarding claim 48, Weihrauch has no teaching of the dimensional feature recited therein. Claim 48 is allowable at least on this basis. Regarding claim 49, among other lacking features, Weihrauch has no teaching of the recited narrowed rounded edge surface disposed with the aperture. Claim 49 is allowable at least on this basis. Regarding claim 50, among other lacking features, Weihrauch is devoid of a grip body with a centriod that is shiftable as recited. Claim 50 is allowable at least on this basis.

Independent claims 35 and 47 were rejected under 35 U.S.C. § 102(e) by Desimone et al. (U.S. Pat. 5,339,482). Regarding claim 35, there is absolutely no teaching in Desimone et al. of the recited oral care implement including a resilient grip body disposed in the aperture and extending through the base to define finger gripping surfaces on opposite sides of the base, the grip body further having a centroid that is shiftable within the aperture by user pressure to opposite sides of the base. Nothing in Desimone et al. provides one of ordinary skill to gleam the inventive concepts as recited in claim 35. Hence, claim 35 is not anticipated Desimone et al. Claims 36-39, depending directly or indirectly from claim 35, are allowable for at least the reasons of claim 35 and for further features recited therein.

Regarding claim 47, there is absolutely no teaching in Desimone et al. of the recited oral care implement including a resilient grip body secured within an aperture to extend through a base and define a gripping surface on opposite sides of the base to be gripped by a thumb of a user and one finger, the grip body being configured to dampen the forces applied to the oral engaging region by the user holding the gripping region. Desimore et al. merely states that the insert 22 could be made of an elastomer. There is no grip body being configured to dampen the forces applied to the oral engaging region during use of the oral care implement. Nothing in Desimore et al. provides one of ordinary skill to gleam the inventive concepts as recited in claim 47. Hence, claim 47 is not anticipated Desimore et al. Claims 48-52, depending directly or indirectly from claim 47, are allowable for at least the reasons of claim 47 and for further features recited therein.

App. No. 10/902,257

Claim 1 was rejected under 35 U.S.C. § 103(a) under a combination of Caradarelli (U.S. Pat. No. 6,070,286) and Lai (U.S. Pat. 6,408,524). Caradarelli fails to disclose the recited oral care implement. For example, Caradarelli fails to disclose the recited aperture extending through a base, a resilient grip body and the recited gripping member having a different durometer characteristic than the resilient grip body. Additionally, Lai fails to make up for the deficiencies of Caradarelli.

The combination of Lai and Caradarelli is improper. Lai merely pertains to a tableware grip structure. Contrary to the assertions in the Office Action, Lai does not disclose any elastomeric grip member. Lai is completely devoid of suggesting use with oral care implements and is completely devoid of a toothbrush or any oral care implement. The references are not combinable in that the references deal with completely different areas. Further, motivation to combine Caradarelli and Lai is simply lacking. Hence, one of ordinary skill in the oral care art would not have considered Lai or modified Caradarelli. In view of the foregoing, claim 1 is allowable. Claims 2-26, depending directly or indirectly from claim 1, are allowable for at least the reasons of claim 1 and for further features recited therein.

Claims 6 and 7 were rejected under 35 U.S.C. § 103(a) under a combination of Caradarelli (U.S. Pat. No. 6,070,286) and Lai (U.S. Pat. 6,408,524) and Sweet et al. (U.S. Pat. 3,848,871). Claims 6 and 7 depend from claim 1. The arguments against the combination of Caradarelli and Lai with respect to claim 1 are incorporated herein. Furthermore, the alleged combination of Sweet is improper. Sweet merely pertains to hand grip for a tennis racket. Sweet is completely devoid of suggesting use with oral care implements and is completely devoid of a toothbrush or any oral care implement. The references are not combinable in that the references deal with completely different areas (e.g., oral care, tableware, and the sport of tennis). Further, motivation to combine Sweet is simply lacking. There is no reason why Lai's tableware grip sections 12 would be modified with Sweet's suction cups 35 (See, Sweet col. 2, lines 53-55). Hence, one of ordinary skill in the oral care art would not have considered Sweet. Claims 6 and 7 are allowable.

Claim 1 was rejected under 35 U.S.C. § 103(a) under a combination of Munro U.S. Pat. No. 6,266,840) and Sweet et al. Munro fails to disclose the recited oral care implement with an

Page 12 of 14

App. No. 10/902,257

aperture extending through a base, a resilient grip body and the recited gripping member having a different durometer characteristic than the resilient grip body. The combination of Murno and Sweet et al. is improper. Sweet merely pertains to hand grip for a tennis racket. Sweet is completely devoid of suggesting use with oral care implements and is completely devoid of a toothbrush or any oral care implement. The references are not combinable in that the references deal with completely different areas (e.g., oral care, and the sport of tennis). Further, motivation to combine Sweet is simply lacking. There is no reason why Munro would be modified with Sweet's suction cups 35 (See, Sweet col. 2, lines 53-55). Hence, one of ordinary skill in the oral care art would not have considered Sweet. Nevertheless, Sweet et al. is devoid of the recited oral care implement with a base including a peripheral groove for retaining the grip member on the base. In view of the foregoing, claim 1 is allowable. Claims 2-26, depending directly or indirectly from claim 1, are allowable for at least the reasons of claim 1 and for further features recited therein.

The Office Action rejected claims 30, 31, 38, 43-45 and 51 under 35 U.S.C. § 103(a) under a combination of Weihrauch (U.S. Pat. 6,353,958) and Beals et al. (U.S. Pat. 6,298,516). Claims 30, 31, 32 and 38 depend from independent claim 27. The previous comments for allowability of claim 27 are incorporated herein. Claims 43-45 depend from independent claim 40. The previous arguments for allowability of claim 40 are incorporated herein. Claim 51 is allowable for at least the reason of independent claim 47.

The Office Action rejected claims 10-16, 19 and 20 under 35 U.S.C. § 103(a) under a combination of Davies (U.S. Pub 2002/0138931) and Desimone et al. (U.S. Pat. 5,339,482). The noted claims are allowable for at least the reasons of independent claim 1. For example, Davies fails to disclose the recited aperture extending through a base, and a resilient grip body. Further, Davies fails to disclose the recited gripping member having a different durometer characteristic than the resilient grip body. Desimone et al. fails to make up the deficiencies of Davies et al. Furthermore, none of the cited references in combination or singularity teaches as a whole the recited oral implement of claim 1. Regarding claim 10, there is no teaching of the recited conical shape finger gripping surfaces. Regarding claim 14, nothing in Davies and Desimone et

Page 13 of 14

App. No. 10/902,257

al. teaches or suggests the grip body being surrounded by the grip member.  In view of the foregoing reasons, claims 10-16, 19 and 20 are allowable.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that this application is in condition for allowance.  Should the Examiner believe that anything further is desirable in order to place the application in better form for allowance, the Examiner is respectfully urged to contact Applicants' undersigned representative at the below-listed number. If any additional fees are required or if an overpayment has been made the Commissioner is authorized to charge or credit Deposit Account No. 19-0733.

Respectfully submitted,

BANNER & WITCOFF, LTD.

Dated: November 15, 2005          By:

Darrell G. Mottley
Registration No. 42,912

1001 G Street, N.W.
Washington, D.C.  20001-4597
Tel:    (202) 824-3000
Fax:    (202) 824-3001

Page 14 of 14

*IFW*

PTO/SB/21 (02-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FORM

*(to be used for all correspondence after Initial filing)*

| | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. HOHLBEIN |
| Art Unit | 3731 |
| Examiner Name | M. SPISCH |
| Attorney Docket Number | 6989-01 |

Total Number of Pages in This Submission

### ENCLOSURES *(check all that apply)*

- [ ] Fee Transmittal Form
  - [ ] Fee Attached
- [x] Amendment / Reply
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
- [ ] Extension of Time Request
- [ ] Express Abandonment Request
- [ ] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Response to Missing Parts/ Incomplete Application
- [ ] Response to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [ ] Petition (See attached IDS)
- [ ] Petition to Convert to a Provisional Application
- [x] Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Request for Refund
- [ ] CD, Number of CD(s) _____

- [ ] After Allowance Communication to Group
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to Group *(Appeal Notice, Brief, Reply Brief)*
- [ ] Proprietary Information
- [ ] Status Letter
- [ ] Other Enclosure(s) *(please identify below):*

Remarks

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | Darrell G. Mottley, Reg. No. 42, 912 |
|---|---|
| Signature | *Darrell G. Mottley* |
| Date | November 15, 2005 |

### CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below.

| Typed or printed name | | Date | |
|---|---|---|---|
| Signature | | | |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

OIPE
NOV. 15 2005
PATENT & TRADEMARK OFFICE



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the Application of: | Atty. Docket No.:    6989-01 |
| **Douglas J. Hohlbein** | |
| Serial No.:    10/902,257 | Group Art Unit:    3731 |
| Filed:    July 30, 2004 | Examiner:    Mark Spisich |
| For:    Oral Care Implement | Confirmation No.:    1397 |

## AMENDMENT

U.S. Patent and Trademark Office
220 20th Street S.
Customer Window
Crystal Plaza Two, Lobby, Room 1B03
Arlington, VA  22202

Sir:

This paper is responsive to the non final Office Action mailed August 15, 2005, please amend the instant application as follows:

**Amendments to the Claims** are reflected in the Listing of Claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit |
| | Mark Spisich | 1744 |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 15 | 143.1 | | |
| | 167.1 | | |
| 16 | 431 | | |
| | 436 | | |
| | DIG. 12 | | |
| | DIG. 19 | | |
| 132 | 321,323 | | |
| 433 | 141 | | |
| 601 | 141 | | |
| 606 | 161 | 8/9/2005 | MS |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| Consulted C MAH in class 16 | 8/4/2005 | MS |
| inventor name search | 8/9/2005 | MS |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

U.S. Patent and Trademark Office

Part of Paper No. 08092005

**JA00232**

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 006427.00042 | 1397 |

30751     7590     08/15/2005

BANNER & WITCOFF, LTD., ATTORNEYS FOR RESERVE
CLIENT NO. 3
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON, DC  20001-4597

| EXAMINER |
|---|
| SPISICH, MARK |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1744 | |

DATE MAILED: 08/15/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit |
| | Mark Spisich | 1744 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-52* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-52* is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date <u>11/04 & 8/05</u>.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____.

Application/Control Number: 10/902,257                                    Page 2
Art Unit: 1744

## DETAILED ACTION

### Claim Rejections - 35 USC § 112

1.      Claims 16,21,22,31,33,37-39,42 and 52 are rejected under 35 U.S.C. 112,

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which applicant regards as the invention. "Aperture" (claim 16,

line 1) lacks antecedent, as this element was not recited until claim 10. It is suggested

that – an aperture in – be inserted before "the base" (claim 14, line 2).   "Handle" (claim

21, line 1) lacks antecedent. It should probably be changed to – gripping region --.

"Handle" (claim 31, line 1) lacks antecedent.   "Aperture" (claim 33, line 1) lacks

antecedent.   "Grip element" (claims 37 and 38, line 1) lacks antecedent. It should

instead be "grip body". "Aperture" (claim 39, line 1) lacks antecedent. "Handle" (claim

42, line 1) lacks antecedent. "Grip **element**" (claim 52, line 1) lacks antecedent.

Applicant should review the claims for any additional informalities.

### Claim Rejections - 35 USC § 102

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public
use or on sale in this country, more than one year prior to the date of application for patent in the United
States.

(e) the invention was described in (1) an application for patent, published under section 122(b), by
another filed in the United States before the invention by the applicant for patent or (2) a patent
granted on an application for patent by another filed in the United States before the invention by the
applicant for patent, except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application filed in the United States
only if the international application designated the United States and was published under Article 21(2)
of such treaty in the English language.

Application/Control Number: 10/902,257                          Page 3

Art Unit: 1744

3.      Claims 1,2,5,8,17,24 and 26 are rejected under 35 U.S.C. 102(b) as being

anticipated by Blass (USP 6,325,626). The patent to Blass discloses an oral care

implement comprising a base (8) having a gripping region as well as an oral engaging

region and further including an elastomeric (column 3, lines 22-23) gripping member (9)

overlying the base an including openings exposing portions (12) of the base (figs 6-7).

4.      Claims 1-5,8,17,18,21, and 23-26 are rejected under 35 U.S.C. 102(b) as being

anticipated by Davies (US PUB 2002/0138931). Davies discloses an oral care

implement comprising a base (3) having a gripping region and an oral engaging region

(2) and further including an elastomeric (paragraph 0029) gripping member including

openings which expose a portion (6) of the base and further wherein the exposed

portion may be recessed relative to the grip surface (fig 3 and paragraph 0032).

5.      Claims 27-29,32-37,39-42,46-50 and 52 are rejected under 35 U.S.C. 102(e) as

being anticipated by Weihrauch (USP 6,353,958). The patent to Weihrauch discloses

an oral care implement comprising a base (1,2,3) and an elastomeric (column 5, lines

18-23) gripping element (10,11) within an aperture in the base which defines opposed

gripping surfaces (12,13) on opposite sides of the base. An elastomeric material fixed

in an aperture in the base would be capable of shifting within the aperture (claim 35).

See figure 1 for the inclined sidewalls of the aperture (claim 40). The two gripping

elements may be molded in one piece (column 4, lines 3-8).

6.      Claims 35,36,39,47-50 and 52 are rejected under 35 U.S.C. 102(b) as being

anticipated by Desimone et al (USP 5,339,482). The patent to Desimone discloses an

oral care implement (10) comprising a base (16) including an aperture (38,40) in which

Application/Control Number: 10/902,257                                    Page 4

Art Unit: 1744

is located an elastomeric (column 5, lines 10-15) grip body (22) to define gripping

surfaces on opposite sides of the body.

### *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

8.      Claims 1-3,5,17,18,21 and 23-26 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Cardarelli (USP 6,070,286) in view of Lai (USP 6,408,524). The

patent to Cardarelli discloses an oral care implement (1) comprising a body (2,7,9,15)

including a gripping portion (2) adapted for use by users suffering from arthritis or

having a physical handicap and fails only to discloses the elastomeric gripping member.

The patent to Lai discloses an implement handle (1) which is also particularly uaseable

by people with handicaps and which includes a rigid base (1) as well as an elastomeric

gripping member (2) partially overlying the base and including a plurality of openings

exposing portions (11) of the base (see column 3, lines 1-3 and claim 5). It would have

been obvious to one of ordinary skill to have modified the grip of Cardarelli as such as it

is shown to be an equivalent ergonomic handle/grip. For claim 21, see #9 in Cardarelli.

9.      Claims 6 and 7 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Cardarelli (USP 6,070,286) and Lai (USP 6,408,524) as applied to claim5 above, and

further in view of Sweet et al (USP 3,848,871). The provision of concaved regions (35)

in the grip surface (S) between openings therein is taught by Sweet and as such it

Application/Control Number: 10/902,257                          Page 5

Art Unit: 1744

would be obvious to provide such to the portions (12) of Lai to improve the user's grip.

Lai already discloses the base including projections defining grooves (11).

10.    Claims 1-3,5,6,8,9,17,18,21, and 23-26 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Munro (USP 6,266,840) in view of Sweet et al (USP

3,848,871). The patent to Munro discloses an oral care implement comprising a body

(10,14,16) comprising a gripping portion which is particularly adapted to be enable the

user to use the brush when the handle gets wet (column 1, lines 10-18). The patent to

Munro fails only to disclose the particular grip. The patent to Sweet discloses a handle

grip which also is designed to reduce slipping when wet (column 1, lines 40-50) and

which is comprised of a rigid base (16) with an overlying elastomeric (column 2, lines

40-50) gripping member (S) having a plurality of openings (38) exposing a portion of the

base. It would have been obvious to one of ordinary skill to have modified the device of

Munro as such as it is an equivalent grip for preventing slipping under wet conditions.

With regard to claim 6, the grip surface includes concaved regions (35) between

adjacent openings. As for claim 9, merely changing the size of the slots, absent some

criticality thereof, involoves only the aesthetic appearance thereof and would be obvious

to one having ordinary skill in the art. For claim 21, see figure 7 (and neck portion 16) in

Munro.

11.    Claim 22 is rejected under 35 U.S.C. 103(a) as being unpatentable over Munro

(USP 6,266,840) and Sweet et al (USP 3,848,871) as applied to claim 21 above, and

further in view of Halm (USP 5,052,071). The patent to Munro discloses the invention

substantially as claimed with the exception of the first section being "inclined". The

Application/Control Number: 10/902,257                    Page 6
Art Unit: 1744

provision of such is well known in the art (see #10 in Halm) for the purpose of getting to

hard to reach areas of the mouth and it would have been obvious to one of ordinary skill

to have modified the device of Munro as such for the same reason.

12.    Claims 30,31,38,43-45 and 51 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Weihrauch (USP 6,353,958) in view of Beals et al (USP 6,298,516).

The patent to Weihrauch discloses the invention substantially as claimed with the

exception of the hardness of the grip body.  The patent to Beals discloses an

elastomeric material (34) overlying a base material (18) and which has a hardness of

from 3 to 90 Shore A (column 7, lines 46-57).  It would have been obvious to one of

ordinary skill to have utilized such a material as it is shown in the art to be recognized

as a suitable grip for an oral cleaning implement.  The choice of a material within the

range taught by Beals would be obvious to one of ordinary skill as involving no more

than routine experimentation and optimization of the prior art.  The provision of other

surfaces of "grip elements" is also taught by Beals with the recited hardness thereof

also being in the range taught therein.

13.    Claims 10-16,19 and 20 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Davies (US PUB 2002/0138931) in view of Desimone et al (USP

5,339,482).  The patent to Davies discloses the invention substantially as claimed with

the exception of an additional grip member extending through an aperture in the base.

The patent to Desimone discloses the provision of discreet elastomeric members (22)

(column 3, lines 58-59) and the provision thereof to the device of Davies would be

obvious to provide an additional gripping surface on the handle and one that would yield

Application/Control Number: 10/902,257                    Page 7
Art Unit: 1744

with pressure applied to the opposed sides of the base.  The angling of segments of a

handle (claim 12) is very well known in the art of toothbrushes and the mere recitation

thereof does not define over the art as one of ordinary skill would deem it obvious to

angle the brush portion relative to the grip.

### Conclusion

14.    The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure. The cited patents are pertinent to additional handle grips with

overlying elastomeric materials.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Mark Spisich whose telephone number is (571) 272-

1278.  The examiner can normally be reached on M-Th (5:30-3:00), Alternate Fri off.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Kim can be reached on (571) 272-1142.  The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

-Mark-Spisich-

MARK SPISICH
PRIMARY EXAMINER
GROUP 3400

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Notice of References Cited** | 10/902,257 | HOHLBEIN, DOUGLAS J. |
| | Examiner | Art Unit | |
| | Mark Spisich | 1744 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-3,848,871 | 11-1974 | Sweet et al. | 473/549 |
| | B | US-4,712,304 | 12-1987 | Sanelli, Danilo | 30/343 |
| | C | US-5,052,071 | 10-1991 | Halm, Hans | 15/167.1 |
| | D | US-5,964,009 | 10-1999 | Hoepfl et al. | 16/430 |
| | E | US-6,070,286 | 06-2000 | Cardarelli, Venanzio | 15/167.1 |
| | F | US-6,076,223 | 06-2000 | Dair et al. | 15/167.1 |
| | G | US-6,128,808 | 10-2000 | Jansson et al. | 16/431 |
| | H | US-6,266,840 | 07-2001 | Munro, David | 15/167.1 |
| | I | US-6,322,362 | 11-2001 | Holms, Allan G. | 433/143 |
| | J | US-6,325,626 | 12-2001 | Blass, Jacob Moses | 433/141 |
| | K | US-6,353,958 | 03-2002 | Weihrauch, Georg | 15/167.1 |
| | L | US-6,408,524 | 06-2002 | Lai, Yin-Chu | 30/324 |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

PTO/SB/08a (08-03)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

(Use as many sheets as necessary)

| | |
|---|---|
| **Complete if Known** | |
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

Sheet | 1 | Of | 4

## U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.¹ | Document Number — Number - Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| MS | | US- 1,798,001 | 03-10-1931 | Church | |
| | | US- 2,263,885 | 05-09-1940 | W.G. McGaulay | |
| | | US- 3,185,582 | 05-25-1965 | Viator | |
| | | US- 4,721,021 | 01-26-1988 | Kusznir | |
| | | US- 5,054,154 | 10-08-1991 | Schiffer et al. | |
| | | US- 5,339,482 | 08-23-1994 | Desimone et al. | |
| | | US- 5,398,369 | 03-21-1995 | Heinzelman et al. | |
| | | US- 5,673,454 | 10-07-1997 | Quintanilla et al. | |
| | | US- 5,735,012 | 04-07-1998 | Heinzelman et al. | |
| | | US- 5,781,958 | 07-21-1998 | Meessman et al. | |
| | | US- 5,680,183 | 01-19-1999 | Kam | |
| | | US- 5,875,510 | 03-02-1999 | Lamond et al. | |
| | | US- 5,908,038 | 06-01-1999 | Bennett | |
| | | US- 5,926,901 | 07-27-1999 | Tseng et al. | |
| ✓ | | US- 6,049,936 | 04-18-2000 | Holley | |
| MS | | US- 6,108,849 | 08-29-2000 | Welhrauch | |
| | | US- 6,108,849 | 08-29-2000 | Welhrouch | |
| MS | | US- 6,108,869 | 08-29-2000 | Welhrauch | →Meess manu et al |
| | | US- 6,178,503 | 01-30-2001 | Taghavi-Khangheh | |
| | | US- 6,298,518 | 10-09-2001 | Beals et al. | |
| | | US- 6,332,233 | 12-25-2001 | Proulx | |
| | | US- 6,408,476 | 08-25-2002 | Cann | |
| | | US- 6,601,272 | 08-05-2003 | Sivartak et al. | |
| | | US- 6,687,940 | 02-10-2004 | Gross et al. | |
| | | | | | |
| | | US- 2001/0047556 | 12-06-2001 | Welhrauch | |
| | | US- 2002/0100134 | 08-01-2002 | Dunn et al. | |
| | | US- 2002/0138931 | 10-03-2002 | Davies | |
| | | US- 2002/0170145 | 11-21-2002 | Sivartak et al. | |
| ↓ | | US- 2004/0010878 | 01-22-2004 | Kraemer | |
| MS | ✓ | US- 2004/0020272   2004/0025272 | 02-12-2004 | Sivartak et al. | |
| | | | | | |
| | | US- | | | |

| Examiner Signature | [signature] | Date Considered | 8-9-2005 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

crossed-out is duplicate citation

PTO/SB/08a (08-03)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

## INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

Sheet | 2 | Of | 3

### U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.¹ | Document Number Number - Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| MS | | US- D317,988 | 07-09-1991 | Huang | |
| | | US- D334,288 | 03-30-1993 | Witzig-Jaggi | |
| | | US- D358,838 | 06-06-1995 | Schneider et al. | |
| | | US- D368,163 | 03-26-1996 | Overthun | |
| | | US- D371,680 | 07-16-1996 | Juhlin et al. | |
| | | US- D376,695 | 12-24-1996 | Tvorss | |
| | | US- D412,064 | 07-20-1999 | Achepohl et al. | |
| | | US- D413,728 | 09-14-1999 | Waguespack et al. | |
| | | US- D415,352 | 10-19-1999 | Beals et al. | |
| | | US- D416,685 | 11-23-1999 | Overthun | |
| | | US- D419,979 | 08-16-2000 | Moskovich et al. | |
| | | US- D419,304 | 01-25-2000 | Moskovich et al. | |
| | | US- D419,773 | 02-01-2000 | Beals et al. | |
| | | US- D420,802 | 02-22-2000 | Cheong et al. | |
| | | US- D420,804 | 02-22-2000 | Juhlin et al. | |
| | | US- D421,184 | 02-29-2000 | Koh et al. | |
| | | US- D421,841 | 03-28-2000 | Achepohl et al. | |
| | | US- D429,566 | 08-22-2000 | Yoshimoto et al. | |
| | | US- D429,567 | 08-22-2000 | Yoshimoto et al. | |
| | | US- D434,908 | 12-12-2000 | Beals et al. | |
| | | US- D439,412 S | 03-27-2001 | Volpenhein et al. | |
| | | US- D440,767 S | 04-24-2001 | Moskovich et al. | |
| | | US- D441,958 S | 05-15-2001 | Rueb | |
| | | US- D446,021 | 08-07-2001 | Jen | |
| | | US- D447,238 S | 08-28-2001 | Tang | |
| | | US- D448,174 S | 09-25-2001 | Harris et al. | |
| | | US- D448,570 S | 10-02-2001 | Harris et al. | |
| | | US- D448,571 S | 10-02-2001 | Harris et al. | |
| | | US- D450,457 S | 11-20-2001 | Hohlbein | |
| | | US- D452,615 S | 01-01-2002 | Cheong et al. | |
| | | US- D453,270 S | 02-05-2002 | Choong | |
| | | US- D453,998 S | 03-05-2002 | Ping | |
| | | US- D454,252 S | 03-12-2002 | Lee | |
| | | US- D456,139 S | 04-30-2002 | Hohlbein | |
| | | US- D457,323 S | 05-21-2002 | Hohlbein | |
| MS | | US- D457,325 S | 05-21-2002 | Wilson et al. | |
| | | US- D458,453 S | 06-11-2002 | Baertschi | |

| Examiner Signature | *[signature]* | Date Considered | 8-5-05 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/08a (08-03)
Approved for use through 07/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

| Sheet | 3 | Of | 4 |
|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number - Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| MT | | US- D459,086 S | 06-25-2002 | Belton et al. | |
| | | US- D461,313 S | 08-13-2002 | Hohlbein | |
| | | US- D462,178 S | 09-03-2002 | Moskovich et al. | |
| | | US- D462,527 S | 10-10-2002 | Ping | |
| | | US- D462,528 S | 10-10-2002 | Crossman et al. | |
| | | US- D463,131 S | 09-24-2002 | Winter et al. | |
| | | US- D463,132 S | 09-24-2002 | Winter et al. | |
| | | US- D463,133 S | 09-24-2002 | Hohlbein | |
| | | US- D463,668 S | 10-01-2002 | Yoshimoto et al. | |
| | | US- D468,302 S | 12-03-2002 | Ping | |
| | | US- D467,430 S | 12-24-2002 | Ping | |
| | | US- D469,958 S | 02-11-2003 | Salndon et al. | |
| | | US- D474,608 S | 05-20-2003 | Hohlbein | |
| | | US- D475,531 S | 06-10-2003 | Klimeck et al. | |
| | | US- D476,158 S | 06-24-2003 | Ling | |
| | | US- D476,487 S | 07-01-2003 | Salndon et al. | |
| | | US- D478,211 S | 08-12-2003 | Ping | |
| | | US- D478,213 S | 08-12-2003 | Ping | |
| | | US- D478,424 S | 08-19-2003 | Salndon et al. | |
| | | US- D478,425 S | 08-19-2003 | Ping | |
| | | US- D478,727 S | 08-26-2003 | Wong | |
| | | US- D478,728 S | 08-26-2003 | Wong | |
| | | US- D479,047 S | 09-02-2003 | Wong | |
| | | US- D479,914 S | 09-30-2003 | Choong | |
| | | US- D480,213 S | 10-07-2003 | Ping | |
| | | US- D480,214 S | 10-07-2003 | Kling et al. | |
| | | US- D480,877 S | 10-21-2003 | Crossman et al. | |
| | | US- D482,199 S | 11-18-2003 | De Salvo | |
| | | US- D483,569 S | 12-16-2003 | Wong | |
| | | US- D485,989 S | 02-03-2004 | Winkler | |
| | | US- D486,649 S | 02-17-2004 | Sprosta et al. | |
| ↓ | | US- D487,165 S | 03-02-2004 | Winkler | |
| MS | | US- D488,621 S | 04-20-2004 | Wong | |

| Examiner Signature | *Mark Trunel* | Date Considered | 8-5-05 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

O I P E JC32
NOV 16 2004

PTO/SB/08a (08-03)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

## INFORMATION DISCLOSURE STATEMENT BY APPLICANT

(Use as many sheets as necessary)

| | Complete if Known |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

| Sheet | 4 | Of | 4 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number Number - Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS                     CL.

| Examiner Initials* | Cite No.¹ | Foreign Patent Document Country Code³ - Number⁴ - Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| MS | | WO 00/64306 | 11-02-2000 | Georgi | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | [signature] | Date Considered | 8-9-2005 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Sheet 1 of 1

| EXAMINED | U.S. DEPARTMENT OF COMMERCE | ATTY. DOCKET NO. | | SERIAL NO. | |
|---|---|---|---|---|---|
| REV. 7-80 | PATENT AND TRADEMARK OFFICE | 6989-01 | | 10/902,257 | |
| JUN 0 2 2005 | | APPLICANT | | | |
| | LIST OF ART CITED BY APPLICANT | Hohlbein et al | | | |
| | (Use several sheets if necessary) | FILING DATE | | GROUP | |
| | | 7/30/2004 | | Not Yet Assigned | |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | YES | NO |
| MS | | WO 2003/005855 A1 | 1/23/2003 | PCT | — | — | | |

### OTHER PRIOR ART (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | | |
|---|---|---|---|
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | 8-9-2005 |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

I hereby certify that this correspondence is being deposited with the U.S. Postal Service as First Class Mail in an envelope addressed to Commissioner of Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

## Index of Claims

| Field | Value |
|---|---|
| Application/Control No. | 10/902,257 |
| Applicant(s)/Patent under Reexamination | HOHLBEIN, DOUGLAS J. |
| Examiner | Mark Spisich |
| Art Unit | 1744 |

| Symbol | Meaning |
|---|---|
| √ | Rejected |
| = | Allowed |
| − | (Through numeral) Cancelled |
| ÷ | Restricted |
| N | Non-Elected |
| I | Interference |
| A | Appeal |
| O | Objected |

| Claim (Final) | Claim (Original) | Date 8/10/05 |
|---|---|---|
| | 1 | √ |
| | 2 | |
| | 3 | |
| | 4 | |
| | 5 | |
| | 6 | |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |
| | 26 | |
| | 27 | |
| | 28 | |
| | 29 | |
| | 30 | |
| | 31 | |
| | 32 | |
| | 33 | |
| | 34 | |
| | 35 | |
| | 36 | |
| | 37 | |
| | 38 | |
| | 39 | |
| | 40 | |
| | 41 | |
| | 42 | |
| | 43 | |
| | 44 | |
| | 45 | |
| | 46 | |
| | 47 | |
| | 48 | |
| | 49 | √ |
| | 50 | √ |

| Claim (Final) | Claim (Original) | Date |
|---|---|---|
| | 51 | √ |
| | 52 | √ |
| | 53 | |
| | 54 | |
| | 55 | |
| | 56 | |
| | 57 | |
| | 58 | |
| | 59 | |
| | 60 | |
| | 61 | |
| | 62 | |
| | 63 | |
| | 64 | |
| | 65 | |
| | 66 | |
| | 67 | |
| | 68 | |
| | 69 | |
| | 70 | |
| | 71 | |
| | 72 | |
| | 73 | |
| | 74 | |
| | 75 | |
| | 76 | |
| | 77 | |
| | 78 | |
| | 79 | |
| | 80 | |
| | 81 | |
| | 82 | |
| | 83 | |
| | 84 | |
| | 85 | |
| | 86 | |
| | 87 | |
| | 88 | |
| | 89 | |
| | 90 | |
| | 91 | |
| | 92 | |
| | 93 | |
| | 94 | |
| | 95 | |
| | 96 | |
| | 97 | |
| | 98 | |
| | 99 | |
| | 100 | |

| Claim (Final) | Claim (Original) | Date |
|---|---|---|
| | 101 | |
| | 102 | |
| | 103 | |
| | 104 | |
| | 105 | |
| | 106 | |
| | 107 | |
| | 108 | |
| | 109 | |
| | 110 | |
| | 111 | |
| | 112 | |
| | 113 | |
| | 114 | |
| | 115 | |
| | 116 | |
| | 117 | |
| | 118 | |
| | 119 | |
| | 120 | |
| | 121 | |
| | 122 | |
| | 123 | |
| | 124 | |
| | 125 | |
| | 126 | |
| | 127 | |
| | 128 | |
| | 129 | |
| | 130 | |
| | 131 | |
| | 132 | |
| | 133 | |
| | 134 | |
| | 135 | |
| | 136 | |
| | 137 | |
| | 138 | |
| | 139 | |
| | 140 | |
| | 141 | |
| | 142 | |
| | 143 | |
| | 144 | |
| | 145 | |
| | 146 | |
| | 147 | |
| | 148 | |
| | 149 | |
| | 150 | |

U.S. Patent and Trademark Office

Part of Paper No. 08092005

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

CONFIRMATION NO. 1397

Bib Data Sheet

| SERIAL NUMBER 10/902,257 | FILING DATE 07/30/2004 RULE | CLASS 015 | GROUP ART UNIT 1744 | ATTORNEY DOCKET NO. 006427.00042 |
|---|---|---|---|---|

APPLICANTS

   Douglas J. Hohlbein, Pennington, NJ;

** CONTINUING DATA *************************** *M S*
   This application is a CIP of PCT/US03/29497 09/17/2003
   which claims benefit of 60/412,290 09/20/2002
   This application 10/902,257
   is a CIP of 29/189,729 09/10/2003

** FOREIGN APPLICATIONS ********************

   N O N E

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 09/20/2004

| Foreign Priority claimed ☐ yes ☑ no 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance Verified and Acknowledged *mm* Examiner's Signature *MS* Initials | STATE OR COUNTRY NJ | SHEETS DRAWING 6 | TOTAL CLAIMS 52 | INDEPENDENT CLAIMS 5 |
|---|---|---|---|---|

ADDRESS
30751
BANNER & WITCOFF, LTD., ATTORNEYS FOR RESERVE
CLIENT NO. 3
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON , DC
20001-4597

TITLE
Oral care implement

| FILING FEE | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |

*IFW*

Certificate of First Class Mailing

I hereby certify that this paper, along with any other paper or fee referred to in this paper, as being transmitted herewith, is being deposited with the United States Postal Service with sufficient postage as First-Class Mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on this 31st day of May, 2005.

By: _____
Tracy Cavallaro

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Hohlbein et al | Art Unit: | NOT YET ASSIGNED |
| Serial No.: | 10/902,257 | Examiner: | NOT YET ASSIGNED |
| Filed: | July 30, 2004 | Confirmation No.: | 1397 |
| For: | ORAL CARE IMPLEMENT | Attorney Docket No.: | 6989-01 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT
*(References cited within 3 months of filing date or before mailing of first office action)*

Dear Sir:

Pursuant to the guidelines of 37 CFR 1.97 to 1.98, listed on the accompanying form PTO-1449 are items of information to be considered by the Examiner. These references are found on the European Search report recently received by applicants' attorney for the EPO counterpart case. A copy of the search report is enclosed. The U.S. references listed have been cited in earlier disclosure statements sent to the United States Patent Office.

I hereby certify that each item of information contained in this information disclosure statement and cited in the attached form PTO-1449 is being cited within three (3) months from the filing date or before the mailing of the first Office Action, hence, no fee or certification is required.

However, in the event that this information disclosure statement is crossing in the mail with the first Office Action, the Commissioner is hereby authorized to charge the required fee of $180.00 to our Deposit Account No. 03-2455. The Commissioner is also hereby authorized to charge any additional fees which may be necessary to Deposit Account No. 03-2455.

06/03/2005 JBALINAN 00000103 032455    10902257
01 FC:1806    180.00 DA

Respectfully submitted,

Harris A. Wolin
Reg. No. 39,432

**CUSTOMER NUMBER 23909**
Phone (732) 878-6341

Sheet 1 of 1

| FORM PTO-830 U.S. DEPARTMENT OF COMMERCE REV. 7-80 PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. | SERIAL NO. |
|---|---|---|
| | 6989-01 | 10/902,257 |
| LIST OF ART CITED BY APPLICANT *(Use several sheets if necessary)* | APPLICANT<br><br>Hohlbein et al | |
| | FILING DATE<br><br>7/30/2004 | GROUP<br><br>Not Yet Assigned |

JUN 0 2 2005

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | YES | NO |
| | | WO 2003/005855 A1 | 1/23/2003 | PCT | | | | |

## OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | | |
|---|---|---|---|
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

I hereby certify that this correspondence is being deposited with the U.S. Postal Service as First Class Mail in an envelope addressed to Commissioner of Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

JA00250




(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
23 January 2003 (23.01.2003)

PCT

(10) International Publication Number
WO 03/005855 A1

(51) International Patent Classification⁷: A46B 5/02, B25G 1/10

(21) International Application Number: PCT/GB02/03188

(22) International Filing Date: 11 July 2002 (11.07.2002)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
0117073.7     13 July 2001 (13.07.2001)     GB

(71) Applicant and
(72) Inventor: HEAVENOR, Glen [GB/GB]; 118 Queens Drive, Glasgow G42 8BG (GB).

(74) Agent: KENNEDYS PATENT AGENCY LIMITED; Floor 5, Queens House, 29 St. Vincent Place, Glasgow G1 2DT (GB).

(81) Designated States (national): AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DZ, EC, EE, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD, MG, MK, MN, MW, MX, MZ, NO, NZ, OM, PH, PL, PT, RO, RU, SD, SE, SG, SI, SK, SL, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VN, YU, ZA, ZM, ZW.

(84) Designated States (regional): ARIPO patent (GH, GM, KE, LS, MW, MZ, SD, SL, SZ, TZ, UG, ZM, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE, SK, TR), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

Published:
— with international search report
— before the expiration of the time limit for amending the claims and to be republished in the event of receipt of amendments

For two-letter codes and other abbreviations, refer to the "Guidance Notes on Codes and Abbreviations" appearing at the beginning of each regular issue of the PCT Gazette.

(54) Title: POSITIONAL GUIDING AID



(57) Abstract: A positional guiding aid for incorporation on the handle of a hand-controlled apparatus. The aid comprises a protuberance over which a user repositions their grip during use of the hand-controlled apparatus so as to provide the user with increased comfort and dexterity of use of the apparatus. A variety of example embodiments are provided such as a toothbrush, rotary cutter, radial hairbrush, pushchair and writing instrument.

WO 03/005855 A1

BEST AVAILABLE COPY

JA00251

WO 03/005855                                    PCT/GB02/03188

1

## Positional guiding aid

The present invention relates to hand held aids to assist
in the operation of hand controlled apparatus. More
particularly the invention relates to a positional
guiding aid for incorporation on a handle to provide the
user with increased comfort and dexterity of use of the
apparatus to which the handle is attached.

When presented with an apparatus which has a handle, and
in particular when the handle has a shaft, a user will
tend to provide a hammer like grip to the shaft. This
grip can generally be described as wrapping the fingers
around the shaft of the handle while resting the thumb
over the fingers or preferably placing the pad of the
thumb on a longitudinal axis of the shaft. Such a grip
tightly holds the apparatus while operation of the
apparatus is achieved by movements of the wrist and by a
limited down force provided by the thumb against the

BNSDOCID: <WO     0300585A1 I >

WO 03/005855  PCT/GB02/03188

2

1  longitudinal axis. When the thumb presses down on the

2  longitudinal axis a lever is set up between the pad of

3  the thumb and the third and fourth digits of the same

4  hand. Due to the longitudinal alignment of the thumb and

5  the third and fourth digits in this position only a

6  limited amount of leverage and hence torque can be

7  applied through the handle without the use of the wrist.

8

9  The study of ergonomics has taught us that if we can

10  reduce the amount of wrist movement in operating

11  apparatus we can reduce the amount of cramp experienced

12  by a user and make handling the apparatus more

13  comfortable. Ergonomic handles have tended to change the

14  shape of the handle to suit the users palm and finger

15  morphology contacting the handle. Additionally thumb rest

16  positions have been provided on handles to increase the

17  area to which the thumb may apply a torque to operate the

18  apparatus. Thus the handle is made to fit the form of the

19  hand, sometimes referred to as "form fitting". By form

20  fitting a user will grip the handle at a single position,

21  "locking" their hand in position and the form fitting

22  prevents them from manipulating the handle within their

23  hand during use. Though these handles provide a more

24  comfortable grip they do not assist in manipulation of

25  the apparatus as the wrist must still do the work and

26  further they are limited in that they must be made to fit

27  a users hand size and match a left or right handed grip.

28

29

BNSDOCID: <WO_____0300S855A1_I_>

WO 03/005855

PCT/GB02/03188

3

1  Much work has been done in providing an ergonomic handle

2  for a toothbrush where a head of bristles must be

3  controllably manipulated against the teeth of a user.

4  Most toothbrushes now have a planar surface on the

5  longitudinal axis of the handle, which includes a widened

6  portion for a thumb rest at the top of the handle towards

7  the bristles. When a user grips the handle, their third

8  and fourth digits rest on the planar surface, while the

9  thumb is positioned on the thumb rest. Manipulation of

10  the bristles is achieved by shifting the thumb to one

11  side of the longitudinal axis and applying pressure by

12  the thumb or the third and fourth digits to cause the

13  handle and thus the bristles to rotate. This occurs as a

14  lever is set up between the position of the thumb on the

15  rest and the third and fourth digits on the planar

16  surface. The balance point of the lever is a position on

17  the palm of the hand, typically the third joint of the

18  second finger. These toothbrushes require the user to

19  have above average dexterity as the handle must be

20  balanced to achieve controlled rotation of the handle

21  while pressure must be applied evenly. In fact most users

22  will tend to adopt the position of having the thumb on

23  the longitudinal axis and manipulate the brush with the

24  wrist. While this is adequate for short term use, as you

25  would expect for a toothbrush, it limits the length of

26  time other utensils can be comfortably operated.

27  Additionally it is generally only appropriate to utensils

28  with a working surface i.e. the bristles, being coplanar

29  to the planar surface on which the thumb and digits rest.

BNSDOCID: <WO    0300585541_1_>



4

1　For apparatus such as toothbrushes and razors where the
2　apparatus requires to be used at a preferred angle or
3　tilt, a hand-held utensil is described in International
4　Patent Application No WO 97/44164. This utensil includes
5　a handle having a moulded thumb rest which spirals from a
6　first position substantially central to the longitudinal
7　axis of the handle to a second position substantially
8　outside the longitudinal axis of the handle, the spiral
9　being formed in the direction of off-set of the head or
10　tool portion as it approaches the head of the utensil.
11　While this handle encourages a user of the utensil to
12　present the head or tool to an article at a preferred
13　angle or tilt, it has a number of disadvantages, namely,
14　as the thumb rest spirals from the longitudinal axis the
15　thumb is positioned close to the axis giving limited
16　rotation to the handle in use, additionally the head must
17　be mounted in an off-set position to the handle and thus
18　the utensil has a handedness such that right and left
19　handed versions must be made.

20

21　It is an object of at least one embodiment of the present
22　invention to provide a positional guiding aid which in
23　combination with a handle provides a lever action to a
24　user for increased comfort of use of the apparatus to
25　which the handle is connected.

26

27　It is a further object of at least one embodiment of the
28　present invention to provide a positional guiding aid
29　which allows a user to advantageously continuously

BNSDOCID: <WO_____03005855A1_I_>

WO 03/005855                                             PCT/GB02/03188

5

1   reposition there grip of a handle to which the aid is

2   attached.

3

4   It is yet a further object of at least one embodiment of

5   the present invention to provide a positional guiding aid

6   which in combination with a handle provides both right

7   and left handed persons with an increased dexterity of

8   movement of an apparatus attached to the handle.

9

10  According to a first aspect of the present invention

11  there is provided a positional guiding aid for

12  incorporation on a handle of an apparatus, the aid

13  comprising a substantially rounded protuberance, the

14  protuberance including an upper surface and a lower

15  surface being parts of a single continuous surface over

16  the protuberance, the upper surface including a first

17  axis located thereon at a displacement angle from a

18  longitudinal axis of the handle, the first axis being

19  perpendicular to a second axis also located on the upper

20  surface, and the upper surface arranged on a portion of a

21  double helix defined by rotation of the second axis

22  around the first axis.

23

24  As the aid is a protuberance as opposed to a thumb rest,

25  a user may apply any finger or thumb to any location on

26  the surface of the protuberance to effect a first point

27  on a lever. The opposing point on the lever will be

28  defined by the point of intersection between the first

29  axis and the longitudinal axis where the displacement

6

1   angle is formed. Thus a user may adopt any grip position

2   on the handle which is most comfortable to them.

3

4   The substantially rounded continuous surface of the aid

5   allows a user to continuously adjust the first point on

6   the lever and so provide increased manipulation of the

7   apparatus without wrist movement.  Thus the aid allows a

8   user to advantageously continuously reposition their grip

9   of a handle to which the aid is attached.

10

11  Additionally as the user can place any finger or thumb at

12  any location on the surface of the protuberance there is

13  no handedness to the protuberance and thus apparatus

14  including the aid may equally be used by a right handed

15  or left handed individual.

16

17  Displacement of the protuberance from the longitudinal

18  axis of a handle to which it is attached provides

19  increased leverage for the user and hence increased

20  manipulation of the apparatus to which the handle is

21  attached.

22

23  Preferably a width of the protuberance defined by a

24  length of the second axis on the upper surface is greater

25  than a thickness of the protuberance defined as a

26  distance between the upper and lower surfaces. This

27  encourages a user to select a first point on the lever at

28  a distance from the longitudinal axis and thereby obtain

29  increased leverage of the apparatus.  Additionally, the

BNSDOCID: <WO_____03005855A1_I_>

7

1    user will naturally centre their digit, thumb or finger

2    on the protuberance.

3

4    Preferably the lower surface is arranged parallel to the

5    upper surface. So, like the upper surface, the lower

6    surface will also lie on a double helix which provides a

7    comfortable and stable surface on which a users fingers

8    or thumb may rest.

9

10   Preferably the displacement angle is an acute angle.

11   Advantageously the displacement angle is in the range 5

12   to 45 degrees. Selection of the displacement angle may be

13   by an inverse relationship to the distance between the

14   point of intersection of the first axis and the

15   longitudinal axis, and the point of intersection of the

16   first and second axis.

17

18   According to a second aspect of the present invention

19   there is provided a handle for use on hand controlled

20   apparatus, the handle including a positional guiding aid

21   according to the first aspect of the present invention.

22

23   Preferably the handle comprises a shaft on the

24   longitudinal axis. Preferably the shaft includes a

25   substantially planar surface parallel to the longitudinal

26   axis. More preferably the planar surface is arranged such

27   that the point of intersection between the first axis and

28   the longitudinal axis where the displacement angle is

29   formed lies thereon.

WO 03/005855

⊕    ⊕    PCT/GB02/03188

8

1   Thus, in use, the opposing point on the lever is on the
2   planar surface which will increase the dexterity of
3   manipulation of the handle and consequently the hand held
4   utensil by a user. This is achieved as that part of a
5   users hand, typically the third and fourth digits,
6   located at the opposing point will remain stationary as
7   that part of the users hand, typically the thumb, located
8   at the first point of the lever will be continuously
9   repositioned over the surface of the protuberance between
10  extreme positions between which the handle and thus the
11  article will rotate.

12

13  The shaft may include a plurality of substantially planar
14  surfaces parallel to the longitudinal axis.
15  Advantageously, the shaft includes three substantially
16  planar surfaces parallel to the longitudinal axis. Such a
17  triangular cross-sectional handle provides better
18  leverage as the user requires less grip to manipulate the
19  handle.

20

21  According to a third aspect of the present invention
22  there is provided a hand controlled apparatus, the
23  apparatus comprising a moveable portion and at least one
24  handle to effect movement of the moveable portion,
25  wherein the at least one handle is according to the
26  second aspect.

27

28  Thus the apparatus of the present invention may be any
29  hand controlled apparatus currently in use but which

BNSDOCID: <WO_____03005855A1_I_>

1    incorporates the positional guiding aid of the first

2    aspect onto the at least one handle.

3

4    Preferably the apparatus has one handle. Embodiments of

5    such apparatus include vacuum cleaners and walking sticks

6    together with all hand-held utensils such as brushes,

7    cooking utensils, sports racquets and writing

8    instruments. Alternatively the apparatus may include two

9    handles. Embodiments of such apparatus include

10    wheelchairs, lawnmowers, prams and pushchairs.

11

12    Preferably the moveable portion includes at least one

13    longitudinal axis located adjacent an attachment point to

14    the at least one handle. Preferably the at least one

15    longitudinal axis of the moveable portion is co-linear

16    with the longitudinal axis of the at least one handle. An

17    embodiment of such an apparatus would be a conductors

18    baton.

19

20    Alternatively the at least one longitudinal axis of the

21    moveable portion may be offset with respect to the

22    longitudinal axis of the handle. An embodiment of such an

23    apparatus would be an angled toothbrush.

24

25    Preferably the moveable portion includes a working

26    section, the working section being defined as that part

27    of the moveable portion which requires to be manipulated

28    by the user. The working section may be a surface of the

29    moveable portion. Embodiments of such apparatus may be

WO 03/005855  PCT/GB02/03188

10

1    hairbrushes, toothbrushes, paint brushes, and writing

2    instruments. Where the working section is on a plane

3    parallel to the longitudinal axis of the moveable portion

4    it may be advantageous to attach the moveable portion to

5    the handle such that the plane of the working section is

6    rotated on the longitudinal axes so that the plane of the

7    working section is non co-planar with the substantially

8    planar surface of the shaft of the handle. More

9    preferably the plane of the working section is on a plane

10   parallel to the plane created by the first and second

11   axis. An embodiment of such an apparatus would be a knife

12   where the cutting edge is the working section. An

13   alternative example of such an apparatus may be a

14   toothbrush.

15

16   Preferred embodiments of apparatus are radial

17   hairbrushes, pens, pencils, ski poles and the like. Such

18   apparatus is characterised in that it has a working

19   section which is operational over the majority of 360

20   degrees rotation of the handle. The additional leverage

21   and rotational control afforded by the positional guiding

22   aid provides increased use of the working section on such

23   apparatus.

24

25   Example embodiments of the present invention will now be

26   described, by way of example only, with reference to the

27   accompanying figures in which:

28

29   Figure 1 is a schematic illustration of a positional

BNSDOCID: <WO_____03005855A1_I_>

WO 03/005855  PCT/GB02/03188

11

1   guiding aid incorporated on a handle of an apparatus in

2   accordance with a first embodiment of the present

3   invention;

4

5   Figure 2 (a) and (b) are top and bottom views

6   respectively of a positional guiding aid incorporated on

7   a handle of an apparatus in accordance with a second

8   embodiment of the present invention;

9

10  Figures 3(a) and 3(b) are a side view and a perspective

11  view, respectively, of a positional guiding aid

12  incorporated on a handle of an apparatus in accordance

13  with a preferred embodiment of the present invention;

14

15  Figures 4(a) to (e) are a series of views of the

16  apparatus of Figure 3 in use; and

17

18  Figure 5 is a perspective view of positional guiding aids

19  incorporated on handles of an apparatus in accordance

20  with a fourth embodiment of the present invention;

21

22  Figures 6 is a perspective view of apparatus including a

23  positional guiding aid, in use, in accordance with a

24  fifth embodiment of the present invention, in use.

25

26  Reference is initially made to Figure 1 of the drawings

27  which illustrates an apparatus in accordance with a first

28  embodiment of the present invention. The apparatus of

29  Figure 1 is a toothbrush, generally indicated by

12

1   reference numeral 10. Toothbrush 10 comprises a head 12

2   which is a moveable portion and a handle 14 attached

3   thereto. Located on the handle 14 is a positional guiding

4   aid 16 as will be described hereinafter. Toothbrush 10 is

5   a standard angled head toothbrush except for the aid 16.

6   Thus the longitudinal axis 18 of the head 12 is offset

7   from the longitudinal axis 22 of the shaft 20 of the

8   handle 14. The head 12 has a working section 24 formed by

9   the surface of the bristles 26.

10

11  Handle 14 comprises a shaft 20 connected to the moveable

12  portion 12. Shaft 20 has four planar surfaces 28a-d

13  arranged around the longitudinal axis 22. Extending from

14  the upper surface 28a of the shaft 20 is a positional

15  guiding aid 16. Aid 16 appears as a protuberance or

16  swelling from the handle 14. The aid 16 has an upper

17  surface 30 and a lower surface (not shown) which are

18  parts of a single continuous surface of the aid 16. The

19  aid 16 is therefore made of a material capable of taking

20  on a smoothed or polished surface such as a plastic or

21  polished wood. The aid 16 is offset from the longitudinal

22  axis 22 of the shaft 20. The off-set is provided by

23  virtue of positioning the aid on a first axis 32 which is

24  on the same plane as the surface 28a and displaced from

25  the longitudinal axis 22 by a displacement angle 34. In

26  this embodiment the displacement angle is around 15

27  degrees. On the upper surface 30 is a second axis 36

28  which is perpendicular to the first axis 32. The second

29  axis 36 extends across the upper surface 30. A

BNSDOCID: <WO_____03005855A1_I_>

1    characteristic of the protuberance is that it is arranged
2    such that the second axis 36, and thus the surface 30
3    describes part of a double helix formed by the second
4    axis 36 rotating with respect to the first axis 32. Thus
5    viewed from above the upper surface 30 of the aid 16
6    effectively forms a right handed screw. The resultant
7    edge effect between the upper 30 and lower surfaces
8    improves stability and grip of a digit or thumb as it
9    travels over the protuberance. It should also be noted
10   that in this embodiment the working section 24 is planar
11   with the surface 28a.

12

13   In use, an individual will preferably fold their hand
14   around the handle 14. It is immaterial whether they use
15   their right or left hand. In the same way it will be
16   appreciated that the aid 16 could equally positioned on
17   the opposite side of the handle 14. The individual may
18   naturally place their thumb upon the upper surface 30
19   while their third and fourth digits rest at the point the
20   displacement angle 34 originates. Part of the handle 14
21   may also rest on the individual's palm.  To manipulate
22   the bristles 26 against the teeth the user operates their
23   third and fourth digits in opposition to their thumb to
24   produce a lever which allows torque to be applied to the
25   handle 14 or aid 16. Applying torque to the aid 16 will
26   cause the toothbrush 10 to rotate in the individuals
27   hand. To ease comfort on the hand the user will tend to
28   move their thumb over the surface of the aid 16,
29   relocating it in a continuous action from the upper



14

1  surface 30 to the lower surface as the toothbrush 10 is

2  rotated. This entire action is achieved without the need

3  for the individual to rotate the wrist by any significant

4  amount. Good control can be achieved when the thumb is on

5  the lower surface as the surface provides an apparent lip

6  due to the fact that the width of the protuberance at the

7  second axis 36 is greater than the thickness of the

8  protuberance between the upper 30 and lower surfaces. The

9  entire motion and control of the toothbrush 10 is

10 achieved through relatively small loose movements of the

11 fingers and thumb as the handle 14 is gently balanced in

12 the hand. Thus there is no strain experienced by any part

13 of the individuals hand or wrist.

14

15 The toothbrush 10 also operates well if the individual

16 chooses to place a digit, for instance the first digit or

17 index finger, against the aid 16. In this configuration,

18 the third and fourth digits will rest at the origin of

19 the displacement angle 34 on the opposing surface 28c to

20 the top surface 28a of the handle 14. The thumb will

21 provide the balance point of a lever created between the

22 third/fourth digits and the first digit. The lever

23 provides rotation to the toothbrush 10 as before with the

24 first digit now continuously travelling over the surface

25 of the aid 16. This action is effected without strain to

26 the wrist.

27

28 Reference is now made to Figure 2(a) and (b) of the

29 drawings which illustrate an apparatus in accordance with

BNSDOCID: <WO_____03005855A1_I_>

15

1    a second embodiment of the present invention. The

2    apparatus of Figure 2 is a rotary pizza cutter, generally

3    indicated by reference numeral 110. Like parts to those

4    of Figure 1 have been given the same reference numeral

5    with the addition of 100. This embodiment operates in an

6    identical fashion to the embodiment of Figure 1.

7

8    The embodiment of Figure 2 illustrates a hand held

9    utensil where the longitudinal axis 118 of the moveable

10   portion 112 is co-linear with the longitudinal axis 122

11   of the handle 114. Additionally the working section 124,

12   which in this case is the edge of the blade around the

13   rotary cutter, is offset from the planar surface 128a by

14   rotation of the head 112 with respect to the handle 114.

15   This offset is required as the cutter must be presented

16   to an article, i.e. a pizza base, with the blade

17   perpendicular to the article. Unlike the articles with

18   off-set heads of the prior art, International Patent

19   Application No. WO 97/44164, this apparatus 110 can

20   equally be used with the right or left hand and can also

21   be used with a finger placed on the aid 116 as opposed to

22   a thumb as required in the prior art. In fact, for this

23   embodiment where the apparatus does not require to be

24   rotated during use, leverage can most comfortably be

25   effected by resting the index finger on the upper surface

26   130 of the aid 116 as opposed to the thumb. Use of the

27   thumb is best achieved when the thumb is rested to the

28   edge 138 of the aid 116 between the upper 130 and lower

29   140 surfaces.

WO 03/005855  PCT/GB02/03188

16

Turning now to Figures 3(a) and (b) of the drawings which
illustrate an apparatus in accordance with a preferred
embodiment of the present invention. The apparatus of
Figure 3 is a radial hairbrush, generally indicated by
reference numeral 210. Like parts to those of Figure 1
have been given the same reference numeral with the
addition of 200.

Hairbrush 210 comprises a head 212 of bristles 224
arranged radially and longitudinally to the axis 218, and
a handle 214 including a positional guiding aid 216. The
handle 214 is substantially circular in cross-section
having opposing planar faces 228a,b from a longitudinal
axis 222. The head 212 and handle 214 are co-linear. The
bristles 224 on the head 212 provide a cylindrical
working section 226 having 360 coverage around the
hairbrush 210. The positional guiding aid 216 has been
mounted on the handle 214 and thus unlike the second
embodiment the handle 214 has not been moulded to fit
with the protuberance of the aid 216. This illustrates
that an aid 216 may be incorporated onto practically any
handle. The aid 216, as described hereinbefore, is a
protuberance or swelling from the handle 214. The
protuberance is located at a displacement angle 234 with
respect to an axis 222 of the handle. The displacement
angle 234 is located at a position which reflects the
location at which the third and fourth digits will rest
on the handle 234. The profile of the aid is that of a
double helix formed from a perpendicular axis through the

BNSDOCID: <WO_____03005855A1_I_>

17

1   aid rotating with respect to the axis 232 formed from the

2   projection at the displacement angle 234.

3

4   Figures 4(a) to (e) illustrate the radial hairbrush 210

5   in use. Referring initially to Figure 4(a), the user has

6   adopted a classic grip around the handle 214 of the brush

7   210 to grasp the shaft 220. The users hand 242 is wrapped

8   around the shaft 220 with the thumb 243 resting against

9   the upper surface of the positional guiding aid (not seen

10  in this Figure). The users second, third 244 and fourth

11  digits are held against the shaft 220 with the third

12  digit 244, the ring finger, having its pad against the

13  planar surface 228a of the shaft 220. The location of the

14  third digit 244 on the planar surface 228a defines the

15  position where the displacement angle 234 (not shown)

16  originates for the location of the positioning aid 216.

17  As individual's hand sizes vary the location of the third

18  digit 244 on the origin of the displacement angle 234 is

19  not crucial and most individuals will find a comfortable

20  position for themselves around this origin. This may of

21  course lead some individuals to rest a different digit at

22  this position, but typically a digit or a thumb will

23  naturally sit comfortably at this location. With the hand

24  242 shown in the position of Figure 4(a) a lever is set

25  up between the third digit 234 on the planar surface 228a

26  and the thumb 243 on the upper surface of the positional

27  guiding aid. The balance position of this lever is in the

28  palm of the users hand 242, most likely at the third

29  joint of the second digit. By actuating the lever the

BNSDOCID: <WO      03005855A1_I_>

WO 03/005855  PCT/GB02/03188

18

1   user can pitch the angle of the brush in relation to the

2   object being brushed e.g. a head of hair. This assists

3   the user in presenting the brush 210 at the correct angle

4   to the hair, say, without adjustment of the wrist. Thus

5   while maintaining a light comfortable grip on the shaft

6   220 the user, by simply throwing the balance of the lever

7   with the thumb 243 and finger tip 244, can adjust the

8   tilt or pitch of the brush 212.

9

10  The head of the brush 212 comprises longitudinal equally

11  spaced rows of bristles. There are fourteen rows of

12  bristles in the brush 210. To aid the viewers

13  appreciation of the position of the bristles during

14  operation of the brush 210 a marker 246 has been attached

15  to the top of a single row of bristles. The marker 246 is

16  a radially mounted slip of paper. In Figure 4(a) the

17  marker 246 is seen to be located on a right hand side of

18  the brush 210.

19

20  Referring now to Figure 4(b) it can be seen that the user

21  has applied some torque to the lever at the position of

22  the third digit 244. This has caused the user to

23  reposition her grip by moving her thumb 243 across the

24  upper surface of the aid 216 towards the outer edge of

25  the aid 216. No effective movement of the users wrist has

26  been made, but the marker 246 illustrates that the

27  working section 224 of the brush has rotated through

28  approximately 60 degrees.

29

BNSDOCID: <WO_____03005855A1_I_>

WO 03/005855                                                    PCT/GB02/03188

19

1   Further application of torque through minimal pressure of

2   the third digit 224 on the planar surface 228a causes the

3   brush 210 to rotate further. This is shown in Figure

4   4(c). The thumb is now located over the edge of the aid

5   towards the lower surface of the aid. Repositioning of

6   the thumb has been achieved as a continuous action by

7   sliding the thumb over the continuous surface of the aid

8   216 in a controlled and natural manner. Again note that

9   the wrist has not been used to effect this movement and

10  is perfectly relaxed in posture.

11

12  Figure 4(d) shows the rotation achieved by the marker 246

13  when a little further controlled light pressure is

14  applied by the third digit 244 against the planar surface

15  228a. The thumb 243 is now located on the lower surface

16  of the aid 216. At this stage light pressure can be

17  applied by the thumb 243 to assist in the rotation.

18  Again note that the wrist has not been used to effect

19  this movement and is perfectly relaxed in posture.

20

21  The furthest extension of the thumb 243 without use of

22  the wrist is demonstrated in Figure 4(e). This

23  illustrates the maximum rotation achieved by the working

24  section 224 via the marker 246. In comparison to Figure

25  4(a) it can be seen that the marker has been rotated

26  through at least 180 degrees. Thus by placing a

27  positional guiding aid onto a radial hairbrush an

28  extraordinary increase in effective working area (section

29  244) can be used so increasing the sweep available to the

BNSDOCID: <WO      0300585501 1 >

WO 03/005855  PCT/GB02/03188

20

1  user as they brush their hair. In contrast prior art

2  radial brushes gripped and used by rotation of the wrist

3  typically provide a rotation limited to 45 degrees.

4

5  This advantage of increased rotation and dexterity in

6  manipulation of the brush 210 can be seen with any hand

7  held article where a 360 degree working section is

8  provided on the article and the head of the article is

9  co-linear with the handle on which the aid is mounted or

10  incorporated. Examples of such articles include pens,

11  pencils, balloon whisks, awls, walking sticks and ski

12  poles. However it will be appreciated that a large range

13  of articles exist to which the positional guiding aid

14  could be incorporated to assist a user in the manner

15  described with reference to Figures 4(a) to (e). As with

16  the other embodiments described hereinbefore, the radial

17  brush can be as effectively operated with the left or

18  right hand and by a grip which uses a different

19  arrangement of digits and/or thumb to provide the lever.

20

21  The invention is not limited to apparatus having a single

22  handle and this is illustrated in Figure 5. Dual handles

23  314a,b are shown in Figure 5 attached to an article (not

24  shown) 310 in accordance with a fourth embodiment of the

25  present invention. Like parts to those of Figure 1 have

26  been given the same reference numeral with the addition

27  of 300. Parts relating to each handle are suffixed 'a'

28  and 'b' as appropriate.

29

WO 03/005855  PCT/GB02/03188

21

1   The handles 314a,b are arranged to be attached to a

2   child's pushchair and thus point away from the body of

3   the user. The positional guiding aids 316a,b are located

4   at the distal ends of the handles 314a,b and are shown as

5   inwardly facing. The aids could equally be mounted on the

6   outside edges of the handles 314a,b. In this embodiment

7   the longitudinal axis of the article 318 is substantially

8   vertical and at an acute angle to the longitudinal axis

9   322 of the handle. The positioning of the aid 316 on the

10  handle is still on a displaced angle and has a surface on

11  a double helix as described hereinbefore with reference

12  to the earlier embodiments. The planar surface 328

13  against which the third and fourth digits rest to provide

14  one end of the lever is now located to one side of the

15  handle to provide a more comfortable position for the

16  hands during use.

17

18  This is particularly important as apparatus incorporating

19  dual handles is commonly used for long periods of time.

20  The positional guiding aids 316a,b on this article allow

21  a user to control the pushchair through small grip

22  changes in relation to the thumb positioned over the

23  surface of the aids 316a,b. Steering of the pushchair

24  becomes easier as does tilting the pushchair to raise the

25  back or front wheels to overcome obstacles such as curbs.

26

27  The arrangement of handles shown in Figure 5 could be

28  used on other articles such as wheelchairs, prams,

29  lawnmowers and shopping trolleys.

WO 03/005855  PCT/GB02/03188

22

1  Finally reference is made to Figure 6 of the drawings

2  which illustrates a writing instrument including a

3  positional guiding aid according to a fifth embodiment of

4  the present invention. The writing instrument is a pen,

5  generally indicated by reference numeral 410. Like parts

6  to those of Figure 1 have been given the same reference

7  numeral with the addition of 400. A users hand 442 has

8  been outlined on the Figure to illustrate the grip

9  adopted when using the pen 410.

10

11  Pen 410 has a shaft 420 leading to a point 424, the

12  working section, which contacts the paper or other

13  material to be written on. The shaft 420 and point 424

14  are co-linear on the longitudinal axis 422 of the handle

15  414. As with the radial hairbrush, the working section

16  424 of the pen 410 is 360 degrees around the longitudinal

17  axis 422 and additionally the point can be used on this

18  axis 422 also. The shape of the handle 414 is immaterial

19  although as described hereinbefore a triangular cross-

20  section may assist in griping the pen. As described

21  hereinbefore, a positional guiding aid 416 is mounted on

22  the shaft towards the working section 424. In this

23  embodiment the origin of the displacement angle 434 is

24  close to the working section 424 and as a result the

25  displacement angle will be approximately 45 degrees. This

26  provides an aid 416 with a distinct swelling and strongly

27  pitched surface for the double helix arrangement. The

28  lever is now established via the first digit 444 resting

29  at a point close to or on the origin of the displacement

BNSDOCID: <WO_____03005855A1_I_>

WO 03/005855                                    PCT/GB02/03188

23

1   angle 434 and the thumb positioned on the surface of the

2   aid 416. Balance is achieved via the second digit resting

3   under the pen in the view shown. Additionally the handle

4   414 rests on the side of the palm. Balance is best

5   achieved if a planar surface is located at the second

6   digit and for a triangular handle this would also

7   preferentially provide a planar surface resting against

8   the palm.

9

10  Pressure applied by the first digit 444 provides the

11  contact of the point 424 with the surface of the paper

12  being written on while movement of the thumb 443 over the

13  surface of the aid 416 provides additional control in

14  writing over that which would be experienced using a

15  standard grip on a pen without an aid 416 attached.

16

17  A further feature of the positional guiding aid 416 for

18  use on a pen 410 is that it may be moulded into a rubber

19  sleeve which can then be located on a standard pen or

20  pencil. Currently pens are manufactured with rubber

21  sleeves to assist in gripping the pen during use, but

22  these offer no rotational control in use as opposed to

23  the positional guiding aid.

24

25  The principal advantage of the present invention is that

26  it provides a positional guiding aid which allows a user

27  to continuously adjust their grip and so provide

28  increased manipulation of apparatus to which the aid is

29  incorporated without wrist movement.

BNSDOCID: <WO____0300585A1_I_>

WO 03/005855    PCT/GB02/03188

24

1 Additionally as the user can place any finger or thumb at
2 any location on the surface of the protuberance of the
3 aid there is no handedness to the protuberance and thus
4 apparatus including the aid may equally be used by a
5 right handed or left handed individual. For this reason
6 also the aid may be mounted on either side of a handle
7 making it more adaptable for incorporation on a handle.
8
9 A further advantage of the present invention is that by
10 displacement of the protuberance of the aid from the
11 longitudinal axis of a handle to which it is attached,
12 the aid provides increased leverage for the user and
13 hence increased manipulation in the form of pitch and
14 rotation of the apparatus to which the handle is
15 attached. This advantage is particularly seen for
16 apparatus having a radial working section and where the
17 moving portion is co-linear with the shaft of the handle
18 e.g. radial hairbrush.
19
20 It will be appreciated by those skilled in the art that
21 various modifications may be made to the present
22 invention without departing from the scope there of. In
23 particular a wider variety of apparatus may be adapted to
24 incorporate the positional guiding aid. For example a
25 part radial hairbrush could be made wherein the bristles
26 extend over an area equal to the rotation experienced
27 using the positional guiding aid.
28
29

BNSDOCID: <WO_____03005855A1_I_>

WO 03/005855    PCT/GB02/03188

25

1  **CLAIMS:**

2

3  1.   A positional guiding aid for incorporation on a

4       handle of an apparatus, the aid comprising a

5       substantially rounded protuberance, the protuberance

6       including an upper surface and a lower surface being

7       parts of a single continuous surface over the

8       protuberance, the upper surface including a first

9       axis located thereon at a displacement angle from a

10       longitudinal axis of the handle, the first axis

11       being perpendicular to a second axis also located on

12       the upper surface, and the upper surface arranged on

13       a portion of a double helix defined by rotation of

14       the second axis around the first axis.

15

16  2.   A positional guiding aid as claimed in Claim 1

17       wherein a width of the protuberance defined by a

18       length of the second axis on the upper surface is

19       greater than a thickness of the protuberance defined

20       as a distance between the upper and lower surfaces.

21

22  3.   A positional guiding aid as claimed in Claim 1 or

23       Claim 2 wherein the lower surface is arranged

24       parallel to the upper surface.

25

26  4.   A positional guiding aid as claimed in any preceding

27       Claim wherein the displacement angle is an acute

28       angle.

29

BNSDOCID <WO    03005855A1 I >

WO 03/005855  PCT/GB02/03188

26

5.    A positional guiding aid as claimed in Claim 4
      wherein the displacement angle is in the range 5 to
      45 degrees.

6.    A positional guiding aid as claimed in Claim 4
      wherein the displacement angle is derived by an
      inverse relationship to the distance between the
      point of intersection of the first axis and the
      longitudinal axis, and the point of intersection of
      the first and second axis.

7.    A handle for use on hand controlled apparatus, the
      handle including a positional guiding aid according
      to any one of Claims 1 to 6.

8.    A handle as claimed in Claim 7 wherein the handle
      comprises a shaft on the longitudinal axis.

9.    A handle as claimed in Claim 8 wherein the shaft
      includes a substantially planar surface parallel to
      the longitudinal axis.

10.   A handle as claimed in Claim 9 wherein the planar
      surface is arranged such that the point of
      intersection between the first axis and the
      longitudinal axis where the displacement angle is
      formed lies thereon.

27

11. A handle as claimed in any one of Claims 8 to 10
    wherein the shaft includes a plurality of
    substantially planar surfaces parallel to the
    longitudinal axis.

12. A handle as claimed in Claim 11 wherein the shaft
    includes three substantially planar surfaces
    parallel to the longitudinal axis.

13. A hand controlled apparatus, the apparatus
    comprising a moveable portion and at least one
    handle to effect movement of the moveable portion,
    wherein the at least one handle is according to any
    one of Claims 7 to 12.

14. A hand controlled apparatus as claimed in Claim 13
    wherein the apparatus has one handle.

15. A hand controlled apparatus as claimed in Claim 13
    wherein the apparatus includes two handles.

16. A hand controlled apparatus as claimed in any one of
    Claims 13 to 15 wherein the moveable portion
    includes at least one longitudinal axis located
    adjacent an attachment point to the at least one
    handle.

17. A hand controlled apparatus as claimed in Claim 16
    wherein the at least one longitudinal axis of the

BNSDOCID: <WO    03005855A1 1 >

WO 03/005855                                    PCT/GB02/03188

28

1     moveable portion is co-linear with the longitudinal

2     axis of the at least one handle.

3

4   18.   A hand controlled apparatus as claimed in Claim 16

5         wherein the at least one longitudinal axis of the

6         moveable portion is offset with respect to the

7         longitudinal axis of the handle.

8

9   19.   A hand controlled apparatus as claimed in any one of

10        Claims 13 to 18 wherein the moveable portion

11        includes a working section, the working section

12        being defined as that part of the moveable portion

13        which requires to be manipulated by the user.

14

15  20.   A hand controlled apparatus as claimed in Claim 19

16        wherein the working section is a surface of the

17        moveable portion.

18

19  21.   A hand controlled apparatus as claimed in Claim 20

20        wherein the working section is on a plane parallel

21        to the longitudinal axis of the moveable portion and

22        the moveable portion is attached to the handle such

23        that the plane of the working section is rotated on

24        the longitudinal axes so that the plane of the

25        working section is non co-planar with the

26        substantially planar surface of the shaft of the

27        handle.

28

29

BNSDOCID: <WO_____03005855A1_I_>

29

1   22. A hand controlled apparatus as claimed in Claim 21

2       wherein the plane of the working section is on a

3       plane parallel to the plane created by the first and

4       second axis.

5

6   23. A hand controlled apparatus as claimed in any one of

7       Claims 19 to 22 wherein the working section which is

8       operational to a user over a majority of a 360

9       degrees rotation of the handle.



**FIG.1**

**FIG.2(b)**

SUBSTITUTE SHEET (RULE 26)

BNSDOCID: <WO_____03005855A1_I_>



Fig. 2(a)

SUBSTITUTE SHEET (RULE 26)

BNSDOCID: <WO    03005855A1_I_>



FIG.3(a)

FIG.3(b)

SUBSTITUTE SHEET (RULE 26)

BNSDOCID: <WO_____03005855A1_I_>



FIG. 4 (a)

FIG. 4 (b)

SUBSTITUTE SHEET (RULE 26)

BNSDOCID: <WO      03005855A1_I_>

JA00284



Fig.4(c)

Fig.4(d)

Fig.4(e)

SUBSTITUTE SHEET (RULE 26)

BNSDOCID: <WO_____03005855A1_I_>



*Fig.5*



*Fig.6*

SUBSTITUTE SHEET (RULE 26)

JA00286

| INTERNATIONAL SEARCH REPORT | International Application No<br>PCT/GB 02/03188 |
|---|---|

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 7    A46B5/02    B25G1/10

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 7    A46B    B25G

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

EPO-Internal, WPI Data, PAJ

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | WO 97 44164 A (HEAVENOR GLEN)<br>27 November 1997 (1997-11-27)<br>cited in the application<br>the whole document | 1-12 |
| A | CH 266 062 A (PHILLIPS DOROTHY ELLEN)<br>15 January 1950 (1950-01-15)<br>the whole document | 1-23 |
| A | GB 2 271 738 A (WOTTON RICHARD ANTONY)<br>27 April 1994 (1994-04-27)<br>the whole document | 1-23 |
| A | US 4 380 122 A (JAGGER PETER C)<br>19 April 1983 (1983-04-19)<br>the whole document | 1-23 |

☐ Further documents are listed in the continuation of box C.    ☒ Patent family members are listed in annex.

° Special categories of cited documents:

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

Date of the actual completion of the international search

7 November 2002

Date of mailing of the international search report

15/11/2002

Name and mailing address of the ISA
European Patent Office, P.B. 5818 Patentlaan 2
NL – 2280 HV Rijswijk
Tel. (+31–70) 340–2040, Tx. 31 651 epo nl,
Fax: (+31–70) 340–3016

Authorized officer

Neiller, F

Form PCT/ISA/210 (second sheet) (July 1992)

BNSDOCID: <WO_____03005855A1_I_>

## INTERNATIONAL SEARCH REPORT

International Application No.
PCT/GB 02/03188

| Patent document cited in search report | | Publication date | Patent family member(s) | Publication date |
|---|---|---|---|---|
| WO 9744164 | A | 27-11-1997 | AU 720821 B2 | 15-06-2000 |
| | | | AU 2909497 A | 09-12-1997 |
| | | | BR 9709322 A | 11-01-2000 |
| | | | CN 1226195 A ,B | 18-08-1999 |
| | | | EP 0904179 A1 | 31-03-1999 |
| | | | WO 9744164 A1 | 27-11-1997 |
| | | | JP 2000510772 T | 22-08-2000 |
| | | | US 2001042279 A1 | 22-11-2001 |
| CH 266062 | A | 15-01-1950 | NONE | |
| GB 2271738 | A | 27-04-1994 | NONE | |
| US 4380122 | A | 19-04-1983 | AU 533364 B2 | 17-11-1983 |
| | | | AU 6242080 A | 26-03-1981 |
| | | | CA 1151860 A1 | 16-08-1983 |
| | | | DE 3035092 A1 | 02-04-1981 |
| | | | FR 2464804 A1 | 20-03-1981 |
| | | | GB 2058648 A ,B | 15-04-1981 |
| | | | HK 60587 A | 21-08-1987 |
| | | | IE 50121 B1 | 19-02-1986 |
| | | | IT 1132961 B | 09-07-1986 |
| | | | KR 8402104 Y1 | 13-10-1984 |
| | | | MY 45585 A | 31-12-1985 |
| | | | NZ 194973 A | 15-07-1983 |
| | | | SG 3786 G | 27-03-1987 |
| | | | ZA 8005756 A | 26-08-1981 |

Form PCT/ISA/210 (patent family annex) (July 1992)

BNSDOCID: <WO___0300585541_I_>

**This Page is Inserted by IFW Indexing and Scanning Operations and is not part of the Official Record**

## BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of the original documents submitted by the applicant.

Defects in the images include but are not limited to the items checked:

☑ **BLACK BORDERS**

☑ **IMAGE CUT OFF AT TOP, BOTTOM OR SIDES**

☑ **FADED TEXT OR DRAWING**

☑ **BLURRED OR ILLEGIBLE TEXT OR DRAWING**

☐ **SKEWED/SLANTED IMAGES**

☑ **COLOR OR BLACK AND WHITE PHOTOGRAPHS**

☐ **GRAY SCALE DOCUMENTS**

☑ **LINES OR MARKS ON ORIGINAL DOCUMENT**

☐ **REFERENCE(S) OR EXHIBIT(S) SUBMITTED ARE POOR QUALITY**

☐ **OTHER:** _____

**IMAGES ARE BEST AVAILABLE COPY.**
**As rescanning these documents will not correct the image problems checked, please do not report these problems to the IFW Image Problem Mailbox.**

THIS PAGE BLANK (USPTO)

PTO/SB/21 (02-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. HOHLBEIN |
| Art Unit | 3731 |
| Examiner Name | TBA |
| Attorney Docket Number | 006427.00042 |

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

Total Number of Pages in This Submission

## ENCLOSURES (check all that apply)

- [x] Fee Transmittal Form
  - [ ] Fee Attached
- [x] Amendment / Reply
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
- [ ] Extension of Time Request
- [ ] Express Abandonment Request
- [x] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Response to Missing Parts/ Incomplete Application
- [ ] Response to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [x] Petition (See attached IDS)
- [ ] Petition to Convert to a Provisional Application
- [ ] Power of Attorney, Revocation Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Request for Refund
- [ ] CD, Number of CD(s) _____

  Remarks

- [ ] After Allowance Communication to Group
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to Group (Appeal Notice, Brief, Reply Brief)
- [ ] Proprietary Information
- [ ] Status Letter
- [ ] Other Enclosure(s) *(please identify below):*

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | Darrell G. Mottley, Reg. No. 42, 912 |
|---|---|
| Signature | *Darrell G. Mottley* |
| Date | November 16, 2004 |

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below.

| Typed or printed name | | Date | |
|---|---|---|---|
| Signature | | | |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

OIPE
NOV 16 2004
PATENT & TRADEMARK

**JA00291**



IFW  V

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the Application of: | Atty. Docket No.:     006427.00042 |
| **Douglas J. Hohlbein** | |
| Serial No.:     10/902,257 | Group Art Unit:     3731 |
| Filed:          July 30, 2004 | Examiner:     TBA |
| For:          Oral Care Implement | Confirmation No.:     1397 |

## PRELIMINARY AMENDMENT

U.S. Patent and Trademark Office
220 20th Street S.
Customer Window
Crystal Plaza Two, Lobby, Room 1B03
Arlington, VA  22202

Sir:

Prior to examination of the above referenced application, please amend the instant application as follows:

**Amendments to the Claims** are reflected in the Listing of Claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

Page 1 of 1

PTO/SB/17 (10-04v2)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2005

Effective 10/01/2004. Patent fees are subject to annual revision.

Applicant claims small entity status. See 37 CFR 1.27

[Stamp: OIPE NOV 16 2004 PATENT & TRADEMARK]

| Complete if Known | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Examiner Name | TBA |
| Art Unit | 3731 |
| Attorney Docket No. | 006427.00042 |

**TOTAL AMOUNT OF PAYMENT    ($)    130**

## METHOD OF PAYMENT (check all that apply)

☐ Check  ☐ Credit card  ☐ Money Order  ☐ Other  ☐ None

☒ Deposit Account:

Deposit Account Number: **19-0733**

Deposit Account Name: **Banner & Witcoff, LTD.**

The Director is authorized to: (check all that apply)
☒ Charge fee(s) indicated below  ☒ Credit any overpayments
☒ Charge any additional fee(s) or any underpayment of fee(s)
☐ Charge fee(s) indicated below, except for the filing fee
to the above-identified deposit account.

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1001 | 790 | 2001 | 395 | Utility filing fee | |
| 1002 | 350 | 2002 | 175 | Design filing fee | |
| 1003 | 550 | 2003 | 275 | Plant filing fee | |
| 1004 | 790 | 2004 | 395 | Reissue filing fee | |
| 1005 | 160 | 2005 | 80 | Provisional filing fee | |

**SUBTOTAL (1)    ($) 0**

### 2. EXTRA CLAIM FEES FOR UTILITY AND REISSUE

| | | Extra Claims | | Fee from below | | Fee Paid |
|---|---|---|---|---|---|---|
| Total Claims | -20** | 0 | X | 0 | = | 0 |
| Independent Claims | -3** | 0 | X | 0 | = | 0 |
| Multiple Dependent | | | | 0 | X | = 0 |

| Large Entity | | Small Entity | | |
|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description |
| 1202 | 18 | 2202 | 9 | Claims in excess of 20 |
| 1201 | 88 | 2201 | 44 | Independent claims in excess of 3 |
| 1203 | 300 | 2203 | 150 | Multiple dependent claim, if not paid |
| 1204 | 88 | 2204 | 44 | **Reissue independent claims over original patent |
| 1205 | 18 | 2205 | 9 | **Reissue claims in excess of 20 and over original patent |

**SUBTOTAL (2)    ($) 0**

**or number previously paid, if greater; For Reissues, see above

## 3. ADDITIONAL FEES

### FEE CALCULATION (continued)

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1051 | 130 | 2051 | 65 | Surcharge - late filing fee or oath | |
| 1052 | 50 | 2052 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 1053 | 130 | 1053 | 130 | Non-English specification | |
| 1812 | 2,520 | 1812 | 2,520 | For filing a request for ex parte reexamination | |
| 1804 | 920* | 1804 | 920* | Requesting publication of SIR prior to Examiner action | |
| 1805 | 1,840* | 1805 | 1,840* | Requesting publication of SIR after Examiner action | |
| 1251 | 110 | 2251 | 55 | Extension for reply within first month | |
| 1252 | 430 | 2252 | 215 | Extension for reply within second month | |
| 1253 | 980 | 2253 | 490 | Extension for reply within third month | |
| 1254 | 1,530 | 2254 | 765 | Extension for reply within fourth month | |
| 1255 | 2,080 | 2255 | 1,040 | Extension for reply within fifth month | |
| 1401 | 340 | 2401 | 170 | Notice of Appeal | |
| 1402 | 340 | 2402 | 170 | Filing a brief in support of an appeal | |
| 1403 | 300 | 2403 | 150 | Request for oral hearing | |
| 1451 | 1,510 | 1451 | 1,510 | Petition to institute a public use proceeding | |
| 1452 | 110 | 2452 | 55 | Petition to revive – unavoidable | |
| 1453 | 1,370 | 2453 | 685 | Petition to revive – unintentional | |
| 1501 | 1,370 | 2501 | 685 | Utility issue fee (or reissue) | |
| 1502 | 490 | 2502 | 245 | Design issue fee | |
| 1503 | 660 | 2503 | 330 | Plant issue fee | |
| 1460 | 130 | 1460 | 130 | Petitions to the Commissioner | 130 |
| 1807 | 50 | 1807 | 50 | Processing fee under 37 CFR 1.17 (q) | |
| 1806 | 180 | 1806 | 180 | Submission of Information Disclosure Stmt | |
| 8021 | 40 | 8021 | 40 | Recording each patent assignment per property (times number of properties) | |
| 1809 | 790 | 2809 | 395 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 1810 | 790 | 2810 | 395 | For each additional invention to be examined (37 CFR § 1.129(b)) | |
| 1801 | 790 | 2801 | 395 | Request for Continued Examination (RCE) | |
| 1802 | 900 | 1802 | 900 | Request for expedited examination of a design application | |

Other fee (specify) _____

*Reduced by Basic Filing Fee Paid

**SUBTOTAL (3)    ($) 130**

| SUBMITTED BY | | | Complete (if applicable) | |
|---|---|---|---|---|
| Name (Print/Type) | Darrell G. Mottley | Registration No. (Attorney/Agent) 42,912 | Telephone | (202) 824-3000 |
| Signature | Darrell G. Mottley | | Date | 11/16/2004 |

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

This collection of information is required by 37 CFR 1.17 and 1.27. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

PATENTS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application Of:      :

     Douglas J. Hohlbein    :

Serial No.: 10/902,257      :

Filed: July 30, 2004      :

For:   Oral Care Implement    :

Group Art Unit  3731

Examiner: TBA

Attorney Docket No. 006427.00042

Confirmation No. 1397

## PETITION TO MAKE SPECIAL UNDER 37 C.F.R. §1.102(d) AND SUPPORTING INFORMATION DISCLOSURE STATEMENT

U.S. Patent and Trademark Office
220 20th Street S.
Customer Window
Crystal Plaza Two, Lobby, Room 1B03
Arlington, VA  22202

Dear Sir:

Applicant hereby petitions the Commissioner to make the above-identified application special under 37 CFR § 1.102(d) and under the guidelines of MPEP § 708.02(VIII).  Please charge the petition fee of $130.00 in accordance with 37 CFR §1.17(h) and any other fees that may be required for this Petition to Deposit Account No. 19-0733.

<u>Pre-examination Search</u>

A pre-examination search was conducted by a professional searcher in April 2004. The search was conducted in the following class and subclasses: 15, subclasses 22.1, 110, 111, 114, 143.1 159.1, 160, 167.1, 167.2, 186, 207.2, Digest 5 and Digest 6; D4/101,104, 105, 106, 107, 108, 109, 111, 112; D606/161.  The search was conducted using the U.S. Patent and

006427.00042

1

11/17/2004 SSITH1B1 00000121 190733 10902257
01 FC:1460                         130.00 DA

Trademark Office Examiner Application Search Tool (EAST) database and image retrieval system. The above-captioned application is a continuation-in-part of co-pending PCT application No. PCT/US2003/029497 published as WO 2004/036162 on April 1, 2004. A search report (copy attached) was prepared for that application by the U.S. Patent and Trademark Office.

<u>Discussion of References</u>

Applicant submits that the claims included in the above-identified application are allowable over the cited references which are deemed most closely related to the subject matter encompassed by the claims.

In particular, none of the following U.S. Patents discloses an oral care implement including a base with a gripping region and an oral engaging region; and a gripping member at least partially overlying the gripping region of the base and having a grip surface provided with at least one opening exposing a portion of the base as recited in independent claim 1.

These same patents fail to disclose or suggest an oral care implement including a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment; and a grip body extending through the base, the grip body forming opposite finger gripping surfaces on the inclined portion of the base as recited in independent claim 27.

These same patents fail to disclose or suggest an oral care implement including a base with gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and a resilient grip body disposed in the aperture and extending

006427.00042

2

JA00295

through the base to define finger gripping surfaces on opposite sides of the base, the grip body further having a centroid that is shiftable within the aperture by user pressure to opposite sides of the base as recited in independent claim 35.

These same patents fail to disclose or suggest an oral care implement including a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base, the aperture being defined by at least one inclined sidewall that defines a narrowed edge surface within the aperture; and a resilient grip body being molded into the aperture, the grip body defining grip surfaces exposed on opposite sides of the base as recited in independent claim 40.

These same patents fail to disclose or suggest an oral care implement including a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and a resilient grip body secured within the aperture to extend through the base and define a gripping surface on opposite sides of the base to be gripped by a thumb of a user and one finger, the grip body being configured to dampen the forces applied to the oral engaging region by the user holding the gripping region as recited in independent claim 47.

1,796,001 to Church

2,263,885 to W.G. McGauley

3,185,001 to Viator

4,721,021 to Kusznir

5,339,482 to Desimone et al.

5,054,154 to Schiffer et al.

5,398,369 to Heinzelman et al.

5,673,454 to Quinetanilla et al.

5,735,012 to Heinzelman et al.

5,781,958 to Meessman et al.

006427.00042

3

5,860,183 to Kam

5,875,510 to Lamond et al.

5,908,038 to Bennett

5,926,901 to Tseng et al.

6,049,936 to Holley

6,108,869 to Weihrauch

6,179,503 to Taghavi-Khanghah

6,298,516 to Beals et al.

6,332,233 to Proulx

6,601,272 to Stvartak et al.

6,687,940 to Gross et al.

Likewise, none of the following published U.S. patent applications discloses the above-noted features:

2002/0100134 to Dunn et al.

2002/0138931 to Davies

2002/0170145 to Stvartak et al.

2004/0026272 to Stvartak et al.

2001/0047556 to Weihrauch

2004/0010876 to Kraemer

Finally, these same features are also not disclosed in any of the following U.S. design patents:

D317,986 to Huang

D358,938 to Schneider et al.

D368,163 to Overthn

D371,680 to Juhlin et al.

D391,769 to Kling et al.

D412,064 to Achepohl et al.

D413,728 to Waguespack et al.

D415,352 to Beals et al.

D416,685 to Overthun

D418,979 to Moskovich et al.

D419,773 to Beals et al.

D420,802 to Cheong et al.

D420,804 to Juhlin et al.

D421,184 to Koh et al.

006427.00042

4

D421,841 to Achepohl et al.

D422,413 to Goldinger et al.

D423,270 to Choong

D429,566 to Yoshimoto et al.

D429,567 to Yoshimoto et al.

D439,412 to Volpenhein et al.

D441,958 to Rueb

D446,021 to Jen

D448,174 to Harris et al.

D448,570 to Harris et al.

D448,571 to Harris et al.

D450,457 to Hohlbien

D452,615 to Cheong et al.

D453,998 to Ping

D454,252 to Lee

D456,139 to Hohlbein

D457,323 to Holhbien

D457,325 to Wilson et al.

D457,325 to Wilson et all

D458,453 to Baertschi

D459,086 to Belton et al.

D461,313 to Hohlbien

D461,685 to Overthun

D462,178 to Moskovich et al.

D462,527 to Ping

D462,528 to Crossman et al.

D463,131 to Winter et al.

D463,132 to Winter et al.

D466,302 to Ping

D467,430 to Ping

D469,958 to Saindon et al.

D474,608 to Hohlbien

D475,487 to Saindon et al.

D475,531 to Klimeck et al.

D476,158 to Ling

D478,211 to Ping

D478,213 to Ping

D478,424 to Saindon et al.

D478,425 to Ping

D478,727 to Wong

D478,728 to Wong

D479,047 to Wong

006427.00042

5

JA00298

D479,914 to Choong

D480,213 to Ping

D480,214 to Kling et al.

D480,877 to Crossman et al.

D482,199 to De Salvo

D483,569 to Wong

D485,989 to Winkler

D486,649 to Sprosta et al.

D487,195 to Winkler

D488,621 to Wong

These same note features in claims 1, 27, 35, 40 and 47 are not disclosed in WO 00/64306. Applicant will make an election without traverse as a prerequisite to the grant of the special status, if the U.S. Patent and Trademark Office determines that all of the claims presented are not directed to a single invention.

Applicant further submits that all the requirements set forth in MPEP 708.02(VIII) are met and that this petition should be granted. A notice to this effect is earnestly solicited.

Respectfully submitted,

Dated: November 16, 2004

By: _Darrell Mottley_
Darrell G. Mottley
Registration No. 42,912

BANNER & WITCOFF, LTD.
1001 G Street, N.W.
Eleventh Floor
Washington, D.C. 20001-4597
(202) 824-3000

006427.00042

6

JA00299



PATENTS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application Of:                    :

    Douglas J. Hohlbein         :        Group Art Unit ~~3731~~ *1744*

                                            :        Examiner: TBA *Spisich, Mark*

Serial No.: 10/902,257            :

                                            :        Attorney Docket No. 006427.00042

Filed:  July 30, 2004               :

                                            :        Confirmation No. 1397

For:  Oral Care Implement       :

## PETITION TO MAKE SPECIAL UNDER 37 C.F.R. §1.102(d)
## AND SUPPORTING INFORMATION DISCLOSURE STATEMENT

U.S. Patent and Trademark Office
220 20th Street S.
Customer Window
Crystal Plaza Two, Lobby, Room 1B03
Arlington, VA  22202

Dear Sir:

    Applicant hereby petitions the Commissioner to make the above-identified application special under 37 CFR § 1.102(d) and under the guidelines of MPEP § 708.02(VIII).  Please charge the petition fee of $130.00 in accordance with 37 CFR §1.17(h) and any other fees that may be required for this Petition to Deposit Account No. 19-0733.

Pre-examination Search

    A pre-examination search was conducted by a professional searcher in April 2004. The search was conducted in the following class and subclasses: 15, subclasses 22.1, 110, 111, 114, 143.1 159.1, 160, 167.1, 167.2, 186, 207.2, Digest 5 and Digest 6; D4/101,104, 105, 106, 107, 108, 109, 111, 112; D606/161.   The search was conducted using the U.S. Patent and

006427.00042

1

11/17/2004 SSITHIB1 00000121 190733 10902257
01 FC:1460                                    130.00 DA

PETITION GRANTED

Richard Crispino
Special Program Examiner
TC1700               JUL 2 1 2005

**JA00300**

PTO/SB/08a (08-03)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | Complete If Known |
|---|---|
| Substitute for form 1449A/PTO | |
| | Application Number | 10/902,257 |
| | Filing Date | July 30, 2004 |
| **INFORMATION DISCLOSURE** | First Named Inventor | Douglas J. Hohlbein |
| **STATEMENT BY APPLICANT** | Art Unit | 3731 |
| | Examiner Name | TBD |
| (Use as many sheets as necessary) | Attorney Docket Number | 006427.00042 |

| Sheet | 1 | Of | 3 |
|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.¹ | Document Number — Number - Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 1,796,001 | 03-10-1931 | Church | |
| | | US- 2,263,885 | 05-09-1940 | W.G. McGauley | |
| | | US- 3,185,582 | 05-25-1965 | Viator | |
| | | US- 4,721,021 | 01-26-1988 | Kusznir | |
| | | US- 5,054,154 | 10-08-1991 | Schiffer et al. | |
| | | US- 5,339,482 | 08-23-1994 | Desimone et al. | |
| | | US- 5,398,389 | 03-21-1995 | Heinzelman et al. | |
| | | US- 5,673,454 | 10-07-1997 | Quintanilla et al. | |
| | | US- 5,735,012 | 04-07-1998 | Heinzelman et al. | |
| | | US- 5,781,958 | 07-21-1998 | Meessman et al. | |
| | | US- 5,860,183 | 01-19-1999 | Kam | |
| | | US- 5,875,510 | 03-02-1999 | Lamond et al. | |
| | | US- 5,908,038 | 06-01-1999 | Bennett | |
| | | US- 5,926,901 | 07-27-1999 | Tseng et al. | |
| | | US- 6,049,936 | 04-18-2000 | Holley | |
| | | US- 6,108,849 | 08-29-2000 | Weihrauch | |
| | | US- 6,108,849 | 08-29-2000 | Weihrauch | |
| | | US- 6,108,869 | 08-29-2000 | Weihrauch | |
| | | US- 6,179,503 | 01-30-2001 | Taghavi-Khanghah | |
| | | US- 6,298,516 | 10-09-2001 | Beals et al. | |
| | | US- 6,332,233 | 12-25-2001 | Proulx | |
| | | US- 6,408,476 | 06-25-2002 | Cann | |
| | | US- 6,601,272 | 08-05-2003 | Stvartak et al. | |
| | | US- 6,687,940 | 02-10-2004 | Gross et al. | |
| | | US- 2001/0047556 | 12-06-2001 | Weihrauch | |
| | | US- 2002/0100134 | 08-01-2002 | Dunn et al. | |
| | | US- 2002/0138931 | 10-03-2002 | Davies | |
| | | US- 2002/0170145 | 11-21-2002 | Stvartak et al. | |
| | | US- 2004/0010876 | 01-22-2004 | Kraemer | |
| | | US- 2004/0026272 | 02-12-2004 | Stvartak et al. | |
| | | US- | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

PTO/SB/08a (08-03)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

## INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete If Known | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

| Sheet | 2 | Of | 3 |
|---|---|---|---|

### U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.¹ | Document Number — Number - Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- D317,986 | 07-09-1991 | Huang | |
| | | US- D334,288 | 03-30-1993 | Witzig-Jaggi | |
| | | US- D358,938 | 06-06-1995 | Schneider et al. | |
| | | US- D368,163 | 03-26-1996 | Juhlin et al. | |
| | | US- D371,680 | 07-16-1996 | Tveras | |
| | | US- D376,695 | 12-24-1996 | Achepohl et al. | |
| | | US- D412,084 | 07-20-1999 | Waguespack et al. | |
| | | US- D413,728 | 09-14-1999 | Beals et al. | |
| | | US- D415,352 | 10-19-1999 | Overthun | |
| | | US- D416,685 | 11-23-1999 | Moskovich et al. | |
| | | US- D418,979 | 08-18-2000 | Moskovich et al. | |
| | | US- D419,304 | 01-25-2000 | Beals et al. | |
| | | US- D419,773 | 02-01-2000 | Cheong et al. | |
| | | US- D420,802 | 02-22-2000 | Juhlin et al. | |
| | | US- D420,804 | 02-22-2000 | Koh et al. | |
| | | US- D421,184 | 02-29-2000 | Achepohl et al. | |
| | | US- D421,841 | 03-28-2000 | Yoshimoto et al. | |
| | | US- D429,566 | 08-22-2000 | Yoshimoto et al. | |
| | | US- D429,567 | 08-22-2000 | Beals et al. | |
| | | US- D434,906 | 12-12-2000 | Volpenhein et al. | |
| | | US- D439,412 S | 03-27-2001 | Moskovich et al. | |
| | | US- D440,767 S | 04-24-2001 | Rueb | |
| | | US- D441,958 S | 05-15-2001 | Jen | |
| | | US- D446,021 | 08-07-2001 | Tang | |
| | | US- D447,238 S | 08-28-2001 | Harris et al. | |
| | | US- D449,174 S | 09-25-2001 | Harris et al. | |
| | | US- D449,570 S | 10-02-2001 | Harris et al. | |
| | | US- D449,571 S | 10-02-2001 | Hohlbein | |
| | | US- D450,457 S | 11-20-2001 | Cheong et al. | |
| | | US- D452,615 S | 01-01-2002 | Choong | |
| | | US- D453,270 S | 02-05-2002 | Ping | |
| | | US- D453,998 S | 03-05-2002 | Lee | |
| | | US- D454,252 S | 03-12-2002 | Hohlbein | |
| | | US- D456,139 S | 04-30-2002 | Hohlbein | |
| | | US- D457,323 S | 05-21-2002 | Wilson et al. | |
| | | US- D457,325 S | 05-21-2002 | Baertschi | |
| | | US- D458,453 S | 06-11-2002 | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

OIPE
NOV 16 2004
PATENT & TRADEMARK

PTO/SB/08a (08-03)
Approved for use through 07/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

(Use as many sheets as necessary)

| Sheet | 3 | Of | 4 |
|-------|---|----|----|

| Complete If Known | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

## U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.¹ | Document Number — Number - Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- D459,086 S | 06-25-2002 | Belton et al. | |
| | | US- D461,313 S | 08-13-2002 | Hohlbein | |
| | | US- D462,178 S | 09-03-2002 | Moskovich et al. | |
| | | US- D462,527 S | 10-10-2002 | Ping | |
| | | US- D462,528 S | 10-10-2002 | Crossman et al. | |
| | | US- D463,131 S | 09-24-2002 | Winter et al. | |
| | | US- D463,132 S | 09-24-2002 | Winter et al. | |
| | | US- D463,133 S | 09-24-2002 | Hohlbein | |
| | | US- D463,668 S | 10-01-2002 | Yoshimoto et al. | |
| | | US- D466,302 S | 12-03-2002 | Ping | |
| | | US- D467,430 S | 12-24-2002 | Ping | |
| | | US- D469,958 S | 02-11-2003 | Saindon et al. | |
| | | US- D474,608 S | 05-20-2003 | Hohlbein | |
| | | US- D475,531 S | 06-10-2003 | Klimeck et al. | |
| | | US- D476,158 S | 06-24-2003 | Ling | |
| | | US- D476,487 S | 07-01-2003 | Saindon et al. | |
| | | US- D478,211 S | 08-12-2003 | Ping | |
| | | US- D478,213 S | 08-12-2003 | Ping | |
| | | US- D478,424 S | 08-19-2003 | Saindon et al. | |
| | | US- D478,425 S | 08-19-2003 | Ping | |
| | | US- D478,727 S | 08-26-2003 | Wong | |
| | | US- D478,728 S | 08-26-2003 | Wong | |
| | | US- D479,047 S | 09-02-2003 | Wong | |
| | | US- D479,914 S | 09-30-2003 | Choong | |
| | | US- D480,213 S | 10-07-2003 | Ping | |
| | | US- D480,214 S | 10-07-2003 | Kling et al. | |
| | | US- D480,877 S | 10-21-2003 | Crossman et al. | |
| | | US- D482,199 S | 11-18-2003 | Da Salvo | |
| | | US- D483,569 S | 12-16-2003 | Wong | |
| | | US- D485,989 S | 02-03-2004 | Winkler | |
| | | US- D486,649 S | 02-17-2004 | Sprosta et al. | |
| | | US- D487,195 S | 03-02-2004 | Winkler | |
| | | US- D488,621 S | 04-20-2004 | Wong | |
| | | | | | |
| | | | | | |
| | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

JA00303

PTO/SB/08a (08-03)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| | Complete If Known |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | 3731 |
| Examiner Name | TBD |
| Attorney Docket Number | 006427.00042 |

| Sheet | 4 | Of | 4 |
|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.[1] | Document Number — Number - Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials * | Cite No.[1] | Foreign Patent Document Country Code[3] - Number[4] - Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | WO 00/64306 | 11-02-2000 | Georgi | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



WORLD INTELLECTUAL PROPERTY ORGANIZATION
International Bureau

## PCT

### INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

| (51) International Patent Classification 7 : | A1 | (11) International Publication Number: | WO 00/64306 |
|---|---|---|---|
| A46B 5/02, B29C 45/16 | | (43) International Publication Date: | 2 November 2000 (02.11.00) |

(21) International Application Number: PCT/EP00/03728

(22) International Filing Date: 20 April 2000 (20.04.00)

(30) Priority Data:
9909101.9      22 April 1999 (22.04.99)      GB

(71) Applicant (for all designated States except US): SMITHKLINE BEECHAM GMBH & CO KG [DE/DE]; Hermannstrasse 7, D–77815 Buhl (Baden) (DE).

(72) Inventors; and
(75) Inventors/Applicants (for US only): GEORGI, Matthias [DE/DE]; SmithKline Beecham GmbH & Co KG, Hermannstrasse 7, D–77815 Buhl (Baden) (DE). KRÄMER, Hans [DE/DE]; SmithKline Beecham GmbH & Co KG, Hermannstrasse 7, D–77815 Buhl (Baden) (DE).

(74) Agent: WALKER, Ralph, Francis; SmithKline Beecham, Two New Horizons Court, Brentford, Middlesex TW8 9EP (GB).

(81) Designated States: AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BY, CA, CH, CN, CR, CU, CZ, DE, DK, DM, DZ, EE, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD, MG, MK, MN, MW, MX, NO, NZ, PL, PT, RO, RU, SD, SE, SG, SI, SK, SL, TJ, TM, TR, TT, TZ, UA, UG, US, UZ, VN, YU, ZA, ZW, ARIPO patent (GH, GM, KE, LS, MW, SD, SL, SZ, TZ, UG, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, CH, CY, DE, DK, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, GW, ML, MR, NE, SN, TD, TG).

Published
    With international search report.
    Before the expiration of the time limit for amending the claims and to be republished in the event of the receipt of amendments.

(54) Title: TOOTHBRUSH



(57) Abstract

    A toothbrush made partly of a hard plastic material and partly of an elastomeric material, characterised in that at least part of the elastomeric material comprises an inner core (23) of a first, soft elastomeric material wholly or partly enclosed within an outer flexible skin (24) of a second polymer material having different physical characteristics to the inner core polymer. Processes for making such a toothbrush are also described.

*FOR THE PURPOSES OF INFORMATION ONLY*

Codes used to identify States party to the PCT on the front pages of pamphlets publishing international applications under the PCT.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|
| AL | Albania | ES | Spain | LS | Lesotho | SI | Slovenia |
| AM | Armenia | FI | Finland | LT | Lithuania | SK | Slovakia |
| AT | Austria | FR | France | LU | Luxembourg | SN | Senegal |
| AU | Australia | GA | Gabon | LV | Latvia | SZ | Swaziland |
| AZ | Azerbaijan | GB | United Kingdom | MC | Monaco | TD | Chad |
| BA | Bosnia and Herzegovina | GE | Georgia | MD | Republic of Moldova | TG | Togo |
| BB | Barbados | GH | Ghana | MG | Madagascar | TJ | Tajikistan |
| BE | Belgium | GN | Guinea | MK | The former Yugoslav | TM | Turkmenistan |
| BF | Burkina Faso | GR | Greece | | Republic of Macedonia | TR | Turkey |
| BG | Bulgaria | HU | Hungary | ML | Mali | TT | Trinidad and Tobago |
| BJ | Benin | IE | Ireland | MN | Mongolia | UA | Ukraine |
| BR | Brazil | IL | Israel | MR | Mauritania | UG | Uganda |
| BY | Belarus | IS | Iceland | MW | Malawi | US | United States of America |
| CA | Canada | IT | Italy | MX | Mexico | UZ | Uzbekistan |
| CF | Central African Republic | JP | Japan | NE | Niger | VN | Viet Nam |
| CG | Congo | KE | Kenya | NL | Netherlands | YU | Yugoslavia |
| CH | Switzerland | KG | Kyrgyzstan | NO | Norway | ZW | Zimbabwe |
| CI | Côte d'Ivoire | KP | Democratic People's | NZ | New Zealand | | |
| CM | Cameroon | | Republic of Korea | PL | Poland | | |
| CN | China | KR | Republic of Korea | PT | Portugal | | |
| CU | Cuba | KZ | Kazakstan | RO | Romania | | |
| CZ | Czech Republic | LC | Saint Lucia | RU | Russian Federation | | |
| DE | Germany | LI | Liechtenstein | SD | Sudan | | |
| DK | Denmark | LK | Sri Lanka | SE | Sweden | | |
| EE | Estonia | LR | Liberia | SG | Singapore | | |

PCT/EP00/03728

WO 00/64306

## Toothbrush

This invention relates to toothbrushes, in particular to toothbrushes made of two construction materials being a hard plastic and a softer elastomeric material.

5      Such toothbrushes are known. For example EP 0 336 641 A discloses a toothbrush having elastomeric material grip-enhancing pads on its handle. WO 92/17092 discloses a toothbrush having elastomeric material parts forming a flexible link between its head and its handle. WO 92/017093 discloses a toothbrush having elastomeric material parts in its head, thereby modifying the flexibility at its head. DE 3923495 A discloses a toothbrush having elastomeric material inserts in cut-outs
10     between the handle and neck region, also to modify flexibility. EP 0310482 discloses a toothbrush having elastomeric material parts around its head as a soft buffer to absorb impact forces between the head and the mouth of the user. EP 0371293 A discloses a toothbrush having elastomeric material parts in its neck. WO 94/05183 discloses a toothbrush having elastomeric material parts in one, two or three places in
15     its handle, neck and head. Other parts of the head, handle and neck region of the above-mentioned toothbrushes are made of hard plastic materials. The above-mentioned disclosures are only examples of many in the literature. Two component toothbrushes of this type have been made and sold commercially for many years, for example the applicant's Dr BEST™ and AQUAFRESH ™ range of toothbrushes.
20     The above-mentioned two component toothbrushes are made by a process of injection moulding in which the hard plastic parts are first injection moulded to form a frame or skeleton having cavities which define the position, size and shape of the elastomeric material parts to be formed therein, and in which cavities the elastomeric material parts are subsequently formed by a second injection moulding of fluid
25     elastomeric material. Such a process is described for example in WO 94/05183.

A problem with known two-component toothbrushes of this type is that the elastomeric materials which are used need to be relatively soft, for example to enable them to fulfil their function of forming soft grip handles, flexible links or soft buffers.
30     Soft elastomeric materials are relatively vulnerable to physical damage during use, e.g. due to impact with and abrasion from tooth surfaces or other surfaces. Soft elastomeric material s tend to be absorbent, and consequently when such toothbrushes

- 1 -

JA00307

PCT/EP00/03728

WO 00/64306

are used, especially when they are exposed to detergents, soaps or toothpastes, moisture and dirt etc, their elastomeric material parts can absorb these substances. As a consequence these elastomeric material parts can deteriorate, become discoloured or dirty, and such absorbed substances can be difficult to remove by cleaning.

5          It is an object of this invention to offer a solution to this problem.

           According to this invention a toothbrush is provided comprising a handle, a head on which are mounted bristles, with optionally a neck region between the head and handle, the toothbrush being made partly of a hard plastic material and having at least one part made of an elastomeric material, characterised in that at least part of the

10   at least one elastomeric material part comprises an inner core of a soft elastomeric material wholly or partly enclosed within an outer flexible skin of a polymer material having different physical characteristics to the inner core material.

           The term "elastomeric" material as used herein includes natural and synthetic elastomeric materials which have a semi-rigid rubbery nature, i.e. being soft and

15   resilient to the touch, deforming under hand pressure and springing, preferably rapidly, back to substantially or exactly its original shape on release of the hand pressure. The term also includes polymers which are not inherently of a rubbery nature but which are rendered rubbery in nature by for example foaming or other treatment.

20          By "soft" herein is meant deforming under the pressure of the hand, particularly under pressures applied during normal use of the toothbrush in brushing the users teeth.

           The outer skin should be a flexible skin, so that the elastomeric core material can deform as pressure is applied to the outer skin and transmitted to the core

25   elastomeric material via the skin. It is desirable that the outer polymer skin binds with, preferably has good bonding characteristics to, the hard plastic material of the toothbrush.

           The physical characteristics of the inner core and the skin polymer may differ in various ways. The skin may be a polymer material which is harder than the soft

30   core elastomeric material. Additionally or alternatively the skin material may be a polymer material which is more resistant to physical damage or penetration by absorption of substances than the core elastomeric material as mentioned above.

- 2 -

JA00308

PCT/EP00/03728

WO 00/64306

Additionally or alternatively the skin polymer material may have better surface properties than the core elastomeric material, e.g. having better tactile properties or being more easy to print upon than the core elastomeric material. Additionally or alternatively the core and skin may differ in quality, e.g. the inner core elastomeric material being a relatively cheap, low quality recycled elastomeric material and the

5   outer skin material may be a higher quality, e.g. non-recycled polymer. For example there may be an inner core of a less dense, or soft or easily damaged or absorbent elastomeric material and an outer skin of a material which is denser or relatively less soft or more resistant to damage or less absorbent. The inner core elastomeric material may be a cheap elastomeric material, e.g. a recycled low quality e.g. easily damaged,

10   elastomeric material, and the outer skin may be a thin skin of an expensive polymer of high quality or having desirable surface properties high quality. In this way the superior surface properties of the more expensive polymer may be enjoyed whilst minimising the quantity used.

15        By means of the invention the elastomeric material parts of the toothbrush may benefit from the softness of the core elastomeric material, e.g. in providing a comfortable grip, in forming a flexible region in the toothbrush, or in providing a soft buffer around the head, whilst the outer skin can provide a coating having advantageous properties, e.g. of physical resistance, resistance to absorption of

20   substances, hand-feel, or of printing onto its surface. The outer skin can enhance the bonding of the elastomeric material and hard plastic parts of the toothbrush as this bonding can be made between the outer skin and the hard plastic parts, and a polymer material may be selected for the outer skin which has better bonding characteristics with the hard plastic material than the core elastomeric material.

25        In the toothbrush of this invention the elastomeric material part(s) may be in any or all of the parts where elastomeric material is at present used in two-component toothbrushes of the state of the art. For example the elastomeric material part(s) may comprise a pad on the grip handle, a flexibility modifying region, for example in the handle, neck or head or between the handle and neck or the neck and the head, or a

30   soft buffer around the head. The elastomeric material part is preferably a pad on the grip handle. The toothbrush of the invention may also incorporate parts which are

- 3 -

PCT/EP00/03728

WO 00/64306

made of conventional elastomeric material, i.e. of soft elastomeric material throughout without the less soft coating skin.

The outer skin and inner core elastomeric material polymers should preferably be compatible to encourage bonding between them. The outer skin and inner core

5  materials may be inherently compatible, or alternatively they may be of materials which are modified to be compatible with each other.

The outer skin polymer may be an elastomeric or non elastomeric material.

For example the inner core material and the skin material may comprise the same polymer, i.e. including the same monomeric units, but including different

10  additives or quantities of additives to give the core and skin materials such different physical characteristics.

For example the core and outer skin may comprise the same polymer, i.e. both being an elastomeric material and comprising the same monomer units, but being different grades of the same polymer. For example such different grades may differ in

15  their relative density, softness, resistance to damage or ability to absorb environmental substances or other characteristics.

The core and outer skin may be different polymers, i.e. comprising different monomer units or different combinations of monomer units.

In a preferred embodiment the core comprises a foamed elastomeric material.

20  With such a core the outer skin may be an elastomeric material or a non-elastomeric material. If the skin in this embodiment is an elastomeric material it may be the same elastomeric material as the core but in a different grade, e.g. harder, more resistant or higher quality than the core. Such an elastomeric skin, whether or not it is the same elastomeric material as the core, may be a non-foamed elastomeric material, or it may

25  be a foamed elastomeric material having different characteristics, e.g. different void characteristics, to the inner core material so as to give the outer skin different properties to the inner core, e.g. so as to make the outer skin more dense, less soft and/or more resistant to penetration or absorbency than the inner polymer. For example a higher number of gas bubbles per unit volume in such a foamed polymer

30  can result in a softer polymer than a lower number of gas bubbles per unit volume. For example the difference in void characteristics may comprise the skin having a lower number of gas bubbles per unit volume than the core.

- 4 -

JA00310

PCT/EP00/03728

WO 00/64306

Suitable elastomeric materials for use as the core polymer include thermoplastic elastomer ("TPE") materials, for example compounds based on styrenic block copolymers such as styrene-ethylene-butadiene-styrene (SEBS) copolymers, e.g. the material Thermolast-K™ (available from Gummiwerk Kraiburg GmbH & Co,

5   Germany), polyblends based on EPDM/PP such as the material Sarlink™ (available from DSM Thermoplastic Elastomers NL), or polyacrylate/PP blends such as the material Pacrel™ (available from Optatech Corporation, Suomi), thermoplastic polyurethanes such as Desmopan™ (available from Bayer AG, Germany), thermoplastic copolyesters such as Hytrel™ (available from Du Pont De Nemours,

10   USA) natural or synthetic latex type elastomers such as Baystal S™ or Baypren Latex™ (available from Polymer Latex, DE), polychloroprenes such as Baypren™ (available from Bayer AG, DE), natural rubber and foamed polymers such as polyurethane foams. Preferably such core polymers are used in a foamed form, e.g. incorporating a dispersion of gas bubbles in their structure.

15   A core of a foamed material such as a foamed elastomeric material may be formed in situ in an injection mould cavity by incorporating into the elastomeric material, such as a known TPE material, a foaming agent, such as the known foaming agents Exocerol AB40E™ or Hydrocerol™, typically at 1-2.5 weight %, typically 2% of the former or 1.5% of the latter. These foaming agents generate a gas on heating to

20   elevated temperatures, typically those used for injection moulding, and if such a foaming agent is included in the elastomeric material, then when it is injected in a heated state into the mould, the foaming agent will form bubbles within the elastomeric material, resulting in a foam.

Suitable polymers for the outer polymer skin include the above-mentioned

25   elastomeric materials in non-foamed or other grades of foaming e.g. having a lower number of gas bubbles per unit volume than the core. This may be achieved by using an elastomeric material without a foaming agent, or with less foaming agent than the core material, or a different foaming agent than the core which generates less gas bubbles. Other suitable polymers for the skin include the above-mentioned

30   elastomeric materials with different hardness, resistance etc. to the core, and inherently harder polymers different to such elastomers, e.g. polypropylenes,

- 5 -

JA00311

polyamides (such as Nylon™), polyurethanes etc. Preferred polymers for the outer skin are those which bind with the hard plastic material of the toothbrush. For example the polymer for the outer skin may be chemically similar to the hard plastic material of the toothbrush. A suitable combination of inner and outer polymers is an

5      inner core of a thermoplastic elastomer and an outer skin of the same thermoplastic elastomer in a less soft grade, preferably being a thermoplastic elastomer which binds to the hard plastic material. Thermolast-K™ is such an elastomer, and is known for use in two-component toothbrushes where it is bonded to the hard plastic material of the toothbrush.

10     Suitably if the inner elastomeric polymer is a relatively soft elastomer and the outer skin is a relatively less soft polymer, e.g. a foamed elastomer core and a non foamed or less foamed elastomer skin, the inner core polymer may have a hardness of ca. Shore A 5 to 30 preferably ca. 20 - 20, and the outer skin may have a hardness of ca. Shore A 65 ± 5. The thickness of the outer skin may vary from application to

15     application but typically a thickness of 100 microns to 1.5 mm may be used. It will be appreciated by those skilled in the art that the shape and size of a toothbrush will inevitably impose dimensional constraints, for example only a relatively thin outer skin may be possible in some parts of the toothbrush where only a relatively thin mass of the elastomeric parts may be used.

20     Suitably the elastomeric part(s) of the toothbrush may comprise part(s) of a grip handle in which the elastomer is of sufficient thickness, i.e. from their outer surface to the hard plastic internal skeleton, that the elastomer parts resiliently deform under the pressure of a gripping hand, so that the grip handle has a soft hand feel. For example the elastomer parts of the toothbrush may have a thickness of 3 mm – 1.5 cm,

25     e.g. 5 mm – 1.0 cm. A suitable grip handle having thick elastomer regions of this type is known for example from WO 97/29663 the contents of which are included herein by reference.

The hard plastics material of the other parts of the toothbrush may be made of any plastics material which is used at present in the manufacture of toothbrushes,

30     particularly in the manufacture of two component toothbrushes which incorporate parts of elastomeric material, and in which the elastomeric parts and plastics parts are bonded together. Suitable hard plastics include polypropylenes such as

- 6 -

PCT/EP00/03728.

WO 00/64306

Polypropylenes P 1600™ (Shell) and Apryl 3400 MA1 from Elf Atochem, Novolene 1100 HX™ (BASF), and polyamides such as Ultramil B3™ (BASF). Polypropylenes for example bond readily with Thermolast-K™. Such hard plastics materials typically have a hardness Shire R 80-100.

5      The hard plastic parts of the toothbrush may be made in a first stage by a conventional process of injection moulding as is common in the art and has long been used for making toothbrushes. In this first stage the hard plastic part(s) of the toothbrush are made, typically in the form of a "skeleton" or "frame" of the plastics material is made, having one or more cavities therein corresponding to the intended

10     position(s) and dimensions of the elastomeric material part(s).

The elastomer parts may then be made in a second stage by containing the so plastic material part(s) in a second mould having one or more cavities therein corresponding to the intended position of the elastomeric material part(s), then forming the elastomer part(s) by injection of the fluid elastomeric material into the

15     one or more cavities. Such a process is for example described in WO 94/05183. Suitable conditions of temperature and pressure etc. for the injection moulding process to achieve a bond between the plastic material skeleton and the elastomer material injected into the mould are known in the art, for example as used currently to make two-component toothbrushes.

20     The elastomer parts of the present invention, having an inner core and an outer skin, may be formed by the known injection moulding process of "sandwich moulding" also called the "skin/core" method, in which the elastomeric material part(s) is/are formed by an injection moulding process in which at least two materials being the materials of the skin and core are injected into a mould cavity

25     simultaneously or successively in such a way that the injected polymer is in the form of an inner core and an outer skin. This process is known from the technical literature. Suitable processes and moulding equipment for such a sandwich moulding process are for example disclosed in US 5789033 and US 5798069, the contents of which are incorporated herein by way of reference. In sandwich moulding, a core is introduced

30     into an outer skin component. This process takes place in two or three stages. First the material of the outer skin is injected into the mould cavity to partially fill the cavity with a mass of the material of the outer skin, and then the core component is injected

- 7 -

into the mass of introduced skin material to fill and "inflate" the skin material. To finish off, a closure can be produced with the first, i.e. the skin component near the sprue (the point in the cavity at which the materials are injected). This prevents the core material remaining on the surface and at the same time cleans the system for the

5   next shot of polymer to be injected into the mould. US 5789033 and US 5798069 disclose sandwich moulding processes in which opposed gating injection is used, i.e. the core and skin materials are injected into the mould cavity via respective separate injection nozzles. Sandwich moulding processes are also known in which a single nozzle is used to inject both skin and core materials. Hot runner injection moulding

10  equipment is generally preferred for the sandwich moulding process.

Suitable injection moulding machinery for sandwich injection moulding is available from *inter alia* Mannesman Demag (Germany). The operating conditions, e.g. temperature, pressure, flow rate etc. conditions of the sandwich moulding process are preferably selected such that the elastomer part outer skin material bonds to the

15  plastic material of the toothbrush, "skeleton" or "frame" referred to above. Such conditions can be determined by practice in the art.

For example in a sandwich moulding process suitable for making the toothbrush of the present invention a skeleton or frame may be made as described above and this skeleton or frame may be enclosed in a second mould having cavities

20  therein corresponding to the intended position of the elastomer parts, then the skin material, e.g. a material such as those described above, for example an elastomeric material, may be injected into the cavity, typically in an amount comprising ca 20-30% of the total cavity volume. Then the core material, e.g. a material such as those described above, for example an elastomeric material, e.g. the same elastomeric

25  material as the skin material and containing a foaming agent may be injected into the cavity to form the core, and the core material fills and inflates the skin. Suitably if the core material includes a foaming agent expansion of the core material within the mould may occur as a result of the temperature of the mould. If the core material is a foaming elastomer, e.g. includes a foaming agent, then a quantity of such a core

30  material may be injected into the cavity such that the combined volume of skin and core materials fills ca. 50-70%, e.g 60% of the cavity, and the expansion of the core

- 8 -

WO 00/64306

PCT/EP00/03728

material as foaming occurs may then cause sufficient expansion that the core and skin materials fill the cavity.

Alternatively the elastomer parts of the present invention, having an inner core and an outer skin, may be formed by an injection moulding process that employs
5   internal foaming of an injected elastomer material to generate both skin and core. For example an elastomer material such as those described above may have incorporated into it a foaming agent, such as those described above. These foaming agents generate a gas on heating to elevated temperatures, typically those used for injection moulding, and if such a foaming agent is included in the elastomeric material, then when it is
10   injected in a heated state into the mould, the foaming agent will form bubbles within the elastomeric material, resulting in a foam. However an injection mould for a toothbrush is normally made of a heat conducting metal and will normal include cooling fluid channels in its metal mould blocks to rapidly cool the toothbrush formed therein. Consequently the outer parts of the moulded elastomer being in contact with
15   the metal mould cavity surfaces can be arranged to cool more rapidly so as to foam less, resulting in an outer skin in a non foamed state or in a less foamed state than the inner core parts of the material further away from the metal walls of the mould cavity.

Accordingly this invention further provides an injection moulding process for making a toothbrush comprising hard plastic and elastomeric material parts, in
20   which a hard plastic material "skeleton" or "frame" is provided having one or more cavities therein corresponding to the intended position of the elastomeric part(s), this skeleton or frame is located within a mould having one or more cavities corresponding to the intended position of the elastomeric parts, and the elastomeric part(s) are formed within the said mould cavities by an injection process which
25   forms an inner core of a soft elastomeric material wholly or partly enclosed within an outer skin of a second polymer material. The injection process is preferably a sandwich moulding or foaming process.

The invention further provides a mould suitable for use in such an injection moulding process, having cavities therein corresponding to the intended position of
30   the elastomeric parts, and provided with means to carry out a sandwich moulding process therein. The mould is suitably provided with injection ports to facilitate a sandwich moulding process.

- 9 -

WO 00/64306                                          PCT/EP00/03728

The invention further provides a mould suitable for use in such an injection moulding process, having cavities therein corresponding to the intended position of the elastomeric parts, suitable for injecting an elastomeric material which includes an internal foaming agent therein.

5      The invention will now be described by way of example only, referring to:

Fig. 1 which shows a toothbrush according to this invention.

Fig. 2 which shows an enlarged cross section through part of the toothbrush of Fig. 1.

Fig. 3 which shows an enlarged cross section through an alternative

10    construction of part of the toothbrush of Fig. 1.

Fig. 4 which shows the sandwich moulding process used for making a toothbrush of Fig. 1.

Referring to Fig. 1 a toothbrush is shown in longitudinal section, comprising a handle 1, a head 2 on which are mounted bristles 3, and a neck region 4 between the

15    handle 1 and head 2. The toothbrush of Fig. 1 is made partly of a hard polypropylene material, which is in the form of a frame 5 having cavities 6 therein, and partly of parts 7, 8, 9, 10, 11, 12 which comprise an elastomeric material. The cavities 6 are in positions which correspond to the positions of the elastomeric material parts 7-12.

Part 7 is a grip pad on the handle 1. Part 8 is a flexible link between the

20    handle 1 and neck 4 of the toothbrush comprising an aperture in the hard plastic material which is occupied by the elastomeric material. Part 9 is a flexible link in the toothbrush neck 4, part 10 is a flexible link between the head 2 and neck 4 of the toothbrush 2 comprising apertures in the hard plastic material of the neck which are occupied by the elastomeric material. Parts 11 are flexible links in the head 2 of the

25    toothbrush, each comprising a widthways extending groove being occupied by the elastomeric material. Part 12 is a soft buffer around the head 2, comprising a projecting rim around the head 2.

Each of parts 7-12 comprises an elastomeric core made of a soft thermoplastic elastomeric material of hardness Shore A ca 5; and an outer enclosing skin of a less

30    soft grade of the same thermoplastic elastomeric material. Two alternative structures of the elastomeric material parts 7-12 are shown in Figs. 2 and 3.

- 10 -

JA00316

PCT/EP00/03728

WO 00/64306

Referring to Fig. 2, a cross section through the part 7 of the toothbrush of Fig. 1 which is circled in Fig. 1 is shown, although sections through other elastomeric parts shown in Fig. 1 would be identical. Fig. 2 shows part 21 of the plastic material of the toothbrush. The elastomeric material part 22 comprises a core 23 of a first soft

5    elastomeric material polymer material and an outer skin 24 of a second polymer. The second polymer of the outer skin 24 is a flexible polymer which is harder and less permeable than the elastomeric material of the core. At the interface 25 between the elastomeric material part 22 and the plastic material 21 the outer polymer skin 24 is bonded to the plastic material 21. The elastomeric material parts 7-12 are formed by a

10   process of sandwich moulding.

Referring to Fig. 3, a cross section through the part 7 of the toothbrush of Fig. 1 which is circled in Fig. 1 is shown, although sections through other elastomeric parts shown in Fig. 1 would be identical. Fig. 3 shows part 31 of the plastic material of the toothbrush. The elastomeric material part 32 is a soft foamed thermoplastic

15   elastomeric material, i.e. within which there are numerous internal bubbles 33. As is shown in Fig. 3 the extent of foaming decreases towards the outer surface 34 of the elastomeric material part 32, and the part 35 of the elastomeric material part 32 immediately adjacent to the outer surface 34 is essentially non-foamed. Consequently the outer parts 35 of the polymer layer are less soft than the inner core part closer to

20   the plastic parts 31. At the interface 36 between the elastomeric material part 32 and the hard plastic material part 31 these parts are bonded together.

The elastomeric material part 32 has been formed by positioning the hard plastic parts 31 in the cavity of a injection mould (not shown), and injecting an elastomeric material which includes a foaming agent into the cavity under known

25   conditions such that the elastomeric material and plastic parts bond. At the temperature of the mould the foaming agent generates gas bubbles 33, but the metal walls of the mould (not shown) are a good heat conductor and the outer layers 35 of the injected elastomeric material rapidly cool down immediately after the elastomeric material is injected in so that less foaming occurs in these layers. The plastic material

30   part 31 is not as good a heat conductor as the metal injection mould (not shown) in which the elastomeric material part 32 has been formed, consequently bubbles 33 are formed in the parts of the elastomeric material 32 adjacent to the plastic parts 31.

- 11 -

JA00317

PCT/EP00/03728

WO 00/64306

The thickness of the elastomeric material part, e.g. the distance from the outer surface 34 to the plastic part 31 may be typically 3mm – 1.5 cm.

Referring to Fig. 4A, part of an injection mould 40 is shown overall, being a two part mould having two halves 41, 42 with a split line A-A, and defining a mould

5    cavity 43 between the two halves 41, 42. There is an injection gate 44, of a known type suitable for sandwich moulding. The mould 40 encloses a hard plastic part 45 of a toothbrush handle which has previously been made in a separate first stage injection moulding process. The part 45 shown is part of the grip handle of the toothbrush, with a neck 46 extending therefrom, but the head is not shown. Part of the cavity 43 is also

10    defined by a cavity in the handle part 45.

Referring to Fig. 4B a first material 47 has been injected into the cavity 43 via gate 44. The material 47 is a thermoplastic elastomer such as Thermolast-K™, and the quantity injected is sufficient to fill ca. 20-30% of the cavity 43. The moulding conditions are such that the the material 47 is injected in a hot fluid state, but cools

15    slightly in the cavity 43 to increase its viscosity.

Referring to Fig. 4C, a second material 48 has been injected into the cavity 43, in a way such that the material 48 flows into the centre of the mass of first material 47, to inflate the mass of material 47 so that the material 47 surrounds the inner core of material 47. The second material 48 is typically a thermoplastic elastomer such as

20    Thermolast-K™ but including a foaming agent such as Exocerol AB40E™ or Hydrocerol™, typically at 1-2.5 weight %, typically 2% of the former or 1.5% of the latter. The quantity of second material 48 injected is such that the combined first and second material 47, 48 occupy ca. 60% of the cavity 43. The second material 48 is of a lower viscosity than the first material 47 in the cavity 43.

25    Referring to Fig. 4D, the second material 48 has foamed under the hot conditions inside the cavity 43, and the second material 48 has consequently expanded within the skin of first material 47 so that the mass of combined first and second material fills cavity 43. The small residual hole (not shown) in the skin 47 where the second material has penetrated into the core of first material 47 has been closed by a

30    small injection of first material 47 through gate 44.

- 12 -

JA00318

WO 00/64306

PCT/EP00/03728

The conditions inside the cavity 43 are such that the first material 47 bonds to the plastic material part 45. Suitable conditions to achieve bonding are known in the art, e.g in conventional toothbrush manufacturing processes.

In Fig. 4 the sandwich moulding process shown uses a single gate 44, but it will be understood that further gates (not shown) may be provided to inject first and second materials into other parts of the toothbrush. It will also be appreciated that the process shown in Fig. 4 may be adapted for use with opposed gate techniques, although id materials 47, 48 are injected from sides of the cavity 43 on opposite sides of the handle 45, it will be necessary to provide some communication channels either through or around the part 45 to enable the core to be injected. In the manner described.

- 13 -

JA00319

PCT/EP00/03728

WO 00/64306

Claims:

1.    A toothbrush comprising a handle, a head on which are mounted bristles, with optionally a neck region between the head and handle, the toothbrush being made

5    partly of a hard plastic material and having at least one part made of an elastomeric material, characterised in that at least part of the at least one elastomeric material part comprises an inner core of a soft elastomeric material wholly or partly enclosed within an outer flexible skin of a polymer material having different physical characteristics to the inner core material.

10

2.    A toothbrush according to claim 1 characterised in that the outer polymer skin binds with the hard plastic material of the toothbrush.

3.    A toothbrush according to claim 1 or 2 characterised in that the elastomeric

15    material part is a pad on the grip handle.

4.    A toothbrush according to any one of the preceding claims characterised in that the outer skin polymer is an elastomeric material.

20    5.    A toothbrush according to any one of the preceding claims characterised in that the inner core material and the skin material comprise the same polymer.

6.    A toothbrush according to any one of claims 1-4 characterised in that the core and outer skin are different polymers.

25

7.    A toothbrush according to any one of the preceding claims characterised in that the core comprises a foamed elastomeric material.

8.    A toothbrush according to claim 7 characterised in that the outer skin is an

30    elastomeric material

- 14 -

JA00320

WO 00/64306                                                                PCT/EP00/03728

9.   A toothbrush according to claim 8 characterised in that the skin is the same elastomeric material as the core in a different grade.

10.   A toothbrush according to claim 8 or 9 characterised in that the skin is a non-
5   foamed elastomeric material, or a foamed elastomeric material having different void characteristics to the inner core material.

11.   A toothbrush according to any one of claims 1 to 10 characterised in that the core comprises a polymer selected from compounds based on styrenic block
10   copolymers, polyblends based on EPDM/PP, polyacrylate/PP blends, thermoplastic polyurethanes, thermoplastic copolyesters, natural or synthetic latex type elastomers, polychloroprenes, natural rubber, silicones, and polyurethane foams.

12.   A toothbrush according to claim 11 characterised in that the core is a foamed
15   polymer.

13.   A toothbrush according to any one of claims 1 to 7 characterised in that the outer polymer comprises a polymer selected from compounds based on styrenic block copolymers, polyblends based on EPDM/PP, polyacrylate/PP blends, thermoplastic
20   polyurethanes, thermoplastic copolyesters, natural or synthetic latex type elastomers, polychloroprenes, natural rubber, silicones, and polyurethane foams.

14.   A toothbrush according to claim 1 characterised in that the skin is selected from polypropylenes, polyamides and polyurethanes.
25

15.   A toothbrush according to any one of the preceding claims characterised in that the inner core polymer has a hardness of ca. Shore A 5 to 30.

16.   A toothbrush according to any one of the preceding claims characterised in
30   that the outer skin has a hardness of ca. Shore A 65 ± 5.

- 15 -

JA00321

WO 00/64306                                                      PCT/EP00/03728

17.    A toothbrush according to any one of the preceding claims characterised in that the thickness of the outer skin is 100 microns to 1.5 mm.

18.    A toothbrush according to any one of the preceding claims characterised in
5    that the elastomeric part(s) of the toothbrush comprise part(s) of a grip handle in which the elastomeric material has a thickness of 3 mm – 1.5 cm.

19.    A process for making a toothbrush according to any one of the preceding claims characterised in that in a first stage the hard plastic part(s) of the toothbrush
10   is/are made having one or more cavities therein corresponding to the intended position(s) and dimensions of the elastomeric material part(s), and the elastomeric material part(s) is/are made in a second stage by containing the so plastic material part(s) in a second mould having one or more cavities therein corresponding to the intended position of the elastomeric material part(s), then forming the elastomeric
15   material part(s) by injection of the fluid elastomeric material into the one or more cavities.

20.    A process according to claim 19 characterised in that the elastomeric material part(s) is/are formed by an injection moulding process in which at least two materials
20   being the materials of the skin and core are injected into a mould cavity simultaneously or successively in such a way that the injected polymer is in the form of an inner core and an outer skin.

21.    A process according to claim 20 characterised in that first the material of the
25   outer skin is injected into the mould cavity to partially fill the cavity with a mass of the material of the outer skin, and then the core component is injected into the mass of introduced skin material to fill and "inflate" the skin material.

22.    A process according to claim 20 characterised in that the skin material is
30   injected into the cavity in an amount comprising ca 20-30% of the total cavity volume, then the core material is injected into the cavity to form the core.

- 16 -

JA00322

WO 00/64306

PCT/EP00/03728

23.    A process according to any one of claims 19 to 22 characterised in that the skin material is an elastomeric material and the core material is an elastomeric material including a foaming agent.

5    24.    A process according to claim 19 characterised in that the elastomeric material part(s) is/are formed by an injection moulding process in which an elastomeric material including a foaming agent is injected into the mould cavity, and the outer parts of the moulded elastomeric material in contact with the metal mould cavity surfaces are arranged to cool more rapidly so as to foam less, resulting in an outer skin

10   in a non foamed state or in a less foamed state than the inner core parts of the material further away from the metal walls of the mould cavity.

25.    An injection mould suitable for a process as claimed in any one of claims 20 to 24.

- 17 -

JA00323

WO 00/64306

PCT/EP00/03728

1/2



Fig.1.

Fig.2.

Fig.3.

JA00324

WO 00/64306                                                    PCT/EP00/03728

2/2

### Fig.4A.



### Fig.4B.



### Fig.4C.



### Fig.4D.



SUBSTITUTE SHEET (RULE 26)

JA00325

## INTERNATIONAL SEARCH REPORT

| | Int. ...ional Application No |
|---|---|
| | PCT/EP 00/03728 |

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 7   A46B5/02      B29C45/16

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 7   A46B   B29C

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

WPI Data, PAJ, EPO-Internal

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X,P | DE 298 05 323 U (M + C SCHIFFER GMBH) | 1-4 |
| | 22 July 1999 (1999-07-22) | |
| Y | page 6, line 23 –page 9, line 10; figures | 19-21,25 |
| | 1-8 | |
| A | | 5-18, |
| | | 22-24 |
| | ----- | |
| Y | US 5 798 069 A (BERTSCHI ET AL.) | 19-21,25 |
| | 25 August 1998 (1998-08-25) | |
| | cited in the application | |
| | column 2, line 44 –column 3, line 44 | |
| | column 4, line 20 –column 5, line 42; | |
| | figures 1-4 | |
| | ----- | |
| A | WO 99 17915 A (COLGATE-PALMOLIVE COMPANY) | 1,19 |
| | 15 April 1999 (1999-04-15) | |
| | page 4, line 7 –page 9, line 16; figures | |
| | 1-7 | |
| | ----- | |
| | –/– | |

[X] Further documents are listed in the continuation of box C.    [X] Patent family members are listed in annex.

* Special categories of cited documents:

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 29 August 2000 | 07/09/2000 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL – 2280 HV Rijswijk Tel. (+31–70) 340–2040, Tx. 31 651 epo nl, Fax: (+31–70) 340–3016 | Rivero, C |

Form PCT/ISA/210 (second sheet) (July 1992)

2

page 1 of 2

INTERNATIONAL SEARCH REPORT

Inl    _ional Application No

PCT/EP 00/03728

C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT

| Category ° | Citation of document, with indication,where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | EP 0 611 533 A (JOHNSON & JOHNSON CONSUMER PRODUCTS, INC.)<br>24 August 1994 (1994-08-24)<br>column 3, line 4 -column 6, line 3;<br>figures 1-7<br>--- | 1,19 |
| A | US 5 073 220 A (MIDORIKAWA)<br>17 December 1991 (1991-12-17)<br>column 1, line 41 -column 2, line 41<br>column 3, line 15 - line 61; claim 1 | 1,19 |
| A | GB 2 050 156 A (SEREE PAKARNSEREE)<br>7 January 1981 (1981-01-07)<br>page 1, line 65 -page 2, line 32; figures 1-9<br>--- | 1 |
| A,P | US 5 934 762 A (VRIGNAUD)<br>10 August 1999 (1999-08-10)<br>column 3, line 60 -column 6, line 28;<br>figures 1-3B<br>------ | 1,19 |

2

Form PCT/ISA/210 (continuation of second sheet) (July 1992)

page 2 of 2

# INTERNATIONAL SEARCH REPORT

Information on patent family members

International Application No

PCT/EP 00/03728

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| DE 29805323 | U | 22-07-1999 | NONE | | |
| US 5798069 | A | 25-08-1998 | AT | 193860 T | 15-06-2000 |
| | | | DE | 69517471 D | 20-07-2000 |
| | | | EP | 0688652 A | 27-12-1995 |
| | | | JP | 2993866 B | 27-12-1999 |
| | | | JP | 8039609 A | 13-02-1996 |
| | | | US | 5651998 A | 29-07-1997 |
| | | | US | 5789033 A | 04-08-1998 |
| WO 9917915 | A | 15-04-1999 | AU | 9394798 A | 27-04-1999 |
| EP 611533 | A | 24-08-1994 | AT | 175325 T | 15-01-1999 |
| | | | AU | 677010 B | 10-04-1997 |
| | | | AU | 4454193 A | 18-08-1994 |
| | | | CA | 2104047 A | 17-08-1994 |
| | | | DE | 69322949 D | 18-02-1999 |
| | | | DE | 69322949 T | 29-07-1999 |
| | | | GR | 93100331 A,B | 31-10-1994 |
| | | | JP | 6245816 A | 06-09-1994 |
| | | | US | 6076223 A | 20-06-2000 |
| US 5073220 | A | 17-12-1991 | JP | 1271239 A | 30-10-1989 |
| | | | JP | 1865508 C | 26-08-1994 |
| | | | JP | 5071036 B | 06-10-1993 |
| GB 2050156 | A | 07-01-1981 | NONE | | |
| US 5934762 | A | 10-08-1999 | NONE | | |

Form PCT/ISA/210 (patent family annex) (July 1992)

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2003

Application or Docket Number: 10 902257

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 52 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 52 minus 20= | 32 |
| INDEPENDENT CLAIMS | 5 minus 3= | 2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2.

SMALL ENTITY TYPE ☐   OR   OTHER THAN SMALL ENTITY

| RATE | FEE | | RATE | FEE |
|---|---|---|---|---|
| BASIC FEE | 385.00 | OR | BASIC FEE | 770.00 |
| X$ 9= | | OR | X$18= | 576 |
| X43= | | OR | X86= | 172 |
| +145= | | OR | +290= | |
| TOTAL | | OR | TOTAL | 1518 |

## CLAIMS AS AMENDED - PART II

SMALL ENTITY   OR   OTHER THAN SMALL ENTITY

### AMENDMENT A  11-16-04

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 52 | Minus | 52 | 1 |
| Independent | 5 | Minus | 5 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | | = |
| Independent | | Minus | | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | | = |
| Independent | | Minus | | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875  (Rev. 10/03)                    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

JA00329

**Listing of Claims:**

1. (Original)   An oral care implement comprising:

  a base with a gripping region and an oral engaging region; and

  a gripping member at least partially overlying the gripping region of the base and having

  a grip surface provided with at least one opening exposing a portion of the base.

2. (Original)   The oral care implement according to claim 1, in which the gripping member comprises an elastomeric material.

3. (Original)   The oral care implement according to claim 2, in which the exposed portion of the base are recessed in the grip surface to define a cavity in the opening.

4. (Original)   The oral care implement according to claim 3, in which the base further includes at least one projection which has an outer surface, and the exposed portion of the base is the outer surface of the projection.

5. (Original)   The oral care implement according to claim 2 wherein a plurality of the openings are provided in the grip surface.

6. (Original)   The oral care implement according to claim 5, in which the grip surface further includes a concaved region disposed between each pair of adjacent openings.

7. (Original)   The oral care implement according to claim 6, in which the base further includes a plurality of projections and a base surface extending between the projections, wherein the base surface between each adjacent pair of said projections has a groove disposed between the projections, and wherein the groove is disposed below the concaved regions.

8. (Original)   The oral care implement of claim 5, in which the openings are elongate, transverse slots.

Page 2 of 2

9. (Original)   The oral care implement according to claim 8, in which the slots have varying lengths along a longitudinal direction of the gripping region.

10. (Original)  The oral care implement according to claim 5 wherein the base includes an aperture, and a resilient grip body is fixed in the aperture to define finger gripping surfaces on opposite sides of the base.

11. (Original)  The oral care implement according to claim 10, in which the exposed portions of the base are recessed in the grip surface.

12. (Original)  The oral care implement according to claim 11, in which the base includes a rear segment and a front segment that is inclined to the rear segment.

13. (Original)  The oral care implement according to claim 12 wherein the aperture is formed in the front segment.

14. (Original)  The oral care implement according to claim 2 further including an independent, resilient grip body extending through the base.

15. (Original)  The oral care implement according to claim 14, in which the grip body is of a softer material than said gripping member.

16. (Original)  The oral care implement according to claim 15 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

17. (Original)  The oral care implement according to claim 1 wherein a plurality of the openings are provided in the grip surface.

18. (Original)  The oral care implement according to claim 17, in which the exposed portions of the base are recessed in the grip surface.

Page 3 of 3

**JA00331**

19. (Original) The oral care implement according to claim 1, wherein the base includes an aperture, and a resilient grip body is fixed in the aperture to define finger gripping surfaces on opposite sides of the base.

20. (Original) The oral care implement according to claim 19 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

21. (Original) The oral care implement according to claim 1, in which the handle includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

22. (Original) The oral care implement according to claim 21, in which the first section is inclined relative to the second section.

23. (Original) The oral care implement according to claim 1, in which the exposed portion of the base is recessed in the grip surface to define a cavity in the opening.

24. (Original) The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base.

25. (Original) The oral care implement according to claim 24, in which the exposed base portions are recessed relative to the grip surface.

26. (Original) The oral care implement according to claim 1, in which the oral engaging region includes teeth cleaning elements.

27. (Original) An oral care implement comprising:
    a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment; and

Page 4 of 4

**JA00332**

a grip body extending through the base, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

28. (Original) The oral care implement according to claim 27, in which the grip body comprises an elastomeric material.

29. (Original) The oral care implement according to claim 27, in which the grip body is configured to counterbalance forces acting on the handle.

30. (Original) The oral care implement according to claim 27, in which the grip body has a hardness of about 8-24 Shore A.

31. (Original) The oral care implement according to claim 30, in which the handle further includes a resilient grip surface on the base, wherein the resilient grip surface has a hardness of about 13-50 Shore A.

32. (Original) The oral care implement according to claim 27 wherein front segment is inclined to the rear segment at about 5-40 degrees.

33. (Original) The oral care implement according to claim 27 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

34. (Original) The oral care implement according to claim 27 wherein each said finger gripping surface includes a plurality of projections.

35. (Original) An oral care implement comprising:
    a base with gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and

JA00333

a resilient grip body disposed in the aperture and extending through the base to define finger gripping surfaces on opposite sides of the base, the grip body further having a centroid that is shiftable within the aperture by user pressure to opposite sides of the base.

36. (Original)  The oral care implement according to claim 35, in which the grip body comprises an elastomeric material.

37. (Original)  The oral care implement of claim 34, in which the grip element is disposed in a widest portion of the base.

38. (Original)  The oral care implement according to claim 34, in which the grip element has hardness of about 8-24 Shore A.

39. (Original)  The oral care implement according to claim 34 wherein the aperture is defined by side surfaces that are inclined toward a central portion of the aperture to define a narrowed rounded edge surface.

40. (Currently Amended)     An oral care implement comprising:

    a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base, the aperture being defined by at least one inclined sidewall that defines a narrowed edge surface within the aperture; and

    a resilient grip body ~~fixed in~~ being molded into the aperture, the grip body defining grip surfaces exposed on opposite sides of the base.

41. (Currently Amended)     The oral care implement according to claim 40, in which the grip body comprises ~~comprising~~ an elastomeric material.

42. (Original)  The oral care implement according to claim 40, in which the handle includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

Page 6 of 6

43. (Original) The oral care implement according to claim 40 wherein the grip body has a hardness of about 8-25 Shore A.

44. (Original) The oral care implement according to claim 43, further including a grip surface on the base, the grip surface having hardness of about 13-40 Shore A.

45. (Original) The oral care implement according to claim 40 wherein the grip body has a hardness of about 11-15 Shore A.

46. (Original) The oral care implement according to claim 40, in which the grip body is disposed in the widest portion of the base.

47. (Original) An oral care implement comprising:

a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and

a resilient grip body secured within the aperture to extend through the base and define a gripping surface on opposite sides of the base to be gripped by a thumb of a user and one finger, the grip body being configured to dampen the forces applied to the oral engaging region by the user holding the gripping region.

48. (Original) The oral care implement according to claim 47 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

49. (Original) The oral care implement according to claim 47 wherein the aperture is defined by side surfaces that are inclined toward a central portion of the aperture to define a narrowed rounded edge surface.

50. (Original) The oral care implement according to claim 49 wherein the grip body defines a centroid that is shiftable to opposite sides of the rounded edge surface upon application of pressure by the user.

JA00335

51. (Original) The oral care implement according to claim 47 wherein the grip body has a hardness of about 8-25 Shore A.

52. (Original) The oral care implement according to claim 47, in which the grip element is disposed in a widest portion of the base.

JA00336

## REMARKS

It is respectfully request that the preliminary amendment be entered prior to examination on the merits. Claims 1-52 remain pending. Claim 40 and 41 have been editorially amended.

If any additional fees are required or if an overpayment is made, the Commissioner is authorized to debit or credit our Deposit Account No. 19-0733, accordingly.

Respectfully submitted,

BANNER & WITCOFF, LTD.

Dated: November 16, 2004          By:

Darrell G. Mottley
Registration No. 42,912

1001 G Street, N.W.
Washington, D.C. 20001-4597
Tel:    (202) 824-3000
Fax:    (202) 824-3001

Page 9 of 9

**JA00337**



| Banner & Witcoff Ref. No. | 006427.00042 |
| Client Ref. No. | IR 6989-01 |

## SOLE DECLARATION FOR PATENT APPLICATION

As the below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name;

I believe I am the original, first and sole inventor of the subject matter which is entitled: **ORAL CARE IMPLEMENT**, the specification of which

- ☐ is attached hereto.
- ☒ was filed on July 30, 2004, as Application Number 10/902,257 and was amended on _____ (if applicable).
- ☐ was filed under the Patent Cooperation Treaty (PCT) and accorded International Application No. _____, filed _____, and amended on _____ (if any).
- ☐ was filed under the Patent Cooperation Treaty (PCT) and accorded International Application No. _____, filed _____, and amended on _____ (if any).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I hereby acknowledge the duty to disclose information which is material to patentability in accordance with Title 37, Code of Federal Regulations, §1.56(a).

### Prior Foreign Application(s)

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application(s) for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

| Country | Application No. | Date of Filing (day month year) | Date of Issue (day month year) | Priority Claimed Under 35 U.S.C. §119 |
|---------|----------------|--------------------------------|-------------------------------|--------------------------------------|
|  |  |  |  |  |

### Prior United States Provisional Application(s)

I hereby claim priority benefits under Title 35, United States Code, §119(e)(1) of any U.S. provisional application listed below:

| U.S. Provisional Application No. | Date of Filing (day month year) | Priority Claimed Under 35 U.S.C. §119(e)(1) |
|----------------------------------|--------------------------------|---------------------------------------------|
| 60/412,290 | 20/09/2002 | Yes |
|  |  |  |

JA00338

Banner & Witcoff Ref. No.   006427.00042
Client Ref. No.           IR 6989-01

## Prior United States Application(s)

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| Application Serial No. | Date of Filing (Day/Month/Year) | Status – Patented, Pending, Abandoned |
|---|---|---|
| 29/189,729 | 10/09/2003 | Pending |
| PCT/US2003/29497 | 17/09/2003 | Pending |

## Power of Attorney

And I hereby appoint, both jointly and severally, as my attorneys with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected herewith the practitioners at:

### Customer Number: 30751

Please address all correspondence and telephone communications to the address and telephone number for this Customer Number.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Signature _____    Date _10/15/04_

Full Name of Inventor ___HOHLBEIN___   ___Douglas___   ___J.___
                Family Name      First Given Name    Second Given Name

Residence ___Pennington, New Jersey___    Citizenship ___United States of America___

Post Office Address ___45 Diverty Road, Pennington, New Jersey 08534___

PTO/SB/21 (02-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | TBD |
| Examiner Name | 3731 |
| Attorney Docket Number | 006427.00042 |

Total Number of Pages in This Submission

### ENCLOSURES *(check all that apply)*

- ☑ Fee Transmittal Form
  - ☐ Fee Attached
- ☐ Amendment / Reply
  - ☐ After Final
  - ☐ Affidavits/declaration(s)
- ☐ Extension of Time Request
- ☐ Express Abandonment Request
- ☐ Information Disclosure Statement
- ☐ Certified Copy of Priority Document(s)
- ☐ Response to Missing Parts/ Incomplete Application
- ☑ Response to Missing Parts under 37 CFR 1.52 or 1.53

- ☐ Drawing(s)
- ☐ Licensing-related Papers
- ☐ Petition
- ☐ Petition to Convert to a Provisional Application
- ☐ Power of Attorney, Revocation Change of Correspondence Address
- ☐ Terminal Disclaimer
- ☐ Request for Refund
- ☐ CD, Number of CD(s) ____

Remarks

- ☐ After Allowance Communication to Group
- ☐ Appeal Communication to Board of Appeals and Interferences
- ☐ Appeal Communication to Group *(Appeal Notice, Brief, Reply Brief)*
- ☐ Proprietary Information
- ☐ Status Letter
- ☑ Other Enclosure(s) *(please identify below):*
  Executed Declaration
  Response copy of NTFMP

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | Darrell G. Mottley, 42,912 |
|---|---|
| Signature | *[signature]* |
| Date | November 10, 2004 |

### CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below.

| Typed or printed name | | Date | |
|---|---|---|---|
| Signature | | | |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

*(stamp: NOV 1 0 2004 PATENT & TRADEMARK)*

PTO/SB/17 (10-04v2)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2005

*Effective 10/01/2004. Patent fees are subject to annual revision.*

☐ Applicant claims small entity status. See 37 CFR 1.27

| TOTAL AMOUNT OF PAYMENT | ($) | 1672 |
|---|---|---|

**Complete if Known**

| Application Number | 10/902,257 |
|---|---|
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. HOHLBEIN |
| Examiner Name | TBD |
| Art Unit | 3731 |
| Attorney Docket No. | 006427.00042 |

## METHOD OF PAYMENT (check all that apply)

☐ Check  ☐ Credit card  ☐ Money Order  ☐ Other  ☐ None

☒ Deposit Account:

| Deposit Account Number | 19-0733 |
|---|---|
| Deposit Account Name | Banner & Witcoff, LTD. |

The Director is authorized to: (check all that apply)
☒ Charge fee(s) indicated below  ☒ Credit any overpayments
☒ Charge any additional fee(s) or any underpayment of fee(s)
☐ Charge fee(s) indicated below, except for the filing fee to the above-identified deposit account.

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 1001 | 790 | 2001 | 395 | Utility filing fee | 790 |
| 1002 | 350 | 2002 | 175 | Design filing fee | |
| 1003 | 550 | 2003 | 275 | Plant filing fee | |
| 1004 | 790 | 2004 | 395 | Reissue filing fee | |
| 1005 | 160 | 2005 | 80 | Provisional filing fee | |

SUBTOTAL (1)  ($) 790

### 2. EXTRA CLAIM FEES FOR UTILITY AND REISSUE

| | | Extra Claims | | Fee from below | | Fee Paid |
|---|---|---|---|---|---|---|
| Total Claims | 52 | -20 ** = | 32 | X | 18 | = 576 |
| Independent Claims | 5 | -3 ** = | 2 | X | 88 | = 176 |
| Multiple Dependent | | | | X | | = 0 |

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description |
|---|---|---|---|---|
| 1202 | 18 | 2202 | 9 | Claims in excess of 20 |
| 1201 | 88 | 2201 | 44 | Independent claims in excess of 3 |
| 1203 | 300 | 2203 | 150 | Multiple dependent claim, if not paid |
| 1204 | 88 | 2204 | 44 | ** Reissue independent claims over original patent |
| 1205 | 18 | 2205 | 9 | ** Reissue claims in excess of 20 and over original patent |

SUBTOTAL (2)  ($) 752

**or number previously paid, if greater, For Reissues, see above

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 1051 | 130 | 2051 | 65 | Surcharge - late filing fee or oath | 130 |
| 1052 | 50 | 2052 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 1053 | 130 | 1053 | 130 | Non-English specification | |
| 1812 | 2,520 | 1812 | 2,520 | For filing a request for ex parte reexamination | |
| 1804 | 920* | 1804 | 920* | Requesting publication of SIR prior to Examiner action | |
| 1805 | 1,840* | 1805 | 1,840* | Requesting publication of SIR after Examiner action | |
| 1251 | 110 | 2251 | 55 | Extension for reply within first month | |
| 1252 | 430 | 2252 | 215 | Extension for reply within second month | |
| 1253 | 980 | 2253 | 490 | Extension for reply within third month | |
| 1254 | 1,530 | 2254 | 765 | Extension for reply within fourth month | |
| 1255 | 2,080 | 2255 | 1,040 | Extension for reply within fifth month | |
| 1401 | 340 | 2401 | 170 | Notice of Appeal | |
| 1402 | 340 | 2402 | 170 | Filing a brief in support of an appeal | |
| 1403 | 300 | 2403 | 150 | Request for oral hearing | |
| 1451 | 1,510 | 1451 | 1,510 | Petition to institute a public use proceeding | |
| 1452 | 110 | 2452 | 55 | Petition to revive – unavoidable | |
| 1453 | 1,370 | 2453 | 685 | Petition to revive – unintentional | |
| 1501 | 1,370 | 2501 | 685 | Utility issue fee (or reissue) | |
| 1502 | 490 | 2502 | 245 | Design issue fee | |
| 1503 | 660 | 2503 | 330 | Plant issue fee | |
| 1460 | 130 | 1460 | 130 | Petitions to the Commissioner | |
| 1807 | 50 | 1807 | 50 | Processing fee under 37 CFR 1.17 (q) | |
| 1806 | 180 | 1806 | 180 | Submission of Information Disclosure Stmt | |
| 8021 | 40 | 8021 | 40 | Recording each patent assignment per property (times number of properties) | |
| 1809 | 790 | 2809 | 395 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 1810 | 790 | 2810 | 395 | For each additional invention to be examined (37 CFR § 1.129(b)) | |
| 1801 | 790 | 2801 | 395 | Request for Continued Examination (RCE) | |
| 1802 | 900 | 1802 | 900 | Request for expedited examination of a design application | |

Other fee (specify) _____
*Reduced by Basic Filing Fee Paid

SUBTOTAL (3)  ($) 130

**Complete (if applicable)**

| SUBMITTED BY | | Registration No. (Attorney/Agent) | 42,912 | Telephone | (202) 824-3000 |
|---|---|---|---|---|---|
| Name (Print/Type) | Darrell G. Mottley | | | | |
| Signature | *Darrell G Mottley* | | | Date | November 10, 2004 |

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

This collection of information is required by 37 CFR 1.17 and 1.27. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing this form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*



DESIGN

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:       :
             :
 Douglas J. HOHLBEIN    :
             : Group Art Unit:  3731
Application No. 10/902,257    :
             : Examiner:  TBD
Filed:  July 30, 2004      :
             : Attorney Docket No. 006427.00042
For: ORAL CARE IMPLEMENT  :

### RESPONSE TO NOTICE TO FILE MISSING PARTS

Mail Stop Missing Parts
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

Sir:

   Attached herewith is an executed Declaration of the inventor for the above- identified

Patent Application in compliance with the Notice to File Missing Parts (copy enclosed) mailed

September 22, 2004.

   Please find enclosed a Fee Transmittal Sheet in the amount of $1672.00 for the

application filing fees.  The calculation is as follows:

|  |  |
|---|---|
| Basic Fee | $ 790.00 |
| Additional Claim Fee | $ 752.00 |
| Surcharge for subsequent filing of executed Declaration | $ 130.00 |
| **Total** | **$1672.00** |

   However, if the calculated fee is not correct, you are authorized to charge any additional

fee or credit any overpayment to our Deposit Account No. 19-0733.

**JA00342**

U.S. Application No. 10/902,257    -2-    Attorney Docket No. 006427.00042

Respectfully submitted,

Date: <u>November 10, 2004</u>    By: _____

Darrell G. Mottley
Registration No. 42,912

BANNER & WITCOFF, LTD
1001 G Street, N.W.
Eleventh Floor
Washington, D.C. 20001
(202) 824-3000

Page 1 of 2



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 006427.00042 |

CONFIRMATION NO. 1397

30751
BANNER & WITCOFF, LTD., ATTORNEYS FOR RESERVE
CLIENT NO. 3
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON, DC 20001-4597

FORMALITIES LETTER

*OC000000013851669*

Date Mailed: 09/22/2004

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 770 to complete the basic filing fee for a non-small entity. If appropriate, applicant may make a written assertion of entitlement to small entity status and pay the small entity filing fee (37 CFR 1.27).*
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- Additional claim fees of $748 as a non-small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.

**SUMMARY OF FEES DUE:**

Total additional fee(s) required for this application is $1648 for a Large Entity

```
11/12/2004 STEUKEL1 00000057 190733   10902257
01 FC:1001        790.00 DA
02 FC:1202        576.00 DA
03 FC:1201        176.00 DA
04 FC:1051        130.00 DA
```

- $770 Statutory basic filing fee.
- $130 Late oath or declaration Surcharge.

Page 2 of 2



- Total additional claim fee(s) for this application is $748

  - $172 for **2** independent claims over 3.
  - $576 for **32** total claims over 20.

Replies should be mailed to:    Mail Stop Missing Parts

                                     Commissioner for Patents

                                     P.O. Box 1450

                                     Alexandria VA 22313-1450

*A copy of this notice __MUST__ be returned with the reply.*

S. Givens

Customer Service Center
Initial Patent Examination Division (703) 308-1202

PART 2 - COPY TO BE RETURNED WITH RESPONSE

PTO/SB/21 (02-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. Hohlbein |
| Art Unit | TBD |
| Examiner Name | 3731 |
| Attorney Docket Number | 006427.00042 |

Total Number of Pages in This Submission

### ENCLOSURES *(check all that apply)*

- ☑ Fee Transmittal Form
  - ☐ Fee Attached
- ☐ Amendment / Reply
  - ☐ After Final
  - ☐ Affidavits/declaration(s)
- ☐ Extension of Time Request
- ☐ Express Abandonment Request
- ☐ Information Disclosure Statement
- ☐ Certified Copy of Priority Document(s)
- ☐ Response to Missing Parts/ Incomplete Application
- ☑ Response to Missing Parts under 37 CFR 1.52 or 1.53

- ☐ Drawing(s)
- ☐ Licensing-related Papers
- ☐ Petition
- ☐ Petition to Convert to a Provisional Application
- ☐ Power of Attorney, Revocation Change of Correspondence Address
- ☐ Terminal Disclaimer
- ☐ Request for Refund
- ☐ CD, Number of CD(s) _____
  - Remarks

- ☐ After Allowance Communication to Group
- ☐ Appeal Communication to Board of Appeals and Interferences
- ☐ Appeal Communication to Group (Appeal Notice, Brief, Reply Brief)
- ☐ Proprietary Information
- ☐ Status Letter
- ☑ Other Enclosure(s) *(please identify below):*
  Executed Declaration
  Response copy of NTFMP

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | Darrell G. Mottley, 42,912 |
|---|---|
| Signature | *[signature]* |
| Date | November 10, 2004 |

### CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below.

| Typed or printed name | | Date | |
|---|---|---|---|
| Signature | | | |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

*[Stamp: OIPE NOV 1 0 2004 PATENT & TRADEMARK OFFICE]*

PTO/SB/17 (10-04v2)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2005

*Effective 10/01/2004. Patent fees are subject to annual revision.*

☐ Applicant claims small entity status. See 37 CFR 1.27

**TOTAL AMOUNT OF PAYMENT** ($) **1672**

**Complete if Known**

| | |
|---|---|
| Application Number | 10/902,257 |
| Filing Date | July 30, 2004 |
| First Named Inventor | Douglas J. HOHLBEIN |
| Examiner Name | TBD |
| Art Unit | 3731 |
| Attorney Docket No. | 006427.00042 |

## METHOD OF PAYMENT (check all that apply)

☐ Check　☐ Credit card　☐ Money Order　☐ Other　☐ None

☒ Deposit Account:

Deposit Account Number: **19-0733**

Deposit Account Name: **Banner & Witcoff, LTD.**

The Director is authorized to: (check all that apply)
☒ Charge fee(s) indicated below　☒ Credit any overpayments
☒ Charge any additional fee(s) or any underpayment of fee(s)
☐ Charge fee(s) indicated below, except for the filing fee
to the above-identified deposit account.

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1001 | 790 | 2001 | 395 | Utility filing fee | 790 |
| 1002 | 350 | 2002 | 175 | Design filing fee | |
| 1003 | 550 | 2003 | 275 | Plant filing fee | |
| 1004 | 790 | 2004 | 395 | Reissue filing fee | |
| 1005 | 160 | 2005 | 80 | Provisional filing fee | |

**SUBTOTAL (1)** ($) **790**

### 2. EXTRA CLAIM FEES FOR UTILITY AND REISSUE

| | | Extra Claims | Fee from below | | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | 52 | -20 ** = | 32 | X 18 | = 576 |
| Independent Claims | 5 | -3 ** = | 2 | X 88 | = 176 |
| Multiple Dependent | | | | X | = 0 |

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | |
| 1202 | 18 | 2202 | 9 | Claims in excess of 20 | |
| 1201 | 88 | 2201 | 44 | Independent claims in excess of 3 | |
| 1203 | 300 | 2203 | 150 | Multiple dependent claim, if not paid | |
| 1204 | 88 | 2204 | 44 | ** Reissue independent claims over original patent | |
| 1205 | 18 | 2205 | 9 | ** Reissue claims in excess of 20 and over original patent | |

**SUBTOTAL (2)** ($) **752**

### 3. ADDITIONAL FEES

| Large Entity | | Small Entity | | | Fee Paid |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | |
| 1051 | 130 | 2051 | 65 | Surcharge - late filing fee or oath | 130 |
| 1052 | 50 | 2052 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 1053 | 130 | 1053 | 130 | Non-English specification | |
| 1812 | 2,520 | 1812 | 2,520 | For filing a request for ex parte reexamination | |
| 1804 | 920* | 1804 | 920* | Requesting publication of SIR prior to Examiner action | |
| 1805 | 1,840* | 1805 | 1,840* | Requesting publication of SIR after Examiner action | |
| 1251 | 110 | 2251 | 55 | Extension for reply within first month | |
| 1252 | 430 | 2252 | 215 | Extension for reply within second month | |
| 1253 | 980 | 2253 | 490 | Extension for reply within third month | |
| 1254 | 1,530 | 2254 | 765 | Extension for reply within fourth month | |
| 1255 | 2,080 | 2255 | 1,040 | Extension for reply within fifth month | |
| 1401 | 340 | 2401 | 170 | Notice of Appeal | |
| 1402 | 340 | 2402 | 170 | Filing a brief in support of an appeal | |
| 1403 | 300 | 2403 | 150 | Request for oral hearing | |
| 1451 | 1,510 | 1451 | 1,510 | Petition to institute a public use proceeding | |
| 1452 | 110 | 2452 | 55 | Petition to revive – unavoidable | |
| 1453 | 1,370 | 2453 | 685 | Petition to revive – unintentional | |
| 1501 | 1,370 | 2501 | 685 | Utility issue fee (or reissue) | |
| 1502 | 490 | 2502 | 245 | Design issue fee | |
| 1503 | 660 | 2503 | 330 | Plant issue fee | |
| 1460 | 130 | 1460 | 130 | Petitions to the Commissioner | |
| 1807 | 50 | 1807 | 50 | Processing fee under 37 CFR 1.17 (q) | |
| 1806 | 180 | 1806 | 180 | Submission of Information Disclosure Stmt | |
| 8021 | 40 | 8021 | 40 | Recording each patent assignment per property (times number of properties) | |
| 1809 | 790 | 2809 | 395 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 1810 | 790 | 2810 | 395 | For each additional invention to be examined (37 CFR § 1.129(b)) | |
| 1801 | 790 | 2801 | 395 | Request for Continued Examination (RCE) | |
| 1802 | 900 | 1802 | 900 | Request for expedited examination of a design application | |

Other fee (specify) _____

*Reduced by Basic Filing Fee Paid

**SUBTOTAL (3)** ($) **130**

**or number previously paid, if greater; For Reissues, see above

### SUBMITTED BY

| | | | |
|---|---|---|---|
| Name (Print/Type) | Darrell G. Mottley | Registration No. (Attorney/Agent) | 42,912 |
| Signature | *Darrell Mottley* (signature) | Telephone | (202) 824-3000 |
| | | Date | November 10, 2004 |

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

This collection of information is required by 37 CFR 1.17 and 1.27. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing this form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.



DESIGN

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    :

   Douglas J. HOHLBEIN           :

Application No. 10/902,257               :    Group Art Unit: 3731

                                        :    Examiner: TBD

Filed: July 30, 2004                     :

                                        :    Attorney Docket No. 006427.00042

For:  ORAL CARE IMPLEMENT             :

## RESPONSE TO NOTICE TO FILE MISSING PARTS

Mail Stop Missing Parts
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

Sir:

     Attached herewith is an executed Declaration of the inventor for the above- identified Patent Application in compliance with the Notice to File Missing Parts (copy enclosed) mailed September 22, 2004.

     Please find enclosed a Fee Transmittal Sheet in the amount of <u>$1672.00</u> for the application filing fees.  The calculation is as follows:

| | |
|---|---|
| Basic Fee | $ 790.00 |
| Additional Claim Fee | $ 752.00 |
| Surcharge for subsequent filing of executed Declaration | $ <u>130.00</u> |
| **Total** | **$1672.00** |

     However, if the calculated fee is not correct, you are authorized to charge any additional fee or credit any overpayment to our Deposit Account No. 19-0733.

U.S. Application No. 10/902,257        -2-        Attorney Docket No. 006427.00042

Respectfully submitted,

Date: <u>November 10, 2004</u>        By: _____
Darrell G. Mottley
Registration No. 42,912

BANNER & WITCOFF, LTD
1001 G Street, N.W.
Eleventh Floor
Washington, D.C. 20001
(202) 824-3000

Page 1 of 2



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 006427.00042 |

CONFIRMATION NO. 1397

30751
BANNER & WITCOFF, LTD., ATTORNEYS FOR RESERVP E
CLIENT NO. 3
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON, DC 20001-4597

**FORMALITIES LETTER**

*OC000000013851669*

Date Mailed: 09/22/2004

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

<u>Items Required To Avoid Abandonment:</u>

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  Applicant must submit $ **770** *to complete the basic filing fee for a non-small entity. If appropriate, applicant may make a written assertion of entitlement to small entity status and pay the small entity filing fee (37 CFR 1.27).*
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- Additional claim fees of $748 as a non-small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.

11/12/2004 STEUNEL1 00000057 190733   10902257
01 FC:1001      790.00 DA
02 FC:1202      576.00 DA
03 FC:1201      176.00 DA
04 FC:1051      130.00 DA

<u>SUMMARY OF FEES DUE:</u>

Total additional fee(s) required for this application is $1648 for a Large Entity

- $770 Statutory basic filing fee.
- $130 Late oath or declaration Surcharge.

- Total additional claim fee(s) for this application is $748

  - $172 for 2 independent claims over 3.
  - $576 for 32 total claims over 20.

Replies should be mailed to:    Mail Stop Missing Parts

Commissioner for Patents

P.O. Box 1450

Alexandria VA 22313-1450

*A copy of this notice __MUST__ be returned with the reply.*

S. Givens

Customer Service Center

Initial Patent Examination Division (703) 308-1202

PART 2 - COPY TO BE RETURNED WITH RESPONSE

Page 1 of 2

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 10/902,257 | 07/30/2004 | Douglas J. Hohlbein | 006427.00042 |

CONFIRMATION NO. 1397

30751
BANNER & WITCOFF, LTD., ATTORNEYS FOR RESERVE
CLIENT NO. 3
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON, DC 20001-4597

FORMALITIES LETTER

*OC000000013851669*

Date Mailed: 09/22/2004

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 770 to complete the basic filing fee for a non-small entity. If appropriate, applicant may make a written assertion of entitlement to small entity status and pay the small entity filing fee (37 CFR 1.27).*
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- Additional claim fees of $748 as a non-small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.

**SUMMARY OF FEES DUE:**

Total additional fee(s) required for this application is **$1648** for a Large Entity .

- **$770** Statutory basic filing fee.
- **$130** Late oath or declaration Surcharge.

JA00352

Page 2 of 2

- Total additional claim fee(s) for this application is **$748**

  - **$172** for **2** independent claims over 3.
  - **$576** for **32** total claims over 20.

Replies should be mailed to:   Mail Stop Missing Parts
                                Commissioner for Patents
                                P.O. Box 1450
                                Alexandria VA 22313-1450

*A copy of this notice __MUST__ be returned with the reply.*

Customer Service Center
Initial Patent Examination Division (703) 308-1202
                                PART 3 - OFFICE COPY

PTO/SB/05 (01-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 C.F.R. 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | 006427.00042 |
| First Inventor | Douglas J. HOHLBEIN et al. |
| Title | Oral Care Implement |
| Express Mail Label No. | |

**ADDRESS TO:** Mail Stop Patent Application
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

1. ☐ Fee Transmittal Form (e.g., PTO/SB/17)
   *(Submit an original and a duplicate for fee processing)*
2. ☐ Applicant claims small entity status. See 37 CFR 1.27.
3. ☒ Specification *[Total Pages 18]*
   *(preferred arrangement set forth below)*
   - Descriptive title of the Invention
   - Cross Reference to Related Applications
   - Statement Regarding Fed sponsored R & D
   - Reference to sequence listing, a table, or a computer program listing appendix
   - Background of the Invention
   - Brief Summary of the Invention
   - Brief Description of the Drawings *(if filed)*
   - Detailed Description
   - Claim(s)
   - Abstract of the Disclosure
4. ☒ Drawing(s) (35 U.S.C. 113) *[Total Sheets 6]*
   ☒ Formal  ☐ Informal
5. Oath or Declaration *[Total Sheets ____]*
   a. ☐ Newly executed (original or copy)
   b. ☐ Copy from a prior application (37 CFR 1.63 (d))
      *(for a continuation/divisional with Box 18 completed)*
      i. ☐ DELETION OF INVENTOR(S)
         Signed statement attached deleting inventor(s) named in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
6. ☒ Application Data Sheet. See 37 CFR 1.76

7. ☐ CD-ROM or CD-R in duplicate, large table or Computer Program *(Appendix)*
8. Nucleotide and/or Amino Acid Sequence Submission *(if applicable, all necessary)*
   a. ☐ Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

### ACCOMPANYING APPLICATIONS PARTS

9. ☐ Assignment Papers (cover sheet & document(s))
10. ☐ 37 C.F.R. 3.73(b) Statement     ☐ Power of Attorney
    *(when there is an assignee)*
11. ☐ English Translation Document *(if applicable)*
12. ☐ Information Disclosure Statement (IDS) and PTO-1449 (or equivalent)     ☐ Copies of IDS Citations
13. ☐ Preliminary Amendment
14. ☐ Return Receipt Postcard (MPEP 503) *(Should be specifically itemized)*
15. ☐ Certified Copy of Priority Document(s) *(if foreign priority is claimed)*
16. ☐ Nonpublication Request under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or its equivalent.
17. ☐ Other: _____

18. If a CONTINUING APPLICATION, check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:

☐ Continuation   ☐ Divisional   ☐ Continuation-in-part (CIP)   of prior application No: _____

Prior application information:   Examiner _____   Art Unit: _____

For CONTINUATION or DIVISIONAL APPS only: The entire disclosure of the prior application, from which an oath or declaration is supplied under Box 5b, is considered a part of the disclosure of the accompanying or divisional application and is hereby incorporated by reference. The incorporation can only be relied upon when a portion has been inadvertently omitted from the submitted application parts.

## 19. CORRESPONDENCE ADDRESS

☒ Customer Number: 30751   **OR**   ☐ Correspondence address below

| | | | |
|---|---|---|---|
| Name | | | |
| Address | | | |
| City | | State | |
| Country | | Telephone | |
| | | Zip Code | |
| | | Fax | |

| Name (Print/Type) | Darrell G. Mottley | Registration No. (Attorney/Agent) | 42,912 |
|---|---|---|---|
| Signature | *Darrell G. Mottley* | Date | July 30, 2004 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop Patent Application, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

B&W Ref.: 006427.00042

# ORAL CARE IMPLEMENT

## CROSS-REFERENCE TO RELATED APPLICATIONS

[01]   This application is a continuation in part of co-pending PCT Application No. PCT/US2003/029497 (designating the U.S.), filed September 17, 2003, entitled "Toothbrush With Gripping Area" (Attorney Docket No. IR 6989-00), which claims priority of U.S. Provisional Application Serial No. 60/412,290, filed September 20, 2002.  This application also is a continuation in part of co-pending U.S. Patent Application Serial No. 29/189,729, filed September 10, 2003.  The contents of the above-noted applications are each expressly incorporated herein by reference.

## FIELD OF THE INVENTION

[02]   The present invention generally pertains to an oral care implement, and in particular, to an implement with an improved handle.

## BACKGROUND OF THE INVENTION

[03]   Oral care implements, especially toothbrushes, are used by many people on a daily basis.  With such devices, a handle is usually provided to be grasped and manipulated by the user as needed.  However, many handles are simply linear rods of relatively rigid material which are neither comfortable nor given to easy manipulation. Further, use of an oral care implement may commonly occur under wet conditions, which can cause the handle to be slippery.  Accordingly, there is a need for an oral care implement that provides for improved control and greater comfort for the user.

1

B&W Ref.: 006427.00042

## BRIEF SUMMARY OF THE INVENTION

[04]   The invention pertains to an oral care implement with an improved handle that provides greater comfort and improved control during use.

[05]   In one aspect of the invention, the handle includes a gripping region formed by a grip member having a plurality of spaced openings that expose portions of an underlying base. In a preferred embodiment, the grip member is an elastomer and the exposed base portions are recessed in the slots. This construction provides a reliable, slip-resistant and comfortable portion to be grasped.

[06]   In one other aspect of the invention, the handle has a resilient grip body that extends through the handle to be gripped by the user's finger and thumb. In a preferred embodiment, the grip body is fit into a large opening in a base where the mass of the grip body can be shifted by pressure on either side for greater comfort and control, and to dampen the pressure applied by the brush. Moreover, the grip body also preferably includes a friction surface to resist slippage.

[07]   In one other aspect of the invention, the handle includes an inclined segment that offsets the head of the implement relative to a palm gripping region for better control and manipulation of the toothbrush or other implement. A grip body is preferably positioned along the inclined segment to further enhance the comfort and control felt by the user.

[08]   In another aspect of the invention, the handle includes a large aperture into which a resilient grip body is stably fixed. The aperture has a sidewall geometry shaped for securely engaging the resilient grip body while facilitating an easy molding process. In a preferred construction, the sidewall geometry includes at least one inclined surface which defines a narrowed portion of the aperture.

2

B&W Ref.: 006427.00042

BRIEF DESCRIPTION OF THE DRAWINGS

[09]    A more complete understanding of the present invention and the advantages thereof may be acquired by referring to the following description in consideration of the accompanying drawings, in which like reference numbers indicate like features, and wherein:

[10]    Figure 1 is a perspective front view of an oral care implement according to one or more aspects of an illustrative embodiment;

[11]    Figure 2 is a rear view of the oral care implement of FIG. 1;

[12]    Figure 3 is a front view of the oral care implement of FIG. 1;

[13]    Figure 4 is a side view of the oral care implement of FIG. 1;

[14]    Figure 5 is a section view of the oral care implement taken along line 5-5 in FIG. 3;

[15]    Figure 6 is a partial side view of a base of an oral care implement of FIG. 1;

[16]    Figure 7 is a partial front view of the base of FIG. 6;

[17]    Figure 8 is a top axial view of the oral care implement of FIG. 1; and

[18]    Figure 9 is a bottom axial view of the oral care implement of FIG. 1.

DETAILED DESCRIPTION OF THE INVENTION

[19]    Figures 1-9 illustrate an oral care implement in the form of a toothbrush 100 having an improved handle 103 and a head 105 with bristles or other tooth engaging elements. While reference is made to a toothbrush with an improved handle, other oral care implements, such as inter-proximal picks, flossing tools, plaque scrapers, tongue and soft tissue cleansers/massagers and the like, may use the same handle. It is also to be understood that other embodiments may be utilized, and that structural

3

JA00357

B&W Ref.: 006427.00042

and functional modifications may be made without departing from the scope of the present invention.

[20]   Handle 103 is provided for the user to reliably grip and manipulate the toothbrush. Handle 103 includes ergonomic features which provide a high degree of control for the user while maintaining comfort. In a preferred construction (FIGS. 1-9), handle 103 includes a base 300, a grip body 403, and a gripping member 407. These components cooperatively form a grip portion 400 by which the user holds and manipulates the toothbrush. For optimum comfort and control, grip portion 400 includes three segments 111, 113, 115. A rear segment 115 forms a portion that generally fits comfortably within the palm of the user. A front segment 111 forms a portion that generally fits comfortably between the user's thumb and index finger. A narrow transition segment 113 connects the front and rear segments 111, 115.

[21]   In a preferred construction, front segment 111 is inclined relative to rear segment 115 to define an inclined portion positioned for comfortable gripping and to facilitate a desired offset positioning of the head relative to the palm gripping region 115. The angle θ of the incline is preferably 23 degrees, but may range approximately between 5-40 degrees. This feature allows improved control of the handle during brushing in which the head 105 can be more desirably positioned within the mouth to engage the tooth cleaning elements 200 against the teeth.

[22]   In the preferred embodiment, front and rear segments 111, 115 are widened sections that are joined by a narrowed portion 113 to form an undulating structure which is more reliably and comfortably held within the user's hand. Further, this wide construction of the palm and finger gripping regions 111, 115 requires less fine motor control by the user and is, hence, easier to hold and manipulate. In addition, front segment 111 transitions into neck 116 which, in turn, supports head 105. In a

4

B&W Ref.: 006427.00042

preferred embodiment, base 300 includes a gripping region 301 that corresponds to grip portion 400, the neck 116, and the head 105 to define an oral engaging region.

[23]    Under a normal use position, grip portion 400 is grasped by a user with the fingers engaging the handle 103 so that the thumb is on one side and the index finger and other fingers are positioned on the opposite side. Front segment 111 of grip portion 400 includes grip body 403 having opposing sides 405, 404 preferably for engaging the thumb and index finger of a user. Grip portion 400 further includes a rear segment 115 which enables reliable gripping of the toothbrush 100 with the third through the fifth fingers of the user's hand in a normal use position. While a normal use position is discussed, the features of the toothbrush could be employed by a user having less fingers or a user which holds the toothbrush in other ways.

[24]    In one preferred construction, front section 111 includes a soft, resilient grip body 403 fixed within aperture 303 of base 300. As shown in Figures 8 and 9, front section 111 has the widest transverse dimension of any other part of handle 103. As shown in Figures 1 and 4, aperture 303 occupies more than one-half of the transverse dimension across front section 111 of handle 103. Nevertheless, other constructions are possible. As an example only, grip body 403 may occupy a smaller portion of the transverse dimension, such as one-third of the transverse dimension of front section 111. Nevertheless, the width and length of aperture 303 may be adjusted as desired and other parts of handle 103 may be as wide as or wider than front segment 111.

[25]    Referring to Figures 5-7, in one construction, aperture 303 extends through base 300 to mount grip body 403. Aperture 303 includes a sidewall geometry 305 for the retaining and dynamic positioning of the resilient grip body 403 during use of the toothbrush. While grip body 403 is preferably molded into aperture 303, it could be premolded and mounted into aperture 303. In a preferred construction, grip member

5

B&W Ref.: 006427.00042

403 is a soft, resilient element formed of a thermoplastic elastomer (TPE) which fills the aperture 303. To provide optimum comfort as well as control benefits, the elastomeric material preferably has a hardness durometer measurement ranging between A11 to A15 Shore hardness. Nevertheless, the hardness of the elastomer could also range between A8 to A24 Shore hardness. Other materials outside this hardness range could also be used. As an example, one preferred elastomeric material is styrene-ethylene/butylene-styrene (SEBS) manufactured by GLS Corporation. Nevertheless, other manufacturers can supply the SEBS material and other materials could be used.

[26] Referring to Figures 1-5, resilient grip body 403 preferably has a generally bulbous shape that bulges out of aperture 303 and which resembles an oval or elliptical shape. The bulbous shape of the resilient grip body 403 enables the user to reliably roll and control the handle 103 between the thumb and index fingers during use. Grip body 403 could also be non-bulging or have any number of shapes, such as circular, a true oval shape and the like.

[27] Referring to Figures 5-7, aperture 303 preferably includes a peripheral shoulder or rim 304 for supporting grip body 403. Sidewall 305 of aperture 303 extends between opposing outer surfaces of base 300 and includes inclined surfaces 309, 310 inside of the periphery of aperture 303. The inclined surfaces 309, 310 extend from the outer surfaces towards a rounded edge surface 311 which is the narrowest part of the aperture 303. This construction, in conjunction with the soft, resilient nature of grip member 403, provides a weight shifting feature which improves control of the handle 103 during use.

[28] Resilient grip body 403 further helps attenuate the brushing force applied to the oral surfaces to prevent gum recession, loss of tooth enamel or to provide for a more

6

B&W Ref.: 006427.00042

comfortable brushing experience. When the toothbrush is used against the oral surfaces, such as the teeth, reaction forces are transferred to the resilient grip body 403. The elastomeric material dampens the forces against the head 105 which reduces the brush pressure applied to the teeth and soft tissue surfaces, such as the gums. In a preferred construction, elastomeric material of the resilient grip body 403 is enabled to flow and shift within aperture 303. Net pressure applied by the user's fingers is transferred to grip body 403 so that the inclined surface 309, 310 enables the elastomeric material to flow to the narrowest portion of the aperture. Hence, some of the elastomeric material squeezes past rounded edge surface 311 to the other side of the aperture while under pressure. The shifting of the material to the other side of the aperture causes a slight shift in the mass centroid of the resilient member 403 to counter balance the brushing forces. Thus, grip body 403 balances handle 103 enabling it to "float" in the hand of the user and reduce the brushing forces applied by the head 105.

[29]     In one preferred construction, grip body 403 has a multiplicity of finger grip protrusions 411 (FIGS. 1-5). Finger grip protrusions 411 provide a tactile feature to increase the friction on the user's finger surfaces and thus enhance the user's ability to grip the handle, particularly under wet conditions. Finger grip protrusions 411 are preferably provided in a desired conical or frusto-conical shape for improved grip performance. Of course, other roughened surfaces could be used.

[30]     Referring to Figures 6 and 7, rear segment 115 is preferably formed by base 300 and gripping member 407. In one preferred embodiment, base 300 defines a relatively rigid support structure which is at least partially overlain by an elastomeric gripping member 407. While gripping member 407 is shown as a single unitary member or layer, it could be formed by separate independent parts or sections.

7

JA00361

B&W Ref.: 006427.00042

[31]    Base 300 along rear segment 115 includes at least one projection, and preferably a plurality of spaced projections. While the projections could have virtually any shape, they are preferably in the form of spaced, elongate, transverse projections or ribs 315. In the preferred embodiment, ribs 315 are generally parallel with respect to each other and generally symmetrical in relation to the longitudinal axis a-a of rear segment 115. The projections 315 are preferably linear and span laterally between the longitudinal sides 313, 314 of handle 103, although they may have different transverse lengths. The transverse length of each projection 315 generally matches the width at the longitudinal location along the handle 103; although the ribs are preferably slightly short of the actual width of handle segment 115 at any one location so as to be covered on the sides by gripping member 407. Since ribs 315 span the width of segment 115, they each have varying lengths due to the variations in the width of handle segment 115. While nine projections are shown, the inventive aspects may be obtained by other numbers of projections.

[32]    In a preferred arrangement, a receiving region 317 is defined between each of the adjacent transverse projections 315. The receiving regions 317 are configured to retain and hold a layer of suitable gripping member 407, such as a thermoplastic elastomer (TPE) or other similar materials used in oral care products. In a preferable construction, receiving regions 317 have a transverse arcuate base surface 319 with a transverse groove or depression 321. The arcuate base surface 319 extends between the longitudinal sides of base 300. When a gripping member 407 is applied to the base, grooves 321 create concaved regions 413 in grip surface 410 to improve the tactile performance of the toothbrush handle (see FIG. 4). While horizontal or straight projections 315 are illustrated, the projections 315, alternatively, may be any number of shapes or orientations with respect to the longitudinal axis a-a. For

8

B&W Ref.: 006427.00042

example, the projections 315 may be chevron shaped, circular, oval, elliptical, rectangular, or triangular or other shapes. The orientation of the projections 315 may also be off-axis from the longitudinal axis a-a to form an asymmetrical relationship. The projections 315 may be regularly or randomly spaced on base 300 for the intended gripping performance. As shown in Figure 7, a peripheral portion of base 300 has a peripheral groove 323 arranged to receive and hold a layer of the grip material for suitable use with the toothbrush.

[33]  Referring to Figures 2, 4 and 5, gripping member 407 is fixed to base 300 to provide several gripping features to improve performance. In one aspect, gripping member 407 has a grip surface 410 with at least one and preferably a plurality of spaced openings, preferably in the form of elongate transverse slots 415, which expose portions of base 300. In this way, the outline shape of slots 415 is formed by the peripheral shape of projections 315 of base 300 (FIGS. 6 and 7). To form slots 415, suitable injection molding equipment mates with the top surfaces of the projections 315 to prevent overmolding of ribs 315 and any undesired deflection of base 300 during the molding process. This enables the top surfaces of the projections 315 to be exposed after the molding process.

[34]  To provide comfort as well as control benefits, the elastomeric material of the grip surface 410 may have a hardness durometer measurement ranging between A13 to A50 Shore hardness, although materials outside this range may be used. A preferred range of the hardness durometer rating is between A25 to A40 Shore hardness. While an injection molded construction is preferred, a suitable deformable thermoplastic material, such as TPE, may be formed in a thin layer and attached to base 300 with an appropriate adhesive or by other means. Irrespective of the manufacturing process, ribs 315 are preferably recessed relative to gripping surface 410, i.e., a suitable

9

B&W Ref.: 006427.00042

thickness of elastomeric material is used to control the depth of the slot 415 as measured from the top of the grip surface 410 to the top of the projection (e.g., the exposed portion of base 300). In a preferred construction, the depth of the slots along axis a-a is about 0.5 mm. These transverse slots 415 prevent slippage of the handle 103 by enabling portions of the user's fingers to slightly protrude into the depth of the slot 415. Additionally, slots 415 channel water away from the fingers tips during wet operational conditions. Air is also able to enter the slots during brushing to provide some evaporative effect.

[35]    In another aspect, the grip surface 410 includes concaved regions 413 between each slot 415 to further improve the grip performance of handle 103. The concaved regions 413 are preferably created by a suitable thickness of the elastomeric material during the injection molding process filling into the transverse grooves 321 in base 300, but could be formed by other means (FIGS. 6 and 7). While base surface 319 is preferably arcuate in a transverse direction, the base surface may be horizontal or take on other shapes.

[36]    In one preferred construction, resilient grip body 403 has a different hardness as compared to the hardness of the grip surface 410. Generally, the material of grip body 403 is softer than the material forming the grip surface 410. In this manner, the handle 103 may be provided different grip features to complement the particular control need. For example, the handle 103 may have a soft forward portion with a shock absorption advantage and a slightly harder aft portion with a comfort and control advantage. The material of the resilient grip body 403 and grip surface 410 are preferably each a thermoplastic elastomer.

[37]    The inventive aspects may be practiced for a manual toothbrush or a powered toothbrush. In operation, the previously described features, individually and/or in any

10

B&W Ref.: 006427.00042

combination, improve the control and grip performance of oral implements. Other constructions of toothbrush are possible. For example, head 105 may be replaceable or interchangeable on handle 103. Head 105 may include various oral surface engaging elements, such as inter-proximal picks, brushes, flossing element, plaque scrapper, tongue cleansers and soft tissue massages. While the various features of the toothbrush 100 work together to achieve the advantages previously described, it is recognized that individual features and sub-combinations of these features can be used to obtain some of the aforementioned advantages without the necessity to adopt all of these features in an oral care implement.

[38]    While the invention has been described with respect to specific examples including presently preferred modes of carrying out the invention, those skilled in the art will appreciate that there are numerous variations and permutations of the above described systems and techniques. It is to be understood that other embodiments may be utilized and structural and functional modifications may be made without departing from the scope of the present invention. Thus, the spirit and scope of the invention should be construed broadly as set forth in the appended claims.

11

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2003

Application or Docket Number

10 902257

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 52 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 52 minus 20= | 32 |
| INDEPENDENT CLAIMS | 5 minus 3 = | 2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

\* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | OR | RATE | FEE |
| BASIC FEE | 385.00 | OR | BASIC FEE | 770.00 |
| X$ 9= | | OR | X$18= | 576 |
| X43= | | OR | X86= | 172 |
| +145= | | OR | +290= | |
| TOTAL | | OR | TOTAL | 1518 |

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| | | | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | \* | Minus \*\* | = | X$ 9= | | OR | X$18= | |
| Independent | \* | Minus \*\*\* | = | X43= | | OR | X86= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +145= | | OR | +290= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | \* | Minus \*\* | = | X$ 9= | | OR | X$18= | |
| Independent | \* | Minus \*\*\* | = | X43= | | OR | X86= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +145= | | OR | +290= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | \*\* | Minus \*\* | = | X$ 9= | | OR | X$18= | |
| Independent | \* | Minus \*\*\* | = | X43= | | OR | X86= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +145= | | OR | +290= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\*If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875  (Rev. 10/03)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

**JA00366**

1/6



FIG. 1

2/6



FIG. 2

FIG. 3

3/6



FIG. 4

4/6



FIG. 5

5/6



FIG. 6



FIG. 7

JA00371

6/6



FIG. 8



FIG. 9

B&W Ref.: 006427.00042

What is claimed is:

1.  An oral care implement comprising:

a base with a gripping region and an oral engaging region; and

a gripping member at least partially overlying the gripping region of the base and having a grip surface provided with at least one opening exposing a portion of the base.

2.  The oral care implement according to claim 1, in which the gripping member comprises an elastomeric material.

3.  The oral care implement according to claim 2, in which the exposed portion of the base are recessed in the grip surface to define a cavity in the opening.

4.  The oral care implement according to claim 3, in which the base further includes at least one projection which has an outer surface, and the exposed portion of the base is the outer surface of the projection.

5.  The oral care implement according to claim 2 wherein a plurality of the openings are provided in the grip surface.

6.  The oral care implement according to claim 5, in which the grip surface further includes a concaved region disposed between each pair of adjacent openings.

7.  The oral care implement according to claim 6, in which the base further includes a plurality of projections and a base surface extending between the projections, wherein the base surface between each adjacent pair of said projections has a groove disposed between the projections, and wherein the groove is disposed below the concaved regions.

8.  The oral care implement of claim 5, in which the openings are elongate, transverse slots.

9.  The oral care implement according to claim 8, in which the slots have varying lengths along a longitudinal direction of the gripping region.

12

B&W Ref.: 006427.00042

10.    The oral care implement according to claim 5 wherein the base includes an aperture, and a resilient grip body is fixed in the aperture to define finger gripping surfaces on opposite sides of the base.

11.    The oral care implement according to claim 10, in which the exposed portions of the base are recessed in the grip surface.

12.    The oral care implement according to claim 11, in which the base includes a rear segment and a front segment that is inclined to the rear segment.

13.    The oral care implement according to claim 12 wherein the aperture is formed in the front segment.

14.    The oral care implement according to claim 2 further including an independent, resilient grip body extending through the base.

15.    The oral care implement according to claim 14, in which the grip body is of a softer material than said gripping member.

16.    The oral care implement according to claim 15 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

17.    The oral care implement according to claim 1 wherein a plurality of the openings are provided in the grip surface.

18.    The oral care implement according to claim 17, in which the exposed portions of the base are recessed in the grip surface.

19.    The oral care implement according to claim 1, wherein the base includes an aperture, and a resilient grip body is fixed in the aperture to define finger gripping surfaces on opposite sides of the base.

13

**JA00374**

B&W Ref.: 006427.00042

20.    The oral care implement according to claim 19 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

21.    The oral care implement according to claim 1, in which the handle includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

22.    The oral care implement according to claim 21, in which the first section is inclined relative to the second section.

23.    The oral care implement according to claim 1, in which the exposed portion of the base is recessed in the grip surface to define a cavity in the opening.

24.    The oral care implement according to claim 1, in which the gripping member is composed of a softer material than the base.

25.    The oral care implement according to claim 24, in which the exposed base portions are recessed relative to the grip surface.

26.    The oral care implement according to claim 1, in which the oral engaging region includes teeth cleaning elements.

27.    An oral care implement comprising:
a base with a gripping region and an oral engaging region, the gripping region including a rear segment and a front segment inclined relative to the rear segment; and
a grip body extending through the base, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

28.    The oral care implement according to claim 27, in which the grip body comprises an elastomeric material.

29.    The oral care implement according to claim 27, in which the grip body is configured to counterbalance forces acting on the handle.

14

JA00375

B&W Ref.: 006427.00042

30.    The oral care implement according to claim 27, in which the grip body has a hardness of about 8-24 Shore A.

31.    The oral care implement according to claim 30, in which the handle further includes a resilient grip surface on the base, wherein the resilient grip surface has a hardness of about 13-50 Shore A.

32.    The oral care implement according to claim 27 wherein front segment is inclined to the rear segment at about 5-40 degrees.

33.    The oral care implement according to claim 27 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

34.    The oral care implement according to claim 27 wherein each said finger gripping surface includes a plurality of projections.

35.    An oral care implement comprising:
a base with gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and
a resilient grip body disposed in the aperture and extending through the base to define finger gripping surfaces on opposite sides of the base, the grip body further having a centroid that is shiftable within the aperture by user pressure to opposite sides of the base.

36.    The oral care implement according to claim 35, in which the grip body comprises an elastomeric material.

37.    The oral care implement of claim 34, in which the grip element is disposed in a widest portion of the base.

38.    The oral care implement according to claim 34, in which the grip element has hardness of about 8-24 Shore A.

15

B&W Ref.: 006427.00042

39.    The oral care implement according to claim 34 wherein the aperture is defined by side surfaces that are inclined toward a central portion of the aperture to define a narrowed rounded edge surface.

40.    An oral care implement comprising:
a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base, the aperture being defined by at least one inclined sidewall that defines a narrowed edge surface within the aperture; and
a resilient grip body fixed in the aperture, the grip body defining grip surfaces exposed on opposite sides of the base.

41.    The oral care implement according to claim 40, in which the grip body comprising an elastomeric material.

42.    The oral care implement according to claim 40, in which the handle includes first and second sections and an intermediate section that connects the first and second sections, wherein the intermediate section is narrower than the first and second sections.

43.    The oral care implement according to claim 40 wherein the grip body has a hardness of about 8-25 Shore A.

44.    The oral care implement according to claim 43, further including a grip surface on the base, the grip surface having hardness of about 13-40 Shore A.

45.    The oral care implement according to claim 40 wherein the grip body has a hardness of about 11-15 Shore A.

46.    The oral care implement according to claim 40, in which the grip body is disposed in the widest portion of the base.

47.    An oral care implement comprising:
a base with a gripping region and an oral engaging region, the gripping region including an aperture extending through the base; and

16

B&W Ref.: 006427.00042

a resilient grip body secured within the aperture to extend through the base and define a gripping surface on opposite sides of the base to be gripped by a thumb of a user and one finger, the grip body being configured to dampen the forces applied to the oral engaging region by the user holding the gripping region.

48.     The oral care implement according to claim 47 wherein the aperture and grip body received therein has a width at its largest dimension which is more than one half of the width of the base at the same location.

49.     The oral care implement according to claim 47 wherein the aperture is defined by side surfaces that are inclined toward a central portion of the aperture to define a narrowed rounded edge surface.

50.     The oral care implement according to claim 49 wherein the grip body defines a centroid that is shiftable to opposite sides of the rounded edge surface upon application of pressure by the user.

51.     The oral care implement according to claim 47 wherein the grip body has a hardness of about 8-25 Shore A.

52.     The oral care implement according to claim 47, in which the grip element is disposed in a widest portion of the base.

17

## <u>Application Data Sheet</u>

### Application Information

Application number::

Filing Date::

Application Type::                          Regular

Subject Matter::                            Utility

Suggested classification::

Suggested Group Art Unit::

CD-ROM or CD-R?::                           None

Number of CD disks::

Number of copies of CDs::

Sequence submission?::

Computer Readable Form (CRF)?::

Number of copies of CRF::

Title::                                     ORAL CARE IMPLEMENT

Attorney Docket Number::                    006427.00042

Request for Early Publication?::            NO

Request for Non-Publication?::              NO

Suggested Drawing Figure::

Total Drawing Sheets::                      6

Small Entity?::                             NO

Latin name::

Variety denomination name::

Petition included?::                        NO

Petition Type::

Licensed US Govt. Agency::

Contract or Grant Numbers::

Secrecy Order in Parent Appl.?::            NO

1        Initial 07/30/04

## Applicant Information

| | |
|---|---|
| Applicant Authority Type:: | Inventor |
| Primary Citizenship Country:: | US |
| Status:: | Full Capacity |
| Given Name:: | Douglas |
| Middle Name:: | J. |
| Family Name:: | HOHLBEIN |
| Name Suffix:: | |
| City of Residence:: | Pennington |
| State or Province of Residence:: | New Jersey |
| Country of Residence:: | US |
| Street of mailing address:: | 45 Diverty Road |
| City of mailing address:: | Pennington |
| State or Province of mailing address:: | NJ |
| Country of mailing address:: | US |
| Postal or Zip Code of mailing address:: | 08534 |
| Applicant Authority Type:: | Inventor |
| Primary Citizenship Country:: | US |
| Status:: | Full Capacity |
| Given Name:: | Michael |
| Middle Name:: | Charles |
| Family Name:: | ROONEY |
| Name Suffix:: | |
| City of Residence:: | Milburn |
| State or Province of Residence:: | NJ |
| Country of Residence:: | US |
| Street of mailing address:: | 63 Locust Avenue |
| City of mailing address:: | Millburn |
| State or Province of mailing address:: | NJ |

JA00380

Country of mailing address::        US

Postal or Zip Code of mailing address::    07041

Applicant Authority Type::        Inventor

Primary Citizenship Country::        Italy

Status::        Full Capacity

Given Name::        Luca

Middle Name::

Family Name::        CASINI

Name Suffix::

City of Residence::        Milan

State or Province of Residence::

Country of Residence::        Italy

Street of mailing address::        Via B. Eustachi, 52

City of mailing address::        Milan

State or Province of mailing address::

Country of mailing address::        Italy

Postal or Zip Code of mailing address::    20129

Applicant Authority Type::        Inventor

Primary Citizenship Country::        Belgium

Status::        Full Capacity

Given Name::        Jacob

Middle Name::

Family Name::        PRINGIERS

Name Suffix::

City of Residence::        Milan

State or Province of Residence::

Country of Residence::        Italy

Street of mailing address::        Via Ciro Meneotti 12

City of mailing address::        Milan

State or Province of mailing address::
Country of mailing address::              Italy
Postal or Zip Code of mailing address::  20129

## Correspondence Information

Correspondence Customer Number::        30751

## Representative Information

Representative Customer Number::         30751

## Domestic Priority Information

| Application:: | Continuity Type:: | Parent Application:: | Parent Filing Date:: |
|---|---|---|---|
| This Application | Continuation-in-Part | PCT/US2003/029497 | September 17, 2003 |
| Based on | Provisional | 60/412,290 | September 20, 2002 |
| This Application | Continuation-in-Part | 29/189,729 | September 10, 2003 |

## Foreign Priority Information

| Country:: | Application number:: | Filing Date:: | Priority Claimed:: |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## Assignee Information

Assignee name::                          Colgate-Palmolive Company

Street of mailing address::              300 Park Avenue

City of mailing address::                New York
State or Province of mailing address::   New York
Country of mailing address::             United States of America
Postal or Zip Code of mailing address::  10022

4        Initial 07/30/04

B&W Ref.: 006427.00042

Abstract of the Disclosure

An oral care implement has an improved handle for control.  The handle may include a gripping region having a grip surface with a plurality of spaced slot openings exposing portions of the base.   In one construction, the handle may have an inclined portion and a grip body extending through a base of the handle.  The grip body forms opposite finger grips on the inclined portion of the handle.  In one construction, the handle may include a grip element which provides shifting of a mass centroid of the handle during use.  In another construction, the handle includes a resilient grip body and the handle includes an aperture extend through the handle. Aperture has an inclined surface for engaging a resilient grip body.

18

JA00383

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on May 22, 2007, I caused a copy of the

foregoing document to be served by e-mail and hand-delivery on the following counsel of

record:

Steven J. Balick
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19801
sbalick@ashby-geddes.com

I, Francis DiGiovanni, hereby certify that on May 22, 2007, I caused a copy of the

foregoing document to be served by e-mail and by U.S. Mail on the following counsel of

record:

James Moskal, Esq.
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
jmoskal@wnj.com

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 9th Floor
1007 North Orange Street
Wilmington, Delaware 19801
(302) 658-9141
fdigiovanni@cblh.com