IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLGATE-PALMOLIVE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-417 GMS |
| RANIR, L.L.C., | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

I. INTRODUCTION

Plaintiff Colgate-Palmolive Company ("Colgate") filed a complaint against defendant Ranir, L.L.C. ("Ranir"), alleging that Ranir's products infringe seven of Colgate's design patents and one of Colgate's utility patents. (D.I. 1.) On June 28, 2007, the court heard the parties' claim construction arguments. For the reasons set forth below, the claims are construed as stated.

II. BACKGROUND

Colgate's asserted design patents, U.S. Des. Pat. Nos. D513,882 ("the 'D882 patent"); D514,812 ("the 'D4812 patent"); D516,818 ("the 'D818 patent"); D516,819 ("the 'D819 patent"); D517,812 ("the 'D7812 patent"); D517,813 ("the 'D813 patent"); and D520,753 ("the 'D753 patent"), generally pertain to ornamental designs for a toothbrush or portions of a toothbrush. Colgate's asserted utility patent, U.S. Patent No. 7,047,591 ("the '591 patent") is

directed to an oral care implement having an improved handle for providing greater comfort and improved control during use. (*See* D.I. 39, Ex. 9 at 9.)

III.    DISCUSSION

A determination of patent infringement requires a two-step analysis: first, the meaning of the claim language is construed, then the claim as construed is compared to the accused device in order to ascertain whether the device falls within its scope. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*). Proper claim construction entails an analysis of a patent record's intrinsic evidence—the claim language, the written description, and the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).

At a high level, the Federal Circuit's guidance with regard to design patent infringement does not differ in procedure from that of utility patents. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("As with utility patents, determining whether a design patent is infringed is a two-step process."). Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). Upon closer examination of the claim construction principles by which the court is guided, however, it is apparent that there are appreciable differences that affect not only the substance but the process in which the court undertakes claim construction of design patents vis-a-vis utility patents.

In the case of construing utility patent claims, the claim construction analysis begins with the claim language itself. *See Karlin Tech. Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed. Cir.

1998). The court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art. *See Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1578 (Fed. Cir. 1996) (stating that the court assigns a claim term "the meaning that it would be given by persons experienced in the field of invention"). If the meaning of a claim is unambiguous from the intrinsic evidence, then a court may not rely on extrinsic evidence for purposes of claim construction. *See Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998) (explaining that a court may receive extrinsic evidence to educate itself about the underlying technology, but it cannot "use extrinsic evidence to arrive at a claim construction that is clearly at odds with the claim construction mandated by the [intrinsic evidence]").

Conversely, "[t]he requirement that the court construe disputed claim language, as applied to design patents, must be adapted to the practice that a patented design is claimed as shown in its drawing; [t]here is usually no description of the design in words." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.,* 162 F.3d 1113, 1116 (Fed. Cir. 1998). Accordingly, much of the claim construction canons are only informative and sensical in the context of construing utility patents—involving claims whose boundaries are measured in words. The scope of a "claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (*quoting Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104-05 (Fed. Cir. 1996)). A design patent only protects the novel, ornamental features of the patented design. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). It is this attribute of design patents that creates an irreconcilable divergence in the process for claim construction in this court's view.

According to the Federal Circuit, where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent. *Id.*; *see also Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988). Yet, this distinction—ornamental versus fundamental—is a question of fact. *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) (reversing jury finding of "not ornamental" for lack of substantial evidence). Indeed, the question of invalidity is a decision for the factfinder, and in the case of design patents, the patent is invalid if the design is primarily functional rather than primarily ornamental. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("Invalidity due to functionality is an affirmative defense to a claim of infringement of a design patent, and must be proved by the party asserting the defense.").

The conclusion that claim construction of design patents is, in part, a factual inquiry is further underscored by the Federal Circuit's guidance in *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365 (Fed. Cir. 2006). In *Amini*, the Federal Circuit begins its discussion of design patent infringement by reciting that "[a] design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent." *Id.* at 1370 (*quoting KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). The Court elaborates, however, by stating "[a]n aspect is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Id.* at 1371 (*quoting Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)). These are considerations that this court views as inherently factual and not likely to be evident from the intrinsic record, but rather, the type of factors on which trial courts routinely hear experts opine.

4

Thus, from one perspective, the court's pre-determination during the Markman phase of those features that are ornamental and those that are functional, for purposes of determining the scope of the design patent, could be fairly argued as improperly infringing upon a litigant's Seventh Amendment right to a jury trial on invalidity, as well as being tantamount to a summary judgment decision on the issue. On the contrary, leaving this determination solely to the jury can be argued as improperly shifting the role of claim construction—which belongs to the court—as a matter for the jury. Depending on which procedure the court adopts, these dual roles could lead to potentially inconsistent results. Ultimately, the court is left to conclude that claim construction of design patents—and arguably all patents, is a mixed question of fact and law.

With these competing concepts in mind, the court declines to identify, as part of this Order which features of Colgate's design patents are functional. For now, the court will construe the design patents as stated below. Cognizant of the court's role as the construer of patent claims and the need for claim construction to be complete before a jury deliberates on infringement, the court may further limit the current construction at trial by factual determinations regarding functionality and ornamentality of the included features. *See, e.g. Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 44 F. Supp. 2d 1149, 1156 (D. Kan. 1999) (deferring a determination regarding functionality until trial, if necessary); *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 47 U.S.P.Q. 2d 1843, 1847 (E.D. Va. 1998) (leaving the question of whether certain elements of the asserted design patent are functional to the jury); and *ADC Telecomms., Inc. v. Panduit Corp.*, 200 F. Supp. 2d 1022, 1033 (D. Minn. 2002) (abstaining from determining functionality as a matter of law in claim construction because "[f]actual issues permeate[d the parties'] contentions").

Although the court will ultimately decide how it will proceed with trial, the court will allow the parties to weigh in on the manner in which each party desires to proceed. The court will entertain the following proposals: the submission of invalidity to the court as a bench trial; bifurcation of invalidity and infringement, wherein a trial on invalidity would proceed first, followed by a trial on infringement, and prior to the infringement phase, the court may modify its claim construction using the first jury determination as an advisory jury on the issues of ornamentality and functionality. The court will require the parties to first meet and confer before submitting any proposals. If the parties cannot agree on an approach, each party may submit its proposal at the same time, and under the same restraints, as the court has instructed for motions in limine. (*See* D.I. 15, Scheduling Order.)

IV.   CLAIM CONSTRUCTION

   A. Utility Patent – the '591 patent

   Colgate asserts Claim 1 of the '591 patent, which claims:

   An oral care implement comprising: a base with a gripping region and an oral engaging region, the base having an aperture extending therethrough; a gripping member at least partially overlying the gripping region of the base and provided with at least one opening exposing a portion of the base; and a resilient grip body in the gripping region and extending through the aperture, ***the gripping member having a different durometer characteristic than the resilient grip body***.

The parties dispute the meaning of the phrase "the gripping member having a different durometer characteristic than the resilient grip body." This phrase shall be construed to mean "the gripping member has a different hardness than the resilient grip body."[1]

---

[1] Ranir's construction invites the court to import a limitation from a dependent claim into Claim 1, which is contrary to Federal Circuit precedent. *See Comark Commc'ns., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("'[w]hile . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims.'") (internal citation omitted). Further, "[n]or may [the court], in the broader situation, add a narrowing modifier before an otherwise general term that stands unmodified in a claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

Colgate asserts Claim 27 of the '591 patent, which claims:

> An oral care implement comprising: a base with a gripping region and an oral engaging region, the gripping region including ***a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20 40 degrees thereby defining the inclined portion***; a resilient grip surface being disposed on the rear segment; and a grip body extending through an aperture in the base and spaced from the grip surface, the grip body forming opposite finger gripping surfaces on the inclined portion of the base.

The parties dispute the meaning of the phrase "a rear segment and a front segment inclined relative to the rear segment wherein the front segment is inclined relative to the rear segment at about 20 40 degrees thereby defining the inclined portion." This phrase shall be construed to mean "the front segment of the gripping region is inclined at an angle of about 20 to about 40 degrees relative to the rear segment of the gripping region."[2]

   B.  Design Patents

The 'D882 patent claims the overall design of a toothbrush as shown in the figures in the patent. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The region on the back of the toothbrush head depicted in broken lines (as shown in Figure 6) and the unshaded area within have been disclaimed.[3]

---

[2] "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*citing Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). Ranir proffers a claim construction which derives no support from the specification or prosecution history. The court is disinclined to narrowly construe the disputed phrase without support in the intrinsic record. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document. Thus claims must be construed so as to be consistent with the specification, of which they are a part.") (citations omitted). The court further notes that, during the prosecution of the '591 patent, the patent examiner stated in an Office Action, "[t]he angling of segments of a handle (claim 12) is very well known in the art of toothbrushes . . . ." (D.I. 42, Tab 12 at JA00240.)

[3] Ranir argues that the Federal Circuit "squarely rejected" the approach to claim construction of design patents that Colgate advocates and this court hereby adopts. (*See* D.I. 38 at 7, Ranir's Op. Br.) In support of its argument, Ranir cites the Federal Circuit's decision in *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396. This court finds that Ranir misconstrues the Federal Circuit's holding. In *OddzOn*, the Court examines the following argument of the

The 'D4812 patent claims a design for a center handle portion of a toothbrush as shown in the figures in the patent. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within have been disclaimed. The remainder of the toothbrush which is shown in broken lines forms no part of the claimed design.

The 'D818 patent claims a design for a handle portion of a toothbrush as shown in the figures in the patent. The claimed design includes the handle shown in solid lines and depicted with line shading. The head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the back of the handle and the unshaded areas within form no part of the claimed design.

The 'D819 patent claims a design for a set of bristles for a toothbrush as shown in the figures in the patent. The claimed design includes the bristle design which is the portion of the design shown in solid lines. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design.

The 'D7812 patent claims an overall design of a toothbrush as shown in the figures in the patent.

The 'D813 patent claims a design for a handle portion of a toothbrush as shown in the figures in the patent. The claimed design includes the handle, which is the portion of the handle that is shown in solid lines and depicted with line and stipple (i.e., formed by dots) shading. The

---

patentee: "In championing the sufficiency of its evidence, OddzOn argues that 'the scope of a design patent is effectively determined by deciding infringement, rather than by construing the claim.' We do not agree." *Id*. at 1404. This statement does not reflect the Federal Circuit's categorical rejection of a construction that largely refers to the drawings, but rather, the Court opposed the legal proposition and procedure the patentee proffered, which advocated that the scope of a design patent is determined by deciding infringement. The Court followed its statement of disagreement by reciting the well-established two-step procedure for determining patent infringement, which includes first construing the claims, and then comparing the construed patent claims to the accused device. *Id*. at 1404-05.

head of the toothbrush which is shown in broken lines forms no part of the claimed design. The generally almond-shaped regions depicted in broken lines on opposing sides of the handle and the unshaded areas within form no part of the claimed design. The nine elongated strip-shaped regions depicted in broken lines on the bottom of the handle and the unshaded areas within form no part of the claimed design. The appearance of the area shaded with the line shading technique contrasts with the appearance of the area shaded with the stipple shading technique.

The 'D753 patent claims a design for a set of bristles for a toothbrush as shown in the figures in the patent. These figures consist of Figures 4 – 6 in the patent as originally printed and Figures 1 – 3 in the Certificate of Correction. The claimed design includes the bristle design which is the portion shown in photographic imagery. The remainder of the toothbrush, which is shown in broken lines, forms no part of the claimed design.

SO ORDERED.

Dated: July 31, 2007

/s/ Gregory M. Sleet
CHIEF, UNITED STATES DISTRICT JUDGE